1  EILEEN M. DECKER
   United States Attorney
2  PATRICIA A. DONAHUE
   Assistant United States Attorney
3  Chief, National Security Division
   JUDITH A. HEINZ (Cal. Bar No. 176264)
4  Assistant United States Attorney
   Senior Litigation Counsel, National Security Division
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-7280
7       Facsimile: (213) 894-7631
        E-mail:  judith.heinz@usdoj.gov
8  DEIRDRE Z. ELIOT (Cal. Bar No. 145007)
   Assistant United States Attorney
9  Terrorism and Export Crimes Section
        8000 United States Courthouse
10      411 West Fourth Street
        Santa Ana, California 92701
11      Telephone: (714) 338-3599
        Facsimile: (714) 338-3564
12      E-mail:  deirdre.eliot@usdoj.gov

13 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

14

15                 UNITED STATES DISTRICT COURT

16            FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                      SOUTHERN DIVISION

18 UNITED STATES OF AMERICA,          No. SA CR 15-00060(A)-DOC

19            Plaintiff,              GOVERNMENT'S MOTION IN LIMINE NO.
                                      3:   MOTION IN LIMINE TO PRECLUDE
20            v.                      QUESTIONING ON MATTERS SUBJECT TO
                                      LAW ENFORCEMENT SENSITIVE QUALIFIED
21 NADER SALEM ELHUZAYEL and          EVIDENTIARY PRIVILEGE
   MUHANAD ELFATIH M. A. BADAWI,
22                                    Hearing Date:  May 31, 2016
            Defendants.              Hearing Time:  TBA
23                                   Location:      Courtroom of the
                                                    Hon. David O. Carter
24

25

26      Plaintiff United States of America, by and through its counsel

27 of record, the United States Attorney for the Central District of

28 California and Assistant United States Attorneys Judith A. Heinz and

1   Deirdre Z. Eliot, hereby moves for this Court to preclude defendants
2   from cross-examining or in any other manner soliciting testimony in
3   the presence of the jury of the following information: (1) legality
4   of the collection of the evidence, (2) technical specifications of
5   audio and video recording devices, to include methods of
6   installation, concealment and location of devices, (3) training of
7   government witnesses that would reveal sensitive government programs
8   or sources and methods, (4) methods of accessing vehicles during
9   installation of audio recording devices, and (5) the presence of any
10  non-testifying witnesses during the installation of audio recording
11  devices.

12      This motion is based on the attached Memorandum of Points and
13  Authorities, the files and records of this case, and on such other
14  evidence and argument as this Court may entertain on this motion.

15  Dated: April 25, 2016          Respectfully submitted,

16                                 EILEEN M. DECKER
                                   United States Attorney
17
                                   PATRICIA A. DONAHUE
18                                 Assistant United States Attorney
                                   Chief, National Security Division
19

20                                        /s/
                                   _____
21                                 JUDITH A. HEINZ
                                   Assistant United States Attorney
22
                                          /s/
23                                 _____
                                   DEIRDRE Z. ELIOT
24                                 Assistant United States Attorney

25                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
26

27

28

1

**TABLE OF AUTHORITIES**

2  DESCRIPTION                                                        PAGE

3  **TABLE OF CONTENTS**

4  MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

5  I.   INTRODUCTION ...................................................1

6  II.  ARGUMENT ......................................................2

7       A.   Background On the Law Enforcement Sensitive Qualified
            Evidentiary Privilege ....................................2
8
         B.   Application of the Law Enforcement Sensitive Qualified
9             Evidentiary Privilege ....................................7

10       C.   Government's Assertion of the Law Enforcement
             Sensitive Qualified Evidentiary Privilege ...............10
11
    III. CONCLUSION ..................................................13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

DESCRIPTION                                                      PAGE

3

**FEDERAL CASES**

4
Barnard v. U.S. Dep't of Homeland Security,
          598 F. Supp. 2d 1 (D.D.C. 2009) ............................... 3
5

6
Black v. United States,
          62 F.3d 1115 (8th Cir. 1995) ................................. 5

7
Commonwealth of Puerto Rico v. United States,
          490 F.3d 50 (1st Cir. 2007) .................................. 3
8

9
Dellwood Farms v. Cargill
          Inc., 128 F.3d 1122 (7th Cir. 1997) ...................... 4, 7

10
Frankenhauser v. Rizzo,
          59 F.R.D. 339 (E.D. Pa. 1973) ............................... 8
11

12
Friedman v. Bache Halsey Stuart Shields, Inc.,
          738 F. 2d 1336 (D.C. Cir. 1984) ............................. 8

13
In re Dep't of Investigation,
          856 F.2d 481 (2d Cir. 1988) ................................. 4
14

15
In re Sealed Case,
          856 F.2d 268 (D.C. Cir. 1988) ............................ 7, 8

16
In re The City of New York,
          607 F.3d 923 (2d Cir. 2010) ......................... 4, 7, 8, 9
17

18
In re U.S. Dep't of Homeland Sec.,
          459 F.3d 565 (5th Cir. 2006) ................................ 5

19
Piper v. Dep't of Justice,
          294 F. Supp. 2d 16 (D.D.C. 2003) ............................ 3
20

21
Roviaro v. United States,
          353 U.S. 53 (1957) ....................................... 2, 3

22
Tuite v. Henry,
          181 F.R.D. 175 (D.D.C. July 31, 1998) ................... 4, 5, 8
23

24
United States v. Abu Ali,
          528 F.3d 210 (4th Cir 2008) ................................. 5

25
United States v. Cintolo,
          818 F.2d 980 (1st Cir. 1987) ............................... 10
26

27
United States v. Foster,
          986 F.2d 541 (D.C. Cir. 1993) .............................. 10

28

iv

1

**TABLE OF AUTHORITIES**

2    DESCRIPTION                                                    PAGE

3    United States v. Gil,
          58 F.3d 1414 (9th Cir. 1995) ................................... 6
4
     United States v. Green,
5         670 F.2d 1148 (D.C. Cir. 1981) ....................... 2, 3, 5, 6

6    United States v. Harley,
          682 F.2d 1018 (D.C. Cir. 1982) ....................... 5, 6, 10
7
     United States v. Klimavicius-Viloria,
8         144 F.3d 1249 (9th Cir. 1998) ................................. 6

9    United States v. Rigmaiden,
          844 F. Supp. 2d 982 (D. Ariz. 2012) ......................... 11
10
     United States v. Rose,
11        2012 WL 1720307 (D. Mass. May 16, 2012) .................... 11

12   United States v. Van Horn,
          789 F.2d 1492 (11th Cir. 1986) ..................... 3, 4, 6, 10
13
     United States v. Winner,
14        641 F.2d 825 (10th Cir. 1981) ............................. 5, 6

15   **FEDERAL STATUTES**

16   18 U.S.C. App. 3 § 8(c) ........................................... 5

17

18

19

20

21

22

23

24

25

26

27

28

1                    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2  **I.    INTRODUCTION**

3          At trial, the United States intends to introduce evidence

4  derived from multiple sources, including (1) audio recordings of

5  conversations on phones and in a vehicle, (2) internet

6  communications, and (3) video recordings of interviews of defendants.

7  The trial will include testimony regarding this evidence.

8          The United States hereby asserts the law enforcement sensitive

9  qualified evidentiary privilege, and respectfully requests that this

10 Court preclude the defense from cross-examining or in any other

11 manner soliciting testimony in the presence of the jury the following

12 information: (1) legality of the collection of the evidence; (2)

13 technical specifications of audio and video recording devices, to

14 include methods of installation, concealment and location of devices;

15 (3) training of government witnesses that would reveal sensitive

16 government programs or sources and methods; (4) methods of accessing

17 vehicles during installation of audio recording devices; and (5) the

18 presence of any non-testifying witnesses during the installation of

19 audio recording devices.  As discussed herein, case law supports the

20 exclusion of this type of evidence to protect national security

21 interests.

22         During the investigation of this case, the Federal Bureau of

23 Investigation ("FBI") obtained audio recordings of defendants'

24 conversations on phones and in vehicles, as well as their internet

25 communications.  These actions were authorized pursuant to

26 appropriate legal authority.  The FBI also obtained video recordings

27 of defendants' post-arrest statements.

28

1   At trial, witnesses will testify about these audio recordings

2   and internet communications.  These witnesses will not testify about

3   (1) the methods of accessing vehicles, (2) the technical

4   specifications of the audio recording devices, to include methods of

5   installation, concealment and location of devices, (3) any training

6   or background of government witnesses that would reveal sensitive

7   government programs or sources and methods, and (4) any non-

8   testifying witnesses present during the installation of audio

9   recording devices.  With respect to the video recordings of

10  defendants' post-arrest statements, the witnesses will not testify

11  about the technical specifications of the recording devices, or the

12  concealment and location of such devices.

13  II.  **ARGUMENT**

14      A.  **Background On the Law Enforcement Sensitive Qualified**
           **Evidentiary Privilege**

15

16      The Supreme Court in Roviaro v. United States, recognized an

17  "informer's privilege" that protects the identity of government

18  informants and allows the government to withhold from disclosure the

19  identity of persons who furnish information of violations of law to

20  officers charged with enforcement of that law.  The purpose of the

21  privilege is the furtherance and protection of the public interest in

22  effective law enforcement.  Roviaro, 353 U.S. 53, 59 (1957).

23      Courts have since extended the qualified privilege in Roviaro to

24  cover other investigative techniques, including traditional and

25  electronic surveillance.  For example, in United States v. Green, the

26  D.C. Circuit upheld the privilege over the defendant's request to

27  learn the location of an observation post used in a drug

28  investigation:

2

1         Just as the disclosure of an informer's identity may
2         destroy his future usefulness in criminal investigations,
          the identification of a hidden observation post will likely
3         destroy the future value of that location for police
          surveillance. The revelation of a surveillance location
4         might also threaten the safety of police officers using the
          observation post, or lead to adversity for cooperative
5         owners or occupants of the building. Finally, the assurance
          of nondisclosure of a surveillance location may be
6         necessary to encourage property owners or occupants to
          allow the police to make such use of their property.

7 Green, 670 F.2d 1148, 1155-58 (D.C. Cir. 1981).

8      Courts have held that given "the public interest in effective

9 law enforcement," the FBI may assert a qualified privilege to protect

10 sensitive law enforcement techniques and procedures from disclosure.

11 Roviaro, 353 U.S. at 59; see also Commonwealth of Puerto Rico v.

12 United States, 490 F.3d 50, 62-64 (1st Cir. 2007).  With respect to

13 electronic surveillance equipment, the 11th Circuit has held that the

14 privilege applies, if information about the equipment is provided to

15 defendants and the public, and it will "educate criminals regarding

16 how to protect themselves against police surveillance.  Electronic

17 surveillance is an important tool of law enforcement, and its

18 effectiveness should not be unnecessarily compromised.  Disclosure of

19 such information will also educate persons on how to employ such

20 techniques themselves, in violation of Title III."  United States v.

21 Van Horn, 789 F.2d 1492, 1508 (11th Cir. 1986).

22      Even where some aspects of a protected technique are known to

23 the public, "there is no principle . . . that requires an agency to

24 release all details concerning these and similar techniques simply

25 because some aspects of them are known to the public."  Barnard v.

26 U.S. Dep't of Homeland Security, 598 F. Supp. 2d 1, 23 (D.D.C. 2009);

27 see also Piper v. Dep't of Justice, 294 F. Supp. 2d 16, 31 (D.D.C.

28 2003) (in FOIA case, court accepted arguments that disclosure of the

3

identity of an electronic device used for monitoring purposes would reduce its effectiveness and allow for individuals being investigated by the FBI to take countermeasures to circumvent the technique).

The law enforcement sensitive evidentiary privilege is "grounded in well-established doctrine and is widely recognized by the federal courts." In re The City of New York, 607 F.3d 923, 941 n. 18 (2d Cir. 2010). The privilege is designed, inter alia, to prevent disclosure of law enforcement techniques and procedures that once revealed, could risk future circumvention of the law or compromise of the technique. See generally, id. at 944; see also Tuite v. Henry, 181 F.R.D. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), aff'd, 203 F.3d 53 (D.C. Cir. 1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations."); Van Horn, 789 F.2d at 1507-08 (finding the existence of a qualified government privilege not to disclose sensitive investigative techniques); Dellwood Farms v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997); In re Dep't of Investigation, 856 F.2d 481, 483-84 (2d Cir. 1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation"); United

4

1  States v. Winner, 641 F.2d 825, 831 (10th Cir. 1981) (stating that
2  the "law enforcement investigative privilege is based primarily on
3  the harm to law enforcement efforts which might arise from public
4  disclosure of investigatory files") (internal quotation marks and
5  ellipsis omitted); see also United States v. Harley, 682 F.2d 1018,
6  1020-21 (D.C. Cir. 1982); Green, 670 F.2d at 1155-58.

7      Technical specifications to include the installation,
8  concealment and location of audio recording devices installed in
9  vehicles during the investigation of this case are covered by the
10  "law enforcement sensitive" qualified evidentiary privilege.  See In
11  re U.S. Dep't of Homeland Sec., 459 F.3d 565, 569-71 (5th Cir. 2006)
12  (finding that "in today's times the compelled production of
13  government documents could impact highly sensitive matters relating
14  to national security.  Therefore, the reasons for recognizing the law
15  enforcement privilege are even more compelling now than when [prior
16  cases in the 5th Circuit] were decided."); Tuite, 181 F.D.R. at 176-
17  77.  Moreover, certain technical aspects of the recording devices may
18  be protected by the classified information privilege.  See, e.g.,
19  United States v. Abu Ali, 528 F.3d 210, 251 (4th Cir 2008)(classified
20  information privilege protects means and methods of gathering
21  intelligence information); Black v. United States, 62 F.3d 1115, 1119
22  (8th Cir. 1995)(privilege reaches delicate and sensitive intelligence
23  communications); D. Kris, National Security Investigations &
24  Prosecutions 2d, 163 (2015).  This privilege is implemented by the
25  provisions of the Classified Information Procedures Act ("CIPA").  18
26  U.S.C. App. 3 § 8(c)("During the examination of a witness in any
27  criminal proceeding, the United States may object to any question or
28  line of inquiry that may require the witness to disclose classified

1  information not previously found to be admissible".); see generally,
2  United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261-62 (9th
3  Cir. 1998) (discussing CIPA, Rovario standard applies to determine
4  whether classified information must be disclosed to a defendant).

5       In United States v. Van Horn, the Eleventh Circuit specifically
6  recognized that the privilege applies to electronic surveillance
7  devices and upheld the privilege over the defendant's request to
8  learn the type and placement of microphones in a co-defendant's
9  office.  See 789 F.2d at 1507-08.  As referenced above, the law
10 enforcement privilege prevents disclosure, preserves the
11 confidentiality of sources, protects law enforcement, maintains the
12 privacy of individuals, and prevents interference with an
13 investigation."  In re Dep't of Investigation, 856 F.2d at 483-84;
14 Winner, 641 F.2d at 831 (stating the "law enforcement investigative
15 privilege is based primarily on the harm to law enforcement efforts
16 which might arise from public disclosure of investigatory files")
17 (internal quotation marks and ellipsis omitted); see also Harley, 682
18 F.2d at 1020-21; Green, 670 F.2d at 1155-58.  Finally, it is well
19 settled that the invocation of this privilege comports with Sixth
20 Amendment right to cross-examination, because reasonable restrictions
21 on cross-examination are allowed to protect the government's ability
22 to conduct criminal and intelligence investigations.  United States
23 v. Gil, 58 F.3d 1414, 1421-22 (9th Cir. 1995) (confrontation clause
24 not violated where defense counsel was not permitted to ask certain
25 details of a physical surveillance in order to protect government's
26 law enforcement interests).

27

28

## B. Application of the Law Enforcement Sensitive Qualified Evidentiary Privilege

The law enforcement privilege is a qualified, not absolute privilege, and therefore, there are circumstances in which information subject to the privilege must nevertheless be disclosed. In re The City of New York, 607 F.3d at 940. The Second Circuit has analyzed, in depth, the actual procedure that should be followed by a court in determining whether the privilege bars disclosure. Id. at 948-49.

As a threshold matter, the party asserting the law enforcement privilege bears the burden of demonstrating that the material the government seeks to protect is the type of material that the law enforcement privilege is intended to protect – in this case, information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations. Id. at 948.

Once the party asserting the privilege successfully shows that the law enforcement privilege applies, "there ought to be a pretty strong presumption against lifting the privilege." Id. at 945 (quoting Dellwood Farms v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997)). The court must balance the public interest in non-disclosure against the need of a particular litigant for access to the privileged information. Id. at 948 (quoting In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988); see also Dellwood Farms, 128 F.3d at 1125) (holding that the actual determination of the existence of the law enforcement sensitive privilege is a "particularistic and judgmental task" that involves balancing the "need of the litigant who is seeking privileged investigative materials . . . against the

7

1  harm to the government if the privilege is lifted. . . .")).  To
2  rebut the presumption against lifting the privilege, the party
3  seeking disclosure must show (1) that its request is "non-frivolous
4  and brought in good faith," (2) that "the information sought is [not]
5  available through other discovery or from other sources," and (3)
6  that there is a "compelling need" for the information relevant to the
7  party's case.  In re The City of New York, 607 F.3d at 948 (quoting
8  Friedman v. Bache Halsey Stuart Shields, Inc., 738 F. 2d 1336, 1343
9  (D.C. Cir. 1984)).  Other relevant criteria courts have used in
10  determining whether the party seeking disclosure has rebutted the
11  privilege with respect to investigative equipment, often called the
12  Frankenhauser criteria, include:  whether the party seeking discovery
13  is an actual or potential defendant in any criminal proceeding either
14  pending or reasonably likely to follow from the incident in question;
15  whether the investigation has been completed; whether the information
16  sought is available through other discovery or from other sources;
17  and the importance of the information sought to the plaintiff's case.
18  See Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973);
19  Tuite, 181 F.R.D. at 176-77; In re Sealed Case, 856 F.2d 268, 272
20  (D.C. Cir. 1988).

21      Even if the party seeking disclosure successfully rebuts (by a
22  showing of, among other things, a "compelling need"), the court must
23  then weigh the public interest in non-disclosure against the need of
24  the litigant for access to the privileged information before
25  ultimately deciding whether disclosure is required.  In re The City
26  of New York, 607 F.3d at 945.

27      To assess both the applicability of the privilege and the need
28  for the materials, the court must ordinarily review the materials in

8

question or hold an evidentiary hearing in chambers. Frequently, because filing documents under seal may inadequately protect particularly sensitive information, the court may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the materials appear ex parte to submit the materials for in camera review by the judge. Id. at 948-49. An appropriately general docket entry memorializing any ex parte proceedings can be entered in the public records of the district court so long as it does not compromise the interests of the party holding the confidential information, or the public. Id. at 949 n. 25; In re U.S. Dep't of Homeland Sec., 459 F.3d at 571 (instructing the district court to review the information for which the law enforcement sensitive privilege is being asserted in camera to evaluate whether the privilege applies).

If the court determines that the law enforcement privilege is not sufficient to protect disclosure of the materials at issue, the materials must be disclosed. In re The City of New York, 607 F.3d at 949. However, to minimize the effects of disclosure, the court can restrict the manner in which the documents are provided through the issuance of a protective order. See Fed. R. Crim. P. 16(d)(1). The Second Circuit suggested that where release is directed, the documents should be available only on an "attorneys' eyes only" basis or requiring that the documents-and other submissions that reference them-be filed under seal. In re The City of New York, 607 F.3d at 949.

The court will essentially consider the defendant's "need [for] the evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting at the same point. The degree

of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege."  Harley, 682 F.2d at 1020; see also United States v. Cintolo, 818 F.2d 980, 1002 (1st Cir. 1987) (reviewing "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the qualified privilege"); United States v. Foster, 986 F.2d 541, 543-45 (D.C. Cir. 1993) (balancing defendant's need for information against importance of government's interest in avoiding disclosure).

### C. Government's Assertion of the Law Enforcement Sensitive Qualified Evidentiary Privilege

The material in this case that the United States is seeking to protect is of the type that the law enforcement privilege envisioned – that is, information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations.

In the instant case, disclosing the precise concealments and locations where audio recording devices were installed and the specifications of such devices would unnecessarily compromise the sources and methods used and the future deployment of these investigative tools.  For example, with specific knowledge of the technique used or the concealments, a criminal defendant, or other bad actors observing the trial, could defeat the purpose of the recording system.  Courts have applied the law enforcement sensitive privilege to this type of information.  See Van Horn, 789 F.2d at 1507-08 (type and location of microphone used to record conversations); Cintolo, 818 F.2d at 1001-03 (location of microphones used to record conversations).

1    Similarly, disclosure of methods used to access vehicles during
2    the installation of audio recording devices could also cause
3    unnecessary harm to future investigations where similar techniques
4    may be used.  In addition, the identity of non-testifying government
5    personnel present during the activities referenced herein is not
6    relevant.  If the identity of these individuals were revealed it
7    could compromise sensitive techniques and possibly lead to disclosure
8    of sensitive government programs.  The public's knowledge of such
9    tradecraft and personnel could enable individuals to employ measures
10   to evade such law enforcement actions.  See United States v.
11   Rigmaiden, 844 F. Supp. 2d 982, 997, 1001 (D. Ariz. 2012) (finding
12   that identities of individuals involved in locating an aircard
13   connected to defendant's laptop computer and the precise techniques
14   used to locate the aircard, were privileged law enforcement sensitive
15   information not subject to disclosure); United States v. Rose, 2012
16   WL 1720307, at *1-4 (D. Mass. May 16, 2012) (finding that detailed
17   information about the installation, operation, and removal of a GPS
18   device on defendant's vehicle was privileged law enforcement
19   sensitive information not subject to disclosure).

20   The same is true of witnesses in this case forced to testify
21   about sensitive training that does not relate to their testimony.
22   Testimony related to sensitive training programs could lead to
23   disclosure of sensitive law enforcement programs or even classified
24   material.  Moreover, testimony on such matters does not relate to the
25   specific roles of these witnesses in this case and therefore is not
26   relevant.

27   These possibilities present an unacceptable risk, and squarely
28   demonstrate how disclosure of the information discussed herein "would

be contrary to the public interest in the effective functioning of law enforcement," and it would compromise "the integrity of an enforcement technique" used, which is the hallmark of the evidentiary privilege.  Any compromise of the law enforcement sensitive information discussed herein will have a detrimental impact on the national security of the United States.

Defendants' ability to test the government's evidence will not be impaired by the proposed limitation on the types of information the defense can elicit in the presence of the jury.  The government does not object to general questions about the types of recordings as may be necessary for foundation or context.  However, questions about the technical specifications of recording devices, and the operational aspects of their placement, are not relevant to any issue in this case.  Further, the legality of the collection of the evidence is a question of law to be determined by the Court well before trial.  Thus, the proposed limitation will not prejudice defendants.

Moreover, the public interest in nondisclosure significantly outweighs the defendants' need for the information.  The FBI has always asserted that its sources and methods, to include electronic surveillance capabilities and equipment, are law-enforcement sensitive.  In addition, FBI policy dictates that the devices themselves are not to be compromised through court proceedings.  The probative value of any evidence elicited by the defense concerning technical specifications of audio and video recording devices, specific training of government witnesses on sources and methods, methods of accessing vehicles during the installation of audio devices, and the identity and role of non-testifying witnesses during

1  collection activities, in light of the national security interests in
2  this case, is substantially outweighed by a danger of unfair
3  prejudice, confusion of the issues, misleading the jury, undue delay,
4  and wasting time.   Fed. R. Evid. 403.

5  Furthermore, any contention that the collected evidence was
6  obtained illegally will be resolved by the Court when it decides
7  other pending motions.

8  If the Court requires further information or explanation on any
9  matter contained within this motion, the government requests that the
10  Court hold an ex parte hearing so that the government may have the
11  opportunity to provide further explanation regarding sensitive and/or
12  classified matters.

13  **III. CONCLUSION**

14  For the foregoing reasons, the government respectfully requests
15  that this Court instruct the defense and any defense witnesses not to
16  mention, refer to, interrogate concerning, or attempt to convey to
17  the jury in any manner, either directly or indirectly, any of the
18  matters set out in this motion without first obtaining permission
19  from the Court outside the presence and hearing of the jury.   The
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27
28

1 | Government further requests the Court to instruct the defense to warn
2 | and caution each and every one of the defense witnesses to strictly
3 | follow these instructions.

4 | Dated: April 25, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division


_____/s/_____
JUDITH A. HEINZ
Assistant United States Attorney


_____/s/_____
DEIRDRE Z. ELIOT
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA