O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br> Plaintiff, <br><br> vs. <br><br> **NADER SALEM ELHUZAYEL, ET AL.** <br> Defendants. | Case No.: SA CR 15-0060-DOC-1 <br><br><br><br> **ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR A NEW TRIAL [177]** |

Before the Court is Defendant Nader Salem Elhuzayel's ("Elhuzayel" or "Defendant") Motion for Judgment of Acquittal and/or Motion for a New Trial ("Motion") (Dkt. 177). For the reasons stated below, the Court DENIES the Motion.

## I. Background

On June 21, 2016, after a 10-day trial, a jury returned a verdict of guilty on all counts charged against Defendant Nader Salem Elhuzael ("Elhuzayel" or "Defendant"). *See* Jury Verdict Form (Dkt. 167). The jury specifically found Elhuzayel guilty of the following crimes: Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization, 18 U.S.C. § 2339B (Count One); Attempting to Provide Material Support and Resources to a Designated Foreign Terrorist Organization, 18 U.S.C. § 2339B (Count Two); and Bank Fraud, 18 U.S.C. §§ 1344, 2 (Counts Four through Twenty-Nine).

On June 28, 2016, Elhuzayel filed the instant Motion. In the Motion, Elhuzayel seeks either a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or a new trial pursuant to Federal Rule of Criminal Procedure 33. Mot. at 2. The United States of America opposed on July 18, 2016 (Dkt. 186), and Elhuzayel filed a reply on July 28, 2016 (Dkt. 190). The Court held a hearing on the Motion on August 1, 2016. *See* Minutes of Motion Hearing (Dkt. 191).

## II. Legal Standard

### A. Motion for a Judgment of Acquittal

"A Rule 29 motion is basically a challenge to the sufficiency of the evidence." *United States v. Wong*, No. CR-12-0483 EMC, 2014 WL 923347, at *5 (N.D. Cal. Mar. 5, 2014). "In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or rule out every hypothesis except that of guilt beyond a reasonable doubt." *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (citation and internal quotation marks omitted). However, "evidence is

insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case, or where there is a total failure of proof of a requisite element." *Id.* at 1167.

### B. Motion for a New Trial

Federal Rule of Criminal Procedure 33 authorizes the Court, on motion of a defendant, to "vacate any judgment and grant a new trial if the interest of justice so requires." A "motion for a new trial is directed to the discretion of the district judge. It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). The defendant has the burden to justify the need for a new trial. *United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986).

## III. Discussion

Defendant Elhuzayel argues the evidence offered at trial was insufficient in a number of regards. With respect to Counts One and Two, Defendant Elhuzayel argues (1) the government presented insufficient evidence to show, beyond a reasonable doubt, the Islamic State was a designated foreign terrorist organization ("FTO") at the time of his arrest, Mot. at 4–5; and (2) the government presented insufficient evidence that Elhuzayel was under the control of the Islamic State, *id.* at 5–7. With respect to Counts Four through Twenty-Nine – the bank fraud charges – Elhuzayel argues the government presented insufficient evidence that he possessed knowledge of the fraudulent scheme involving his bank accounts. *Id.* at 9–10.

Elhuzayel separately argues the admission into evidence of certain images was both irrelevant and unduly prejudicial. Further, because they were found on the co-Defendant's phone, he argues the Court should have granted a severance. *Id.* at 10.

### A. Rule 29 Motion

The Court will address these arguments in turn, beginning with the sufficiency of evidence arguments brought pursuant to Rule 29.

#### 1. Islamic State as a Designated Foreign Terrorist Organization

The Court will first consider Elhuzayel's argument regarding the designation of the Islamic State as an FTO. Generally, Elhuzayel argues he could not be convicted of Counts One

and Two because the State Department had not designated, under 8 U.S.C. § 1189(b) the English-language term "Islamic State" as an alias for the Islamic State of Iraq and the Levant ("ISIL"), also known as the Islamic State of Iraq and Syria ("ISIS"), at the time of his arrest. *Id.* Because the Islamic State was formally designated on September 21, 2015, four months after Defendant's arrest, Elhuzayel contends the "act was not criminal at the time of its commission." Mot. at 4 (citation omitted).

The Court rejects this argument for several reasons. First, Defendant provides no legal authority suggesting the government must prove that every alias of an FTO has beenformally designated as an alias under 8 U.S.C. Section 1189(b). Indeed, the existing authority suggests otherwise. *See National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 200 (D.C. Cir. 2001). As the D.C. Circuit explained,

> It would simply make no sense for us to hold that Congress empowered the Secretary to designate a terrorist organization—so as to . . . prevent anyone in the United States from providing material resources or support the organization—only for such periods of time as it took such organization to give itself a new name, and then let it happily resume the same status it would have enjoyed had it never been designated. If the Secretary has the power to work those dire consequences on the same entity calling itself "Organization A," the Secretary must be able to work the same consequences on the same entity while it calls itself "Organization B."

*Id.* at 200; *see also United States v. Sadequee*, No. 1:06-cr-147-WSD, 2009 WL 3785566, at *4 (N.D. Ga. Nov. 10, 2009) ("Even if Defendant Ahmed did meet with 'JUD representatives,' the evidence at trial was that JUD representatives and LeT representatives were one in the same."). The Court agrees with this logic. If Defendant's position were adopted, organizations would be incentivized to change their names on a regular basis, and individuals could escape liability far too easily. Thus, the Court finds the government did not need to prove the particular term "Islamic State" was included in the FTO designation at the time of defendant's arrest; rather, the

government had the burden of proving the organization to which defendant intended to provide material support or resources is, in fact, the same organization as the designated FTO.

Indeed, the government presented significant evidence on this exact issue at trial. Specifically, the government's expert witness, William Braniff ("Braniff"), testified that ISIS's mission, organizational structure, leadership, flag, and media wing, had remained the same despite any name changes. Additionally, Braniff stated the State Department's May 15, 2015 FTO designation included "Dawla al Islamiya," which he testified is Arabic for the English-language term "Islamic State." Thus, the government introduced evidence at trial that Elhuzayel intended to provide material support or resources to an FTO-designated organization.

Additionally, the government presented evidence at trial that Elhuzayel interchangeably referred to ISIS, ISIL, and the Islamic State at different times. For instance, Elhuzayel referred to ISIS in a tweet on December 27, 2014. Gov't Exs. 304, 450. And the government introduced a part of Elhuzayel's video-taped post-arrest statement in which Elhuzayel used the term "ISIS" to refer to the same organization the FBI Special Agent called "Islamic State." *Id.* Gov't Ex. 1016/1016A.[1] Thus, Elhuzayel's communications were not strictly limited to the "Islamic State," as Defendant implies. And it lends further support to the government's argument that ISIS, ISIL, and the Islamic State are all the same organization. Thus, based on this evidence, the jury could have inferred Elhuzayel intended to provide material support or resources to ISIS or ISIL, which had been formally designated as an FTO at the time of Defendant's arrest.

Viewing all of this evidence in the government's favor, a rational trier of fact could have found the organization to which Defendant Elhuzayel intended to provide material support or resources had been designated as an FTO by the Secretary of State. Thus, Defendant's Motion is DENIED on this issue.

---

[1] Indeed, as Defendant notes in his Reply, "[t]he government [] cited admitted evidence in Gov't Exh. 1016/1016A that Mr. Elhuzayel told the FBI in an interview that he intended to join 'ISIS.'" Reply at 5. This supports a finding that Defendant was seeking to join ISIS, which was indisputably designated as an FTO at the time of Defendant's arrest. While Defendant makes arguments that he made these statements under "a great deal of duress," he provides no legal authority or evidence in support of this argument; therefore, the Court finds it unpersuasive.

### 2. Substantial Step, Overt Act, and Working Under the Direction and Control of an FTO

Defendant next argues the evidence at trial was insufficient to prove that Elhuzayel "acted under the control of the Islamic State and that he took a substantial step to offer himself to the Islamic State." Mot. at 5.

18 U.S.C. § 2339B(h) – entitled "Provision of personnel" – provides:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organizations direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

"Mere preparation to commit a crime does not constitute a substantial step." *Hernandez-Crus v. Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011) (internal quotation marks omitted). Rather, "[e]ven when the defendant's intent is clear, his actions must cross the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances." *United States v, Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995) (internal quotation marks omitted). The "identification of a substantial step . . . is necessarily a matter 'of degree,' that can vary depending on 'the particular facts of each case' viewed in light of the crime charged." *United States v. Farhane*, 634 F.3d 127, 147 (2d Cir. 2011).

Here, Elhuzayel specifically argues he had no contacts with individuals in the Islamic State, and indeed had no "plan" to join the Islamic State. Mot. at 6. He adds that his acts were mere preparation. *Id.*

The Court rejects this argument. As an initial matter, given the charges, the Court clarifies that the government was not required to prove Defendant acted under the direction and

control of ISIS at the time of the offense conduct; rather, the government had to prove that "defendant conspired to work, and attempted to work, under the direction and control of ISIS." Opp'n at 17 (citations omitted); *see also* Jury Instructions (Dkt. 163) No. 24 ("The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed."); Jury Instruction No. 26 (concerning the attempt charge, "[f]irst, the defendant intended to provide material support or resources to a foreign terrorist organization; and [s]econd, the defendant did something that was a substantial step toward committing the crime of providing material support or resources to a foreign terrorist organization.").

Further, the Court finds the government presented sufficient evidence on these issues. Specifically, the government introduced evidence that showed Elhuzayel entered into an agreement with another person to provide himself to work under the direction or control of ISIS; he intended to provide himself to work under the direction or control of ISIS; and he took a substantial step toward committing the crime of providing himself to work under the direction or control of ISIS. In particular, the government introduced recorded conversations between the two Defendants in which they expressed their intent to join ISIS/the Islamic State as fighters. For example, the government introduced a text message exchange saying "we make a pact that we fight on the front lines." Gov't Ex. 61. The government also introduced a video in in which Defendant Elhuzayel swore his allegiance to the Islamic State and stated he would "be there to fight with you guys." Gov't Ex. 2/2A.

Defendant argues that he was not going to join the Islamic State, but rather was planning to travel to Tel Aviv, Israel and thereafter to Palestine to marry a woman. *See* Mot. at 2. While Elhuzayel certainly made this argument at trial, the government presented sufficient evidence to the contrary. Elhuzayel told the FBI in his post-arrest interview, for instance, that he obtained a plane ticket to Israel as a "cover," and that he actually intended to travel only as far as Istanbul, and from there he would go to the Islamic State. *See* Gov't Ex. 1018/1018A. Based on the evidence presented at trial, a rational trier of fact could have credited the government's version of the relevant events and reasonably found Elhuzayel intended to provide himself to work

under the direction or control of ISIS. It is not the government's responsibility to "rebut all reasonable interpretations of the evidence that would establish the defendant's innocence." *Nevils*, 598 F.3d at 1164. Thus, the Court concludes Defendant has not met his burden.

Relatedly, Elhuzayel argues – as he did at trial – that he had no "plan" to join the Islamic State, and thus he did not take a substantial step in the commission of a crime. In his Motion, he states, "the inchoate plan of the defendants . . . could not have been consummated unless and until Mr. Elhuzayel met with someone once he arrived at Istanbul and that person was ready, willing and able to assist him." Mot. at 7.

The Court rejects the narrow view that Elhuzayel did not take a "substantial step" because he had not identified the particular person who would assist him in joining the Islamic State. To the contrary, the government introduced sufficient evidence to support the jury's conclusion on this issue. The government's exhibits indicate Elhuzayel had contact with pro-ISIS individuals, including those who were overseas, *see, e.g.*, Gov't Exs. 326–28. Elhuzayel told the FBI that after he reached Istanbul, he was going to post on Twitter some hint that he wanted to make "hijra" – a migration to ISIS – in order to solicit assistance in traveling to the Islamic State, that someone would send a tweet to him in response, he would get from that person a Surespot contact,[2] and then he would tell the Surespot contact he was in Istanbul waiting for assistance in traveling to the Islamic State. *See* Gov't Ex. 1020/1020A. Further, Braniff, the government's expert, testified it was common for travelers to the Islamic State to use an online facilitator. The government also introduced evidence that Elhuzayel purchased a plane ticket, traveled to the airport, and passed through TSA security. Mot. at 17. This evidence, coupled with the evidence mentioned above, was of "such a nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that his actions were undertaken with a design to commit the crime." *United States v. Scott*, 767 F.2d 1308, 1312 (9th Cir. 1985) (citation omitted). "When considering the nature of the offense at issue and the particular circumstances of this case," the Court concludes the government's evidence was sufficient to prove Elhuzayel took a substantial step toward the commission of the offense.

---

[2] Surespot is an encrypted chat messenger application.

*United States v. Naim*, No. 13-CR-660 (NGG), 2015 WL 3440253, at *23 (E.D.N.Y. May 20, 2015) (citing *Farhane*, 634 F.3d at 144).

In sum, viewing the evidence in the government's favor, as the Court is required to do, a rational trier of fact could have found (1) Elhuzayel entered into an agreement with another person to provide himself to work under the direction or control of ISIS; (2) Elhuzayel intended to provide himself to work under the direction or control of ISIS; and (3) Defendant Elhuzayel did something that was a substantial step toward committing the crime of providing himself to work under the direction or control of ISIS. Therefore, Defendant's Motion is DENIED on this issue.[3]

### 3. Bank Fraud Charges

Separately, Elhuzayel argues the government failed to introduce any evidence of his "knowledge of unauthorized access" to his bank account. Mot. at 8–9. Specifically, he contends there was no "evidence of a conversation or statement indicating Mr. Elhuzayel's knowledge of unauthorized access to his account was admitted, other than a single telephone call with the bank where he was in fact notifying the bank of the unauthorized use of his account." *Id.* In his Motion, Elhuzayel only specifically references 2 of the 26 bank fraud counts: Count Fifteen and Count Twenty-Eight. *Id.* at 9. With respect to these two counts, Elhuzayel argues the photographs introduced by the government do not show Elhuzayel was involved with those particular transactions.

As a preliminary matter, the Court clarifies the relevant jury instruction did not use Defendants' phrase of "knowledge of unauthorized access." Rather, the first element of the bank fraud charge, as the parties stipulated to in Jury Instruction 29, states, "Defendant knowingly

---

[3] Additionally, in his Motion, Elhuzayel includes one sentence suggesting the government did not present sufficient evidence of an overt act in furtherance of a conspiracy. *See* Mot. at 7 ("The purchase of a ticket, and the attempt to board a plan [sic], are not legally sufficient, even assuming the traveler wished to join a foreign terrorist organization, fails to suffice as evidence of an overt act in the absence of evidence of an actual means to consummate the alleged criminal purpose . . . ."). As an initial matter, an overt act in furtherance of the conspiracy is not an element of a § 2339B conspiracy. *See United States v. Ahmed*, 94 F. Supp. 3d 394, 431 (E.D.N.Y. 2015) (declining to read an overt act requirement into § 2339B). Even assuming an overt act requirement exists in § 2339B, the Court finds the government provided sufficient evidence to show Elhuzayel committed an overt act.

executed a scheme to defraud a financial institution as to a material matter." Jury Instruction No. 29.

In any event, the Court finds the government introduced ample evidence of the bank fraud charges. Broadly, the government introduced evidence of a pattern whereby a stolen check was deposited into Elhuzayel's bank account using Elhuzayel's debit card; on the same day or the following day, cash would be withdrawn from the account using Elhuzayel's debit card; the stolen check would ultimately be returned as unpaid, and the deposited funds would be subtracted from the account. In addition, the government introduced evidence that phone calls from Elhuzayel's phone would be frequently be made to check the balance in an account before a cash withdrawal was made.

Specifically, Counts Four through Fourteenth, and Count Nineteen, involved four stolen checks deposited into Elhuzayel's account at Wells Fargo and eight cash withdrawals. The government introduced evidence that the deposits and cash withdrawals were made at the same branch (Gov't Exs. 901, 902, 914A, 915A, 917A, 920–22, 924A, 925–26). Exhibit 916 is a photograph showing Elhuzayel, together with his mother and brother, while conducting the transactions underlying Counts Ten and Eleven. Government's Exhibit 923 is a photograph showing Elhuzayel conducting the transactions underlying Counts Twelve and Thirteen. Government's Exhibit 976 is a photograph showing Elhuzayel conducting the transaction underlying Count Fourteen. Government's Exhibit 930 is a photograph of Elhuzayel conducting the transaction underlying Count Nineteen. Special Agent Larraga also testified that on April 30, 2015, she saw Elhuzayel in front of the Wells Fargo Bank. Based on the evidence, the jury could have found that Defendant knew of and in fact participated in the bank fraud activity charged in Counts Four through Fourteen, and Count Nineteen.

Counts Fifteen through Eighteen concerned a stolen check (the "Salinas check") deposited into Elhuzayel's account at Chase Bank and three cash withdrawals. Defendant's brother was photographed during the transactions. *See* Gov't Ex. 928. Sergeant Lopez testified that on May 1, 2015, he observed Defendant and his brother arrive at the Chase Bank. Special Agent James Long testified that on May 2, 2015, he observed Elhuzayel at the Chase Bank.

Viewing this evidence in the government's favor, it established that Elhuzayel knowingly executed a scheme to defraud a financial institution.

Counts Twenty through Twenty-Four involved one stolen check and four cash withdrawals. *See* Gov't Exs. 902, 932, 933A, 936. Elhuzayel and his brother were photographed at the ATM conducting the transactions. Gov't Exs. 902, 932. The government presented photographic evidence of withdrawals on May 6, 2016, and Special Agent Mark Fendrich testified that he observed Elhuzayel at two separate Wells Fargo Bank branches on May 6, 2015. Viewing this evidence in the government's favor, it is enough to establish Elhuzayel knew and participated in this bank fraud activity.

Counts Twenty-Five through Twenty-Seven involved another stolen check (the "Kim check") deposited on May 6, 2015 and two cash withdrawals executed the following day. *See* Gov't Exs. 903, 942A. The government introduced evidence that Elhuzayel telephoned checklookup.com to find whether the "Kim check" belonged to a valid checking account, Gov't Exs. 731, 731A; Elhuzayel was photographed at the ATM on May 6, Gov't Ex. 941; and Special Agent Mark Civiletto testified that a checkbook containing blank checks matching the "Kim check" deposited by Elhuzayel was seized during the search of his residence on May 21, 2015. Special Agent Terry Randolph also testified that on May 7, 2015, he observed Elhuzayel outside the Chase Bank branch, enter the bank, and withdraw cash from inside. Once again, the Court finds this evidence sufficient to show Elhuzayel knowingly participated in this bank fraud activity.

Counts Twenty-Eight and Twenty-Nine concern the "Khouri check" deposited on May 14, 2015 and a cash withdrawal the same day. Gov't Ex. 904. The evidence at trial showed the name of the original payee was removed and Elhuzayel's name was substituted in its place, Gov't Exs. 947A, 948A; Elhuzayel's brother was photographed during these transactions at the Bank of America ATM, Gov't Ex. 946. Further, Elhuzayel opened his Bank of America account at a different Bank of America branch earlier that same day. *See* Gov't Exs. 904, 908. In addition, Special Agent Neil Shchimke testified that he saw Elhuzayel and his brother on May 14, 2015 at the location where Elhuzayel opened his account. *See* Gov't Ex. 954.

The government also produced various recordings showing Elhuzayel, or someone using his phone, would frequently make calls to check the balance in the accounts before cash withdrawals were made. *See* Gov't Exs. 708, 708A, 710, 710A, 723. 723A, 729, 729A. In addition, the government introduced recordings between Elhuzayel, his mother, and his brother, in which they discussed depositing checks, whether checks would clear, and that the balance in a bank account had dropped. *See* Gov't Exs. 705, 705A, 706, 706A, 718, 718A.

Taken together, and viewed in the light most favorable to the government, this evidence shows a rational trier of fact could have found the essential elements of each bank fraud charge beyond a reasonable doubt.

Elhuzayel's arguments to the contrary are unconvincing. He argues that with respect to Counts Fifteen and Twenty-Eight, only his brother was photographed, and therefore no evidence was admitted to indicate Elhuzayel's knowledge or consent of this activity involving his account. *See* Mot. at 9. But this argument ignores the other evidence discussed above. Specifically, regarding Count Fifteen, Sergeant Lopez testified he saw Elhuzayel and his brother at the Chase Bank ATM together at the time of the transactions. Regarding Count Twenty-Eight, the evidence presented at trial showed that Elhuzayel and his brother were together on May 14, 2015 when Elhuzayel opened his Bank of America account, they were together in a vehicle that departed after Elhuzayel opened his account, and the vehicle was seen near the other Bank of America branch where Elhuzayel's brother was photographed. Based on this evidence, a reasonable jury could find that Elhuzayel and his brother were co-schemers in a bank fraud scheme, and that Elhuzayel authorized his brother to execute the underlying transactions with respect to these counts.

Therefore, Defendant's Motion is DENIED on this issue.

### B. Defendant's Rule 33 Motion for a New Trial

Alternatively, Elhuzayel also moves for a new trial pursuant to Rule 33. Elhuzayel also incorporates his sufficiency of the evidence arguments in arguing for a Motion for a New Trial under Rule 33. *See* Mot. at 10. For the same reasons stated above, the Court DENIES the Rule 33 Motion as it relates to sufficiency of the evidence.

Separately, Elhuzayel argues the admission into evidence of 9/11 and al-Qaeda-related material was irrelevant and unduly prejudicial to him. *Id.* at 7–8.[4] Specifically, Elhuzayel objects to two photographs of former al-Qaeda leader Osama Bin Laden and one photograph of 9/11 hijacker Mohamed Atta that were found on Co-Defendant's iPhone, and one photograph of the World Trade Center during the 9/11 attacks that was found on co-Defendant's Facebook account. *Id.*

The Court is unpersuaded by Elhuzayel's argument. Elhuzayel ignores the fact that, out of an abundance of caution, the Court gave a limiting instruction at trial. Specifically, the Court read the following to the jury on the third day of trial:

> You're about to hear evidence that certain images were found on Defendant Badawi's iPhone and Facebook account. I instruct you that this evidence is admitted only as to Defendant Badawi. Therefore, you must consider it only for that limited purpose and not for any other purpose.[5]

Given this limiting instruction, the admission of the images found on the co-Defendant's iPhone and Facebook account do not warrant a new trial. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) (en banc) ("[C]autionary instruction[s] [are] presumed to have cured prejudicial impact.").

Even if the Court had not given that limiting instruction, a new trial would not be warranted. The photographs were probative of Defendants' intent and their conspiracy. The evidence introduced at trial indicated a relationship between al-Qaeda and ISIS; for instance, the government's expert testified that al-Qaeda was a progenitor of ISIS. Further, Defendants discussed and admired different al-Qaeda leaders, including Anwar al-Awlaki and Ayman al-Zawahiri. *See, e.g.*, Gov't Exs. 701, 701A. For example, on April 24, 2015, in a recorded conversation that was played at trial, Defendants discussed the possibility of al-Qaeda joining up with the Islamic State. *Id.* Thus, the Court finds the photographs had a sufficient link to

---

[4] Elhuzayel makes this argument in the Rule 29 section of his brief. *See* Mot. at 7–8. However, because Rule 29 concerns sufficiency of the evidence, the Court construes Defendant's argument as one for a new trial pursuant to Rule 33.

[5] Because the parties have not provided any citations to the trial transcripts, and because the trial transcripts have not yet been produced, the Court is relying on a rough copy of the transcript.

-13-

Defendants and thus were relevant. Specifically, the photographs supported Defendants' knowledge about, and support of, the global jihadi movement. While the Court recognizes the photographs may invoke a strong reaction, Elhuzayel has not convincingly argued the probative value was substantially outweighed by unfair prejudice. Based on the above, Elhuzayel has not convincingly argued the photographs should have triggered a severance.

Further, the Court reiterates its earlier finding that a severance was not warranted for any reason. As outlined by the Supreme Court, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Ninth Circuit has developed a four-part test to aid the district court's determination, including: "(1) whether the jury may be reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [a defendant] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008). The most important factors are "whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury." *United States v. Sullivan*, 522 F.3d 967, 981–82 (9th Cir. 2008).

Neither Defendant presented an adequate reason to sever the case. Prior to trial, Defendant Badawi raised the concern that he and Elhuzayel may offer irreconcilable, mutually-exclusive defenses. That fear was not borne out at trial. While Elhuzayel alone argued that the Islamic State had not been designated as an FTO and that he intended to travel to Israel to get married, these arguments did not contradict those made by Badawi. In fact, as the Court has previously noted on the record, if Elhuzayel had succeeded on either of these defenses, it would have actually worked to Badawi's benefit. And while Elhuzayel alone was charged with bank

fraud, the jury could cleanly separate the evidence pertaining to those charges from the evidence concerning Badawi.

Additionally, given the conspiracy charge and the extensive communications between the two Defendants, a joint trial was appropriate. Finally, the *Hernandez-Orellana* factors also weighed in favor of trying the two Defendants together. The jury could be reasonably expected to appraise the individual against each Defendant, and they were aided by the limiting instructions noted above. Further, the evidence and legal concepts related to the terrorist and bank fraud charges were well within the competence of an ordinary jury. And neither Defendant identified a specific trial right that would be comprised, or persuasively argued why the jury was prevented from making a reliable judgment.

Accordingly, Defendant's Rule 33 Motion is DENIED.

**IV.   Disposition**

For the foregoing reasons, Elhuzayel's Motion is DENIED in its entirety.

DATED:  August 5, 2016

*David O. Carter*
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE