1  EILEEN M. DECKER
   United States Attorney
2  PATRICK R. FITZGERALD
   Assistant United States Attorney
3  Chief, National Security Division
   JUDITH A. HEINZ (Cal. Bar No. 176264)
4  Assistant United States Attorney
   Senior Litigation Counsel, National Security Division
5  JULIUS J. NAM (Cal. Bar No. 288961)
   Assistant United States Attorney
6  General Crimes Section
        1500/1200 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-7280/4491
        Facsimile: (213) 894-7631/0141
9       E-mail:  judith.heinz@usdoj.gov
        E-mail:   julius.nam@usdoj.gov
10 DEIRDRE Z. ELIOT (Cal. Bar No. 145007)
   Assistant United States Attorney
11 Terrorism and Export Crimes Section
        8000 United States Courthouse
12      411 West Fourth Street
        Santa Ana, California 92701
13      Telephone: (714) 338-3599
        Facsimile: (714) 338-3564
14      E-mail:  deirdre.eliot@usdoj.gov

15 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
16

17              UNITED STATES DISTRICT COURT

18          FOR THE CENTRAL DISTRICT OF CALIFORNIA

19                   SOUTHERN DIVISION

20 UNITED STATES OF AMERICA,        No. SA CR 15-00060(A)-DOC

21           Plaintiff,             **GOVERNMENT'S SENTENCING POSITION
                                    RE: DEFENDANT NADER SALEM**
22              v.                  **ELHUZAYEL**

23 NADER SALEM ELHUZAYEL and        Hearing Date: September 26, 2016
   MUHANAD ELFATIH M. A. BADAWI,    Hearing Time: 1:30 p.m.
24                                  Location:    Courtroom of the
           Defendants.                           Hon. David O.
25                                               Carter

26

27      Plaintiff United States of America, by and through its counsel

28 of record, the United States Attorney for the Central District of

1   California and Assistant United States Attorneys Judith A. Heinz,

2   Deirdre Z. Eliot, and Julius J. Nam, hereby submits the attached

3   memorandum of points and authorities in support of the government's

4   sentencing position for defendant Nader Salem Elhuzayel.   The

5   government requests that the Court consider at sentencing the

6   attached memorandum of points and authorities, the files and records

7   of this case including the government's Rule 32(f) response to the

8   presentence report, the evidence admitted at trial, and such further

9   argument as this Court may permit.

10   Dated: September 19, 2016        Respectfully submitted,

11                                  EILEEN M. DECKER
                                 United States Attorney

12

13                                  PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division

14

15                                      /s/

16                                  JUDITH A. HEINZ
                                 Assistant United States Attorney

17

18                                      /s/
                                 DEIRDRE Z. ELIOT

19                                  Assistant United States Attorney

20                                      /s/

21                                  JULIUS J. NAM
                                 Assistant United States Attorney

22                                  Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

DESCRIPTION                                                                PAGE

3

TABLE OF AUTHORITIES ............................................... ii

4

I.     INTRODUCTION ................................................ 1

5

II.    RELEVANT FACTS .............................................. 1

6

       A.    Defendant Elhuzayel Sought to Provide ISIL with Its
             Most Needed Resource -- Fighters. ......................... 1

7

8

       B.    Defendant Elhuzayel Conspired to Provide, and
             Attempted to Provide, Fighters to ISIL ................... 3

9

III.   SENTENCING GUIDELINE RANGE CALCULATION ...................... 19

10

IV.    SECTION 3553(a) FACTOR ANALYSIS ............................. 21

11

       A.    The Need for the Sentence Imposed to Reflect the
             Seriousness of the Offenses, Promote Respect for the
             Law, and Provide Just Punishment Requires a 30-Year
             Term of Imprisonment. ..................................... 21

12

13

       B.    Defendant Elhuzayel's History and Characteristics
             Require a Guideline Sentence. ............................. 22

14

15

       C.    A 30-Year Term of Imprisonment Is Necessary to Provide
             Adequate Deterrence to Criminal Conduct and to Protect
             the Public From Further Crimes by Defendant Elhuzayel. .. 23

16

17

       D.    A Guideline Sentence Will Avoid Unwarranted Sentencing
             Disparities Among Defendants With Similar Records Who
             Have Been Found Guilty of Similar Conduct. .............. 25

18

19

V.     CONCLUSION ................................................. 27

20

21

22

23

24

25

26

27

28

i

**TABLE OF AUTHORITIES**

DESCRIPTION ..................................................... PAGE

CASES

Callanan v. United States,
    364 U.S. 587 (1961) ......................................... 26

United States v. Abu Ali,
    528 F.3d 210 (4th Cir. 2008) ............................... 27

United States v. Ali,
    799 F.3d 1008 (8th Cir. 2015) .............................. 24

United States v. Carty,
    520 F.3d 984 (9th Cir. 2008) ........................... 19, 20

United States v. Jayyousi,
    657 F.3d 1085 (11th Cir. 2011) ......................... 24, 27

United States v. Khan,
    461 F.3d 477 (4th Cir. 2006) ............................... 26

United States v. Meskini,
    319 F.3d 88 (2d Cir. 2003) ............................. 23, 24

United States v. Ressam,
    679 F.3d 1069 (9th Cir. 2012) ................. 21, 24, 26, 27

STATUTES

18 U.S.C. § 3553(a) ........................................ 1, 21

18 U.S.C. § 3583(d) ........................................... 27

18 U.S.C. § 3663A ............................................. 27

RULES

USSG § 2B1.1(a)(1) ............................................ 20

USSG § 2B1.1(b)(1)(B) ......................................... 20

USSG § 2M5.3 ................................................. 20

USSG § 2M5.3(b)(1)(E) ......................................... 20

USSG § 3A1.4(a) .............................................. 20

USSG § 3A1.4(b) .............................................. 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Nader Salem Elhuzayel ("defendant Elhuzayel" or "defendant") was convicted at trial of conspiring to provide, and attempting to provide, material support or resources to a foreign terrorist organization, specifically, the Islamic State of Iraq and Syria ("ISIL"), aka the Islamic State.  The "material support" defendant Elhuzayel conspired and attempted to provide to ISIL was a fighter -- defendant Elhuzayel himself.  In addition, defendant Elhuzayel was convicted of 26 counts of bank fraud that defendant committed to finance the provision of himself to ISIL.

For the reasons set forth below, the government respectfully submits that the Court should sentence defendant Elhuzayel to a term of imprisonment of 360 months, a life term of supervised release, no fine, and a $2,800 special assessment.

### II.   RELEVANT FACTS

The facts summarized below, derived from the evidence admitted at trial and the presentence report, demonstrate that the sentence advocated by the government is necessary to fulfill the purposes of sentences in 18 U.S.C. § 3553(a)(2).

### A.    Defendant Elhuzayel Sought to Provide ISIL with Its Most Needed Resource -- Fighters.

ISIL is "the most lethal terrorist organization in the world." Exh. A, at 49; Exh. B, at 135 (William Braniff testimony).[1]  But to appreciate the gravity of defendant Elhuzayel's conduct, it is

---

[1] Attached hereto as Exhibits A and B are copies of transcripts (Day 7, Volumes II and III, respectively) of the trial testimony of expert witness William Braniff.  The referenced page numbers are those located at the bottom center of each exhibit page.

1  equally important to understand ISIL's critical need for fighters.

2  In late June 2014, ISIL held and controlled territory in Iraq and

3  Syria.  It declared itself an Islamic caliphate and announced yet

4  another name for itself in a series of aliases -- "the Islamic

5  State."  In July 2014, ISIL's leader, Abu Bakr al-Baghdadi, called on

6  all Muslims throughout the world to "stand up and rise," to "take up

7  arms," to become "soldiers of the Islamic State," and to "fight."

8  See Gov't Exh. 1006 (A Message to the Mujahidin and the Muslim Ummah

9  in the month of Ramadan); Exh. A, at 53-57.  The purpose of al-

10  Baghdadi's call was clear.  For ISIL to achieve its mission of the

11  establishment of a world-wide Islamic caliphate and the subjugation

12  of all people to Sharia law, the terrorist organization needed more

13  fighters to gain and hold its ever-expanding territory.[2]  See PSR

14  ¶ 9.  Thus, of all the resources needed by ISIL to maintain and

15  expand its Islamic caliphate, fighters have been, and are, essential.

16      After Abu Bakr al-Baghdadi issued the call to arms in July 2014,

17  ISIL continued to expand its territory.  It continued to gain ground

18  in Iraq and Syria.[3]  ISIL expanded into Libya and the Egyptian Sinai,

19  and gained affiliates in Afghanistan-Pakistan, Algeria, Nigeria, the

20

21

22      [2] At trial, expert witness, William Braniff, testified that the
23  goals of ISIL include establishing a caliphate, expanding the
    boundaries of that caliphate until the world is dominated by its
24  interpretation of Islam, and the imposition of Sharia law, as
    practiced by ISIL, across the world.  Exh. A, at 53, 63.
25      [3] See U.S. Dept. of State Publication, Country Reports on
    Terrorism 2014 (June 2015), at 296, 355, accessed at
26  http://www.state.gov/documents/organization/239631 ("2014 State Dept.
    Country Reports"); Gov't Exh. 102 (copy of ISIL's publication, Dabiq,
27  found on defendant Elhuzayel's USB drive in his carry-on bag seized
28  at the airport), at 12-13, 16-17, 32-33.

1  Philippines, and Yemen.[4]  As the evidence at trial demonstrated

2  conclusively, defendant Elhuzayel and codefendant Badawi answered Abu

3  Bakr al-Baghdadi's call to provide soldiers to the Islamic State.

4      B.   Defendant Elhuzayel Conspired to Provide, and Attempted to
            Provide, Fighters to ISIL

5

6      At trial, the government introduced photos, internet

7  communications, and recorded conversations in which defendants

8  Elhuzayel and Badawi expressed their agreement to provide fighters to

9  ISIL, and their approval of, and joint desire to participate in,

10 ISIL's terrorist activities.  Defendant Elhuzayel used social media

11 accounts to communicate with ISIL supporters and operatives, to

12 disseminate pro-ISIL information, and to assist ISIL supporters and

13 operatives to have current contact information about each other by

14 distributing new account information for those whose accounts had

15 been suspended.  See, e.g., Gov't Exhs. 206, 326-328, 330-332, 347,

16 350, 358, 360, 373, 450.

17     On October 13, 2014, defendant Elhuzayel created a Facebook

18 account, using the ISIL flag as his profile picture, and posted

19 "Islamic State will be victorious, Inshallah [God willing]."  Gov't

20 Exh. 404/404A;[5] PSR ¶ 12.  On the following day, again on his

21 Facebook account, defendant Elhuzayel asked Allah to grant him

22 martyrdom and the success to leave this country and fight for his

23 cause, and then stated, "Oh allah, destroy your enemies and give the

24 Islamic state victory."  Gov't Exh. 404/404A; PSR ¶ 13.  On October

25

26     [4] See 2014 State Dept. Country Reports, at 297; U.S. Dept. of
   State Publication, Country Reports on Terrorism 2015 (June 2016), at
27 7, 79, 165-167, 175-178, 200-201, 229-230, 309-312, 362, 373-376,
   accessed at http://www.state.gov/documents/organization/258249.
28     [5] The designation "A" refers to the transcript of a video or
   audio recording or an English-language translation of an exhibit.

                                    3

30, defendant Elhuzayel posted on his Facebook, "Only the ignorant
brain washed individuals call islamic state terrorists."  Gov't Exh.
404/404A.

On October 21, 2014, defendant Badawi made a video of defendant
Elhuzayel pledging allegiance to ISIL.  At the beginning of the
video, defendant Badawi, in fluent Arabic, introduced defendant
Elhuzayel as a supporter of the Islamic State, who was addressing "a
letter to the Mujahideen at the Islamic State in Syria and Iraq."
Gov't Exh. 2/2A (video found on Badawi's iPhone).  On the video,
defendant Elhuzayel stated "I totally support the Islamic State . . .
I will join you guys soon . . . I will be there to fight with you
guys . . . I will fight for the sake of Allah to protect what we
believe in."  Id.; PSR ¶ 14.  Contrary to defendant Elhuzayel's
assertion, there is no evidence this video was ever deleted from
defendant Badawi's iPhone.

On December 27, 2014, in a Twitter communication, defendant
Elhuzayel described his eager anticipation of ISIL attacking Israel,
and beheading its victims, as follows:

> NE:[6] Isis is getting ready to attack Israel now?  This is
> exciting
> Looking forward to see some yahoodi heads rolling
> Or dead bodies carrying their own yahoodi heads
> And jihadi john doing this stance on them
> (link to picture of Jihadi John decapitating victim
> attached)

Gov't Exhs. 304 and 450.  Defendant Elhuzayel attached to this
communication a picture of a man lying on his stomach, and another
man, "Jihadi John," sitting on top of the man holding the prone man's
head back, displaying the man's severed neck and a bloody knife.  At
trial, William Braniff testified that "Jihadi John" is the name given

---

[6] "NE" is an abbreviation for defendant Nader Elhuzayel.

4

to the ISIL fighter who, beginning in August 2014, was responsible for beheading multiple victims, including American journalists James Foley and Steven Sotloff, and humanitarian aid worker Peter Kassig. Exh. B, at 87-90; see Gov't Exhs. 109 (photo of victim Peter Kassig from defendant Elhuzayel's USB drive) and 336 (photo of victim Steven Sotloff from defendant Elhuzayel's Twitter account). Braniff also testified that ISIL considers Jews to be legitimate targets of violence. Exh. A, at 63.

On March 1, 2015, defendant Elhuzayel disseminated the following Twitter communication expressing his approval of ISIL's execution of homosexuals:

> NE:   The only thing more beautiful than rain is homosexuals being thrown off tall buildings (photographs attached)

Gov't Exh. 310. Defendant Elhuzayel attached to this Twitter communication links to photographs depicting men in a Middle-Eastern location throwing men off the top of a multi-story building. William Braniff testified at trial that ISIL maintains a fundamentalist interpretation of Sharia law that ignores traditional Sunni Islam and instead reverts back to a very puritanical interpretation of Islam based on medieval theology. Exh. A, at 62-63. In connection with this interpretation, ISIL carries out draconian public punishments such as cutting off limbs or decapitation or crucifixion for violations of ISIL's interpretation of Sharia law. Exh. A, at 63.

On March 27, 2015, defendants Badawi and Elhuzayel exchanged text messages in which they expressed their agreement to join ISIL and fight on the front line:

> MB:[7]   Nader *inshallah* [God willing] when we go we make a pact that we fight on the front line and don't look back

---

[7] "MB" is an abbreviation for codefendant Muhanad Badawi.

1     NE:   *Allahuakbar* [God is great] *inshallah*
            May Allah grant us 72 virgins XD[8]
2

3   Gov't Exh. 61 (text messages found on Badawi iPhone); PSR ¶ 15.

4       On March 28, 2015, defendant Elhuzayel disseminated the

5   following Twitter communication, asking others to disseminate his

6   message advocating martyrdom:

7     NE:   Favorite this and I'll shout you out in the morning
            *insha'allah* [God willing].
8           May Allah allow us to live and die for his cause only and
            grant us *Shaheed* [martyrdom].
9   Gov't Exh. 328.

10      On the same day, March 28, 2015, defendant Badawi tweeted on his

11  Twitter account, "I can't wait to make *Hijra* [religious migration]

12  with my brother @MayAllahAccept (one of Elhuzayel's Twitter accounts)

13  *inshallah* [God willing] to *Alsham* [Syria]." See Gov't Exh. 134 (a

14  tweet from Badawi's Twitter account found on Elhuzayel's USB drive)[9];

15  PSR ¶ 16.  William Braniff testified at trial that ISIL's view of

16  "*Hijra*" means traveling to ISIL-held territory to wage "*jihad*," that

17  is, violent action, on behalf of the caliphate.  Exh. A, at 54, 58.

18  The meaning of "*Hijra*" as migration to the Islamic State for the

19  purpose of engaging in violent jihad is confirmed in ISIL's own

20  online publication, Dabiq.  PSR ¶ 16, n.2.[10]

21      Beginning on or about April 4, 2015, defendant Elhuzayel started

22  to execute a bank fraud scheme to finance his travel to Syria to join

23  ISIL.  Defendant Elhuzayel deposited stolen checks to his bank

24

25      [8] The reference to "72 virgins XD" refers to defendants' belief,
    which is shared by many other jihadists, that a man who dies as a
26  martyr will be able to enjoy 72 virgins, also referenced as 72 *Hur Al
    Ayn*, in the after-life (in Paradise).

27      [9] The hashtag on the tweet was #oAllah_help_us_to_go_to_Alsham.
    Gov't Exh. 134.

28      [10] See Exh. A, at 59 (William Braniff testimony that Dabiq is
    ISIL's English language propaganda magazine).

                                6

accounts and withdrew cash before the banks determined the deposited

checks were fraudulent.  His fraud victimized three banks, and nine

individuals.  Most of the victimized individuals were persons of

modest economic means.  <u>See</u> CR 194 (Order Denying Mot. Judgment of

Acquittal), at 9-12 (summarizing evidence admitted at trial); PSR

¶¶ 38-43.[11]

On April 9, and 10, 2015, defendant Elhuzayel sent out the

following Twitter communication, asking Allah to grant the ISIL

fighters victory and expand the caliphate:

> NE:  May Allah make us amongst the martyrs.
>      May Allah grant the mujahideen victory in tikrit.[12]
>      Make dua for the mujahideen, may Allah destroy the enemies
>      of islam and expand the Khilifa globally.[13]

Gov't Exh. 339.

On April 24, 2015, in a telephone conversation, defendants

Badawi and Elhuzayel discussed how it would be such a blessing to

fight for the cause of Allah and to die in the battlefield; they also

talked about their joint goal to join ISIL as fighters:

> MB:  They have – Islamic State they have a new – new people join
>      their army.
> NE:  Yeah.  They have that every time, man.
> MB:  Yeah, every time.
> NE:  They keep expanding; more people coming.
>      May Allah make us among them, man.
> MB:  Amen.  Amen.
> NE:  I guess we'll like, you know, just die in the battlefield,
>      that's it.  I want to die *Shaheed* [martyr], man.  That's

---

[11] Although defendant Elhuzayel had previously worked mowing
lawns, his employer's business had declined severely due to the
drought.  Defendant Elhuzayel had no other source of income.  Thus,
the bank fraud proceeds were the sole source for the money defendant
Elhuzayel gave defendant Badawi for the plane ticket, the money he
spent to purchase a new iPhone and other new digital devices, and the
$1,016 in cash he had at the airport.

[12] "Tikrit" is a reference to a city in Iraq where ISIL was
fighting.

[13] "Khilifa" is a reference to the Islamic caliphate announced by
Abu Bakr al-Baghdadi.

1      all I want in this life man.  I just ask Allah for that.

2  Gov't Exh. 701/701A (recorded telephone conversation); PSR ¶ 17.

3      While most of defendants' communications related to ISIL, the

4  evidence established that both defendants revered many leaders of the

5  global jihadi movement and held favorable opinions about al-Qa'ida.

6  As William Braniff testified, ISIL grew out of a branch of al-Qa'ida,

7  specifically, al-Qa'ida in Iraq.  Exh. A, at 49.  In their telephone

8  conversation on April 24, 2015, defendants Elhuzayel and Badawi

9  discussed optimistically an ISIL -- al-Qa'ida merger:

10      NE:  Dude, could you imagine once Al-Qa'ida teams up with
            Islamic State?
11      MB:  Wow, it will be huge.
        NE:  Yeah, man.
12

13  Gov't Exh. 701/701A.

14      On May 3, 2015, defendants Badawi and Elhuzayel, in a telephone

15  conversation, expressed looking forward to being united in the

16  Islamic State:

17      NE:  *Alhamdulillah* [Praise be to Allah].  May we be united in
            the Islamic State.
18      MB:  [O Lord of the Worlds].
        NE:  Amen.  *Jannah* [Paradise], man.
19      MB:  Amen.
        NE:  Yeah, amen, 72 *Hur Al Ayn* [women of Paradise)].[14]
20      MB:  Oh yes.

21  Gov't Exh. 714/714A (recorded telephone conversation); PSR ¶ 18.

22      On the same date, May 3, 2015, two gunmen opened fire outside a

23  Prophet Mohammed cartoon contest in Garland, Texas.  PSR ¶ 18, n.5.

24  ISIL claimed responsibility for the attack.[15]  Shortly after the

25  _____

26      [14] See Exh. A, at 65 (Braniff testimony that according to ISIL,
    an individual who dies fighting jihad -- martyrs himself -- will be
27  granted the highest levels of paradise.

        [15] See, e.g., Yan, Holly, "ISIS claims responsibility for Texas
28  shooting but offers no proof," cnn.com, May 5, 2015, accessed at

1  attacks, on the evening of May 3, 2015, defendants exchanged text

2  messages about it, as follows:

>     MB:  What city
>     NE:  Garland texas
>     MB:  Did they do an attack
>     NE:  Yes
>          . . . .
>          May allah grant him *shaheed* [martyrdom]

7  Gov't Exh. 62 (from the Badawi iPhone); PSR ¶ 18.

8      Before the attack, one of the gunman, Elton Simpson, sent out a

9  Twitter communication to multiple contacts, including defendant

10 Elhuzayel, announcing the gunmen had sworn allegiance to Abu Bakr al-

11 Baghdadi. See Gov't Exh. 202 (showing Simpson Tweet received by

12 Elhuzayel).[16]  Defendant Elhuzayel responded to Simpson, asking

13 "*allahuakbar* [God is great] brother was it you?"  This exchange was

14 found on defendant Badawi's iPhone.  See Gov't Exhs. 23/23A, 24/24A

15 (showing Elhuzayel's Tweet to Simpson found on Badawi's iPhone).

16 Defendant Elhuzayel also tweeted to Simpson, "I love you for the sake

17 of Allah brother may Allah grant you *jannat al ferdaus* [the highest

18 level of Paradise reserved for martyrs]."  Gov't Exhs. 203, 204; see

19 PSR ¶ 18.  ISIL operative Abu Hussain al-Britani[17] re-tweeted

---

http://www.cnn.com/2015/05/05/us/garland-texas-prophet-mohammed-
contest-shooting/.

[16] Defendant Elhuzayel had previously been in contact via Twitter
with Simpson.  See Gov't Exh. 201 (April 17, 2015 tweet, "May Allah
give you food in Jannah (Paradise) from the hands of hoor (women of
Paradise)").

[17] At trial, William Braniff testified that Gov't Exh. 382 (a
Twitter message and attachment from defendant Elhuzayel's Twitter
account) contained a photograph of Abu Hussain al-Britani, aka Junaid
Hussain, a British citizen, who joined ISIL in 2013.  In ISIL, Abu
Hussain al-Britani became a notorious hacker for the organization, as
well as an on-line recruiter and someone who would incite violence
on-line, encouraging individuals to engage in violent actions.  See
Exh. A, at 67-68; see also PSR ¶ 18, n.6.

1 | Simpson's original tweet, and this was also found on Badawi's iPhone.

2 | Gov't Exh. 19.[18]  Subsequently, Abu Hussain al-Britani sent a series

3 | of tweets celebrating the Garland, Texas attacks, and these were also

4 | found on Badawi's iPhone and Elhuzayel's Twitter account.  Gov't

5 | Exhs. 15/15A, 16/16A, 17/17A, 18, 19/19A, 367; PSR ¶ 18; see also

6 | Gov't Exh. 382 (Twitter vanity photo of Abu Hussain al-Britani from

7 | Elhuzayel's Twitter account).  In addition, defendant Elhuzayel

8 | received and disseminated internet communications from Abu Hussain al

9 | Britani, including additional communications trumpeting the Garland,

10 | Texas, shootings.  See, e.g., Gov't Exhs. 367-368, 382.

11 |     On May 4, 2015, the day after the Garland, Texas attack,

12 | defendant Elhuzayel re-tweeted the following pronouncement,

13 | attributed to Anwar al-Awlaki, justifying the attack:

14 |         If you have the right to slander the Messenger of Allah.
     |         We have the right to defend him.  If it is part of your
15 |         freedom of speech to defame Muhammad (SAW) it is part of
     |         our religion to fight you.

16 |

17 | Gov't Exh. 371; PSR ¶ 19.[19]

18 |

―――――――――――――――

19 |     FBI Special Agent Scott Wales testified at trial that defendant
     | Elhuzayel, during his post-arrest interview, stated the following: he
20 | was in contact with Abu Hussain al-Britani (who he knew as "Abu
     | Hussain") via Surespot; Abu Hussain al-Britani had inspired Elton
21 | Simpson to carry out the Garland, Texas attacks; Abu Hussain al-
     | Britani was from the Islamic State; Abu Hussain al-Britani, who
22 | defendant believed to be in Syria, knew Elhuzayel was coming to the
     | Islamic State; and Abu Hussain al-Britani had wanted Elhuzayel to do
23 | an attack in the United States.  See PSR ¶ 36.

24 |     [18] At trial, witnesses testified about the information on these
     | exhibits, specifically, that "Amirul Mu'mineen" refers to ISIL leader
25 | Abu Bakr al-Baghdadi; that the Twitter account "atawaakul" was used
     | by one of the shooters, Elton Simpson; and that the profile photo for
26 | the @atawaakul Twitter account is a photo of Anwar al-Awlaki.  (See
     | footnote 19 infra regarding Anwar al-Awlaki).

27 |     [19] William Braniff testified at trial as follows about Anwar Al-
28 | Awlaki.  Al-Awlaki was the primary cleric and recruiter and

1       On May 7, 2015, four days after the Garland, Texas, shootings,

2   defendants Badawi and Elhuzayel made travel arrangements.  While

3   together, defendant Badawi, using a debit card linked to his Pell

4   grant funds, purchased for defendant Elhuzayel a one-way airline

5   ticket on Turkish Airlines for travel on May 21, 2015, from Los

6   Angeles International Airport ("LAX") to Tel Aviv, Israel, with an

7   approximately six-hour layover in Istanbul, Turkey.  See Gov't Exhs.

8   732, 734, 970, 972; PSR ¶¶ 20, 21.  In his post-arrest statement,

9   Elhuzayel said that he gave Badawi cash to make the purchase.  PSR

10  ¶ 35.  However, defendant Elhuzayel had the apparent means -- credit

11  cards and debit cards -- to purchase his own plane ticket.  See Gov't

12  Exh. 624 (photo of credit and debit cards seized from defendant

13  Elhuzayel at the time of his arrest).  This suggests that having

14  defendant Badawi purchase the ticket may have been a "cover" -- an

15  attempt to avoid law enforcement attention.

16       Two days later, on May 9, 2015, in a recorded conversation,

17  defendants Badawi and Elhuzayel again talked about their joint goal

18  to join ISIL as fighters:

19          NE:  My next move is just to bounce.  Oh, learn Arabic actually.
20               That's what I'm doing. . . .  We'll – we'll meet up in the
                 Islamic state.
            MB:  [God willing.  Lord of the Worlds].  Do your parents know?
21

22  _____

23  propagandist for al-Qa'ida in the Arabian Peninsula ("AQAP").  He was
    the primary driver behind "Inspire" magazine, the English language
    propaganda magazine released by AQAP.  Al-Awlaki was in contact in
24  person with a number of the 9/11 hijackers, leading up to the plot of
    September 11, 2001.  He was also in e-mail contact with Nidal Hasan,
25  the Fort Hood shooter.  Al-Awlaki's propaganda, sermons, and speeches
    are prolific, widely available on the Internet, and often are found
26  in cases of radicalization in the United States.  Exh. A, at 72-73;
27  see PSR ¶ 19, n.7.
         The evidence at trial established that both defendants admired
28  Anwar al-Awlaki.  See, e.g., Gov't Exh. 308 (photo of al-Awlaki from
    Elhuzayel's Twitter).

1                     (Elhuzayel's mother speaks in the background)

2         MB:   . . . . Tell her I'm going too.  Tell her I'm going too.
        NE:   . . . . I said we would meet up in the Islamic state. . . .

3         MB:   Tell her – tell her I'm going.  Allah will guide me, man.
            . . . . What your son is doing is – it's very beautiful,

4             man.
        NE:   Yeah.  Apparently they don't see it like that, man.

5         MB:   . . . tell her on the day of judgment I'll make *Shafa'ah*
            [intercession] for you.

6         NE:   *Inshallah*.  Yeah, man.  If I'm going to *Shaheed* [martyr] I
            will -- I will intercede –

7         MB:   . . . . You will intercede for 70 people, *by God willing*.

8 Gov't Exh. 741/741A (recorded telephone conversation); PSR ¶ 23.

9     The following day, May 10, 2015, defendant Badawi advised

10 defendant Elhuzayel that he should go to the "Islamic State" in

11 Egypt, referring to ISIL's territory there.

12         MB:   I was talking to a brother from Mosul on Twitter.
            . . . he said the easiest way to go to Egypt from Palestine

13             -- you go to the Islamic State in Egypt.
            . . he said . . . can somebody from Twitter, like known,

14             say this guy is good, so I can give you the way -- the
            route.

15             So . . . gonna go to the *seigniory of Sinai* [Islamic State
            of Sinai] . . . .

16         NE:   They already established a state?
        MB:   Yeah . . . But they need you there *akhi* [my brother]. . . .

17         NE:   Can you imagine, man?  Being with that army? . . . .
            *Mujahideen* [jihadi fighters].

18

19 Gov't Exhs. 742/742A, 743/743A (recorded telephone conversations);

20 see PSR ¶ 25.  In the same telephone conversation, defendant

21 Elhuzayel spoke about his anticipation of joining ISIL, and his

22 disgust for the United States, as follows:

23         NE:   *Alhamdulillah* [Praise be to Allah], I won't be fasting in
            this filthy country.

24         MB:   Yeah.
        NE:   And *inshallah* [God willing], may -- may Allah make it so

25             that I make it to, to you-know-where.
        MB:   *Inshallah*.

26          NE:   By Ramadan, *inshallah*. . . . .

27 Gov't Exh. 742/742A.

28

On May 15, 2015, while in a vehicle together, defendants Badawi
and Elhuzayel had an extended recorded conversation about their
admiration for Abu Malik al-Tamimi, a prominent ISIL cleric and
leader.  At trial, William Braniff testified that Abu Malik al-
Tamimi, a cleric, fled Saudi Arabia in 2009 to join al-Qa'ida in
Afghanistan/Pakistan, and then left there to join ISIL in Syria,
becoming an ISIL leader.  Al-Tamimi is featured for about 24 minutes
of the 30-minute ISIL video titled, "Until There Came to Them Clear
Evidence."  In the video, al-Tamimi explains ISIL's rational for why
Christians can be subjugated by Muslims.  The video ends with the
murder of approximately 30 Ethiopian Christians; one group is
murdered by beheading -- the other group is murdered at gunpoint.
Exh. B, at 91-93.

Later in this conversation on May 15, 2015, defendants Badawi
and Elhuzayel talked about radicalizing others, and an anticipated
FBI interview of Badawi that would take place after Elhuzayel left to
fight with ISIL:

    MB:  We gotta convert these people before you go. . . .
         Everywhere we go.
    NE:  *Insha'Allah* [God willing].  Maybe three days before I leave
         I will start like a . . . .
    MB:  All right.  Radicalize.
    NE:  Radicalize the people [unintel], you know, just in case.  I
         don't know.  I don't want to get you in trouble though.
    MB:  No worries.
    NE:  Where did he go?
    MB:  Imagine they – they – they bring me over to the private FBI
         room --
    NE:  Yeah.
    MB:  Where did your friend go?  Are you guys part of the
         organization of ISIS?
    NE:  We've gotten a lot of intel coming from people talking
         about you guys trying to radicalize people.  Is it true?
         Where is your friend?  We've been searching for him for –
         for weeks now.  We can't find him.  Where did he go?

1  Gov't Exh. 802.1/802.1A (recorded conversation in vehicle); see PSR

2  ¶ 27.

3       Later on the same day, May 15, 2015, defendants Badawi and

4  Elhuzayel were together in a vehicle with another person, KN.

5  Defendant Elhuzayel and KN discussed ISIL, the extermination of the

6  Shia, and beheadings, as follows:

7       KN:  I think the Islamic State is a good cause.
        NE:  It's the best cause.
8       KN:  It is.
        NE:  That's the best nation in the earth.
9       KN:  But they have to do it according to the Sunna.
        NE:  That's what they're doing.  [Unintel] they're expanding.
10           They cannot stop the expansion.  The coalition cannot be
             expanded.  They cannot stop the expansion.  It's like
11           [unintel].
        KN:  The coalition is increasing in numbers and they still can't
12           make a difference.  That's because Allah [unintel].
        NE:  The coalition, man.  May Allah destroy them. . . .
13      KN:  I wonder what's going to happen to Iran when the Mahdi
             shows up.
14      NE:  Insha'Allah [God willing], the Shia will be exterminated. .
             . .
15           Disbeliever!  I would like to behead Asad.
        KN:  Actually, beheading -- beheading is not really -- is not
16           really barbaric.
        NE:  It's not.
17      KN:  It might seem that way to an ignorant person, but it's
             actually very good.  It's a good way -- it's a good way to
18           take someone's life.
        NE:  Yeah.  Exactly. . . . Because it's fast.  I mean people
19           don't feel it.
        KN:  You cut -- you cut their throat and the blood comes out.
20           It looks gruesome --
        NE:  They won't feel -- they won't feel [unintel].
21      KN:  It looks gruesome to the one who watches.
        NE:  That's funny.  Man, [unintel] this is a gruesome, like, you
22           know it's, like, ah [unintel] get them freaking out
             because, like, the guy's head is coming off.  But in
23           reality it's not even that bad, you know.  It's just --
             it's whatever. [unintel].

24

25

26

27

28

                                   14

1  Gov't Exh. 803.2.[20]  William Braniff testified at trial that ISIL

2  considers the Shia Muslim community[21] to be legitimate targets for

3  violence.  Exh. A, at 63.

4       On the same day, May 15, 2015, defendants Badawi and Elhuzayel

5  discussed with approval the prospect of ISIL's world domination as

6  follows:

7       NE:  One day, *Insha'Allah* [God willing], you're gonna see an
            army over here.
8       MB:  Here?
        NE:  Yeah.
9       MB:  For what?
        NE:  People shooting each other.
10      MB:  Nah, man.  The war is going to be chaos.
        NE:  Ninety-five percent of Anaheim has been conquered
11           [unintel].
        MB:  [God's glory]
12      NE:  [God's glory], can you imagine?  Fifty percent of Cypress
            has been conquered.
13      MB:  Wow.  [unintel].

14  Gov't Exh. 804/804A (recorded conversation in vehicle).

15       Subsequently, in the same conversation, on May 15, 2015,

16  defendants Badawi and Elhuzayel re-affirmed their shared desire to

17  attain martyrdom:

18      NE:  *Insha'Allah* [God willing].  I'll give you a call.  We have,
            like, five days left.
19      MB:  Okay.
        NE:  *Insha'Allah*.  *Insha'Allah*.  Can you take me to the airport
20           Thursday?
        MB:  Of course.  Allah is the greatest.
21      NE:  Say my farewells to Muhanad over there. . . .
            [MB explains he has an exam]
22      MB:  Yeah.  I can drop you off at -- by 1:00 if you want.
        NE:  1:00.  *Insha'Allah*.  [unintel] at the airport.  All right,
23           *akhi* [my brother].
        MB:  We'll think about it.  I'll -- I'll -- I'll -- . . .

24      [20] See also Gov't Exh. 40/40A (communication about beheading

25  found on Badawi's iPhone).

        [21] The "Shia" refers to one of the two main branches of Islam,
26  the other being the "Sunni."  According to ISIL, the Shia are
    apostates and legitimate targets of violence.  ISIL also considers
27  Christians, Jews, Yazidis, and Sunnis who do not subordinate
    themselves to ISIL's interpretation of Sharia law to be legitimate
28  targets of violence.  Exh. A, at 63 (Braniff trial testimony).

1  NE: All right, brother.  Stay safe.  Drive safe.  May Allah grant you *Shaheed* [martyrdom].
2  MB: Amen, and you too.

3

4  Gov't Exh. 804/804A (recorded conversation in vehicle); see PSR ¶ 28.

5     On May 16, 2015, defendant Badawi and KB[22] arrived at defendant

6  Elhuzayel's residence.  Defendant Elhuzayel came out to the vehicle,

7  and defendants Badawi and Elhuzayel, in front of KB, discussed as

8  follows that Elhuzayel might die, but even if he did, he would be a

9  martyr.

10  NE: I just wanted to give you those pants because I don't want to, like, owe you. . . .
11      In case I never see you again after I leave, you know.
    MB: *Insha'Allah* [God willing].
12  NE: I do want to see you, though.  *Insha'Allah* Islamic State.  Who knows what's going to happen, though?
13  MB: Yeah.  What's going to happen?
    NE: I might die, you know.
14  MB: You won't die.  I mean, even if you die, *Shaheed* [martyrdom], bro.
15  NE: *Insha'Allah*.  Yeah.

16  Gov't Exh. 828.2/828.2A (recorded conversation in vehicle with KB

17  present); see PSR ¶ 30.

18     On May 20, 2015, the day before he went to the airport,

19  defendant Elhuzayel sent out the following Twitter communication:

20  NE: Pick a side, fence sitting is for cowards.
        How can you sit in the fence and
21      Watch as your brothers and sisters
        Are being attacked by Kufar?
22      So do you choose the camp of Iman?
        Or do you choose the camp of kufr?
23      The signs are clear, no excuses.

24  Gov't Exh. 396.

25     On the evening of May 20, 2015, the day before defendant

26  Elhuzayel was to travel, defendant Badawi sent him text messages,

27  counseling him to delete all his history on his electronic devices.

28
_____
[22] "KB" testified at trial.

16

```
MB:  No worries are u ready for tomorrow
NE:  Lol yeah more than ready  One way trip
MB:  Did you delete all ur history
NE:  Yeah:)
MB:  OK
NE:  I gotta do the same for my computer
```

Gov't Exh. 67 (texts on Badawi's iPhone); see PSR ¶ 31.[23]

On May 21, 2015, defendant Elhuzayel arrived at Los Angeles

International Airport ("LAX").  He carried his U.S. passport, $1,016

in U.S. currency, a new iPhone 6, and a laptop computer.  He also had

a black carry-on bag containing a new LG G-Pad computer tablet, a new

Vtech "Magic Jack" telephone, a new portable phone charger, and a USB

drive.  Defendant Elhuzayel was arrested after passing through

security screening.  See PSR ¶ 32.

On the USB drive (purchased the previous night) were multiple

photos and documents, including sensitive government documents

containing the names and personal information of Department of

Defense ("DOD") employees.  See Gov't Exhs. 125, 126, 128, 129.  One

document, dated January 12, 2015, included the statement, "AMERICAN

SOLDIERS, WE ARE COMING, WATCH YOUR BACK, ISIS, CyberCaliphate."

Gov't Exh. 123 (capitalization in original); see also Gov't Exh. 306

(same document on Elhuzayel's Twitter); see PSR ¶ 33.  At trial,

William Braniff testified that "ISIS, CyberCaliphate" was a reference

to a division of ISIL that released personal identity information,

including addresses, of DOD employees and their families as a kind of

ISIL "hit list" so that others inspired by ISIL could assassinate

these individuals.  Exh. A, at 68-70; see PSR ¶ 33, n.8.  Defendant

_____

[23] During his post-arrest interview, defendant Elhuzayel admitted
that he deleted the history and erased all the contacts on his cell
phone just in case he was arrested by law enforcement.  PSR ¶ 37.

1   Elhuzayel was leaving the United States with this highly sensitive
2   information.

3       In addition, defendant Elhuzayel had, on the USB drive he was
4   taking overseas, numerous photos depicting ISIL's brutality, some of
5   which he had disseminated on Twitter.  See Gov't Exhs. 104, 108-113
6   (graphic photos of American humanitarian aid worker Peter Kassig,
7   before and after he was beheaded by ISIL), 114, 131-132 (tweets by
8   Elhuzayel disseminating photos), 115 (photos of Peter Kassig's
9   parents), 133 (photos of Japanese contractor and journalist who were
10  beheaded by ISIL), 143 (Jihadi John).  Defendant Elhuzayel had
11  similar graphic photos showing ISIL's brutality on his Twitter
12  account.  See Gov't Exhs. 307, 311, 312, 335, 336, 348 (link to ISIL
13  video showing beheadings of Ethiopian Christians on beach in Libya),
14  349, 356 (photos from ISIL video showing beheadings in Libya), 357,
15  361.

16      During his post-arrest, *Mirandized* statements, defendant
17  Elhuzayel said that he knew that ISIL fighters raped and killed
18  people, that they engaged in terrorist actions, and that they were
19  considered to be terrorists.  PSR ¶ 34.  Defendant Elhuzayel said
20  that although the ultimate destination on his itinerary was Tel Aviv,
21  he planned to fly only to Istanbul, Turkey, and then contact someone
22  in ISIL to obtain assistance to cross the border into Syria where he
23  would join ISIL.  PSR ¶ 34.  Defendant Elhuzayel said that he had
24  stated his allegiance to the leader of ISIL, and that he knew he
25  would have to obey him once he was with ISIL.  PSR ¶ 36.  Defendant
26  Elhuzayel explained how he planned to reach the Islamic State from
27  Istanbul, Turkey -- that after he reached Istanbul, he was going to
28  post on Twitter some hint that he wanted to make *hijra* (migration to

18

1  ISIL), then someone would "tweet" him, he would get from that person

2  a Surespot[24] contact, and then he would tell the Surespot contact that

3  he was in Istanbul currently and wanted assistance in traveling to

4  the Islamic State.[25]  Gov't Exh. 1020/1020A.

5      In defendant Elhuzayel's post-arrest statements, he also told

6  the FBI that he was planning on going to the Islamic State directly

7  from Istanbul, Turkey, and that he was not going to meet the woman

8  with whom he had discussed marriage.  Gov't Exh. 1017/1017A.[26]

9  Defendant Elhuzayel also told the FBI that he obtained a plane ticket

10 to Tel Aviv, Israel, with a lay-over in Istanbul, Turkey, as a

11 "cover," and that he intended to travel only as far as Istanbul and

12 from there to the Islamic State.  Gov't Exh. 1018/1018A; PSR ¶ 35.

13 III. SENTENCING GUIDELINE RANGE CALCULATION

14      All sentencing proceedings must begin by calculating correctly

15 the applicable United States Sentencing Guidelines range.  United

16 States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  The

17 advisory Guidelines are "the starting point and the initial bench

18 mark and are to be kept in mind throughout the process."  Carty, 520

19 F.3d at 991 (internal quotation marks and citation omitted)).  It is

20

21          [24] Surespot is an internet communication platform.
             [25] William Braniff's trial testimony corroborated the viability
22 of defendant's plan.  Braniff testified that it is more common for
   travelers to the Islamic State to contact an online facilitator than
23 to contact a person inside the Islamic State, and that online
   facilitators use the internet to assist those traveling to the
24 Islamic State to cross the border.  Exh. A, at 70-72.

25          [26] For a few months before going to the airport on May 21, 2015,
   defendant Elhuzayel had an internet relationship with a female ISIL
26 supporter who lived in the West Bank in Israel.  Although they had
   never met, they discussed marriage.  Defendant Elhuzayel told the FBI
27 during his post arrest-interview that he had decided not to meet up
   with the woman and not to go to Israel because Istanbul was closer to
28 ISIL-held territory.  Gov't Exh. 1017/1017A; PSR ¶ 35, n.9.

1  "procedural error for a district court to fail to calculate -- or to

2  calculate incorrectly -- the Guidelines range." Id. at 993.

3       Defendant Elhuzayel's advisory sentencing guideline range should

4  be calculated as follows:

5  <u>Violation of 18 U.S.C. § 2339B</u>

| | | |
|---|---|---|
| Base Offense Level: | 26 | USSG § 2M5.3 |
| Specific Offense Characteristics: | +2 | USSG § 2M5.3(b)(1)(E) |
| Terrorism Adjustment: | +12 | USSG § 3A1.4(a) |
| Total Offense Level: | 40 | |

10 <u>Violation of 18 U.S.C. § 1344</u>

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG § 2B1.1(a)(1) |
| Specific Offense Characteristics: | +2 | USSG § 2B1.1(b)(1)(B) |
| | | (loss = $12,082.70) |
| Terrorism Adjustment: | -- | USSG § 3A1.4(a) |
| | | (raises level to 32)[27] |
| Total Offense Level: | 32 | USSG § 3A1.4(a) |

17 <u>Multiple Counts Adjustment</u>

| | | |
|---|---|---|
| Multiple Counts Adjustment: | +1 | USSG § 3D1.4(b) |
| Total Offense Level: | 41 | |
| Criminal History Category: | VI | USSG § 3A1.4(b)[28] |

---

[27] In the Government's Rule 32(f) Response to Presentence Report for Defendant Nader Salem Elhuzayel (Docket 199), the government briefed the compelling weight of legal authority that supports the application of the terrorism adjustment in USSG § 3A1.4(a) to the calculation of the offense level for defendant Elhuzayel's bank fraud conviction. The government incorporates in full that briefing and argument here.

[28] The application of the terrorism adjustment makes defendant Elhuzayel's criminal history category VI. However, when defendant Elhuzayel's offense level is calculated properly, even his criminal history category of II yields the sentencing guideline range of 360-life.

1    Advisory Sentencing Guideline Range:  360 months – life

2  The minimum advisory guideline sentence is a term of imprisonment of

3  360 months.   Imprisonment for 360 months is the appropriate sentence

4  here, and the particularized facts of defendant Elhuzayel's

5  characteristics and conduct do not support a downward departure or

6  variance from that advisory guideline sentence.   See <u>United States v.</u>

7  <u>Ressam</u>, 679 F.3d 1069, 1089 (9th Cir. 2012) (reversing an outside-

8  Guidelines sentence in a terrorism case where the justification for

9  the deviation from the guideline sentence was insufficiently

10  compelling to support the extent of the variance).

11  **IV.    SECTION 3553(a) FACTOR ANALYSIS**

12    A sentence of a term of imprisonment of 360 months and a

13  lifetime of supervised release is necessary to effectuate the

14  purposes of sentencing in Section 3553(a).

15    **A.    The Need for the Sentence Imposed to Reflect the
       Seriousness of the Offenses, Promote Respect for the Law,**
16    **and Provide Just Punishment Requires a 30-Year Term of
       Imprisonment.**
17

18    The nature and circumstances of defendant Elhuzayel's offenses

19  are extremely serious.   ISIL is "the most lethal terrorist

20  organization in the world."  Exh. A, at 49; Exh. B, at 135 (Braniff

21  testimony).   ISIL has long been, and remains, an enemy of the United

22  States -- an enemy that has murdered United States citizens overseas

23  and that has promoted, and taken credit for, lethal attacks on U.S.

24  soil.  Knowing this, defendant Elhuzayel conspired to provide a

25  resource essential to ISIL's survival -- fighters -- and did

26  everything he could to become an ISIL fighter himself.

27    Defendant Elhuzayel committed his crimes to promote a terrorist

28  organization that, as he knew well, is engaged in armed conflict to

21

subjugate all people to Sharia law as interpreted and enforced by ISIL, and perpetrates barbaric acts of violence against civilians to terrorize them into submission.  He used multiple social media accounts skillfully to communicate about ISIL with others who had joined, aspired to join, or supported ISIL.  Through his social media accounts, he disseminated pro-ISIL information and assisted ISIL supporters and operatives to have current contact information about each other by distributing new account information for those whose accounts had been suspended.  He corresponded with the notorious ISIL operative who promoted the Garland, Texas attacks.  To achieve his goal to fight with ISIL, defendant Elhuzayel executed a bank fraud scheme that victimized three major banks and nine individuals.  He and codefendant Badawi made conscious efforts to conceal their behavior from law enforcement and even discussed Badawi's future FBI interview.  Thus, the nature and circumstances of defendant Elhuzayel's crimes require the sentence the government seeks.

**B.    Defendant Elhuzayel's History and Characteristics Require a Guideline Sentence.**

Nothing in defendant Elhuzayel's history and characteristics mitigates the need for a guideline sentence.  Defendant Elhuzayel, a native-born United States citizen, has enjoyed good health, intelligence, access to a college education, and a supportive family. He has no history of abuse or infirmity.  While he comes from a modest economic background, his parents have always provided to him a home, food, clothing, and (it appears) extras such as electronic devices and transportation.  Defendant Elhuzayel has been afforded ample opportunities to pursue a fulfilling life in American society. Instead, he deliberately chose to devote himself to advancing the

goals of a brutal, lethal terrorist organization.

Defendant Elhuzayel was 24 years old at the time of his offense conduct; he is 26 years old now. Since age 16 or 17, he has worked various types of jobs. After obtaining a high school diploma, he completed a course of study in medical billing and coding. He then attended Cypress College for approximately 3-4 semesters (where he became friends with codefendant Badawi). At age 22, defendant Elhuzayel was arrested for criminal trespass; he resisted arrest and wrestled with the officers when they attempted to handcuff him. He appeared in court, was represented by counsel, spent 6 days in jail, pled guilty, and was placed on a 3-year term of probation. Although defendant Elhuzayel used alcohol and marijuana socially, at age 23, he chose to discontinue his use of these substances for health and religious reasons. In short, defendant Elhuzayel's history and characteristics show him to be a person who, faced with a range of opportunities, has long been fully capable of making his own choices. He should, therefore, be held fully responsible for those choices.

### C. A 30-Year Term of Imprisonment Is Necessary to Provide Adequate Deterrence to Criminal Conduct and to Protect the Public From Further Crimes by Defendant Elhuzayel.

The sentence advocated by the government is necessary to deter defendant Elhuzayel and others from committing similar crimes. As multiple courts of appeals have recognized, in the terrorism arena, the difficulty of deterrence necessitates the imposition of lengthy sentences. In United States v. Meskini, the Second Circuit explained:

> Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and

23

1    their supporters should be incapacitated for a longer
   period of time.
2

3 Meskini, 319 F.3d 88, 92 (2d Cir. 2003); see, e.g., United States v.

4 Ali, 799 F.3d 1008 (8th Cir. 2015) (same).  Although courts have

5 recognized that recidivism ordinarily decreases with age, courts have

6 rejected this reasoning in terrorism cases.  Echoing multiple courts

7 of appeals, the Ninth Circuit instructed in United States v. Ressam,

8 "Terrorists, even those with no prior criminal behavior, are unique

9 among criminals in the likelihood of recidivism, the difficulty of

10 rehabilitation, and the need for incapacitation." Ressam, 679 F.3d

11 at 1091 (quoting United States v. Jayyousi, 657 F.3d 1085, 1117 (11th

12 Cir. 2011)).  There is no particularized information here that

13 overcomes the reasoning expressed by the Ninth Circuit and other

14 courts of appeals.

15    The evidence demonstrates that defendant Elhuzayel has, for some

16 time, been deeply committed to ISIL's cause, and therefore is

17 particularly resistant to deterrence.  On October 13, 2014, defendant

18 Elhuzayel proclaimed on Facebook that the "Islamic State will be

19 victorious."  The following day, defendant Elhuzayel, again on

20 Facebook, asked Allah to grant him martyrdom and the success to leave

21 the United State and fight for ISIL.  One week later, defendant

22 Elhuzayel pledged allegiance to ISIL in a video.  In multiple

23 internet communications, defendant Elhuzayel praised the prospect of

24 "yahoodi heads rolling" at the hands of ISIL, pronounced ISIL's

25 throwing of homosexuals off buildings to be "more beautiful than

26 rain," and petitioned Allah to grant the Garland, Texas shooters the

27 highest level of paradise.  In multiple recorded conversations,

28 defendant Elhuzayel affirmed ISIL as "the best cause," asked Allah to

1   destroy the coalition against it, and anticipated eagerly an ISIL

2   conquest of Anaheim and Cypress.  When he attempted to leave the

3   United States to join ISIL, defendant Elhuzayel carried in his

4   luggage a collection of graphic photos of ISIL beheadings of

5   civilians and personal identity information of United States DOD

6   employees.  Thus, defendant Elhuzayel's own words and actions

7   demonstrate his deep commitment to the ISIL ideology and his

8   corresponding antagonism to American law.  Deterrence and

9   rehabilitation of such an individual will be difficult indeed.  The

10  lengthy sentence at the low end of the guideline range is

11  commensurate with defendant Elhuzayel's longer life span and is

12  necessary to dissuade him, and others like him, from future crimes.

13          D.    A Guideline Sentence Will Avoid Unwarranted Sentencing
                  Disparities Among Defendants With Similar Records Who Have
14                Been Found Guilty of Similar Conduct.

15          Defendant Elhuzayel is the first defendant to be sentenced by a

16  district court after conviction at trial of conspiring to provide or

17  attempting to provide material support to ISIL.  Thus, there are no

18  other cases that offer comparable records.  Moreover, when the other

19  Section 3553(a) factors are considered, such as the seriousness of

20  the offenses and the need to protect the public, the guideline

21  sentence advocated by the government is warranted here.

22          Defendant Elhuzayel may point to sentences imposed in cases in

23  which defendants pled guilty to attempting to provide material

24  support to ISIL or other terrorist organizations.  As explained

25  above, courts of appeals have repeatedly recognized the likelihood of

26  recidivism and difficulty of rehabilitation in the terrorism arena.

27  It necessarily follows then, that a defendant who has accepted

28  responsibility for his crime is not comparable to one who has not.

25

1    Thus, the Ninth Circuit has soundly rejected, in terrorism cases, a

2    downward departure/variance based on comparing the sentences imposed

3    on defendants who went to trial with defendants who pled guilty.  See

4    Ressam, 679 F.3d at 1094-95 ("We . . . reject the comparison of

5    Ressam's sentence to defendants who pleaded guilty.").

6        In addition, ISIL is not like other terrorist organizations.

7    ISIL is the most lethal terrorist organization in the world, and

8    routinely inflicts particularly brutal and heinous violence on

9    civilians.  Furthermore, most defendants in other terrorism cases

10    were not sentenced for conspiracy -- a crime that increases the

11    threat to the public and decreases the likelihood of deterrence.  As

12    the Supreme Court explained over fifty years ago:

13        [C]ollective criminal agreement – partnership in crime –
         presents a greater potential threat to the public than
14        individual delicts.  Concerted action both increases the
         likelihood that the criminal object will be successfully
15        attained and decreases the probability that the individuals
         involved will depart from their path of criminality.  Group
16        association for criminal purposes often, if not normally,
         makes possible the attainment of ends more complex than
17        those which one criminal could accomplish.

18    Callanan v. United States, 364 U.S. 587, 593-94 (1961).  Thus,

19    defendant Elhuzayel is not similarly situated to other defendants who

20    pled guilty, or who did not conspire with others, or who did not

21    support ISIL.

22        In addition, courts of appeals have cautioned against giving

23    excessive weight to the sentencing disparity factor.  See, e.g.,

24    United States v. Khan, 461 F.3d 477, 500-01 (4th Cir. 2006) (holding

25    that the district court erred when it placed "excessive weight" on

26    § 3553(a)(6) and imposed a below-guidelines sentence).  Several

27    courts of appeals have vacated sentences that were reduced based on

28    comparisons to sentences in terrorism cases where defendants were not

                                        26

1   similarly situated.  See Ressam, 679 F.3d at 1095; United States v.

2   Abu Ali, 528 F.3d 210, 265 (4th Cir. 2008); Jayyousi, 657 F.3d at

3   1117-18.  Accordingly, here, the particular facts of this case,

4   including the gravity of the offense conduct and the need to deter

5   defendant Elhuzayel and others from similar crimes, necessitates the

6   imposition of the low-end guideline sentence.

7   **V.   CONCLUSION**

8        For all the reasons above, the government respectfully submits

9   that the Court should sentence defendant Elhuzayel to a term of

10  imprisonment of 360 months, a life-time term of supervised release,

11  no fine, and a $2,800 special assessment.

12       The Court should also order that defendant Elhuzayel make the

13  restitution payments, totaling $3,376.14, to the three victims of the

14  bank fraud as indicated in the presentence report.  See PSR ¶ 45; 18

15  U.S.C. § 3663A.  In addition, the Court should order, as a condition

16  of supervised release, that defendant Elhuzayel pay restitution to

17  the U.S. Department of Education in the amount of $671.60, and that

18  defendants Elhuzayel and Badawi be held jointly and severally liable

19  for this restitution to the Department of Education.  See USSG

20  § 5E1.1(a)(2); USSG § 5E1.1, comment.(backg'd.); 18 U.S.C.

21  § 3583(d).[29]

22       //

23  ───────────────

    [29] Defendant Elhuzayel participated in defendant Badawi's
24  financial aid fraud (while defendants were together, Badawi purchased
    the plane ticket for Elhuzayel, and Elhuzayel re-paid Badawi in cash
25  for the cost of the plane ticket).  The U.S. Department of Education
    is "an identifiable victim," and therefore, the Court may order that
26  defendants make restitution for the full amount of the victim's loss
    -- $671.60.  The contact information for the restitution payments is:
27  U.S. Department of Education, OCFO, FMO-Debt & Payment Management
    Group, Attn: Renu Kapur, 550 12th Street SW, RM 6107, Washington, DC
28  20202-4461.

1       In addition, the Court should enter the order of forfeiture

2   submitted previously to the Court.

3   Dated: September 19, 2016          Respectfully submitted,

4                                      EILEEN M. DECKER
                                       United States Attorney
5
                                       PATRICK R. FITZGERALD
6                                      Assistant United States Attorney
                                       Chief, National Security Division
7

8                                             /s/
                                       _____
                                       JUDITH A. HEINZ
9                                      Assistant United States Attorney

10

                                              /s/
11                                     _____
                                       DEIRDRE Z. ELIOT
                                       Assistant United States Attorney
12

13                                            /s/
                                       _____
                                       JULIUS J. NAM
14                                     Assistant United States Attorney

15                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28