EILEEN M. DECKER
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
General Crimes Section
    1500/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7280/4491
    Facsimile: (213) 894-7631/0141
    E-mail:  judith.heinz@usdoj.gov
    E-mail:  julius.nam@usdoj.gov
DEIRDRE Z. ELIOT (Cal. Bar No. 145007)
Assistant United States Attorney
Terrorism and Export Crimes Section
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3599
    Facsimile: (714) 338-3564
    E-mail:  deirdre.eliot@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>NADER SALEM ELHUZAYEL and<br>MUHANAD ELFATIH M. A. BADAWI,<br><br>       Defendants. | No. SA CR 15-00060(A)-DOC<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT NADER SALEM ELHUZAYEL'S OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING MEMORANDUM; EXHIBITS**<br><br>Hearing Date: September 26, 2016<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>              Hon. David O.<br>              Carter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Judith A. Heinz, Deirdre Z. Eliot, and Julius J. Nam, hereby responds to defendant Nader Salem Elhuzayel ("defendant")'s Objections to the Presentence Investigation Report (Docket No. 202), filed on September 15, 2016, and defendant's Sentencing Memorandum (Docket No. 209), filed on September 20, 2016.

Dated: September 21, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

_____/s/_____
JUDITH A. HEINZ
Assistant United States Attorney

_____/s/_____
DEIRDRE Z. ELIOT
Assistant United States Attorney

_____/s/_____
JULIUS J. NAM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                        PAGE

TABLE OF AUTHORITIES.................................................iii

I.   DEFENDANT ELHUZAYEL'S OBJECTIONS ARE UNTIMELY.................1

II.  DEFENDANT ELHUZAYEL'S "OBJECTIONS" DO NOT DISPUTE MATERIAL
     INFORMATION..................................................1

     A.   Objections to the Date of the Designation of the
          "Islamic State" in PSR Paragraphs 1-3 and 18.............2

     B.   Objections to PSR Paragraph 9 Re:  Abu Bakr al-
          Baghdadi's Audio Message and Printed Copy of Same........4

     C.   Objections to PSR Paragraphs 12-19 Based, *Inter Alia*,
          on the First Amendment...................................6

     D.   Additional Objection to PSR Paragraph 12 Based on
          Characterization of Flag.................................7

     E.   Additional Objection to PSR Paragraph 13 Based on
          Characterization of Statement............................7

     F.   Additional Objection to PSR Paragraph 14 Based on
          Characterization of Statement............................8

     G.   Additional Objection to PSR Paragraph 15 Based on
          Characterization of Statement............................8

     H.   Additional Objection to PSR Paragraph 16 Based on
          Characterization of the Term "Hijra".....................9

     I.   Additional Objection to PSR Paragraph 17-Basis Unclear...10

     J.   Additional Objection to PSR Paragraph 18 Based on
          Argument Evidence Is Insufficient.......................10

     K.   No Additional Objection to PSR Paragraph 19.............12

     L.   Objection to PSR Paragraph 23 Based On
          Misinterpretation......................................12

     M.   Objection to PSR Paragraph 25 Based on Multiple
          Grounds................................................13

     N.   Objection to PSR Paragraph 28 Based on Defendant's
          Incorrect Statement About Evidence.....................15

     O.   Objection to PSR Paragraph 33 Based on Argument
          Information Was Not Sensitive..........................16

     P.   Objection to PSR Paragraph 35 Based on Argument Post-

i

## **TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                PAGE

       Arrest Statements Were Made Under Threat.................16

Q.   Objection to PSR Paragraph 36 Based on Insufficient
     Evidence Argument.......................................17

R.   Objection to PSR Paragraph 56 (Misidentified as 58)
     Based on Argument Specific Offense Characteristic Does
     Not Apply..............................................18

S.   Objection to PSR Paragraph 57 Based on Argument
     Terrorism Adjustment Does Not Apply....................19

T.   Objection to PSR Paragraph 91 Based On Factual
     Correction Re: Education...............................23

GOVERNMENT'S RESPONSE TO DEFENDANT ELHUZAYEL'S SENTENCING
MEMORANDUM.......................................................23

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

CASES

Holder v. Humanitarian Law Project,
        561 U.S. 19 (2010).................................................6

United States v. Ali,
        799 F.3d 1008 (8th Cir. 2015)....................................18

United States v. Awan,
        607 F.3d 306 (2d Cir. 2010)......................................20

United States v. Chandia,
        675 F.3d 329 (4th Cir. 2012).....................................21

United States v. El-Mezain,
        664 F.3d 467 (5th Cir. 2011).....................................21

United States v. Felix,
        561 F.3d 1036 (9th Cir. 2009)....................................20

United States v. Graham,
        275 F.3d 490 (6th Cir. 2001).....................................20

United States v. Jayyousi,
        657 F.3d 1085 (11th Cir. 2011)...................................20

United States v. Tankersley,
        537 F.3d 1100 (9th Cir. 2008)....................................20

United States v. Thurston,
        2007 WL 1500176 (D. Or. 2007)....................................20

Wisconsin v. Mitchell,
        508 U.S. 476 (1993)...............................................6

STATUTES

18 U.S.C. § 2332b(g)(5)........................................................19, 21

18 U.S.C. § 2339B.............................................................20

RULES

Federal Rule of Criminal Procedure 32(f)........................................1

USSG § 3A1.4.............................................................19, 20, 23

USSG § 2M5.3(b)(1)(E)....................................................18, 19

## GOVERNMENT'S RESPONSE TO DEFENDANT ELHUZAYEL'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

### I. DEFENDANT ELHUZAYEL'S OBJECTIONS ARE UNTIMELY

Defendant Nader Salem Elhuzayel ("defendant Elhuzayel" or "defendant") filed his objections on September 15, 2016. (Docket No. 202). The government received service of his objections electronically at the time of the filing. The Presentence Investigation Report ("PSR") was disclosed to counsel on August 22, 2016. Pursuant to Federal Rule of Criminal Procedure 32(f), the deadline to make objections to the PSR was September 6, 2016 -- 14 days after the PSR was disclosed to the parties. Fed. R. Crim. P. 32(f). Thus, defendant Elhuzayel's objections are untimely. Moreover, they lack support in fact or law and should be rejected on the merits.

### II. DEFENDANT ELHUZAYEL'S "OBJECTIONS" DO NOT DISPUTE MATERIAL INFORMATION

None of defendant Elhuzayel's objections dispute material information in the PSR. See Fed. R. Crim. P. 32(f). For the most part, defendant Elhuzayel's "objections" are simply arguments about the meaning of the information in the PSR. On some matters, defendant Elhuzayel's objections are premised on erroneous information. Further, although defendant requests an evidentiary hearing, none is warranted here. The evidence that has been presented to the Court -- in pleadings, hearings, and at trial -- provides ample proof of the material information in the PSR as well as the government's position on the proper sentencing guideline calculations and appropriate sentence. For these reasons and those

set forth below, defendant Elhuzayel's objections to the PSR should be denied in their entirety.

**A.  Objections to the Date of the Designation of the "Islamic State" in PSR Paragraphs 1-3 and 18**

Defendant Elhuzayel complains that the PSR at paragraphs 1, 2, 3, and 18 improperly references May 15, 2014, as the date the "Islamic State" was designated as a foreign terrorist organization ("FTO"). <u>See</u> Objections 1-4.  He argues that the "Islamic State" was not designated until September 29, 2016 [sic].  (As September 29, 20**16** has not yet occurred, the government assumes defendant means September 21, 2015.)[1]

Defendant Elhuzayel's objection to paragraph 1 is easily dismissed.  Paragraph 1 of the PSR makes no reference to a designation, much less a designation date.

Paragraphs 2 and 3 of the PSR recite accurately the language in Counts 1 and 2 of the First Superseding Indictment.  The First Superseding Indictment accurately alleges that the Islamic State of Iraq and the Levant ("ISIL") was designated as a foreign terrorist

---

[1] Defendant Elhuzayel references Exhibit 1008 -- an exhibit that was not admitted at trial.  <u>See</u> Docket No. 175 (Final Exhibit List signed by all parties).  Exhibit 1008 is a copy of the Federal Register, Vol. 80, No. 189, September 30, 2015, pages 58804-58805.  Pages 58804-58805 contain, <em>inter alia</em>, the publication of the Department of State's Public Notice 9290, dated September 21, 2015, that gave notice of an amendment of the designation of the Islamic State of Iraq and the Levant as an FTO, stating, in relevant part, that the Secretary of State has "concluded that there is a sufficient factual basis to find that the Islamic State of Iraq and the Levant uses the additional aliases the Islamic State, ISIL, and ISIS."  In addition, terrorism expert William Braniff testified at trial that the State Department action that is reflected in Exhibit 1008 was not the creation of a new designation for an FTO, but instead was an amendment to the list of aliases for the Islamic State of Iraq and the Levant, and added to that list the aliases the Islamic State, ISIL, and ISIS.  <u>See</u> Exh. B, at 131; <u>see also</u> <u>infra</u> footnote 2 (explaining Exhibits A and B).

organization ("FTO") on May 15, 2014.  Defendant Elhuzayel has not
challenged, and could not challenge, this allegation.  To the extent
that defendant objects to the PSR's inclusion in paragraphs 2 and 3
of the name, "Islamic State," as an alias of ISIL, the PSR is, again,
simply reciting the charges against defendant Elhuzayel as they are
set forth in Counts 1 and 2 of the First Superseding Indictment.
Moreover, the inclusion of this language in the PSR is not unfair to
defendant.  As the Court has found, the evidence presented at trial
showed that defendant himself "interchangeably referred to ISIS,
ISIL, and the Islamic State at different times."  See Order Denying
Mot. For Judgment of Acquittal, Docket No. 194, at 5.

Defendant Elhuzayel's objection to paragraph 18 is similarly
misplaced.  Paragraph 18 does not contain a reference to a
designation date.  If defendant Elhuzayel's objection is to PSR, page
6, paragraph 8, his objection should also be dismissed.  Contrary to
defendant's objection, this paragraph contains no reference to the
alias, the "Islamic State."  Instead, paragraph 8 of the PSR
accurately sets forth the initial designation date of al-Qai'ida in
Iraq ("AQI") and the subsequent amendment on May 15, 2014, of the AQI
designation to add the alias the Islamic State of Iraq and the Levant
as the organization's primary name and various aliases including the
Islamic State of Iraq and al-Sham.

Defendant's argument that the Islamic State is a separate
terrorist organization that was not designated by the State
Department prior to his arrest has been considered and soundly
rejected by both this Court and the jury.  For all of the above
reasons, defendant's objections to paragraphs 1, 2, 3, 18, and
possibly, 8, should be denied.

**B.   Objections to PSR Paragraph 9 Re:  Abu Bakr al-Baghdadi's Audio Message and Printed Copy of Same**

Defendant objects that paragraph 9 of the PSR improperly states that Abu Bakr al-Baghdadi "declared that ISIS is now the official Islamic State on July 1, 2014." See Objection 5.  Defendant contends, bereft of evidence or specificity, that Abu Bakr al-Baghdadi's speech occurred on June 1, 2014.  Defendant also argues that PSR, paragraph 9, speculates "about al-Baghdadi's intent, of which the government offered no evidence."

Paragraph 9 of the PSR quotes from Abu Bakr al-Baghdadi's statement entitled, *A Message to the Mujahidin and the Muslim Ummah in the Month of Ramadan*, admitted at trial as Exhibit 1006. Terrorism expert William Braniff testified at trial that in June 2014, ISIL declared a caliphate, and an audio release by Abu Bakr al-Baghdadi followed in July 2014.  Braniff explained that Exhibit 1006 is the printed version of Abu Bakr al-Baghdadi's audio release.  See Exh. A, at 25 (transcript of Braniff testimony).[2]  Paragraph 9 accurately quotes directly from the printed version of the July 2014 audio release that is Exhibit 1006.  During cross-examination at trial, Braniff testified that the al-Baghdadi speech/audio release occurred in early July.  See Exh. B, at 109.

In addition, the title of al-Baghdadi's statement evidences that it was made during Ramadan.  The Court can take judicial notice of the fact that in 2014, the month of Ramadan began on June 28, 2014,

---

[2] Attached hereto as Exhibits A and B are copies of the transcripts (Day 7, Volumes II and III) of the trial testimony of expert witness William Braniff.  The referenced page numbers are those located at the bottom center of each exhibit page.

4

at sundown.  Moreover, the news media reported that al-Baghdadi's speech occurred on July 1, 2014.[3]  Thus, the evidence before the Court establishes that the speech by al-Baghdadi that is referenced in PSR, paragraph 9, was made in early July 2014.

The intent of al-Baghdadi's message is clear from its content. In his message, al-Baghdadi urged soldiers of the Islamic State to take up arms and fight in the cause of Allah.  At trial, Braniff testified that reference to "A Message to the Mujahidin" in the message title means it is a message to the "holy warriors."  Exh. A, at 51.  Braniff also testified that, in this message, al-Baghdadi states that the world is divided into two camps, the camp of Islam and the camp of kufar, and explains further that the camp of the Muslims and the Mujahidin is against the camp of the Jews, crusaders, and their allies, with the United States being the leader of the crusaders.  Exh. A, at 51, 53.  Braniff also testified that ISIL's goal is to impose Sharia law across the world and that this goal is exemplified in Exhibit 33, which depicts a world map with the black flag of ISIS/Islamic State superimposed on every continent.  Exh. A, at 60.  Specific to "A Message to the Mujahidin," Braniff testified on cross-examination that while ISIL's global mission had not changed, the "difference was now they've declared the caliphate and so they can begin the expansion of that caliphate."  Exh. B, at 111. Thus, contrary to defendant's objection, there is ample evidence before the Court that the purpose of al-Baghdadi's message was to express his need for more fighters to gain and hold ISIL's expanding

---

[3] See, e.g., Bayoumy, Yara, "Syria-Iraq 'caliph' incites Muslims to holy war," Reuters, July 1, 2014, accessed at http://www.reuters.com/article/us-iraq-security-baghdadi-idUSKBN0F64QU20140701.

1  territory.  <u>See</u> PSR ¶ 9.  Accordingly, defendant's objections to PSR,

2  paragraph 9, should be denied.

3      **C.   Objections to PSR Paragraphs 12-19 Based, *Inter Alia*, on
        the First Amendment**

4

5      Defendant Elhuzayel objects to a number of paragraphs setting

6  forth particular statements he made during the course of the

7  conspiracy.  <u>See</u> Objections 6-13.  Except as addressed below,

8  defendant does not contend that these PSR paragraphs are inaccurate,

9  or that he and codefendant Badawi did not make the statements

10  contained within these paragraphs.  Rather, defendant Elhuzayel

11  argues that his statements and/or his associations were protected by

12  the First Amendment and <u>Holder v. Humanitarian Law Project</u>, 561 U.S.

13  19 (2010).  Defendant's objections on First Amendment grounds are not

14  factual in nature and his First Amendment objections do not provide

15  any basis to amend or correct these paragraphs.  Furthermore, the

16  constitutional protections of the First Amendment do not prohibit the

17  Court from considering defendant's statements at sentencing as

18  evidence of the nature and circumstances of the offenses, or

19  defendant's characteristics, or the need for the sentence imposed to

20  provide deterrence.  <u>Cf.</u> <u>Wisconsin v. Mitchell</u>, 508 U.S. 476, 489

21  (1993) (there is no prohibition on "the evidentiary use of speech to

22  establish the elements of a crime or to prove motive or intent").

23  Further, with respect to defendant's arguments regarding his freedom

24  of association based on <u>Holder</u>, this Court has clarified that "the

25  government was not required to prove Defendant acted under the

26  direction and control of ISIS at the time of the offense conduct;

27  rather, the government had to prove that defendant conspired to work,

28  and attempted to work, under the direction and control of ISIS."  <u>See</u>

1   Order Denying Mot. For Judgment of Acquittal, Docket No. 194, at 6-7.

2   Therefore, defendant's First Amendment objections should be denied.

3       **D.   Additional Objection to PSR Paragraph 12 Based on Characterization of Flag**

4

5       Defendant Elhuzayel also objects to PSR paragraph 12's

6   characterization of the flag he used as his Facebook profile picture

7   as belonging to "ISIS"; defendant argues that the flag is the flag of

8   the "Islamic State".  <u>See</u> Objection 6.  The evidence before the Court

9   is that the distinctive black flag that defendant used as his

10  Facebook profile picture has been the flag of ISIL, aka ISIS, aka the

11  Islamic State since January 2007.  Exh. A, at 60 (Braniff testimony).

12  This distinctive black flag did not change after the caliphate was

13  declared in the summer of 2014, and it is still used by ISIL, aka the

14  Islamic State, today.  Exh. A, at 60-61.  Thus, defendant's objection

15  to PSR, paragraph 12 should be denied.

16      **E.   Additional Objection to PSR Paragraph 13 Based on Characterization of Statement**

17

18      Defendant Elhuzayel also objects to PSR paragraph 13 based on

19  his contention that his statements in the paragraph (urging Allah to

20  grant him martyrdom and the success to leave this country and fight

21  for Allah's cause, and urging Allah to destroy his enemies and give

22  the Islamic state victory) are "not an outreach for others to join

23  the Islamic State."  <u>See</u> Objection 7.  Nothing in PSR paragraph 13

24  contends these statements are an outreach for others to join the

25  Islamic State, and defendant's objection should be denied.

26

27

28

**F.   Additional Objection to PSR Paragraph 14 Based on Characterization of Statement**

In addition to his First Amendment objection, defendant Elhuzayel appears to object to PSR paragraph 14 based on what he alleges are mischaracterizations of his statements on a video made by codefendant Badawi that was found on Badawi's iPhone.  See Objection 8.  Defendant does not, however, contend that PSR paragraph 14 states inaccurately what defendant said on the video (which was introduced at trial).  Therefore, there is no reason to revise the PSR's language.

Defendant Elhuzayel argues that the video recording "was deleted soon after" it was made on October 21, 2014.  This is wrong.  There is no evidence that the video was ever deleted from codefendant Badawi's iPhone.

Further, although defendant disagrees with the PSR's interpretation of Badawi's repeated statement, "Ameen" (indicating Badawi's own commitment that Elhuzayel's pledge to join the ISIL fighters soon would be fulfilled), defendant provides no evidence to support his contention that Badawi instead meant "Let it be" when he repeatedly stated "Ameen."  Certainly, the weight of the evidence in the case establishes that defendants Badawi and Elhuzayel agreed to work together to provide fighters to ISIL.  Therefore, defendant's objections to PSR paragraph 14 should be denied.

**G.   Additional Objection to PSR Paragraph 15 Based on Characterization of Statement**

Defendant Elhuzayel appears to object to PSR paragraph 15 on some basis in addition to his First Amendment grounds, although it is unclear exactly what that basis is.  See Objection 9.  Defendant does

8

not dispute the accuracy of paragraph 15, which simply recites text messages defendants Badawi and Elhuzayel exchanged on March 27, 2015. Defendant Elhuzayel argues, bereft of evidence, that the defendants' "belief in dying on the front lines and receiving 72 virgins is consistent with mainstream Islamic belief about martyrdom." There is simply no evidence before the Court to support this argument. Instead, the evidence at trial included William Braniff's testimony that "ISIS's propaganda consistently says that an individual who martyrs themselves or dies fighting this [ISIS] Jihad will be granted the highest levels of paradise." Exh. A, at 61. Thus, the evidence before the Court is that defendants' beliefs, as expressed in their text messages recited in paragraph 15, were consistent with ISIL's propaganda, and defendant's objections to PSR paragraph 15 should be denied.

**H.   Additional Objection to PSR Paragraph 16 Based on Characterization of the Term "Hijra"**

In addition to his First Amendment argument, defendant Elhuzayel appears to object to PSR paragraph 16 based on the stated meaning of "*hijra*" in PSR, footnote 4. <u>See</u> Objection 10. Defendant does not contest the accuracy of the statement by codefendant Badawi that is summarized in PSR paragraph 16, nor does he contest the accuracy of footnote 4 which summarizes evidence presented at trial about ISIL's meaning of the term "*hijra*." As stated in the PSR at footnote 4, the "meaning of 'Hijra' as migration to the Islamic State for the purpose of engaging in violent jihad is confirmed in ISIS' own online publication, Dabiq." PSR ¶ 16, n.4. In addition, William Braniff testified at trial that in ISIL's view, hijrah "is the necessary precursor step that one makes in order to wage jihad on behalf of the

Caliphate," and that when ISIL references jihad, it means "taking part in violent actions." Exh. A, at 53-54. Thus, in light of the evidence supporting the PSR's interpretation of the term "*hijra*," defendant Elhuzayel's objection to PSR paragraph 16 should be denied.

### I. Additional Objection to PSR Paragraph 17-Basis Unclear

Defendant Elhuzayel appears to object to PSR paragraph 17 on some basis in addition to his First Amendment grounds, however, it is unclear what that basis is. See Objection 11. Defendant does not contend that PSR paragraph 17 summarizes inaccurately the content of a telephone conversation between defendants on April 24, 2015. Accordingly, defendant's objection of PSR paragraph 17 should be denied.

### J. Additional Objection to PSR Paragraph 18 Based on Argument Evidence Is Insufficient

Defendant Elhuzayel further objects to paragraph 18 regarding Twitter communications with Elton Simpson, one of the Garland, Texas, shooters. See Objection 12. Defendant does not assert that the content of the communications in PSR paragraph 18 is inaccurate, nor does he dispute that he and codefendant Badawi celebrated the Garland, Texas, shootings. Rather, defendant Elhuzayel claims that there is no evidence that Elton Simpson really used the Twitter account attributed to him.

Elton Simpson was killed during the Garland, Texas, shootings and, therefore, could not be questioned after the attack regarding his use of the Twitter account "@atawaakul." However, Federal Bureau

of Investigation ("FBI") Special Agent Scott Wales testified[4] at trial that defendant Elhuzayel admitted post-arrest that he had been in contact with Elton Simpson, one of the Garland, Texas, shooters, through Twitter and that defendant Elhuzayel identified Simpson's Twitter account as "atawaakul." Defendant's post-arrest admissions are corroborated by the Twitter communications themselves. Exhibit 202 is a Twitter message sent from the @atawaakul account on the same day as the attack, prior to the shooting. The message states that the "bro with me and myself have given bay'ah to Amirul Mu'mineen" and ends with "#texasattack." The writer had to have advance knowledge of the attack given the timing of the tweet. Exhibit 19 demonstrates that ISIL operative Abu Hussain al-Britani retweeted this message from the @atawaakul account and asked Allah to reward @atawaakul. Abu Hussain al-Britani also used a "#TexasAttack" hashtag. Thus, it is clear that, like defendant Elhuzayel, ISIL operative al-Britani believed that Elton Simpson really used the @atawaakul account.

Defendant's contact with Elton Simpson via Twitter was not limited to the date of the Garland, Texas, attack. Exhibit 201 reflects a message from Elton Simpson's @atawaakul account directed to defendant's Twitter account in April 2015. In the message, Elton Simpson wishes that Allah give defendant "food in jannah [paradise] from the hands of hoor [women of paradise]."

Thus, there is sufficient evidence to conclude that Elton Simpson used the @atawaakul account. Defendant himself admitted he

---

[4] To the government's knowledge, a transcript of FBI SA Wales' trial testimony has not been prepared. Therefore, summaries of the agent's testimony are based on the government's collective recollection.

had contact with Elton Simpson through Twitter, he correctly

identified Simpson's Twitter account, and an ISIL operative

redistributed Simpson's oath of allegiance to Abu Bakr al-Baghdadi

sent from the same Twitter account.  For all these reasons,

defendant's objections to PSR paragraph 18 should be denied.

**K.   No Additional Objection to PSR Paragraph 19**

Defendant Elhuzayel has no further objections to paragraph 19

(reciting his re-tweet of an Anwar al-Awlaki statement) other than

those based on the First Amendment.  <u>See</u> Objection 13.  Defendant

does not assert that the content of his re-tweet of Anwar al-Awlaki's

statement is inaccurate.  Thus, defendant's objection to PSR

paragraph 19 should be denied.

**L.   Objection to PSR Paragraph 23 Based On Misinterpretation**

Defendant Elhuzayel objects to paragraph 23 on the ground that

the conversation contains no reference to fighting for the Islamic

State.  <u>See</u> Objection 14.  Defendant misconstrues the conversation.

While the portion quoted in the PSR discusses meeting up in the

Islamic State, the balance of the recording makes clear that the

conversation is about going to the Islamic State for the purpose of

martyrdom:

> NE:  My next move is just to bounce.  Oh, learn Arabic
> actually.  That's what I'm doing. . . .  We'll – we'll meet
> up in the Islamic state.
>
> MB: [God willing.  Lord of the Worlds].  Do your parents
> know?
>
>     (Elhuzayel's mother speaks in the background)
>
> MB:  . . . . Tell her I'm going too.  Tell her I'm going
> too.
>
> NE:  . . . . I said we would meet up in the Islamic state.
> . . .

1   MB:   Tell her – tell her I'm going.  Allah will guide me,
    man. . . .  What your son is doing is – it's very
2   beautiful, man.

3   NE:   Yeah.  Apparently they don't see it like that, man.

4   MB:   . . . tell her on the day of judgment I'll make
    *Shafa'ah* [intercession] for you.
5
6   NE:   *Inshallah*.  Yeah, man.  If I'm going to *Shaheed*
    [martyr] I will -- I will intercede –

7   MB:   . . . . You will intercede for 70 people, *by God
    willing*.
8

9   Exhibit 741/741A (recorded telephone conversation).   When viewed in

10  context with the other evidence in the case, the full conversation,

11  including the references to martyrdom and intercession, makes clear

12  that defendants are discussing fighting for ISIL.   Defendant's

13  objection to PSR paragraph 23 should therefore be denied.

14  **M.   Objection to PSR Paragraph 25 Based on Multiple Grounds**

15      Defendant Elhuzayel objects to PSR, paragraph 25, on various

16  grounds, none of which are persuasive.   See Objection 15.   Paragraph

17  25 describes a telephone conversation on May 10, 2015, between

18  defendants Elhuzayel and Badawi.   In this telephone conversation,

19  defendant Badawi advises defendant Elhuzayel that he should go to the

20  "Islamic State" in Egypt, referring to ISIL's territory there.

21  MB:   I was talking to a brother from Mosul on Twitter. . .
    . he said the easiest way to go to Egypt from Palestine --
22  you go to the Islamic State in Egypt. . . . he said . . .
    can somebody from Twitter, like known, say this guy is
23  good, so I can give you the way -- the route.  So . . .
    gonna go to the *seigniory of Sinai* [Islamic State of Sinai]
24  . . . .

25  NE:   They already established a state?

26  MB:   Yeah . . . But they need you there *akhi* [my brother].
    . . .
27
    NE:   Can you imagine, man?  Being with that army? . . . .
28  *Mujahideen* [jihadi fighters].

13

1    Gov't Exhs. 742/742A, 743/743A (recorded telephone conversations);

2    see PSR ¶ 25.  Defendant Elhuzayel does not dispute that this

3    conversation took place or that PSR paragraph 25 accurately

4    summarizes its content.

5         Instead, defendant Elhuzayel complains that the government did

6    not provide any evidence that the person with whom Badawi was

7    communicating on Twitter -- "the brother from Mosul" -- had any links

8    to ISIL.  While this is true, the government did introduce evidence

9    of Badawi's Twitter communication with Mosuli Munasir (the brother

10   from Mosul), in which Munasir told Badawi that defendant Elhuzayel

11   could go to "Sinai, which is one of the States."  See Gov't Exh.

12   68/68A.  The government also introduced evidence that when Badawi

13   told Elhuzayel to go to the Islamic State of Sinai, defendants

14   discussed that ISIL had already established a state in the Egyptian

15   Sinai.  Gov't Exhs. 742/742A, 743/743A.  Further, the government

16   introduced at trial testimony by William Braniff that it is more

17   common for travelers to the Islamic State to contact an online

18   facilitator than to contact a person inside the Islamic State, and

19   that online facilitators use the Internet to assist those traveling

20   to the Islamic State to cross the border.  Exh. A, at 66-68.  Thus,

21   defendant's "objections" are simply arguments concerning the weight

22   of the evidence and are not a basis to revise the PSR.

23        Defendant Elhuzayel also contends there is no evidence that

24   defendant Badawi actually communicated with Abu Hussain al-Britani

25   himself.  Defendant is wrong.  At trial, the government introduced

26   Exhibit 65, an internet communication between defendant Badawi and an

27   individual who identified himself as "Abu Hussain Britani" and who

28   used an identified account that referenced his name.  Gov't Exh. 65.

During the communication, Abu Hussain Britani answered "yes" when Badawi asked "is that u in the picture." Id. The "picture" the two were discussing was a photograph of a male with dark hair, wearing an outdoor jacket, holding a military-type firearm and pointing it towards the camera. Id. This photograph is identical to the photograph in Exhibit 382, which is a Twitter message from defendant Elhuzayel's Twitter account. Compare Exh. 65 with Exh. 382. In Exhibit 382, defendant Elhuzayel re-tweets a message, with the attached photograph, asking others to follow and support Abu Hussain al-Britani. See Exh. 382. On the photograph attached to the re-tweet, at the top, are the words "Abu Hussain Britani." At trial, William Braniff testified that he recognized the person in the photograph in Exhibit 382 as Abu Hussain al-Britani, aka Junaid Hussain. Exh. A, at 63. In addition, this same photograph appears in multiple Twitter communications concerning the Garland, Texas, shootings that were sent by Abu Hussain al-Britani. See Gov't Exhs. 15, 16, 17, 18, 19 (Twitter messages found on Badawi iPhone with same photograph and identification banner "AbuHussainAlBritani"); see also discussion infra re: Objection to Paragraph 18. Thus, there is ample evidence that defendant Badawi communicated with Abu Hussain al-Britani. For all these reasons, defendant's objections to paragraph 25 should be denied.

**N.   Objection to PSR Paragraph 28 Based on Defendant's Incorrect Statement About Evidence**

Defendant objects to PSR, paragraph 28, because, he asserts, his boarding pass was to Tel Aviv, Israel, citing Exhibit 604. See Objection 16. Defendant is incorrect. Defendant's boarding pass was for a flight from Los Angeles to Istanbul [Turkey]. See Exhibit 604,

15

attached hereto.   Therefore, defendant's objection to paragraph 28 should be denied.

**O.  Objection to PSR Paragraph 33 Based on Argument Information Was Not Sensitive**

Defendant objects to the statement in PSR, paragraph 33, that the USB drive that he possessed at the time of his arrest contained documents that included sensitive government information.  <u>See</u> Objection 17.  His objection is without basis.

For example, one of the documents on the USB drive was a weekly intelligence summary which includes "intelligence information" and "finished intelligence reports."  The summary includes an analyst's commentary regarding the Islamic State.  The document is clearly marked for official use only.  <u>See</u> Gov't Exh. 128.  Another document was an alert from the FBI concerning computer hacking by specific overseas actors.  This document is clearly marked that it should not be shared via publicly accessible channels.  <u>See</u> Gov't Exh. 129. Thus, defendant's objection to paragraph 33 should be denied

**P.  Objection to PSR Paragraph 35 Based on Argument Post-Arrest Statements Were Made Under Threat**

Defendant Elhuzayel objects to PSR, paragraph 35, arguing that he made the statements in this paragraph after he was threatened by the FBI, who told him that they would have to arrest his family and his fiancée Enas.  <u>See</u> Objection 18.  There is no evidence in the record of any improper questioning by the FBI, much less any evidence that the FBI threatened to arrest defendant's family or fiancée.  The post-arrest interview, which was videotaped and transcribed, was conducted in a professional manner and defendant's admission regarding his plan to fly only as far as Istanbul and then join ISIL

16

is corroborated by the evidence presented at trial.  Defendant does not dispute that he made the statements summarized in PSR, paragraph 35.  Therefore, defendant's objection should be denied.

**Q.  Objection to PSR Paragraph 36 Based on Insufficient Evidence Argument**

Defendant Elhuzayel argues that there is no evidence confirming that defendant was in communication with Abu Hussain al-Britani.  <u>See</u> Objection 19.  As discussed above, <u>see</u> <u>supra</u> discussion re: Objection to Paragraph 25, there is a significant volume of evidence.

In addition, FBI Special Agent Scott Wales testified that defendant Elhuzayel admitted post-arrest that he had contact with Abu Hussain al-Britani through Twitter and another internet communication platform.  Defendant Elhuzayel admitted further that he knew that Abu Hussain al-Britani was in the Islamic State.  Defendant also told Special Agent Wales that defendant had told Abu Hussain al-Britani that defendant was leaving the United States to join the Islamic State.

As discussed above, Exhibit 382 is a Twitter communication in which defendant Elhuzayel urged his own followers to follow and support "our brother" Abu Hussain al-Britani.  Defendant's tweet is accompanied by a photograph identified by William Braniff as Junaid Hussain, aka Abu Hussain al-Britani, with the name "Abu Hussain Britani" at the top of the photograph.  In a second tweet in Exhibit 382, defendant Elhuzayel disseminates to his followers the Twitter account "@Abu_Hu55ain," a variation of Abu Hussain.  <u>See</u> Gov't Exh. 382.  Accordingly, defendant's objection to PSR paragraph 36 should be denied.

**R.   Objection to PSR Paragraph 56 (Misidentified as 58) Based on Argument Specific Offense Characteristic Does Not Apply**

Defendant Elhuzayel objects to PSR paragraph 56 (which he misidentifies as paragraph 58) that explains why the PSR finds that the specific offense characteristics in USSG § 2M5.3(b)(1)(E) apply here.  See Objection 20.  Defendant argues that there is "no evidence" that he "was planning to commit any violent acts," and that the "desire to die as a martyr is one of the central beliefs of Islam and is currently believed by mainstream Muslims."  Id.  To the contrary, the evidence in this case establishes beyond peradventure that defendant intended to join ISIL as a fighter, intending, knowing, and having reason to believe that he would commit or assist in the commission of violent acts.

The applicable guideline provision, states, in pertinent part:

> If the offense involved the provision of . . . material support or resources with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act, increase by 2 levels.

USSG § 2M5.3(b)(1)(E).  As the plain language of the guideline provision makes clear, the 2-level upward adjustment applies even when a defendant did not himself engage in an act of violence so long as he acted in support of such violence.  See United States v. Ali, 799 F.3d 1008, 1032 (8th Cir. 2015) (upholding application of 2-level upward adjustment in USSG § 2M5.3(b)(1)(E) where defendants provided money to terrorism organization al-Shabaab, knowing that al-Shabaab engaged in violent acts).

The record in this case fully supports the application of this 2-level upward adjustment.  The evidence shows that defendant Elhuzayel knew full well that ISIL was engaging in violent acts, and

18

that in joining ISIL he would further those acts.  As this Court has found, the government introduced recorded conversations between the defendants in which they expressed their intent to join ISIL/the Islamic State as fighters, a text message exchange in which defendants made a pact to fight on the front lines, and a video in which defendant Elhuzayel swore his allegiance to the Islamic State and stated he would "be there to fight with you guys."  See Order Denying Mot. For Judgment of Acquittal, Docket No. 194, at 7.  Thus, defendant's objection to the USSG § 2M5.3(b)(1)(E) adjustment should be denied.

**S.   Objection to PSR Paragraph 57 Based on Argument Terrorism Adjustment Does Not Apply**

Defendant Elhuzayel objects to PSR paragraph 57 that explains why the PSR finds that the 12-level upward adjustment in the offense level in USSG § 3A1.4(a) applies here.  See Objection 21.  Defendant argues there is "no evidence" that he "intended to attack the American government or any government," and there is "no evidence" that he "could even travel to the Islamic State."  Id.

The applicable sentencing guideline provision states, in relevant part:

> If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels.

USSG § 3A1.4(a).  For purposes of this guideline, "federal crime of terrorism" has the meaning given that term in 18 U.S.C. § 2332b(g)(5).  USSG § 3A1.4, comment.(n.1).  Section 2332b(g)(5) defines the term "federal crime of terrorism" to mean an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;

and is a violation of any one of enumerated statutes that include 18 U.S.C. § 2339B.

To satisfy the first prong of the "federal crime of terrorism" definition, the government need only prove[5] that the *offense* was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Application of USSG § 3A1.4 (a) does not require a finding that the defendant was *personally* motivated by a desire to influence or affect the conduct of government, or to retaliate against government conduct. See United States v. Awan, 607 F.3d 306, 316-318 (2d Cir. 2010) (holding that government need not show defendant was personally motivated to influence government if it shows that he intended to promote a crime calculated to have such an effect); United States v. Jayyousi, 657 F.3d 1085, 1114-15 (11th Cir. 2011) (holding that the first prong of USSG § 3A1.4(a) focuses on the "the intended outcome

---

[5] "The preponderance of evidence standard is generally the appropriate standard for factual findings used at sentencing." United States v. Felix, 561 F.3d 1036, 1045 (9th Cir. 2009). However, in the Ninth Circuit, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction, the government may have to prove the factor by clear and convincing evidence. Id. (internal quotation marks and citations omitted). The government recognizes that under current Ninth Circuit law, it must prove the application of USSG § 3A1.4 by clear and convincing evidence. See United States v. Tankersley, 537 F.3d 1100, 1106 & n.5 (9th Cir. 2008) (assuming, without deciding, that "clear and convincing" standard of proof applies to determination of facts underlying application of USSG § 3A1.4); United States v. Thurston, 2007 WL 1500176, *19 (D. Or. 2007) (finding that "clear and convincing" standard of proof applies to determination of facts underlying application of USSG § 3A1.4). The government submits that it has done this. However, for purposes of preserving its position on appeal, and due to the circuit split on this issue, the government argues that the standard of proof for all sentencing factors should be proof by a preponderance of the evidence. See, e.g., United States v. Graham, 275 F.3d 490, 517 n.19 (6th Cir. 2001) (holding that preponderance of evidence standard of proof applies to determination of facts for application of USSG § 3A1.4).

20

1  of the defendant['s] unlawful acts--i.e., what the activity was

2  calculated to accomplish, not what the defendant['s] claimed

3  motivation behind it was . . . . [d]efendant's motive 'is simply not

4  relevant.'"); accord United States v. El-Mezain, 664 F.3d 467, 571

5  (5th Cir. 2011) (citing with approval Awan and Jayyousi opinions;

6  see also United States v. Chandia, 675 F.3d 329, 340-341 (4th Cir.

7  2012) (affirming application of terrorism adjustment where the court

8  reasonably inferred that the defendant intended to advance the

9  terrorist organization's purpose based on the defendant's knowledge

10  about the terrorist organization).

11      The record in this case establishes by clear and convincing

12  evidence that defendant Elhuzayel's offenses, conspiring to provide,

13  and attempting to provide, material support or resources to ISIL,

14  were "calculated to influence or affect the conduct of government by

15  intimidation or coercion," and "to retaliate against government

16  conduct."  See 18 U.S.C. § 2332b(g)(5)(A).  The following are some

17  examples of the evidence in the record.  On December 27, 2014, in a

18  Twitter communication, defendant Elhuzayel described his eager

19  anticipation of ISIL attacking Israel, and beheading "yahoodis."  See

20  Gov't Exhs. 304 and 450.  On April 9, and 10, 2015, defendant

21  Elhuzayel sent out a Twitter communication, asking Allah to grant the

22  ISIL fighters victory, to destroy the enemies of Islam, and to expand

23  the caliphate globally.  Gov't Exh. 339.  On May 15, 2015, defendant

24  Elhuzayel, in a recorded conversation with KN, stated that ISIL was

25  the best nation on earth, asked that Allah destroy the coalition,

26  declared that the Shia would be exterminated, and said that he would

27  like to behead Asad (the leader of a nation).  Gov't Exh. 803.2.  On

28  May 20, 2015, the day before he went to the airport, defendant

21

Elhuzayel sent out a Twitter communication that urged "Pick a side . . . do you choose the camp of Iman? Or do you choose the camp of kufr?" Gov't Exh. 396. When he attempted to leave the United States to travel to ISIL-held territory, defendant carried with him a USB drive loaded with multiple photographs of ISIL's victims, some of which he had tweeted. See Gov't Exhs. 108-113 (graphic photos of American humanitarian aid worker Peter Kassig, before and after he was beheaded by ISIL), 115 (photos of Peter Kassig's parents), 131-132 (Elhuzayel's tweet "Spread this picture to the Japanese kufar who know English" with a photo of a Japanese civilian who was beheaded by ISIL); 143 ("I'm back, Kuffar!" with Jihadi John photo). Also on defendant Elhuzayel's USB drive was a copy of ISIL's publication Dabiq, that contained articles quoting Abu Bakr al-Baghdadi's July 2014 audio release, stating in substance, that the world had been divided into two camps – the camp of the Muslims and the camp of the Jews, crusaders, their allies, and with them the rest of the nations and religions of kufr, all being led by America and Russia. Gov't Exh. 102, at 10. In addition, defendant had on his Twitter account multiple tweets and re-tweets with graphic photographs showing ISIL's brutality to its enemies. See, e.g., Gov't Exhs. 311 ("sweet revenge by #IslamicState" with photos of beheading), 335 ("#WewillBurnUSAgain" with beheading photo), 336 ("O'Obama, Soon the streets of New York will become a fighting scene between us" with photo of American ISIL victim Steven Sotloff and Jihadi John), 348 (link to ISIL video showing beheadings of Ethiopian Christians on beach in Libya), 356 (photos from ISIL video showing beheadings in Libya).

1    Accordingly, the terrorism adjustment, set forth in USSG

2  § 3A1.4, applies here, and defendant's objection to PSR paragraph 57

3  should be denied.

4    **T.    Objection to PSR Paragraph 91 Based On Factual Correction
          Re: Education**

5

6    The government accepts defendant's assertion that he completed

7  third grade in the United States.  <u>See</u> Objection 22.

8    **GOVERNMENT'S RESPONSE TO DEFENDANT ELHUZAYEL'S**

9    **SENTENCING MEMORANDUM**

10    The government responds briefly to the "disparity in sentencing"

11  argument that defendant Elhuzayel makes in his sentencing memorandum.

12  Defendant Elhuzayel is the first defendant to be sentenced by a

13  district court after conviction at trial of conspiring to provide <u>or</u>

14  attempting to provide material support to ISIL.  There are no other

15  cases that offer comparable records.

16    Defendant Elhuzayel has brought to the Court's attention

17  sentences in other cases that differ in significant ways from this

18  one.  These cases involved other crimes including non-terrorism

19  offenses, other terrorist organizations, and other defendants who are

20  not similarly situated to defendant Elhuzayel in personal

21  characteristics, offense conduct, or likelihood of rehabilitation.

22  Moreover, the generalized statistical information in the exhibits

23  attached to defendant's memorandum are of little guidance.  As Judge

24  Selna wisely stated in his sentencing minute order in <u>United States</u>

25  <u>v. Dandach</u>, discussing the Center on National Security report that

26  defendant Elhuzayel has attached as Exhibit 5 to his sentencing

27  memorandum here:

28

                                  23

1         But more importantly, the report reveals none of the
     specific facts of the case which would allow the Court to
2    draw any conclusions for this case.  Post-Booker,
     sentencing requires a focused analysis with regard to the
3    specific defendant and the specific facts of that
     defendant's case.

4

5    Exh. D, at 7.[6]  This Court has the benefit of having heard and seen

6    the evidence of defendant Elhuzayel's offenses and ISIL's heinous

7    nature at trial, as well as having observed defendant himself in

8    proceedings over the course of more than a year.  It is this

9    information, more than generalized statistics, that properly informs

10   the sentence to be imposed by the Court on defendant Elhuzayel in

11   this case.

12   Dated: September 21, 2016          Respectfully submitted,

13                                     EILEEN M. DECKER
                                       United States Attorney
14
                                       PATRICK R. FITZGERALD
15                                     Assistant United States Attorney
                                       Chief, National Security Division
16

17                                     _____/s/_____
                                       JUDITH A. HEINZ
18                                     Assistant United States Attorney

19                                     _____/s/_____
20                                     DEIRDRE Z. ELIOT
                                       Assistant United States Attorney
21

22                                     _____/s/_____
                                       JULIUS J. NAM
23                                     Assistant United States Attorney

24                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
25

26

27   ───────────────────
         [6] Attached hereto as Exhibit D is a copy of Judge Selna's minute
28   order in United States v. Dandach, Docket No. 137, filed July 25,
     2016).