EILEEN M. DECKER
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
General Crimes Section
     1500/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7280/4491
     Facsimile: (213) 894-7631/0141
     E-mail:  judith.heinz@usdoj.gov
     E-mail:  julius.nam@usdoj.gov
DEIRDRE Z. ELIOT (Cal. Bar No. 145007)
Assistant United States Attorney
Terrorism and Export Crimes Section
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3599
     Facsimile: (714) 338-3564
     E-mail:  deirdre.eliot@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>NADER SALEM ELHUZAYEL and<br>MUHANAD ELFATIH M. A. BADAWI,<br><br>            Defendants. | No. SA CR 15-00060(A)-DOC<br><br>**GOVERNMENT'S RULE 32(f) RESPONSE TO PRESENTENCE INVESTIGATION REPORT FOR DEFENDANT MUHANAD ELFATIH M. A. BADAWI**<br><br>Hearing Date: October 17, 2016<br>Hearing Time: 3:00 p.m.<br>Location:     Courtroom of the<br>              Hon. David O.<br>              Carter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Judith A. Heinz, Deirdre Z. Eliot, and Julius J. Nam, hereby responds to the Presentence Investigation Report ("PSR") for defendant Muhanad Elfatih M. A. Badawi that was disclosed on September 12, 2016.

In addition to this Rule 32(f) response, the government will file and serve its sentencing position brief no later than October 11, 2016.

Dated: September 26, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division

        /s/
JUDITH A. HEINZ
Assistant United States Attorney

        /s/
DEIRDRE Z. ELIOT
Assistant United States Attorney

        /s/
JULIUS J. NAM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES ................................................. ii

I.   Objections ...................................................... 1

     A.   Corrections to Page 2 Information .......................... 1

     B.   Paragraphs 37, 124 - Corrections Regarding Victim
          Impact and Restitution ..................................... 1

     C.   Paragraph 55 - Failure to Apply USSG § 3A1.4 to
          Financial Aid Fraud ........................................ 2

     D.   Page 4 and Paragraphs 58-59, 61-62 - Multiple Count
          Adjustment Correction ...................................... 4

     E.   Paragraph 119 - Fines - Correction of Count Number ......... 5

     F.   Paragraphs 142-143 - Objections to Downward
          Departure/Variance ......................................... 5

          1.   Defendant Badawi's "Youthful Age" ..................... 5

          2.   Defendant Badawi's Immigrant Status ................... 9

          3.   Defendant Badawi's Criminal History .................. 11

          4.   Avoidance of Sentencing Disparities/Comparison to
               Dandach .............................................. 12

          5.   Combination of Factors ............................... 15

II.  Further Briefing ............................................... 15

**TABLE OF AUTHORITIES**

| DESCRIPTION | PAGE |
|---|---|

**CASES**

Callanan v. United States,
    364 U.S. 587 (1961) .......................................... 13,

Miller v. Alabama,
    132 S. Ct. 2455 (2012) ...................................... 6, 14

United States v. Ali,
    799 F.3d 1008 (8th Cir. 2015) .................................. 11

United States v. Batson,
    608 F.3d 630 (9th Cir. 2010) ................................... 2

United States v. Jayyousi,
    657 F.3d 1085 (11th Cir. 2011) ................................ 11

United States v. Khan,
    461 F.3d 477 (4th Cir. 2006) .................................. 12

United States v. Meskini,
    319 F.3d 88 (2d Cir. 2003) .................................... 11

United States v. Ressam,
    679 F.3d 1069 (9th Cir. 2012) .............................. 11, 13

**STATUTES**

18 U.S.C. § 3553(a) ............................................ 2, 5, 12

18 U.S.C. § 3556 ................................................... 2

18 U.S.C. § 3563 ................................................... 2

18 U.S.C. § 3583 ................................................... 2

18 U.S.C. § 3663 ................................................... 2

18 U.S.C. § 3663A .................................................. 2

**RULES**

USSG § 3A1.4 ............................................. 2, 3, 4, 5

USSG § 3D1.4 ....................................................... 4

USSG § 5E1.1 ....................................................... 2

USSG § 5H1.1 ....................................................... 5

USSG § 5H1.3 ...................................................... 14

GOVERNMENT'S RULE 32(f) RESPONSE TO PRESENTENCE INVESTIGATION REPORT
FOR DEFENDANT MUHANAD ELFATIH M. A. BADAWI

I.  Objections

The government makes the following objections to the Presentence Investigation Report ("PSR") for defendant Muhanad Elfatih M. A. Badawi ("defendant Badawi" or "defendant").

   A.   Corrections to Page 2 Information

"Detainers" Information: "None" should be corrected to read "Immigration Detainer – Notice of Action."

"SSN#" Information:  The number here should be corrected because it is different from the SSN# on defendant Badawi's immigration and federal financial aid documents.  The government believes the SSN# on defendant Badawi's immigration and federal financial aid documents is correct.

   B.   Paragraphs 37, 124 – Corrections Regarding Victim Impact
        and Restitution

Paragraph 37 correctly states that the federal government suffered the loss of $671.60 as a result of defendant Badawi's financial aid fraud.  The restitution amount is $671.60 and the victim/restitution information is:  U.S. Department of Education, OCFO, FMO-Debt & Payment Management Group, Attn: Renu Kapur, 550 12th Street SW, RM 6107, Washington, DC 20202-4461.

Paragraph 124 of the PSR incorrectly states that "Restitution is not applicable in this case."  Here, the U.S. Department of Education is "an identifiable victim," and therefore, the Court may, and should, order that, as a condition of supervised release, defendant Badawi make restitution for the full amount of the victim's loss –

specifically, that defendant Badawi pay $671.60 in restitution to the U.S. Department of Education.[1]

    C.    **Paragraph 55 – Failure to Apply USSG § 3A1.4 to Financial Aid Fraud**

The government objects to the PSR's decision not to apply the terrorism adjustment in USSG § 3A1.4 when calculating the total offense level for defendant Badawi's financial aid fraud conviction. The PSR states that it declines to apply the adjustment to the financial aid fraud offense level calculation because financial aid fraud, a violation of 20 U.S.C. § 1097(a), "is not among the list of enumerated offenses" in 18 U.S.C. § 2332b(g)(5) (defining the term "federal crime of terrorism"). PSR ¶ 55. The PSR's reasoning

---

[1] Title 18, United States Code, Sections 3663 and 3663A do not explicitly authorize a district court to order payment of restitution for loss resulting from the commission of a Title 20 offense. See 18 U.S.C. §§ 3663, 3663A. However, other statutes and sentencing guideline provisions authorize the Court to order that defendant Badawi make restitution to the Department of Education as a condition of supervised release. See USSG § 5E1.1(a)(2) (in the case of an identifiable victim, the court shall impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section); USSG § 5E1.1, comment. (backg'd.) (18 U.S.C. § 3553(a)(7) requires the court, in determining the particular sentence to be imposed, to consider the need to provide restitution to any victims of the offense. For offenses for which an order of restitution is not authorized, restitution may be imposed as a condition of probation or supervised release.); 18 U.S.C. § 3583(d) (court may order as a condition of supervised release any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate); 18 U.S.C. § 3563(b)(2) (discretionary conditions of probation include a condition that the defendant make restitution to a victim of the offense under 3556 (but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A)); 18 U.S.C. § 3556 (the court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution). See also United States v. Batson, 608 F.3d 630, 634-36 (9th Cir. 2010) (Section 3583(d) grants federal courts the authority to order restitution as a condition of supervised release for any criminal offense).

misconstrues the plain language of the sentencing guideline provision (USSG § 3A1.4) and is contrary to the decisions of every court of appeals to have addressed this issue.

However, on September 20, 2016, the United States Probation Office ("USPO") filed an Addendum to the Presentence Report for codefendant Nader Salem Elhuzayel ("defendant Elhuzayel"). In that Addendum, the USPO reversed its previous position, and agreed with the government that the terrorism adjustment in USSG § 3A1.4 applied to the offense level calculation for defendant Elhuzayel's bank fraud offenses. See First Addendum to the Presentence Report, Docket No. 208, filed September 20, 2016. The government submits that the conclusion reached by the USPO as expressed in the First Addendum to the Elhuzayel Presentence Report should also apply to the offense level calculation for defendant Badawi's financial aid fraud offense. Like codefendant Elhuzayel's bank fraud, defendant Badawi's financial aid fraud was intended to promote a federal crime of terrorism. In the event the USPO disagrees, the government incorporates fully herein its discussion of this issue in the Government's Rule 32(f) Response to Presentence Report for Defendant Nader Salem Elhuzayel, Docket No. 199, at section I.A, pages 1-5, filed September 2, 2016.

To summarize, the terrorism adjustment in USSG § 3A1.4 applies to defendant Badawi's financial aid fraud offense because this offense is a felony that was intended to promote a federal crime of terrorism. See USSG § 3A1.4. As the PSR states, defendant "Badawi engaged in financial aid fraud for the specific purpose of using the illicit proceeds to fund Elhuzayel's travel to Syria to join ISIS and provide material support to ISIS." PSR ¶ 55. Therefore, defendant Badawi had, as one purpose of his financial aid fraud, the intent to

3

promote federal crimes of terrorism -- the conspiracy and attempt to provide defendant Elhuzayel as a fighter to ISIS. Consequently, the terrorism adjustment applies to the financial aid fraud count, and, pursuant to USSG § 3A1.4(a), increases the total offense level for the financial aid fraud count to 32. USSG § 3A1.4(a).

    D.    Page 4 and Paragraphs 58-59, 61-62 – Multiple Count Adjustment Correction

The information in these paragraphs is incorrect as a result of the PSR's erroneous reasoning in paragraph 55. The correction of the calculation is important because, as discussed below, it potentially impacts the Court's consideration of the PSR's downward variance recommendation.

Paragraph 58: As discussed above, the adjusted offense level (subtotal) for the financial aid fraud offense should be 32.

Paragraph 59: The multiple count adjustment should be corrected as follows:

| Group # | Adjusted Offense Levels | Units |
|---|---|---|
| 1 | 40 | 1.0 |
| 2 | 32 | 0.5 |
| Total Number of Units: | | 1.5 |

Paragraph 61: The increase in offense level should be + 1. USSG § 3D1.4(b).

Paragraph 62: The combined adjusted offense level should be 41.

Paragraph 65: The total offense level should be 41.

When the above corrections are made, defendant's offense level of 41 would yield a sentencing guideline range of a term of imprisonment of 324-405 months if defendant's criminal history

4

category was I, based on a total criminal history score of zero. See Sentencing Table; PSR ¶¶ 67-70. Of course, as a result of the application of USSG § 3A1.4(a), defendant Badawi's criminal history category is VI, which, with an offense level of 41, yields a sentencing guideline range of a term of imprisonment of 360 months - life. See Sentencing Table; PSR ¶ 70.

### E. Paragraph 119 - Fines - Correction of Count Number

This paragraph in the PSR references Counts 1 and 2; it should be corrected to reference Counts 1 and 3.

### F. Paragraphs 142-143 - Objections to Downward Departure/Variance

The PSR identifies as factors that may warrant a downward departure/variance defendant Badawi's "youthful age," his immigrant status, his "lack of a criminal history," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." PSR ¶ 126. In support of the "unwarranted sentence disparities" variance, the recommendation letter compares defendant Badawi to defendant Adam Dandach (who pled guilty pursuant to a plea agreement and had a history of parental abuse and mental disorder). The PSR's recommendation of a downward departure/variance in this case is not justified.

#### 1. Defendant Badawi's "Youthful Age"

The PSR correctly states that under both the sentencing guidelines and 18 U.S.C. § 3553(a), a defendant's youthful age may justify a downward departure/variance from a guidelines sentence. See USSG § 5H1.1 (age "may be relevant in determining whether a departure is warranted, if considerations based on age, . . . are

5

present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."). As explained below, there are no particularized facts related to defendant's "youthful age" that support a downward variance, even when this factor is considered in combination with others.

Defendant Badawi's characteristics and conduct bear no hallmarks of youth or immaturity that the Supreme Court has found distinguish adults from minors. See Miller v. Alabama, 132 S. Ct. 2455, 2464-68 (2012) (holding that application of mandatory term of life imprisonment to juvenile defendants violates the Eighth Amendment). For instance, defendant Badawi's actions were not the product of impulsivity, recklessness or peer pressure. While minors have a lack of maturity and an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk-taking, see id., those factors are not present here. Minors are more vulnerable to negative influences including from their family and peers because they have limited control over their own environment, see id., yet defendant Badawi experienced no pressure from his peers to support a terrorist organization. A minor's character is not as well-formed as an adult's and thus, there can be an increased possibility of rehabilitation. See id. However, defendant Badawi, an adult, has long embraced ISIL ideology and his staunch commitment to it makes his rehabilitation far less likely.

Understandably, the probation officer's assessment of defendant Badawi's relative maturity was necessarily based on very limited information. The probation officer who conducted the presentence investigation has never even met defendant Badawi, because defendant Badawi declined to be interviewed for the presentence investigation.

PSR ¶¶ 39, 90.  Fortunately, in this case, the Court has the benefit of having received information about defendant Badawi from a variety of sources, including the Court's own observations of defendant during trial and multiple hearings, and defendant's own words and demeanor as captured on audio and video recordings.

Nothing in the record indicates that defendant Badawi is unusually immature or prone to reckless or impulsive conduct or heedless risk-taking.  Defendant Badawi was 23-24 years old at the time of his offense conduct; he is 25 years old now.  PSR, page 2. After graduating from high school in June 2009 at age 18, PSR ¶ 95, he enrolled the following Fall in classes at Cypress College, and in classes at Fullerton College beginning in Summer 2013.[2]  While never enrolled in full-time, his courses included college algebra, trigonometry, and calculus.  Defendant Badawi applied for, and received, federal Pell grants to pay for his college expenses for four consecutive academic years, 2011 - 2015.  Gov't Exh. 964.  In addition to attending college after his high school graduation, defendant Badawi also began working.  He worked as a gas station cashier for approximately two years, then in security for a bank, then as a waiter in a restaurant, and, from May 2014 to May 2015, as a Lyft driver.  PSR ¶ 97-100.  Defendant Badawi's college studies and employment are hardly indicative of youthful immaturity.  In addition, the videotape of his post-arrest interview shows defendant Badawi calmly discussing, and defending, the ideological basis for ISIL's conduct.  The audio recordings of Badawi's conversations

---

[2] The government has produced these records to the defense; see Bates Nos. 775-799 (Cypress College); Bates Nos. 1232-1233 (Fullerton College).

7

introduced at trial further evidence an adult-like command of reflection and reasoning. In short, there is no evidence that defendant Badawi's actions were the result of impulsivity or recklessness.

Nothing in the record indicates that defendant Badawi exercised limited control over his environment such that he was more vulnerable to negative influences from his family and peers. Defendant Badawi owned his own vehicle, and chose his activities and friends freely. Although he lived in the Badawi family home, his family was loving and supportive - a positive rather than negative influence. His family attempted to dissuade him from his support for ISIL. For example, on February 5, 2015, Badawi described how his older brother had expressed strong opposition to ISIL following ISIL's release of a video showing a Royal Jordanian Air Force pilot being burned to death by ISIL while trapped inside a metal cage, and had informed their mother not to let Badawi have his passport to prevent Badawi from traveling to ISIL-held territory. Gov't Exh. 60 (text message to Elhuzayel on Badawi iPhone).

Nor was Badawi particularly vulnerable to negative peer pressure - in fact, it was Badawi who was attempting to radicalize and recruit others for ISIL. Defendant Badawi was well-equipped for this mission. Fluent in Arabic, he could recite the Koran from memory, and was extremely well-versed in other Islamic writings. He revered and spread the teachings of Anwar al-Awlaki, Abu Malik al-Tamimi, Anjem Choudary, and other well-known clerics who have been part of the global jihadi movement. Defendant Badawi repeatedly made overtures to other Muslim men in Orange County, inviting and advocating they make *hijra* to the "Islamic State." He corresponded

8

with the notorious ISIS operative, Abu Hussain al-Britani, who promoted the Garland, Texas, attacks, sending al-Britani a chilling photo of what appears to be himself dressed as a fighter pointing a knife towards the viewer and vowing to "put it in" when the time was right. Gov't Exh. 65.

Nothing in the record indicates defendant Badawi's character was not yet well-formed such that a higher possibility of rehabilitation exists here. Instead, public safety argues in favor of a lengthy term of imprisonment commensurate with Badawi's longer life span. Rather than the naivety associated with youth, defendant Badawi demonstrated skill in the commission of extremely serious and sophisticated criminal conduct. Instead of heedless risk-taking, defendant Badawi and codefendant Elhuzayel made efforts to conceal their behavior from law enforcement and even discussed Badawi's future FBI interview after Elhuzayel left the United States to join ISIL. In sum, Badawi's history and characteristics do not support a departure/variance on the grounds of his youthful age even in combination with other factors.

### 2. Defendant Badawi's Immigrant Status

The Recommendation Letter points to defendant Badawi's immigrant status as a basis for a downward variance. Recommendation Letter, page 6. A downward departure/variance on these grounds, either alone or in combination with other factors, is not warranted here.

Contrary to the speculation in the recommendation letter, there is no particularized information here that defendant Badawi "suffered" anything as a result of his immigration to the United States. See Recommendation Letter, page 6. Defendant Badawi was born and raised in Khartoum, Sudan. PSR ¶ 83. He lived in a "big

9

house" in a "modern city" with his father, mother, two brothers and sister. PSR ¶ 83. The Badawi family left Sudan due to "political reasons" -- Badawi's mother and father supported democratic reform efforts in Sudan. PSR ¶ 85. Badawi and his older brother were unaware of the political persecution faced by their parents as they were too young. PSR ¶ 85. Badawi's mother, sister, and his younger brother immigrated first to the United States in 2002. Defendant Badawi, and his father and older brother joined them in the United States in 2006. PSR ¶ 84. After entering the United States, Badawi continued to have close relationships with his parents and siblings, his parents did a good job of providing for the family, the family continued to be practicing Muslims, and Badawi continued his education, was a good student, and enjoyed social activities with friends. See PSR ¶¶ 79-81, 86-88. Thus, the information in the record indicates defendant Badawi had the benefit of intelligence, attachment to parents, parental supervision, religious affiliation, and attachment to prosocial institutions including school -- factors that have been found to help immigrants to thrive in their new country. In addition, the PSR states that defendant Badawi has "never displayed any behavioral problems," "was always a good student," and "never acted out or caused the family any problems." PSR ¶ 88. Thus, neither the PSR nor the Recommendation Letter contain any particularized information indicating that defendant Badawi had difficulty adjusting to life in the United States. Absent such particularized information, defendant Badawi's immigrant status is not a proper basis for a downward departure, either alone or in combination with other factors.

### 3. Defendant Badawi's Criminal History

The PSR and Recommendation Letter suggest defendant Badawi's lack of criminal history supports a downward departure/variance. PSR ¶ 126; Recommendation Letter, pages 6-7. In so doing, they discount, bereft of justification, the sentencing commission's decision that, through the application of the terrorism adjustment, defendants convicted of terrorism offenses are assigned a criminal history category of VI. Multiple courts of appeals have upheld the legitimacy of the assignment of criminal history category VI to defendants convicted of terrorism offenses even when those defendants have no prior criminal conduct. As the Second Circuit explained in United States v. Meskini:

> Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time. Thus the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category.

319 F.3d 88, 92 (2d Cir. 2003); see, e.g., United States v. Ali, 799 F.3d 1008 (8th Cir. 2015) (same). Echoing multiple courts of appeals, the Ninth Circuit instructed in United States v. Ressam, "Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." 679 F.3d 1069, 1091 (9th Cir. 2012) (quoting United States v. Jayyousi, 657 F.3d 1085, 1117 (11th Cir. 2011)). Thus, there are, as multiple courts of appeals have recognized, very good reasons why defendants convicted of terrorism offenses, even those with no prior criminal conduct, are assigned criminal history category VI. There is no particularized

11

information here that overcomes these very good reasons. Further, when defendant Badawi's offense level is calculated properly, as discussed above, even his criminal history category of I yields a sentencing guideline range of a term of imprisonment of 324-405 months.

    4.   Avoidance of Sentencing Disparities/Comparison to Dandach

The primary factor relied upon in the PSR and Recommendation Letter to support the recommended downward variance is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); PSR ¶ 126; Recommendation Letter, page 7. While both the PSR and Recommendation Letter properly consider the sentencing disparity factor, they appear improperly to give excessive weight to it. See, e.g., United States v. Khan, 461 F.3d 477, 500-01 (4th Cir. 2006) (holding that the district court erred when it placed "excessive weight" on § 3553(a)(6) and imposed a below-guidelines sentence). In addition, defendant Badawi is not similarly situated to defendant Adam Dandach; in fact, the two defendants differ significantly.

Defendant Adam Dandach signed a plea agreement and, pursuant to that agreement, pled guilty to an information charging him with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B and false statement in a passport application in violation of 18 U.S.C. § 1542. See United States v. Dandach, SA CR 14-0109(A)-JVS, Docket No. 71 (plea agreement). In his plea agreement and under oath during his change of plea hearing, Dandach made extensive admissions about his

commission of his crimes. See id. at pgs. 7-11. By comparison, defendant Badawi was convicted at trial on two counts of violating 18 U.S.C. § 2339B -- conspiring to provide, and attempting to provide, material support or resources to a foreign terrorist organization -- and one count of financial aid fraud in violation of 20 U.S.C. § 1097(a). Not surprisingly, the Ninth Circuit has soundly rejected, in terrorism cases, a downward departure/variance based on comparing the sentences imposed on defendants who went to trial with defendants who pled guilty. See Ressam, 679 F.3d at 1094-95 ("We . . . reject the comparison of Ressam's sentence to defendants who pleaded guilty.").

Not only did Dandach plead guilty, but his crimes were less serious. Unlike Badawi, Dandach did not conspire with or seek to recruit others to provide support to ISIS, and Badawi's conspiracy conviction, coupled with his conviction for aiding and abetting Elhuzayel's attempt, makes him far more dangerous than Dandach. As the Supreme Court explained over fifty years ago:

> [C]ollective criminal agreement – partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish.

Callanan v. United States, 364 U.S. 587, 593-94 (1961). Badawi, in contrast to Dandach, acted with his coconspirator Elhuzayel; together they promoted ISIL to their associates and worked to provide fighters to ISIL. Thus, Badawi and Dandach do not stand convicted of similarly serious conduct.

13

Moreover, Badawi and Dandach are significantly different in their history and characteristics. While Badawi was 24, Dandach was only 19 years old at the time he committed his crimes. See Dandach, SA CR 14-0109(A)-JVS, Docket No. 137 (minutes of sentencing). In addition, unlike Badawi, Dandach had "long standing emotional and psychological problems" that the district court found "were present to an unusual degree and distinguish[ed] him from a typical case." Id.; see USSG § 5H1.3 (mental and emotional conditions may be relevant to departure). Unlike Badawi, Dandach suffered parental abuse as a child, and during his teen years, he was severely overweight, weighing as much as 550 pounds. See Dandach, SA CR 14-0109(A)-JVS, Docket No. 137 (minutes of sentencing). Thus, unlike Badawi, Adam Dandach displayed many of the mitigating characteristics of minors delineated by the Supreme Court. See Miller, 132 S. Ct. at 2464-68. In sharp contrast, there are no reports of abuse in the Badawi home. Instead, by all reports, defendant Badawi enjoys a loving and supportive family, where he shared good relationships with his parents, his brothers and his sister. PSR ¶¶ 79-81, 83, 86. Defendant Badawi has no history, prior to his arrest, of physical, emotional or psychological problems, and he reports that he is currently in good health and at a "good spiritual level." See PSR ¶¶ 88-91. In sum, the basis for the district court's downward departure/variance in the Dandach case -- social immaturity at age 19 and unusual mental difficulties -- does not apply here. Defendants Badawi and Dandach are not similarly situated, and basing a downward/variance here on § 3553(a)(6) would be error.

5. <u>Combination of Factors</u>

For all the reasons stated above, the factors of "youthful age," immigrant status, lack of criminal history, and a comparison to the <u>Dandach</u> case, do not warrant a downward variance in this case, even in combination with each other.

## II. Further Briefing

The government will file and serve its sentencing position brief no later than October 11, 2016.

| Dated: September 26, 2016September 26, 2016 | Respectfully submitted, |
|---|---|
| | EILEEN M. DECKER<br>United States Attorney |
| | PATRICK R. FITZGERALD<br>Assistant United States Attorney<br>Chief, National Security Division |
| |       /s/<br>JUDITH A. HEINZ<br>Assistant United States Attorney |
| |       /s/<br>DEIRDRE Z. ELIOT<br>Assistant United States Attorney |
| |       /s/<br>JULIUS J. NAM<br>Assistant United States Attorney |
| | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |