1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3          **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                      )        **CERTIFIED**
6              Plaintiff,             )
                                      )
7         vs.                        ) No. 8:15-CR-0060-DOC
                                      )     Item No. 8
8    1) NADER SALEM ELHUZAYEL,        )
                                      )
9              Defendant.             )
     _____)

10

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                     Sentencing

16               Santa Ana, California

17             Monday, September 26, 2016

18

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1    **APPEARANCES OF COUNSEL:**

2

FOR THE UNITED STATES OF AMERICA:

3

      DEPARTMENT OF JUSTICE
4          OFFICE OF THE UNITED STATES ATTORNEY
      Criminal Division
5          BY:  Judith A. Heinz
          Assistant United States Attorney
6          312 North Spring Street
      15th Floor
7          Los Angeles, California 90012
      213-894-3713
8          USACAC.Criminal@usdoj.gov

9          DEPARTMENT OF JUSTICE
      OFFICE OF THE UNITED STATES ATTORNEY
10         Criminal Division
      BY:  Deirdre Z. Eliot
11             Assistant United States Attorney
      411 West 4th Street
12         Suite 8000
      Santa Ana, California 92701
13         714-338-3500
      USACAC.SACriminal@usdoj.gov
14
      DEPARTMENT OF JUSTICE
15         OFFICE OF THE UNITED STATES ATTORNEY
      General Crimes Section
16         BY:  Julius J. Nam
          Assistant United States Attorney
17         312 North Spring Street
      Suite 1200
18         Los Angeles, California 90012
      213-894-4491
19         julius.nam@usdoj.gov

20

FOR DEFENDANT NADER SALEM ELHLUZAYEL:
21

      Pal A. Lengyel-Leahu *(retained)*
22         LAW OFFICES OF PAL A LENGYEL-LEAHU
      360 East First Street
23         Suite 609
      Tustin, California 92780
24         714-497-6813
      plitigate@aol.com
25

1   ALSO PRESENT:

2   FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3
        Katherine T. Corrigan *(CJA appointment)*
4       CORRIGAN WELBOURN AND STOKKE APLC
        4100 Newport Place
5       Suite 550
        Newport Beach, California 92660
6       949-251-0330
        kate@cwsdefense.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2   **PROCEEDINGS**                                **PAGE**

3   Appearances                                     5

4   Defense Position                                7

5   Defendant's Allocution                         14

6   Further Allocution by Defendant                16

7   Government's Position                          18

8   Further statements by defendant                24

9   Calculations                                   29

10  Pronouncement of Sentence                      50

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
|  | 1 |

**SANTA ANA, CALIFORNIA, MONDAY, SEPTEMBER 26, 2016**

**Item No. 8**

(2:55 p.m.)

02:36  4    THE COURT:  All right.  We're on the record in the
5  matter of the United States v. Nader Salem Elhuzayel.

02:36  6    And, Counsel, would you make your appearances on
7  behalf of the government, please.

02:36  8    And this is Case No. 15-0060-1.

02:36  9    **APPEARANCES**

02:36  10    MS. HEINZ:  Good afternoon, Your Honor.  Judith
11  Heinz on behalf of the United States.

02:36  12    MS. ELIOT:  Deirdre Eliot for the government.

02:36  13    MR. NAM:  Julius Nam for the United States.

02:36  14    THE COURT:  Thank you.

02:36  15    And, Mr. Lengyel-Leahu, if you'd make your
16  appearance, please.

02:36  17    MR. LENGYEL-LEAHU:  Yes, Your Honor.

02:36  18    Pal Lengyel-Leahu on behalf of Mr. Elhuzayel,
19  who's present in court, in custody.

02:36  20    THE COURT:  Elhuzayel is present.

02:36  21    Counsel, do you know any legal reason or cause why
22  the Court should not proceed to sentence today?

02:36  23    MR. LENGYEL-LEAHU:  No, Your Honor.

02:36  24    THE COURT:  Have you received a copy of the
25  Presentence report 35 days prior to today's date?

| | | |
|---|---|---|
| 02:36 | 1 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 02:36 | 2 | THE COURT:  Much more importantly than the |
| | 3 | technical requirement of 35 days, have you had enough time |
| | 4 | to discuss this report with your client? |
| 02:36 | 5 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 02:36 | 6 | THE COURT:  Mr. Elhuzayel, have you had enough |
| | 7 | time to discuss this Presentence Report with your attorney? |
| 02:37 | 8 | THE DEFENDANT:  Um, um -- I'm very satisfied. |
| 02:37 | 9 | THE COURT:  All right.  Counsel, on behalf of the |
| | 10 | government, have you had enough time to absorb this |
| | 11 | Presentence Report? |
| 02:37 | 12 | MS. HEINZ:  Yes, Your Honor. |
| 02:37 | 13 | THE COURT:  And, Mr. Lengyel-Leahu, please.  And |
| | 14 | you can remain seated, you can use the lectern, whatever |
| | 15 | your preference is. |
| 02:37 | 16 | MR. LENGYEL-LEAHU:  Are you referring to the |
| | 17 | Presentence Report, Your Honor? |
| 02:37 | 18 | THE COURT:  The Presentence Report.  This is the |
| | 19 | time for your argument concerning appropriate sentence, the |
| | 20 | Presentence Report, any concerns that you have. |
| 02:37 | 21 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.  If I |
| | 22 | could use the podium? |
| 02:37 | 23 | THE COURT:  You may use the lectern or you may |
| | 24 | remain seated. |
| 02:37 | 25 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
| 02:37 | 1  | **DEFENSE POSITION**                                                   |
| 02:37 | 2  | MR. LENGYEL-LEAHU:  On behalf of Nader, I'd like                       |
|       | 3  | to point out some factual issues that we believe should have          |
|       | 4  | bearing on the sentence that Your Honor's about to impose.            |
| 02:38 | 5  | As you are aware, he was born on the 28th of                          |
|       | 6  | August in 1990, here in the United States.  This was after a          |
|       | 7  | time when his family had left their ancestral lands in               |
|       | 8  | Israel and Palestine for the life of promise and hope               |
|       | 9  | advertised by these United States.                                   |
| 02:38 | 10 | Now, for some people, this American dream is one                      |
|       | 11 | involving employment, easy credit, two-car garage, picket            |
|       | 12 | fence, with 200 cable channels, and unlimited choices; but           |
|       | 13 | for others, the promise and hope is tied to the notion that          |
|       | 14 | they can be free:  Free to be different, free to think and          |
|       | 15 | act differently, free to practice their own religion, and           |
|       | 16 | free to follow their own politics.                                   |
| 02:39 | 17 | Nader has never known these choices.  He's born in                   |
|       | 18 | the United States, but his parents insisted on his dual             |
|       | 19 | citizenship to Israel, in essence, hyphenating his status as         |
|       | 20 | an American and setting him apart.  As a child, his family          |
|       | 21 | returned to Israel where he could not learn the language,            |
|       | 22 | and he was ostracized.  When they returned to the                    |
|       | 23 | United States again, he found himself outside the mainstream         |
|       | 24 | of his class.  He looked different.  He acted different.  He        |
|       | 25 | was from "over there."                                              |

| | | |
|---|---|---|
| 02:39 | 1 | And maybe he wasn't as adept at school or sports |
| | 2 | as his peers.  Maybe his family situation did not allow him |
| | 3 | to matriculate with his class.  Maybe he never could find a |
| | 4 | cause or voice to help him socialize.  Whatever forces that |
| | 5 | acted upon him, Nader became isolated, and in that |
| | 6 | isolation, he found religion. |
| 02:39 | 7 | In his quest to find meaning and purpose for his |
| | 8 | life, Nader took on the yoke of his religion in its fullest |
| | 9 | measure of the most restructive -- or, I'm sorry -- |
| | 10 | restrictive of tenants of its faith.  It was only following |
| | 11 | the most Hasidic practices that he was able to find self |
| | 12 | worth and meaning in his life.  Now, not as a leader, not as |
| | 13 | an imam or as a teacher -- Nader has always been a follower, |
| | 14 | a rule-follower, just looking for someone to show him the |
| | 15 | way. |
| 02:40 | 16 | We know there's two types of zealots in this |
| | 17 | world.  Those without religion often fixate on politics, and |
| | 18 | those with religion who obsess over their choices.  Both are |
| | 19 | uncompromising; but with education and training, both can be |
| | 20 | tempered into productive citizens working within the system |
| | 21 | by tolerating those with a different point of view. |
| 02:41 | 22 | We experienced this with both the Nazi Germans and |
| | 23 | the Basheeda *(phonetic)* Japanese.  One very political.  One |
| | 24 | very religious.  Both were able to assimilate into society. |
| 02:41 | 25 | In Nader's personal life, after they returned to |

**DEBBIE GALE, U.S. COURT REPORTER**

the United States, he did lose the family home to a
foreclosure.  The parents demanded of Nader that he engage
in a certain amount of civil disobedience.  And after the
court evicted them, that led to his arrest for trespass on
that same property.

02:41    After that time they moved into a very cramped and
squalid conditions in a motel.  Four or five people living
in a two-bed environment, described by the FBI in court as a
hoarder's nest, stacked with books and papers and personal
effects, infested with all manner of insects and bugs,
mostly all un- or underemployed.

02:41    It is within this context of his home life that
there were other factors that applied to him.  And if I just
may briefly talk about the historical context of the
politics involved.

02:42    America attacked Iraq and removed Sadam Hussain
from power.  As a result of that, free elections were
finally held in that country.  But the government proved to
be repressive towards minorities.  That government refused
to sign the status of forces agreement which led directly to
America's withdrawal from that country.  With America's
withdrawal began the beginning of the Islamic State.

02:42    Also, in Syria, under the Assad family, it has had
a longstanding, antagonistic relationship with both the
United States and its own citizens.  This created the

```
 1    political tensions that led to an all-out civil war in that
 2    country.  And we'll all remember that we heard from our
 3    President:  He declared that further use of chemical
 4    weapons, weapons of mass destruction against the civilian
 5    population of that country would be prohibited by the United
 6    States.  It was a red line in the sand.
```

02:43
```
 7           Evidence was produced indicating this -- to try --
 8    this precise atrocity -- nothing happened. (Verbatim.)
```

02:43
```
 9           I remind the Court'a these events only to
10    demonstrate the levels of frustration that Americans can
11    feel regarding these events that occur in their native
12    ethnic lands.  My own grandmother deplored the lack of
13    American response or assistance'a the Hungarian revolution
14    in the 1950's.  Many'a my friends in college wept over what
15    occurred in Tiananmen Square.
```

02:43
```
16           The substantive charges in this case are the
17    material support for a foreign terrorist organization -- in
18    order to find this to be true, government was obliged to
19    engage in all manner of linguistics sophistry over
20    nomenclature.
```

02:43
```
21           While the jury also found this to be true, nothing
22    will change the fact that the Islamic State was not declared
23    until July of 2014 and not designated as a foreign terrorist
24    organization until September of 2015.  It's reminiscent of
25    Lincoln's conversation with his cabinet where he asked, "If
```

1    I call a dog -- it's tail -- a leg, how many legs does a dog
2    have?"  Those that responded "five" -- he said "No.  Just
3    because you call it a leg, don't make it so.  Dog still has
4    four legs."

02:45    5         The sentencing role of the judge is paramount
6    application of humanity on the condemned.  While Congress
7    has found it fitting'a strip *(verbatim)* the judiciary with a
8    historic function, mandating certain minimum sentences, that
9    doesn't apply in this case.  We have provided a detailed
10   comparison, as detailed as we could muster of all the
11   similar cases that've been brought in these United States.

02:45   12         Government wants you to ignore this research. They
13   argue that Nader should be punished more severely than all
14   the others because of his temerity to demand a trial by a
15   jury, one'a the very fundamental rights that this country
16   has guaranteed its citizens since its inception.

02:45   17         The Constitution is the one thing that sets us
18   apart from all other governments and peoples of the world.
19   It is what makes us exceptional.  And the government is here
20   arguing that individual who takes refuge in its protections
21   must be taken out and made an example of.  This is not
22   humane.

02:45   23         If the average "travel" case involving these
24   charges gets 8 to 10 years, it's inhumane to ask for more.
25   If the Guantanamo Bay cases involving actual battle

**DEBBIE GALE, U.S. COURT REPORTER**

1    combatants and their leaders get 10 years, I suggest it's
2    inhumane to ask for more time than that.  When individuals
3    can be found guilty of defrauding banks of hundreds of
4    thousands of dollars, even millions of dollars, and get
5    sentences of 2, 3 or 4 years, we suggest it's inhumane to
6    ask for more time in this case, with a paltry $6,000.

02:45  7         I also suggest it's inhumane to send Nader to
8    prison for 15, 20 or 30 years for attempting'a fly to the
9    Middle East.  Even FBI acknowledged that he had no contacts
10   related to anyone associated with a foreign terrorist
11   organization:  Not the Islamic State, not ISIS/ISIL, not
12   anyone.  And, by "contacts," we clearly mean people he was
13   having communications with, back-and-forth discussions, not
14   merely reading the Tweets, the re-Tweets of other
15   individuals who may or may not be alive, may or may not be
16   connected to ISIS, may or may not have initiated the
17   communication.

02:45  18        According to the FBI, based on their testimony, he
19   had a plan to "make a plan."  And all the evidence suggests
20   that he was actually going over there to get married.  I
21   suggest it's inhumane to treat Nader exponentially worse
22   than so many others because we are afraid:  Afraid of what's
23   happened in the past, and afraid of what he might do, even
24   though the evidence does not support these conclusions and
25   our commonsense tells us otherwise.

02:45  1                Your Honor, you are admonished to impose no

       2    greater pen- -- penalty than necessary -- no greater than

       3    necessary.  After Nader's served 5 years or 8 years,

       4    10 years, he faces a potential lifetime of monitoring.  And

       5    if he was ever a threat, that threat is effectively

       6    canceled.  He will forever be "marked" man *(verbatim)*, no

       7    where to go.  And decades of incarceration for bearing

       8    *(verbatim)* a plane ticket is inhumane.

02:45  9                You look at the facts of this case:  There is no

      10    level of sophistication.  There was no plan.  There was no

      11    discussion of a plan.  And the FBI had all sorts of wiretaps

      12    and electronic communication, had a complete record of all

      13    electronic discussions.  And in all of that information, the

      14    hours and hours that they spent in the case, absolutely no

      15    discussion of a plan either in the bank fraud arena or in

      16    this notion that he was supporting a foreign terrorist

      17    organization.

02:45 18                There's no involvement whatsoever in the bank

      19    fraud allegations other than checking a balance on a bank

      20    account.  Not one conversation was overheard and brought in

      21    as evidence to this Court.

02:45 22                Furthermore, there's no evidence of any

      23    recruitment, no encouragement of any other people, no

      24    training, no guns, no history of violence.  No, Your Honor.

      25    All you're -- all you're stuck with is this man, Nader,

|    |    |
|----|----|
|    | 1  | who's been outside of mainstream society his entire life, a |
|    | 2  | lonely and maybe desperate person who found religion as the |
|    | 3  | way he could find a purpose in his life. |
| 02:45 | 4  | And in all of the cases that have been heard and |
|    | 5  | all the levels of sophistication, he ranks pretty small in |
|    | 6  | that totem.  I ask Your Honor consider that in the decision |
|    | 7  | in this case. |
| 02:45 | 8  | Thank you. |
| 02:49 | 9  | THE COURT:  Mr. Elhuzayel, you have the right to |
|    | 10 | allocution, which means you have the right to address the |
|    | 11 | Court and tell the Court your thoughts and feelings about |
|    | 12 | this offense, or you can remain silent. |
| 02:49 | 13 | THE DEFENDANT:  I will speak. |
| 02:49 | 14 | **DEFENDANT'S ALLOCUTION** |
| 02:49 | 15 | THE DEFENDANT:  First off, I would like to say |
|    | 16 | that, yes, I am Muslim.  And, um, I do have firm beliefs in |
|    | 17 | my lord, and I -- one of those beliefs is to obey him and to |
|    | 18 | obey his Prophet.  And the third in command is my parents. |
| 02:50 | 19 | So, um, I just -- I wanted 'a bring up a certain |
|    | 20 | stipulation that could've happened before this *(verbatim)*. |
|    | 21 | And, uh, in obedience to my parents, I -- I must object. |
|    | 22 | None'a this -- I can care less about materials.  I'm not |
|    | 23 | really into these kinda things. |
| 02:50 | 24 | THE COURT:  I'm not what?  I didn't hear the last |
|    | 25 | part, sir. |

| | | |
|---|---|---|
| 02:50 | 1 | THE DEFENDANT:  I'm not into materials.  But my |
| | 2 | parents, for -- for, um -- they -- they been going so far |
| | 3 | for me, and it's -- it's quite -- it's quite, like, |
| | 4 | saddening for me to just not, you know, acknowledge that my |
| | 5 | dad went far to go to Palestine to get money and, you know, |
| | 6 | just to try.  You know, he -- he really wanted 'a help me. |
| | 7 | And my mom, too, and -- and, even my autistic brother, he -- |
| | 8 | he has hard feelings.  And it's just -- it's -- I just -- |
| | 9 | I -- I just wanted a -- during the trip to Palestine, my -- |
| | 10 | my father collected money for a certain stipulation to pay |
| | 11 | back the bank for whatever they owed.  And it, uh, was equal |
| | 12 | to 6500 -- thirty or something. |
| 02:51 | 13 | And, um, there was certain stipulation to give up |
| | 14 | any electronics that may have been confiscated from me at |
| | 15 | the Los Angeles Airport.  And my parents, uh, objected to |
| | 16 | that, so I, myself, will object to it.  And, um, he -- I -- |
| | 17 | I'll -- that's -- that would -- that's about it. |
| 02:52 | 18 | Thank you. |
| 02:52 | 19 | THE COURT:  Did you have any comment about the |
| | 20 | allegations and the conviction concerning material support |
| | 21 | or anything of that nature? |
| 02:52 | 22 | Counsel, have you advised him not to discuss this? |
| 02:52 | 23 | MR. LENGYEL-LEAHU:  I advised my client not to |
| | 24 | discuss this. |
| 02:52 | 25 | If I could have one minute with one of the |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 9/26/2016 - Item No. 8

16

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | government attorneys, Your Honor?                            |
| 02:52 | 2  | THE COURT:  Certainly.                                        |
| 02:52 | 3  | So far the allocution has been concerning his               |
|       | 4  | father going to Palestine to get money for restitution       |
|       | 5  | purposes.  But there's been no comment about the offense     |
|       | 6  | charged and the conviction.                                  |
| 02:52 | 7  | *(Defense and government counsel confer.)*                   |
| 02:52 | 8  | THE DEFENDANT:  If I may continue?                            |
| 02:53 | 9  | THE COURT:  Just one moment.  Let your attorney             |
|       | 10 | come back.  He's consulting with the government for one      |
|       | 11 | moment.  Give him just a minute to discuss whatever they're  |
|       | 12 | discussing, and then talk to you for a moment.  That will    |
|       | 13 | have no bad consequences for you.                            |
| 02:54 | 14 | Counsel, if you would like to talk to your client,           |
|       | 15 | he was going to continue, and you were consulting with the   |
|       | 16 | government.                                                   |
| 02:54 | 17 | *(Defense counsel and defendant confer.)*                    |
| 02:54 | 18 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                    |
| 02:54 | 19 | My client would like to continue.                            |
| 02:54 | 20 | THE COURT:  All right.                                        |
| 02:54 | 21 | Sir.                                                          |
| 02:54 | 22 | **FURTHER ALLOCUTION BY DEFENDANT**                          |
| 02:54 | 23 | THE DEFENDANT:  On my trip to Palestine, before             |
|       | 24 | that, I was communicating with this girl named "Enas."  So,  |
|       | 25 | although -- it's true that I do not know her last name.  I   |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | didn't really ponder too much into that -- um, I had an     |
|       | 2  | agreement with her that I'd go to Palestine and I'd get      |
|       | 3  | married with her and whatever after that, after that         |
|       | 4  | *(verbatim)*, but it was one step at a time.                 |
| 02:55 | 5  | So I -- three months passed, and I -- I felt                |
|       | 6  | very -- I felt guilty that I didn't want to make her wait    |
|       | 7  | too long, so I -- I did sort of rush things.  And I had her  |
|       | 8  | find me a ticket on SureSpot, and the cheapest ticket on     |
|       | 9  | CheapTickets.com, around $760.  The layover was Istanbul.    |
|       | 10 | And my final destination was Palestine.                      |
| 02:56 | 11 | I conclude.                                                   |
| 02:56 | 12 | THE COURT:  Does that conclude your allocution,             |
|       | 13 | your statement, sir?                                         |
| 02:56 | 14 | THE DEFENDANT:  Yes.                                          |
| 02:56 | 15 | THE COURT:  Okay.  Counsel on behalf of the                 |
|       | 16 | government.                                                   |
| 02:56 | 17 | MS. HEINZ:  Thank you, Your Honor.                           |
| 02:56 | 18 | The government will start with the seriousness of           |
|       | 19 | the offenses.  Seriousness of these offenses cannot be       |
|       | 20 | overstated.                                                  |
| 02:56 | 21 | THE COURT:  Counsel, before you begin, can I                |
|       | 22 | recess for just a moment?  I've got a number of documents in |
|       | 23 | the back I was looking at.                                   |
| 02:56 | 24 | MS. HEINZ:  Yes, Your Honor.                                 |
| 02:56 | 25 | THE COURT:  I'll be right back with both of the             |

```
 1   parties.  Let me get those.  I'll be back with the parties
 2   in just a moment.  There's been quite a submission to the
 3   Court.  And just one moment.
 4        Okay.  I'll return in one moment, Counsel.  And
 5   then you can begin your presentation.
 6        Thank you.
 7        (Pause in the proceedings held at 3:09 p.m.)
 8        (Proceedings resumed at 3:11 p.m.)
 9        THE COURT:  All right.  Thank you.
10        Counsel on behalf of the government, please.
11        MS. HEINZ:  Yes, Your Honor.
12              GOVERNMENT'S POSITION
13        MS. HEINZ:  I'm gonna use the term "ISIL." "ISIL"
14   means ISIL, ISIS, the Islamic State.  They're all the same
15   organization, as the government proved at trial.
16        ISIL is not like any other terrorist organization.
17   It is the most lethal, it is the most brutal, it is the most
18   heinous organization on the face of the earth.  It has been
19   a longstanding enemy of the United States.  It has murdered
20   United States citizens overseas, and it has taken credit for
21   attacks on American soil.
22        ISIL has launched a global epidemic of violence
23   against civilians.  It specifically targets civilians.  It
24   mounts attacks against civilians who ISIL designates as
25   kuffar, "unbelievers."  And the kuffar is everyone,
```

1    "everyone" who will not subjugate themselves to ISIL and its

2    ideology; its version of *Shariah* law.  It's goal is the

3    subjugation of all people to its version of *Shariah* law.

4    And it targets people purposely who do not subscribe to its

5    ideology.  Some examples:

03:00  6           An exercise in free speech in Garland, Texas.

03:00  7           A Christmas party in San Bernardino, California.

03:00  8           A nightclub in Orlando, Florida.

03:01  9           Mr. Elhuzayel comes here today.  There is no

10   acceptance of responsibility for his crimes.  There is no

11   remorse.  There is no repudiation of ISIL with all of its

12   awful, heinous deeds.  And this is important.  This is

13   important when the Court considers the need for deterrence

14   and the prospects of his rehabilitation.  It is important to

15   look at the reason for his crime:  Not money, not revenge.

03:01  16          Defendant Elhuzayel committed his crimes because

17   he believes -- he "believes" in the ISIL ideology, and he

18   believes that he is required to commit these crimes.  He

19   will not be easily dissuaded by this -- from this.  He is

20   committed to expanding the Caliphate.  He aspired to be

21   *Shaheed* on an ISIL front line.

03:02  22          ISIL has an "us" versus "them" ideology.  We heard

23   it repeatedly in the evidence at trial.  And the defendant

24   himself stated it in his communications.  It is the Camp of

25   Islam versus the Camp of Kuffar.  And the *kuffar* consists of

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | everyone who does not embrace the ISIL ideology.             |
| 03:02 | 2  | Rehabilitation is very difficult when one aspires            |
|       | 3  | to die for one's beliefs.                                     |
| 03:03 | 4  | The probation officer has recommended a 7-level              |

1   everyone who does not embrace the ISIL ideology.

03:02   2   Rehabilitation is very difficult when one aspires

3   to die for one's beliefs.

03:03   4   The probation officer has recommended a 7-level

5   variance or departure from the low end of the Sentencing

6   Guideline.  This is a comparison to the *Dandach* case in

7   which Judge Selna also departed 7 offense levels.  This is

8   understandable.  USPO Abrams was the probation officer on

9   the *Dandach* case, and he is the supervising probation

10   officer here.  However, the factors that were relied upon by

11   Judge Selna in the *Dandach* case are not present here.  We

12   have a very different case here.

03:03   13   The first factor is age.  And this is recommended

14   by the probation officer, and it was relied upon

15   collectively by Judge Selna in the *Dandach* case.  *Dandach*

16   was 19 years old when he committed his crimes, when he

17   wanted to travel to join ISIL.  He was socially immature.

18   That's what Judge Selna found.  He had been home-schooled in

19   high school, from sophomore to graduation, and he had never

20   worked a job in his life.

03:04   21   Defendant Elhuzayel was 24 years old at the time

22   he tried to join ISIL.  And there are no facts here to

23   support his social immaturity.  We have just heard a speech

24   about how he was isolated and how he had a hard time.  But

25   the PSR tells us that he worked jobs, he graduated from high

1    school, he attended college -- courtesy of the U.S.

2    taxpayers on Pell Grants.

03:05    3        In Defense Exhibit 5 -- which is the Fordham Law

4    School Report, which contains some stats, some statistics

5    about the ISIL "traveler" cases -- looking at 48 cases, the

6    average age of an ISIL foreign fighter -- someone who

7    attempts to travel to ISIL-held territory -- the average age

8    is 24.2 years old -- exactly -- exactly Elhuzayel's age.  So

9    Defendant Elhuzayel is not dissimilar from the typical

10   defendants in an ISIL-traveler case.

03:05    11       There were additional factors that were relied

12   upon by Judge Selna in *Dandach*.  He relied upon *Dandach*'s

13   abuse as a child.  His father abused him emotionally and

14   physically.

03:06    15       There is no record whatsoever here that

16   Defendant Elhuzayel was ever abused by his family.  In fact,

17   what we have is a record of a loving and supportive family

18   who provided for him.

03:06    19       We have heard an argument that his family demanded

20   that he commit civil disobedience and resist arrest when the

21   officers attempted to arrest him when they overstayed in the

22   home that they had lost.  Elhuzayel was age 22 at the time,

23   a full-grown adult.  And the PSR tells us that he wrestled

24   with the law enforcement officers on the ground and put up

25   resistance until they could handcuff him.  This is not civil

1    disobedience.  This is a 22-year-old who is acting out

2    against law enforcement.

03:07    3            Judge Selna relied somewhat on *Dandach*'s physical

4    condition.  *Danditch* weighed 550 pounds in high school and

5    was bullied.  Defendant Elhuzayel has no such background

6    about that.

03:07    7            And, in particular, Judge Selna relied upon the

8    mental difficulties that were present in the *Danditch* case

9    to an unusual degree that Judge Selna found distinguished it

10    from the typical case.  *Dandach* had a documented record of

11    major depressive disorder, anxiety, PST *(sic)*.  And both

12    experts in hearings found that *Dandach* had longstanding

13    emotional and psychological problems that were not

14    responsive to treatment.  This was the major primary purpose

15    why Judge Selna departed downward in the *Dandach* case

16    7 levels.

03:08    17            Those factors were absolutely not present here.

18    There is no indication that Elhuzayel has experienced any

19    mental difficulty whatsoever.

03:08    20            Finally, the probation office relies upon minimal

21    criminal history in this case for a downward departure for

22    Elhuzayel.  Elhuzayel does have criminal history here.  He

23    has an arrest and conviction, and he was put on probation at

24    that time, and he committed this crime -- these crimes at

25    the time he was on probation.

03:08    1          In comparison, *Dandach* had no criminal history.

         2    And Judge Selna refused to rely on that ground, even though

         3    probation recommended that in that case.

03:09    4          Elhuzayel's criminal history, standing alone,

         5    places him in a Criminal History Category II.  That's where

         6    he is before the application of the terrorism adjustment,

         7    which automatically puts him in a Criminal History Category

         8    VI.  Even with Criminal History Category II, an Offense

         9    Level 41, which the probation office agrees is the correct

        10    offense level -- that -- that calculation yields a guideline

        11    range of 360 months to life imprisonment.  So the government

        12    is recommending the low end of the guideline range.

03:09   13          And, by the way, the report that is attached to

        14    defendant's sentencing position paper as Exhibit 5, that

        15    also has statistics about the criminal history in

        16    ISIL-traveler cases:  72 percent of the defendants that they

        17    surveyed have no criminal history whatsoever; whereas,

        18    28 percent did have criminal history.

03:10   19          So it is typical -- it is typical in an

        20    ISIL-traveler case for the age of defendants to be 24 years

        21    old and to have no criminal history.  But there are far more

        22    differences here between *Dandach* and this case.

03:10   23          *Dandach* pled guilty.  *Dandach* accepted

        24    responsibility.  *Dandach* was not involved in a conspiracy.

03:10   25          Here, Defendant Elhuzayel did not plead guilty, as

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | is his right.  He did not -- has never accepted           |
|       | 2  | responsibility.  He has never expressed remorse.  And he was |
|       | 3  | involved in a conspiracy -- all factors which make him far |
|       | 4  | more dangerous.                                            |
| 03:11 | 5  | Why is the variance issue important here?  It is          |
|       | 6  | important for many reasons.  One, it simply doesn't stand |
|       | 7  | up; but, two, this is the first defendant to be sentenced |
|       | 8  | after going to trial in an ISIL-traveler case.            |
| 03:11 | 9  | So, in a sense, there really are no comparable            |
|       | 10 | cases here.  The government submits that the best benchmark |
|       | 11 | for this case is the low end guideline sentence of        |
|       | 12 | 360 months.  It is necessary.  This defendant is dangerous. |
|       | 13 | This defendant is motivated by his religion, by his       |
|       | 14 | ideology, which he continues to embrace.                  |
| 03:12 | 15 | ISIL is extremely dangerous.                              |
| 03:12 | 16 | Nothing further, Your Honor.                              |
| 03:12 | 17 | **FURTHER STATEMENTS BY DEFENDANT**                       |
| 03:12 | 18 | THE DEFENDANT:  I would like to note that all I           |
|       | 19 | did was resist.  I would like to note that I -- I have a  |
|       | 20 | hard time even killing insects.  I would like to note that I |
|       | 21 | would not hurt "innocent."  I would like to note that I'm a |
|       | 22 | good guy.  I'm not bad.  I am not evil.  I'm a good guy.  I |
|       | 23 | say that with my heart.                                   |
| 03:12 | 24 | Love you, mom, dad.                                       |
| 03:12 | 25 | THE COURT:  Anything further?                             |

03:12   1            MS. HEINZ:  Nothing further from the government,

   2    Your Honor.

03:12   3            MR. LENGYEL-LEAHU:  Nothing further by the

   4    defense, Your Honor.

03:12   5            THE COURT:  All right.

03:13   6            Counsel, in reading the Presentence Report, I want

   7    you to know that I called Probation this morning because I

   8    believe that it's an incorrect calculation.  And they were

   9    kind enough to sit down with the Court and answer the

   10   Court's questions this morning.  And I want you to be aware

   11   of that.

03:13   12           I believe that the calculation is going to end up

   13   being a 40 and a VI.  And I'm going to walk you through that

   14   in just a moment and see if there's any disagreement.

03:13   15           So let me begin by accepting the charges and

   16   conviction as well as the offense conduct of the Presentence

   17   Report as the Court's own findings.  And let me walk through

   18   the numerous addendums for just a moment to make certain

   19   that the result -- because there's been quite a compilation

   20   of papers.

03:14   21           In the first addendum, the government withdrew the

   22   request for the $671.60.

03:14   23           MS. HEINZ:  That's correct, Your Honor.

03:14   24           THE COURT:  All right.

03:14   25           In the addendum to the Presentence Report filed on

|        |    | September 20th, the government objected to the PSR not |
|--------|----|-------------------------------------------------------|
|        | 1  | September 20th, the government objected to the PSR not |
|        | 2  | recommending the terrorism adjustment to Count Two pursuant |
|        | 3  | to U.S.S.G., Section 3A1.4(a).  That has since been changed |
|        | 4  | by the probation department. |
| 03:15  | 5  | Is there any disagreement? |
| 03:15  | 6  | MS. HEINZ:  Yes, Your Honor.  The government |
|        | 7  | believes that it does apply. |
| 03:15  | 8  | THE COURT:  Well, that's correct.  But it's been |
|        | 9  | changed.  In other words, the first Presentence Report the |
|        | 10 | Court received was objected to by the government, and the |
|        | 11 | probation officer subsequently changed that in a second |
|        | 12 | addendum to the Presentence Report. |
| 03:15  | 13 | MS. HEINZ:  Understood, Your Honor.  Yes. |
| 03:15  | 14 | THE COURT:  All right.  The second objection was |
|        | 15 | the objection by the government that the statutory maximum |
|        | 16 | penalties for Count One and Two listed in the PSR is |
|        | 17 | incorrect.  And the government stated that although the |
|        | 18 | statutory maximum for violation of U.S.C. 2339(b) is |
|        | 19 | currently 20 years, that the statutory maximum at the time |
|        | 20 | of the offense that Mr. Elhuzayel was involved in was then |
|        | 21 | 15 years.  In other words, it's been raised five years. |
| 03:15  | 22 | Mr. Elhuzayel, in a sense, is the beneficiary of |
|        | 23 | having committed these crimes at an earlier time.  And that |
|        | 24 | has been changed to 15 years in the PSR report; is that |
|        | 25 | correct? |

03:16    1            MS. HEINZ:  Correct, Your Honor.

03:16    2            THE COURT:  The third concern of the government

3    was an objection to the PSR's recommendation for a downward

4    variance based on the defendant's youthful age under 5H1.1,

5    and other mitigating factors, including the limited criminal

6    history and the need to avoid unwarranted sentence

7    disparities.  And that's being argued before the Court now.

03:16    8            The fourth concern was the government believing

9    that $671.60 in Pell Grant funds was appropriate.  The

10    government withdrew that in the document that I just stated.

03:16   11            MS. HEINZ:  Yes, Your Honor.

03:16   12            THE COURT:  All right.

03:16   13            Now, the defendant, at the same time, as we go

14    through this sequentially, objected to the Presentence

15    Report, the application of the guidelines in this case, and

16    objects to numerous factual statements and references

17    contained throughout the Presentence Report in the following

18    sections:  The Offense Level Conduct, Offense Level

19    Computation, and Offender Characteristics.

03:17   20            And the Court is going to make the specific

21    finding, and finds at this time that these objections, which

22    are numerous, Counsel -- each one has been read by the Court

23    and noted -- are immaterial to sentencing because these

24    designated portions of the Presentence Report will not

25    affect the sentencing, and the Court will not consider the

1    matter or those matters in sentencing.

03:17    2         Now, subsequently, the Court received another

3    document, the Second Addendum to the Presentence Report.

4    And there, there were, one, the reiteration of the $671.60

5    by the government in Paragraph 1, which you subsequently

6    withdrew.

03:17    7         And by the defendant, there was an argument that,

8    pursuant to 18 U.S.C. 3553(a), there were sentencing factors

9    that -- and there was a request for an unspecified downward

10   departure.  In that document there wasn't a specific level

11   noted, nor was there a specific time period.  Also, the

12   second objection was that defense counsel believed that a

13   four-level decrease was appropriate for being a minimal

14   participant to 3B1.2.  And that has been argued as well

15   today.

03:18    16        Now, that should conclude the Second Addendum to

17   the Presentence Report.  And with those modifications --

18   because there's quite a few documents each of you filed --

19   the Court is working off, if you will, the second PSR report

20   submitted.  And that's why some of your arguments, in terms

21   of paragraphs, change and are somewhat confusing; but

22   they're only off one or two paragraphs, because you were

23   responding to the first PSR report.  Then you got a second

24   PSR report.  So I think we know where we're at.

25

| | | |
|---|---|---|
| 03:18 | 1 | **CALCULATIONS** |
| 03:18 | 2 | THE COURT:  All right.  Concerning the |
| | 3 | calculations -- before we get to sentencing, I don't think |
| | 4 | that there's too much disagreement, but let me go through |
| | 5 | first the charges and convictions sentence -- or section. |
| 03:19 | 6 | And concerning the offense level, counsel, you'll |
| | 7 | find that at page 13.  And it should begin, for your |
| | 8 | edification, in Paragraph 50.  So if you'd like to turn to |
| | 9 | that document for a moment -- because there are a number of |
| | 10 | PSR reports and modifications.  And the Court reflects and |
| | 11 | finds that: |
| 03:19 | 12 | The November 1st, 2015 Guideline Manual |
| | 13 | incorporating all the guideline amendments is appropriate |
| | 14 | for the calculation of the offense level; |
| 03:19 | 15 | That Counts One and Two group together as Group 1 |
| | 16 | because they involve the same victim, societal interest, and |
| | 17 | the same transaction, pursuant to 3D1.2(e); |
| 03:19 | 18 | That Counts Four through Twenty-Nine, Group 2, |
| | 19 | group together because the offense is determined largely on |
| | 20 | the total amount of loss, pursuant to 3D1.2(d); |
| 03:19 | 21 | And Groups 1 and 2 do not further group together |
| | 22 | because they do not involve substantially the same harm |
| | 23 | within the meaning of the guidelines 3D1.1 -- or, strike |
| | 24 | that -- 3D1.2; |
| 03:20 | 25 | Group 1 is the conspiracy and attempt to provide |

DEBBIE GALE, U.S. COURT REPORTER

1    material support or resources to a designated foreign

2    terrorist organization.

03:20    3         I don't think that there's any disagreement.  But

4    the base offense level for violation of 18 U.S.C. 2339(b) is

5    found at 2M5.3.  And pursuant to that section, the base

6    offense level is 26.

03:20    7         Is there any disagreement between the parties?

03:20    8         MS. HEINZ:  No, Your Honor.

03:20    9         MR. LENGYEL-LEAHU:  No.

03:20   10         THE COURT:  All right.  That's stipulated to.

03:20   11         But the Court would make that also by clear and

12    convincing *(verbatim)*.

03:20   13         Concerning the specific offense characteristics

14    pursuant to 2M5.3(1)(e), the offense level is increased two

15    levels if the offense involved the provision of funds or

16    other material support or resources with the intent,

17    knowledge, or reason to believe they are to be used to

18    commit or assist in the commission of a violent act.

03:21   19         The Court finds accordingly that the two-level

20    increase is appropriate.  I make that finding by clear and

21    convincing evidence.

03:21   22         Concerning the victim-related adjustment.

23    Pursuant to 3A1.4(a), the offense level is increased twelve

24    levels if the offense is a felony that involved or was

25    intended to promote a federal crime of terrorism.

03:21   1         Application Note 1 instructs that the federal

  2   crime of terrorism has the meaning given that term in

  3   18 U.S.C. 2332b(g)(5), which defines the term as an offense

  4   that is calculated to influence or affect the conduct of

  5   government by intimidation or coercion or to retaliate

  6   against government conduct, and is a violation of one of the

  7   listed enumerated offenses including 18 U.S.C. 2339(b).

03:22   8         The Court finds involvement here as the proper

  9   terminology that involved -- because Mr. Elhuzayel was

 10   convicted of violations of 18 U.S.C. 2339(b) for conspiracy

 11   to attempt and attempting to provide material support to

 12   ISIS, specifically his person, to fight a *jihad*.  Therefore,

 13   the Court finds that the twelve-level increase is found by

 14   this Court by clear and convincing evidence.

03:22  15         Therefore, Counsel, the adjusted offense level,

 16   the subtotal, is 40 for Count One.

03:22  17         Now, here's where the mistake, I believe, was made

 18   in this PSR report:  In Group 2, bank fraud, the base

 19   offense level, the guideline for 18 U.S.C., Section 1343 and

 20   1344, found at 2B1.1, and pursuant to that section, as the

 21   offense has a statutory maximum term of imprisonment of 20

 22   years or more, the base offense level is 7.

03:23  23         But if you turn the page, Counsel, in

 24   Paragraph 65, if the loss is more than 6500, but not more

 25   than 1500 *(sic)*, there's a two-level increase.

03:23    1          Mr. Elhuzayel and his co-schemers deposited

2   $12,087.70 in stolen checks into three bank accounts held by

3   Bank of America, Chase Bank, and Wells Fargo, which

4   represents a reasonable estimate of the intended loss

5   amount.  They withdrew approximately $6,530 from the same

6   accounts on various occasions between April 4, 2015 and

7   May 4th, 2015, causing banks to suffer actual loss.  The

8   total amount of the intended loss associated with the bank

9   fraud scheme was 12,087.70.  As such, a two-level increase

10   is applied as the loss exceeded 6500, but was not more than

11   $15,000.  And I find that by clear and convincing evidence.

03:24   12          Concerning the victim-related adjustment.

13   Pursuant to United States Sentencing Guideline 3A1.4(a), the

14   offense level is increased twelve levels if the offense is a

15   felony that involved or was intended to promote a federal

16   crime of terrorism.

03:24   17          Here, this application is under what I'm going to

18   state as the applied -- and is applied because of the bank

19   fraud, and it was intended to promote a federal crime of

20   terrorism, and used for assets, concerning this bank fraud,

21   to fund the trip to ISIL.  And, therefore, the Court finds

22   that the twelve-level increase applies by clear and

23   convincing evidence.

03:25   24          Counsel, if you add those numbers, as to Group 2,

25   you would find the following:

| | | |
|---|---|---|
| 03:25 | 1 | In Paragraph 63:  7. |
| 03:25 | 2 | In Paragraph 65:  2. |
| 03:25 | 3 | In Paragraph 66:  12. |
| 03:25 | 4 | The correct calculation at Paragraph 69, on page |
| | 5 | 16, should be 21. |
| 03:25 | 6 | And that "9" is inappropriate. |
| 03:25 | 7 | Now, if I then group the adjusted offense levels, |
| | 8 | before we get to sentencing, so we have a clear record, |
| | 9 | Group 1 is a Level 40, with one unit.  Group 2 is a Level 21 |
| | 10 | with zero units.  Therefore, the total number of units is 1. |
| 03:25 | 11 | Therefore, the adjusted offense level is 40.  It |
| | 12 | is not 41.  And the combined offense level is 40.  It is not |
| | 13 | 41. |
| 03:26 | 14 | Now, I'm going to stop there so you can talk to |
| | 15 | the probation department for a moment.  You can take your |
| | 16 | time.  But there's a miscalculation on this PSR report by |
| | 17 | one point.  It should be 40, not 41. |
| 03:26 | 18 | Counsel, if you would like to discuss it with |
| | 19 | probation, I'll take a 5-minute recess, and then come back. |
| 03:26 | 20 | *(Recess held at 3:26 p.m.)* |
| 03:30 | 21 | *(Proceedings resumed at 3:30 p.m.)* |
| 03:30 | 22 | THE COURT:  Is that right, Counsel? |
| 03:30 | 23 | We're back on the record. |
| 03:30 | 24 | Let's get the calculations correct before we get |
| | 25 | into the 3553(a) factors. |

03:30    1            Turning back to page 16, the adjusted offense

         2     level is actually 32.  And the reason for that is, pursuant

         3     to 3A1.4(a), terrorism, "If the offense is a felony that

         4     involved, or was intended to promote, a federal crime of

         5     terrorism, increase by twelve levels."  But if the resulting

         6     offense level is less than 32 -- this woulda been 21 -- then

         7     increase to level 32.  So if this is the correct

         8     determination, then on page 16, in Paragraph 69, that should

         9     read "21."

03:31   10            But we know that there's an increase, because of

        11     3A1.4, to 32.  That, then, in paragraph 70, in the second

        12     grouping, moves that to 32, with the units "point 5."

03:31   13            And, therefore, you have a total number of units

        14     "1.5" as calculated.  But the greater of the adjusted

        15     offense level is not 40.  It would be 41.

03:31   16            And so the miscalculation is that Paragraph 70 is

        17     correct:  It's 40.  But the increase in the offense level is

        18     because of the units:  1.5.

03:31   19            And, therefore, on line 73, the correct

        20     calculation is found by this Court is 41.  Not 40.

03:32   21            And the correct calculation of the total offense

        22     level in Paragraph 76 is 41.  Not 40.

03:32   23            Therefore, the Court makes those findings by clear

        24     and convincing evidence.

03:32   25            All right.  Concerning the Criminal History

1    Category.  Concerning the arrest and conviction of

2    August 21st, 2015, wherein there was a sentence of three

3    years probation, six days jail, concerning the incident in

4    Fullerton Superior Court, Document 13NM08555, which has been

5    alluded to and argued by both counsel, the criminal

6    consequence above resulted in a subtotal criminal history

7    score of 1.

03:33   8             Pursuant, though, to 4A1.1(d), two points are

9    added if the defendant committed the instant offense while

10   under any criminal justice sentence, including probation,

11   parole, supervised release, imprisonment, work release or

12   escape status.  The earliest known date of the relevant of

13   conduct in this case is Mr. Elhuzayel depositing a stolen

14   check at Wells Fargo Bank in an effort to finance his trip

15   to Syria, which occurred April 4th, 2014.  At that time he

16   was on probation in Fullerton Superior Court

17   before-referenced case.  Therefore, 2 points have been added

18   pursuant to 4A1.1(d).

03:33   19             Therefore, the total criminal history score is

20   three.  According to the sentencing table in Chapter 5,

21   Part A, Criminal History Score of 3 establishes a Criminal

22   History Category II.

03:33   23             However, pursuant to 3A1.4(b), the Criminal

24   History Category is found by this Court to be VI, based on

25   the application of 3A1.4(a).  And the Court makes that

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | finding by clear and convincing evidence.              |
| 03:34 | 2  | Now, Counsel, that should finish at least the          |
|       | 3  | calculation of the guidelines, which is only one of the|
|       | 4  | factors pursuant to the Court's consideration of an    |
|       | 5  | appropriate sentence.                                  |
| 03:34 | 6  | I want you to make your record if you disagree         |
|       | 7  | with that calculation.  The Court noticed that over the|
|       | 8  | weekend; called probation this morning.                |
| 03:34 | 9  | Counsel on behalf of the government.                   |
| 03:34 | 10 | MS. HEINZ:  The government agrees with that            |
|       | 11 | calculation.                                           |
| 03:34 | 12 | THE COURT:  So, actually, one higher than             |
|       | 13 | calculated in the PSR report.                          |
| 03:34 | 14 | Mr. Elhuzayel *(sic)*?                                 |
| 03:34 | 15 | MR. LENGYEL-LEAHU:  No disagreement, Your Honor.       |
| 03:34 | 16 | THE COURT:  All right.                                 |
| 03:34 | 17 | Well, then, for sentencing purposes, the Court has     |
|       | 18 | reflected today and a good portion of last week and this|
|       | 19 | weekend concerning the various reports submitted to the|
|       | 20 | Court.  There's been much discussion of ISIL and the   |
|       | 21 | barbarity.  And I don't think that this needs to be restated|
|       | 22 | by the Court.  It's an absolute and stark.             |
| 03:35 | 23 | When Abu Bakr al-Baghdadi, in July of 2014, stood      |
|       | 24 | in the mosque in Mosul and called for soldiers -- recruits|
|       | 25 | to take up arms and become soldiers of the Islamic State,|

|  |    |
|---|----|
|  | 1  | the most important ingredient to achieve the purposes of the |
|  | 2  | Islamic State, ISIL, ISIS, and the numerous names the same |
|  | 3  | organization has gone under, was the recruitment of young |
|  | 4  | fighters for the *jihad*, and those were mostly male, although |
|  | 5  | many women joined as well. |
| 03:36 | 6 | And I think that the Court finds and will state to |
|  | 7  | each counsel and to Mr. Elhuzayel that that was the most |
|  | 8  | important and critical ingredient for the Islamic State. |
|  | 9  | Certainly arms would flow and follow. |
| 03:36 | 10 | This trial was especially difficult, I think, for |
|  | 11 | all concerned. |
| 03:36 | 12 | *(To defense counsel:)* Counsel, you have my |
|  | 13 | compliment. |
| 03:36 | 14 | *(To government counsel:)* Government has the |
|  | 15 | Court's compliment.  This was an extraordinary trial. |
| 03:36 | 16 | I've not delved too deeply, but I do believe that |
|  | 17 | the government's correct:  The defendant, Mr. Elhuzayel, is |
|  | 18 | the first defendant to be sentenced by a District Court, |
|  | 19 | after conviction at trial of conspiracy or attempting to |
|  | 20 | provide material support for ISIL. |
| 03:36 | 21 | If you know of any other case, Counsel, I'm happy |
|  | 22 | to entertain that.  Of the 77 cases, very few have gone to |
|  | 23 | trial.  And this is, I believe, not only the first case, but |
|  | 24 | the first joint trial that the Court knows of. |
| 03:37 | 25 | MS. HEINZ:  Actually, Your Honor, three defendants |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | were tried in Minnesota shortly before our trial.            |
| 03:37 | 2  | THE COURT:  I'm aware of that.                                |
| 03:37 | 3  | MS. HEINZ:  But they have not been sentenced yet.            |
| 03:37 | 4  | THE COURT:  I'm aware of that.                                |
| 03:37 | 5  | MS. HEINZ:  Yes.  They have not been sentenced.             |
|       | 6  | There is no one who has been sentenced.                       |
| 03:37 | 7  | THE COURT:  I've stayed away from that.  I know             |
|       | 8  | the judges involved, so there's been no communication.       |
| 03:37 | 9  | The use of social media in this case led to the            |
|       | 10 | government's ability to present stark evidence to the jury.   |
|       | 11 | This didn't involve a cooperator or terms of                 |
|       | 12 | non-credibility.  That information that you were able to     |
|       | 13 | obtain through the FBI doesn't change.  It was stark.       |
| 03:38 | 14 | Also, I think each counsel were burdened by                |
|       | 15 | initially the belief that Mr. Elhuzayel was interacting with |
|       | 16 | the marshals in an inappropriate way -- which the Court      |
|       | 17 | found not to be true -- and Mr. Badawi, the co-defendant,    |
|       | 18 | literally going on a starvation diet.                         |
| 03:38 | 19 | Also, the Court notes that, in the middle of the           |
|       | 20 | trial, Orlando -- and that tragedy occurred, which caused,   |
|       | 21 | on Monday, after the Sunday massacre in Orlando, a           |
|       | 22 | sequestering of this jury and I think, Counsel, we all spent |
|       | 23 | half a day going through those jurors one by one to see if   |
|       | 24 | they could be fair and they could continue.                  |
| 03:38 | 25 | Therefore, you have my compliments for both the            |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | defense and the government being able to conduct yourself in |
|       | 2  | an admirable way.                                        |
| 03:39 | 3  | Mr. Elhuzayel, you started early, in October of          |
|       | 4  | 2014, using the ISIL flag and a profile picture on the   |
|       | 5  | Facebook account that the Islamic State would be victorious. |
|       | 6  | Certainly not a crime in and of itself.  You have First  |
|       | 7  | Amendment rights.                                        |
| 03:39 | 8  | But the following day you asked Allah to grant you       |
|       | 9  | martyrdom and success.  And what's striking to this Court is |
|       | 10 | the fact that you're willing to die.                     |
| 03:39 | 11 | In October, again you posted on your Facebook:           |
| 03:39 | 12 | "Only the ignorant, brainwashed                          |
|       | 13 | individuals call the Islamic State                       |
|       | 14 | terrorist."                                              |
| 03:39 | 15 | And, apparently, you have that firm belief that          |
|       | 16 | they're not terrorist.  I think most of the world would  |
|       | 17 | disagree.                                                |
| 03:40 | 18 | On the following day, you made a video pledging          |
|       | 19 | allegiance to ISIL.  And that video was played to the jury. |
|       | 20 | That is a stark video.  And at the beginning of that video, |
|       | 21 | the co-defendant introduces you as a supporter of the    |
|       | 22 | Islamic State.  And then the jury was able to view that  |
|       | 23 | video and you stating:                                   |
| 03:40 | 24 | "I totally support the Islamic State.  I                 |
|       | 25 | will join you guys soon.  I will be                      |

1                    there to fight with you guys.  I will

2                    fight for the sake of Allah to protect

3                    what we believe in."

03:40    4          I think at that point your intent is without

5        argument.

03:40    6          In December of 2014, there's another Twitter

7        communication.  And you describe that -- your eager

8        anticipation of ISIL attacking Israel and beheading his

9        victims -- and I'm going to take a moment just to read back

10       to you your words:

03:41   11                    "ISIS is getting ready to attack Israel

12                    now.  This is exciting.  Looking forward

13                    to see some *Yahudi* heads rolling or dead

14                    bodies carrying their own *Yahudi* heads,

15                    and Jihadi John doing the stance on

16                    them."

03:41   17          And then there's a picture of Jihadi John

18       decapitating the victim, which the jury unfortunately had to

19       view.  Attached is a picture of a man lying on his stomach

20       and another man, Jihadi John, sitting on top of the man,

21       holding the head back, displaying the man's severed neck and

22       a bloody knife.

03:41   23          I don't think any American juror's been exposed to

24       this kind of evidence thus far.

03:41   25          The Jihadi John, of course, is the name given to

the ISIL fighter who's responsible for the deaths of,
minimally, the American journalist, James Foley and Steven
Sotloff, and Humanitarian Aid worker Peter Kassig.  And
there's a photo of the victim, Peter Kassig, from your USB
drive, and 336 photos of the victim, Steven Sotloff, from
your Twitter account.

03:42          In March of 2015, you progressed, and possibly
could arguably still have First Amendment rights -- but here
your intent is absolutely clear:  It's to kill.  And
apparently with no remorse because of your belief in
martyrdom.

03:42          And on March 1st, you disseminate the following,
expressing your approval of ISIL's execution of homosexuals.
You state on this Twitter account:

03:43               "The only thing more beautiful than rain
                    as homosexuals being thrown off tall
                    buildings.  Photographs attached."

03:43          And, once again, the jury had to view, at least
for a day, numerous people being thrown off roofs.

03:43          March 27th you exchange messages and expressed an
agreement to join ISIL and fight on the front line.  And I
won't read the whole quote, but the opening statement is:

03:43               "Nader, *inshallah*" -- God willing --
                    "when we go, we make a pact that we
                    fight in the front line and don't look

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                         |
|-------|----|---------------------------------------------------------|
|       | 1  | back.                                                   |
| 03:43 | 2  | "Allahuakbar" -- which means God is                     |
|       | 3  | great -- *Inshallah*.  May Allah grant us               |
|       | 4  | 72 virgins."                                            |
| 03:43 | 5  | Closely after that, on March 28, you disseminated       |
|       | 6  | the following Twitter communication:  Your quote is,    |
| 03:44 | 7  | "Favorite.  Favorite this, and I'll                     |
|       | 8  | shout you out in the morning.                           |
|       | 9  | *Inshallah*" -- which means God willing --              |
|       | 10 | "May Allah allow us to live and die for                 |
|       | 11 | his cause only and grant us *jihad*" --                 |
|       | 12 | which is martyrdom.                                     |
| 03:44 | 13 | Same day you make statements on the Twitter             |
|       | 14 | account that you can't wait to make *hijra* -- religious|
|       | 15 | migration.                                              |
| 03:44 | 16 | So whatever your protestations are concerning           |
|       | 17 | marriage, which may be partially true, the overwhelming |
|       | 18 | intent was to fight for the *jihad* and for the Islamic State. |
| 03:44 | 19 | On April 4th you start to finance a bank fraud          |
|       | 20 | scheme, which continues for numerous days.  And without |
|       | 21 | belaboring each of those Counts, you're captured on the bank |
|       | 22 | cameras.                                                |
| 03:44 | 23 | On April 9th and 10th, you send out another             |
|       | 24 | Twitter message:                                        |
| 03:45 | 25 | "May Allah make us amongst the martyrs.                 |

        1            May Allah grant the Mujahideen victory

        2            in Tikrit" --

03:45   3            And by the way, Counsel, Tikrit has a capital "T,"

        4    and it's a city in Iraq.

03:45   5            "Make due for the Mujahideen.  May Allah

        6            destroy the enemies of Islam and expand

        7            the caliphate globally."

03:45   8            Just a week later, on April 24th, in telephone

        9    conversations, Mr. Elhuzayel discusses again that it would

       10    be such a blessing to fight for the cause of Allah and to

       11    die in the battlefield.

03:45  12            And that constant reinforcement for martyrdom

       13    makes you extraordinarily dangerous.  You discuss the joint

       14    plan to join ISIL as fighters.  Among the statements you

       15    make is "joining the army," "keep expanding," and,

       16    quote/unquote,

03:46  17            "I guess we'll like, you know, just die

       18            in the battlefield.  That's it.  I wanna

       19            die *jihad*" -- which is martyr.

03:46  20            On April 24th, again you discuss how powerful it

       21    will be to imagine al-Qa'ida teaming up with the Islamic

       22    State, which is Baghdadi.

03:46  23            On May 3rd you discuss again looking forward to

       24    being -- uniting in Islamic State.  And your exact words

       25    are:

03:46  1              "Praise be to Allah.  May we be united

       2              in the Islamic State."

03:46  3         And then it goes on.  Once again, there's the

       4    reference to 72 women of paradise that you would receive in

       5    your martyrdom.

03:46  6         Now, the same day, what's fascinating is the

       7    tie-in, in this case, with the Texas -- in Texas apparently

       8    there was a relatively conservative Texas woman who decided

       9    to have a character drawing of Mohammed, not in the most

      10    flattering term.

03:47 11         And on May 3rd, the two people who had gone to

      12    that cartoon contest in Garland, Texas, were involved in a

      13    shootout with security guards.  One was wounded.  Both were

      14    killed -- both the *jihadists*.  ISIL shortly thereafter

      15    claimed responsibility for the attack.  That made national

      16    news.

03:47 17         And on the evening of May 3rd you exchanged text

      18    messages; and that is, you're asking:

03:47 19              "What City?  On Garland, Texas, did they

      20              do the attack?"

03:47 21         What's fascinating is the interchange with this

      22    case, as well as the Texas attempted massacre, because Elton

      23    Simpson apparently sent out a Twitter communication to

      24    multiple contacts, including you, announcing the gunmen had

      25    sworn allegiance to Abu Bakr Baghdadi.

03:48    1          And you responded to Mr. Simpson before he died

         2     that, "God is great," and, "Brother, was it you?"

03:48    3          Of course there was no response.  He was dead.

03:48    4          Now, in the meantime, this evidence, as it rolled

         5     into this Court in stark and graphic form and terms for this

         6     jury, involved your communication with Hussain al-Britani.

         7     He's well-known in the -- in this area.  And Britani is

         8     apparently sending a series of Tweets celebrating the

         9     Garland, Texas attacks, which are found on your Twitter

        10     account.

03:48   11          And on May 4, the day after the Garland, Texas

        12     attack, you re-Tweeted the following pronouncement

        13     attributed to Anwar al-Awlaki:

03:49   14               "If you have the right to slander the

        15               messenger of Allah, we have the right to

        16               defend him.  If it is part of your

        17               freedom of speech to defame Muhammad, it

        18               is part of our religion to fight you."

03:49   19          On May 7, four days after the Garland, Texas

        20     shootings, you made travel arrangements.  There was a

        21     purchase of a one-way airline ticket on Turkish Airlines for

        22     travel on May 21st from Los Angeles to Tel Aviv, Israel.

03:49   23          Two days later, though, there's a recorded

        24     conversation about the joint goal of joining ISIS as

        25     fighters, and your specific words are:

03:49   1          "My next move is just to bounce.  Oh,

        2          learn Arabic actually.  That's what I'm

        3          doing.  Well, we'll meet up in the

        4          Islamic State."

03:50   5      There's also a conversation by the other person on

        6   the phone about whether your parents know.  The other person

        7   is stating tell your mother, or "her," that "I'm going too.

        8   Tell her I'm going too."

03:50   9          The following day, on May 10th, there's an advice

       10   about you going to the Islamic State through Egypt,

       11   apparently through the Sinai, which is another well-known

       12   egress route -- although not as well advertised in the press

       13   in this country.

03:50  14          Subsequently there's the phone conversation in

       15   which you speak about the anticipation of joining ISIL and

       16   the disgust of the United States.  And your exact quote is:

03:50  17          "Praise be to Allah.  I won't be fasting

       18          in this filthy country.  *Inshallah*.  May

       19          Allah make it so that I make it to

       20          you-know-where and by Ramadan.

       21          *Inshallah*."

03:50  22          On May 15 apparently you have a recorded

       23   conversation about your admiration for Malik al-Timimi.

       24   He's a prominent ISIL cleric and leader.

03:51  25          And Timimi explains ISIL's rationale for why

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | Christians can be subjugated by Muslims.  This, by the way,     |
|       | 2  | also includes, and a portion of this is missing, about         |
|       | 3  | enslaving women and raping.  The video ends with the murder    |
|       | 4  | of approximately 30 Ethiopian Christians:  One group is        |
|       | 5  | murdered by beheading, the other group is murdered at          |
|       | 6  | gunpoint.                                                      |
| 03:51 | 7  | And in this conversation of May 15th, you talk               |
|       | 8  | about radicalizing others.  It's not enough that apparently    |
|       | 9  | you're willing to fight and die.  But your exact statement     |
|       | 10 | in that conversation is *(verbatim as read:)*                 |
| 03:51 | 11 | "Maybe three days before I leave, I'll                        |
|       | 12 | start like --                                                 |
| 03:51 | 13 | "All right.  Radicalize.                                      |
| 03:51 | 14 | "Yeah.  Radicalized the people, you                           |
|       | 15 | know, just in case.  I don't know.  I                         |
|       | 16 | don't wanna get you in trouble though."                       |
| 03:51 | 17 | You're speaking to the other person.  And you go              |
|       | 18 | on later, so I don't make this long and drawn out.             |
| 03:52 | 19 | "We've been searching for him for weeks                       |
|       | 20 | now.                                                          |
| 03:52 | 21 | "We can't find him.                                           |
| 03:52 | 22 | "Where did he go?"                                            |
| 03:52 | 23 | That stops this Court cold in its tracks.  And the            |
|       | 24 | reason for that is, any supervised release seems to me to be   |
|       | 25 | almost ridiculous in terms of controlling you.                |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 9/26/2016 - Item No. 8

48

03:52   1          Later the same day, you're together again in the

        2   vehicle with another person, who's only been identified as

        3   "K.N."  And you're discussing the Islamic State being a good

        4   cause, the best cause, and how throats are cut and the blood

        5   comes out.  And, "They won't feel it.  They won't feel it,"

        6   and that it's, quote/unquote,

03:52   7              "Funny, man, that this is gruesome,

        8              like, you know, it's like -- get them

        9              freaking out because, like, the guy's

       10              head's coming off.  But just, in

       11              reality, it's not even that bad.  You

       12              know?  It's just -- it's whatever."

03:52  13          On the same day there's even a further discussion

       14   about war and chaos and the joking about 95 percent of

       15   Anaheim being conquered by ISIL, and 50 percent of Cypress.

       16   And in the same conversation you reaffirm the shared desire

       17   to obtain martyrdom/death on behalf of ISIL.

03:53  18          Now, this isn't one statement.  This isn't a First

       19   Amendment right.  This is a constant showing of intent for a

       20   long period of time.

03:53  21          On May 16th you arrive again at -- in a discussion

       22   with another person.  And your opening statement is:

03:53  23              "I just wanted to give you those pants

       24              because I don't want to, like, owe you."

03:53  25          In other words, martyrdom, if you go throughout

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | that statement.  And on May 20th, before you go to the             |
|       | 2  | airport, you're talking about the need to pick a side,             |
|       | 3  | "fence-sitting is for cowards," et cetera.                         |
| 03:53 | 4  | And, of course, the airport.  What's striking is                   |
|       | 5  | what you're carrying.  It's not the amount of money.  I            |
|       | 6  | think you have $1,016 on you from the fraud, and a passport        |
|       | 7  | and United States currency.                                        |
| 03:54 | 8  | What's striking is the fact that you're carrying                   |
|       | 9  | in a computer information:  Multiple documents that I think        |
|       | 10 | are sensitive government documents containing names and            |
|       | 11 | personal information of the names of the Department of             |
|       | 12 | Defense employees.  And these are designed to intimidate           |
|       | 13 | American soldiers --                                               |
| 03:54 | 14 | THE DEFENDANT:  If I might --                                       |
| 03:54 | 15 | THE COURT:  -- including the statement --                           |
| 03:54 | 16 | You may, sir.                                                       |
| 03:54 | 17 | THE DEFENDANT:  Those documents were actually                      |
|       | 18 | leaked by the government, so everyone had access to it.  And       |
|       | 19 | it's not sensitive, in that sense.                                 |
| 03:54 | 20 | THE COURT:  All right.                                              |
| 03:54 | 21 | Thank you, sir.                                                     |
| 03:54 | 22 | THE DEFENDANT:  You're welcome.                                     |
| 03:54 | 23 | THE COURT:  And those documents state:                             |
| 03:54 | 24 | "American soldiers, we're coming.  Watch                           |
|       | 25 | your back.  ISIS, CyberCaliphate."                                  |

**DEBBIE GALE, U.S. COURT REPORTER**

03:54  1          You also had numerous USB drive photos depicting

2    ISIL's brutality, especially graphic photos of the American

3    Humanitarian Aid worker Peter Kassig and his beheading, and

4    photos of the Japanese contractor and the journalists who

5    were beheaded by Jihadi John.

03:55  6          Apparently during your post-arrest statements, you

7    indicated that you knew ISIL fighters raped and killed

8    people, and even indicated how you planned to reach the

9    Islamic State from Istanbul, Turkey, which makes your

10   statement today a little suspect by the Court.

03:55  11         I've searched very hard -- and sometimes pride

12   this Court on its willingness to be humane and search for

13   rehabilitation -- and I don't find on this record any.

14   There's no remorse.  There's no repudiation of ISIL.

15   There's only the message of death and destruction.

03:56  16         Therefore, the Court's considered the sentencing

17   factors enumerated at 18 U.S.C. 3553(a) fully and

18   completely -- in fact, has belabored and spent a

19   considerable period of time -- and the advisory range of

20   360 months to life is based upon an offense level of 41 and

21   a Criminal History Category of VI.

03:56  22                   **PRONOUNCEMENT OF SENTENCE**

03:56  23         THE COURT:  It is ordered that you shall pay to

24   the United States a special assessment of $2,800, which is

25   due immediately.  Any unpaid balance shall be due during the

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | period of imprisonment at the rate of not less than $25 per |
|       | 2  | quarter and pursuant to the Bureau of Prisons Financial   |
|       | 3  | Responsibility Program.                                   |
| 03:57 | 4  | It is ordered that you shall pay restitution in           |
|       | 5  | the total amount of $3,376.14.                            |
| 03:57 | 6  | And therefore, Counsel, you can correct your              |
|       | 7  | respective PSR report, because the Court has deducted the |
|       | 8  | $671.60.                                                  |
| 03:57 | 9  | Therefore, the amount to Wells Fargo is $2,158.23.        |
| 03:57 | 10 | The amount to Chase Bank: $1,042.91.                      |
| 03:57 | 11 | Bank of America: $175.                                    |
| 03:57 | 12 | Restitution shall be due during the period of             |
|       | 13 | imprisonment at the rate of not less than $25 per quarter |
|       | 14 | and pursuant to the Bureau of Prisons Inmate Financial    |
|       | 15 | Responsibility Program.                                   |
| 03:57 | 16 | If any amount of the restitution remains unpaid           |
|       | 17 | after release from custody, payments of at least 10 percent |
|       | 18 | of your gross monthly income, but not less than $50,      |
|       | 19 | whichever is greater, shall be made during the period of  |
|       | 20 | supervised release.  These payments shall begin 30 days   |
|       | 21 | after the commencement of supervision.                    |
| 03:58 | 22 | If you make a partial payment, each payee shall           |
|       | 23 | receive approximately proportional payment, unless another |
|       | 24 | priority order or percentage program is specified.        |
| 03:58 | 25 | Pursuant to 18 U.S.C. 3612(f)(3)(A), interest on          |

the restitution ordered is waived because this defendant
does not have the ability to pay interest.

03:58    And payments may be subject to penalties for
default and delinquency pursuant to 18 U.S.C. 3612(g).

03:58    The defendant shall comply with General Order
No. 01-05.

03:58    Pursuant to Guideline Section 5E2 -- or 5E1.2A,
all fines are waived as the Court finds the defendant has
established that he's unable to pay and not likely to become
able to pay any fine in addition to restitution.

03:58    Pursuant to the Sentencing Reform Act of 1984,
Mr. Elhuzayel, it is the judgment of this Court that you,
the defendant, are hereby committed on Count One and Two,
and Four through Twenty-Nine of the 30-Count First
Superceding Indictment to the custody of the Bureau of
Prisons for a term of 360 months.  This term consists of 180
months on Count One, and 180 months on Count Two and Four
through Twenty-Nine, to be served concurrently with each
other, but consecutive to Count One.

03:59    Upon release from imprisonment, you'll be placed
on supervised release for a term of life.  This term
consists of life on Counts One and Two, and Five years on
each of Counts Four through Twenty-Nine, all such terms to
run concurrently under the following terms and conditions:

03:59    First, you shall comply with the rules and

regulations of the United States Probation Office and

General Order 05-02, and General Order 01-05, including the

three special conditions delineated in General Order 01-05.

03:59          You shall cooperate in the collection of a DNA

sample.

03:59          During the period of community supervision, you

shall pay the special assessment and restitution in

accordance with this judgment's order pertaining to such

payment.

04:00          You'll apply all moneys received from income tax

refunds, lottery winnings, inheritance, judgments, and any

anticipated or unexpected financial gains to the outstanding

court-ordered financial obligation.

04:00          You shall possess and use only those computers and

computer-related devices, screen-user names, passwords

e-mail accounts and Internet Service Providers that have

been disclosed to the Probation Officer upon commencement of

supervision.  Any changes or additions are to be disclosed

to the Probation Officer prior to the first use:  Computers

and computer-related devices, including personal computers,

cellular, telephones and smart phones, personal data

assistants, Internet appliances, electronic games and

digital storage media, as well as their peripheral equipment

that can access or can be modified to access the Internet,

electronic bulletin boards and other computers.

04:00  1        You shall submit your person/property to search or

2  seizure at any time of the day or night by any law

3  enforcement officer, with or without a warrant, and with or

4  without reasonable or probable cause.  And the Court finds a

5  sufficient nexus to the facts in this case to that

6  provision.

04:01  7        You'll report to the United States Probation

8  Officer within 72 hours of release.

04:01  9        Now, Counsel, 30 years from now, I'm going to

10  strike the provision about him reporting to this Court

11  within 20 days.  All right?

04:01  12        I probably won't be here in 30 years.

04:01  13        MS. HEINZ:  Yes, Your Honor.

04:01  14        THE COURT:  All right.

04:01  15        You shall not possess or have under your control

16  or access to any firearm, explosive device, or other

17  dangerous weapon, as defined by federal, state, or local

18  law.

04:01  19        The drug-testing condition mandated by statute is

20  suspended based on this Court's determination that you

21  oppose a low risk of future substance abuse.

04:01  22        This Court has carefully -- and I emphasize

23  "carefully" -- considered each of the factors under

24  18 U.S.C. 3553(a).  The sentence is sufficient, but not

25  greater than necessary to comply with the purposes set forth

**DEBBIE GALE, U.S. COURT REPORTER**

1    in Paragraph G.

2        In particular, I've considered the nature and

3    circumstances of the offense and the history and the

4    characteristics of Mr. Elhuzayel.

5        The sentence reflects the seriousness of the

6    offense, it promotes respect for the law, and it provides

7    just punishment for the offense.  It affords adequate

8    deterrence to criminal conduct.

9        In fact, my greatest concern is that you'll be

10   approximately 55 and still have vigor in you when you come

11   out.

12       It protects the public from further crimes, at

13   least for 30 years, by you; it takes into account the kinds

14   of sentences, the Guideline range, the policy statements

15   issued by the Sentencing Commission, and it does avoid

16   unwarranted sentence disparities.

17       Judge Selna's case has absolutely no relevance to

18   this matter.  There, the defendant pled early.  He was

19   abused as a child.  Besides the early plea, he'd been

20   bullied, which this defendant hasn't.

21       This defendant has had all the benefits of a good

22   childhood.  There were extraordinary difficulties with the

23   *Dandach* matter concerning mental anxiety and longstanding

24   and proven psychological factors.

25       Now, Counsel, as far as incarceration's concerned,

Case 8:15-cr-00060-DOC   Document 225   Filed 09/29/16   Page 56 of 60   Page ID #:2485
8:15-CR-0060-DOC - 9/26/2016 - Item No. 8

56

| | | |
|---|---|---|
| | 1 | I'm going to make a recommendation.  You know the Bureau of |
| | 2 | Prisons doesn't need to follow that.  But reflect for just a |
| | 3 | moment because his incarceration is important.  He could be |
| | 4 | in extraordinary danger, depending where he's incarcerated. |
| | 5 | You just don't know about that population. |
| 04:03 | 6 | And so, if you're requesting the Southern |
| | 7 | California area, I'll make that recommendation because of |
| | 8 | close family ties so the family can visit.  If there's |
| | 9 | another institution, like Supermax -- I can't caution you |
| | 10 | enough that -- I can pretty well tell you what the |
| | 11 | Aryan Brotherhood would do if they got a defendant of this |
| | 12 | type. |
| 04:03 | 13 | So you want him alive and you want him serving his |
| | 14 | time.  You don't want him killed. |
| 04:03 | 15 | MR. LENGYEL-LEAHU:  May I have a moment, |
| | 16 | Your Honor? |
| 04:03 | 17 | THE COURT:  Take your time with it. |
| 04:04 | 18 | *(Defense counsel and defendant confer.)* |
| 04:04 | 19 | MR. LENGYEL-LEAHU:  We'd ask that the Court make a |
| | 20 | recommendation for Southern California. |
| 04:04 | 21 | THE COURT:  Make the recommendation for Southern |
| | 22 | California because of close family ties so that they can |
| | 23 | visit. |
| 04:04 | 24 | Although, Counsel, he may be put into the SHU. |
| | 25 | I'm not certain. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 04:04 | 1 | MR. LENGYEL-LEAHU:  Understood. |
| 04:04 | 2 | THE COURT:  All right. |
| 04:04 | 3 | Now, you have 14 -- you have a wonderful counsel, |
| | 4 | Mr. Elhuzayel.  You have the right to appeal from this |
| | 5 | sentence and the processes and procedures within 14 days. |
| | 6 | But that's your personal right and responsibility.  If |
| | 7 | something happened to Mr. Lengyel-Leahu, you still have 14 |
| | 8 | days. |
| 04:04 | 9 | Do you understand that, sir? |
| 04:04 | 10 | THE DEFENDANT:  Can you repeat that? |
| 04:04 | 11 | THE COURT:  Yeah.  You have 14 days from today in |
| | 12 | which to appeal this sentence and the trial.  And that's |
| | 13 | your personal right and responsibility.  If you don't appeal |
| | 14 | within that period of time, you've waived that right. |
| 04:04 | 15 | Now, counsel will help you with that, but if |
| | 16 | something happened to him tomorrow, I wanted to inform you |
| | 17 | about that 14-day time period. |
| 04:04 | 18 | MR. LENGYEL-LEAHU:  Just so the record is clear, |
| | 19 | Your Honor, I have not been retained beyond this trial.  He |
| | 20 | would need to either retain counsel, or I'd be retained -- |
| 04:05 | 21 | THE COURT:  I'm going to retain you, because I |
| | 22 | think it's impossible for him to file an appeal other than |
| | 23 | just a notice.  So I'll retain you through the 14-day period |
| | 24 | of time for the purposes of filing the appeal. |
| 04:05 | 25 | If you left now, I think it leaves him abandoned. |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | He has no counsel who could become familiar with the case.   |
|       | 2  | So I'll retain you for 14 days, Counsel.                     |
| 04:05 | 3  |         MR. LENGYEL-LEAHU:  Thank you, Your Honor.           |
| 04:05 | 4  |         THE COURT:  Now, counsel on behalf of the           |
|       | 5  | government, are there corrections that need to be made?      |
|       | 6  | Arguments concerning sentencing?  Any neglect by the Court?  |
| 04:05 | 7  |         MS. HEINZ:  If the Court would just rule on the      |
|       | 8  | forfeiture, Your Honor.  I believe we submitted a proposed   |
|       | 9  | money judgment.                                              |
| 04:05 | 10 |         And also, I believe the Court just needs to orally   |
|       | 11 | pronounce its sentencing that the defendant's sentence       |
|       | 12 | includes a money judgment in the amount of $6,530.           |
| 04:05 | 13 |         And it's also like my understanding that, when we    |
|       | 14 | filed the application for this, that defense counsel filed a  |
|       | 15 | non-opposition simply to the entry of the money judgment,    |
|       | 16 | not -- we -- this does not address how it would be           |
|       | 17 | satisfied.                                                    |
| 04:06 | 18 |         THE COURT:  I understand.  I'll make that finding,   |
|       | 19 | Counsel, at this time; and that's the amount of $6,530.  And  |
|       | 20 | this judgment includes that money judgment in said amount.   |
| 04:06 | 21 |         And I'll sign that today, Counsel.                   |
| 04:06 | 22 |         MS. HEINZ:  Thank you, Your Honor.                   |
| 04:06 | 23 |         THE COURT:  Anything further?                        |
| 04:06 | 24 |         MS. HEINZ:  Nothing further from the government.     |
| 04:06 | 25 |         THE COURT:  Mr. Elhuzayel *(sic)*?                   |

04:06    1              MR. LENGYEL-LEAHU:  Nothing by the defense.

04:06    2              THE COURT:  All right.  Gentlemen, thank you very

         3    much.

04:06    4              *(To the marshals:)* Take the gentlemen out.

04:06    5          *(Proceedings adjourned at 4:21 p.m.)*

04:06    6                          -oOo-

04:06    7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

**DEBBIE GALE, U.S. COURT REPORTER**

```
04:06   1                              -oOo-

04:06   2

04:06   3                           CERTIFICATE

04:06   4

04:06   5        I hereby certify that pursuant to Section 753,

        6   Title 28, United States Code, the foregoing is a true and

        7   correct transcript of the stenographically reported

        8   proceedings held in the above-entitled matter and that the

        9   transcript page format is in conformance with the

       10   regulations of the Judicial Conference of the United States.

04:06  11

04:06  12   Date:  September 29, 2016

04:06  13

04:06  14
04:06                              /s/ Debbie Gale
04:06  15                   _____
04:06                       DEBBIE GALE, U.S. COURT REPORTER
04:06  16                   CSR NO. 9472, RPR, CCRR

04:06  17

04:06  18

       19

       20

       21

       22

       23

       24

       25
```