1     **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA**

3   **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4      - - - - - - -

5 UNITED STATES OF AMERICA,   )

            )  **CERTIFIED**

6     Plaintiff,    )

            )

7   vs.       ) No. 8:15-CR-0060-DOC

            )

8 1) NADER SALEM ELHUZAYEL;  )

  2) MUHANAD ELFATIH M.A. BADAWI, )

9            )

     Defendants.   )

10 _____)

11

12

13

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16      Pretrial Proceedings

17      Santa Ana, California

18      Monday, June 6, 2016

19

20

21

22 Debbie Gale, CSR 9472, RPR, CCRR

  Federal Official Court Reporter

23 United States District Court

  411 West 4th Street, Room 1-053

24 Santa Ana, California 92701

  (714) 558-8141

25

1    **APPEARANCES OF COUNSEL:**

2

     FOR THE UNITED STATES OF AMERICA:
3
          DEPARTMENT OF JUSTICE
4         OFFICE OF THE UNITED STATES ATTORNEY
          Criminal Division
5         BY:  Judith A. Heinz
               Assistant United States Attorney
6         312 North Spring Street
          15th Floor
7         Los Angeles, California 90012
          213-894-7280
8         USACAC.Criminal@usdoj.gov

9         DEPARTMENT OF JUSTICE
          OFFICE OF THE UNITED STATES ATTORNEY
10        Criminal Division
          BY:  Deirdre Z. Eliot
11             Assistant United States Attorney
          411 West 4th Street
12        Suite 8000
          Santa Ana, California 92701
13        714-338-3500
          USACAC.SACriminal@usdoj.gov
14

15
          DEPARTMENT OF JUSTICE
16        OFFICE OF THE UNITED STATES ATTORNEY
          General Crimes Section
17        BY:  Julius J. Nam
               Assistant United States Attorney
18        312 North Spring Street
          Suite 1200
19        Los Angeles, California 90012
          213-894-4491
20        julius.nam@usdoj.gov

21

     FOR DEFENDANT NADER SALEM ELHUZAYEL:
22
          Pal A. Lengyel-Leahu *(retained)*
23        LAW OFFICES OF PAL A. LENGYEL-LEAHU
          360 East First Street
24        Suite 609
          Tustin, California 92780
25        714-497-6813
          plitigate@aol.com

```
 1
 2    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:
 3
           Katherine T. Corrigan (CJA appointment)
 4         CORRIGAN WELBOURN AND STOKKE APLC
           4100 Newport Place
 5         Suite 550
           Newport Beach, California 92660
 6         949-251-0330
           kate@cwsdefense.com
 7
 8    ALSO PRESENT:
 9         Cambria Lisonbee (assisting Ms. Corrigan)
           Joshua Hopps (assisting Mr. Lengyel-Leahu)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                              **I N D E X**

2     **PROCEEDINGS**                                    **PAGE**

3     Appearances                                        5

4     Discussion re Jury Questionnaires                  7

5     Courtroom 9D setup documented with photographs     138

6     Complex Courtroom 9C setup documented with         140
      photographs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

5

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| 08:05 | 4 |
| 08:05 | 5 |
| 08:05 | 6 |
| 08:05 | 7 |
| | 8 |
| 08:05 | 9 |
| | 10 |
| 08:05 | 11 |
| | 12 |
| 08:05 | 13 |
| | 14 |
| 08:05 | 15 |
| | 16 |
| 08:05 | 17 |
| | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1           **SANTA ANA, CALIFORNIA, MONDAY, JUNE 6, 2016**

2               **Jury Selection Volume I**

3                  (8:05 a.m.)

4         THE COURT:  All right.  Then we're on the record

5  in Mr. Badawi's matter and Mr. Elhuzayel's matter.

6                    **APPEARANCES**

7         THE COURT:  And, counsel, once again, if you make

8  your appearance on behalf of the government.

9         MS. HEINZ:  Good morning, Your Honor.  Judith

10  Heinz on behalf of the United States.

11         MS. ELIOT:  Good morning, Your Honor.  Deirdre

12  Eliot for the government.

13         MR. NAM:  Good morning, Your Honor, Julius Nam for

14  the United States.

15     *(Defense counsel present, but do not state*

16      *appearances for the record.)*

17         THE COURT:  Okay.  I propose starting with the

18  jurors one by one.  I know you may have some stipulations

19  'cause you may have met.  But instead of thumbing through

20  all those stipulations to begin with, I'd like it to go

21  through these sequentially.  It won't take very long.  And

22  make certain that we cover enough so that I know that we

23  have a potential panel without having the jury commissioner

24  call back more jurors today; otherwise, I would just accept

25  your stipulations and move along.

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 6 of 146   Page ID #:3841
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

6

08:06    1        I've been in contact with Marcelino and tried to

2    keep track over the weekend.  But would you be kind,

3    marshal, to read in the e-mail that we got from the

4    holding -- or from the jail.

08:07    5        U.S. MARSHAL:  Good morning.  Marcelino Hazelwood

6    for the marshal service.  This morning I received an e-mail

7    from the Santa Ana jail that updated us on how Mr. Badawi

8    did over the weekend as well as his vital signs and what he

9    ate today.  And it goes as follows:

08:07   10        *"PT was calm, cooperative.  Vital signs:*

11        *BP 102/70.  Pulse 41.  Weight 129.2.  PT*

12        *ate breakfast as follows:  Two pieces of*

13        *bread, one bowl of cereal with milk and*

14        *one packet of peanut butter.  Requested*

15        *double tray meals.  No orange juice."*

16        *End quote.*

08:07   17        THE COURT:  Okay.  Now, have we obtained the

18    Boost?

08:07   19        U.S. MARSHAL:  Yes, Your Honor.

08:07   20        THE COURT:  Okay.  Ms. Corrigan, I can conduct an

21    *in camera* hearing.  I know that you -- well, I know you

22    visited with your client over the weekend.

08:08   23        Do you want to have an *in camera* hearing

24    concerning his well-being at the present time, your

25    observations -- as you requested before -- and if so, I'm

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

7

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
|          |  1 | happy to do that.  If you would like to make whatever                |
|          |  2 | representations on the record with counsel present, I'm              |
|          |  3 | happy to do that.                                                    |
| 08:08    |  4 |           MS. CORRIGAN:  Your Honor, I think at this time I           |
|          |  5 | don't have any particular concerns, although I will say that         |
|          |  6 | I'm glad to hear that he ate well over the weekend, but I            |
|          |  7 | was not able to have any meaningful meetings over the                |
|          |  8 | weekend.                                                             |
| 08:08    |  9 |           THE COURT:  Would you like to have an *in camera*          |
|          | 10 | hearing?                                                             |
| 08:08    | 11 |           MS. CORRIGAN:  No.  Thank you.                             |
| 08:08    | 12 |           THE COURT:  Not at this time?                             |
| 08:08    | 13 |           MS. CORRIGAN:  Not at this time.                          |
| 08:08    | 14 |           THE COURT:  All right.                                   |
| 08:09    | 15 |      There may be eventual challenges for cause, but               |
|          | 16 | when I went through these, subject to your input, I started        |
|          | 17 | looking at pages 10 and 11 initially because they had the         |
|          | 18 | two questions about fairness, and then I looked at the rest       |
|          | 19 | of the questionnaire.  There will be some challenges for          |
|          | 20 | cause, but there may be some automatic, just eliminators          |
|          | 21 | that you're both comfortable with; if you're not, we'll just      |
|          | 22 | do it when the jury gets here.                                    |
| 08:09    | 23 |           **DISCUSSION RE JURY QUESTIONNAIRES**                   |
| 08:09    | 24 |           THE COURT:  But I'm going to start with               |
|          | 25 | P-E-I-B-E-I, M-I-Y-A-G-I-S-H-I-M-A.                             |

08:10    1          And, Counsel, I didn't see, at least at this time,
         2   any reason you'd be making any request but...
08:10    3          MS. CORRIGAN:  This is one that -- just so the
         4   Court's aware, we all met yesterday.  And so this one -- we
         5   have certain categories, I guess.  And this one, we all
         6   agreed that we would like to have further inquiry on this
         7   juror.
08:10    8          THE COURT:  Yeah.  I'm only going to take the
         9   obvious ones today.
08:10   10          MS. HEINZ:  I think the inquiry was specific
        11   'cause she had a concern on page 13 about being able to get
        12   her children to school.  That was the nature of the further
        13   inquiry.  It didn't sound to us like cause, but perhaps she
        14   needed to explain more about that problem.
08:11   15          THE COURT:  Remember, I'm giving you all the time
        16   you want.
08:11   17          MS. HEINZ:  That's right.
08:11   18          THE COURT:  But I'm not willing to start at
        19   9:00 o'clock.  I would just take one hour a day.  If I
        20   started at 9:00 like most courts, instead of 8:00 or 7:30,
        21   but 8:00, five days, that's almost two-thirds of a day.
08:11   22          MS. HEINZ:  Understood, Your Honor.
08:11   23          THE COURT:  So this is something you can inquire.
        24   You can inquire in front of the jury.
08:11   25          Henry Wong.  W-O-N-G.

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

9

08:11  1          MS. CORRIGAN:  We agreed on further information or

       2   further inquiry on this.

08:11  3          THE COURT:  Okay.  Thank you.

08:11  4          Jesus Ambriz, A-M-B-R-I-Z.

08:11  5          MS. CORRIGAN:  No comment on either -- on him.

       6   This is not one that we felt was a stip or further inquiry.

       7   There will be further inquiry, but --

08:11  8          THE COURT:  Put 'em in the category that you're

       9   going to ask questions if you choose to.

08:12  10          MS. CORRIGAN:  All right.

08:12  11          THE COURT:  Now, the next one is Andrew Huang.

       12   And here's a gentleman who answers "Yes" on Question 33, and

       13   then answers "No" on Question 11.  I have no wisdom about

       14   that.  It could be confusion, or it could be that he's

       15   rethought his answer on the next page.  I leave that to your

       16   discretion.

08:12  17          MS. CORRIGAN:  This one we had as further inquiry

       18   also.

08:12  19          THE COURT:  Further inquiry.

08:12  20          Okay.

08:12  21          Dylan Coonradt.

08:12  22          MS. CORRIGAN:  This person we had -- we were gonna

       23   suggest further inquiry because it's a little bit odd.

       24   Indicates he has poor eyesight; yet he's a dental tech.  So

       25   we'd like to have some further inquiry as to his eyesight.

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

10

| | | |
|---|---|---|
| 08:12 | 1 | THE COURT:  Anthony Traviglia. |
| 08:12 | 2 | MS. CORRIGAN:  We have no comment -- |
| 08:13 | 3 | MS. HEINZ:  We didn't have any. |
| 08:13 | 4 | MS. CORRIGAN:  -- further on this one. |
| 08:13 | 5 | THE COURT:  Darryl Hilliard.  And I had |
| | 6 | consistency in terms of his not being able to evaluate |
| | 7 | the -- |
| 08:13 | 8 | MS. CORRIGAN:  This is a proposed stip to excuse. |
| 08:13 | 9 | MS. HEINZ:  This is the proposed agreed-upon stip |
| | 10 | for cause. |
| 08:13 | 11 | THE COURT:  So this is stipulated by all counsel? |
| 08:13 | 12 | MS. CORRIGAN:  Yes. |
| 08:13 | 13 | MR. LENGYEL-LEAHU:  Yes.  All counsel, yes, |
| | 14 | Your Honor. |
| 08:13 | 15 | MS. HEINZ:  Yes, Your Honor. |
| 08:13 | 16 | MS. ELIOT:  Yes, Your Honor. |
| 08:13 | 17 | THE COURT:  This is the first one that we can |
| | 18 | call. |
| 08:13 | 19 | THE CLERK:  Thank you. |
| 08:13 | 20 | THE COURT:  Shiow Moo, M-O-O.  I had the same |
| | 21 | issue with Mr. Moo. |
| 08:13 | 22 | MS. CORRIGAN:  We've agreed -- all parties have |
| | 23 | agreed to stipulate for cause. |
| 08:13 | 24 | MS. HEINZ:  Yes, Your Honor. |
| 08:13 | 25 | MS. ELIOT:  Yes, Your Honor. |

08:13  1              MS. HEINZ:  Government stipulates.

08:13  2              THE COURT:  Counsel?

08:13  3              MR. LENGYEL-LEAHU:  Oh, yes, Your Honor.

08:13  4              MS. CORRIGAN:  Yes.

08:13  5              THE COURT:  Okay.  I want an absolute record that

       6  this is --

08:13  7              *(To the clerk:)*  You can call.  That person's

       8  excused.

08:13  9              Michelle Hutchinson.

08:13  10             MS. CORRIGAN:  Just further inquiry as to this

       11  person.

08:14  12             THE COURT:  Hueson Tran, H-E-U-S-O-N, T-R-A-N.

       13  And I had concerns about his consistent answers.

08:14  14             MS. CORRIGAN:  This is another one that we've

       15  agreed to stipulate for cause -- or to excuse.

08:14  16             THE COURT:  I haven't heard --

08:14  17             MS. HEINZ:  Government stipulates, Your Honor.

08:14  18             MS. ELIOT:  Yes.

08:14  19             MR. LENGYEL-LEAHU:  Yes, we stipulate too,

       20  Your Honor.

08:14  21             THE COURT:  All right.  He's excused.

08:14  22             Crystal Morales-Trumbo.

08:14  23             MS. CORRIGAN:  This one we have for further

       24  inquiry.

08:14  25             THE COURT:  Lee Okubo.

**DEBBIE GALE, U.S. COURT REPORTER**

08:14  1          MS. CORRIGAN:  Same:  Further inquiry.

08:15  2          THE COURT:  Giovanni Blanco Trujillo.

08:15  3          MS. CORRIGAN:  Same:  Further inquiry.

08:15  4          THE COURT:  William -- I believe it's Haun,

       5  H-A-U-N.

08:15  6          MS. HEINZ:  Same.  Further inquiry.

08:15  7          MS. CORRIGAN:  Yes.

08:15  8          THE COURT:  Brett Breckenridge.  And here I have

       9  page 13 was of particular interest because of his night

      10  shift work and also his consistent answers on page 10 and 11

      11  that he couldn't be fair.

08:15 12          MS. HEINZ:  I think we had this for further

      13  inquiry, Your Honor, based on sort of inconsistency of

      14  answers.

08:15 15          MS. CORRIGAN:  Right.

08:15 16          THE COURT:  Just a moment.

08:15 17          MS. CORRIGAN:  This was a person that we -- the

      18  defense had proposed as a stipulated for cause, but after

      19  further discussion, there was no agreement by all parties.

08:15 20          THE COURT:  Let's be very careful about this.

      21  What I'm not going to do is put the defense in the position

      22  of asking questions that are damaging.  Why?  On page 10, he

      23  can't be fair.  On Page 11, he can't be fair.  And on

      24  page 13, "I work mostly nights, third shifts, so I may -- or

      25  will become difficult for me to stay awake."  Now, that's

|  |  |  |
|---|---|---|
|  | 1 | not a disqualifier on page 13.  But what changes this |
|  | 2 | gentleman from the prior stipulations? |
| 08:16 | 3 | MS. HEINZ:  Your Honor, the difference -- at least |
|  | 4 | the government's viewpoint is the difference between this |
|  | 5 | person and other prior stipulations, and this -- this is |
|  | 6 | sort of a running pattern, I think, in some of these, is |
|  | 7 | that there is very little underneath to understand why the |
|  | 8 | person checks the box that they can't be fair. |
| 08:16 | 9 | For example, on page 10 at Question 33, when |
|  | 10 | asked, "Do you have any strongly held feelings or opinions |
|  | 11 | about people of the Middle East, he says, "no." |
| 08:16 | 12 | "If yes, please explain:" "NA."  But then the |
|  | 13 | following question he says he can't be fair.  So it raises, |
|  | 14 | for the government, a question about whether he really |
|  | 15 | understood the question or he was checking the box.  The |
|  | 16 | government does not want further inquiry about why; just a |
|  | 17 | bald inquiry about whether the person can be fair, to make |
|  | 18 | sure that this person really is saying that they cannot be |
|  | 19 | fair. |
| 08:17 | 20 | MR. LENGYEL-LEAHU:  It's our position, Your Honor, |
|  | 21 | I think the government's being a little unfair, because I |
|  | 22 | think the first question, "Do you have anything against the |
|  | 23 | people of Middle Eastern descent," is a question of |
|  | 24 | prejudice. |
| 08:17 | 25 | *(Court reporter requests clarification for the* |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | *record.)*                                                   |
| 08:17 | 2  | MR. LENGYEL-LEAHU:  I'm sorry.                                |
| 08:17 | 3  | The first question is whether or not you have a              |
|       | 4  | prejudice against, uh, people for their race, but it's the   |
|       | 5  | Question 36, where they're actually talking about ISIS and   |
|       | 6  | ISIL and can he be fair in judging a case like that.  He     |
|       | 7  | says, "No."                                                  |
| 08:17 | 8  | THE COURT:  If either one of you are objecting,              |
|       | 9  | I'll take this, but we'll take him out of the presence of    |
|       | 10 | the jury.  He'll be the twelfth person called.               |
| 08:18 | 11 | *(Court reporter requests clarification for the*             |
|       | 12 | *record.)*                                                    |
| 08:18 | 13 | THE COURT:  I'm not going to allow questions to be           |
|       | 14 | asked in front of the jury until I'm satisfied.  He appears  |
|       | 15 | not to be a fair juror, but I'll give the government that    |
|       | 16 | opportunity.  But it will be separate from the jury.         |
| 08:18 | 17 | Alexander Kaloian, K-A-L-O-I-A-N.                            |
| 08:18 | 18 | MS. CORRIGAN:  This gentleman we have a                      |
|       | 19 | stipulation by all parties for cause.                        |
| 08:18 | 20 | MS. HEINZ:  Yes, Your Honor, that's true.                    |
| 08:18 | 21 | MR. LENGYEL-LEAHU:  That's true, Your Honor.                 |
| 08:18 | 22 | THE COURT:  Marcia Labowitz.                                 |
| 08:18 | 23 | MS. HEINZ:  This is just further inquiry.                    |
| 08:18 | 24 | MS. CORRIGAN:  That's correct.                               |
| 08:18 | 25 | THE COURT:  Enrique Mejia.                                   |

| | | |
|---|---|---|
| 08:18 | 1 | MS. CORRIGAN:  That's the same:  Further inquiry, |
| | 2 | Your Honor. |
| 08:18 | 3 | THE COURT:  All right.  Nicolette Allen. |
| 08:18 | 4 | MS. CORRIGAN:  This is one that we agreed, uh, |
| | 5 | stip for cause. |
| 08:19 | 6 | MS. HEINZ:  Yes, Your Honor. |
| 08:19 | 7 | MS. ELIOT:  Yes. |
| 08:19 | 8 | MS. HEINZ:  Stip for cause. |
| 08:19 | 9 | MR. LENGYEL-LEAHU:  Yes.  Stip for cause |
| | 10 | Your Honor. |
| 08:19 | 11 | THE COURT:  Alan de la Rosa Zamora. |
| 08:19 | 12 | MS. HEINZ:  This is further inquiry, Your Honor. |
| 08:19 | 13 | MS. CORRIGAN:  That's correct. |
| 08:19 | 14 | THE COURT:  Ricky Taniguchi. |
| 08:19 | 15 | MS. CORRIGAN:  This is a further inquiry, |
| | 16 | Your Honor. |
| 08:19 | 17 | THE COURT:  Laura Johnson. |
| 08:19 | 18 | MS. CORRIGAN:  Further inquiry. |
| 08:19 | 19 | THE COURT:  Dennis Nguyen. |
| 08:19 | 20 | MS. HEINZ:  This is -- |
| 08:19 | 21 | MS. CORRIGAN:  This is stipulation for cause by |
| | 22 | all parties. |
| 08:19 | 23 | MS. HEINZ:  Yes, Your Honor, stipulation for |
| | 24 | cause. |
| 08:19 | 25 | MR. LENGYEL-LEAHU:  Stip for cause, Your Honor. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

16

| | | |
|---|---|---|
| 08:19 | 1 | THE COURT:  Darren Luong. |
| 08:19 | 2 | MS. HEINZ:  Government stips for cause. |
| 08:19 | 3 | MS. CORRIGAN:  Defense stips for cause. |
| 08:19 | 4 | MR. LENGYEL-LEAHU:  Join. |
| 08:20 | 5 | THE COURT:  Richard Roberts. |
| 08:20 | 6 | MS. CORRIGAN:  Stip for cause, Your Honor, by all |
| | 7 | parties. |
| 08:20 | 8 | MS. HEINZ:  Government stips for cause. |
| 08:20 | 9 | MR. LENGYEL-LEAHU:  Fine. |
| 08:20 | 10 | THE COURT:  I had it down also.  Excused for |
| | 11 | cause. |
| 08:20 | 12 | Klaus Cieslewicz. |
| 08:20 | 13 | MS. HEINZ:  Further inquiry, Your Honor. |
| 08:20 | 14 | MS. CORRIGAN:  Correct. |
| 08:20 | 15 | THE COURT:  Anita -- is it Montano? |
| 08:20 | 16 | MS. CORRIGAN:  Further inquiry. |
| 08:20 | 17 | MS. HEINZ:  Further inquiry, Your Honor. |
| 08:20 | 18 | THE COURT:  Let me get the next batch. |
| 08:22 | 19 | Okay.  Scarlette Rios. |
| 08:22 | 20 | MS. HEINZ:  Further inquiry, Your Honor. |
| 08:22 | 21 | MS. CORRIGAN:  That's correct. |
| 08:22 | 22 | THE COURT:  Jessica Ramirez -- and is it Garcia? |
| 08:22 | 23 | MS. CORRIGAN:  Further inquiry, Your Honor. |
| 08:22 | 24 | MS. HEINZ:  Further inquiry. |
| 08:22 | 25 | THE COURT:  Uyen Nguyen.  I had concerns. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

17

| | | |
|---|---|---|
| 08:22 | 1 | MS. CORRIGAN:  Stipulated for cause. |
| 08:22 | 2 | MS. HEINZ:  Stipulated for cause, Your Honor. |
| 08:22 | 3 | MS. CORRIGAN:  Are you joining, Pal? |
| 08:22 | 4 | MR. LENGYEL-LEAHU:  Oh, yeah.  I'm sorry.  Join. |
| 08:22 | 5 | THE COURT:  All right.  Excused for cause. |
| 08:22 | 6 | Candace Mershon.  And this person you've got to |
| | 7 | hunt for.  They didn't put their last name in.  It's |
| | 8 | 803420903. |
| 08:23 | 9 | MS. CORRIGAN:  That's correct.  And we have a stip |
| | 10 | for cause on this. |
| 08:23 | 11 | MS. HEINZ:  Yes, government stips for cause. |
| 08:23 | 12 | MR. LENGYEL-LEAHU:  Join. |
| 08:23 | 13 | THE COURT:  Excused for cause. |
| 08:23 | 14 | Evelin -- in case the Court has on occasion not |
| | 15 | stated on the record that there's an excused for cause, |
| | 16 | every time counsel stipulated, obviously, that's an excuse |
| | 17 | for cause.  So I hope I've said "excused for cause" after |
| | 18 | each one; but I may have skipped one or two. |
| 08:23 | 19 | Evelin Guevara. |
| 08:23 | 20 | MS. HEINZ:  Government stips for cause. |
| 08:23 | 21 | MS. CORRIGAN:  Stip for cause. |
| 08:23 | 22 | MR. LENGYEL-LEAHU:  Join. |
| 08:23 | 23 | THE COURT:  Excused. |
| 08:23 | 24 | Richard Conklin. |
| 08:23 | 25 | MS. HEINZ:  Further inquiry. |

| | | |
|---|---|---|
| 08:23 | 1 | MS. CORRIGAN:  Further inquiry. |
| 08:23 | 2 | THE COURT:  Jolin Cox. |
| 08:23 | 3 | MS. CORRIGAN:  Further inquiry, Your Honor. |
| 08:23 | 4 | MS. HEINZ:  Further inquiry. |
| 08:23 | 5 | THE COURT:  Asela Omiligespiritu. |
| 08:23 | 6 | MS. CORRIGAN:  Further inquiry. |
| 08:24 | 7 | MS. HEINZ:  Further inquiry. |
| 08:24 | 8 | THE COURT:  Next one I have concerns about.  Jacob |
| | 9 | Rigel. |
| 08:24 | 10 | MS. CORRIGAN:  Stip for cause. |
| 08:24 | 11 | MS. HEINZ:  Stip for cause. |
| 08:24 | 12 | MR. LENGYEL-LEAHU:  Join. |
| 08:24 | 13 | THE COURT:  Excused. |
| 08:25 | 14 | Celine Brieumiller. |
| 08:26 | 15 | MS. HEINZ:  Further inquiry. |
| 08:26 | 16 | MS. CORRIGAN:  Further inquiry. |
| 08:26 | 17 | THE COURT:  Lindsay Anderson. |
| 08:26 | 18 | MS. CORRIGAN:  Same.  Further inquiry. |
| 08:26 | 19 | THE COURT:  Rosalinda Jimenez. |
| 08:26 | 20 | MS. CORRIGAN:  Further inquiry. |
| 08:26 | 21 | THE COURT:  Rosemarie Swatez. |
| 08:26 | 22 | MS. CORRIGAN:  Further inquiry. |
| 08:26 | 23 | THE COURT:  Shawn Soyinthisane. |
| 08:26 | 24 | MS. CORRIGAN:  Stip for cause. |
| 08:26 | 25 | MS. HEINZ:  Stip for cause. |

8:15-CR-0060-DOC – 6/6/2016 – Pretrial Proceedings

| | | |
|---|---|---|
| 08:26 | 1 | MR. LENGYEL-LEAHU:  Stip for cause, Your Honor. |
| 08:26 | 2 | THE COURT:  All right.  Excused for cause. |
| 08:26 | 3 | Melynda Crabtree. |
| 08:26 | 4 | MS. CORRIGAN:  Stip for cause. |
| 08:26 | 5 | MR. LENGYEL-LEAHU:  Join. |
| 08:26 | 6 | MS. HEINZ:  Stip for cause. |
| 08:26 | 7 | THE COURT:  Excused for cause. |
| 08:26 | 8 | Rosemary Valdovinos. |
| 08:26 | 9 | MS. CORRIGAN:  Further inquiry. |
| 08:26 | 10 | THE COURT:  Saul Toscano. |
| 08:26 | 11 | MS. CORRIGAN:  For cause. |
| 08:27 | 12 | MS. HEINZ:  Stip for cause. |
| 08:27 | 13 | MR. LENGYEL-LEAHU:  Join. |
| 08:27 | 14 | THE COURT:  Excused for cause. |
| 08:27 | 15 | Le Thanh. |
| 08:28 | 16 | MS. HEINZ:  Stip for cause. |
| 08:28 | 17 | MS. CORRIGAN:  Stip for cause. |
| 08:28 | 18 | MR. LENGYEL-LEAHU:  Join. |
| 08:28 | 19 | THE COURT:  Excused for cause. |
| 08:28 | 20 | Tracy Popejoy. |
| 08:28 | 21 | MS. CORRIGAN:  Further information. |
| 08:28 | 22 | MS. HEINZ:  Further inquiry. |
| 08:28 | 23 | THE COURT:  Kyle Alanis. |
| 08:28 | 24 | MS. CORRIGAN:  Stip for cause. |
| 08:28 | 25 | MS. HEINZ:  Stip for cause. |

| | | |
|---|---|---|
| 08:28 | 1 | MR. LENGYEL-LEAHU:  Join. |
| 08:28 | 2 | THE COURT:  Excused for cause. |
| 08:28 | 3 | Jose Fernando Velez. |
| 08:28 | 4 | MS. CORRIGAN:  Further inquiry. |
| 08:28 | 5 | MS. HEINZ:  Further inquiry. |
| 08:28 | 6 | THE COURT:  Dennis Seel. |
| 08:28 | 7 | MS. CORRIGAN:  Further inquiry. |
| 08:28 | 8 | MS. HEINZ:  Further inquiry. |
| 08:28 | 9 | THE COURT:  Donald Tuleja. |
| 08:28 | 10 | MS. CORRIGAN:  Further inquiry. |
| 08:28 | 11 | MS. HEINZ:  Further inquiry. |
| 08:28 | 12 | THE COURT:  Nicholas Buffum. |
| 08:29 | 13 | MS. CORRIGAN:  Further inquiry. |
| 08:29 | 14 | MS. HEINZ:  Further inquiry. |
| 08:29 | 15 | THE COURT:  Christopher Leon. |
| 08:29 | 16 | MS. CORRIGAN:  Further inquiry. |
| 08:29 | 17 | MS. HEINZ:  Further inquiry. |
| 08:29 | 18 | THE COURT:  Frank Fraga. |
| 08:29 | 19 | MS. CORRIGAN:  Further inquiry. |
| 08:29 | 20 | MS. HEINZ:  Further inquiry. |
| 08:30 | 21 | THE COURT:  Dillon Cassell. |
| 08:30 | 22 | MS. HEINZ:  Further inquiry. |
| 08:30 | 23 | MS. CORRIGAN:  Further inquiry. |
| 08:30 | 24 | THE COURT:  Weihung Tsai. |
| 08:30 | 25 | MS. CORRIGAN:  Stip for cause. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

21

| | | |
|---|---|---|
| 08:30 | 1 | MS. HEINZ:  Stip for cause. |
| 08:30 | 2 | MR. LENGYEL-LEAHU:  Join. |
| 08:30 | 3 | THE COURT:  Excused for cause. |
| 08:30 | 4 | Daniel Hayden. |
| 08:30 | 5 | MS. HEINZ:  Further inquiry. |
| 08:30 | 6 | MS. CORRIGAN:  Further inquiry. |
| 08:30 | 7 | THE COURT:  John Gilliard. |
| 08:30 | 8 | MS. CORRIGAN:  Further inquiry. |
| 08:30 | 9 | MS. HEINZ:  Further inquiry. |
| 08:30 | 10 | THE COURT:  Scott Kirby. |
| 08:30 | 11 | MS. CORRIGAN:  Further inquiry. |
| 08:30 | 12 | MS. HEINZ:  Further inquiry. |
| 08:30 | 13 | THE COURT:  Is it he answered both questions "no"? |
| 08:30 | 14 | MS. CORRIGAN:  Right. |
| 08:30 | 15 | THE COURT:  About being fair? |
| 08:30 | 16 | MS. HEINZ:  Wait a minute.  Where are we? |
| 08:30 | 17 | MS. CORRIGAN:  I think that the -- on Mr. Kirby. |
| 08:30 | 18 | I think that the government wanted to further |
| | 19 | inquire 'cause they didn't feel that there was enough |
| | 20 | information. |
| 08:30 | 21 | THE COURT:  Remind me that that will be out of the |
| | 22 | presence of the jury. |
| 08:31 | 23 | MS. CORRIGAN:  I'll make a note of that. |
| 08:31 | 24 | THE COURT:  When I see two of those, I'll be |
| | 25 | gracious, but I'm not gonna let the panel to voir dire or to |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | be poisoned by a question.  Not that you'd intentionally do |
|       | 2  | that, counsel.  I don't know what the answer is.          |
| 08:31 | 3  | Jose *(sic)* Ortiz.                                       |
| 08:31 | 4  | MS. CORRIGAN:  Further inquiry.                           |
| 08:31 | 5  | MS. HEINZ:  Further inquiry.                              |
| 08:31 | 6  | THE COURT:  Robert Hyder.                                 |
| 08:31 | 7  | MS. CORRIGAN:  Further inquiry.                           |
| 08:31 | 8  | MS. HEINZ:  Further inquiry.                              |
| 08:31 | 9  | THE COURT:  Nancy Hampton.                                |
| 08:31 | 10 | MS. CORRIGAN:  Stip for cause.                            |
| 08:31 | 11 | MS. HEINZ:  Stip for cause.                               |
| 08:31 | 12 | MR. LENGYEL-LEAHU:  Join.                                 |
| 08:31 | 13 | THE COURT:  Excused for cause.                            |
| 08:31 | 14 | Carmen Floresarroyo.                                      |
| 08:31 | 15 | MS. HEINZ:  Further inquiry.                              |
| 08:31 | 16 | MS. CORRIGAN:  Further inquiry.                           |
| 08:32 | 17 | THE COURT:  Richard Ramirez.                              |
| 08:32 | 18 | MS. HEINZ:  Further inquiry.                              |
| 08:32 | 19 | MS. CORRIGAN:  Further inquiry.                           |
| 08:32 | 20 | THE COURT:  Victor Sevilla.                               |
| 08:32 | 21 | MS. CORRIGAN:  This is one where the government           |
|       | 22 | would like further inquiry.                              |
| 08:32 | 23 | THE COURT:  Why?                                          |
| 08:32 | 24 | MS. HEINZ:  Because there is not, uh, sufficient          |
|       | 25 | information.                                             |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:32 | 1 | THE COURT:  Okay.  I'm going to do this, but I'm |
| | 2 | telling you, if you get an answer in front of the panel, I'm |
| | 3 | starting over again.  I want to be clear.  So you're going |
| | 4 | to be equally aware of me asking these questions right to |
| | 5 | begin with outside the presence of the jury.  I'm not going |
| | 6 | to take very long.  Then we'll keep him in.  Fair warning. |
| 08:33 | 7 | Waleed Nasr. |
| 08:33 | 8 | MS. CORRIGAN:  Further inquiry. |
| 08:33 | 9 | MS. HEINZ:  Further inquiry. |
| 08:33 | 10 | THE COURT:  Julia Salisbury. |
| 08:33 | 11 | MS. CORRIGAN:  Stip for cause. |
| 08:33 | 12 | MS. HEINZ:  Stip for cause. |
| 08:33 | 13 | MR. LENGYEL-LEAHU:  Join. |
| 08:33 | 14 | THE COURT:  Excused for cause. |
| 08:33 | 15 | Ricardo Gallegos. |
| 08:33 | 16 | MS. CORRIGAN:  We have Daisy Garcia. |
| 08:33 | 17 | MS. HEINZ:  Number 59. |
| 08:33 | 18 | MR. LENGYEL-LEAHU:  68. |
| 08:33 | 19 | THE COURT:  I apologize.  Daisy Garcia. |
| 08:33 | 20 | MS. CORRIGAN:  Stip for cause. |
| 08:33 | 21 | MS. HEINZ:  Stip for cause. |
| 08:33 | 22 | MR. LENGYEL-LEAHU:  I join.  I'm sorry. |
| 08:33 | 23 | THE COURT:  All right.  Thank you very much. |
| 08:33 | 24 | Excused for cause. |
| 08:33 | 25 | Ricardo Gallegos. |

24

| | | |
|---|---|---|
| 08:33 | 1 | MS. CORRIGAN:  This is another one where the |
| | 2 | government wants further inquiry. |
| 08:34 | 3 | MS. HEINZ:  Yes, further inquiry. |
| 08:34 | 4 | THE COURT:  Robert *(verbatim)* Macias. |
| 08:34 | 5 | MS. CORRIGAN:  Stip for cause. |
| 08:34 | 6 | MR. LENGYEL-LEAHU:  Join. |
| 08:34 | 7 | MS. ELIOT:  Government joins, Your Honor. |
| 08:34 | 8 | THE COURT:  All right.  Excused for cause. |
| 08:34 | 9 | Linda Buhlerstone. |
| 08:34 | 10 | MS. CORRIGAN:  Stip for cause. |
| 08:34 | 11 | MS. HEINZ:  Stip for cause. |
| 08:34 | 12 | MR. LENGYEL-LEAHU:  Join. |
| 08:34 | 13 | THE COURT:  Excused for cause. |
| 08:34 | 14 | Marina del Rosario Sanchez. |
| 08:34 | 15 | MS. CORRIGAN:  Further inquiry. |
| 08:34 | 16 | MS. HEINZ:  Further inquiry. |
| 08:35 | 17 | THE COURT:  Carlos Martindelcampo. |
| 08:35 | 18 | MS. CORRIGAN:  Stip for cause. |
| 08:35 | 19 | MS. HEINZ:  Stip for cause. |
| 08:35 | 20 | MR. LENGYEL-LEAHU:  Join. |
| 08:35 | 21 | THE COURT:  Excused for cause. |
| 08:35 | 22 | Robert Roy. |
| 08:35 | 23 | MS. CORRIGAN:  Further inquiry. |
| 08:35 | 24 | MS. HEINZ:  Further inquiry. |
| 08:35 | 25 | THE COURT:  Patricia Austria. |

| | | |
|---|---|---|
| 08:35 | 1 | MS. CORRIGAN:  Further inquiry regarding child |
| | 2 | care issues. |
| 08:35 | 3 | THE COURT:  Saeed Mortazavi. |
| 08:35 | 4 | MS. CORRIGAN:  Further inquiry. |
| 08:35 | 5 | THE COURT:  Rita Wisco. |
| 08:35 | 6 | MS. CORRIGAN:  Stip for cause. |
| 08:35 | 7 | MS. HEINZ:  Stip for cause. |
| 08:35 | 8 | MR. LENGYEL-LEAHU:  Join. |
| 08:35 | 9 | THE COURT:  Excused for cause. |
| 08:35 | 10 | Cheryl Warr. |
| 08:35 | 11 | MS. CORRIGAN:  Further inquiry. |
| 08:36 | 12 | MS. HEINZ:  Further inquiry. |
| 08:36 | 13 | THE COURT:  Allyson Hiers. |
| 08:36 | 14 | MS. CORRIGAN:  Further inquiry. |
| 08:36 | 15 | MS. HEINZ:  Further inquiry. |
| 08:36 | 16 | THE COURT:  Cam Lu. |
| 08:36 | 17 | MS. CORRIGAN:  Further inquiry. |
| 08:36 | 18 | MS. HEINZ:  Further inquiry. |
| 08:36 | 19 | MS. CORRIGAN:  Unclear as to whether she can -- |
| | 20 | understands English. |
| 08:36 | 21 | THE COURT:  Why? |
| 08:36 | 22 | MS. CORRIGAN:  I have her as a "no," but I think |
| | 23 | the government would like further inquiries, what my notes |
| | 24 | indicate. |
| 08:36 | 25 | THE COURT:  Why? |

| | | |
|---|---|---|
| 08:36 | 1 | MS. CORRIGAN:  She's the lady that, um -- |
| 08:36 | 2 | MS. HEINZ:  Wait a minute. |
| 08:36 | 3 | MS. CORRIGAN:  She consistently says she can't be |
| | 4 | fair, but you had concerns whether she understands English. |
| 08:36 | 5 | MS. HEINZ:  Yes.  Your Honor, to be sort of -- |
| 08:36 | 6 | THE COURT:  She can't be fair and can't understand |
| | 7 | English.  Counsel, we'll leave her in.  Thank you very much. |
| 08:36 | 8 | Kenneth Visser. |
| 08:36 | 9 | MS. CORRIGAN:  Further inquiry. |
| 08:36 | 10 | THE COURT:  Marisela Machorro Sandoval. |
| 08:37 | 11 | MS. HEINZ:  Further inquiry. |
| 08:37 | 12 | MS. CORRIGAN:  Yes.  Although that was one -- |
| 08:37 | 13 | THE COURT:  Why? |
| 08:37 | 14 | MS. CORRIGAN:  I think this is one where the |
| | 15 | defense and the government disagreed, but the government |
| | 16 | wanted further inquiry. |
| 08:37 | 17 | THE COURT:  Why? |
| 08:37 | 18 | MS. HEINZ:  Because although he's checking -- I |
| | 19 | think he -- she is checking the box "can't be fair."  When |
| | 20 | asked if there are strong feelings, she consistently says |
| | 21 | "no."  When asked what the feelings are, she says, "NA", and |
| | 22 | then she checks "can't be fair."  So to the government, |
| | 23 | there is a disconnect and a question about whether or not |
| | 24 | she is really answering that she can't be fair. |
| 08:38 | 25 | THE COURT:  All right. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

27

08:38    1           Now, let me help you both with the inquiry.  This

2    isn't going to be a lengthy inquiry about whether a person

3    can speak English or not.  I'm going to go right to the

4    heart of the question:  Are these answers true:  Did you

5    answer the following?  "Yes."  Excused.  You may not even be

6    asking any questions.

08:38    7           MS. HEINZ:  Understood, Your Honor, and that is

8    precisely what government would like.

08:38    9           THE COURT:  Thank you.

08:38   10           Raymond Rubio.

08:38   11           MS. HEINZ:  Further inquiry.

08:38   12           MS. CORRIGAN:  Further inquiry.

08:38   13           THE COURT:  Evelyn Lillie.

08:38   14           MS. CORRIGAN:  Stip for cause.

08:38   15           MS. HEINZ:  Stip for cause.

08:38   16           MR. LENGYEL-LEAHU:  Join.

08:38   17           THE COURT:  Excused for cause.

08:38   18           Nicholas Stallings.

08:38   19           MS. CORRIGAN:  Further inquiry.

08:38   20           MS. HEINZ:  Further inquiry.

08:38   21           THE COURT:  Elizabeth Kappes.

08:39   22           MS. CORRIGAN:  Stip for cause.

08:39   23           MS. HEINZ:  Stip for cause.

08:39   24           MR. LENGYEL-LEAHU:  Join.

08:39   25           THE COURT:  Excused for cause.

| | | |
|---|---|---|
| 08:39 | 1 | Louise Sherikar. |
| 08:39 | 2 | MS. CORRIGAN:  Further inquiry. |
| 08:39 | 3 | MS. HEINZ:  Further inquiry. |
| 08:39 | 4 | THE COURT:  Amanda Johnson. |
| 08:39 | 5 | MS. HEINZ:  Further inquiry. |
| 08:39 | 6 | MS. CORRIGAN:  Yes. |
| 08:39 | 7 | THE COURT:  Josif Sharfman. |
| 08:39 | 8 | MS. CORRIGAN:  Stip for cause. |
| 08:39 | 9 | MS. HEINZ:  Stip for cause. |
| 08:39 | 10 | MR. LENGYEL-LEAHU:  Join. |
| 08:39 | 11 | THE COURT:  Excused for cause. |
| 08:39 | 12 | Vito Ranieri. |
| 08:39 | 13 | MS. CORRIGAN:  Stip for cause. |
| 08:39 | 14 | MS. HEINZ:  Stip for cause. |
| 08:39 | 15 | MR. LENGYEL-LEAHU:  Join. |
| 08:39 | 16 | THE COURT:  Excused for cause. |
| 08:40 | 17 | Katherine Harrell. |
| 08:40 | 18 | MS. CORRIGAN:  This is further inquiry as to her |
| | 19 | schedule.  She's indicates she's a teacher with school |
| | 20 | ending June 23rd. |
| 08:41 | 21 | THE COURT:  Stephen Herrschaft. |
| 08:41 | 22 | MS. CORRIGAN:  Further inquiry. |
| 08:41 | 23 | THE COURT:  Darryl Soliz. |
| 08:41 | 24 | MS. CORRIGAN:  Stip for cause. |
| 08:41 | 25 | MS. HEINZ:  Stip for cause. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:41 | 1 | MR. LENGYEL-LEAHU:  Join. |
| 08:41 | 2 | THE COURT:  Excused for cause. |
| 08:41 | 3 | Joan Jefferies-Row. |
| 08:41 | 4 | MS. HEINZ:  Further inquiry. |
| 08:41 | 5 | MS. CORRIGAN:  Further inquiry. |
| 08:41 | 6 | THE COURT:  Esperanza Torres. |
| 08:41 | 7 | MS. CORRIGAN:  Stip for cause. |
| 08:41 | 8 | MS. HEINZ:  Stip for cause. |
| 08:41 | 9 | MR. LENGYEL-LEAHU:  Join. |
| 08:41 | 10 | THE COURT:  Excused for cause. |
| 08:41 | 11 | Gabrielle Martinov. |
| 08:41 | 12 | MS. CORRIGAN:  Stip for cause. |
| 08:41 | 13 | MS. HEINZ:  Stip for cause. |
| 08:41 | 14 | MR. LENGYEL-LEAHU:  Join. |
| 08:41 | 15 | THE COURT:  Excused for cause. |
| 08:41 | 16 | Kori Rieman. |
| 08:41 | 17 | MS. CORRIGAN:  Further inquiry. |
| 08:41 | 18 | MS. HEINZ:  Further inquiry. |
| 08:41 | 19 | THE COURT:  Antonio Castaneda. |
| 08:41 | 20 | MS. CORRIGAN:  Further inquiry. |
| 08:41 | 21 | MS. HEINZ:  Further inquiry. |
| 08:41 | 22 | THE COURT:  Why? |
| 08:41 | 23 | MS. CORRIGAN:  The government I think wanted |
| | 24 | further information on it.  It appeared, at least from my |
| | 25 | notes from a meeting yesterday, it's kind of a mixed bag on |

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | fairness and not enough information.  Is that correct?        |
| 08:41 | 2  |         MS. HEINZ:  Yes.  It's the same pattern where they    |
|       | 3  | express they have no strong feelings, where they say -- when  |
|       | 4  | asked about their feelings, they say "NA."                    |
| 08:42 | 5  |         THE COURT:  Question 31.  That's not true.  "Do       |
|       | 6  | you have strong feelings about opinions about Muslim Islamic  |
|       | 7  | faith?"  So they answered "Yes."  And they said, "They are    |
|       | 8  | smart."  Is that --                                           |
| 08:42 | 9  |         MS. HEINZ:  Yes, but "They are smart" does not        |
|       | 10 | indicate a lack of fairness.                                  |
| 08:42 | 11 |         THE COURT:  Okay.  I'll give you that opportunity,    |
|       | 12 | Counsel.                                                       |
| 08:42 | 13 |         Guadalupe Ortega.                                     |
| 08:42 | 14 |         MS. CORRIGAN:  Stip for cause.                        |
| 08:42 | 15 |         MS. HEINZ:  Stip for cause.                           |
| 08:42 | 16 |         MR. LENGYEL-LEAHU:  Join.                             |
| 08:42 | 17 |         THE COURT:  All right.  Excused for cause.            |
| 08:43 | 18 |         MS. CORRIGAN:  Your Honor, after we get past          |
|       | 19 | No. 100, we'll all join in a request for a break 'cause we    |
|       | 20 | need to have about a half an hour to have some discussions.   |
| 08:43 | 21 |         THE COURT:  Absolutely.  Sure.  All of you will       |
|       | 22 | guide me.                                                      |
| 08:44 | 23 |         Rosalie Iniguez.                                      |
| 08:44 | 24 |         MS. CORRIGAN:  Further inquiry.                       |
| 08:44 | 25 |         THE COURT:  Yesica Galvez.                            |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

31

08:44  1            MS. CORRIGAN:  At this point, we'd like to confer.

08:44  2            THE COURT:  Ivy Denton.

08:44  3            MS. CORRIGAN:  Same issue, Your Honor.  These --

08:44  4            THE COURT:  Should I just stop here?

08:44  5            MS. CORRIGAN:  If we could, that'd be great.

08:44  6            THE COURT:  It appears that I'm stopping, counsel.

       7   When would you like to meet?

08:44  8            MS. CORRIGAN:  I think 30 minutes would be fine.

       9   We've got a well-oiled machine.

08:44 10            THE COURT:  I know you do, in fact, my

      11   compliments.  I want to put that on the record, my

      12   compliments.  Thank you for getting it together this

      13   weekend.  It's saving you a lot of time.  How you spend your

      14   days and nights will be up to you.  Hopefully, we can get

      15   you out of here today.

08:44 16            You tell me.

08:44 17            9:15, 9:30?

08:44 18            MS. CORRIGAN:  That'd be great, 9:15.

08:44 19            MS. HEINZ:  9:15.

08:44 20            THE COURT:  We'll go through every one of them

      21   eventually.

08:45 22            I'll just call this last batch beginning with

      23   Rosalie, and it was -- again, I'm going to start off -- well

      24   strike that.

08:45 25            Rosalie Iniguez was -- you want further

Case 8:15-cr-00060-DOC Document 288 Filed 03/31/17 Page 32 of 146 Page ID #:3867
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

32

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | questioning.                                               |
| 08:45 | 2  | I'm going to start off with Yesica Galvez and ask          |
|       | 3  | what's your pleasure.                                      |
| 08:45 | 4  | MS. CORRIGAN: Thank you, Your Honor.                       |
| 08:45 | 5  | MS. HEINZ: Thank you, Your Honor.                          |
| 08:45 | 6  | THE COURT: Gentlemen, if you want to take the             |
|       | 7  | gentlemen back downstairs so they can rest.               |
| 08:45 | 8  | U.S. MARSHAL: Yes, Your Honor.                             |
| 08:45 | 9  | *(Recess held at 8:45 a.m.)*                               |
| 09:31 | 10 | *(Proceedings resumed at 9:31 a.m.)*                       |
| 09:31 | 11 | THE COURT: All right. We're back on record. All          |
|       | 12 | counsel are present. The parties are present.             |
| 09:31 | 13 | Yesica Galvez.                                             |
| 09:31 | 14 | MS. HEINZ: Stip for cause.                                 |
| 09:31 | 15 | MS. CORRIGAN: Yes, stip for cause.                        |
| 09:31 | 16 | MR. LENGYEL-LEAHU: Join.                                   |
| 09:31 | 17 | THE COURT: Excused for cause.                             |
| 09:31 | 18 | Ivy Denton.                                                |
| 09:31 | 19 | MS. CORRIGAN: Stip for cause.                             |
| 09:31 | 20 | MS. HEINZ: Stip for cause.                                 |
| 09:31 | 21 | MR. LENGYEL-LEAHU: Join.                                   |
| 09:31 | 22 | THE COURT: Excused for cause.                             |
| 09:31 | 23 | Cynthia Davis.                                             |
| 09:31 | 24 | MS. CORRIGAN: Further inquiry.                            |
| 09:31 | 25 | MS. HEINZ: Further inquiry.                               |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

33

| | | |
|---|---|---|
| 09:31 | 1 | THE COURT:  Dawn Ustick. |
| 09:31 | 2 | MS. CORRIGAN:  Further inquiry. |
| 09:31 | 3 | MS. HEINZ:  Further inquiry. |
| 09:31 | 4 | THE COURT:  Luong Tran. |
| 09:31 | 5 | MS. CORRIGAN:  Stip for cause. |
| 09:31 | 6 | MS. HEINZ:  Stip for cause. |
| 09:31 | 7 | MR. LENGYEL-LEAHU:  Join. |
| 09:31 | 8 | THE COURT:  Excused for cause. |
| 09:31 | 9 | Brian Moya. |
| 09:31 | 10 | MS. CORRIGAN:  Further inquiry. |
| 09:31 | 11 | MS. HEINZ:  Further inquiry. |
| 09:31 | 12 | THE COURT:  Thomas Cook. |
| 09:31 | 13 | MS. CORRIGAN:  Further inquiry. |
| 09:31 | 14 | MS. HEINZ:  Further inquiry. |
| 09:31 | 15 | THE COURT:  Lisa Mora. |
| 09:31 | 16 | MS. CORRIGAN:  Further inquiry. |
| 09:32 | 17 | MS. HEINZ:  Further inquiry. |
| 09:32 | 18 | THE COURT:  Shannon Swanson. |
| 09:32 | 19 | MS. CORRIGAN:  Further inquiry. |
| 09:32 | 20 | MS. HEINZ:  Further inquiry. |
| 09:32 | 21 | THE COURT:  Brenda Williams. |
| 09:32 | 22 | MS. CORRIGAN:  Stip for cause. |
| 09:32 | 23 | MS. HEINZ:  Stip for cause. |
| 09:32 | 24 | MR. LENGYEL-LEAHU:  Join. |
| 09:32 | 25 | THE COURT:  Excused for cause. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

34

| | | |
|---|---|---|
| 09:32 | 1 | Jonathan Suter. |
| 09:32 | 2 | MS. CORRIGAN:  Stip for cause. |
| 09:32 | 3 | MS. HEINZ:  Stip for cause. |
| 09:32 | 4 | MR. LENGYEL-LEAHU:  Join. |
| 09:32 | 5 | THE COURT:  Is this because of page 13? |
| 09:32 | 6 | MS. CORRIGAN:  On Suter, Your Honor, it would be |
| | 7 | his mother's having surgery. |
| 09:32 | 8 | THE COURT:  Not page 13. |
| 09:32 | 9 | MS. CORRIGAN:  Yes. |
| 09:32 | 10 | MS. HEINZ:  Yes. |
| 09:32 | 11 | THE COURT:  Okay.  Excused for cause. |
| 09:32 | 12 | Jimmy Trinh. |
| 09:32 | 13 | MS. CORRIGAN:  Stip for cause. |
| 09:32 | 14 | MS. HEINZ:  Stip for cause. |
| 09:32 | 15 | MR. LENGYEL-LEAHU:  Join. |
| 09:32 | 16 | THE COURT:  Excused for cause. |
| 09:32 | 17 | Paul Blackwell. |
| 09:32 | 18 | MS. CORRIGAN:  Further inquiry. |
| 09:32 | 19 | MS. HEINZ:  Further inquiry. |
| 09:32 | 20 | THE COURT:  Brenda Powers. |
| 09:32 | 21 | MS. CORRIGAN:  Further inquiry. |
| 09:32 | 22 | MS. HEINZ:  Further inquiry. |
| 09:32 | 23 | THE COURT:  Marjorie Camarillo. |
| 09:32 | 24 | MS. CORRIGAN:  Further inquiry. |
| 09:32 | 25 | MS. HEINZ:  Further inquiry. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:33 | 1 | THE COURT: Zulaikha Brosdal. |
| 09:33 | 2 | MS. CORRIGAN: Further inquiry. |
| 09:33 | 3 | MS. HEINZ: Further inquiry. |
| 09:33 | 4 | THE COURT: Elvia Mejia, M-E-J-I-A. |
| 09:34 | 5 | MS. CORRIGAN: Stip for cause. |
| 09:34 | 6 | MS. HEINZ: Stip for cause. |
| 09:34 | 7 | MR. LENGYEL-LEAHU: Join. |
| 09:34 | 8 | THE COURT: Excused for cause. |
| 09:34 | 9 | Richard Maciel. |
| 09:34 | 10 | MS. CORRIGAN: Stip for cause. |
| 09:34 | 11 | MS. HEINZ: Stip for cause. |
| 09:34 | 12 | MR. LENGYEL-LEAHU: Join. |
| 09:34 | 13 | THE COURT: Excused for cause. |
| 09:34 | 14 | Truc Tran. |
| 09:34 | 15 | MS. CORRIGAN: Stip for cause. |
| 09:34 | 16 | MS. HEINZ: Stip for cause. |
| 09:35 | 17 | MR. LENGYEL-LEAHU: Join. |
| 09:35 | 18 | THE COURT: Excused for cause. |
| 09:35 | 19 | I think we're gonna have quite a run here. |
| 09:35 | 20 | Benjamin Canfield. |
| 09:35 | 21 | MS. CORRIGAN: Further inquiry. |
| 09:35 | 22 | MS. HEINZ: Further inquiry. |
| 09:35 | 23 | THE COURT: Matthew Mirmak. |
| 09:35 | 24 | MS. CORRIGAN: Further inquiry. |
| 09:35 | 25 | MS. HEINZ: Further inquiry. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

36

| | | |
|---|---|---|
| 09:35 | 1 | THE COURT: Baldev Jhita. |
| 09:35 | 2 | MS. CORRIGAN: Further inquiry. |
| 09:35 | 3 | MS. HEINZ: Further inquiry. |
| 09:35 | 4 | THE COURT: Dangying Chizkov. |
| 09:35 | 5 | MS. CORRIGAN: Stip for cause. |
| 09:35 | 6 | MS. HEINZ: Stip for cause. |
| 09:35 | 7 | MR. LENGYEL-LEAHU: Join. |
| 09:35 | 8 | THE COURT: Excused for cause. |
| 09:35 | 9 | Candie Lopez. |
| 09:35 | 10 | MS. CORRIGAN: Stip for cause. |
| 09:35 | 11 | MS. HEINZ: Stip for cause. |
| 09:35 | 12 | MR. LENGYEL-LEAHU: Join. |
| 09:35 | 13 | THE COURT: Excused for cause. |
| 09:35 | 14 | William Steck. |
| 09:35 | 15 | MS. CORRIGAN: Further inquiry. |
| 09:35 | 16 | MS. HEINZ: Further inquiry. |
| 09:35 | 17 | THE COURT: Steve Ziskin. |
| 09:35 | 18 | MS. CORRIGAN: Further inquiry. |
| 09:35 | 19 | MS. HEINZ: Further inquiry. |
| 09:35 | 20 | THE COURT: Counsel, I'll get the next batch. |
| 09:36 | 21 | Jacqueline McQuade. |
| 09:36 | 22 | MS. CORRIGAN: Stip for cause. |
| 09:36 | 23 | MS. HEINZ: Stip for cause. |
| 09:36 | 24 | MR. LENGYEL-LEAHU: Join. |
| 09:36 | 25 | THE COURT: Excused for cause. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

37

| | | |
|---|---|---|
| 09:36 | 1 | Sean Pham. |
| 09:37 | 2 | MS. CORRIGAN:  Further inquiry. |
| 09:37 | 3 | MS. HEINZ:  Further inquiry. |
| 09:37 | 4 | THE COURT:  Bertha Green? |
| 09:37 | 5 | MS. CORRIGAN:  Stip for cause. |
| 09:37 | 6 | MS. HEINZ:  Stip for cause. |
| 09:37 | 7 | MR. LENGYEL-LEAHU:  Join. |
| 09:37 | 8 | THE COURT:  Excused for cause. |
| 09:37 | 9 | Christina Cox *(sic)*. |
| 09:37 | 10 | MS. CORRIGAN:  Further inquiry. |
| 09:37 | 11 | MS. HEINZ:  Further inquiry. |
| 09:37 | 12 | THE COURT:  Walter Rountree. |
| 09:37 | 13 | MS. CORRIGAN:  Stip for cause. |
| 09:37 | 14 | MS. HEINZ:  Stip for cause. |
| 09:37 | 15 | MR. LENGYEL-LEAHU:  Join. |
| 09:37 | 16 | THE COURT:  Excused for cause. |
| 09:37 | 17 | Lawrence Cohen. |
| 09:37 | 18 | MS. CORRIGAN:  Further inquiry. |
| 09:37 | 19 | MS. HEINZ:  Further inquiry. |
| 09:37 | 20 | THE COURT:  Sheridan Posadas. |
| 09:37 | 21 | MS. CORRIGAN:  Stip for cause. |
| 09:37 | 22 | MS. HEINZ:  Stip for cause. |
| 09:37 | 23 | MR. LENGYEL-LEAHU:  Join. |
| 09:37 | 24 | THE COURT:  Excused for cause. |
| 09:37 | 25 | Alaa Abdallah. |

| | | |
|---|---|---|
| 09:37 | 1 | MS. CORRIGAN:  Further inquiry. |
| 09:37 | 2 | MS. HEINZ:  Further inquiry. |
| 09:37 | 3 | THE COURT:  Desiderio Hernandez. |
| 09:37 | 4 | MS. CORRIGAN:  Further inquiry. |
| 09:38 | 5 | MS. HEINZ:  Further inquiry. |
| 09:38 | 6 | THE COURT:  Melissa Lander. |
| 09:38 | 7 | MS. CORRIGAN:  Stip for cause. |
| 09:38 | 8 | MS. HEINZ:  Stip for cause. |
| 09:38 | 9 | MR. LENGYEL-LEAHU:  Join. |
| 09:38 | 10 | THE COURT:  Excused for cause. |
| 09:38 | 11 | Michael McNamara. |
| 09:38 | 12 | MS. CORRIGAN:  Stip for cause. |
| 09:38 | 13 | MS. HEINZ:  Stip for cause. |
| 09:38 | 14 | MR. LENGYEL-LEAHU:  Join. |
| 09:38 | 15 | THE COURT:  Excused for cause. |
| 09:38 | 16 | Alexa Malasavage. |
| 09:38 | 17 | MS. CORRIGAN:  Stip for cause. |
| 09:38 | 18 | MS. HEINZ:  Stip for cause. |
| 09:38 | 19 | MR. LENGYEL-LEAHU:  Join. |
| 09:38 | 20 | THE COURT:  Excused for cause. |
| 09:38 | 21 | Kenneth Schutte. |
| 09:38 | 22 | MS. CORRIGAN:  Further information. |
| 09:38 | 23 | MS. HEINZ:  Further inquiry. |
| 09:38 | 24 | THE COURT:  Jay Moffett. |
| 09:38 | 25 | MS. CORRIGAN:  Further inquiry. |

| | | |
|---|---|---|
| 09:39 | 1 | MS. HEINZ:  Further inquiry. |
| 09:39 | 2 | THE COURT:  Roberto Sanchez. |
| 09:39 | 3 | MS. CORRIGAN:  Stip for cause. |
| 09:39 | 4 | MS. HEINZ:  Stip for cause. |
| 09:39 | 5 | MR. LENGYEL-LEAHU:  Join. |
| 09:39 | 6 | THE COURT:  Excused for cause. |
| 09:39 | 7 | Osvanna Magdesyan. |
| 09:39 | 8 | MS. CORRIGAN:  Stip for cause. |
| 09:39 | 9 | MS. HEINZ:  Stip for cause. |
| 09:39 | 10 | MR. LENGYEL-LEAHU:  Join. |
| 09:39 | 11 | THE COURT:  Excused for cause. |
| 09:39 | 12 | Alexandra Kreisberg. |
| 09:39 | 13 | MS. CORRIGAN:  Further inquiry. |
| 09:39 | 14 | MS. HEINZ:  Further inquiry. |
| 09:39 | 15 | THE COURT:  Lynn Tommie Kozlov. |
| 09:39 | 16 | MS. CORRIGAN:  Stip for cause. |
| 09:39 | 17 | MS. HEINZ:  Stip for cause. |
| 09:39 | 18 | MR. LENGYEL-LEAHU:  Join. |
| 09:39 | 19 | THE COURT:  Excused for cause. |
| 09:39 | 20 | Nancy O'Neill. |
| 09:39 | 21 | MS. CORRIGAN:  Further inquiry. |
| 09:39 | 22 | MS. HEINZ:  Further inquiry. |
| 09:39 | 23 | THE COURT:  Josue Estrada. |
| 09:39 | 24 | MS. CORRIGAN:  Further inquiry. |
| 09:39 | 25 | MS. HEINZ:  Further inquiry. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

40

| | | |
|---|---|---|
| 09:39 | 1 | THE COURT:  Victoria Salas. |
| 09:39 | 2 | MS. HEINZ:  Further inquiry. |
| 09:39 | 3 | MS. CORRIGAN:  Further inquiry. |
| 09:39 | 4 | THE COURT:  Mahmoud Ghafouri. |
| 09:39 | 5 | MS. CORRIGAN:  Further inquiry. |
| 09:39 | 6 | MS. HEINZ:  Further inquiry. |
| 09:39 | 7 | THE COURT:  Jorge Salgado. |
| 09:39 | 8 | MS. CORRIGAN:  Stip for cause. |
| 09:39 | 9 | MS. HEINZ:  Stip for cause. |
| 09:40 | 10 | MR. LENGYEL-LEAHU:  Join. |
| 09:40 | 11 | THE COURT:  Excused for cause. |
| 09:40 | 12 | Andri Belmont. |
| 09:40 | 13 | MS. CORRIGAN:  Further inquiry. |
| 09:40 | 14 | MS. HEINZ:  Further inquiry. |
| 09:40 | 15 | THE COURT:  Jose Ramirez. |
| 09:40 | 16 | MS. CORRIGAN:  Stip for cause. |
| 09:40 | 17 | MS. HEINZ:  Stip for cause. |
| 09:40 | 18 | MR. LENGYEL-LEAHU:  Join. |
| 09:40 | 19 | THE COURT:  Excused for cause. |
| 09:40 | 20 | Rachel Cueva. |
| 09:40 | 21 | MS. CORRIGAN:  Further inquiry. |
| 09:40 | 22 | MS. HEINZ:  Further inquiry. |
| 09:40 | 23 | THE COURT:  Rebecca Quevedoprastein. |
| 09:40 | 24 | MS. CORRIGAN:  Further inquiry. |
| 09:40 | 25 | MS. HEINZ:  Further inquiry. |

| | | |
|---|---|---|
| 09:40 | 1 | THE COURT:  Laura Giannetti-Mercer. |
| 09:40 | 2 | MS. CORRIGAN:  Further inquiry. |
| 09:40 | 3 | MS. HEINZ:  Further inquiry. |
| 09:40 | 4 | THE COURT:  David Sandvig. |
| 09:40 | 5 | MS. CORRIGAN:  Stip for cause. |
| 09:40 | 6 | MS. HEINZ:  Stip for cause. |
| 09:40 | 7 | MR. LENGYEL-LEAHU:  Join. |
| 09:40 | 8 | THE COURT:  Excused for cause. |
| 09:40 | 9 | Stephaniejean Hinojosa. |
| 09:40 | 10 | MS. CORRIGAN:  Stip for cause. |
| 09:40 | 11 | MS. HEINZ:  Stip for cause. |
| 09:40 | 12 | MR. LENGYEL-LEAHU:  Join. |
| 09:40 | 13 | THE COURT:  Excused for cause. |
| 09:40 | 14 | Chad Shade. |
| 09:40 | 15 | MS. CORRIGAN:  Stip for cause. |
| 09:40 | 16 | MS. HEINZ:  Stip for cause. |
| 09:40 | 17 | MR. LENGYEL-LEAHU:  Join. |
| 09:40 | 18 | THE COURT:  Excused for cause. |
| 09:40 | 19 | Tom Ditter. |
| 09:40 | 20 | MS. CORRIGAN:  Further inquiry. |
| 09:40 | 21 | MS. HEINZ:  Further inquiry. |
| 09:40 | 22 | THE COURT:  David Mayfield. |
| 09:40 | 23 | MS. CORRIGAN:  Stip for cause. |
| 09:41 | 24 | MS. HEINZ:  Stip for cause. |
| 09:41 | 25 | MR. LENGYEL-LEAHU:  Join. |

8:15-CR-0060-DOC – 6/6/2016 – Pretrial Proceedings

| | | |
|---|---|---|
| 09:41 | 1 | THE COURT:  Excused for cause. |
| 09:41 | 2 | Michael Gerard Gibbs. |
| 09:41 | 3 | MS. CORRIGAN:  This is a further inquiry. |
| 09:41 | 4 | MS. HEINZ:  Further inquiry. |
| 09:41 | 5 | THE COURT:  Alexis Bicomong. |
| 09:41 | 6 | MS. HEINZ:  Further inquiry. |
| 09:41 | 7 | MS. CORRIGAN:  Further inquiry. |
| 09:41 | 8 | THE COURT:  And Ross Krewenka. |
| 09:41 | 9 | MS. CORRIGAN:  Further inquiry. |
| 09:41 | 10 | MS. HEINZ:  Further inquiry. |
| 09:42 | 11 | THE COURT:  Tien Le. |
| 09:42 | 12 | MS. CORRIGAN:  Further inquiry. |
| 09:42 | 13 | MS. HEINZ:  Further inquiry. |
| 09:42 | 14 | THE COURT:  Noe Anaya. |
| 09:42 | 15 | MS. CORRIGAN:  Further inquiry. |
| 09:42 | 16 | MS. HEINZ:  Further inquiry. |
| 09:42 | 17 | THE COURT:  Maria Demateo. |
| 09:42 | 18 | MS. CORRIGAN:  Stip for cause. |
| 09:42 | 19 | MS. HEINZ:  Stip for cause. |
| 09:42 | 20 | MR. LENGYEL-LEAHU:  Join. |
| 09:42 | 21 | THE COURT:  Excused for cause. |
| 09:42 | 22 | John Strapp. |
| 09:42 | 23 | MS. CORRIGAN:  Stip for cause. |
| 09:42 | 24 | MS. HEINZ:  Stip for cause. |
| 09:42 | 25 | MR. LENGYEL-LEAHU:  Join. |

| | | |
|---|---|---|
| 09:42 | 1 | THE COURT: Excused for cause. |
| 09:42 | 2 | Colleen Marubayashi. |
| 09:43 | 3 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 4 | MS. HEINZ: Further inquiry. |
| 09:43 | 5 | THE COURT: Dana Bowdle. |
| 09:43 | 6 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 7 | MS. HEINZ: Further inquiry. |
| 09:43 | 8 | THE COURT: Marcus Molina. |
| 09:43 | 9 | MS. CORRIGAN: Stip for cause. |
| 09:43 | 10 | MS. HEINZ: Stip for cause. |
| 09:43 | 11 | MR. LENGYEL-LEAHU: Join. |
| 09:43 | 12 | THE COURT: Excused for cause. |
| 09:43 | 13 | Kim Davis. |
| 09:43 | 14 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 15 | MS. HEINZ: Further inquiry. |
| 09:43 | 16 | THE COURT: Roger Lopez. |
| 09:43 | 17 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 18 | MS. HEINZ: Further inquiry. |
| 09:43 | 19 | THE COURT: Vivian Tang. |
| 09:43 | 20 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 21 | MS. HEINZ: Further inquiry. |
| 09:43 | 22 | THE COURT: Candice Johnson. |
| 09:43 | 23 | MS. CORRIGAN: Further inquiry. |
| 09:43 | 24 | MS. HEINZ: Further inquiry. |
| 09:43 | 25 | THE COURT: Olga Carranza. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

44

```
09:43   1              MS. CORRIGAN:  Stip for cause.

09:43   2              MS. HEINZ:  Stip for cause.

09:43   3              MS. CORRIGAN:  Join.

09:43   4              THE COURT:  Excused for cause.

09:43   5              Judy Eastman.

09:43   6              MS. CORRIGAN:  Further inquiry.

09:43   7              MS. HEINZ:  Further inquiry.

09:43   8              THE COURT:  Vanessa Dominguez.

09:43   9              MS. CORRIGAN:  Stip for cause.

09:43  10              MS. HEINZ:  Stip for cause.

09:43  11              MR. LENGYEL-LEAHU:  Join.

09:43  12              THE COURT:  Excused for cause.

09:43  13              Jill Schwab.

09:43  14              MS. CORRIGAN:  Further inquiry.

09:43  15              MS. HEINZ:  Further inquiry.

09:43  16              THE COURT:  Todd Stitt.

09:43  17              MS. CORRIGAN:  Further inquiry.

09:43  18              MS. HEINZ:  Further inquiry.

09:43  19              THE COURT:  Scott Tinker.

09:44  20              MS. CORRIGAN:  Further inquiry.

09:44  21              MS. HEINZ:  Further inquiry.

09:44  22              THE COURT:  Diana Wolverton.

09:44  23              MS. CORRIGAN:  Stip for cause.

09:44  24              MS. HEINZ:  Stip for cause.

09:44  25              MR. LENGYEL-LEAHU:  Join.
```

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:44 | 1 | THE COURT:  Excused for cause. |
| 09:44 | 2 | Khanh Bui. |
| 09:44 | 3 | MS. CORRIGAN:  Further inquiry. |
| 09:44 | 4 | MS. HEINZ:  Further inquiry. |
| 09:44 | 5 | THE COURT:  Is that because on page 10 the answer |
| | 6 | is "yes" and page 11, 36, "no"? |
| 09:44 | 7 | MS. CORRIGAN:  This one has some mixed answers. |
| 09:44 | 8 | THE COURT:  Has mixed answers? |
| 09:44 | 9 | MS. CORRIGAN:  Yeah. |
| 09:44 | 10 | THE COURT:  Ariana Barnaba. |
| 09:44 | 11 | MS. CORRIGAN:  Further inquiry. |
| 09:44 | 12 | MS. HEINZ:  Further inquiry. |
| 09:44 | 13 | THE COURT:  Ethan Ponce. |
| 09:44 | 14 | MS. CORRIGAN:  Further inquiry. |
| 09:44 | 15 | MS. HEINZ:  Further inquiry. |
| 09:45 | 16 | THE COURT:  Why? |
| 09:45 | 17 | MS. CORRIGAN:  On Ethan Ponce, I believe that the |
| | 18 | government wants further inquiry -- or maybe -- did we all |
| | 19 | agree on that? |
| 09:45 | 20 | MS. HEINZ:  No, I believe the defense wanted -- |
| 09:45 | 21 | MS. CORRIGAN:  That's right.  This is one the |
| | 22 | defense -- or at least from my perspective -- I don't know |
| | 23 | about co-defendant's counsel -- I want to ask some -- have |
| | 24 | further inquiry on him.  But I could maybe look at his -- |
| 09:45 | 25 | THE COURT:  I'm not second-guessing either one of |

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | you.  I'm giving you the latitude, but on this one -- can't |
|       | 2  | be fair as far as Question 33's concerned, can't evaluate |
|       | 3  | fairness, Question 36 is concerned *(verbatim)*.  Maybe it's |
|       | 4  | the fact that Question 31 has no opinions about the Muslim |
|       | 5  | faith.  I'll pay you the same courtesy I'm giving the   |
|       | 6  | government.  You can inquire.                           |
| 09:45 | 7  | MS. CORRIGAN:  Thank you.                               |
| 09:45 | 8  | THE COURT:  Maria Bernalcordon.                         |
| 09:45 | 9  | MS. CORRIGAN:  Stip for cause.                          |
| 09:45 | 10 | MS. HEINZ:  Stip for cause.                             |
| 09:45 | 11 | MR. LENGYEL-LEAHU:  Join.                               |
| 09:45 | 12 | THE COURT:  Excused for cause.                          |
| 09:45 | 13 | Sharon Miller.                                          |
| 09:45 | 14 | MS. CORRIGAN:  Further inquiry.                         |
| 09:45 | 15 | MS. HEINZ:  Further inquiry.                            |
| 09:45 | 16 | THE COURT:  Kenny Jung.                                 |
| 09:45 | 17 | MS. CORRIGAN:  Further inquiry.                         |
| 09:45 | 18 | MS. HEINZ:  Further inquiry.                            |
| 09:45 | 19 | THE COURT:  So I have inconsistent answers in          |
|       | 20 | 33 and 36.                                              |
| 09:46 | 21 | MS. CORRIGAN:  Correct.                                 |
| 09:46 | 22 | THE COURT:  Benicia Watkins.                            |
| 09:46 | 23 | MS. CORRIGAN:  Further inquiry.                         |
| 09:46 | 24 | MS. HEINZ:  Further inquiry.                            |
| 09:46 | 25 | THE COURT:  Teresa Fuerte.                              |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:46 | 1 | MS. CORRIGAN:  Stip for cause. |
| 09:46 | 2 | MS. HEINZ:  Stip for cause. |
| 09:46 | 3 | MR. LENGYEL-LEAHU:  Join. |
| 09:46 | 4 | THE COURT:  Excused for cause. |
| 09:46 | 5 | Adam Reyes. |
| 09:46 | 6 | MS. CORRIGAN:  Stip for cause. |
| 09:46 | 7 | MS. HEINZ:  Stip for cause. |
| 09:46 | 8 | MR. LENGYEL-LEAHU:  Join. |
| 09:46 | 9 | THE COURT:  Excused for cause. |
| 09:46 | 10 | Liza Pacheco. |
| 09:46 | 11 | MS. CORRIGAN:  Pacheco? |
| 09:46 | 12 | THE COURT:  Pacheco. |
| 09:46 | 13 | MS. CORRIGAN:  Stip for cause. |
| 09:46 | 14 | MS. HEINZ:  Stip for cause. |
| 09:46 | 15 | MR. LENGYEL-LEAHU:  Join. |
| 09:46 | 16 | THE COURT:  Excused for cause. |
| 09:46 | 17 | Alicia Mamer. |
| 09:46 | 18 | MS. CORRIGAN:  Stip for cause. |
| 09:46 | 19 | MS. HEINZ:  Stip for cause. |
| 09:46 | 20 | MR. LENGYEL-LEAHU:  Join. |
| 09:46 | 21 | THE COURT:  Excused for cause. |
| 09:46 | 22 | Sarali Chin-Moo. |
| 09:46 | 23 | MS. CORRIGAN:  Further inquiry. |
| 09:46 | 24 | MS. HEINZ:  Further inquiry. |
| 09:46 | 25 | Anthony Bonilla. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

48

| | | |
|---|---|---|
| 09:46 | 1 | MS. CORRIGAN:  Further inquiry. |
| 09:46 | 2 | MS. HEINZ:  Further inquiry. |
| 09:46 | 3 | THE COURT:  Fredrick De Pontee. |
| 09:46 | 4 | MS. CORRIGAN:  Further inquiry. |
| 09:46 | 5 | MS. HEINZ:  Further inquiry. |
| 09:46 | 6 | THE COURT:  Magdalena Avila. |
| 09:47 | 7 | MS. CORRIGAN:  Stip for cause. |
| 09:47 | 8 | MS. HEINZ:  Stip for cause. |
| 09:47 | 9 | MR. LENGYEL-LEAHU:  Join. |
| 09:47 | 10 | THE COURT:  Excused for cause. |
| 09:47 | 11 | Matthew Vandercook. |
| 09:47 | 12 | MS. CORRIGAN:  Further inquiry. |
| 09:47 | 13 | MS. HEINZ:  Further inquiry. |
| 09:47 | 14 | THE COURT:  Francisco Raymundo. |
| 09:47 | 15 | MS. CORRIGAN:  Stip for cause. |
| 09:47 | 16 | MS. HEINZ:  Stip for cause. |
| 09:47 | 17 | MR. LENGYEL-LEAHU:  Join. |
| 09:47 | 18 | THE COURT:  Excused. |
| 09:47 | 19 | Now, just a moment. |
| 09:48 | 20 | Robert Hayes. |
| 09:48 | 21 | MS. CORRIGAN:  Further inquiry. |
| 09:48 | 22 | MS. HEINZ:  Further inquiry. |
| 09:48 | 23 | THE COURT:  Javier Marcial. |
| 09:48 | 24 | MS. CORRIGAN:  Further inquiry. |
| 09:48 | 25 | MS. HEINZ:  Further inquiry. |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

49

| | | |
|---|---|---|
| 09:48 | 1 | THE COURT:  Benjamin McDaniel. |
| 09:48 | 2 | MS. CORRIGAN:  Further inquiry. |
| 09:48 | 3 | MS. HEINZ:  Further inquiry. |
| 09:48 | 4 | THE COURT:  John Kincaid. |
| 09:48 | 5 | MS. CORRIGAN:  Stip for cause. |
| 09:48 | 6 | MS. HEINZ:  Stip for cause. |
| 09:48 | 7 | MR. LENGYEL-LEAHU:  Join. |
| 09:48 | 8 | THE COURT:  Excused for cause. |
| 09:48 | 9 | Lori Pangborn. |
| 09:48 | 10 | MS. CORRIGAN:  Further inquiry. |
| 09:48 | 11 | MS. HEINZ:  Further inquiry. |
| 09:48 | 12 | THE COURT:  Lisa Cavallaro. |
| 09:48 | 13 | MS. CORRIGAN:  Stip for cause. |
| 09:48 | 14 | MS. HEINZ:  Stip for cause. |
| 09:48 | 15 | MR. LENGYEL-LEAHU:  Join. |
| 09:48 | 16 | THE COURT:  Excused for cause. |
| 09:49 | 17 | Richard Magana. |
| 09:49 | 18 | MS. CORRIGAN:  Further inquiry. |
| 09:49 | 19 | MS. HEINZ:  Further inquiry. |
| 09:49 | 20 | MS. CORRIGAN:  There's mixed bag of answers. |
| 09:49 | 21 | THE COURT:  David Sibrel. |
| 09:49 | 22 | MS. CORRIGAN:  Stip for cause. |
| 09:49 | 23 | MS. HEINZ:  Stip for cause. |
| 09:49 | 24 | MR. LENGYEL-LEAHU:  Join. |
| 09:49 | 25 | THE COURT:  Excused for cause. |

| | | |
|---|---|---|
| 09:49 | 1 | Cassidy Littleton. |
| 09:49 | 2 | MS. CORRIGAN:  Further inquiry. |
| 09:49 | 3 | MS. HEINZ:  Further inquiry. |
| 09:49 | 4 | THE COURT:  Thomas Waldron. |
| 09:49 | 5 | MS. CORRIGAN:  Stip for cause. |
| 09:49 | 6 | MS. HEINZ:  Stip for cause. |
| 09:49 | 7 | MR. LENGYEL-LEAHU:  Join. |
| 09:49 | 8 | THE COURT:  Excused for cause. |
| 09:49 | 9 | Christian Gonzalez. |
| 09:49 | 10 | MS. CORRIGAN:  Stip for cause. |
| 09:49 | 11 | MS. HEINZ:  Stip for cause. |
| 09:49 | 12 | MR. LENGYEL-LEAHU:  Join. |
| 09:49 | 13 | THE COURT:  Excuse for cause. |
| 09:49 | 14 | Jacob Lee. |
| 09:49 | 15 | MS. CORRIGAN:  Stip for cause. |
| 09:49 | 16 | MS. HEINZ:  Stip for cause. |
| 09:49 | 17 | MR. LENGYEL-LEAHU:  Join. |
| 09:49 | 18 | THE COURT:  Excused for cause. |
| 09:49 | 19 | Trevor Kennedy. |
| 09:49 | 20 | MS. CORRIGAN:  Further inquiry. |
| 09:49 | 21 | MS. HEINZ:  Further inquiry. |
| 09:49 | 22 | THE COURT:  Chad Lucas. |
| 09:49 | 23 | MS. CORRIGAN:  Further inquiry. |
| 09:49 | 24 | MS. HEINZ:  Further inquiry. |
| 09:49 | 25 | MS. CORRIGAN:  This is one I think the government |

|       |    |                                              |
|-------|----|----------------------------------------------|
|       | 1  | wants further inquiry on.                    |
| 09:50 | 2  | THE COURT:  Stephanie Lum.                   |
| 09:50 | 3  | MS. CORRIGAN:  Further inquiry.              |
| 09:50 | 4  | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 5  | THE COURT:  Angela Jarman.                   |
| 09:50 | 6  | MS. CORRIGAN:  Further inquiry.              |
| 09:50 | 7  | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 8  | THE COURT:  Dustin Tran.                     |
| 09:50 | 9  | MS. CORRIGAN:  Further inquiry.              |
| 09:50 | 10 | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 11 | THE COURT:  Craig Pugh.                      |
| 09:50 | 12 | MS. CORRIGAN:  Further inquiry.              |
| 09:50 | 13 | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 14 | THE COURT:  Alejandro Lopez.                 |
| 09:50 | 15 | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 16 | MS. CORRIGAN:  Yes.                          |
| 09:50 | 17 | THE COURT:  Terry Brewer.                    |
| 09:50 | 18 | MS. CORRIGAN:  Stip for cause.               |
| 09:50 | 19 | MS. HEINZ:  Stip for cause.                  |
| 09:50 | 20 | MR. LENGYEL-LEAHU:  Join.                    |
| 09:50 | 21 | THE COURT:  Excused for cause.               |
| 09:50 | 22 | Kathleen Gutierrez.                          |
| 09:50 | 23 | MS. CORRIGAN:  Further inquiry.              |
| 09:50 | 24 | MS. HEINZ:  Further inquiry.                 |
| 09:50 | 25 | THE COURT:  Maria De la Cueva.               |

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 52 of 146   Page ID #:3887
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

52

| | | |
|---|---|---|
| 09:50 | 1 | MS. CORRIGAN:  Further inquiry. |
| 09:50 | 2 | MS. HEINZ:  Further inquiry. |
| 09:50 | 3 | THE COURT:  William Clark. |
| 09:50 | 4 | MS. HEINZ:  Further inquiry. |
| 09:50 | 5 | MS. CORRIGAN:  Correct. |
| 09:50 | 6 | THE COURT:  Diana Perez. |
| 09:51 | 7 | MS. CORRIGAN:  Stip for cause. |
| 09:51 | 8 | MS. HEINZ:  Stip for cause. |
| 09:51 | 9 | MR. LENGYEL-LEAHU:  Join. |
| 09:51 | 10 | THE COURT:  Excused. |
| 09:51 | 11 | Andrew Green. |
| 09:51 | 12 | MS. CORRIGAN:  Further inquiry. |
| 09:51 | 13 | MS. HEINZ:  Further inquiry. |
| 09:51 | 14 | THE COURT:  Elisha Zepeda. |
| 09:51 | 15 | MS. CORRIGAN:  Further inquiry. |
| 09:51 | 16 | MS. HEINZ:  Further inquiry. |
| 09:51 | 17 | THE COURT:  Probably have 150, about. |
| 09:51 | 18 | MS. HEINZ:  142, I think we counted. |
| 09:51 | 19 | THE COURT:  142.  I'm just sizing it up. |
| 09:52 | 20 | I think that's more than sufficient. |
| 09:52 | 21 | MS. CORRIGAN:  I think it is.  I know that |
| | 22 | Mr. Heinz and I spoke yesterday -- or communicated and |
| | 23 | spoke, but we think that we have enough.  Given the number |
| | 24 | of peremptories that we have, we believe that there's enough |
| | 25 | here. |

09:52  1            THE COURT:  Okay.  Let's walk through it again.
       2    Twelve in a box.  Ten, six.
09:52  3            MS. CORRIGAN:  You mean six, ten.
09:52  4            MS. HEINZ:  Six, ten.
09:52  5            MS. CORRIGAN:  Government six, defense ten.
09:52  6            THE COURT:  Six, ten.
09:52  7            MS. CORRIGAN:  Thank you.
09:52  8            THE COURT:  It's 28.
09:52  9            MS. HEINZ:  Six alternates.
09:52 10            THE COURT:  Six alternates.  Thirty-four.  Do you
      11    want one peremptory per side for each alternate?
09:52 12            MS. CORRIGAN:  Yes.
09:52 13            MS. HEINZ:  Yes, Your Honor.
09:52 14            THE COURT:  Twelve more, so's that's 46.
09:52 15            Twenty people will discover a bias between now and
      16    tomorrow, trust me.  Couple won't show.
09:52 17            Ten of these appear to be, on the face of them,
      18    suspect.  Yeah, about right.  Hopefully, we'll send -- in
      19    fact, I'm not too worried about jury statistics.  I don't
      20    want to reread the Indictment, and I don't want either one
      21    of you having jurors angry because they're having to watch
      22    the process again.  So I'd rather have too many jurors
      23    coming in than too few.
09:53 24            Okay.  In a moment, we're going to go over some of
      25    the pretrial motions again.  But before we do, is there

| | | |
|---|---|---|
| | 1 | anything that any of you want to bring up before we go |
| | 2 | through some of these pretrial motions once again?  Let me |
| | 3 | turn to the government. |
| 09:54 | 4 | MS. HEINZ:  I think we just had a couple of |
| | 5 | housekeeping questions. |
| 09:54 | 6 | THE COURT:  Sure. |
| 09:54 | 7 | MS. HEINZ:  Your Honor, we have -- we have one |
| | 8 | agent that we need to call twice or we would like to call |
| | 9 | twice as a witness because he has to talk about -- or |
| | 10 | testify about two very different things, and I think it |
| | 11 | would be confusing for everyone if he were to have to |
| | 12 | testify to all of that at one time. |
| 09:54 | 13 | THE COURT:  Who is that? |
| 09:54 | 14 | MS. HEINZ:  That would be Special Agent Nicholas |
| | 15 | Valencia. |
| 09:54 | 16 | THE COURT:  And what's the first portion of his |
| | 17 | testimony? |
| 09:54 | 18 | MS. HEINZ:  The first portion of his testimony |
| | 19 | is -- he's scheduled to be the first witness up, and he will |
| | 20 | talk about the arrest at LAX and will introduce some of the |
| | 21 | LAX surveillance videos. |
| 09:54 | 22 | THE COURT:  And the second portion? |
| 09:54 | 23 | MS. HEINZ:  The second portion, he would walk |
| | 24 | through some of the bank fraud evidence and some of the |
| | 25 | evidence with respect to the financial aid fraud.  So |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | essentially follow a lot of the bank fraud witnesses and     |
|       | 2  | testify.                                                     |
| 09:55 | 3  | THE COURT:  When you get to that portion?                    |
| 09:55 | 4  | MS. HEINZ:  When we got to that portion.                     |
| 09:55 | 5  | MS. CORRIGAN:  We've discussed this, and I have no           |
|       | 6  | objection.                                                   |
| 09:55 | 7  | THE COURT:  Okay.                                            |
| 09:55 | 8  | MR. LENGYEL-LEAHU:  No objection.                            |
| 09:55 | 9  | THE COURT:  All right.  That resolves it.                    |
| 09:55 | 10 | MS. HEINZ:  Thank you, Your Honor.                           |
| 09:55 | 11 | THE COURT:  Okay.  What else?                                |
| 09:55 | 12 | MS. HEINZ:  Excuse me, Your Honor, if I could just           |
|       | 13 | confer briefly.                                              |
| 09:55 | 14 | THE COURT:  Take your time.  There's no rush                 |
|       | 15 | today.                                                       |
| 09:55 | 16 | *(Government counsel confer.)*                               |
| 09:55 | 17 | MS. CORRIGAN:  And just for recordkeeping today, I           |
|       | 18 | would note that my client is not shackled.  He's present in  |
|       | 19 | the courtroom, and he's dressed out in civilian clothing.    |
| 09:55 | 20 | THE COURT:  Okay.                                            |
| 09:56 | 21 | MS. HEINZ:  Yes, Your Honor.  We have filed the              |
|       | 22 | notice of the 90211 custodian of record, and we have also    |
|       | 23 | given notice to defense counsel.  We've conferred with       |
|       | 24 | defense counsel, and defense counsel, I believe, is -- is    |
|       | 25 | fine with the government introducing business records        |

|  |  |  |
|---|---|---|
|  | 1 | through the 90211 procedure with the custodian of record |
|  | 2 | declaration. |
| 09:56 | 3 | The government did want to inquire about |
|  | 4 | Your Honor's preferred procedure with that as to exactly how |
|  | 5 | Your Honor would prefer that to come in. |
| 09:56 | 6 | THE COURT:  It depends upon the agreement that you |
|  | 7 | reached.  Anytime counsel reach an agreement, I'm probably |
|  | 8 | going to accede to it.  Tell me what your thoughts are and |
|  | 9 | what the agreement is. |
| 09:56 | 10 | MS. HEINZ:  I believe the thoughts are that |
|  | 11 | counsel was fine with the business documents coming in |
|  | 12 | pursuant to the 90211 custodian of record declarations, in |
|  | 13 | which case then we would -- the government would just ask |
|  | 14 | Your Honor to -- when we get to that point in the trial -- |
|  | 15 | to deem those to be admitted pursuant to, of course, a |
|  | 16 | showing of relevance. |
| 09:57 | 17 | THE COURT:  Okay. |
| 09:57 | 18 | MS. CORRIGAN:  And I have reviewed each of the |
|  | 19 | declarations.  They do comport, in my opinion, with the |
|  | 20 | rules, and so I don't have any viable opposition to those. |
|  | 21 | And I think that what Ms. Heinz is indicating would be |
|  | 22 | appropriate under the law. |
| 09:57 | 23 | THE COURT:  Mr. Lengyel-Leahu. |
| 09:57 | 24 | MR. LENGYEL-LEAHU:  We agree and join, Your Honor. |
| 09:57 | 25 | THE COURT:  Okay.  Resolved. |

**DEBBIE GALE, U.S. COURT REPORTER**

09:57  1          MS. HEINZ:  Thank you, Your Honor.

09:57  2          Other than that, we have continued to confer with

3    counsel about various charts that we would like to use to

4    present, quite frankly, some voluminous evidence in a very

5    expeditious manner.  For example --

09:57  6          THE COURT:  Summary charts, et cetera, through an

7    expert, I'm assuming.  But they need to have access to the

8    underlying documentation.

09:58  9          MS. HEINZ:  And they do.  For example, Your Honor,

10   on the translator, rather than having the translator go

11   through every single translation, we have prepared a chart.

09:58  12          THE COURT:  I see.

09:58  13          MS. HEINZ:  And we have shown that to defense

14   counsel, so we would basically just have the translator have

15   the chart, introduce the chart, and have the translator

16   testify this chart as accurate as to a list of all the

17   translations and these are all accurate, in a sense, rather

18   than flipping through every single translation.

09:58  19          THE COURT:  Okay.

09:58  20          MS. HEINZ:  So that's the way we would propose to

21   proceed, and I believe that defense counsel is fine with

22   that.

09:58  23          MS. CORRIGAN:  Yes.  In that regard, Your Honor, I

24   have reviewed the chart that was provided to me, and I have

25   matched it up against what I expect will be -- the

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | government will seek to bring before the jury during the               |
|       | 2  | trial and admit as evidence.  And I think that I would agree           |
|       | 3  | for economy of time 'cause, otherwise, we will probably                |
|       | 4  | spend several hours just having someone go through each one            |
|       | 5  | of 'em to lay that foundation.  And I think, from my view              |
|       | 6  | and my review of the evidence, that it's appropriate.                  |
| 09:59 | 7  | THE COURT:  Mr. Lengyel-Leahu.                                          |
| 09:59 | 8  | MR. LENGYEL-LEAHU:  I agree.  I join.                                   |
| 09:59 | 9  | THE COURT:  All right.  What else?  Then I have a                       |
|       | 10 | couple things I want to raise, but I want you to finish with           |
|       | 11 | your issues.  And then I want to turn to the defense.                   |
| 09:59 | 12 | MS. HEINZ:  Just a small procedural issue and                          |
|       | 13 | question about Your Honor's preference.  When we have moved             |
|       | 14 | a piece of evidence into -- when we have moved an exhibit               |
|       | 15 | into evidence, does Your Honor want us to ask permission to            |
|       | 16 | publish or should we just publish?                                     |
| 09:59 | 17 | THE COURT:  It depends what you're publishing.                         |
|       | 18 | I'm not inclined to let you publish every exhibit that you             |
|       | 19 | think you might want to just because it's been received into           |
|       | 20 | evidence.  By the same token, I don't know your case well              |
|       | 21 | enough to start chopping up your case.  But the minutia and            |
|       | 22 | time consumption of some items of evidence that are, quite             |
|       | 23 | frankly, something that the jury can see later on that's not           |
|       | 24 | critical to their understanding, I'm not supportive of that.           |
| 10:00 | 25 | So I think the best thing to do is simply leave                        |

    1   that to your discretion to begin with.  In other words,

    2   let's see how that goes.  But the idea of just because an

    3   item's received, it now goes up on the ELMO for show, or

    4   I've got 32 pictures of the same airport, no, absolutely

    5   not.

10:00    6              And so I don't want to be in a position of ever

    7   cutting you off, especially in front of the jury.  But that

    8   kind of redundancy and time consumption, while I'll give you

    9   all the time in the world, that's not the way they'll spend

   10   their time.  And you know, a lot of courts don't even allow

   11   exhibits to go to the jury.  They don't even allow

   12   transcripts to be read back.  I think that's foolish, quite

   13   frankly.

10:01   14              So I'm gonna trust your discretion.  You start by

   15   putting up the exhibits you think are necessary.  But if I

   16   see, rote, you know, Exhibit 1 through 100, and we get into

   17   four or five, unfortunately, then I'll cut you off.  Once I

   18   cut you off, it isn't that you come back now.  So just be

   19   careful.  We'll talk a lot about it along way.  But I trust

   20   your discretion.

10:01   21              MS. HEINZ:  Okay.

10:01   22              THE COURT:  All right.

10:01   23              All right.  Now, my concerns.

10:01   24              Unless there's a stipulation and the counsel for

   25   the defense has seen your opening statement and anything

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | that you believe you're putting up on an ELMO, there's |
|  | 2 | nothing going up.  What I won't do is I won't have an |
|  | 3 | opening statement -- and this may not be your situation; I |
|  | 4 | don't know.  We haven't raised this yet.  I won't have an |
|  | 5 | opening statement where one side has a prepared opening |
|  | 6 | statement with exhibits that haven't been received yet and |
|  | 7 | they get put up during the opening statement like they're a |
|  | 8 | piece of evidence, and then the defense is objecting because |
|  | 9 | they haven't been received into evidence or there's a |
|  | 10 | question about their evidentiary value.  And then we're in a |
|  | 11 | back-and-forth for a day or two over the value and also the |
|  | 12 | admissibility of that evidence. |
| 10:02 | 13 | What does your opening statement look like?  Are |
|  | 14 | you proposing to put exhibits up?  Do you have a prepared |
|  | 15 | opening statement with items of evidence?  And if so, have |
|  | 16 | you shown those to the defense, and is there an objection? |
| 10:02 | 17 | MS. ELIOT:  Your Honor, we don't plan to show any |
|  | 18 | exhibits during the opening. |
| 10:02 | 19 | THE COURT:  You're going to -- |
| 10:02 | 20 | MS. ELIOT:  Just going to talk. |
| 10:02 | 21 | THE COURT:  Orally present.  Okay. |
| 10:02 | 22 | How long will your opening statement be, |
|  | 23 | approximately?  I'm not setting a time limit.  It can be |
|  | 24 | five minutes.  It can be five hours. |
| 10:02 | 25 | MS. ELIOT:  Maybe 20.  Twenty minutes thereabouts. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:03 | 1 | THE COURT:  So two hours. |
| 10:03 | 2 | MS. ELIOT:  About 20 minutes, maybe a half hour. |
| | 3 | I'll have to time it. |
| 10:03 | 4 | THE COURT:  But 20, 30, 40 minutes someplace in |
| | 5 | that range. |
| 10:03 | 6 | MS. ELIOT:  Yes, Your Honor. |
| 10:03 | 7 | THE COURT:  Who'll be making that opening |
| | 8 | statement? |
| 10:03 | 9 | MS. ELIOT:  I will. |
| 10:03 | 10 | THE COURT:  Who would like to make an opening |
| | 11 | statement first or reserve first?  Who do I call upon on the |
| | 12 | defense side? |
| 10:03 | 13 | Ms. Corrigan, just because you're seated in the |
| | 14 | first seat doesn't mean you're the first batter up in a |
| | 15 | sense. |
| 10:03 | 16 | MS. CORRIGAN:  And I think I'd like to be second |
| | 17 | batter up.  I think it's more appropriate since co-defendant |
| | 18 | is number one on the indictment.  I think he gets top of the |
| | 19 | heap here. |
| 10:03 | 20 | THE COURT:  Now, I've seated you this way because |
| | 21 | of your acquiescence.  I can change the seating very easily. |
| | 22 | In other words, I can put Mr. Elhuzayel in the first table, |
| | 23 | but I thought that Mr. Lengyel-Leahu wanted to be at the |
| | 24 | second table, and I wanted to confirm that. |
| 10:04 | 25 | Is that second table comfortable for you, sir? |

10:04   1        MR. LENGYEL-LEAHU:  I believe the second table was

2   because of the belly chain.

10:04   3        THE COURT:  No.  I can move that very easily to

4   the first table.  I thought you'd chosen the second table,

5   but I'm happy to move you to the front table if you'd like.

10:04   6        MR. LENGYEL-LEAHU:  We're fine with the current

7   conditions, Your Honor.

10:04   8        THE COURT:  Okay.  Then I'll start in the back and

9   call upon counsel.

10:04  10        And I'll explain to the jury that it's entirely

11   appropriate and proper if the defense reserves an opening

12   statement or if you make an opening statement.  In other

13   words, I don't want there to be prejudice and a

14   misunderstanding of the process by the jury if you decide

15   not to make an opening statement and you reserve.  I'll

16   leave that to you and your decision tomorrow.

10:04  17        Tuesday is an election day.  And what time are the

18   jurors due in, Deb?

10:04  19        THE CLERK:  8:30, I believe.  We're going to have

20   them up here at 8:30.

10:05  21        THE COURT:  Yeah.  Could we find out what time

22   they're ordered to report to jury services by calling down

23   and confirming that?

10:05  24        So I'd like to propose the following:  If you get

25   a jury in a day, which we oftentimes have with a

questionnaire, I'm proposing that you don't make your

opening statement that day.  That you don't get shoved into

the afternoon.  So if it's noon, we recess and your opening

statement has a date certain, and that's Wednesday morning.

10:05     And if you don't get a jury on Tuesday, I'd like

to let the jurors go about 4:30 so they can get out of the

Civic Center and vote.  It's a voting day, and I don't want

them anxious about that.  So if we need to bring jurors

back, so be it.

10:05     MS. CORRIGAN:  I think that would be appropriate,

and I have no objection to alerting them early in the day

about that, so no one rushes off during the lunch break and

maybe gets in a car wreck or something trying to get back

here.

10:06     THE COURT:  So voting day, we'll recess at 4:30.

If we have a jury, fine; if we don't, fine.

10:06     Let's assume that we have twelve jurors that we've

selected because there's a very good likelihood.  I'm going

to allow some questions, but once I've given that

questionnaire, they're pretty pointed.  You won't be going

very long.

10:06     Do you want me to excuse the twelve sitting

jurors, keep the panel, and try to get the alternates?  Or

do you want me just to send everybody home and bring

everybody back the next day.

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

64

10:06    1         MS. CORRIGAN:  If we hit the 4:30 mark, you mean?

         2    I think we should let everybody go, because I think then the

         3    alternates, whoever is still sitting here, may be stressed

         4    about voting.

10:06    5         THE COURT:  Bring 'em back the next day.

10:06    6         MS. HEINZ:  Government would agree, Your Honor.

10:06    7         THE COURT:  All right.

10:07    8         Are there any witnesses that are being presented

         9    that cause any concern to either one of you in terms of

        10    approaching without having to ask the Court?  And, by the

        11    way, I really appreciate the courtesy, but on each occasion,

        12    you have to ask the court, "Judge, may I approach the

        13    witness?"  My memory of trial work when I was practicing was

        14    it always took my focus off the piece of evidence that I had

        15    in my hand and wanted to show the witness.  It's a nice

        16    formality.  I appreciate it.  You're all well trained and

        17    excellent counsel.  But as far as I'm concerned, you don't

        18    have to ask to approach the witness.

10:07   19         Now, I know you're trained that way, and if you

        20    want to, thank you for the courtesy, but I'm not going to

        21    come unglued or say something if you decide not to.

10:07   22         Only thing I care about is that Debbie can hear

        23    you.  I actually don't care where you stand in the

        24    courtroom.  I don't view that lectern as -- well, a monument

        25    or pillar of anything other than the audio system.

10:08    1           So if you move around a little bit, I'm not going

         2    to be concerned.  But I would encourage you to make sure

         3    that Debbie knows because she'll just stand up.

10:08    4           Debbie, would you stand up.

10:08    5        *(The reporter complies.)*

10:08    6           THE COURT:  When you see that, you know you don't

         7    have a record.  Okay?  Because I'd like not to say,

         8    "Counsel, would you step back to the lectern."  It takes

         9    away a little bit of your ability to move around and just be

        10    comfortable.

10:08   11           Second, I really don't care if you examine from

        12    the seats that you're in.  I know that that's shocking in

        13    federal court, but quite frankly, you have all the documents

        14    on the seat you occupy.

10:08   15           So if you're going to do that, though, let me

        16    know, so I don't fall into what I call the "federal

        17    practice."  But you want to examine from that seat with your

        18    documents in place, so be it.  If you want to go to the

        19    lectern, so be it.  But whatever we do, I want to do that

        20    consistently.  So in other words, if the government's going

        21    to the lectern, then I want the defense at the lectern.  I

        22    don't want it to appear that this is a sign of disrespect.

10:09   23           MS. CORRIGAN:  I have a preference of the lectern.

        24    I don't know about other lawyers.

10:09   25           THE COURT:  Lectern?  Let's keep it the lectern,

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | then.  We're all used to that in federal court.  It's not    |
|       | 2  | state court.  So lectern?                                    |
| 10:09 | 3  | MR. LENGYEL-LEAHU:  Lectern, with the opportunity            |
|       | 4  | to stroll if we need to.                                     |
| 10:09 | 5  | THE COURT:  Strut.                                           |
| 10:09 | 6  | MR. LENGYEL-LEAHU:  Strut.                                   |
| 10:09 | 7  | THE COURT:  Strut and stroll.  But the only time            |
|       | 8  | you'll hear me is when we can't hear you.  So I want that    |
|       | 9  | freedom of movement if it makes counsel feel more           |
|       | 10 | comfortable.  But just make sure we can hear you.           |
| 10:09 | 11 | There's a rule and it sounds harsh, but it's not.           |
|       | 12 | There's one of you, one of me, one of you, and there's a    |
|       | 13 | whole bunch of people milling around, and it's hard to get  |
|       | 14 | them to court.  They're call witnesses.  And they have      |
|       | 15 | schedules.  Somebody along the way is going to tell you that |
|       | 16 | they're so important that they can't come to court on the   |
|       | 17 | date and time you've asked them to.  The pressure's really  |
|       | 18 | on the government in that regard.  And so I apologize for    |
|       | 19 | this, but unless the next witness is available in the       |
|       | 20 | hallway, even if you have to send 'em home, I'll rest your   |
|       | 21 | case.  I know you don't believe it.  So I'll say it one      |
|       | 22 | time.  'Cause I did it in 1986.  I rested the government's   |
|       | 23 | case in the middle of it.  So I mean it.                     |
| 10:10 | 24 | If there are three people stacked up in the                 |
|       | 25 | hallway and we have to call 'em back the next day, that's    |

|        |    |                                                          |
|--------|----|----------------------------------------------------------|
|        | 1  | the way it is.  But we're not wasting time.              |
| 10:11  | 2  | As far as your experts are concerned, they're here       |
|        | 3  | when you ask them.  If you need my help in that regard, I'm |
|        | 4  | happy to help you.  Okay?  I want your case to flow smoothly |
|        | 5  | just like the defense sometimes.  People give you a little |
|        | 6  | bit of difficult time about when they can appear.        |
| 10:11  | 7  | I want one of you to put up an exhibit right now          |
|        | 8  | on the ELMO for me.  Okay?  Just pick an Exhibit.  Go show |
|        | 9  | me how you operate that ELMO.  Either one of you.  Defense? |
|        | 10 | Government?                                               |
| 10:11  | 11 | MR. LENGYEL-LEAHU:  Here you go.                          |
| 10:11  | 12 | THE COURT:  'cause this is above my pay grade, by        |
|        | 13 | the way.  I'm very impressed.                             |
| 10:12  | 14 | MR. LENGYEL-LEAHU:  I'm gonna watch her,                  |
|        | 15 | Your Honor.  I'm gonna get trained here.                  |
| 10:12  | 16 | THE COURT:  I would suggest that.                        |
| 10:12  | 17 | *(Document displayed.)*                                   |
| 10:12  | 18 | THE COURT:  Now, the reason we're doing that is          |
|        | 19 | there is another television down there that isn't set up at |
|        | 20 | the present time, because tomorrow, when we reread that   |
|        | 21 | indictment, my image will be going back down to the jury  |
|        | 22 | room.  But when we're done, we're going to disassemble that |
|        | 23 | large TV with the camera on it that is used for the jury  |
|        | 24 | room, and we're going to use another television and set it |
|        | 25 | up at the end of the jury box facing this way.  And that's |

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 68 of 146   Page ID #:3903
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

68

1    the television.  Okay?

10:12    2          Okay.  All right.  The jurors have been ordered to

3    be here at 7:30 tomorrow, which means they're not voting in

4    the morning.  So you've got to remind me, 'cause I'll

5    forget, 4:30 is the absolute time period for them to leave.

6    I need to tell them that so they're not anxious.  I thought

7    it was 7:30 not 8:30.

10:13    8          Okay.  Deb, now you're gonna go out in the

9    hallway, and you're going to set up the chair, and you're

10   going to clear all those documents off that table, and we're

11   going to pretend that we have a sidebar.  We're going to

12   pretend that Juror No. 12, who there's some discussion about

13   cause, and others have to be questioned outside the presence

14   of the jury.  And I want that chair set up permanently.  I

15   want that table cleared.  And I'm going to wait here until

16   it's satisfactory for you.

10:15   17          *(Pause in the proceedings at 10:13 a.m.)*

10:18   18          *(Proceedings resumed at 10:18 a.m.)*

10:18   19          THE COURT:  All right.  Before we go back and we

20   walk -- just walk through it, just an *in camera* proceeding

21   for a moment, if we had a juror who's being questioned for

22   cause.  Is there anything else that the government needs to

23   make your case flow smoothly?

10:19   24          MS. HEINZ:  I did remember a couple of other

25   questions, Your Honor.

10:19  1          The first one is -- involves your procedure with

       2   respect to the exercise of peremptories.

10:19  3          THE COURT:  One at a time, alternating.  In other

       4   words, I don't do the Arizona strike method, because I think

       5   the jury changes just like the Supreme Court.  You take one

       6   justice away, it's a whole new court.  And if you take one

       7   juror away, it's a whole new jury.  That's why I think the

       8   Arizona strike method goes too quickly.  It's an

       9   "efficiency" process, which I have no criticism of; but in

      10   complex litigation, I think the counsel are looking at the

      11   remaining jurors in the audience at the same time as in the

      12   box.

10:20 13          MS. HEINZ:  And if either party passes?

10:20 14          THE COURT:  That's the exercise of that

      15   peremptory.  That way nobody can load at the end.

10:20 16          MS. HEINZ:  Understood.  And because the defense

      17   has, obviously, ten and the government has six, at some

      18   point does the defense exercise two in a row?

10:20 19          THE COURT:  Yes.

10:20 20          *(To the clerk:)* In fact, Deb, why don't we give

      21   them a copy of the jury sheet.

10:20 22          THE CLERK:  I was gonna ask you about that.

10:20 23          THE COURT:  Give it to them now.  Let me have one.

      24   Let me see one.

10:20 25          We're gonna give you one now, so you can see the

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       |  1 | order also.  It's the same order set out by code, but I'm          |
|       |  2 | just going to show that to you, and the boxes are right            |
|       |  3 | there so you can't make a mistake.  So we'll print it and          |
|       |  4 | give it to you.                                                    |
| 10:20 |  5 | MS. HEINZ:  Understood, Your Honor.                                |
| 10:20 |  6 | Can I raise -- should I raise the next issue now,                  |
|       |  7 | or should we wait?                                                 |
| 10:21 |  8 | THE COURT:  Sure.                                                  |
| 10:21 |  9 | MS. HEINZ:  Okay.                                                  |
| 10:21 | 10 | We -- the government does not think this is going                  |
|       | 11 | to happen, but it is always possible in a case like this;         |
|       | 12 | that an inquiry by the defense on cross-examination, if the       |
|       | 13 | witness were to answer it completely, might involve               |
|       | 14 | classified information.  And so the government proposes that      |
|       | 15 | if the government believes that that is the position that         |
|       | 16 | the witness is in, that the government would object, saying,      |
|       | 17 | "Objection.  Section 8."                                          |
| 10:21 | 18 | THE COURT:  Okay.  Now, you'll alert me to that                   |
|       | 19 | prior to that witness taking the stand.                           |
| 10:21 | 20 | And is that your first witness?                                   |
| 10:21 | 21 | MS. HEINZ:  No, Your Honor, it wouldn't be the                    |
|       | 22 | first witness.                                                    |
| 10:21 | 23 | THE COURT:  Okay. So call that to my attention                    |
|       | 24 | before that witness, who has that kind of information,           |
|       | 25 | testifies.                                                        |

10:21  1        MS. CORRIGAN:  And, Your Honor, this -- if this

2   issue is covered in their trial brief, which -- and I'm -- I

3   have no objection to that process.

10:22  4        THE COURT:  Okay.  But just remind me, because I

5   won't know why the objection's coming.  I may not relate

6   that if it's the 14th witness, for instance.  So all I'm

7   saying is just remind me when that might be a problem.

10:22  8        MS. HEINZ:  Understood, Your Honor.  Understood.

10:22  9        And then our next question would be -- we at the

10  moment have set up the procedure where we have the exhibits

11  in folders and the folders -- we will have a person up there

12  next to the witness chair to hand the folders to the

13  witness.

10:22  14        THE COURT:  Wait.  Now, you want me to pay

15  attention.  You should be giving me a copy at the same time.

10:22  16        I'll show you how that works.  You're probably

17  going to give me a whole bunch of folders, and you're going

18  to expect me to listen to the witness, to take notes, to

19  look at realtime, and to look through the binder, whichever

20  binder's in front of me.  If I'm paying attention, I won't

21  be able to do that.  I'll be listening to the witness,

22  taking notes, watching realtime, and, in fact, I'll probably

23  watch realtime 80 percent of the case.  And the reason for

24  that is you retain a lot more if you can see it as well as

25  hear it.  Plus I can mark and scroll back.  So you'll see me

| | | |
|---|---|---|
| | 1 | looking at realtime. |
| 10:23 | 2 | Let's just say you presented Exhibit 14.  There's |
| | 3 | nothing wrong with the person, or any person, giving me that |
| | 4 | exhibit also at the same time.  In other words, I've got one |
| | 5 | exhibit in front of me.  I'm not looking through binders. |
| | 6 | And if you want to do that, that's fine.  It's as simple as |
| | 7 | putting it right there on the corner, and I'll take it. |
| | 8 | Okay?  So I leave that to you. |
| 10:24 | 9 | But as far as paying attention to a case, when a |
| | 10 | judge is looking through voluminous binders, he or she is |
| | 11 | not paying attention to the case; they're just going through |
| | 12 | exhibits. |
| 10:24 | 13 | And the first day is always rough, I promise you. |
| | 14 | Second day, we start to settle in. |
| 10:24 | 15 | Some cases it takes as long as two weeks to get a |
| | 16 | rhythm.  Most of the time it's within two or three days. |
| 10:24 | 17 | Okay.  Other questions? |
| 10:24 | 18 | Okay. Now, this needs to be redone, but we're |
| | 19 | gonna have six alternates. |
| 10:24 | 20 | THE CLERK:  Six.  Okay. |
| 10:24 | 21 | THE COURT:  So two, three, four, five, six, but |
| | 22 | give them a copy for the time being. |
| 10:24 | 23 | THE CLERK:  I did. |
| 10:24 | 24 | THE COURT:  Okay.  Counsel, let's go over that. |
| | 25 | Look down at the bottom, you'll see government, defense, |

1     government, defense, defense, government, defense, defense,

2     government, defense, defense, government, defense, defense,

3     government, defense.

10:25   4          MS. HEINZ:  Yes, Your Honor.

10:25   5          MS. CORRIGAN:  Yes.

10:25   6          THE COURT:  Ten, six; defendant has the last

7     preemptory.

10:25   8          If we get close and if you've decided to exercise

9     all of your peremptories and now you're in the bind of

10    having exercised six and ten, the way we'll resolve that so

11    that the jury doesn't know you've just run out is I'll call

12    a brief recess and say to you back in the hallway, "Counsel,

13    when I go back into court, would you like me to say that

14    each of you are accepting the jury?"

10:25   15         Now, in reality, you just ran out of preempts, but

16    the jury doesn't know you've run out of preempts.  And

17    that's just a courteous way that both of you look good, in a

18    sense, in front of the jury without having exhausted your

19    six or exhausted your ten, and you're forced into that

20    position begrudgingly.  Okay?  And we'll talk about that.

21    It's just a courteous way that each of you appear to be

22    accepting a jury when, in fact, you've run out of preempts.

10:26   23         I doubt that that's gonna happen.  I think you

24    both are going to be exercising your judgment along the way

25    and probably not getting to that point.  But I could -- you

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 74 of 146   Page ID #:3909
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

74

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | may decide to use all ten and all six.  I don't know.        |
| 10:26 | 2  | All right.  Right now, we haven't numbered these             |
|       | 3  | yet.  Deb was talking to me, and I said to Debbie, even      |
|       | 4  | though I've been through a number of complex litigation      |
|       | 5  | cases, that doesn't mean I've done them correctly.  And so   |
|       | 6  | I've encouraged my clerk and my court reporter once again to |
|       | 7  | tell me what I'm doing wrong.  Just because we have done it  |
|       | 8  | one way one time doesn't mean we're doing it correctly or    |
|       | 9  | there isn't a better way.                                    |
| 10:27 | 10 | *(To the clerk:)* Debbie, would you take a yellow            |
|       | 11 | piece of paper and write "1" on it -- I know this is         |
|       | 12 | complicated -- and go stick it on that top chair in the very |
|       | 13 | corner for a moment.                                         |
| 10:27 | 14 | Now, this sounds silly what we're about to talk              |
|       | 15 | about, but you will be amazed how much trial time is wasted  |
|       | 16 | in front of a jury, so we're gonna just walk through the     |
|       | 17 | numbers today.                                               |
| 10:27 | 18 | And then, Deb, would you take another -- better              |
|       | 19 | yet, see that nice -- no, you've already got it.  My         |
|       | 20 | apologies.  See that one right there on that chair.  Take    |
|       | 21 | that one and put it over there.                              |
| 10:27 | 22 | *(The clerk complies.)*                                      |
| 10:27 | 23 | Now, let's take two, three, four, five, six in the           |
|       | 24 | top row.                                                     |
| 10:28 | 25 | THE COURT:  Okay.  You see where Seat No. 1 is               |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

75

|  |  |  |
|---|---|---|
|  | 1 | right now? |
| 10:28 | 2 | MS. CORRIGAN:  Yes. |
| 10:28 | 3 | THE COURT:  Do you notice that where Debbie is |
|  | 4 | sitting is unoccupied? |
| 10:28 | 5 | MS. HEINZ:  Yes. |
| 10:28 | 6 | THE COURT:  What that means -- and it sounds |
|  | 7 | silly -- is that if we number 'em this way and we get twelve |
|  | 8 | jurors finally selected, they're walking over the top of |
|  | 9 | each other.  They're just going down one extra seat, but |
|  | 10 | it's simple.  Seat No. 1 never changes.  And eventually, |
|  | 11 | when you get twelve, we'd like to hold them in this |
|  | 12 | position; but in reality, it's not the best position.  The |
|  | 13 | twelve jurors deciding this case, if we had a perfect world, |
|  | 14 | would be seated -- where Seat No. 2 is, that would be No. 1, |
|  | 15 | and your two alternates would be down at the end and four |
|  | 16 | here.  And the reason is -- "here" being in front of the |
|  | 17 | jury box. |
| 10:29 | 18 | And the reason for that is I don't want six chairs |
|  | 19 | here.  I want to start reducing my chairs from six. |
| 10:29 | 20 | So this is the way it's tentatively going to look, |
|  | 21 | subject to your thoughts. |
| 10:29 | 22 | And I'm inclined just to leave it the way it is so |
|  | 23 | that there's no confusion.  One through six; seven through |
|  | 24 | twelve. |
| 10:30 | 25 | These seats remain vacant.  And when you finally |

1    get those twelve jurors, that's the way they would be

2    seated, and I would move two alternates here, and four would

3    remain here.

10:30    4         But if you like, I can do this.

10:30    5         Debbie, this is higher math.  Would you go down

6    and get No. 1 and put it on chair No. 2.

10:30    7         *(The clerk complies.)*

10:30    8         THE COURT:  Thanks.  And would you take No. 8 -- I

9    can seat them this way.  In other words, right at the

10    beginning of jury selection, No. 1 can be the second chair

11    in from the top, and No. 7 can be the second chair in from

12    the bottom.  Which means nobody's climbing over each other.

13    But now your two alternates are those last two chairs

14    closest to the audience.  And I don't care.  It sounds

15    simple, but you tell me what you'd like.

10:31    16         MS. CORRIGAN:  Your Honor, does the door work on

17    the jury box?

10:31    18         THE CLERK:  Yes.

10:31    19         THE COURT:  Well --

10:31    20         MS. CORRIGAN:  Maybe.

10:31    21         THE COURT:  Maybe.  I had to lift that blue chair

22    over today because we couldn't get it unlocked.

10:31    23         MS. CORRIGAN:  Okay.

10:31    24         THE COURT:  So you tell me what you like.  It's a

25    small thing, but once we're in place, that's the way it

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 77 of 146   Page ID #:3912
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

77

1     remains.

10:32   2          MS. CORRIGAN:  I can go either way, although it

3     would probably be more appropriate for the twelve jurors to

4     be closest so they can make sure they can hear the

5     witnesses.  But I don't have a preference one way or the

6     other.  But I have no objection to four seats being up

7     front.  Frankly, I think it's more comfortable for the

8     two -- two of the alternates to be up in the box than

9     sitting down below here.

10:32   10         THE COURT:  And I want to reduce the number of

11    alternates.  I'm being extra cautious with six.  Just don't

12    want to take a chance of starting over.

10:32   13         MS. CORRIGAN:  Right.

10:32   14         THE COURT:  So I want to get two of them up off

15    the floor.

10:32   16         What would you like?

10:32   17         MS. HEINZ:  The government would definitely prefer

18    as many alternates as can fit in the box.  I think it's more

19    comfortable to have the alternates in the box for them.

10:32   20         THE COURT:  Two of the six.

10:32   21         MS. HEINZ:  That would be the government's

22    preference.

10:32   23         THE COURT:  What configuration?

10:32   24         MS. HEINZ:  The government really does not have a

25    preference of the arrangement up here.  So this arrangement

```
 1    would be fine with the government with -- starting with
 2    number one the second chair over, rather than the furthest
 3    one to the back of the courtroom.
 4              THE COURT:  Counsel, what would you like?
 5              MR. LENGYEL-LEAHU:  No preference, Your Honor.
 6              THE COURT:  Deb, what would you like?
 7              THE CLERK:  That works for me.
 8              THE COURT:  That's what we'll do, then.  We'll
 9    leave these two seats blank for the selection of the twelve
10    jurors.  Okay?  It's stops the travel time.  But when we get
11    the alternates, we'll take two of the six and move them to
12    these last two seats.  Fair enough?
13              MS. CORRIGAN:  Yes.
14              THE COURT:  Deb, if you would, 1, 2, 3, 4, 5, 6,
15    7, 8, 9, 10, 11, 12.  Can we do them in white with black
16    lettering?
17              THE CLERK:  I have a question about the
18    alternates.
19              THE COURT:  What's the question?
20              THE CLERK:  Are they numbered?  Will they be
21    numbered?
22              THE COURT:  Yes.  Debbie has a question about the
23    alternates.  They'll be numbered; in other words, when we
24    get the alternates, I'm going to have six chairs sitting
25    here.  I'm not going to run them up into the box.  And
```

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

79

1    they'll be called as Alternate 1, 2, 3, 4, 5, and 6.  You

2    each have one preempt per alternate.

10:34   3        The statute says that the alternates are supposed

4    to be called sequentially; so Alternate 1 should be the

5    alternate who takes the place of a sitting juror.  I would

6    encourage you to not do that.  I would encourage you to

7    stipulate to the following:

10:34   8        That if a sitting juror can't sit for a good legal

9    reason or cause, that in your presence, Debbie randomly

10   draws one of the six names.

10:34   11       MS. CORRIGAN:  That's my preference.

10:34   12       THE COURT:  Yeah.  And the reason -- just let me

13   make that record, though.  The reason for that is that means

14   Alternate No. 6 needs to be equally alert to the evidence as

15   Alternate No. 1.  And it makes all of us, as a judge and

16   trial counsel, pay attention to these alternates.  We can't

17   say that we got to Alternate 1 and 2 and 3 and get a little

18   tired with 4, 5, and 6.  You're still exercising your best

19   judgment.

10:35   20       So it keeps those alternates alert and engaged.

21   Because Alternate 5 and 6, I promise you, will start

22   thinking, "Why am I here?  It's the fourth week."  And once

23   we get a grumbling alternate who says, with coffee down in

24   the cafeteria, "You're never gonna get to me," Alternate No.

25   3 is thinking, "Yeah, they may not get to me either."  Okay?

|  | 1 | So that's just the real world. |
| 10:35 | 2 | Would that be acceptable to all of you that we |
|  | 3 | randomly draw in your presence -- it's very exciting, by the |
|  | 4 | way. |
| 10:35 | 5 | She's puts six numbers, and draws one.  Would that |
|  | 6 | be acceptable to the government? |
| 10:35 | 7 | MS. HEINZ:  Yes.  The government would stipulate. |
| 10:35 | 8 | MS. CORRIGAN:  I agree. |
| 10:36 | 9 | MR. LENGYEL-LEAHU:  I agree and join. |
| 10:36 | 10 | THE COURT:  Okay.  So, Debbie, does that answer |
|  | 11 | your question? |
| 10:36 | 12 | THE CLERK:  Yes. |
| 10:36 | 13 | *(Clerk and Court confer.)* |
| 10:36 | 14 | THE COURT:  Okay.  Then, counsel, would you come |
|  | 15 | with me for a moment.  We're going to pretend for a moment. |
|  | 16 | We're going to walk through it.  We have a motion for cause. |
| 10:37 | 17 | *(At sidebar.)* |
| 10:38 | 18 | THE COURT:  We're going to be back here a number |
|  | 19 | of times. |
| 10:38 | 20 | MS. HEINZ:  I think that's good. |
| 10:38 | 21 | MS. ELIOT:  Yeah. |
| 10:40 | 22 | *(In open court.)* |
| 10:40 | 23 | THE COURT:  All right.  Counsel, we're back on |
|  | 24 | record. |
| 10:40 | 25 | What we're going to do is we're going to set up |

1    the camera in a few moments.  And after Adrian gets that set

2    up, I'm going to have you go to the lectern, and your

3    co-counsel's going to go downstairs, or whatever, and see

4    what you look like.  Because we can't get a frontal view of

5    you.  We can't put you over here.  So when you're asking

6    questions of a juror, about the best we can do is get a full

7    court.  You'll see that.  We'll see you.  Maybe we'll see

8    the juror.  I'm not sure yet.  We'll see how well we do.

10:41    9         We could put the camera over there for the time

10   being, but we'll move it around until you're satisfied.

10:41   11         Okay.  Anything else on behalf of the government

12   before I turn to counsel for the defense?

10:41   13         MS. HEINZ:  Nothing further from the government.

10:41   14         THE COURT:  Okay.  Let me start with

15   Mr. Lengyel-Leahu and Mr. Elhuzayel.  What would make this a

16   smooth presentation from your standpoint?

10:41   17         MR. LENGYEL-LEAHU:  I'm pretty comfortable,

18   Your Honor, and we've all conferred about some of your

19   procedures.  I think we're pretty good.

10:42   20         THE COURT:  I'm pretty flexible, actually.  You'll

21   find if counsel come to me with an idea or thought and you

22   all agree, I'm not rote in the sense of following the same

23   process and procedure that I did on another trial.  This is

24   a whole new trial, so I can always improve.  Trials are

25   never perfect.  So if something comes up, let me know right

|       |    |                                                         |
|-------|----|---------------------------------------------------------|
|       | 1  | away.                                                   |
| 10:42 | 2  | MR. LENGYEL-LEAHU:  Yes, sir.                           |
| 10:43 | 3  | *(Pause in the proceedings.)*                           |
| 10:57 | 4  | THE COURT:  All right.  We're back on record.           |
| 10:57 | 5  | The court took a recess just to make certain that       |
|       | 6  | the parties could see the witness and they were satisfied |
|       | 7  | with the coverage of the courtroom.                     |
| 10:57 | 8  | So this would be the image that's being seen down       |
|       | 9  | in the jury room.  And would one of you like to step to the |
|       | 10 | lectern and make your opening statement.  Would one of you |
|       | 11 | like to step to the lectern and question one of our     |
|       | 12 | perspective jurors.                                     |
| 10:58 | 13 | Now, that's what you're going to look like.             |
| 10:58 | 14 | But if you notice, we can't capture the juror.          |
| 10:58 | 15 | We can move that to the other side of the               |
|       | 16 | courtroom temporarily.                                  |
| 10:58 | 17 | See if you can pick up the jury box.  Now, there's      |
|       | 18 | the audience.  Bring back around, all the way around.  See? |
| 10:58 | 19 | Do you want us to move that camera so we capture        |
|       | 20 | the juror who's being questioned as well as the questioner? |
|       | 21 | And I'm sorry for being so, you know, picky, but you'll be |
|       | 22 | amazed at how much time this actually saves tomorrow.   |
| 10:58 | 23 | In other words, any preference is fine.  What I         |
|       | 24 | don't want Adrian to do is to have to, on his own, start |
|       | 25 | manipulating back and forth question and answer.  I want it |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

83

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | set.                                                      |
| 10:59 | 2  | MS. CORRIGAN:  I think my preference would just be        |
|       | 3  | to have the camera aimed at the lectern where the attorney |
|       | 4  | is.  I think, frankly, some of the jurors may feel        |
|       | 5  | uncomfortable with the camera just spotted on 'em.  And if |
|       | 6  | the camera is going back and forth, someone's going to feel |
|       | 7  | like they're gonna get vertigo.  But I think that the      |
|       | 8  | focus -- so long as they can hear everything, I think that |
|       | 9  | the lectern's fine.  I don't know how everybody else feels |
|       | 10 | about it.                                                 |
| 10:59 | 11 | THE COURT:  That's the next question.  I'd like to        |
|       | 12 | get out that microphone, Deb, and make sure it works for a |
|       | 13 | change with a battery in it.                              |
| 10:59 | 14 | Okay.  Now, can you lower that a little bit.  I           |
|       | 15 | want to see more of her.  There you go.                   |
| 10:59 | 16 | Now, can you blow that up?                                |
| 10:59 | 17 | Can we make her bigger?  There we go.                     |
| 10:59 | 18 | Can you center her a little bit more?  Let's stop         |
|       | 19 | right there.                                              |
| 11:00 | 20 | *(IT technician complies.)*                               |
| 11:00 | 21 | THE COURT:  Okay.  Now, counsel, is that                  |
|       | 22 | satisfactory or not?                                      |
| 11:00 | 23 | MS. CORRIGAN:  Yes.                                       |
| 11:00 | 24 | MS. ELIOT:  Sure, Your Honor.                             |
| 11:00 | 25 | THE COURT:  Good for the government?                      |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

84

| | | |
|---|---|---|
| 11:00 | 1 | MS. HEINZ:  That's fine with the government. |
| 11:00 | 2 | MS. CORRIGAN:  That's fine with me, Your Honor. |
| 11:00 | 3 | MR. LENGYEL-LEAHU:  Fine with me, Your Honor. |
| 11:00 | 4 | THE COURT:  Okay.  Adrian, that's without exact |
| | 5 | precision, that's the way it will remain for the jurors |
| | 6 | downstairs tomorrow. |
| 11:00 | 7 | TECHNICIAN:  Okay. |
| 11:00 | 8 | THE COURT:  Do you want to leave that set up |
| | 9 | overnight, Adrian? |
| 11:00 | 10 | TECHNICIAN:  Sure. |
| 11:00 | 11 | THE COURT:  Okay.  What else do you have before I |
| | 12 | start quickly through these trial motions and probably |
| | 13 | excuse you for the rest of the day, unless you have business |
| | 14 | for the Court. |
| 11:00 | 15 | MS. CORRIGAN:  Are you finished with your inquiry? |
| 11:00 | 16 | MR. LENGYEL-LEAHU:  Yes. |
| 11:00 | 17 | MS. CORRIGAN:  Okay.  I have three brief issues, |
| | 18 | Your Honor. |
| 11:00 | 19 | One, I want to make sure that at the conclusion of |
| | 20 | the government's case and at other appropriate times, that |
| | 21 | we can -- that I can make a rule -- at least reserve the -- |
| | 22 | make an oral Rule 29 motion and then follow it up in |
| | 23 | writing.  I'm assuming there's no opposition by the |
| | 24 | government. |
| 11:01 | 25 | THE COURT:  We'll see how that goes in terms of |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | timing for the next couple weeks.                                      |
| 11:01 | 2  | MS. CORRIGAN: Yes, yes, please.                                        |
| 11:01 | 3  | THE COURT: You'll have time.                                           |
| 11:01 | 4  | MS. CORRIGAN: No opposition?                                           |
| 11:01 | 5  | MS. HEINZ: No opposition.                                              |
| 11:01 | 6  | MS. CORRIGAN: All right.                                               |
| 11:01 | 7  | THE COURT: Now, what I may do is I may decide it                       |
|       | 8  | at that moment. I may what I call "bookmark" it. So let's              |
|       | 9  | just see where we're at. But I'm assuming you're going to              |
|       | 10 | make a motion at the end of the government's case. If                  |
|       | 11 | you're successful, it's resolved. If you're not successful,            |
|       | 12 | you'll make it again at the end of the defense case.                   |
| 11:01 | 13 | MS. CORRIGAN: Correct.                                                 |
| 11:01 | 14 | THE COURT: You can also make it after the                             |
|       | 15 | conclusion of all the arguments before it's submitted to the          |
|       | 16 | jury.                                                                  |
| 11:01 | 17 | MS. CORRIGAN: Correct. I usually make three.                          |
| 11:01 | 18 | THE COURT: Okay. Fair enough.                                          |
| 11:02 | 19 | MS. CORRIGAN: The second issue is just I want to                      |
|       | 20 | make sure that the all witnesses will be out -- will be               |
|       | 21 | asked to stay outside the courtroom during the testimony of           |
|       | 22 | any other witnesses, with the exception --                            |
| 11:02 | 23 | THE COURT: Is there a formal motion? Because I                        |
|       | 24 | haven't heard that, and, of course, I'm going to grant that           |
|       | 25 | if you make the motion. But here's the issue. I don't know            |

**DEBBIE GALE, U.S. COURT REPORTER**

             1    if any members of the family are testifying.  So it's

             2    co-equal.  And I don't want them excluded from the court.

             3    So --

11:02        4             MS. CORRIGAN:  Understood.  But I think, in

             5    particular, a lot of the witnesses that the government has

             6    can be just stacked up in the conference room if they're

             7    gonna be stacked, and they shouldn't be in here listening to

             8    each other's testimony.  I understand the family.

11:02        9             THE COURT:  That applies to everybody except an

            10    expert.

11:02       11             MS. CORRIGAN:  Understood.

11:02       12             THE COURT:  An expert's allowed to be in the room.

            13    Beyond that, I would grant that motion unless there's an

            14    objection by the government.

11:03       15             MS. HEINZ:  Your Honor, the government certainly

            16    wouldn't have the witnesses here before they testify.  Some

            17    of the witnesses have expressed an interest in watching the

            18    trial after their testimony.

11:03       19             THE COURT:  After they've testified.  That depends

            20    upon whether you're going to call them back or not.

11:03       21             MS. CORRIGAN:  Or if they're subject to recall by

            22    anybody.

11:03       23             THE COURT:  If it's an expert witness, normally in

            24    the real world, they're not called back if they're a

            25    government expert.

| 11:03 | 1 | Who would like to attend and watch the rest of the |
| | 2 | proceedings?  Is it your expert? |
| 11:03 | 3 | MS. HEINZ:  No, Your Honor.  They are largely FBI |
| | 4 | agents who have worked this case and who understand that |
| | 5 | they should not be in the courtroom and cannot be in the |
| | 6 | courtroom before they testify. |
| 11:03 | 7 | THE COURT:  It's afterwards. |
| 11:03 | 8 | MS. HEINZ:  But after they're finished testifying, |
| | 9 | they very much would like to watch the rest of the trial. |
| 11:03 | 10 | THE COURT:  I have no objection to that as long as |
| | 11 | that witness isn't being called back. |
| 11:04 | 12 | MS. HEINZ:  Understood, Your Honor.  The one |
| | 13 | witness we anticipate would be called back would not be |
| | 14 | here. |
| 11:04 | 15 | THE COURT:  Why don't we take that witness by |
| | 16 | witness? |
| 11:04 | 17 | MS. CORRIGAN:  That's fine. |
| 11:04 | 18 | THE COURT:  There may be some witnesses, Counsel, |
| | 19 | that you just know aren't being called back, and having them |
| | 20 | sit in the audience is just like having the family sit here. |
| | 21 | It's fine. |
| 11:04 | 22 | Others know that might be in question if it's a |
| | 23 | true -- a representation that they might be called back. |
| | 24 | Let's wrestle with that at the time.  I think it's gonna |
| | 25 | resolve itself, frankly. |

11:04   1          MS. CORRIGAN:  And then the third thing, which is

2      just a friendly reminder to everybody that in light of the

3      fact that the co-defendant, at least at this point, is still

4      belly-chained, that no one stand up when the jurors come in

5      and out.  And if perhaps the Court could indicate to the

6      jurors that we're not being rude or anything like that, but

7      we're just -- it's at the instruction of the Court that

8      we're asked to not stand up.

11:04   9          THE COURT:  Remind me.

11:04  10          MS. CORRIGAN:  I will.  Thank you.  I know the

11     Court has done that before, and you have an appropriate way

12     of addressing the jury.

11:05  13          THE COURT:  And sometimes I'll stand up.  I have

14     to break myself of that habit.  For instance, I may stand up

15     when I ask the jurors to stand and raise their right hand.

16     You remain seated.  But I may be asking them.  'Cause when

17     Debbie swears them, I usually stand behind her with my hand

18     raised to indicate to them what they're supposed to do.

19     Okay.  Anything else?

11:05  20          MS. HEINZ:  Your Honor, I'm sorry.  I want to be

21     crystal clear.  If we make an objection to a question, we

22     stay seated?

11:05  23          THE COURT:  Stay seated.  I know that's a hard

24     habit to break.

11:05  25          MS. HEINZ:  It is, Your Honor.  We will do that.

| 11:05 | 1 | THE COURT:  We've been involved in six-month |
| | 2 | trials, and we still on occasion have that occur.  It's just |
| | 3 | the best we can do. |
| 11:05 | 4 | MS. CORRIGAN:  That's fine.  I agree. |
| 11:05 | 5 | THE COURT:  Okay. |
| 11:05 | 6 | MS. CORRIGAN:  That's it from my end. |
| 11:05 | 7 | THE COURT:  Ms. Corrigan and Mr. Lengyel-Leahu, |
| | 8 | anything else? |
| 11:05 | 9 | MS. CORRIGAN:  No, Your Honor. |
| 11:05 | 10 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 11:05 | 11 | THE COURT:  Okay.  Then let's go over these |
| | 12 | pretrial motions for just a moment. |
| 11:06 | 13 | MS. HEINZ:  I'm sorry, Your Honor.  There was one |
| | 14 | other thing that came up on the break that I talked to |
| | 15 | defense counsel about that I just wanted to bring up with |
| | 16 | the Court. |
| 11:06 | 17 | We have -- as you know, we have transcripts of |
| | 18 | recordings and videos in the government's case-in-chief, and |
| | 19 | those transcripts contain both English -- and in most of the |
| | 20 | cases, they contain Arabic -- English language translations |
| | 21 | of Arabic words, phrases, and sentences that are used. |
| 11:06 | 22 | So what we had planned to do to present those was |
| | 23 | have them running on Trial Director as sort of subtitles and |
| | 24 | running -- as we show the -- as we play the audio or show |
| | 25 | the video. |

11:06   1        We had also thought that we would introduce -- I

2   mean, that we would ask that those transcripts be moved into

3   evidence, particularly so that if there is any appeal, that

4   the Circuit would have a copy of the transcript 'cause they

5   won't have a copy of the Trial Director presentation.

11:07   6        However, in discussing this with defense counsel,

7   the thought was that those transcripts would not go back to

8   the jury room.  So that was, I believe, our joint plan.

11:07   9        THE COURT:  Okay. So let me repeat that.

11:07  10        Transcripts never go back to the jury room unless

11  there's a stipulation by counsel.  The best evidence is

12  always the video.  The unique thing about your presentation

13  is that your video is not only a video, but it also has the

14  wording, if you will, running across the bottom, like a CNN

15  news show with that strip going across the bottom.  And so

16  the transcripts are received into evidence so that the

17  Circuit has a full record, but those transcripts are not

18  going back into the jury room.

11:08  19        Now, let me ask you, why, then, are they getting

20  transcripts?  And I'm not being difficult.  But if you have

21  a tape and the words and the transcript is running across

22  the bottom, why are they being given an additional folder or

23  binder?  They can't take them with them into the jury room.

24  And they're going to get confused and try to make notes on

25  them.

| | | |
|---|---|---|
| 11:08 | 1 | MS. HEINZ:  Your Honor, the government is not |
| | 2 | planning to hand the jurors a binder of transcripts. |
| 11:08 | 3 | THE COURT:  Oh, Okay. |
| 11:08 | 4 | MS. HEINZ:  We're only going to present the |
| | 5 | transcripts visually on the television screens. |
| 11:08 | 6 | THE COURT:  I see.  So they can take notes off of |
| | 7 | that.  They've got the best evidence.  They've got the |
| | 8 | video.  They've got the transcript at the bottom, but the |
| | 9 | actual printed transcript is received into evidence, but the |
| | 10 | jury's not going to get a copy of this paper transcript. |
| | 11 | It's just for the Circuit. |
| 11:08 | 12 | MS. HEINZ:  That's correct, Your Honor. |
| 11:08 | 13 | MS. CORRIGAN:  That's correct.  And I think that's |
| | 14 | an appropriate measure. |
| 11:09 | 15 | THE COURT:  Okay.  Mr. Lengyel-Leahu. |
| 11:09 | 16 | MR. LENGYEL-LEAHU:  I agree, Your Honor. |
| 11:09 | 17 | THE COURT:  Okay.  Then it's resolved. |
| 11:09 | 18 | Anything else?  All right.  Then the pretrial |
| | 19 | motions are as follows. |
| 11:09 | 20 | On March -- or strike that -- May 31st, so I |
| | 21 | complete this record, the Court heard argument on the |
| | 22 | following pretrial motions: |
| 11:09 | 23 | The parties' motions in limine. |
| 11:09 | 24 | Defendant Badawi's motion to exclude statements of |
| | 25 | Defendant Badawi during interrogation by agents on May 21st, |

1    2015.

11:09    2         Defendant Badawi's motion to sever.

11:09    3         Defendant's and Badawi's motion to remove
4    shackles.

11:09    5         Mr. Elhuzayel joined in all of Mr. Badawi's
6    motions.

11:09    7         I'd made the following final rulings for
8    everybody's memory:

11:09    9         First, I've denied Defendant Badawi's motion to
10   sever.

11:09   11         Second, I've granted Defendant Badawi's motion to
12   remove shackles during trial.

11:09   13         Concerning Defendant Elhuzayel's restraints, I've
14   ruled that only a belly chain would be used to restrain
15   Mr. Elhuzayel.  His hands and feet will be unrestrained.
16   And today we're going to have a camera come up, and we're
17   going to take a photograph of the court.  In fact, I'm going
18   to have defense counsel go with the camera person, and we're
19   going to take any photographs you'd like.  If there's any
20   improvement we can make, rather than granting the motion to
21   remove the belly chain at this time, I want you to note that
22   for me.  Okay?

11:10   23         MR. LENGYEL-LEAHU:  Thank you, Your Honor.

11:10   24         THE COURT:  I'm also going to take a picture of
25   the complex courtroom to show any reviewing court where the

1    parties could be tried or presided over, and I just think

2    this is a more human and normal setting, quite frankly, with

3    two defendants, and I'd like not to use the complex

4    courtroom if possible.

11:11    5        I've also offered to place Mr. Elhuzayel in an

6    unrestrained condition in the complex courtroom because of

7    the narrow channeling constraints and the ability of the

8    marshals to sit behind him without waiving any of his rights

9    concerning the belly chain.  Counsel's indicated this is a

10   more comfortable or better situation.

11:11   11        Is that still true, sir, or do you want to go back

12   to the complex courtroom, and I'm happy to unrestrain your

13   client?

11:11   14        MR. LENGYEL-LEAHU:  It's still true, Your Honor.

11:11   15        THE COURT:  Okay.

11:11   16        Concerning government's Motion in Limine No. 1, I

17   want to indicate to you I gave you a tentative thought, but

18   I have not made a final ruling.

11:11   19        Ms. Corrigan did not join in this motion.  I

20   stated on May 31st the government was moving to preclude the

21   defendants from raising the defense that their conduct was

22   legally permissible on the grounds their constitutionally

23   guaranteed right to practice their religion permitted them

24   to provide personnel, especially -- or specifically

25   Defendant Elhuzayel, to ISIL.

11:12    1        Mr. Lengyel-Leahu indicated he does not think he

         2    is arguing the application of the provision on providing

         3    material support to terrorism under 18 U.S.C.,

         4    Section 2339(b) to Elhuzayel violates Religious Freedom and

         5    Restoration Act, commonly known as RFRA.  However, in the

         6    argument, counsel stated the government is improperly

         7    presupposing the factual conclusion that Mr. Elhuzayel

         8    sought to travel to the Middle East to provide material

         9    support to terrorists.

11:12   10        Mr. Lengyel-Leahu has also offered or has sought

        11    to offer to the jury an alternate explanation as to why

        12    Elhuzayel was traveling to the Middle East.  And the

        13    government wants a jury instruction as to this issue.

11:13   14        First, I don't think, Counsel, that your client,

        15    Mr. Elhuzayel, should be precluded from arguing why he went

        16    to the Middle East.

11:13   17        However, he cannot assert his right to the free

        18    exercise of religion under RFRA and the First Amendment

        19    excusing him from compliance with 18 U.S.C. 339(b).

11:13   20        In other words, he cannot use as a defense the

        21    argument that his conduct is lawful on the grounds that his

        22    religion obligated him to join ISIL.

11:13   23        So I'm not going to preclude that testimony, if

        24    you choose to present that.

11:13   25        But then the government is calling for a jury

        1    instruction.  And so I'm going to simply let that develop.
        2    But you have a pretty strong tentative thought, which is on
        3    this Court's part, about no preclusion, but a jury
        4    instruction that in all likelihood would follow.
11:14   5            Concerning government's Motion in Limine No. 2, I
        6    also had not conclusively or finally ruled on that motion.
11:14   7            Counsel for Mr. Elhuzayel, Mr. Lengyel-Leahu,
        8    conceded that he cannot argue about whether ISIS or ISIL is
        9    a foreign terrorist organization; however, counsel does seek
       10    to challenge that the Islamic State was designated as a
       11    foreign terrorist organization, and it's been asserted that
       12    it should be up to the jury to decide whether ISIL, ISIS,
       13    and the Islamic State are the same organization.
11:14  14            The government stated that it intended to
       15    introduce expert testimony that ISIL goes by different
       16    names.  This suggests that there's some ambiguity
       17    surrounding whether the Islamic State was designated as a
       18    foreign terrorist organization.
11:15  19            I am going to think about it one more time this
       20    evening, but my belief is, and you should expect that the
       21    court is going to grant the motion as follows:
11:15  22            That defendants are precluded from challenging the
       23    designation of ISIL as a foreign terrorist organization;
       24    however, this does not preclude Mr. Elhuzayel from arguing
       25    that the Islamic State is not the same as ISIL and that the

1    Islamic State was not a foreign terrorist organization at

2    the time of the arrest.  So give me one more evening to

3    think through that, but I'm a little concerned about

4    chilling that kind of presentation, Mr. Lengyel-Leahu, if

5    you decide to make it.

11:15    6         Government Motion in Limine Number 3.  The

7    government asserts the "Law Enforcement, Sensitive,

8    Qualified" evidentiary privilege.  However -- or primarily,

9    the government has sought to preclude the defense from

10   asking questions about certain law enforcement techniques

11   and methods.

11:16    12        Ms. Corrigan, on behalf of Mr. Badawi, indicated

13   that at this juncture, she does not think that there will be

14   an issue and stated that if the issue arises, the parties

15   will notify the Court so the parties can litigate the issue

16   outside the presence of the jury.  And again today, counsel

17   for the government raised the same concern and will object

18   and notify the Court that this could be a problem with the

19   forthcoming witness, whenever that occurs, on Day 1 or 14 or

20   whatever.

11:16    21        Concerning government Motion in Limine No. 4, the

22   government has moved to preclude defendants from introducing

23   any expert evidence relating to a mental condition.

24   Mr. Lengyel-Leahu has indicated he does not intend to

25   introduce "mental competence" evidence and, therefore, the

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

97

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | motion was denied and is denied as moot as to Mr. Elhuzayel.        |
| 11:17 | 2  | Now, I delayed with Mr. Badawi, and that is                        |
|       | 3  | because Dr. Hope needed to evaluate him last week.  And the         |
|       | 4  | case is still developing.  I'm a little hesitant to make a          |
|       | 5  | blanket motion right now concerning Mr. Badawi because we've        |
|       | 6  | been going through this process and there's still a                 |
|       | 7  | possibility that this issue could be alive with respect to          |
|       | 8  | Mr. Badawi.                                                         |
| 11:17 | 9  | So I'm gonna reserve the ruling on that issue as                   |
|       | 10 | to Mr. Badawi at this time.                                         |
| 11:17 | 11 | MS. CORRIGAN:  Thank you.                                           |
| 11:17 | 12 | THE COURT:  Concerning government Motion in Limine                  |
|       | 13 | No. 5, the government moved to preclude the defendants from         |
|       | 14 | introducing any portion of their out-of-court hearsay              |
|       | 15 | statements at trial.                                                |
| 11:17 | 16 | The government indicated that it does not intend                   |
|       | 17 | to use any post-arrest statements in its opening statement.         |
|       | 18 | And the government and Ms. Corrigan indicated that they            |
|       | 19 | reached an agreement as to In Limine No. 5.  And at this            |
|       | 20 | juncture Ms. Corrigan is okay with what the government             |
|       | 21 | intends to introduce.                                               |
| 11:18 | 22 | The government indicated it would provide                          |
|       | 23 | Mr. Lengyel-Leahu with the six specific excerpts from              |
|       | 24 | Mr. Elhuzayel's arrest statement it intends to use.                |
| 11:18 | 25 | I want to ask the parties whether this exchange                    |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

98

| | | |
|---|---|---|
| | 1 | has taken place and the discussion has occurred between you. |
| | 2 | Because this is where we were left at the last hearing. |
| 11:18 | 3 | MS. HEINZ:  Yes, the excerpts have been provided, |
| | 4 | and a discussion has taken place.  And my understanding is |
| | 5 | that there is no objection. |
| 11:18 | 6 | THE COURT:  Sir. |
| 11:18 | 7 | MR. LENGYEL-LEAHU:  That's correct, Your Honor. |
| 11:18 | 8 | MS. CORRIGAN:  And, Your Honor, just for the |
| | 9 | record, I have also reviewed those, and it didn't appear |
| | 10 | that there's any *Bruton* issue from my perspective. |
| 11:18 | 11 | THE COURT:  Okay.  Then that matter's been |
| | 12 | resolved, at least for the present time. |
| 11:18 | 13 | Mr. Badawi's motion in limine to exclude |
| | 14 | government experts Braniff and Ahmed. |
| 11:19 | 15 | Ms. Corrigan withdrew the portion of the motion |
| | 16 | concerning Ahmad, and the parties agree there's no longer a |
| | 17 | need for a *Daubert* hearing, and that the aspect of Badawi's |
| | 18 | motion in limine thereafter is denied as moot.  But I |
| | 19 | reserved the ruling on the rest of the motion.  And I |
| | 20 | thought, as the case developed, that could be called back to |
| | 21 | the Court's attention.  That if we needed the expert in one |
| | 22 | night early or one day early, we would see that developing. |
| | 23 | Because I didn't think he'd be presented until, minimally, |
| | 24 | the second week, at best.  So we've got some time. |
| 11:19 | 25 | And there was, finally, Mr. Badawi's motion to |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | exclude statements of Defendant Badawi during the                |
|       | 2  | interrogation by the evidence *(sic)* on May 21st, 2015.         |
| 11:19 | 3  | I had tentatively denied Defendant Badawi's motion               |
|       | 4  | to exclude statements of Defendant Badawi during                 |
|       | 5  | interrogation by agents on May 21st, 2015, and I'm making        |
|       | 6  | that ruling final at this time.                                  |
| 11:19 | 7  | Now, is there any other clarification that you                   |
|       | 8  | need to help you with your opening statements? Is there any      |
|       | 9  | ruling that the Court hasn't made that's leaving you             |
|       | 10 | dangling without clarification so that you can make a full       |
|       | 11 | and complete opening statement?                                  |
| 11:20 | 12 | MR. LENGYEL-LEAHU: Yes.                                          |
| 11:20 | 13 | THE COURT: I'm sorry. Mr. Lengyel-Leahu, please.                 |
| 11:20 | 14 | MR. LENGYEL-LEAHU: The three and five, the                      |
|       | 15 | hearsay motions and the out-of-court hearsay. Those kind of      |
|       | 16 | blended together for me when you were discussing them.           |
| 11:20 | 17 | We believe, obviously, the government has made a                 |
|       | 18 | blanket statement that nothing comes in, in the post-arrest      |
|       | 19 | interview, other than what they've cherrypicked from that        |
|       | 20 | interview.                                                        |
| 11:20 | 21 | THE COURT: Right.                                                |
| 11:20 | 22 | MR. LENGYEL-LEAHU: And we suggest that's, one,                  |
|       | 23 | unfair because they haven't identified what statements they      |
|       | 24 | want to try to exclude; and secondly, that would be              |
|       | 25 | important in an opening statement, because if we are allowed     |

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | to bring that evidence in through cross-examination of the               |
|       | 2  | government's witness, then that would be something I would               |
|       | 3  | like to tell the jury during opening statement.                          |
| 11:21 | 4  | THE COURT:  Let me repeat that back.                                      |
| 11:21 | 5  | That you don't know at this point what the                               |
|       | 6  | government intends to produce concerning questions that law              |
|       | 7  | enforcement asked your client.                                           |
| 11:21 | 8  | MR. LENGYEL-LEAHU:  No, Your Honor, that's not                           |
|       | 9  | what I'm saying.  I'm sorry, I must have misspoke.                        |
| 11:21 | 10 | THE COURT:  Is it Motion in Limine No. 5, then,                          |
|       | 11 | the post-arrest statements?                                              |
| 11:21 | 12 | MR. LENGYEL-LEAHU:  Yes, Your Honor.                                      |
| 11:21 | 13 | THE COURT:  I'm sorry.  My apologies.                                     |
| 11:21 | 14 | MR. LENGYEL-LEAHU:  And with --                                           |
| 11:21 | 15 | THE COURT:  And you're worried, so I understand,                         |
|       | 16 | that you don't know what portions of the post-arrest                     |
|       | 17 | statements the government's going to refer to in their                   |
|       | 18 | opening statement.                                                       |
| 11:21 | 19 | MR. LENGYEL-LEAHU:  No.                                                   |
| 11:21 | 20 | THE COURT:  I'm missing it, then.  I apologize.                          |
| 11:21 | 21 | MR. LENGYEL-LEAHU:  I must have been unclear.                            |
| 11:21 | 22 | THE COURT:  No, I'm unclear.                                              |
| 11:21 | 23 | MR. LENGYEL-LEAHU:  We know what the government                          |
|       | 24 | wants to introduce; they provided us with excerpts.  And                |
|       | 25 | that's what they're -- is gonna be in their                              |

Case 8:15-cr-00060-DOC  Document 288  Filed 03/31/17  Page 101 of 146  Page ID #:3936
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

101

|       |    |                                                                                      |
|-------|----|--------------------------------------------------------------------------------------|
|       | 1  | evidence-in-chief.  I think it's just the six or eight                                |
|       | 2  | excerpts out of the three hours -- or plus -- that he was                             |
|       | 3  | interrogated.                                                                         |
| 11:22 | 4  | THE COURT:  Right.                                                                    |
| 11:22 | 5  | MR. LENGYEL-LEAHU:  And my response to their                                          |
|       | 6  | motion, I suggested there was a number of areas that we                               |
|       | 7  | would like to cross-examine the FBI agent on.  One in                                 |
|       | 8  | specific, that my client intended to get married; that                                |
|       | 9  | that's the reason he was traveling to, um -- to Israel.                               |
| 11:22 | 10 | THE COURT:  It has to be a nexus to the statement                                     |
|       | 11 | that they're presenting; and if that's an entirely different                          |
|       | 12 | subject matter, it's hearsay.                                                         |
| 11:22 | 13 | MR. LENGYEL-LEAHU:  It's not an entirely different                                    |
|       | 14 | subject matter, because the reason that they're introducing                           |
|       | 15 | their picked statements is to attempt to prove motive and                             |
|       | 16 | knowledge of my client and the operative act for the                                 |
|       | 17 | conspiracy, as well as the act itself of the attempt to                               |
|       | 18 | provide material support.                                                             |
| 11:23 | 19 | But if he's going over there for the purposes of                                      |
|       | 20 | getting married, which is what he told them, and there is                             |
|       | 21 | other evidence to that effect, then it goes to impeach the                            |
|       | 22 | motive issue and my client's state of mind, which does come                           |
|       | 23 | in under 803.                                                                         |
| 11:23 | 24 | I even suggested that into *(sic)* my, uh, reply to                                   |
|       | 25 | their motion in limine.  And their response was "that's what                          |

1    we were afraid of."  Since I don't know what they're trying

2    to exclude -- I know what they're trying to admit, but I

3    know what I also want to admit through cross-examination of

4    the government witness:  Issues involving motive and issues

5    involving his state of mind at the time and the subsequent

6    actions that he did in furtherance of that state of mind.

11:23    7    THE COURT:  What I don't know, because I wasn't

8    present during any of your discussions with the government,

9    is what areas you intend to cross-examine on.

11:24    10    I have a general idea.  You refer to intent,

11    et cetera.  But I would need some specificity to try to make

12    a ruling whether it's hearsay or whether it's part and

13    parcel there's a nexus to the statement that they are

14    bringing in.

11:24    15    And so the first problem I hear is that the

16    government's going to try to show that your client has made

17    some statement about going overseas to join ISIL for some

18    nefarious purpose.  And you'd like to show that he's going

19    there for the purpose of getting married.  And the

20    government is objecting to that.

11:24    21    MR. LENGYEL-LEAHU:  Among others, but my problem

22    is --

11:24    23    THE COURT:  Just a moment.  "Among other things"

24    is the problem.  I need that laid out between the two of you

25    with specificity.  It's kind of like the government always

|  |  |  |
|--|--|--|
|  | 1 | saying, and in good faith, first thing they learned, |
|  | 2 | government's complied with their *Brady* obligations. |
| 11:24 | 3 | MR. LENGYEL-LEAHU:  Always. |
| 11:24 | 4 | THE COURT:  And that's kind of what I'm hearing |
|  | 5 | from you right now, also, and that is, there's a whole bunch |
|  | 6 | of things I'd like to cross-examine on.  And I don't know |
|  | 7 | that we're going down that road until I know very |
|  | 8 | specifically what those are. |
| 11:25 | 9 | MR. LENGYEL-LEAHU:  That's why in our reply brief |
|  | 10 | we say -- and I believe if I was to make a motion in limine, |
|  | 11 | just a blanket motion in limine, and not told the Court what |
|  | 12 | I'm trying to exclude, that would be improper and denied |
|  | 13 | outright.  Now what I'm suggesting is, and I suggested in my |
|  | 14 | reply, tell me what you what me not to cross-examine on, and |
|  | 15 | we can have a specific discussion.  I even suggested two |
|  | 16 | areas that I did, and their response was "That's exactly |
|  | 17 | what we're talking about." |
| 11:25 | 18 | THE COURT:  See, there's the mystery because I |
|  | 19 | wasn't there.  These kinds of motions just float around. |
| 11:25 | 20 | I think that the beginning is really with you, and |
|  | 21 | that is, you need to be hopefully telling the government the |
|  | 22 | areas that you intend to cross-examine on and see if they |
|  | 23 | object or not. |
| 11:25 | 24 | In other words, they're going to present evidence |
|  | 25 | wherein they try to tell the jury or show the jury your |

|  |  |  |
|---|---|---|
|  | 1 | client's going to join ISIL for some nefarious purpose. |
|  | 2 | They're going to object almost categorically to anything |
|  | 3 | they don't believe has a direct nexus to that. |
| 11:26 | 4 | And so their first objection will be, "Well, the |
|  | 5 | marriage has nothing to do with that," and your response |
|  | 6 | will be, "Well, you brought up his motive and intent to join |
|  | 7 | ISIL.  We ought to be able to show from the defense |
|  | 8 | perspective that he had another motive for going there." |
| 11:26 | 9 | How do I resolve that without specifics?  In other |
|  | 10 | words, that's one specific, but then in the next statement, |
|  | 11 | you've said, "and other things."  I don't know what those |
|  | 12 | other things are. |
| 11:26 | 13 | MR. LENGYEL-LEAHU:  And that really puts us in a |
|  | 14 | bind, because now I'm in a situation where I'm telling them |
|  | 15 | how I'm going to impeach their own witness before he's taken |
|  | 16 | the stand.  Because this is all impeachment.  I know what |
|  | 17 | he's going to say because I've seen the six statements, but |
|  | 18 | now I have to telegraph. |
| 11:27 | 19 | THE COURT:  You see, it's easily resolved. |
| 11:27 | 20 | What I'm really hearing is a tactical bind you're |
|  | 21 | in.  So let's just talk about the real world. |
| 11:27 | 22 | The real world is that if you can get statements |
|  | 23 | that you believe are appropriate in front of the jury, your |
|  | 24 | client may or may not be testifying and may be not |
|  | 25 | testifying and subject to cross-examination. |

11:27   1       And if you can't get those statements before the

2   jury, then in the real practical world of trial litigation,

3   your client may have to testify to get those statements in

4   front of the jury.  I can't make a decent ruling unless I

5   know what those areas are.  And so that kind of,

6   "Your Honor, we've always complied with our *Brady*

7   obligations" is nonsense.  And your motion isn't nonsense,

8   but it leaves this broad umbrella right now where I can't

9   make a decent ruling.

11:28  10       So of course I don't want to cut you off from an

11   opening statement.  And I don't know that I would preclude

12   you from that opening statement.  The problem's going to be

13   if you can back it up.  You see, you don't know what I'm

14   going to rule, and I can't foresee every question asked by

15   the government and every area, nor have I heard specifics

16   from you as defense counsel other, than, "Judge, this goes

17   to intent."

11:28  18       Now, you've got options.  You can put your client

19   on the stand also.

11:28  20       MR. LENGYEL-LEAHU:  Which I don't think we need to

21   bargain his constitutional --

11:28  22       THE COURT:  No, you --

11:28  23       MR. LENGYEL-LEAHU:  -- rights --

11:28  24       THE COURT:  You don't.

11:28  25       MR. LENGYEL-LEAHU:  -- for the purposes of a

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | ruling under the Federal Rule of Evidence under 803.         |
| 11:28 | 2  | THE COURT:  You don't.  I'm happy to make the                |
|       | 3  | ruling, but you've got to give me specifics, and right now   |
|       | 4  | I'm not precluding you from making an opening statement.      |
| 11:28 | 5  | MR. LENGYEL-LEAHU:  Here's my suggestion.                    |
| 11:28 | 6  | THE COURT:  But what I'm saying is, you can't                |
|       | 7  | expect a ruling from the Court.                              |
| 11:28 | 8  | I'm not precluding you from making the opening               |
|       | 9  | statement that your client went for the purpose of getting   |
|       | 10 | married.  But be forewarned, you could get a ruling from the |
|       | 11 | Court that doesn't find that to be an appropriate portion of |
|       | 12 | the cross-examination.  So I'm not bargaining whether your   |
|       | 13 | client takes the stand or not at all.                        |
| 11:29 | 14 | But what you can't get from me is a definitive               |
|       | 15 | ruling on something that's so broad and without laying out   |
|       | 16 | those specific categories to me.                             |
| 11:29 | 17 | MR. LENGYEL-LEAHU:  Here's my suggestion.                    |
| 11:29 | 18 | THE COURT:  I'm not barring you from your opening            |
|       | 19 | statement.  Do you hear that?                                |
| 11:29 | 20 | MR. LENGYEL-LEAHU:  I totally heard you, and I get           |
|       | 21 | it.                                                           |
| 11:29 | 22 | THE COURT:  Good.                                            |
| 11:29 | 23 | MR. LENGYEL-LEAHU:  But here's, again, my                    |
|       | 24 | suggestion.  You have in our responsive, uh, brief to their  |
|       | 25 | motion in limine a couple of areas that I specifically       |

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | identified.  If we could get a ruling just on those based on  |
|        | 2  | what you have in the motions presently in front of you.       |
| 11:29  | 3  | THE COURT:  I'm not barring you from making an                |
|        | 4  | opening statement in any area.  I'm not making a ruling       |
|        | 5  | prematurely, though, until I've heard the direct examination  |
|        | 6  | in my court.                                                  |
| 11:30  | 7  | MR. LENGYEL-LEAHU:  Okay.  Am I -- I see what                 |
|        | 8  | you're saying.                                                |
| 11:30  | 9  | The direct examination.  Will we have an                     |
|        | 10 | opportunity to break on the -- not in the presence of the     |
|        | 11 | jury --                                                       |
| 11:30  | 12 | THE COURT:  Yes.                                              |
| 11:30  | 13 | MR. LENGYEL-LEAHU:  -- and discuss specifically              |
|        | 14 | the issues that I want to cross-examine the witness without   |
|        | 15 | giving 'em an opportunity --                                  |
| 11:30  | 16 | THE COURT:  Absolutely.                                       |
| 11:30  | 17 | MR. LENGYEL-LEAHU:  -- to confer with counsel when          |
|        | 18 | I cross and impeach?                                          |
| 11:30  | 19 | THE COURT:  You'll have a break, and we can                  |
|        | 20 | resolve those after the direct examination, if you'd like.    |
| 11:30  | 21 | MR. LENGYEL-LEAHU:  Yes.                                      |
| 11:30  | 22 | THE COURT:  But what I'm not giving you is a                 |
|        | 23 | dispositive ruling, because I haven't heard the direct yet.   |
| 11:30  | 24 | MR. LENGYEL-LEAHU:  Okay.  But I still would like           |
|        | 25 | a dispositive ruling on the areas that I identified in my     |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | brief.  And how can we come to that before opening           |
|       | 2  | statement?                                                   |
| 11:30 | 3  | THE COURT:  I'm not precluding you from making any           |
|       | 4  | opening statement you'd like to, Counsel.                    |
| 11:30 | 5  | MR. LENGYEL-LEAHU:  Understood.                              |
| 11:30 | 6  | THE COURT:  You want to say that he went to ISIL             |
|       | 7  | or to the Middle East to get married; I'm not precluding     |
|       | 8  | you.                                                         |
| 11:31 | 9  | MR. LENGYEL-LEAHU:  Just so I'm clear, you're not           |
|       | 10 | going to rule on whether or not I can cross-examine him on   |
|       | 11 | that until after he's taken the stand?                       |
| 11:31 | 12 | THE COURT:  That's correct.                                 |
| 11:31 | 13 | MR. LENGYEL-LEAHU:  Even though we know what he's           |
|       | 14 | going to say, because we've already got the six excerpts.    |
|       | 15 | I've got the six excerpts, and in response to the six        |
|       | 16 | excerpts, I can even provide you with the exact questions     |
|       | 17 | and answers that my client said, "I'm going to get married," |
|       | 18 | even though they've got their expert that says, "No, you're  |
|       | 19 | going to go join the Islamic State."                        |
| 11:31 | 20 | I know what they're gonna ask.  And he's gonna              |
|       | 21 | presumably testify, based on the excerpt that they've given  |
|       | 22 | us -- and I can show you in the transcript that wasn't the   |
|       | 23 | reason that he told 'em.  I think we've made the record.  We |
|       | 24 | should have the record there that --                         |
| 11:31 | 25 | THE COURT:  Why is a court making those kinds of            |

1    rulings?  I don't understand.  I'm not precluding you from

2    the opening statement.  I get to actually hear what is

3    presented on direct examination.  I'm not guessing.  It's

4    not speculative.  I'm giving you time to bring this issue to

5    the Court's attention before any cross-examination.

11:32    6         You may get it in, in the context of the

7    interview; you may not.  Your client may testify; he may

8    not.

11:32    9         But why am I putting myself in a position with

10   having, you know, a piece of it, and also, why am I putting

11   myself in a position of examining a portion, like the

12   wedding?  Well, there's other areas also that you'd like to

13   get in, and all of those or many of those are under the

14   request that I allow them for motive or intent.

11:32   15         Okay.  I'm not so sure about that.  I don't know

16   yet.  As far as precluding you from your opening statement,

17   absolutely not.

11:32   18         MR. LENGYEL-LEAHU:  It just changes the opening

19   statement slightly.  And to be clear, I didn't bring the

20   motion; they did.  In response to the motion, I was the one

21   that sug- -- again, they didn't tell us what they were

22   trying to preclude.  A blanket preclusion of everything,

23   which is clearly not anticipated by the rules.  So the rules

24   of evidence allow me to inquire, and I would prefer to say

25   in my opening statement the FBI will admit that he told them

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 110 of 146   Page ID #:3945
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

110

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | that it was a wedding he was going to.                           |
| 11:33 | 2  | THE COURT:  Fine.                                                |
| 11:33 | 3  | MR. LENGYEL-LEAHU:  Well, if you don't let me                   |
|       | 4  | cross-examine -- if you're telling me up front that I may        |
|       | 5  | not have that opportunity to cross-examine, I don't wanna        |
|       | 6  | misspeak in my opening statement because that's not good         |
|       | 7  | practice.                                                        |
| 11:33 | 8  | So I would prefer a ruling at least on those                    |
|       | 9  | issues, the ones that we've already addressed.  And if the       |
|       | 10 | Court would like me to show you specifically in the              |
|       | 11 | transcript what I'm talking about in order to determine if I     |
|       | 12 | can in advance cross-examine, because, again, it's their         |
|       | 13 | motion; I'm responding.  That's why I need clarification         |
|       | 14 | from the Court now unless the motion's denied.                   |
| 11:34 | 15 | THE COURT:  Okay.  All right.  Any thoughts?                     |
| 11:34 | 16 | MR. NAM:  Your Honor, in the government's reply,                 |
|       | 17 | we addressed some of the issues that Mr. Lengyel-Leahu has       |
|       | 18 | raised in the opposition and he has just pointed to.             |
| 11:34 | 19 | And the government's position is that the                       |
|       | 20 | particular rule that the defense wants to point to, 803(3),      |
|       | 21 | with regard to then existing state of mind, is not a rule        |
|       | 22 | that is applicable as to the post-arrest statements that the     |
|       | 23 | defendant provided to the FBI agents, because what              |
|       | 24 | Mr. Elhuzayel stated as to whatever his intent was, uh, in       |
|       | 25 | going to the Middle East is not a -- an existing state of        |

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | mind as to his -- as to what his intent was when he was             |
|       | 2  | attempting to leave the United States.  That only represents        |
|       | 3  | what the defendant's state of mind was at the time of the           |
|       | 4  | interview, not at the time when Mr. Elhuzayel was intending         |
|       | 5  | to leave the United States.                                         |
| 11:35 | 6  | So the government's position is that those                          |
|       | 7  | statements given during the post-arrest interview fall under        |
|       | 8  | statement of memory and statement of belief to the extent           |
|       | 9  | that the defense -- the defendant was saying that he did not        |
|       | 10 | believe, for example, that, uh, Islamic State was a                 |
|       | 11 | terrorist organization or something to that effect.  That           |
|       | 12 | would be a statement of belief or a statement of memory that        |
|       | 13 | is specifically excluded by Rule 803(3).                            |
| 11:35 | 14 | So the particular rule that Mr. Lengyel-Leahu                       |
|       | 15 | seeks to invoke to have those post-arrest statements that he        |
|       | 16 | identified in the opposition, those statements would be --          |
|       | 17 | would not be admissible by invoking 803(3).                         |
| 11:36 | 18 | THE COURT:  Okay.  Counsel.                                          |
| 11:36 | 19 | MR. LENGYEL-LEAHU:  Well, he just misstated the                     |
|       | 20 | rule.                                                               |
| 11:36 | 21 | THE COURT:  I can't hear you.                                        |
| 11:36 | 22 | MR. LENGYEL-LEAHU:  I believe he just misstated                     |
|       | 23 | the rule.  It has nothing to do with belief; it has to do           |
|       | 24 | with motive and intent, which F.R.E. specifically talks             |
|       | 25 | about, which is what we're talking about here.                      |

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 112 of 146   Page ID #:3947
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

112

11:36    1              And it's a contemporaneous statement because he

         2    was arrested at the airport, and they asked him why he's

         3    traveling, that goes -- we've got a conspiracy case and

         4    we've got an overt act and got an attempt case, but an

         5    attempt to provide material support.  And the only -- the

         6    only illegal act that the government is bringing in is the

         7    travel.

11:36    8              THE COURT:  Okay.  So let's go over each area.

         9    Let's make it very simple.

11:36   10              First area is that you'd like to include, when the

        11    agent is on the stand, cross-examination that your client

        12    gave an explanation that he was going to get married.

11:37   13              MR. LENGYEL-LEAHU:  Correct.

11:37   14              THE COURT:  What else?  I don't want to hear now,

        15    "It's in my brief," et cetera.  We're going to go through it

        16    one by one.  What else?

11:37   17              MR. LENGYEL-LEAHU:  Can you give me one second,

        18    Your Honor?

11:37   19              THE COURT:  See, if you can remember, I can't

        20    remember.  So you go get your brief now.  Each specific

        21    area.

11:38   22              Take your time now, and I want you to be specific;

        23    help me.

11:38   24              What's your second area?

11:38   25              MR. LENGYEL-LEAHU:  I didn't mean for this to be

1    it, Your Honor.  What I meant for this --

11:38    2          THE COURT:  I can take a recess, and you can get

3    organized, then, and come back right after lunch and lay out

4    those areas so I hear an absolute record of what specific

5    area the government has told you that they are introducing

6    that you want to rebut.

11:38    7          I've heard one already.  I've heard one already.

8    You want to cross-examine the agent that your client also

9    said, "I'm going to the Middle East to get married."  I'm

10    asking you simply, what else?

11:38   11          MR. LENGYEL-LEAHU:  The other area pretty sure

12    that I identified was --

11:38   13          THE COURT:  Well, why don't you just go get your

14    brief?

11:38   15          MR. LENGYEL-LEAHU:  It's not easily accessible.

11:38   16          THE COURT:  Well, sure it is.  You've got it.  You

17    wrote it.  Go get it.  And I'll wait.  We can come back at

18    1:30 if you need to go find it.  In other words, I want a

19    record.  I want to hear from you.  And let's get this

20    resolved for you.

11:39   21          MR. LENGYEL-LEAHU:  I guess I wasn't prepared to

22    litigate the issue today, Your Honor.  I didn't realize that

23    we were gonna be dealing with this, and I apologize.

11:39   24          THE COURT:  Don't worry about that.  Let's get it

25    resolved.  You don't have to apologize.  I'm just not

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | floating around with general statements now from either            |
|       | 2  | side.                                                               |
| 11:39 | 3  | So 1:30, is that convenient?  Two o'clock?  Five                    |
|       | 4  | o'clock?  You tell me the time.                                     |
| 11:39 | 5  | MR. LENGYEL-LEAHU:  Right.  I don't know.                           |
| 11:39 | 6  | THE COURT:  Because your brief isn't as clear as                    |
|       | 7  | you think.                                                          |
| 11:39 | 8  | MR. LENGYEL-LEAHU:  Understood.                                     |
| 11:39 | 9  | THE COURT:  In other words, it says motive,                        |
|       | 10 | intent; it leaves this whole speculative area where all of a        |
|       | 11 | sudden I'm getting an objection from the government in front        |
|       | 12 | of the jury, and that's going to disturb your                       |
|       | 13 | cross-examination.  I'm trying not to do that.  So this is          |
|       | 14 | the ultimate courtesy.                                              |
| 11:39 | 15 | MR. LENGYEL-LEAHU:  Agreed.                                         |
| 11:39 | 16 | THE COURT:  And so what are you concerned                           |
|       | 17 | about? -- that the government is producing in their direct          |
|       | 18 | examination of this witness?  And one of those is his               |
|       | 19 | explanation that he was going to join ISIL or whatever.  And        |
|       | 20 | you want to show that he also stated that he was going to           |
|       | 21 | the Middle East to get married.                                     |
| 11:40 | 22 | MR. LENGYEL-LEAHU:  And the second one, if I'm not                  |
|       | 23 | mistaken, was that he was immigrating and he was going to go        |
|       | 24 | to the Middle East to live forever.                                 |
| 11:40 | 25 | THE COURT:  Immigrating and going to the Middle                     |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | East to remain forever.  Where is that in your brief?        |
| 11:40 | 2  | MR. LENGYEL-LEAHU:  I think that was the second             |
|       | 3  | point that I raised.  I think.                               |
| 11:40 | 4  | THE COURT:  Okay.  Do you have your brief with              |
|       | 5  | you?                                                          |
| 11:40 | 6  | MR. LENGYEL-LEAHU:  No, sir, I don't.  Like I               |
|       | 7  | mentioned, I did not come prepared to litigate those.        |
| 11:41 | 8  | THE COURT:  Does anybody have a copy of his brief?          |
|       | 9  | Ms. Corrigan?                                                 |
| 11:41 | 10 | MS. CORRIGAN:  I can pull that up, Your Honor.              |
| 11:41 | 11 | THE COURT:  Okay.  Ms. Corrigan's going to pull it         |
|       | 12 | up for you, Counsel.                                         |
| 11:41 | 13 | MR. LENGYEL-LEAHU:  Thank you.                              |
| 11:41 | 14 | THE COURT:  What's the third area?                          |
| 11:41 | 15 | MR. LENGYEL-LEAHU:  I think those are the major            |
|       | 16 | areas.                                                        |
| 11:41 | 17 | THE COURT:  These are the two areas?                        |
| 11:41 | 18 | MR. LENGYEL-LEAHU:  These are the two, and I               |
|       | 19 | believe that we agreed that after he testifies that we could |
|       | 20 | actually litigate the other areas I want to cross-examine    |
|       | 21 | him on.                                                       |
| 11:41 | 22 | THE COURT:  Well, as long as I don't have a record         |
|       | 23 | that somehow you're being precluded from giving an opening    |
|       | 24 | statement, I don't mind waiting.  If you have any concern     |
|       | 25 | about your opening statement, then I want to get these        |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | resolved.                                                            |
| 11:41 | 2  | MR. LENGYEL-LEAHU:  As far as the opening                           |
|       | 3  | statement goes, absolutely, we covered these two.                   |
| 11:41 | 4  | As far as the opening statement goes, if we can                     |
|       | 5  | cover just these two, I'm tickled pink, and then we'll deal         |
|       | 6  | with other ones at the appropriate time.                            |
| 11:41 | 7  | THE COURT:  Okay.  All right.                                       |
| 11:41 | 8  | And the government's objection, again, is under                     |
|       | 9  | 803?                                                                 |
| 11:42 | 10 | MR. NAM:  That's correct, Your Honor.                               |
| 11:42 | 11 | THE COURT:  So let me understand that you don't                     |
|       | 12 | believe there's a nexus -- and that's a bad word "nexus."           |
|       | 13 | But if the defendant's making a statement that he's going to        |
|       | 14 | go join ISIL; that in the same conversation, if he said he's        |
|       | 15 | going to go get married, that should be precluded.                  |
| 11:42 | 16 | MR. NAM:  That's correct, Your Honor, because that                  |
|       | 17 | represents a statement of memory, which is specifically             |
|       | 18 | excluded by 803(3).                                                  |
| 11:42 | 19 | THE COURT:  That's his memory?  Wouldn't that be                    |
|       | 20 | his intent? -- like if, I'm gonna go join ISIL or I'm going         |
|       | 21 | to get married?  I'm having trouble sorting that out.               |
| 11:42 | 22 | MR. NAM:  The defense raised that under 803(3)                      |
|       | 23 | such a statement that he intended to go to the Middle East          |
|       | 24 | to marry a woman comes in as the defendant's then existing          |
|       | 25 | state of mind.  The defendant's words as to what his intent         |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| | 1 | was at the time he was attempting to travel was given after |
| | 2 | he was attempting to travel during the interview; so |
| | 3 | therefore, it represents what his memory was as to whatever |
| | 4 | his intent was prior, and that occurred after -- after the |
| | 5 | time he had a chance to reflect. |
| 11:43 | 6 | THE COURT:  Why isn't the same reasoning that he's |
| | 7 | going there to fight for ISIL? |
| 11:43 | 8 | MR. NAM:  Because that is an admission that is |
| | 9 | given by the defendant, which is permitted under 801, |
| | 10 | Your Honor. |
| 11:43 | 11 | THE COURT:  Okay.  Perhaps I haven't paid enough |
| | 12 | attention to this, and I need to do some research.  Okay. |
| 11:43 | 13 | What about his immigrating to the Middle East and |
| | 14 | he's going to remain?  The same reasoning? |
| 11:43 | 15 | MR. NAM:  The same reasoning, Your Honor.  And I |
| | 16 | would point Your Honor to the government's reply in which we |
| | 17 | cite the Ninth Circuit case of *Emert (phonetic)*, in which it |
| | 18 | states that the exclusion of the statements of memory or |
| | 19 | belief in Rule 803(3), if that is to have any effect, it is |
| | 20 | to narrowly limit those admissible statements to |
| | 21 | declarations of condition.  For example, I am scared and not |
| | 22 | believe -- for example I am scared because someone |
| | 23 | threatened me.  And so the second portion explaining the, |
| | 24 | uh, feeling of scaredness that a person is expressing would |
| | 25 | be barred under 803(3).  And the government's position, |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 118 of 146   Page ID #:3953
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

118

1       Your Honor, is that what the defendant seeks to have

2       admitted is very similar to that.

11:45   3              THE COURT:  So you believe that it's 803(3); is

4       that correct?

11:45   5              MR. NAM:  That's the provision under which the

6       defendant is seeking to have his statements admitted,

7       Your Honor.  And the government's position is that he may

8       not introduce those additional statements under that

9       particular rule.

11:45   10             THE COURT:  No memory or belief, but he can

11      introduce an intent, a plan, a motive, design, a mental

12      feeling, pain, or health.

11:45   13             MR. NAM:  That's correct, Your Honor.  That which

14      the defendant is expressing as an expression of what he is

15      feeling or intending at that moment, and when he was giving

16      a post-arrest interview, that moment had passed.  It was no

17      longer contemporaneous with that intent.  He had a chance to

18      reflect and also misrepresent his intent, which is -- which

19      is a standard that the Circuit has used to limit the

20      application.  And the government, Your Honor, when we

21      present, uh, the defendant's excerpts --

11:46   22             THE COURT:  Is that true? -- during the same

23      interview?  In other words, I don't know.  I'm humbly

24      asking.  It would seem to me that you would be absolutely

25      right if a statement was made and then a person came back

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | subsequent and then made an additional statement.  I have no |
|       | 2  | disagreement with that.                                      |
| 11:46 | 3  | When it comes during the same interview, is that             |
|       | 4  | the kind of memory that is precluded?                        |
| 11:46 | 5  | MR. NAM:  During the interview he was describing             |
|       | 6  | what he was intending earlier when he was attempting to      |
|       | 7  | travel outside of the United States.                         |
| 11:46 | 8  | And so when he was describing what his intent was            |
|       | 9  | back then, he was -- it was no longer contemporaneous.  He   |
|       | 10 | was describing a past condition, past intent.  Which is --   |
|       | 11 | which the government submits is excluded by the rule and     |
|       | 12 | also case law supports such a reading that there -- um, the  |
|       | 13 | reasons for which the defendant was leaving the country      |
|       | 14 | would be the type of statement of belief or memory that      |
|       | 15 | would be barred by the rule because this post-arrest         |
|       | 16 | interview was taking place after he had made the attempt to  |
|       | 17 | leave the country.                                           |
| 11:47 | 18 | THE COURT:  I'm going to go back and do some more           |
|       | 19 | research.  Apparently I'm not knowledgeable enough to make a |
|       | 20 | ruling, and I will be knowledgeable by the time we           |
|       | 21 | reconvene.                                                   |
| 11:47 | 22 | What else?  What other area -- well, you can have            |
|       | 23 | as many pop-ups as you like, but what else?  What other area |
|       | 24 | would you like me to look at?                                |
| 11:47 | 25 | I've heard two things so far.  You'd really like            |

|  |  |  |
|---|---|---|
| | 1 | to be able to cross-examine and say to the witness on the |
| | 2 | stand, "Didn't he also say to you that he was going to get |
| | 3 | married?  And didn't he also say to you that he was going to |
| | 4 | immigrate and remain in the Middle East forever?" |
| 11:48 | 5 | MR. LENGYEL-LEAHU:  Exactly right, Your Honor. |
| 11:48 | 6 | THE COURT:  Anything else? |
| 11:48 | 7 | MR. LENGYEL-LEAHU:  Not at the present time. |
| 11:48 | 8 | THE COURT:  There we are.  There's my problem. |
| | 9 | I'm gonna ask you again, and I'm going to press on you now a |
| | 10 | little bit.  Is there anything else that you want to state |
| | 11 | during your opening statement?  Because your claim has been, |
| | 12 | Judge, you really have to make this ruling now, because I, |
| | 13 | as defense counsel, need to know can I, with credibility, |
| | 14 | make an opening statement and say, "By the way, Agent, |
| | 15 | didn't he also say the following to you?" |
| 11:48 | 16 | I understand that. |
| 11:48 | 17 | MR. LENGYEL-LEAHU:  I'm sorry.  I will get better |
| | 18 | at understanding your questions.  We just don't know each |
| | 19 | other well enough yet.  And I apologize because I |
| | 20 | misunderstood.  For the purposes of the opening statement, |
| | 21 | those were the two areas that I wanted to tell the jury that |
| | 22 | the FBI were told of these reasons for traveling. |
| 11:49 | 23 | THE COURT:  Okay. |
| 11:49 | 24 | MR. LENGYEL-LEAHU:  And I want to make sure before |
| | 25 | I say those words that I -- |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 11:49 | 1 | THE COURT: *(To U.S. Marshal:)* Marcelino, I need |
| | 2 | to talk to you. |
| 11:49 | 3 | MR. LENGYEL-LEAHU:  -- that I'm going to be |
| | 4 | allowed to ask those specific questions on cross, and then |
| | 5 | we'll deal with the other ones after he's testified at the |
| | 6 | appropriate time. |
| 11:49 | 7 | THE COURT:  So I'm going to keep repeating back to |
| | 8 | you like a broken record.  There's no prejudice to you in |
| | 9 | the Court delaying any of those other rulings until after |
| | 10 | the witness testifies on direct examination. |
| 11:49 | 11 | MR. LENGYEL-LEAHU:  Exactly right. |
| 11:49 | 12 | THE COURT:  And then I can hear that direct |
| | 13 | examination, and I'm in a better position to decide if |
| | 14 | there's -- I'm gonna use a bad word -- nexus, a relation, if |
| | 15 | you will.  But these two areas are of particular concern to |
| | 16 | you. |
| 11:49 | 17 | And what I'm hearing you don't want the prejudice |
| | 18 | in front of the jury of making that kind of opening |
| | 19 | statement, that he also told the FBI that he is going to the |
| | 20 | Middle East, and then it doesn't come in.  And you don't |
| | 21 | wanna bargain away your constitutional right of your client |
| | 22 | testifying or not testifying.  In other words, it's part of |
| | 23 | the decision that would go into, frankly, to your client |
| | 24 | eventually testifying or not. |
| 11:50 | 25 | MR. LENGYEL-LEAHU:  Exactly. |

| | | |
|---|---|---|
| 11:50 | 1 | THE COURT:  Fair summary? |
| 11:50 | 2 | MR. LENGYEL-LEAHU:  Exactly right. |
| 11:50 | 3 | THE COURT:  Do you mind if I go back and look at |
| | 4 | 803(3) again? |
| 11:50 | 5 | MR. LENGYEL-LEAHU:  Yes. |
| 11:50 | 6 | THE COURT:  Okay.  Do you want to go to lunch? |
| 11:50 | 7 | MR. LENGYEL-LEAHU:  Sure. |
| 11:50 | 8 | THE COURT:  Okay. |
| 11:50 | 9 | MR. NAM:  Your Honor, if I may, this may assist |
| | 10 | the Court in resolving this.  The government's mode of |
| | 11 | presentation is going to be we're going to be presenting |
| | 12 | five clips, as provided to the defense, without -- |
| 11:50 | 13 | THE COURT:  How long are they? |
| 11:50 | 14 | MR. NAM:  They're maybe a minute or two each. |
| 11:50 | 15 | THE COURT:  Would it be better if I looked at |
| | 16 | those five clips personally? |
| 11:50 | 17 | MR. NAM:  We can provide that to Your Honor.  Also |
| | 18 | we can provide a written transcript.  That may be easier. |
| 11:50 | 19 | THE COURT:  No, no, we can show it in court. |
| | 20 | They're five clips, right?  Takes a few minutes after lunch. |
| 11:51 | 21 | MS. HEINZ:  I'm sorry, Your Honor.  I just don't |
| | 22 | know if we have the technology right now. |
| 11:51 | 23 | THE COURT:  Counsel will get his brief, and you'll |
| | 24 | get the clips.  I'm just joking. |
| 11:51 | 25 | MS. HEINZ:  We certainly have the -- we actually |

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | have the transcript excerpts, but I'm not sure we actually   |
|        | 2  | have the clips.                                              |
| 11:51  | 3  | THE COURT:  We do.  It's just how long it takes to           |
|        | 4  | get the brief for defense counsel and the clips for you.     |
|        | 5  | We've got all the time in the world.                         |
| 11:51  | 6  | MS. HEINZ:  Yes, Your Honor.                                 |
| 11:51  | 7  | THE COURT:  How long will it take you to get the             |
|        | 8  | clips?                                                        |
| 11:51  | 9  | MS. HEINZ:  I guess we have them.                            |
| 11:51  | 10 | THE COURT:  Perfect.                                         |
| 11:51  | 11 | How long will it take you to get the brief?                 |
| 11:51  | 12 | MR. LENGYEL-LEAHU:  I've already got the brief.             |
|        | 13 | I've already read it.                                        |
| 11:51  | 14 | THE COURT:  There we go.                                     |
| 11:51  | 15 | MS. ELIOT:  May I add for the record just so it's           |
|        | 16 | complete, I have spoken with defense counsel last week, and  |
|        | 17 | I just wanted to be clear that in addition to those excerpt  |
|        | 18 | clips we're talking about, that I did "front" with the       |
|        | 19 | defense and there had been no objection that in the course   |
|        | 20 | of the direct, there were a few additional points from the   |
|        | 21 | statement that the agent would testify about without playing |
|        | 22 | a clip.  I didn't want it to seem that the only thing we     |
|        | 23 | were eliciting about the post-arrest statement --            |
| 11:52  | 24 | THE COURT:  So --                                            |
| 11:52  | 25 | MS. ELIOT:  -- and we've talked about these.                |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

124

| | | |
|---|---|---|
| 11:52 | 1 | THE COURT:  -- we're gonna watch clips after |
| | 2 | lunch; right?  What's convenient for you? |
| 11:52 | 3 | MS. ELIOT:  Is 1:30 okay? |
| 11:52 | 4 | THE COURT:  How about 2:00? |
| 11:52 | 5 | MS. ELIOT:  2:00 is fine.  2:00 o'clock. |
| 11:52 | 6 | MR. LENGYEL-LEAHU:  Um... |
| 11:52 | 7 | THE COURT:  Excellent.  Good.  Well, 2:00 o'clock. |
| | 8 | That's perfect. |
| 11:52 | 9 | All right.  Then, Counsel, you're all ordered back |
| | 10 | at 2:00 o'clock, and we'll watch the clips.  I'll go do some |
| | 11 | more research on 803(3). |
| 11:52 | 12 | Thank you very much. |
| 11:52 | 13 | *(Lunch recess held at 11:52 a.m.)* |
| 02:14 | 14 | *(Proceedings resumed at 2:14 p.m.)* |
| 02:14 | 15 | THE COURT:  Then, Counsel, we're back on the |
| | 16 | record.  The parties are present and counsel are present. |
| 02:14 | 17 | Do you have those portions of the tape, Counsel? |
| 02:14 | 18 | MR. NAM:  Yes, Your Honor. |
| 02:14 | 19 | THE COURT:  Okay. |
| 02:14 | 20 | MR. NAM:  We have the -- we intend to use four |
| | 21 | videos of Mr. Elhuzayel's post-arrest interview.  We are |
| | 22 | unable to have the video play on the Court's screen, but the |
| | 23 | audio was coming through.  It appears to be some kind of a |
| | 24 | connection issue with the court's system, Your Honor. |
| 02:15 | 25 | THE COURT:  You mean if we were in session right |

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

125

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | now with the jury, we couldn't play it?                    |
| 02:15 | 2  | MR. NAM:  We would not be using this particular            |
|       | 3  | computer, Your Honor.                                       |
| 02:15 | 4  | THE COURT:  I'm going to take a recess.  I want to         |
|       | 5  | see this tonight.                                           |
| 02:15 | 6  | Also, I want to see the entire conversation.  I            |
|       | 7  | want to see and hear it tonight.                           |
| 02:15 | 8  | I'll tell you why.  It makes a difference if it's          |
|       | 9  | contemporaneous.  And you may be correct under Rule 803, I |
|       | 10 | don't know yet, but I don't know that you're correct under |
|       | 11 | the rule of completeness.  And there's a big difference.   |
| 02:15 | 12 | Let me give you an example.  I understand that the         |
|       | 13 | government's entitled to take those portions and hearsay   |
|       | 14 | unless there's an exception to the hearsay rule on the     |
|       | 15 | defense part that they shouldn't be submitted.  But I don't|
|       | 16 | think you're entitled to use it as a sword and a shield.   |
|       | 17 | And I don't know enough about your statement yet.  So I'm  |
|       | 18 | going to hear the entire conversation this evening.        |
| 02:16 | 19 | For instance, if Mr. Elhuzayel said in a portion          |
|       | 20 | of it, "I'm going to fight for ISIS," and then half an hour|
|       | 21 | or 45 minutes went away or went by, or he came back in     |
|       | 22 | another interview the same day, I have no doubt that you're|
|       | 23 | correct on 803.                                            |
| 02:16 | 24 | But if, in fact, he's making a statement saying,          |
|       | 25 | "I'm gonna go fight for ISIS, and, oh, I'm gonna get married|

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | and I'm gonna stay forever," I'm not certain you're correct. |
|  | 2 | If you're correct under 803, you're not correct under the |
|  | 3 | rule of completeness under 106. |
| 02:16 | 4 | So it makes a difference to me when and how those |
|  | 5 | statements are made during the interview.  And I'm not |
|  | 6 | getting that from either one of your briefings.  So I'm not |
|  | 7 | fault-finding.  I want to see this tape, and I want to see |
|  | 8 | it on my screen.  Okay? |
| 02:16 | 9 | How long will it take?  Do we need MIS up here? |
| 02:17 | 10 | THE CLERK:  I just asked help to come up. |
| 02:17 | 11 | THE COURT:  I'm going to see it tonight.  I'm |
|  | 12 | going to see it on my screen, so I'm going to see it in |
|  | 13 | court.  That's our fault.  We'll get our MIS people up and |
|  | 14 | moving on that for you. |
| 02:17 | 15 | What else would you like to do while we're |
|  | 16 | waiting? |
| 02:17 | 17 | MR. LENGYEL-LEAHU:  *(No response.)* |
| 02:17 | 18 | THE COURT:  Just wait, apparently; right? |
| 02:17 | 19 | MR. LENGYEL-LEAHU:  I'm sorry.  I didn't hear you, |
|  | 20 | Your Honor. |
| 02:17 | 21 | THE COURT:  What would you like to do while we're |
|  | 22 | waiting?  In other words, I'm going to take a recess, and |
|  | 23 | you're sitting until I can get my screens operating.  And |
|  | 24 | I'm going to hear the complete statement. |
| 02:17 | 25 | MR. NAM:  Your Honor, if I may note, as to the |

**DEBBIE GALE, U.S. COURT REPORTER**

1       question of rule of completeness, the parties have come to
2       an agreement as -- that that rule is not implicated.  That
3       is, the portions that the government has presented to the
4       defense, the defense has agreed that rule of completeness
5       question is not implicated.  And so the only question that
6       is before the Court, we believe, is 803(3).  And during the
7       break that the Court gave us, the parties have come to an
8       agreement as to how we should proceed.  And so the
9       government's, uh, request of the Court is to --
02:18   10              THE COURT:  I don't understand.  What are you
11       saying?
02:18   12              MR. NAM:  We believe and we've conferred with
13       Mr. Lengyel-Leahu prior to reappearing this afternoon,
14       Your Honor.  The government intends to, as a matter of trial
15       strategy, introduce through the testimony of the agent that
16       in the post-arrest statement that Mr. Elhuzayel gave as part
17       of his interview, uh -- the government is going to introduce
18       through the testimony of an agent that the defendant
19       intended to marry in Israel and that that -- and that's --
20       and then, secondly, that the defendant intended to live in
21       Israel and not come back.
02:18   22              THE COURT:  Are you going to bring that out in
23       your direct examination?
02:18   24              MR. NAM:  That's correct.  As --
02:18   25              THE COURT:  Now, just a moment.  Slow down.  I

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| | 1 | didn't hear that before I left.  I'm not fault-finding.  Is |
| | 2 | this new? |
| 02:18 | 3 | MR. NAM:  That's correct, Your Honor. |
| 02:18 | 4 | THE COURT:  This has occurred over the lunch hour. |
| | 5 | So I didn't miss anything. |
| 02:19 | 6 | MR. NAM:  That's correct, Your Honor. |
| 02:19 | 7 | THE COURT:  Okay.  Now, does that mean that |
| | 8 | counsel for the defense can make the statement in his |
| | 9 | opening statement that his client said that he was going to |
| | 10 | get married and leave forever, basically? |
| 02:19 | 11 | MS. HEINZ:  Yes. |
| 02:19 | 12 | MR. NAM:  That's not -- we would not object to |
| | 13 | that, yes, Your Honor. |
| 02:19 | 14 | THE COURT:  Is that a complete statement, though? |
| 02:19 | 15 | You see, what can't happen is that each of you |
| | 16 | can't take a portion.  What is objectionable, maybe not |
| | 17 | legally so, is that if there's a nexus, if there's a |
| | 18 | continuing flow of thought like "I'm gonna join ISIS; I'm |
| | 19 | gonna leave the country forever, and I'm gonna get married," |
| | 20 | and that comes in close proximity in time, I don't know that |
| | 21 | the government can use that as a sword and shield under 106. |
| | 22 | I think that is the rule of completeness or incompleteness. |
| | 23 | Okay?  Now, tentatively. |
| 02:19 | 24 | But, by the same token, I'm reminding you that it |
| | 25 | might not be if it's made in a different time period, |

1   et cetera, and so you may be absolutely right on 803.

02:20  2        I thought we left with this lengthy break because

3   counsel for the defense wanted to make a statement that

4   he -- his client said to the FBI, as well as "I was going to

5   go fight for ISIS," that "I was gonna get married and stay

6   away."

02:20  7        What I don't think counsel can do, though, is make

8   an incomplete statement either.  In other words, neither one

9   of you can.

02:20 10        That's kind of chopping it up.  So if you're gonna

11  make that statement, it would seem to me it's a complete

12  statement, whatever he said during the interview -- and

13  apparently he said all these things.  What leaves me in a

14  quandary is I haven't seen this tape yet, the whole tape.  I

15  don't know when he made the statement in context to the

16  other statements he made.  I don't know if it's one

17  sentence.  I don't know if it's two sentences.  I don't know

18  if it's separated by a half hour.  I don't even know if it's

19  a subsequent interview the same day, 'cause nobody's shown

20  it to me.

02:20 21        MR. NAM:  Apologize.  The rule of completeness

22  question is not implicated because the parties, I believe,

23  both agree that the statements that are to be presented to

24  the Court, to the jury is going to be a fair representation

25  of the interview.  And so both questions on --

| | | |
|---|---|---|
| 02:21 | 1 | THE COURT:  So that's resolved, then. |
| 02:21 | 2 | MR. NAM:  Yes, Your Honor. |
| 02:21 | 3 | THE COURT:  So it's resolved. |
| 02:21 | 4 | MR. NAM:  I believe so, Your Honor. |
| 02:21 | 5 | THE COURT:  So it's resolved. |
| 02:21 | 6 | MR. NAM:  Yes. |
| 02:21 | 7 | THE COURT:  It's resolved. |
| 02:21 | 8 | MR. NAM:  Yes, Your Honor. |
| 02:21 | 9 | THE COURT:  Excellent. |
| 02:21 | 10 | Okay.  Now, what have we been doing for the last |
| | 11 | two and a half hours, then? |
| 02:21 | 12 | MR. NAM:  Government's position is that, as a |
| | 13 | matter of strategy, we have come to this decision. |
| 02:21 | 14 | THE COURT:  I need him back in here.  I don't know |
| | 15 | where he went.  I want these screens operating.  We're not |
| | 16 | leaving until everything is set up and ready to go. |
| 02:21 | 17 | THE CLERK:  He's coming back. |
| 02:21 | 18 | THE COURT:  Everybody's just sitting here. |
| 02:21 | 19 | THE CLERK:  He's coming back. |
| 02:21 | 20 | THE COURT:  Counsel? |
| 02:21 | 21 | MR. NAM:  There's nothing further, Your Honor. |
| 02:21 | 22 | THE COURT:  Okay.  Counsel? |
| 02:21 | 23 | MR. LENGYEL-LEAHU:  I just want to make sure that |
| | 24 | the record is clear, Your Honor.  What we have resolved is |
| | 25 | the issue that we were discussing prior to the lunch break, |

|  |  |  |
|---|---|---|
|  | 1 | which was specifically that I wished to inform the jury in |
|  | 2 | my opening statement that the FBI will testify that my |
|  | 3 | client indicated that he was going to get married and that |
|  | 4 | he was going to immigrate and live there forever. |
| 02:22 | 5 | THE COURT:  Okay. |
| 02:22 | 6 | MR. LENGYEL-LEAHU:  And that's what we've agreed |
|  | 7 | to.  Other things counsel said I don't know if we've |
|  | 8 | necessarily agreed to.  We'll have a chance to talk, and I |
|  | 9 | think we can probably resolve some of the other issues we |
|  | 10 | have regarding cross-examination at the appropriate time. |
| 02:22 | 11 | THE COURT:  So I'm not ruling on 803 this evening. |
| 02:22 | 12 | MS. HEINZ:  That's correct, Your Honor. |
| 02:22 | 13 | MR. NAM:  Yes, Your Honor. |
| 02:22 | 14 | THE COURT:  All right. |
| 02:22 | 15 | And under the rule of completeness, this is going |
|  | 16 | to be allowed at least as to these two sections:  Getting |
|  | 17 | married -- |
| 02:22 | 18 | MS. HEINZ:  Yes, Your Honor. |
| 02:22 | 19 | THE COURT:  -- and leaving forever. |
| 02:22 | 20 | MS. HEINZ:  Yes, Your Honor. |
| 02:22 | 21 | THE COURT:  Okay. |
| 02:22 | 22 | Okay.  Where's Adrian? |
| 02:22 | 23 | Gentlemen, not your fault, but I want these |
|  | 24 | machines operating tonight.  So we're sitting.  Get them |
|  | 25 | operating with a tape recorder.  I want to see a portion of |

|         |    |                                                                        |
|---------|----|------------------------------------------------------------------------|
|         | 1  | a tape tonight.  And also I'm going to need a camera.  We're            |
|         | 2  | sitting here until I get a camera.  I just heard that the               |
|         | 3  | Southern Division doesn't have a camera.                                |
| 02:23   | 4  | COURT TECHNICIAN:  We don't have one at the                             |
|         | 5  | moment.                                                                 |
| 02:23   | 6  | THE COURT:  I was told last week when I asked for                       |
|         | 7  | a camera -- not from you gentlemen, but from somebody in our            |
|         | 8  | bureaucracy that our camera was being charged, so I                     |
|         | 9  | patiently waited for our camera to be charged.  And today I             |
|         | 10 | hear that we don't even have a camera.  So the Southern                 |
|         | 11 | Division of the Central District doesn't have a camera?                 |
| 02:23   | 12 | I'm sitting here waiting.  We're not going                              |
|         | 13 | anyplace until I have a camera tonight.  Taxpayer dollars.              |
|         | 14 | That's not your fault.  Get Ellen downstairs.  Call Kathy.              |
|         | 15 | Call Kiry, or I will.  But a camera will appear in my court.            |
|         | 16 | Okay.                                                                   |
| 02:23   | 17 | So we're sitting.                                                       |
| 02:24   | 18 | *(Court and clerk confer.)*                                             |
| 02:24   | 19 | MS. HEINZ:  Your Honor, in order to play the full                       |
|         | 20 | interview, I need to go upstairs and get some discs.                    |
| 02:24   | 21 | THE COURT:  Sure.  Go get it.                                           |
| 02:24   | 22 | MS. HEINZ:  May I be excused?                                           |
| 02:24   | 23 | THE COURT:  Sure.  We're sitting here.  Go get it.                      |
| 02:25   | 24 | *(Ms. Heinz exits the courtroom.)*                                      |
| 02:29   | 25 | THE COURT:  Now, you've got the snippets playing                        |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | now, correct?                                                  |
| 02:29 | 2  | MR. NAM:  That's correct.                                      |
| 02:29 | 3  | THE COURT:  And we can see 'em on the screen.                  |
| 02:29 | 4  | MR. NAM:  Yes, Your Honor.                                     |
| 02:29 | 5  | THE COURT:  Does that mean you're able to play the             |
|       | 6  | full tape?  In other words, I don't need to see the full       |
|       | 7  | tape as long as you both have entered into this agreement      |
|       | 8  | concerning 106.  I just want to make certain our equipment     |
|       | 9  | is ready to go.                                                |
| 02:29 | 10 | MR. NAM:  Yes, Your Honor.  We tried with the                  |
|       | 11 | computer that we will be using during trial before today,      |
|       | 12 | and everything was working fine, Your Honor.                   |
| 02:29 | 13 | THE COURT:  So I'm not going to have to stop the               |
|       | 14 | trial for this; is that correct?                               |
| 02:30 | 15 | MR. NAM:  Yes, Your Honor.                                     |
| 02:30 | 16 | THE COURT:  Okay.  Now, I'm waiting for the                    |
|       | 17 | camera.  Where's our camera?                                   |
| 02:30 | 18 | COURT TECHNICIAN:  I'm going to go downstairs and              |
|       | 19 | see what's going on.                                           |
| 02:30 | 20 | THE COURT:  Okay.  We'll sit and wait.                         |
| 02:30 | 21 | And while we're waiting, Ms. Corrigan, Marcelino               |
|       | 22 | brought to my attention just a moment ago a conversation       |
|       | 23 | apparently your client had had.  Would this be a good time     |
|       | 24 | to have an *in camera* hearing concerning that, or should that |
|       | 25 | be with other counsel present?                                 |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 288   Filed 03/31/17   Page 134 of 146   Page ID #:3969
8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

134

02:30  1          MS. CORRIGAN:  I'm assuming it's just as to the

       2   soy issue.

02:30  3          THE COURT:  It's as to the soy issue.  I didn't

       4   know what your preference was.

02:30  5          MS. CORRIGAN:  I don't have an issue with having

       6   it in public unless my client does.

02:30  7          *(Counsel and client confer.)*

02:31  8          THE COURT:  Okay.  Marcelino, would you relate to

       9   me or to all counsel what you told me and what

      10   Ms. Corrigan's now aware of.

02:31 11          MS. CORRIGAN:  Just for the record, my client's

      12   indicated he has no objection.  And I have spoken with

      13   Mr. Hazelwood about this issue.

02:31 14          U.S. MARSHAL:  So Mr. Badawi informed me at

      15   lunchtime that the Boost that he's been consuming has

      16   contained ingredient of soy, which makes him ill; so

      17   therefore he's requested not to take those.  Instead, what

      18   he's preferred to do is he's asking for double meals in lieu

      19   of not taking the Boost.

02:31 20          THE COURT:  If you'll eat, I won't have you use

      21   Boost.

02:31 22          But that means you have to eat.  I've got to make

      23   sure you keep your strength up so you remain cognitive and

      24   aware of the proceedings.

02:31 25          And if that's acceptable to you, then we'll

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

135

|   |   |   |
|---|---|---|
| | 1 | continue with the same process with -- I'll allow food every |
| | 2 | day for you. |
| 02:32 | 3 | MS. CORRIGAN:  Your Honor -- |
| 02:32 | 4 | THE COURT:  But I want to make certain that's |
| | 5 | really what the gentleman's going to do. |
| 02:32 | 6 | MS. CORRIGAN:  I heard him say okay.  I don't know |
| | 7 | if the court reporter picked it up. |
| 02:32 | 8 | THE COURT:  Mr. Badawi, is this what you want to |
| | 9 | do? |
| 02:32 | 10 | DEFENDANT BADAWI:  Yeah.  I'll just eat. |
| 02:32 | 11 | THE COURT:  Okay.  You'll just eat.  Okay. |
| 02:32 | 12 | Will he be fed before he comes to court, and then |
| | 13 | he'll have the afternoon and evening meals in court? |
| 02:32 | 14 | U.S. MARSHAL:  That's correct, Your Honor. |
| 02:32 | 15 | THE COURT:  I'll make sure it's *halal* food. |
| 02:32 | 16 | There's a great place across the street, which you |
| | 17 | probably don't know about, but it's *halal* food, and I'll |
| | 18 | make sure I honor that for you.  Okay? |
| 02:32 | 19 | MS. CORRIGAN:  So I think, however, just to make |
| | 20 | sure we're all clear, though, because tomorrow Ramadan |
| | 21 | starts.  My understanding is my client will not be taking in |
| | 22 | solid food between sunrise and sunset. |
| 02:33 | 23 | THE COURT:  I was mistaken, then. |
| 02:33 | 24 | MS. CORRIGAN:  I think we need to be sure that |
| | 25 | we're clear. |

**DEBBIE GALE, U.S. COURT REPORTER**

02:33     1          THE COURT:  Let me talk to Mr. Badawi.  I may have

          2     jumped to a conclusion that's not appropriate.

02:33     3          I'm not going to let you stop the Boost, quite

          4     frankly, and then dissipate in weight during the trial.

          5     I'll try to honor your wishes concerning Ramadan, your

          6     religious preference.  But the idea of you not taking Boost

          7     or supplementing your intake in some way with sustaining

          8     liquid is not acceptable to the Court.  Because then you're

          9     going to dissipate in weight again.

02:33    10          And I'm trying to balance your religious needs

         11     against your well-being.  And you and I both know that there

         12     are exceptions in the Quran and Muslim faith for Ramadan,

         13     and one of those is health and well-being.

02:34    14          Now, if you're not going to take Boost, then, once

         15     again, you're putting me back in the position of having to

         16     take some kind of action.  So if you and counsel can come up

         17     with any alternative, please tell me.

02:34    18          MS. CORRIGAN:  Your Honor, I'm just doing a little

         19     bit of Google research here to see if there's an alternative

         20     Boost type of drink without soy, if the Court can give me a

         21     moment.  I'm not familiar with these drinks.

02:34    22          It looks that perhaps Ensure does not have soy,

         23     but maybe I could just take a look at that.

02:36    24          Your Honor, it looks like Ensure does have soy in

         25     it, but Mr. Hazelwood suggested perhaps he can check with

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       |  1 | the jail medical staff to see if there's something that can |
|       |  2 | counter the upset stomach.                             |
| 02:36 |  3 | THE COURT:  Let's call over now, then.                 |
| 02:36 |  4 | U.S. MARSHAL:  I did earlier.  My suggestion was       |
|       |  5 | just inquire with Mr. Badawi:  Would giving him something |
|       |  6 | that would treat -- say if it was an upset stomach is what |
|       |  7 | the soy was causing, the jail would simply give him    |
|       |  8 | something to sort of counter that.                     |
| 02:36 |  9 | THE COURT:  I want to know what that was.  I don't     |
|       | 10 | want the trial disturbed.                              |
| 02:36 | 11 | So, Mr. Badawi, you and your counsel are going to      |
|       | 12 | talk.  You're going to come up with a solution for me. |
| 02:36 | 13 | DEFENDANT BADAWI:  I'll just drink it.                 |
| 02:36 | 14 | THE COURT:  I'm sorry, sir?                            |
| 02:36 | 15 | DEFENDANT BADAWI:  I'll drink it.                      |
| 02:37 | 16 | THE COURT:  If there's something that settles your     |
|       | 17 | stomach with the soy, maybe we can give that to you also; |
|       | 18 | but I don't know.  So we're gonna find out from the jail. |
|       | 19 | And Marcelino's going to place a call over.  And we're going |
|       | 20 | to do all this today.  Try to make you as comfortable as |
|       | 21 | possible, sustain your weight, obtain your cognitive   |
|       | 22 | ability, try to honor your religious privileges, and keep |
|       | 23 | you healthy.                                           |
| 02:42 | 24 | *(Pause in the proceedings.)*                          |
| 02:44 | 25 | THE COURT:  Okay.  We're back on the record and        |

1       all counsel are present.

02:44   2       **COURTROOM 9D DOCUMENTED WITH PHOTOGRAPHS**

02:44   3           THE COURT:  Counsel, as counsel for your client,

4       would you go back with my court technicians.  I want you to

5       take a picture from anyplace in the courtroom.

02:44   6           If you can see those belly chains in any picture,

7       I want you to record that for me.

02:44   8           I don't believe you can, and if you can, we're

9       going to change it until it's absolutely pristine and

10      nothing can be seen.

02:44   11          You can move around.  You snap the pictures for

12      us.  The record should reflect I'm having counsel make

13      certain that his client and the belly chain, leaving his

14      feet and his hands operable, is not able to be seen.

02:44   15          Counsel, you're going to take the picture,

16      actually.

02:44   17          MR. LENGYEL-LEAHU:  Oh, I thought -- you want me

18      to take a picture if I saw something?

02:45   19          THE COURT:  No.  I'm going to take pictures anyway

20      for the Circuit.

02:45   21          I want them to see.  And then we're going to go

22      next door and take pictures.

02:45   23          In other words, if a jury can see anything or you

24      can see anything, I want you to let me know and take the

25      pictures.

02:45  1          Can you see that chain?

02:45  2          MR. LENGYEL-LEAHU:  *(Counsel complies.)*

02:45  3          THE COURT:  Make sure you get back to the second

       4  row also.  The record should reflect you're in the first

       5  row.  If I need to block out that row, I'll happy to do that

       6  for you.

02:45  7          Counsel, were you able to see anything?

02:45  8          MR. LENGYEL-LEAHU:  No, Your Honor.

02:46  9          THE COURT:  Okay.  I just wanna make sure you're

      10  satisfied.

02:46 11          Now you're in the second row.

02:46 12          *(Photographs taken.)*

02:46 13          THE COURT:  Why don't you go back to the third row

      14  just to be certain that we get all the angles.

02:46 15          *(Additional photographs taken.)*

02:47 16          MR. LENGYEL-LEAHU:  Got all the rows, Your Honor.

02:47 17          THE COURT:  Okay.  Were you able to see that chain

      18  in any way?  If you were, I want to change the configuration

      19  and make sure you're satisfied.

02:47 20          MR. LENGYEL-LEAHU:  No, sir, I was not able to see

      21  the chain.

02:47 22          THE COURT:  Okay.  Now I want to take a couple

      23  more pictures.  Bring the camera with the extension, if you

      24  would be so kind.

02:47 25          I'm going to order these be developed, made part

1   of the record, but sealed for security purposes so we have

2   them on record.  That way we'll demonstrate, although

3   there's a belly chain, there's complete access, hands, foot,

4   and the chain is completely unobtrusive and not able to be

5   seen.

02:49   6        Now I'd like Mr. Badawi and Mr. Elhuzayel

7   transported next door to the complex courtroom.

02:50   8        I'd like them placed in the seats where we had

9   them situated in before.  And the head marshal, counsel, I'm

10  going to ask -- which means order -- you to come next door.

11  You're going to be seated.  I want the Circuit to see what

12  that would look like if there were no restraints on your

13  client.  So they'll know what you're talking about.

02:50   14       And the family's welcome to come next door also.

15  We're going to open the courtroom also.

02:50   16       *(Further proceedings reported in the complex*

17       *courtroom as follows:)*

03:03   18   **COMPLEX COURTROOM 9C SETUP DOCUMENTED WITH PHOTOGRAPHS**

03:03   19       THE COURT:  All right.  We're on the record and

20  all counsel are present.

03:03   21       And what I'd like to do is take some photographs

22  of Mr. Wolfsen.  I'm just joking.  Mr. Wolfsen, if you will

23  have a seat, sir.  It's a pleasure.  Thank you.

03:04   24       I'd like to take some photographs of this

25  courtroom for a moment.  Just so the Circuit knows what

8:15-CR-0060-DOC - 6/6/2016 - Pretrial Proceedings

141

|  |  |  |
|--|--|--|
|  | 1 | we're talking about.  So would you be kind enough to take a |
|  | 2 | photograph of counsel and with the marshal seated up there. |
| 03:04 | 3 | Okay.  If you be kind enough to take a picture of |
|  | 4 | the gentlemen and the counsel. |
| 03:04 | 5 | COURT TECHNICIAN:  *(Complies.)* |
| 03:04 | 6 | THE COURT:  And then would you step back and get a |
|  | 7 | broader view of the entire complex for the high security |
|  | 8 | courtroom just because I think we're trying to avoid this |
|  | 9 | courtroom if possible. |
| 03:04 | 10 | Let the record reflect if we had more than two |
|  | 11 | defendants, I certainly would consider holding it here.  I |
|  | 12 | just think it's more humane, a better image to try to get |
|  | 13 | back to what I call a normal court than this particular |
|  | 14 | court with two defendants. |
| 03:04 | 15 | Now, for the record, I've offered to take the |
|  | 16 | belly chain off your client, and I want you to come down and |
|  | 17 | I want you to take a picture from this location for any |
|  | 18 | reviewing court of why I'm willing to take the belly chain |
|  | 19 | off here.  And the reason for that is so I perfect my record |
|  | 20 | that there's no access to the public; there's no loss |
|  | 21 | proximity; and that the marshals are seated behind the |
|  | 22 | defendants and would be seated standing off to |
|  | 23 | Mr. Elhuzayel's right side.  So there's no place the |
|  | 24 | gentlemen could go, including down a long narrow aisle. |
| 03:04 | 25 | So I want this photograph right here. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 03:04 | 1 | COURT TECHNICIAN:  *(Complies.)* |
| 03:04 | 2 | THE COURT:  And here. |
| 03:04 | 3 | COURT TECHNICIAN:  *(Complies.)* |
| 03:04 | 4 | THE COURT:  And then a broad sweep of the |
| | 5 | courtroom. |
| 03:04 | 6 | COURT TECHNICIAN:  *(Complies.)* |
| 03:04 | 7 | THE COURT:  If you would be so kind to go up on |
| | 8 | the bench and take a nice picture.  Just get a broad view of |
| | 9 | the courtroom. |
| 03:04 | 10 | COURT TECHNICIAN:  *(Complies.)* |
| 03:04 | 11 | THE COURT:  Okay.  I'm going to order these |
| | 12 | pictures are developed and then sealed just so that the |
| | 13 | security is kept in place.  And I want to thank you very |
| | 14 | much. |
| 03:04 | 15 | COURT TECHNICIAN:  Thank you. |
| 03:04 | 16 | THE COURT:  All right.  Counsel, then is there |
| | 17 | anything further this evening, any other business with the |
| | 18 | court; otherwise, I'm going to let you go. |
| 03:04 | 19 | MS. HEINZ:  Nothing from the government, |
| | 20 | Your Honor. |
| 03:04 | 21 | MR. LENGYEL-LEAHU:  Nothing on my behalf, |
| | 22 | Your Honor. |
| 03:04 | 23 | MS. CORRIGAN:  Nothing on my behalf, Your Honor. |
| 03:04 | 24 | THE COURT:  All right.  Let me just perfect my |
| | 25 | record, though, because of that past activity in relation to |

```
 1    the marshal.  I'll make the record on your behalf that your
 2    client has been well behaved since that time and your claim
 3    is it was the medication.  I can't take that chance when
 4    there's any kind of altercation or violence.
 5            By the same token, obviously, your client's going
 6    to be unrestrained, arms, feet.  I've got him in a belly
 7    chain in the other court, which can't be seen.  I'm willing
 8    to take that belly chain off in this court, but I'm not
 9    willing to take that belly chain off if we move to that
10    court.  Do you truly want to be in that other court or
11    remain in this court, which is the complex courtroom?
12            MR. LENGYEL-LEAHU:  We want to stay in this
13    courtroom, Your Honor.
14            THE COURT:  You're not waiving any rights or
15    concerns.  That's understood by me.  By the same token, I'd
16    like to humanize this as much as possible.  I think this is
17    an overwhelming court with the two defendants in it.  It was
18    built for the Aryan Brotherhood, and Mexican Mafia, and a
19    number of defendants, not just two.  It's a court I prefer
20    not to be in with just two clients.
21            Tomorrow's voting day.  We asked the jury to come
22    in at 7:30.  I like to get them here as quickly as possible
23    and start that process.
24            I'm going to read the Indictment again, and I'm
25    going to emphasize again that it's a charging document.
```

03:04  (line 5)
03:04  (line 12)
03:04  (line 14)
03:05  (line 21)
03:05  (line 24)

03:05    1          I'm going to give you some period of time to

2    question jurors individually or collectively.  I'm not

3    setting a time limit on it, but I will suggest it's not more

4    than 20 minutes.  I do not expect questions such as, "If the

5    evidence showed... what would you think or do?"  That's

6    going to meet with my disapproval immediately.  I don't want

7    any pre-indoctrination.  I don't want any instruction on the

8    law.  I think I've been extraordinarily generous in

9    providing this questionnaire and giving you some questions

10   and time with it.

03:05   11          We'll take Juror No. 12 almost immediately outside

12   the presence of the jury and discuss with Juror No. 12

13   whether they can be fair and impartial and move on from

14   there.

03:05   15          Remind me to let the jury go at 4:30 'cause it's

16   voting day, and I made a mistake bringing them in that early

17   on the voting day.

03:05   18          May I talk with Ms. Corrigan on another unrelated

19   matter about the CJA panel, with your permission, Counsel?

03:05   20          MS. HEINZ:  Yes, Your Honor.

03:05   21          THE COURT:  It has to do with CJA.

03:05   22          MR. LENGYEL-LEAHU:  Of course.

03:05   23          THE COURT:  Okay.  7:30 tomorrow morning.

03:05   24          MS. HEINZ:  Thank you, Your Honor.

03:05   25          THE COURT:  All right.  Have a good evening now.

03:05    1              MS. CORRIGAN:  Thank you, Your Honor.

03:05    2              MR. LENGYEL-LEAHU:  Thank you.

03:05    3         *(Proceedings adjourned at 3:05 p.m.)*

03:05    4                          -oOo-

03:05    5

         6

         7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

03:05    1                          -oOo-

03:05    2

03:05    3                       CERTIFICATE

03:05    4

03:05    5         I hereby certify that pursuant to Section 753,

         6    Title 28, United States Code, the foregoing is a true and

         7    correct transcript of the stenographically reported

         8    proceedings held in the above-entitled matter and that the

         9    transcript page format is in conformance with the

        10    regulations of the Judicial Conference of the United States.

03:05   11

03:05   12    Date:  March 2, 2017

03:05   13

03:05   14
03:05
03:05   15                         /s/ Debbie Gale
03:05                          _____
03:05   16                     DEBBIE GALE, U.S. COURT REPORTER
                               CSR NO. 9472, RPR, CCRR

03:05   17

        18

        19

        20

        21

        22

        23

        24

        25

**DEBBIE GALE, U.S. COURT REPORTER**