1            **UNITED STATES DISTRICT COURT**

2            **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5   UNITED STATES OF AMERICA,          )
                                       )      **CERTIFIED**
6            Plaintiff,                )
                                       )
7        vs.                           ) No. 8:15-CR-0060-DOC
                                       )      Day 1, Volume III
8   1) NADER SALEM ELHUZAYEL;          )
    2) MUHANAD ELFATIH M.A. BADAWI,    )
9                                      )
                Defendants.            )
10  _____)

11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Jury Trial

17                Santa Ana, California

18              Tuesday, June 7, 2016

19

20

21

22  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
23  United States District Court
    411 West 4th Street, Room 1-053
24  Santa Ana, California 92701
    (714) 558-8141

25

1   **APPEARANCES:**

2

    FOR THE UNITED STATES OF AMERICA:

3

        DEPARTMENT OF JUSTICE
4       OFFICE OF THE UNITED STATES ATTORNEY
        Criminal Division
5       BY:  Judith A. Heinz
             Assistant United States Attorney
6       312 North Spring Street
        15th Floor
7       Los Angeles, California 90012
        213-894-3713
8       USACAC.Criminal@usdoj.gov

9       DEPARTMENT OF JUSTICE
        OFFICE OF THE UNITED STATES ATTORNEY
10      Criminal Division
        BY:  Deirdre Z. Eliot
11           Assistant United States Attorney
        411 West 4th Street
12      Suite 8000
        Santa Ana, California 92701
13      714-338-3500
        USACAC.SACriminal@usdoj.gov

14

15

        DEPARTMENT OF JUSTICE
16      OFFICE OF THE UNITED STATES ATTORNEY
        General Crimes Section
17      BY:  Julius J. Nam
             Assistant United States Attorney
18      312 North Spring Street
        Suite 1200
19      Los Angeles, California 90012
        213-894-4491
20      julius.nam@usdoj.gov

21

    FOR DEFENDANT NADER SALEM ELHUZAYEL:

22

        Pal A. Lengyel-Leahu *(retained)*
23      LAW OFFICES OF PAL A LENGYEL-LEAHU
        360 East First Street
24      Suite 609
        Tustin, California 92780
25      714-497-6813
        plitigate@aol.com

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 290   Filed 03/31/17   Page 3 of 123   Page ID #:4082
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

3

1    **APPEARANCES (Continued):**

2    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3
          Katherine T. Corrigan *(CJA appointment)*
4         CORRIGAN WELBOURN AND STOKKE APLC
          4100 Newport Place
5         Suite 550
          Newport Beach, California 92660
6         949-251-0330
          kate@cwsdefense.com
7

8    ALSO PRESENT:

9         Cambria Lisonbee (assisting Ms. Corrigan)
          Joshua Hopps (assisting Mr. Lengyel-Leahu)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# I N D E X

## Jury Trial - Day 1, Volume III

| PROCEEDINGS | PAGE |
|---|---|
| Discussion concerning Juror No. 8 | 6 |
| In Camera proceedings with Juror No. 8 | 7 |
| Voir dire by Ms. Heinz | 11 |
| Voir dire by Mr. Lengyl-Leahu | 12 |
| Voir dire by Ms. Corrigan | 15 |
| Voir dire by Mr. Lengyel-Leahu | 28 |
| Voir dire by Ms. Corrigan | 32 |
| Voir Dire by Ms. Heinz | 34 |
| Voir Dire by Mr. Lengyel-Leahu | 34 |
| Voir dire by Mr. Lengyel-Leahu | 39 |
| Voir dire by Ms. Corrigan | 40 |
| Voir Dire by Ms. Heinz | 42 |
| Voir dire by Mr. Lengyel-Leahu | 43 |
| Voir Dire by Ms. Corrigan | 44 |
| Sidebar proceedings | 45 |
| Open Court Proceedings Resumed | 48 |
| Sidebar proceedings | 58 |
| Open Court Proceedings Resumed | 62 |
| Voir Dire by Mr. Lengyel-Leahu | 64 |
| Voir dire by Ms. Corrigan | 66 |
| Jury Sworn | 69 |
| Voir Dire by Ms. Heinz | 77 |

**I N D E X (Continued)**

Jury Trial - Day 1, Volume III

| PROCEEDINGS | PAGE |
|---|---|
| Voir dire by Mr. Lengyel-Leahu | 80 |
| Voir dire by Ms. Corrigan | 89 |
| Voir dire by Mr. Lengyel-Leahu | 95 |
| Voir dire by Ms. Corrigan | 97 |
| Voir dire by Ms. Heinz | 100 |
| Voir dire by Mr. Lengyel-Leahu | 100 |
| Voir dire by Ms. Corrigan | 102 |
| Voir dire by Ms. Heinz | 104 |
| Voir dire by Mr. Lengyel-Leahu | 105 |
| Voir dire by Ms. Corrigan | 106 |
| Voir dire by Ms. Heinz | 109 |
| Voir dire by Mr. Lengyel-Leahu | 110 |
| Voir dire by Ms. Corrigan | 111 |
| Voir dire by Ms. Heinz | 114 |
| Voir dire by Mr. Lengyel-Leahu | 116 |
| Voir dire by Ms. Corrigan | 117 |

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| 01:09 | 4 |
| | 5 |
| | 6 |
| 01:09 | 7 |
| 01:09 | 8 |
| 01:09 | 9 |
| | 10 |
| | 11 |
| 01:09 | 12 |
| 01:09 | 13 |
| | 14 |
| | 15 |
| | 16 |
| 01:09 | 17 |
| | 18 |
| 01:09 | 19 |
| | 20 |
| | 21 |
| 01:10 | 22 |
| 01:10 | 23 |
| | 24 |
| 01:10 | 25 |

**SANTA ANA, CALIFORNIA, TUESDAY, JUNE 7, 2016**

**Day 1, Volume III**

(1:09 p.m.)

THE COURT:  All right.  Then we're back in session, and all counsel are present; the parties are present.

*(Outside the presence of the jury.)*

THE COURT:  How do we single out Ms. Popejoy?

MS. HEINZ:  The government thinks that the additional inquiry that the Court had sort of suggested to see if cause developed would be appropriate.

THE COURT:  Would you say that again?

MS. HEINZ:  Your Honor, I think before we broke, you said that because she had said she could be fair to both sides, that there should be additional inquiry to see if really there was cause.

THE COURT:  How do we single her out in the hallway?  How do we get her in here?

MS. CORRIGAN:  Right.  She's sitting -- I think I kind of rushed by her, but she's sitting in the window area. She's got --

MS. HEINZ:  She's got a computer open.

MS. CORRIGAN:  -- a computer open and tortoise shell glasses.  She has earrings, dangling earrings.

THE COURT:  Deb, do you know who Ms. Popejoy is?

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 7 of 123  Page ID #:4086
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

7

01:10   1              THE CLERK:  *(No response.)*

01:10   2              MS. CORRIGAN:  I think she has like khaki-ish

        3   olive pants.

01:10   4              MS. HEINZ:  Yes.  She has like olive-colored

        5   clothing on.  She is sitting there on sort of the bench with

        6   her back to the window with her computer open.

01:10   7              MS. CORRIGAN:  Right.

01:10   8              THE COURT:  Could you ask her to come in?  She's

        9   Juror No. 8.

01:11  10              And, Juan, just to verify that there's no sound.

01:11  11              TECHNICIAN:  No sound.

01:11  12              THE COURT:  No picture other than the "seal."

01:11  13              TECHNICIAN:  Just the seal, yes.

01:11  14              THE COURT:  All right.  Thank you.

01:11  15              **IN CAMERA PROCEEDINGS WITH JUROR NO. 8**

01:11  16              THE COURT:  Ms. Popejoy, come on in for just a

       17   moment.  If you'd be kind enough just have a seat in any of

       18   the seats, number twelve.  Counsel wanted to ask you a

       19   couple questions outside of the presence of the jury.  I

       20   think that will answer a couple of questions.

01:12  21              Generally speaking, the concern was if you would

       22   rush to judgment because of a personality trait or -- and I

       23   think I'd asked you if that would reflect on one side and

       24   not the other.  And I thought your response was, "No, it's

       25   co-equal."  In other words, "It's who I am."

01:12  1              PROSPECTIVE JUROR:  Yeah, that's correct.
01:12  2              THE COURT:  I'm gonna have different personality
       3  types.  I'm gonna have some people who enjoy the process for
       4  a long time, and I may have others who say, you know, I've
       5  been here a long time, and it's time to make a decision now.
01:12  6              PROSPECTIVE JUROR:  Right.
01:12  7              THE COURT:  And I don't want to accept or reject
       8  jurors based upon that, because that's what we're looking
       9  for is a huge cross section.
01:13 10              PROSPECTIVE JUROR:  Gotcha.
01:13 11              THE COURT:  So we need to talk to you a little bit
      12  more, because I think you expressed to one or both counsel,
      13  "I'd be a little uncomfortable with me making the decision
      14  because here's who I am."  Talk to me a little bit more
      15  about that.
01:13 16              PROSPECTIVE JUROR:  So more of a Type A, kind of a
      17  driver.
01:13 18              THE COURT:  I know those types well.
01:13 19              PROSPECTIVE JUROR:  Right.
01:13 20              THE COURT:  I'm just kidding you.
01:13 21              PROSPECTIVE JUROR:  And I work a lot.  So, you
      22  know, I have a new job right now, so I'm -- you know, I'm
      23  very eager to dive into that.  So it's going to make me want
      24  to hurry the process, and I don't know if that's what you
      25  want.

**DEBBIE GALE, U.S. COURT REPORTER**

01:13    1          THE COURT:  Okay.  You know, I don't know.  I

         2  mean, literally, a jury could take an hour.

01:13    3          PROSPECTIVE JUROR:  Right.

01:13    4          THE COURT:  Or the jury could take ten days.  We

         5  can't predict that.  It's the quality of the discussion and

         6  the ability of each juror to expression him or herself, and

         7  some will remain very quiet.

01:13    8          PROSPECTIVE JUROR:  Right.

01:13    9          THE COURT:  Others will be very vociferous.

01:13   10      So I think the ultimate question for me is, if you

        11  think that whichever way you land on this case, whichever

        12  side, that there would be a rush that would unfairly impact

        13  your actual decision.  In other words, "I'm anxious.  I'm

        14  making it now.  I'm closing off the discussion."  Please

        15  tell us.  And I'll excuse you.  Okay?

01:14   16      If you think that that's a trait that you're aware

        17  of and very honest about, but, you know, you're willing to

        18  listen to the other folks with an open mind, tell us, and I

        19  may or may not excuse you, depending on -- I'm joking with

        20  you a little bit, but depending upon the questions that

        21  counsel asks.  Who are you?

01:15   22          PROSPECTIVE JUROR:  I'm fair, so it would not be a

        23  biased decision, and I would not just go with one side to

        24  get it over with.  I would -- I would be impartial in that

        25  capacity, yes.

01:15   1          THE COURT:  Okay.  Access.

01:15   2          PROSPECTIVE JUROR:  So I know my personality type.

3    I would just be in a rush to get to the decision.  It would

4    not be that I would sway other people to the decision that I

5    make just because that's the way I am.

01:15   6          THE COURT:  You get into a couple hours or couple

7    days, you're gonna be -- you're gonna have a jury

8    instruction that basically tells you to keep an open mind;

9    that jurors oftentimes take a position and then, subject to

10   reason, they change a position.  That ability to continue to

11   listen and to participate is the key.  And that's -- nobody

12   else can judge that except you.  So I'm gonna kid you a

13   little bit and ask, who are you again?  Are you gonna be

14   able to participate and reason with folks, or once you reach

15   the decision --

01:16  16          PROSPECTIVE JUROR:  Uh, yeah.  I mean, once I

17   reach a decision or if I find that there's no more benefit

18   to listen, then I will stop and that's usually at work when

19   I start multitasking.

01:16  20          THE COURT:  Okay.  And that could be the position

21   of a lot of jurors; that doesn't disqualify you.

01:16  22          PROSPECTIVE JUROR:  Right.  Right.

01:16  23          THE COURT:  I'm going to have counsel ask some

24   questions.  In all likelihood, they'll be leading questions,

25   which wouldn't be as helpful, I'll warn each of you.  But,

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | Counsel, your questions on behalf of the government.  In     |
|        | 2  | other words, I'd like to hear from her rather than the       |
|        | 3  | artfulness of leading questions.                             |
| 01:16  | 4  | MS. HEINZ:  Understood, Your Honor.                          |
| 01:16  | 5  | **VOIR DIRE BY MS. HEINZ**                                   |
| 01:16  | 6  | MS. HEINZ:  So it at least appears to me that you            |
|        | 7  | are highly conscious of your personality traits and the way  |
|        | 8  | you behave.  And I guess the question is, would you talk a    |
|        | 9  | little bit about whether there are any circumstances or      |
|        | 10 | whether you have had occasions to need to sit with a group   |
|        | 11 | of people and deliberate and converse back and forth and try |
|        | 12 | to decide, and tell us whether or not you were able -- being |
|        | 13 | aware of this personality trait, whether you were able to    |
|        | 14 | say to yourself, so to speak, "Calm down.  I know how I am,  |
|        | 15 | and these people aren't like that, so let's, you know, do    |
|        | 16 | the process."  That's kind of what I want to hear.           |
| 01:17  | 17 | PROSPECTIVE JUROR:  So, yes.  I have a sales                 |
|        | 18 | organization, and in my organization, different personality  |
|        | 19 | types are there.  So I have learned to subdue my personality |
|        | 20 | type and, if needed, morph into a different one.  So I am     |
|        | 21 | very capable of doing that.  But it's not my first           |
|        | 22 | inclination.                                                 |
| 01:17  | 23 | MS. HEINZ:  Understood.                                      |
| 01:17  | 24 | So my follow-up question is, if you found yourself           |
|        | 25 | in that position here in the jury room, would you be willing |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | to do that?                                                      |
| 01:18 | 2  | PROSPECTIVE JUROR:  Yes.                                         |
| 01:18 | 3  | THE COURT:  To do what?                                          |
| 01:18 | 4  | MS. HEINZ:  I'm sorry.  To sort of morph into the               |
|       | 5  | person --                                                        |
| 01:18 | 6  | PROSPECTIVE JUROR:  I understand.  Calm down and                |
|       | 7  | listen and not try to run the organization/the jury.            |
| 01:18 | 8  | So I, um -- I would make a concerted effort to do               |
|       | 9  | that, yes.  And I think it is possible, yes.                    |
| 01:18 | 10 | MS. HEINZ:  I have nothing further, Your Honor.                 |
| 01:18 | 11 | THE COURT:  Mr. Lengyel-Leahu.                                   |
| 01:18 | 12 | **VOIR DIRE BY MR. LENGYEL-LEAHU**                              |
| 01:18 | 13 | MR. LENGYEL-LEAHU:  Good afternoon.                              |
| 01:18 | 14 | PROSPECTIVE JUROR:  Hello.                                       |
| 01:18 | 15 | MR. LENGYEL-LEAHU:  You -- you have a leadership                |
|       | 16 | role at work.                                                    |
| 01:18 | 17 | PROSPECTIVE JUROR:  Yes.                                         |
| 01:18 | 18 | MR. LENGYEL-LEAHU:  And part of that requires you              |
|       | 19 | directing the people underneath you.                            |
| 01:18 | 20 | PROSPECTIVE JUROR:  That is correct.                            |
| 01:18 | 21 | MR. LENGYEL-LEAHU:  And, of course, you want their             |
|       | 22 | input, but at the end of the day, you want what you want.       |
| 01:19 | 23 | PROSPECTIVE JUROR:  Correct.                                     |
| 01:19 | 24 | MR. LENGYEL-LEAHU:  And I know in this setting                  |
|       | 25 | it's very formal.  We got the Court.  We got the flag.  We      |

| | | |
|---|---|---|
| | 1 | got the seal.  And we all wanna say the things that are |
| | 2 | appropriate, but you understand the decision as to whether |
| | 3 | or not you should join this jury is a very critical decision |
| | 4 | regarding your thought process. |
| 01:19 | 5 | PROSPECTIVE JUROR:  Correct. |
| 01:19 | 6 | MR. LENGYEL-LEAHU:  And I wanna remind you what |
| | 7 | you said.  You told us the truth in your questionnaire, |
| | 8 | correct? |
| 01:19 | 9 | PROSPECTIVE JUROR:  Yes. |
| 01:19 | 10 | MR. LENGYEL-LEAHU:  And when asked a question, any |
| | 11 | additional information that you thought would be relevant, |
| | 12 | um, and being truthful -- |
| 01:19 | 13 | PROSPECTIVE JUROR:  Uh-huh. |
| 01:19 | 14 | MR. LENGYEL-LEAHU:  -- you said that you have a |
| | 15 | Type A personality which could present an issue -- |
| 01:19 | 16 | PROSPECTIVE JUROR:  Yes. |
| 01:19 | 17 | MR. LENGYEL-LEAHU:  -- um, that you believe in |
| | 18 | getting to the end result in the shortest way possible. |
| 01:19 | 19 | PROSPECTIVE JUROR:  Correct. |
| 01:19 | 20 | MR. LENGYEL-LEAHU:  Is that a correct statement of |
| | 21 | your thinking and your -- |
| 01:19 | 22 | PROSPECTIVE JUROR:  Yes.  Shortest/most efficient, |
| | 23 | correct. |
| 01:19 | 24 | MR. LENGYEL-LEAHU:  Which would be a problem if |
| | 25 | you've made up your mind prior to the close of the evidence. |

| | | |
|---|---|---|
| 01:20 | 1 | PROSPECTIVE JUROR:  That is correct. |
| 01:20 | 2 | MR. LENGYEL-LEAHU:  And that would cause you to |
| | 3 | have an inability to reflect on other evidence that came |
| | 4 | into the case. |
| 01:20 | 5 | PROSPECTIVE JUROR:  If I drew my conclusion too |
| | 6 | early, that is correct. |
| 01:20 | 7 | MR. LENGYEL-LEAHU:  Also, you said, I believe, not |
| | 8 | only getting to the end result in the shortest possible way |
| | 9 | and wanting to take a leadership role. |
| 01:20 | 10 | PROSPECTIVE JUROR:  Uh-huh, correct. |
| 01:20 | 11 | MR. LENGYEL-LEAHU:  And so you were telling us |
| | 12 | from the beginning that, based on your understanding of your |
| | 13 | personality, you would want to take a leadership role in |
| | 14 | this jury from the very beginning. |
| 01:20 | 15 | PROSPECTIVE JUROR:  Not want, but oftentimes find |
| | 16 | myself in that position. |
| 01:20 | 17 | MR. LENGYEL-LEAHU:  I think it says "*wanting to* |
| | 18 | *take a leadership role*." |
| 01:20 | 19 | PROSPECTIVE JUROR:  Right.  Because if things |
| | 20 | aren't progressing, I tend to want to take over.  And that's |
| | 21 | what would happen. |
| 01:20 | 22 | MR. LENGYEL-LEAHU:  Then you went on to say that |
| | 23 | "*this might sway others to make decisions, based on leading* |
| | 24 | *them to where I want them to go*." |
| 01:20 | 25 | PROSPECTIVE JUROR:  Correct. |

01:20   1          MR. LENGYEL-LEAHU:  So that is an accurate

2   statement of what you were telling us your process is in

3   deliberating.

01:21   4          PROSPECTIVE JUROR:  Correct.

01:21   5          MR. LENGYEL-LEAHU:  And then you say, "*I'm not

6   *sure that's what would be an ideal juror in this case*."

01:21   7          PROSPECTIVE JUROR:  Yeah.  And I'm honest in the

8   chair as well.  I know my personality type, and if I want to

9   get to what I think is the right answer, then I tend to take

10   on a leadership role and want people to follow.

01:21  11          MR. LENGYEL-LEAHU:  Not trying to be leading, but

12   would a shorter case be a case that's more amenable to your

13   personality, where you weren't in trial, getting evidence

14   for six weeks and then potentially having to deliberate for

15   another two?  Would it be a better condition for you to be

16   in one of those shorter trials or one of those Superior

17   Court quick ones, where you do 'em three or four days,

18   deliberate for a day or two and get it over with?

01:21  19          PROSPECTIVE JUROR:  Yes, that would be best for my

20   personality type.

01:22  21          THE COURT:  Counsel.

01:22  22          MS. CORRIGAN:  Thank you, Your Honor.

01:22  23              **VOIR DIRE BY MS. CORRIGAN**

01:22  24          MS. CORRIGAN:  Do you think that you would be able

25   to wait until the end of the case to make a decision in the

Case 8:15-cr-00060-DOC   Document 290   Filed 03/31/17   Page 16 of 123   Page ID #:4095
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

16

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | case -- or, I think I heard you earlier say -- maybe I'm      |
|       | 2  | wrong -- that you could make a decision on the case prior --  |
|       | 3  | at some earlier point.                                        |
| 01:22 | 4  | PROSPECTIVE JUROR:  No.  I think that I could make            |
|       | 5  | it to the end, hearing all the evidence, and then at that     |
|       | 6  | point I would make a decision.                                |
| 01:22 | 7  | MS. CORRIGAN:  All right.                                     |
| 01:22 | 8  | PROSPECTIVE JUROR:  But I would probably make it              |
|       | 9  | very quickly.                                                 |
| 01:22 | 10 | MS. CORRIGAN:  Okay.  And in terms of your                    |
|       | 11 | dynamics with other people, do you think that you are         |
|       | 12 | respectful of other people's opinions?                        |
| 01:22 | 13 | PROSPECTIVE JUROR:  I am respectful --                        |
| 01:22 | 14 | MS. CORRIGAN:  Okay.                                          |
| 01:22 | 15 | PROSPECTIVE JUROR:  -- of other people's opinions.           |
|       | 16 | I've learned to temper my drive, um, to be more open-minded,  |
|       | 17 | yes.                                                          |
| 01:22 | 18 | MS. CORRIGAN:  All right.  And in this jury                   |
|       | 19 | setting, if you did make it into -- as a juror, would you     |
|       | 20 | respect the other jurors' opinions even if they diverged or   |
|       | 21 | were different from yours?                                    |
| 01:23 | 22 | PROSPECTIVE JUROR:  Yes.                                      |
| 01:23 | 23 | MS. CORRIGAN:  All right.  You just mentioned                 |
|       | 24 | earlier that you have a new job and that -- is that causing   |
|       | 25 | you any stress?  Would it -- is it gonna be a problem for     |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | you to be on a potentially six-week jury trial?                  |
| 01:23 | 2  | PROSPECTIVE JUROR: Uh, you know, it's not ideal,                 |
|       | 3  | to be honest with you. Because, really, what would happen        |
|       | 4  | is that I would be here all day, and then I would have to go     |
|       | 5  | home and do my job.                                              |
| 01:23 | 6  | MS. CORRIGAN: And how many hours would you --                    |
| 01:23 | 7  | PROSPECTIVE JUROR: It would probably be another                  |
|       | 8  | five to six hours.                                               |
| 01:23 | 9  | MS. CORRIGAN: Okay. Which then would put you                     |
|       | 10 | probably at very little sleep. Would you be able to operate      |
|       | 11 | on a little bit of sleep?                                        |
| 01:23 | 12 | PROSPECTIVE JUROR: Oh, it's possible, and I have.                |
|       | 13 | It's not the ideal situation, but yes.                           |
| 01:23 | 14 | MS. CORRIGAN: For a six-week period, you could?                  |
| 01:23 | 15 | PROSPECTIVE JUROR: Yes.                                          |
| 01:23 | 16 | MS. CORRIGAN: Would this -- I get the sense it                   |
|       | 17 | would not impact you financially, then, right?                   |
| 01:23 | 18 | PROSPECTIVE JUROR: That is correct.                              |
| 01:23 | 19 | MS. CORRIGAN: Okay. Thank you.                                   |
| 01:23 | 20 | THE COURT: One more question by me, and that is,                 |
|       | 21 | what would you be doing at night? Are you self-employed?         |
| 01:24 | 22 | PROSPECTIVE JUROR: No. I work for a major                        |
|       | 23 | corporation, so I would have to go on and do all of the team     |
|       | 24 | management --                                                    |
| 01:24 | 25 | THE COURT: I see.                                                |

| | | |
|---|---|---|
| 01:24 | 1 | PROSPECTIVE JUROR:  -- the follow-up, the e-mails, |
| | 2 | the sales information, and leadership readouts. |
| 01:24 | 3 | THE COURT:  Do you have any more questions? |
| 01:24 | 4 | MS. HEINZ:  Not from the government. |
| 01:24 | 5 | MS. CORRIGAN:  Not from my perspective. |
| 01:24 | 6 | MR. LENGYEL-LEAHU:  Could you be away from that |
| | 7 | work during the course of the trial?  Because all those |
| | 8 | e-mails and notices are gonna be coming in during business |
| | 9 | hours, and some of 'em are gonna require your immediate |
| | 10 | attention.  And it's a new job for you.  You haven't -- you |
| | 11 | haven't gotten fully, uh, transferred in. |
| 01:24 | 12 | PROSPECTIVE JUROR:  I've been in the role since |
| | 13 | May 1st, so... |
| 01:24 | 14 | MR. LENGYEL-LEAHU:  So there could be emergency |
| | 15 | things that need your immediate attention. |
| 01:24 | 16 | PROSPECTIVE JUROR:  So I'm online now, and at |
| | 17 | breaks, I'm online.  I'm on the phone as soon as we're out |
| | 18 | of here.  So yes, it's constant.  But, if it's a trial and |
| | 19 | it's required, then I can make that work. |
| 01:25 | 20 | MR. LENGYEL-LEAHU:  At a great inconvenience to |
| | 21 | your work and your professionalism. |
| 01:25 | 22 | PROSPECTIVE JUROR:  Yes.  And my two children and |
| | 23 | husband at home. |
| 01:25 | 24 | MR. LENGYEL-LEAHU:  Understood. |
| 01:25 | 25 | MS. CORRIGAN:  May I inquire just in terms of your |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | children -- I don't need to know their ages -- do they                 |
|       | 2  | depend on you for transportation or anything at this point?            |
| 01:25 | 3  | PROSPECTIVE JUROR:  My daughter does in the                            |
|       | 4  | morning, but that's fine.  I could make arrangements for               |
|       | 5  | that.  And my son comes home, and my daughter has                      |
|       | 6  | after-school care.                                                     |
| 01:25 | 7  | THE COURT:  Debbie, would you be kind enough to go                     |
|       | 8  | with Ms. Popejoy out the door to our left, not out in the              |
|       | 9  | hallway for a moment.  Let me talk to counsel for just a               |
|       | 10 | moment.                                                                |
| 01:25 | 11 | Thank you very much, Ms. Popejoy, for the answers.                     |
|       | 12 | Let us discuss --                                                      |
| 01:25 | 13 | PROSPECTIVE JUROR:  Leave my things here?                              |
| 01:25 | 14 | THE COURT:  Yeah, just leave your things here for                      |
|       | 15 | the time being.                                                        |
| 01:25 | 16 | *(Prospective juror exits the proceedings.)*                           |
| 01:26 | 17 | THE COURT:  Here's what I'm dealing with and                           |
|       | 18 | struggling with, quite frankly.  I'm not hearing a bias                |
|       | 19 | against either side.  She now states that she can temper her           |
|       | 20 | drive, although I have the feeling that that is an extremely           |
|       | 21 | difficult struggle.  And yet I'm having a difficulty as a              |
|       | 22 | court starting to excuse based upon traits that she's                  |
|       | 23 | calling to our attention.  What happens if I got the                   |
|       | 24 | opposite trait, and that is, "Well, Judge, I've got all the            |
|       | 25 | time in the world."  I'm just joking with you, Counsel, but            |

|      |    |                                                                     |
|------|----|---------------------------------------------------------------------|
|      | 1  | I'm not.  "I'm being paid $50 a day, and that's a good              |
|      | 2  | salary."  Nobody's saying that.  I think it's really hard           |
|      | 3  | for a Court, when a juror's honest about that personality           |
|      | 4  | virtue or defect, to start judging on the slowness or the           |
|      | 5  | quickness of a decision and starting to weigh that.                 |
| 01:27 | 6 | So let me hear your arguments from both counsel for               |
|      | 7  | just a moment and so you complete your records, and then            |
|      | 8  | I'll make a decision.                                               |
| 01:27 | 9 | Counsel on behalf of the government.                              |
| 01:27 | 10 | MS. HEINZ:  Well, Your Honor, the government                     |
|      | 11 | agrees with the Court that, um, I think it's -- I think this        |
|      | 12 | is a slippery slope.  I mean, she's highly conscious of her         |
|      | 13 | personality trait.  She is conscious to the point where she         |
|      | 14 | says that she has become increasingly more aware and has, in        |
|      | 15 | her words, "morphed" into a person who is -- you know, slows         |
|      | 16 | down and realizes she's got to listen to other people and           |
|      | 17 | confer with other people.                                           |
| 01:28 | 18 | The fact that she -- um, she understands and knows             |
|      | 19 | that it is her nature not to be that way, I think -- I think        |
|      | 20 | is a good thing; it's a virtue.  And the fact that she says         |
|      | 21 | that she has been able to, um, sort of morph into another           |
|      | 22 | personality so she can confer better with people I think is         |
|      | 23 | a good thing.                                                       |
| 01:28 | 24 | She affirmatively said that she would not make up             |
|      | 25 | her mind until she saw all of the evidence, which is what we        |

1    ask jurors to do, and she also said that this is not a

2    personality trait that she feels would impact one side more

3    than the other.

01:28    4         So the government does not see cause here.

01:28    5         THE COURT:  I'm weighing what I would do if I had

6    a juror in the same position who took the opposite and said,

7    "Judge, I'm extraordinarily cautious."  I don't think I

8    would excuse because of that character trait of being

9    extraordinarily cautious or slow to make a determination.

01:29    10        MS. HEINZ:  I think that's right, Your Honor,

11   unless the juror said affirmatively, "I am a person who is

12   so indecisive that I can't decide.  I can't sit in judgment.

13   I won't make a decision."  And at that point, I think you

14   have cause, but I think just slow to make a decision is not

15   cause.

01:29    16        THE COURT:  Let me hear from counsel.  I think

17   they have a much different perspective.

01:29    18        Mr. Lengyel-Leahu.

01:29    19        MR. LENGYEL-LEAHU:  Thank you, Your Honor.

01:29    20        I believe there's a reason she wrote her report.

21   She's not the only A-type personality that we have in the

22   jury pool, but she clearly recognizes that it's been a

23   problem for her.  It has been something that she's been

24   dealing with, and maybe on occasion she can morph; but she

25   telegraphed this to us and she told us.

01:29    1         Now, the issue for the Court is not whether or not

2    she's biased towards either side, but that she doesn't have

3    the --

01:30    4         THE COURT:  Reasoning ability during the

5    deliberative process.  That's the issue, Counsel.

01:30    6         MR. LENGYEL-LEAHU:  So it's not a question of

7    whether she's gonna side with one side or the other.  The

8    fact that she won't listen -- she even said to me that she

9    might decide before the case is given to her.  She might

10    decide during the middle -- she might decide after opening

11    statements.  And if that's the case, then she doesn't have

12    the personality to be sitting in judgment of a case of this

13    significance.

01:30    14         THE COURT:  I'm not hearing that, Counsel.  I

15    heard that said she'll delay and deliberate.  I heard quite

16    the opposite.

01:30    17         MR. LENGYEL-LEAHU:  On direct questions from the

18    government.  But if you look at her answer, she is now

19    currently contradicting her answer to some extent.  She is

20    contradicting her own questionnaire to some extent, and that

21    might just be a reflection that she wants to be, you know,

22    welcome --

01:30    23         THE COURT:  She wants to serve on this jury?  It

24    sounds like she doesn't, quite frankly.

01:31    25         MR. LENGYEL-LEAHU:  And we would urge the Court to

1    look at that as -- as a consideration, not -- not that she

2    is necessarily personally biased towards either side, but

3    she doesn't have the temperament of the juror that -- that

4    we seek in every case.

01:31    5        THE COURT:  It's a slippery slope for me in terms

6    of temperament.

01:31    7        MR. LENGYEL-LEAHU:  I don't think the opposite is

8    a person that doesn't get along.  I think the opposite is

9    the person that would go along with the crowd.  That would

10    be the opposite person.  We don't want that juror on there.

11    We want a juror that has independent deliberation and will

12    allow for open debate, as opposed to someone who indicates

13    that she will sway the jury to her point of view just so she

14    can move things along.

01:31    15        THE COURT:  Okay.

01:31    16        Ms. Corrigan.

01:31    17        MS. CORRIGAN:  Thank you, Your Honor.

01:31    18        I -- I would join in those comments.  My big

19    concern with her is her rush-to-judgment issues.  And I

20    have -- in any case, that's something that is just not

21    palatable in the jury system, but particularly in a case

22    like this where I think that there is gonna be some debate.

23    I think that she is just one of those people who will rush

24    along the process to get out the door rather than to make

25    sure that justice prevails.

01:32    1              And I submit.

01:32    2              THE COURT:  All right.  I'm going to ask her one

         3    more time if she's willing to deliberate.  If she is, I'm

         4    going to deny your motion.  But I want to question her one

         5    more time.

01:32    6              Would you ask --

01:32    7              *(To clerk:)* Debbie?  Somebody go knock on the door.

01:33    8         *(Prospective juror returns.)*

01:33    9              THE COURT:  Thank you, Ms. Popejoy.  If you'd be

        10    seated.  I think the ultimate question and the last question

        11    I have is, upon reflection and considering all the questions

        12    that have been asked and the questionnaire, if you get to

        13    that jury deliberation process, if both sides decide that

        14    they would like you to sit as a juror, would you be willing

        15    to part- -- would you be willing to actively participate and

        16    listen to the other jurors?  Doesn't mean you have to change

        17    your mind, but it means that the reasoning process goes on

        18    and that you're open to listening to the other jurors in

        19    your deliberation.

01:34   20              PROSPECTIVE JUROR:  Yes, I will do that.

01:34   21              THE COURT:  Okay.  I want to thank you very much.

        22    If you would remain out in the hallway for just a moment.

01:34   23              I appreciate your answers.

01:34   24              PROSPECTIVE JUROR:  Uh-huh.

01:34   25         *(Prospective juror exits the courtroom.)*

```
01:34    1              THE COURT:  All right.  Counsel, the motion to

         2    compel for cause is denied.

01:34    3         If you would summon the jury, please.

01:35    4         (In the presence of the jury.)

01:35    5              THE COURT:  Now, Juan, if you will connect us

         6    downstairs, I'd appreciate it.

01:35    7              TECHNICIAN:  Okay.

01:35    8         (Technician complies.)

01:36    9              THE COURT:  All right.  The prospective jurors are

        10    present in the jury box, and the prospective jurors are

        11    present in the audience.

01:36   12         And counsel on behalf of the government, your

        13    questions, please.

01:36   14              MS. HEINZ:  I believe we're at a peremptory.

01:36   15              MS. CORRIGAN:  Yes.

01:36   16              MS. HEINZ:  I think, Your Honor.

01:36   17              MS. CORRIGAN:  Yes.

01:36   18              MS. HEINZ:  Your Honor, the --

01:36   19              THE COURT:  In light of the questions that were

        20    asked, I'm giving follow-up questions.  So I wasn't certain

        21    if you were completely done questioning Ms. Popejoy or not.

01:36   22              MS. HEINZ:  Understood, Your Honor.  Thank you.

        23    The government has no further questions for Ms. Popejoy.

01:36   24              THE COURT:  Let me turn to Mr. Lengyel-Leahu.

01:36   25              MR. LENGYEL-LEAHU:  No further questions,
```

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | Your Honor.                                               |
| 01:36 | 2  | THE COURT:  Ms. Corrigan.                                 |
| 01:36 | 3  | MS. CORRIGAN:  I have no further questions,                |
|       | 4  | Your Honor.                                               |
| 01:36 | 5  | THE COURT:  The peremptory would now pass back to         |
|       | 6  | the government.                                           |
| 01:36 | 7  | MS. HEINZ:  Thank you, Your Honor.                        |
| 01:36 | 8  | The government will thank and excuse Juror No. 1,         |
|       | 9  | Ms. Ramirez Garcia.                                        |
| 01:36 | 10 | THE COURT:  Ms. Garcia, thank you.  If you'd go           |
|       | 11 | back to the jury room, they'll excuse you.  Thank you for |
|       | 12 | your attendance.                                          |
| 01:37 | 13 | Call an additional juror, please.                         |
| 01:37 | 14 | THE CLERK:  Celine Brieumiller.                           |
| 01:37 | 15 | THE COURT:  Now, folks, we're bringing in another         |
|       | 16 | group of jurors.  If you'd be kind enough to move down.   |
|       | 17 | There's 20 more jurors who are going to join us from the  |
|       | 18 | jury assembly room.                                       |
| 01:40 | 19 | *(Additional prospective jurors enter the*                |
|       | 20 | *courtroom.)*                                             |
| 01:40 | 21 | THE COURT:  Thank you for coming up, folks.               |
| 01:40 | 22 | Ms. Brieumiller, during the recess, we asked you a        |
|       | 23 | number of questions.  Do you recall those questions?      |
| 01:40 | 24 | PROSPECTIVE JUROR:  I just came in, Your Honor.           |
| 01:40 | 25 | THE COURT:  Do you remember those questions that          |

| | | |
|---|---|---|
| | 1 | we asked you? |
| 01:41 | 2 | PROSPECTIVE JUROR:  Yes, I do. |
| 01:41 | 3 | THE COURT:  We had a proceeding outside the |
| | 4 | presence of the other jurors. |
| 01:41 | 5 | PROSPECTIVE JUROR:  Yes, I do. |
| 01:41 | 6 | THE COURT:  And once again, let me ask if there's |
| | 7 | anything in the questionnaire that you filled out last |
| | 8 | Wednesday wherein if you filled out the questionnaire today, |
| | 9 | you would have a changed opinion or changed answer? |
| 01:41 | 10 | PROSPECTIVE JUROR:  No. |
| 01:41 | 11 | THE COURT:  You still believe you will be fair and |
| | 12 | impartial to both sides? |
| 01:41 | 13 | PROSPECTIVE JUROR:  I do. |
| 01:41 | 14 | THE COURT:  And you understand at the end of the |
| | 15 | case, I'll instruct you on the law.  I'll do that |
| | 16 | adequately.  And you would be directed to follow the law. |
| | 17 | Understood? |
| 01:41 | 18 | PROSPECTIVE JUROR:  I understand. |
| 01:41 | 19 | THE COURT:  Do you have any questions of me? |
| 01:41 | 20 | PROSPECTIVE JUROR:  No, Your Honor. |
| 01:41 | 21 | THE COURT:  Let me turn you over to counsel. |
| | 22 | Counsel on behalf of the government. |
| 01:41 | 23 | MS. HEINZ:  Government's going to pass, |
| | 24 | Your Honor. |
| 01:41 | 25 | THE COURT:  Let me turn you over to the defense. |

| | | |
|---|---|---|
| 01:41 | 1 | Mr. Lengyel-Leahu. |
| 01:41 | 2 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 01:41 | 3 | **VOIR DIRE BY MR. LENGYEL-LEAHU** |
| 01:42 | 4 | MR. LENGYEL-LEAHU:  Good afternoon.  And I just |
| | 5 | want to be clear.  You were not here this morning and heard |
| | 6 | the original? |
| 01:42 | 7 | PROSPECTIVE JUROR:  You're correct.  I missed the |
| | 8 | whole morning, yes. |
| 01:42 | 9 | MR. LENGYEL-LEAHU:  And I'm sorry if I'm a bit |
| | 10 | redundant, but I think some of these issues are important. |
| 01:42 | 11 | You know people that have been divorced? |
| 01:42 | 12 | PROSPECTIVE JUROR:  I do.  I'm divorced myself. |
| 01:42 | 13 | MR. LENGYEL-LEAHU:  You're familiar, then, that if |
| | 14 | you only talk to one of the persons in the divorce, you'd |
| | 15 | only get one side of the story; is that right? |
| 01:42 | 16 | PROSPECTIVE JUROR:  Yes. |
| 01:42 | 17 | MR. LENGYEL-LEAHU:  And so as -- if you're |
| | 18 | selected to sit on this jury, you believe it's important to |
| | 19 | listen to both sides before you can come to a decision in |
| | 20 | the case? |
| 01:42 | 21 | PROSPECTIVE JUROR:  I understand, yes. |
| 01:42 | 22 | MR. LENGYEL-LEAHU:  Um, and you agree to reserve |
| | 23 | any judgment that you might have until all of the evidence |
| | 24 | is in the case; would that be fair? |
| 01:42 | 25 | PROSPECTIVE JUROR:  Yes. |

01:43    1          MR. LENGYEL-LEAHU:  It's -- even if some of the

          2   evidence that you see causes a reaction to you, you would

          3   still wait until you heard an explanation of the evidence,

          4   would you not?

01:43    5          PROSPECTIVE JUROR:  Yes, I would.

01:43    6          MR. LENGYEL-LEAHU:  Um, I talked to the other

          7   jurors about not ascribing behavior of other people to my

          8   client or these defendants in this case.  Could you do that?

01:43    9          PROSPECTIVE JUROR:  Yes.

01:43   10          MR. LENGYEL-LEAHU:  So if you saw things that

         11   other people did, you wouldn't be -- you wouldn't be

         12   necessarily saying that these defendants did that; is that

         13   correct?

01:43   14          PROSPECTIVE JUROR:  I would wait to see all the

         15   evidence.

01:43   16          MR. LENGYEL-LEAHU:  Okay.  You spent some time in

         17   the Middle East?

01:43   18          PROSPECTIVE JUROR:  I did, yes.

01:43   19          MR. LENGYEL-LEAHU:  Okay.  And not everyone in a

         20   group agrees with what everyone else in a group does, do

         21   they?

01:43   22          PROSPECTIVE JUROR:  Not necessarily.

01:44   23          MR. LENGYEL-LEAHU:  You know what the case is

         24   about.  You've heard the charges in the case; correct?

01:44   25          PROSPECTIVE JUROR:  Yes, I did.

01:44    1          MR. LENGYEL-LEAHU:  And you watch some news here
         2    and there?
01:44    3          PROSPECTIVE JUROR:  I don't really have a TV, so I
         4    read the news mostly.
01:44    5          MR. LENGYEL-LEAHU:  Very few of you left in the
         6    world.
01:44    7          And you realize that even in when you're reading
         8    news, what you're reading is a reporter's perspective; is
         9    that correct?
01:44   10          PROSPECTIVE JUROR:  Yeah.  Absolutely, yeah.
01:44   11          MR. LENGYEL-LEAHU:  And when you're asked to sit
        12    on a jury, we're asking you to look at the evidence only
        13    that's presented in a case.  Can you do that?
01:44   14          PROSPECTIVE JUROR:  Yes.  I think so, yes.
01:44   15          MR. LENGYEL-LEAHU:  And if you heard or read
        16    something that was contradictory to what you hear and read
        17    in this case, you'll be focusing your decision based on the
        18    evidence that's heard here; is that -- is that accurate?
01:44   19          PROSPECTIVE JUROR:  Yes.  The court would have
        20    better value, yes.
01:44   21          MR. LENGYEL-LEAHU:  And the same with the law.
        22    You don't have any legal training, do you?
01:45   23          PROSPECTIVE JUROR:  I don't.  No.
01:45   24          MR. LENGYEL-LEAHU:  Okay.  So the law that's given
        25    to you by our judge in this case would be the only law that

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | you consider when making a decision, as he's going to        |
|       | 2  | instruct you; correct?                                       |
| 01:45 | 3  | PROSPECTIVE JUROR:  Yes.                                      |
| 01:45 | 4  | MR. LENGYEL-LEAHU:  Even if that decision went               |
|       | 5  | against your own personal sensibilities.                     |
| 01:45 | 6  | PROSPECTIVE JUROR:  Yes, uh-huh.                             |
| 01:45 | 7  | MR. LENGYEL-LEAHU:  It has to do with the notion            |
|       | 8  | that even if the decision itself was difficult for us to     |
|       | 9  | make, if that's what the law said and that's the way the     |
|       | 10 | judge instructed you, you could still do that because in     |
|       | 11 | your feeling, that's what the law is, that's what the facts  |
|       | 12 | were, and you have to follow it, even if you were personally |
|       | 13 | against it.                                                  |
| 01:45 | 14 | PROSPECTIVE JUROR:  Yes, I understand that.                  |
| 01:46 | 15 | MR. LENGYEL-LEAHU:  And when you deliberate, do             |
|       | 16 | you -- can you deliberate independently of other people in   |
|       | 17 | the sense that you can make a decision based on your review  |
|       | 18 | of the evidence, your review of the arguments and the law,   |
|       | 19 | and -- and come to a decision, not just to go along with     |
|       | 20 | other people necessarily, but use your independent judgment  |
|       | 21 | when asked to make that decision?                            |
| 01:46 | 22 | PROSPECTIVE JUROR:  Yes, I would react                      |
|       | 23 | independently, yes.                                          |
| 01:46 | 24 | MR. LENGYEL-LEAHU:  Nothing further at this time.          |
| 01:46 | 25 | THE COURT:  Ms. Corrigan.                                    |

| | | |
|---|---|---|
| 01:46 | 1 | **VOIR DIRE BY MS. CORRIGAN** |
| 01:46 | 2 | MS. CORRIGAN:  Will a six-week trial present a |
| | 3 | financial hardship to you? |
| 01:46 | 4 | PROSPECTIVE JUROR:  For sure. |
| 01:46 | 5 | MS. CORRIGAN:  The reason I ask that, in looking |
| | 6 | at some general information you provided to us, are you the |
| | 7 | sole breadwinner for your -- in your household? |
| 01:47 | 8 | PROSPECTIVE JUROR:  Yes. |
| 01:47 | 9 | MS. CORRIGAN:  What impact would a six -- a |
| | 10 | potentially six-week or longer trial have on you? |
| 01:47 | 11 | PROSPECTIVE JUROR:  I would not have a salary |
| | 12 | likely for six weeks.  The company I work for, they are |
| | 13 | Australians, so I believe they don't understand our jury |
| | 14 | system and I probably would not have a salary for six weeks. |
| 01:47 | 15 | THE COURT:  Let me make certain I heard that |
| | 16 | correctly.  You would have no salary for the six weeks in |
| | 17 | the trial? |
| 01:47 | 18 | PROSPECTIVE JUROR:  I don't believe so.  It never |
| | 19 | happened before in the company.  This morning the HR person |
| | 20 | told me that I would likely not be paid. |
| 01:47 | 21 | THE COURT:  We didn't see that on your |
| | 22 | questionnaire.  When did you find this out? |
| 01:47 | 23 | PROSPECTIVE JUROR:  I found that out this morning |
| | 24 | when I left. |
| 01:47 | 25 | THE COURT:  This morning, okay. |

| | | |
|---|---|---|
| 01:47 | 1 | MS. CORRIGAN: Your Honor, there's a stipulation |
| | 2 | to excuse her. |
| 01:47 | 3 | THE COURT: We're going to thank and excuse you. |
| | 4 | If you found that out this morning, we appreciate your |
| | 5 | attendance. There's a stipulation by all parties. |
| 01:47 | 6 | Please call another witness -- not witness, I mean |
| | 7 | juror. |
| 01:48 | 8 | I'm sorry. |
| 01:48 | 9 | THE CLERK: Jose Velez. |
| 01:48 | 10 | THE COURT: Mr. Velez, have you heard all the |
| | 11 | prior questions today? |
| 01:48 | 12 | PROSPECTIVE JUROR: Yes, I have. |
| 01:48 | 13 | THE COURT: I'm going back to the questionnaire |
| | 14 | now. You filled that out last Wednesday, and it was a |
| | 15 | chance for you to answer questions completely and privately. |
| | 16 | Are there any answers to those questions that you'd change |
| | 17 | today? |
| 01:48 | 18 | PROSPECTIVE JUROR: No, I haven't. |
| 01:48 | 19 | THE COURT: So if you fill out the questionnaire |
| | 20 | again, it would be the same or substantially the same? |
| 01:48 | 21 | PROSPECTIVE JUROR: Correct. |
| 01:48 | 22 | THE COURT: Would you be fair and impartial to |
| | 23 | both sides? |
| 01:48 | 24 | PROSPECTIVE JUROR: Yes, I will. |
| 01:48 | 25 | THE COURT: Will you follow the law? |

| | | |
|---|---|---|
| 01:48 | 1 | PROSPECTIVE JUROR:  Yes. |
| 01:48 | 2 | THE COURT:  Counsel. |
| 01:48 | 3 | MS. HEINZ:  Thank you, Your Honor. |
| 01:48 | 4 | **VOIR DIRE BY MS. HEINZ** |
| 01:48 | 5 | MS. HEINZ:  Mr. Velez, would sitting on this jury |
| | 6 | for the length of the trial cause you any hardship with |
| | 7 | respect to loss of income? |
| 01:49 | 8 | PROSPECTIVE JUROR:  No. |
| 01:49 | 9 | MS. HEINZ:  Thank you. |
| 01:49 | 10 | THE COURT:  Mr. Lengyel-Leahu. |
| 01:49 | 11 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 01:49 | 12 | **VOIR DIRE BY MR. LENGYEL-LEAHU** |
| 01:49 | 13 | MR. LENGYEL-LEAHU:  Afternoon. |
| 01:49 | 14 | PROSPECTIVE JUROR:  Good afternoon. |
| 01:49 | 15 | MR. LENGYEL-LEAHU:  Your family is like mine; |
| | 16 | there's a lot of people in the military. |
| 01:49 | 17 | PROSPECTIVE JUROR:  Yes. |
| 01:49 | 18 | MR. LENGYEL-LEAHU:  Your relationship with them, |
| | 19 | would that have any effect on your ability to deliberate in |
| | 20 | issues involved in this case? |
| 01:49 | 21 | PROSPECTIVE JUROR:  Not at all. |
| 01:49 | 22 | MR. LENGYEL-LEAHU:  Okay.  You also wrote that you |
| | 23 | support the government 100 percent. |
| 01:49 | 24 | PROSPECTIVE JUROR:  Correct. |
| 01:49 | 25 | MR. LENGYEL-LEAHU:  You realize that the |

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | government is gonna call a number of witnesses in this                        |
|       | 2  | particular case that all work for the government.                            |
| 01:50 | 3  | PROSPECTIVE JUROR:  Correct.                                                  |
| 01:50 | 4  | MR. LENGYEL-LEAHU:  Your support of the                                      |
|       | 5  | government, would that affect your ability to view their                     |
|       | 6  | testimony impassionately and objectively and not simply                      |
|       | 7  | believe because they work for the government?                                |
| 01:50 | 8  | PROSPECTIVE JUROR:  Right.  I just -- I will go on                            |
|       | 9  | the evidence.                                                                |
| 01:50 | 10 | MR. LENGYEL-LEAHU:  You could view their testimony                           |
|       | 11 | the same as if anybody else testified.                                       |
| 01:50 | 12 | PROSPECTIVE JUROR:  Right.                                                    |
| 01:50 | 13 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                                    |
| 01:50 | 14 | THE COURT:  Ms. Corrigan.                                                     |
| 01:50 | 15 | MS. CORRIGAN:  I have no questions of this juror,                             |
|       | 16 | Your Honor.                                                                  |
| 01:50 | 17 | THE COURT:  The peremptory would now pass back to                            |
|       | 18 | the defense.                                                                 |
| 01:50 | 19 | MS. CORRIGAN:  May we have a moment?                                          |
| 01:50 | 20 | THE COURT:  Please.                                                          |
| 01:51 | 21 | *(Counsel confer.)*                                                           |
| 01:51 | 22 | MS. CORRIGAN:  Defense would like to thank and                               |
|       | 23 | excuse Mr. Velez, Juror No. 1.                                                |
| 01:51 | 24 | THE COURT:  Mr. Velez, thank you very much for                               |
|       | 25 | your attendance, sir.  They're going to excuse you from the                  |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | jury room once you get downstairs.                       |
| 01:51 | 2  | PROSPECTIVE JUROR:  Thank you.                           |
| 01:51 | 3  | THE COURT:  Call another juror, please.                  |
| 01:51 | 4  | THE CLERK:  Dennis Seel.                                  |
| 01:51 | 5  | THE COURT:  Once again, Mr. Seel, because of the         |
|       | 6  | extensiveness of this jury questionnaire, we know a lot of |
|       | 7  | the answers that you gave last Wednesday, and my question |
|       | 8  | would be, have any of those answers changed?             |
| 01:52 | 9  | PROSPECTIVE JUROR:  No.                                   |
| 01:52 | 10 | THE COURT:  Okay.  On page 11, at Question 36 and        |
|       | 11 | also on the other question, on 33, we asked:  When you   |
|       | 12 | consider any feelings or opinions you have, do you think you |
|       | 13 | can evaluate fairly the evidence presented in the case?  And |
|       | 14 | in both cases, or both questions, you answered "yes."    |
|       | 15 | There's also a third question in there that's much the same. |
| 01:52 | 16 | You wrote, though, "*How well I can evaluate the*        |
|       | 17 | *case depends on how well the prosecutors present the case*." |
| 01:52 | 18 | PROSPECTIVE JUROR:  Yes.                                  |
| 01:52 | 19 | THE COURT:  And I want to talk to you a little bit       |
|       | 20 | about that.                                               |
| 01:52 | 21 | Their ability or inability may not have much to do       |
|       | 22 | with the evidence.  In other words, the facts are the facts. |
| 01:53 | 23 | And also, I want to make certain that the defense        |
|       | 24 | may have a co-equal presentation.  By that, I mean, be just |
|       | 25 | as adept or not adept.  And the eventual decision would be |

1    strictly based on the evidence, from my perspective as a

2    judge.  And I'd like you to comment if -- what your

3    perspective is.  Because when the government finishes their

4    case, this case is not over.  We have a whole other side,

5    and that's the defense side.  Your thoughts.

01:53    6            PROSPECTIVE JUROR:  Well, I -- I think it's, you

7    know, from the standpoint I've sat on a couple of juries

8    before -- nothing at the federal level, though, just a

9    Superior Court.  I've heard a lot of evidence and reviewed a

10   lot of evidence in some of the cases.  In other cases, I

11   think there was one particular case where, you know, the

12   jury deliberated for many, many days.

01:54   13            THE COURT:  I see.

01:54   14            PROSPECTIVE JUROR:  And it was simply because we

15   just did not have enough information to really draw a

16   conclusion to that.

01:54   17            THE COURT:  I see.  So was that a case where the

18   jury what we call "hung up"?  Couldn't reach a decision?

01:54   19            PROSPECTIVE JUROR:  Yes.

01:54   20            THE COURT:  I see.  And was there some thought in

21   your mind that the prosecution hadn't presented the case

22   adequately?

01:54   23            PROSPECTIVE JUROR:  Well, let's just say there was

24   some of us that were pretty convinced -- you know, we

25   thought the prosecution had done a pretty good job as far as

|      |    |                                                                              |
|------|----|------------------------------------------------------------------------------|
|      | 1  | presenting the evidence and how it was presented.  Um, but                    |
|      | 2  | there were still some gaps.  There were some pieces and                       |
|      | 3  | things that were missing there.                                               |
| 01:55| 4  | THE COURT:  And that caused --                                                 |
| 01:55| 5  | PROSPECTIVE JUROR:  So I guess what I'm saying is                              |
|      | 6  | I left that particular trial, you know, knowing that                          |
|      | 7  | probably somebody was guilty and that there -- you know, the                  |
|      | 8  | case just wasn't presented "strong-enoughly" *(sic)* to be                    |
|      | 9  | able to convict the person.                                                   |
| 01:55| 10 | THE COURT:  So that's why that comment --                                      |
| 01:55| 11 | PROSPECTIVE JUROR:  Yes.                                                       |
| 01:55| 12 | THE COURT:  -- was made.                                                       |
| 01:55| 13 | PROSPECTIVE JUROR:  Yes.                                                       |
| 01:55| 14 | THE COURT:  Okay.  And, therefore, you recognize                              |
|      | 15 | that there can be a division of opinion.                                       |
| 01:55| 16 | PROSPECTIVE JUROR:  Yes.                                                       |
| 01:55| 17 | THE COURT:  And I want to be absolutely clear,                                 |
|      | 18 | though, between us that there's a recognition that -- the                      |
|      | 19 | government's part of the case, but there's a defense                           |
|      | 20 | perspective inside also, and as a judge, as a juror, which                     |
|      | 21 | you'll be potentially, you can remain open-minded throughout                   |
|      | 22 | the proceeding.                                                                |
| 01:56| 23 | PROSPECTIVE JUROR:  Yes.                                                       |
| 01:56| 24 | THE COURT:  Okay.  Fair enough.  Let me turn you                               |
|      | 25 | over to counsel.  See what their questions are.                                |

01:56    1           MS. HEINZ:  The government has no questions,

         2    Your Honor.

01:56    3           THE COURT:  Mr. Lengyel-Leahu.

01:56    4           MR. LENGYEL-LEAHU:  Thank you, Your Honor.

01:56    5              **VOIR DIRE BY MR. LENGYEL-LEAHU**

01:56    6           MR. LENGYEL-LEAHU:  Good afternoon, Mr. Seel.

01:56    7           PROSPECTIVE JUROR:  Good afternoon.

01:56    8           MR. LENGYEL-LEAHU:  I'd ask the other jurors

         9    directly if they could avoid you ascribing behavior of other

        10    people to my client in this case.  Can you separate that

        11    out?

01:56   12           PROSPECTIVE JUROR:  Yes.

01:56   13           MR. LENGYEL-LEAHU:  In fact, it says in your

        14    questionnaire that you were in Vietnam, so you're familiar

        15    with the My Lai situation.

01:57   16           PROSPECTIVE JUROR:  Yes.

01:57   17           MR. LENGYEL-LEAHU:  And you would agree that the

        18    actions or behavior of a few do not reflect upon the U.S.

        19    army or the military in Vietnam?

01:57   20           PROSPECTIVE JUROR:  Yes.

01:57   21           MR. LENGYEL-LEAHU:  All of your other knowledge

        22    that you've received outside of this courtroom, you feel

        23    confident that you can put that aside and focus exclusively

        24    on the evidence in this case when you have to make your

        25    decision.

| | | |
|---|---|---|
| 01:57 | 1 | PROSPECTIVE JUROR:  Yes. |
| 01:57 | 2 | MR. LENGYEL-LEAHU:  You use a lot of various news |
| | 3 | sources.  Can you block out all of that cacophony and focus |
| | 4 | just on the evidence that's presented in here, because |
| | 5 | there's a lotta information, I know, that's running around |
| | 6 | in your head?  And I just wanna make sure that we start |
| | 7 | fresh with you, using your common sense, but just looking at |
| | 8 | the evidence objectively in this case. |
| 01:58 | 9 | PROSPECTIVE JUROR:  Yes. |
| 01:58 | 10 | MR. LENGYEL-LEAHU:  And if you were my client and |
| | 11 | you -- what you know about yourself, would you want someone |
| | 12 | like yourself, with your disposition and with your life |
| | 13 | experiences, and with your answers to the questionnaire -- |
| | 14 | would you want yourself sitting up there in judgment of a |
| | 15 | case of this significance? |
| 01:58 | 16 | PROSPECTIVE JUROR:  Yes. |
| 01:58 | 17 | MR. LENGYEL-LEAHU:  Thank you. |
| 01:58 | 18 | THE COURT:  And, Counsel. |
| 01:58 | 19 | MS. CORRIGAN:  Thank you. |
| 01:58 | 20 | **VOIR DIRE BY MS. CORRIGAN** |
| 01:58 | 21 | MS. CORRIGAN:  In reading your questionnaire, |
| | 22 | Mr. Seel, you have some strongly held views.  And I would |
| | 23 | like to follow up on the last question just asked of you. |
| 01:59 | 24 | Why is it you feel that in this particular case you |
| | 25 | would be a fair juror? -- without getting into the topic |

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | matter, just in terms of just generally what you know so           |
|       | 2  | far.                                                               |
| 01:59 | 3  | PROSPECTIVE JUROR:  I don't -- I don't feel like                   |
|       | 4  | I'm predisposed to one particular side or another or one           |
|       | 5  | particular belief or another or that appearances or -- it          |
|       | 6  | pretty much will depend on what's presented in the way of          |
|       | 7  | evidence.                                                          |
| 01:59 | 8  | MS. CORRIGAN:  All right.  Thank you.                              |
| 01:59 | 9  | THE COURT:  The peremptory would remain with the                  |
|       | 10 | defense.                                                           |
| 01:59 | 11 | MS. CORRIGAN:  Thank you, Your Honor.  May we have                 |
|       | 12 | just a moment?                                                    |
| 01:59 | 13 | THE COURT:  Please.                                               |
| 01:59 | 14 | *(Defense counsel confer.)*                                        |
| 02:00 | 15 | MS. CORRIGAN:  The defense would like to thank and                |
|       | 16 | excuse Ms. Popejoy.                                               |
| 02:00 | 17 | THE COURT:  Ms. Popejoy, thank you very much.  If                 |
|       | 18 | you'd go back to the jury room with our thanks and                |
|       | 19 | appreciation.                                                     |
| 02:00 | 20 | If you will call an additional juror, please.                    |
| 02:00 | 21 | THE CLERK:  Donald Tuleja.                                        |
| 02:01 | 22 | THE COURT:  Pronounce your last name for me.                     |
| 02:01 | 23 | PROSPECTIVE JUROR:  Tuleja.                                       |
| 02:01 | 24 | THE COURT:  Tuleja.  Thank you.  Have you heard                  |
|       | 25 | all the prior questions?                                          |

| | | |
|---|---|---|
| 02:01 | 1 | PROSPECTIVE JUROR:  Yes. |
| 02:01 | 2 | THE COURT:  Okay.  And would you change any of |
| | 3 | your answers between the time you filled out the |
| | 4 | questionnaire last Wednesday and today's date? |
| 02:01 | 5 | PROSPECTIVE JUROR:  No. |
| 02:01 | 6 | THE COURT:  Okay.  Because it's been a time for |
| | 7 | reflection.  Do you believe you'd be fair and impartial to |
| | 8 | both sides, then? |
| 02:01 | 9 | PROSPECTIVE JUROR:  I do. |
| 02:01 | 10 | THE COURT:  And will you follow the law? |
| 02:01 | 11 | PROSPECTIVE JUROR:  Yes. |
| 02:01 | 12 | THE COURT:  Okay.  Then let me turn you over to |
| | 13 | counsel. |
| 02:01 | 14 | **VOIR DIRE BY MS. HEINZ** |
| 02:01 | 15 | MS. HEINZ:  Hello, Mr. Tuleja.  You've had some |
| | 16 | experiences with law enforcement? |
| 02:01 | 17 | PROSPECTIVE JUROR:  Some. |
| 02:01 | 18 | MS. HEINZ:  Is there anything about those |
| | 19 | experiences that you think would make you biased against the |
| | 20 | government or for the government? |
| 02:02 | 21 | PROSPECTIVE JUROR:  No. |
| 02:02 | 22 | MS. HEINZ:  Thanks very much. |
| 02:02 | 23 | THE COURT:  Counsel on behalf of Mr. Elhuzayel, |
| | 24 | Mr. Lengyel-Leahu. |
| | 25 | |

| | | |
|---|---|---|
| 02:02 | 1 | **VOIR DIRE BY MR. LENGYEL-LEAHU** |
| 02:02 | 2 | MR. LENGYEL-LEAHU: Your Honor, would the Court |
| | 3 | indulge me one further follow-up question with Mr. Seel? |
| 02:02 | 4 | THE COURT: With who? |
| 02:02 | 5 | MR. LENGYEL-LEAHU: Mr. Seel. |
| 02:02 | 6 | THE COURT: Certainly. I'll use my discretion, |
| | 7 | Counsel. |
| 02:02 | 8 | MR. LENGYEL-LEAHU: Thank you. |
| 02:02 | 9 | You indicated on your report, I think the Court |
| | 10 | pointed out, that your evaluation of this case fairly would |
| | 11 | depend on how well the prosecutors put on their case. Is |
| | 12 | that an accurate reflection of how you feel? |
| 02:02 | 13 | PROSPECTIVE JUROR: Yes. |
| 02:02 | 14 | MR. LENGYEL-LEAHU: Okay. And you understand that |
| | 15 | they have the burden of proof in this case; that they must |
| | 16 | prove every element that they're charging beyond a |
| | 17 | reasonable doubt? |
| 02:03 | 18 | PROSPECTIVE JUROR: Yes. |
| 02:03 | 19 | MR. LENGYEL-LEAHU: And it does not matter whether |
| | 20 | the defense put on any case at all -- we can remain |
| | 21 | completely silent and walk out of the room; and if the |
| | 22 | prosecution hasn't proved every element of the case, would |
| | 23 | you be firm in your decision that they haven't proven it? |
| 02:03 | 24 | PROSPECTIVE JUROR: Yes. |
| 02:03 | 25 | MR. LENGYEL-LEAHU: Regardless of how much |

|  |  |  |
|---|---|---|
|  | 1 | evidence is brought into the Court, if it doesn't convince |
|  | 2 | you, then you would still remain firm in that decision? |
| 02:03 | 3 | PROSPECTIVE JUROR: Yes. |
| 02:03 | 4 | MR. LENGYEL-LEAHU: You're not gonna weigh it by |
|  | 5 | how much evidence is produced by either side? |
| 02:03 | 6 | PROSPECTIVE JUROR: No. |
| 02:03 | 7 | MR. LENGYEL-LEAHU: Thank you very much. |
| 02:03 | 8 | THE COURT: Do you have any questions of |
|  | 9 | Mr. Tuleja? |
| 02:03 | 10 | MR. LENGYEL-LEAHU: No. |
| 02:03 | 11 | THE COURT: Thank you. Then, Ms. Corrigan. |
| 02:03 | 12 | MS. CORRIGAN: Thank you, Your Honor. |
| 02:03 | 13 | **VOIR DIRE BY MS. CORRIGAN** |
| 02:03 | 14 | MS. CORRIGAN: Any issues for you to sit in a |
|  | 15 | six-week trial work-wise? I just was looking at your job |
|  | 16 | description. I want to make sure that you're not gonna be |
|  | 17 | stressed. |
| 02:03 | 18 | PROSPECTIVE JUROR: Nope. |
| 02:03 | 19 | MS. CORRIGAN: No financial hardship as a result? |
| 02:04 | 20 | PROSPECTIVE JUROR: None. |
| 02:04 | 21 | MS. CORRIGAN: All right. Thank you. |
| 02:04 | 22 | THE COURT: All right. The peremptory would now |
|  | 23 | pass back to the government. |
| 02:04 | 24 | MS. HEINZ: Government will pass, Your Honor. |
| 02:04 | 25 | THE COURT: The peremptory would now pass back to |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | the defense.                                                     |
| 02:04 | 2  | MS. CORRIGAN:  Thank you, Your Honor.  May we have               |
|       | 3  | a moment?                                                         |
| 02:04 | 4  | THE COURT:  You may.                                             |
| 02:04 | 5  | MS. CORRIGAN:  Thank you.                                        |
| 02:04 | 6  | *(Defense counsel confer.)*                                     |
| 02:04 | 7  | MS. CORRIGAN:  Thank you, Your Honor.  The defense              |
|       | 8  | will pass.                                                       |
| 02:04 | 9  | THE COURT:  All right.  Now.                                     |
| 02:05 | 10 | Could I speak to counsel for just a moment.                      |
| 02:05 | 11 | *(To prospective jurors:)* Would you stay here since           |
|       | 12 | you have no choice anyway.                                       |
| 02:05 | 13 | *(Laughter.)*                                                   |
| 02:05 | 14 | THE COURT:  Counsel, if I could see each of you                 |
|       | 15 | for just a moment.                                               |
| 02:05 | 16 | **SIDEBAR PROCEEDINGS**                                          |
| 02:05 | 17 | THE COURT:  Now we're at sidebar with all counsel.              |
| 02:05 | 18 | And you've each passed.  Technically, I know you're             |
|       | 19 | accepting the jury.  Okay?                                       |
| 02:06 | 20 | MS. CORRIGAN:  Correct.                                          |
| 02:06 | 21 | MR. LENGYEL-LEAHU:  No objection.                               |
| 02:06 | 22 | THE COURT:  We're going to live with these folks               |
|       | 23 | for six weeks.  There's a formality and technically.  We've     |
|       | 24 | selected the jury.  If you need to look at any notes,           |
|       | 25 | et cetera, I want you to have that time.  I'm happy to call     |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | a recess, for instance, but I want to make certain that              |
|       | 2  | you're both truly satisfied.                                         |
| 02:06 | 3  | And then I'd like to talk to each juror 'cause you                  |
|       | 4  | had a couple good points.  I'd like to talk to all of them          |
|       | 5  | about when they can start and end.  It may be 8:30 to 4:00.         |
|       | 6  | Because these are the folks you're selecting.  So we may            |
|       | 7  | have two minutes for, you know, lunch.  I'm joking.  On the         |
|       | 8  | record, that's a joke.                                              |
| 02:06 | 9  | The second thing is I truly want to be satisfied                   |
|       | 10 | that there isn't a concern, where something's come up and,         |
|       | 11 | all of a sudden over the lunch hour, one of the folks that         |
|       | 12 | remains silent says, "You know, I called my employer, and         |
|       | 13 | they just told me I'm not getting paid."  I also want to          |
|       | 14 | know if they've checked with their employer.                       |
| 02:07 | 15 | MS. CORRIGAN:  That's a good idea.                                  |
| 02:07 | 16 | THE COURT:  I've had many, many jurors on a case                   |
|       | 17 | like this who never bothered to check because they just           |
|       | 18 | assume that the employer was going to be so gracious; in          |
|       | 19 | other words, they didn't want to go to work.  That's a joke       |
|       | 20 | also.  But it's not, and so I want to spend a few moments          |
|       | 21 | with them.                                                          |
| 02:07 | 22 | And, otherwise, if that doesn't meet with your                     |
|       | 23 | approval, that's fine.  But I'd just like to be satisfied          |
|       | 24 | that you're not caught in the bind of, "We got the jury."         |
|       | 25 | It's 2:30.  Let's slow down for a moment.                          |

| | | |
|---|---|---|
| 02:07 | 1 | Do you want time to look at your notes and be sure? |
| 02:07 | 2 | MS. HEINZ:  Yes, I would. |
| 02:07 | 3 | MR. LENGYEL-LEAHU:  Yes. |
| 02:07 | 4 | MS. CORRIGAN:  I think that would be a good idea. |
| 02:07 | 5 | THE COURT:  Go out, look at your notes, but come |
| | 6 | back almost immediately.  And if you're still satisfied, I |
| | 7 | know you've technically selected the jury.  There's no |
| | 8 | perfect jury, but go take a couple minutes.  I'll see you |
| | 9 | right back in here. |
| 02:08 | 10 | Off the record. |
| 02:08 | 11 | *(Brief pause in the proceedings.)* |
| 02:09 | 12 | THE COURT:  We're back on the record. |
| 02:09 | 13 | And I'm not indicating -- you know, if you've |
| | 14 | changed your mind, I don't want to know as to whom you've |
| | 15 | changed your mind. |
| 02:09 | 16 | I just want to turn to the government first. |
| 02:09 | 17 | Are you satisfied? |
| 02:09 | 18 | MS. HEINZ:  Yes, Your Honor. |
| 02:09 | 19 | THE COURT:  Okay. |
| 02:09 | 20 | Ms. Corrigan, are you satisfied? |
| 02:09 | 21 | MS. CORRIGAN:  I am.  And I've conferred with my |
| | 22 | client.  He's satisfied. |
| 02:10 | 23 | THE COURT:  Mr. Lengyel-Leahu, are you satisfied? |
| 02:10 | 24 | MR. LENGYEL-LEAHU:  Satisfied.  And conferred with |
| | 25 | client. |

02:10    1              THE COURT:  Okay.  Now, do you want me to make

         2    that final effort just to chat with each one of these good

         3    folks?  If I do, I'm going to do it from the well, so I'm

         4    looking at these folks and have some kind of communication

         5    and relation with them other than the judge on the bench.

02:10    6              MS. HEINZ:  That would be great.

02:10    7              MS. CORRIGAN:  That would be great.

02:10    8              THE COURT:  Let's find out when they can start,

         9    when they can finish.

02:10   10         July 4th, they all understand they've got it off.

        11    They've got no choice now because that's the way it is.

02:10   12         Okay.  Let's go talk to them, then.  And can I

        13    inform them that this is the prospective jury, subject to my

        14    conversation with them?

02:10   15              MS. CORRIGAN:  Of course.

02:10   16              THE COURT:  Okay.

02:10   17         *(End of sidebar at 2:12 p.m.)*

02:10   18              **OPEN COURT PROCEEDINGS RESUMED**

02:10   19         (In the presence of the jury.)

02:11   20              THE COURT:  This is to stop counsel from walking

        21    in here. *(Indicating.)*

02:11   22         You are the prospective jury right now, subject to

        23    us swearing you, and before we do that, I want to have kind

        24    of a chat with you.  Okay?  Because both sides having

        25    passed, each side is accepting the twelve of you at the

Case 8:15-cr-00060-DOC   Document 290   Filed 03/31/17   Page 49 of 123   Page ID #:4128
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

49

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | present time.                                          |
| 02:11 | 2  | So Mr. Seel, I want to talk to you for a moment and    |
|       | 3  | then each juror.  Could be five weeks, could be seven weeks. |
|       | 4  | You never know during a trial with complexity and length. |
|       | 5  | You know that you've got that 4th of July week off.  We |
|       | 6  | already preplanned that, recessing late Thursday so in case |
|       | 7  | you're flying or taking a driving vacation, you're not |
|       | 8  | fighting traffic.  And we took a guesstimate of this a long |
|       | 9  | time ago.                                              |
| 02:12 | 10 | Can you sit with us that period of time?  This is a    |
|       | 11 | new sense of reality when I tell you you might be the  |
|       | 12 | prospective jury.                                      |
| 02:12 | 13 | PROSPECTIVE JUROR:  I work for a pharmaceutical        |
|       | 14 | manufacturing company.                                 |
| 02:12 | 15 | THE COURT:  Have you checked with 'em?                 |
| 02:12 | 16 | PROSPECTIVE JUROR:  Yes.                               |
| 02:12 | 17 | THE COURT:  'Cause sometimes I get a juror -- I've     |
|       | 18 | had nine-month trials before, and what happened was the jury |
|       | 19 | didn't check with the employer, thinking it was okay.  Then |
|       | 20 | you go back to your employer and say, "Golly gosh.  Guess |
|       | 21 | what?  I'm here for" -- this isn't a nine-month trial, by |
|       | 22 | the way.  It may go a lot faster.  But giving the outside |
|       | 23 | parameters, I'm going to say six to seven weeks.       |
| 02:12 | 24 | PROSPECTIVE JUROR:  Okay.  So here's my situation.     |
| 02:12 | 25 | As I said, I work for a small pharmaceutical           |

| | 1 | manufacturer.  Twice a year we have cycles where we close |
|---|---|---|
| | 2 | the plants, and we go in and we take care of all our |
| | 3 | projects and our maintenance and overseeing inspections. |
| 02:13 | 4 | THE COURT:  You won't be there.  You will not be |
| | 5 | there.  You'll be in trial. |
| 02:13 | 6 | PROSPECTIVE JUROR:  So... |
| 02:13 | 7 | THE COURT:  What I don't want is a surprise, after |
| | 8 | I've brought in 224 jurors, when you raise your hand and |
| | 9 | say, "You know, Judge" -- can you sit with us that period of |
| | 10 | time? |
| 02:13 | 11 | PROSPECTIVE JUROR:  I'm retiring in January.  And |
| | 12 | I would be more than happy to offer my services after |
| | 13 | January. |
| 02:13 | 14 | (Laughter.) |
| 02:13 | 15 | THE COURT:  We're in June.  Okay?  So let's try |
| | 16 | again. |
| 02:13 | 17 | PROSPECTIVE JUROR:  Yeah.  So I -- I have some |
| | 18 | obligations.  It's gonna be very difficult for the employer. |
| 02:13 | 19 | THE COURT:  We can call your employer.  Trust me, |
| | 20 | I call employers and thank them for jury service.  In fact, |
| | 21 | I even write letters.  I don't think that this is easy. |
| 02:13 | 22 | PROSPECTIVE JUROR:  Well, now that you mention it, |
| | 23 | they asked if they could write a letter. |
| 02:14 | 24 | THE COURT:  I can write a letter; in fact, I call |
| | 25 | them on occasion. |

8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

51

02:14    1            PROSPECTIVE JUROR:  That's basically the

         2    situation.  It's a very small site, and I have a key

         3    position, especially during those down cycles, and we have

         4    one coming up in June.

02:14    5            THE COURT:  Okay.  I know it's an inconvenience.

         6    Welcome.

02:14    7            Ms. Rios, the same question.  You know, I don't

         8    want people who are, you know, no salary, no wage, sole

         9    provider.  That was never the idea.  That's why we sent out

        10    thousands of jury summons to seek people who might be able

        11    to.  Could be a five-week trial, could be a seven-week

        12    trial.  It's hard to gauge.  And you know we're taking off

        13    the 4th of July week because we didn't know a month ago,

        14    when we started sending out these summons, who we'd get.

        15    And we were a little afraid of the airfares, et cetera.  So

        16    for two or three days we're missing over the 4th of July.

02:14   17            Can you sit with us?

02:14   18            PROSPECTIVE JUROR:  Yes.

02:15   19            THE COURT:  Okay.  That's a nice easy answer.

        20    Thank you very much.

02:15   21            Turn to the gentlemen, Mr. -- by the way, we're

        22    going to have six alternates.  The good folks out here think

        23    they're going home.  They're not going home.  We're going to

        24    have six alternates, because if there's any legal reason or

        25    cause, if you got ill with the flu, et cetera, we wouldn't

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | hold the other jurors up; we'd probably excuse you and bring         |
|       | 2  | in an alternate because we don't know if we'd be waiting a           |
|       | 3  | day or a week.  You see what I mean?  But there would have           |
|       | 4  | to be good legal reason or cause.                                    |
| 02:15 | 5  | So Mr. Ambriz, can you sit with us that period of                    |
|       | 6  | time?                                                                |
| 02:15 | 7  | PROSPECTIVE JUROR:  Yes, I can.                                      |
| 02:15 | 8  | THE COURT:  Okay.  I want to thank you.  I don't                    |
|       | 9  | know where we find all of you good folks.  Thank you.               |
| 02:15 | 10 | Mr. Huang.                                                           |
| 02:15 | 11 | PROSPECTIVE JUROR:  Yes.                                             |
| 02:15 | 12 | THE COURT:  Can you sit with us that period of                     |
|       | 13 | time?                                                                |
| 02:15 | 14 | PROSPECTIVE JUROR:  I think so, yes.                                 |
| 02:15 | 15 | THE COURT:  Okay.  Now, "I think so," you just                     |
|       | 16 | made me cringe.  Have you checked with an employer, or is           |
|       | 17 | there some problem?                                                  |
| 02:15 | 18 | PROSPECTIVE JUROR:  They're fine.                                    |
| 02:15 | 19 | THE COURT:  You're fine?                                            |
| 02:15 | 20 | PROSPECTIVE JUROR:  Yeah.                                            |
| 02:15 | 21 | THE COURT:  Okay.  Okay.  I just want to make sure                 |
|       | 22 | that folks have checked because I've had literally a                |
|       | 23 | nine-month trial where we literally got the jury, and a             |
|       | 24 | juror raised hand and said, "I haven't checked with my              |
|       | 25 | employer."                                                           |

02:16    1                Mr. Mejia.

02:16    2                PROSPECTIVE JUROR:  Yes.

02:16    3                THE COURT:  Okay.  I apologize.  Mr. Traviglia,

         4     can you sit with us that period of time?

02:16    5                PROSPECTIVE JUROR:  On July 25th, I leave for

         6     Canada.

02:16    7                THE COURT:  For where?

02:16    8                PROSPECTIVE JUROR:  Canada.

02:16    9                THE COURT:  Where?  I'm just kidding you.  Paid

        10     vacation?

02:16   11                PROSPECTIVE JUROR:  It's already requested off

        12     from work.  It's just as long as we're gonna be done by the

        13     25th.

02:16   14                THE COURT:  I think we're easily done.  The

        15     problem becomes the deliberation.  It could be hours.  It

        16     could be days.

02:16   17                We'll never know that, 'cause it's the quality of

        18     your thought process, and you're the ones who will govern

        19     that.

02:17   20                Can I guarantee July 25th?  No, but hopefully.

02:17   21                PROSPECTIVE JUROR:  Yeah.

02:17   22                THE COURT:  Okay.  Let's assume the very, very

        23     worst.  The very worst.  Is it an employee-employer

        24     situation?

02:17   25                PROSPECTIVE JUROR:  No.  Just family.  Family

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | vacation.                                                    |
| 02:17   | 2  | THE COURT:  See, I don't want to ruin that.                  |
| 02:17   | 3  | PROSPECTIVE JUROR:  Yeah.                                     |
| 02:17   | 4  | THE COURT:  But we could be ruining that.  Now,              |
|         | 5  | are you gonna rush to judgment because you get the case on   |
|         | 6  | July 24th and we've got a family vacation on the 25th?       |
| 02:17   | 7  | PROSPECTIVE JUROR:  I wouldn't rush to judgment.             |
| 02:17   | 8  | THE COURT:  You would not?                                   |
| 02:17   | 9  | PROSPECTIVE JUROR:  No.                                       |
| 02:17   | 10 | THE COURT:  Okay.  That's good enough.  Okay.                |
|         | 11 | I'll have alternates.  If there's a real illness, et cetera, |
|         | 12 | but if we got there, I have to tell you I wouldn't excuse    |
|         | 13 | you for family vacation.                                     |
| 02:17   | 14 | PROSPECTIVE JUROR:  I understand.                            |
| 02:17   | 15 | THE COURT:  Okay.                                            |
| 02:17   | 16 | PROSPECTIVE JUROR:  Your Honor, I have something             |
|         | 17 | to add.                                                       |
| 02:17   | 18 | THE COURT:  You're free to.                                  |
| 02:17   | 19 | PROSPECTIVE JUROR:  I thought you were gonna ask             |
|         | 20 | me more questions when it was passed to me.                  |
| 02:18   | 21 | THE COURT:  You said yes, and I moved on.                    |
| 02:18   | 22 | PROSPECTIVE JUROR:  I know.  I just thought you              |
|         | 23 | were going to ask me.  I was thinking about all the          |
|         | 24 | questions that the attorneys have been asking, and I         |
|         | 25 | remember one question by -- I'm sorry, I always forget your  |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | name.                                                        |
| 02:18 | 2  | MR. LENGYEL-LEAHU:  You're not alone.                        |
| 02:18 | 3  | PROSPECTIVE JUROR:  But he asked something along             |
|       | 4  | the lines of being able to put your own judgment forth and   |
|       | 5  | not go along with the group, and I was thinking about that   |
|       | 6  | like since he asked that.  And normally, like describing     |
|       | 7  | myself, I generally like to just go along with the flow, but |
|       | 8  | I do know that there's an importance to this in showing your |
|       | 9  | own opinions and all that.  So -- and you were talking about |
|       | 10 | fairness.  So I was just bringing that up right now that     |
|       | 11 | while I'm gonna try to think about things, how I perceive    |
|       | 12 | it, I just -- I've always had trouble, um, you know,         |
|       | 13 | expressing myself.                                           |
| 02:18 | 14 | THE COURT:  Okay.  When you get into                         |
|       | 15 | deliberations, there may be some people who are vociferous.  |
| 02:19 | 16 | PROSPECTIVE JUROR:  Exactly.                                 |
| 02:19 | 17 | THE COURT:  And some people who are quiet.  That             |
|       | 18 | doesn't mean that there's any greater virtue or reasoning    |
|       | 19 | ability between a boisterous or vociferous person and a      |
|       | 20 | quiet person.                                                |
| 02:19 | 21 | PROSPECTIVE JUROR:  Okay.                                    |
| 02:19 | 22 | THE COURT:  And it's going to be your ability to             |
|       | 23 | listen and reason as a group, and some people may be what I  |
|       | 24 | call quick to the trigger, and others may be cautious,       |
|       | 25 | almost concerned about making a decision.                    |

| | | |
|---|---|---|
| 02:19 | 1 | PROSPECTIVE JUROR:  Right. |
| 02:19 | 2 | THE COURT:  But eventually, all the parties are |
| | 3 | going to want to know that you're capable of making a |
| | 4 | decision. |
| 02:19 | 5 | PROSPECTIVE JUROR:  Okay. |
| 02:19 | 6 | THE COURT:  And in doing that in a fair way, |
| | 7 | listening to all the colleagues.  It doesn't mean once you |
| | 8 | take a position that may not be the position that you hold |
| | 9 | to at the end, but it has to be a reasoning process. |
| 02:19 | 10 | PROSPECTIVE JUROR:  Okay. |
| 02:19 | 11 | THE COURT:  And courteous to all of the others. |
| | 12 | Fair enough? |
| 02:19 | 13 | PROSPECTIVE JUROR:  Yeah.  I just wanted to bring |
| | 14 | it up. |
| 02:19 | 15 | THE COURT:  If they have any additional questions, |
| | 16 | we'll have one more discussion in the hallway. |
| 02:19 | 17 | PROSPECTIVE JUROR:  Perfect. |
| 02:19 | 18 | THE COURT:  Talk about you behind your back. |
| | 19 | Thank you for raising that. |
| 02:20 | 20 | Ms. Hutchinson, what about you?  Can you sit with |
| | 21 | us that period of time? |
| 02:20 | 22 | PROSPECTIVE JUROR:  I believe so.  I have let my |
| | 23 | bosses know, so they are aware of the situation. |
| 02:20 | 24 | THE COURT:  What did they say in return? |
| 02:20 | 25 | PROSPECTIVE JUROR:  They said okay. |

| | | |
|---|---|---|
| 02:20 | 1 | THE COURT:  Oh, okay.  Well, thank them. |
| 02:20 | 2 | Mr. Tuleja. |
| 02:20 | 3 | PROSPECTIVE JUROR:  Tuleja. |
| 02:20 | 4 | THE COURT:  Tuleja.  My apologies. |
| 02:20 | 5 | Can you sit with us? |
| 02:20 | 6 | PROSPECTIVE JUROR:  I'm fine.  Yeah. |
| 02:20 | 7 | THE COURT:  Ms. Okubo. |
| 02:20 | 8 | PROSPECTIVE JUROR:  Yes. |
| 02:20 | 9 | THE COURT:  Can you sit there? |
| 02:20 | 10 | PROSPECTIVE JUROR:  *(Nods head.)* |
| 02:20 | 11 | THE COURT:  Mr. Zamora. |
| 02:20 | 12 | PROSPECTIVE JUROR:  Yes. |
| 02:20 | 13 | THE COURT:  Okay.  All right. |
| 02:20 | 14 | PROSPECTIVE JUROR:  It's okay, Judge. |
| 02:20 | 15 | THE COURT:  Help me with your last name. |
| 02:20 | 16 | PROSPECTIVE JUROR:  Omiligespiritu. |
| 02:20 | 17 | THE COURT:  I'll get that. |
| 02:20 | 18 | PROSPECTIVE JUROR:  No problem.  I have unlimited |
| | 19 | jury duty. |
| 02:21 | 20 | THE COURT:  Oh, we've got lot of cases coming up. |
| 02:21 | 21 | PROSPECTIVE JUROR:  Yes. |
| 02:21 | 22 | THE COURT:  And thank you very much. |
| 02:21 | 23 | And Ms. Valdovinos. |
| 02:21 | 24 | PROSPECTIVE JUROR:  Yes, I'm fine. |
| 02:21 | 25 | THE COURT:  All right.  Now, Counsel. |

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 58 of 123  Page ID #:4137
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

58

02:21   1          We're going to be right back.  I just want to have

        2   one more brief conversation with counsel.

02:21   3          Counsel, if you will join me for just a moment at

        4   sidebar.

02:21   5                    **SIDEBAR PROCEEDINGS**

02:21   6          *(Outside the presence of the jury.)*

02:22   7          THE COURT:  All right.  You know, I wanted to go

        8   through that one more time and if there's an issue for

        9   cause, et cetera.  We get honest and complete answers when

       10   the reality hits of being a juror.  Pardon me about being so

       11   laborious.  It's just that we have to live with these folks

       12   a long time.  And just because they say X this morning

       13   doesn't mean it's still X this afternoon.

02:22  14          MS. CORRIGAN:  Well, Mr. Seel indicated he had no

       15   hardship earlier.  And I recognize he probably said it in

       16   the words of financial hardship.  I wish he had brought it

       17   up in his questionnaire.  I think this hardship's going to

       18   have a big impact on him.  He used the word "key" member of

       19   the company.  It sounds like a small company.  Companies can

       20   be impacted.

02:22  21          My sense of him -- what he wrote in his background,

       22   what he appears -- he seems like a pretty -- what's the word

       23   I'm looking for -- principled person who would not want to

       24   let down his work.  And he seems to indicate that it would

       25   be quite a hardship for him to be gone from the company and

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | that it would also be a hardship to the company.  It's not a |
|       | 2  | big company where someone else can be slipped in.            |
| 02:23 | 3  | So I would ask the Court to excuse him for cause.            |
| 02:23 | 4  | THE COURT:  Okay.                                            |
| 02:23 | 5  | MS. CORRIGAN:  I wish I'd known that before 'cause          |
|       | 6  | I would have made the motion before that.                    |
| 02:23 | 7  | THE COURT:  That's fine.  That's why you have the           |
|       | 8  | opportunity now.                                             |
| 02:23 | 9  | MS. CORRIGAN:  Or use the peremptory to get rid of         |
|       | 10 | him because I think he's gonna be preoccupied.               |
| 02:23 | 11 | THE COURT:  Well, you did the last pass, didn't            |
|       | 12 | you?                                                          |
| 02:23 | 13 | MS. CORRIGAN:  Yes.  But had I known that                   |
|       | 14 | information --                                               |
| 02:23 | 15 | THE COURT:  I'm going to reopen up the peremptory          |
|       | 16 | for you, in other words, if you want to exercise a           |
|       | 17 | peremptory.  What I don't want is to have a record where I'm  |
|       | 18 | excluding you of that when you've just passed.  But for      |
|       | 19 | cause, I'm not going to grant that motion.                    |
| 02:24 | 20 | MS. CORRIGAN:  All right.                                    |
| 02:24 | 21 | THE COURT:  So you talk to your client.  Make sure         |
|       | 22 | that's what you want to do at the last moment.  But I can     |
|       | 23 | reopen up the peremptory.  But then it passes back to the     |
|       | 24 | government.                                                   |
| 02:24 | 25 | MS. CORRIGAN:  That's fine.                                  |

**DEBBIE GALE, U.S. COURT REPORTER**

02:24   1            So, in other words, it wouldn't be as though we

        2    just used Peremptory 8, or the government had been -- used

        3    Peremptory 5.  We will be reinstating them?

02:24   4            THE COURT:  You will be.

02:24   5            MS. HEINZ:  "9"?

02:24   6            THE COURT:  I would go back to 8.  I think that

        7    that's fair --

02:24   8            MS. CORRIGAN:  Okay.

02:24   9            MS. HEINZ:  Okay.

02:24  10            MS. CORRIGAN:  -- given that I think we should

       11    give the government a chance to voice whether they want 5

       12    back.

02:24  13            THE COURT:  But that would be by stipulation.

       14    We're violating all the process.  We're joking in the

       15    hallway, for the record.  But it's fair.

02:24  16            MS. CORRIGAN:  It's fair.  It's new information

       17    that's rather significant.  So I will stip if the government

       18    wants to go back.

02:24  19            THE COURT:  Go back to 5?

02:24  20            MS. HEINZ:  I think we would like to go back to 5,

       21    and then briefly just reconfer with the rest of our team to

       22    find out if we still want to pass or not.

02:25  23            THE COURT:  Let me tell the jury that this is my

       24    decision to go back to offer the first peremptory to the

       25    government, by stipulation of all counsel.  And the defense

```
 1    will follow with the next, that we don't have a jury quite
 2    yet.
 3              MS. CORRIGAN:  Fair enough.
 4              THE COURT:  I think that will give you a modicum
 5    of well-being in terms of who you're living with.
 6              MS. HEINZ:  That's fair, because this is new
 7    information.
 8              THE COURT:  Yeah.
 9         (End of sidebar proceedings at 2:27 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
| 02:25 | 1  | **OPEN COURT PROCEEDINGS RESUMED**                       |
| 02:25 | 2  | *(In the presence of the jury.)*                         |
| 02:25 | 3  | THE COURT:  Okay.  Not quite yet, almost, but not        |
|       | 4  | quite yet.  By stipulation of all counsel, we're going to |
|       | 5  | reopen the peremptories.  And it's been agreed upon by all |
|       | 6  | counsel that we'll go back to the government's peremptory. |
|       | 7  | And you know the number from the record we've established. |
| 02:26 | 8  | And then move to the defense.                            |
| 02:26 | 9  | So far, we now go back to the government                 |
|       | 10 | peremptory, in case you want to exercise any peremptory. |
| 02:26 | 11 | MS. HEINZ:  Your Honor, the government passes.           |
| 02:26 | 12 | THE COURT:  Okay.  We now turn to the defense, if        |
|       | 13 | the defense wants to exercise any peremptory.           |
| 02:26 | 14 | MS. CORRIGAN:  Yes, please, Your Honor.  We'd like       |
|       | 15 | to thank and excuse Mr. Seel.                            |
| 02:26 | 16 | THE COURT:  Mr. Seel, thank you, sir.  If you'd go       |
|       | 17 | back to the jury room.  Thank you.                       |
| 02:26 | 18 | That's a peremptory.                                     |
| 02:26 | 19 | If you will call another juror, please.                 |
| 02:26 | 20 | THE CLERK:  Nicholas Buffum.                             |
| 02:26 | 21 | THE COURT:  And that was stipulated to by --            |
|       | 22 | reopening by both counsel; is that correct?             |
| 02:26 | 23 | MS. ELIOT:  Yes, Your Honor.                             |
| 02:26 | 24 | MS. CORRIGAN:  Yep, Your Honor.                          |
| 02:27 | 25 | MR. LENGYEL-LEAHU:  Yes, Your Honor.                     |

8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

63

02:27   1            THE COURT:  All right.  That was a "yes" by all

        2    parties.

02:27   3            And, Mr. Buffum, as you're being seated, have you

        4    heard all the prior questions, sir?

02:27   5            PROSPECTIVE JUROR:  Yes.

02:27   6            THE COURT:  So you were here this morning,

        7    obviously.  Critical question, once again, is that's why I

        8    created the questionnaire.  Literally, selecting a jury

        9    could take four or five days without this, but it gave you a

       10    chance to answer privately and thoughtfully the questions

       11    all counsel wanted to ask and the Court.

02:27  12            Are there any changes that you'd make from last

       13    Wednesday in filling out the questionnaire to today's date?

02:27  14            PROSPECTIVE JUROR:  No.

02:27  15            THE COURT:  Would you still be fair and impartial

       16    to both sides?

02:27  17            PROSPECTIVE JUROR:  Yes.

02:27  18            THE COURT:  Would you follow the law?

02:27  19            PROSPECTIVE JUROR:  Yes.

02:27  20            THE COURT:  Then I'll turn you over to counsel.

02:27  21            Counsel on behalf of the government.

02:27  22            MS. HEINZ:  Your Honor, the government has no

       23    questions for this juror.

02:27  24            THE COURT:  All right.  And Mr. Lengyel-Leahu.

       25

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 02:27 | 1  | **VOIR DIRE BY MR. LENGYEL-LEAHU**                           |
| 02:28 | 2  | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                   |
| 02:28 | 3  | I was waiting for you.  How are you this afternoon?          |
| 02:28 | 4  | PROSPECTIVE JUROR:  Good.  How are you?                      |
| 02:28 | 5  | MR. LENGYEL-LEAHU:  I'm well.  You like sports?              |
| 02:28 | 6  | PROSPECTIVE JUROR:  Yes.                                     |
| 02:28 | 7  | MR. LENGYEL-LEAHU:  And I see you're a Kings fan.            |
| 02:28 | 8  | PROSPECTIVE JUROR:  Yes.                                     |
| 02:28 | 9  | MR. LENGYEL-LEAHU:  In this case, you're gonna be            |
|       | 10 | our baseball umpire.                                         |
| 02:28 | 11 | PROSPECTIVE JUROR:  Okay.                                    |
| 02:28 | 12 | MR. LENGYEL-LEAHU:  And you're gonna be calling              |
|       | 13 | the balls and the strikes, as far as the evidence is         |
|       | 14 | concerned.                                                   |
| 02:28 | 15 | PROSPECTIVE JUROR:  All right.                               |
| 02:28 | 16 | MR. LENGYEL-LEAHU:  And, um, you think you can be            |
|       | 17 | fair and impartial when you're calling those balls and the   |
|       | 18 | strikes?                                                     |
| 02:28 | 19 | PROSPECTIVE JUROR:  Yes.                                     |
| 02:28 | 20 | MR. LENGYEL-LEAHU:  You don't make up for one bad            |
|       | 21 | call, make another bad call in order to even it up or        |
|       | 22 | anything, correct?                                           |
| 02:28 | 23 | PROSPECTIVE JUROR:  No.                                      |
| 02:28 | 24 | MR. LENGYEL-LEAHU:  You want an absolute level               |
|       | 25 | playing field -- that government's gonna be put on to their  |

|  |  |  |
|---|---|---|
|  | 1 | proof beyond a reasonable doubt. *(Verbatim.)* |
| 02:28 | 2 | PROSPECTIVE JUROR:  Yes. |
| 02:28 | 3 | MR. LENGYEL-LEAHU:  And if they don't touch all |
|  | 4 | the bases around, they're out. |
| 02:28 | 5 | PROSPECTIVE JUROR:  Correct. |
| 02:29 | 6 | MR. LENGYEL-LEAHU:  You have a friend that's been |
|  | 7 | in the LAPD for a long period of time; is that right? |
| 02:29 | 8 | PROSPECTIVE JUROR:  Yes. |
| 02:29 | 9 | MR. LENGYEL-LEAHU:  Will that have any impact on |
|  | 10 | your ability to impartially and objectively observe evidence |
|  | 11 | from other police? |
| 02:29 | 12 | PROSPECTIVE JUROR:  No. |
| 02:29 | 13 | MR. LENGYEL-LEAHU:  Think you'd be a fair and |
|  | 14 | impartial jury *(sic)* on this particular case, knowing what |
|  | 15 | you know, hearing everything that you heard -- and I know we |
|  | 16 | keep asking the same questions, but we haven't had chance to |
|  | 17 | direct 'em to you. |
| 02:29 | 18 | PROSPECTIVE JUROR:  Yes. |
| 02:29 | 19 | MR. LENGYEL-LEAHU:  Okay.  If you were sitting |
|  | 20 | next to me, would you want you up there? |
| 02:29 | 21 | PROSPECTIVE JUROR:  Yes. |
| 02:29 | 22 | MR. LENGYEL-LEAHU:  Appreciate ya.  Thank you. |
| 02:29 | 23 | PROSPECTIVE JUROR:  You're welcome. |
| 02:29 | 24 | THE COURT:  Ms. Corrigan. |
|  | 25 |  |

|          |    |                                                      |
|----------|----|------------------------------------------------------|
| 02:29    | 1  | **VOIR DIRE BY MS. CORRIGAN**                        |
| 02:29    | 2  |                                                      |
| 02:29    | 3  | MS. CORRIGAN:  Briefly, just so we don't miss        |
|          | 4  | anything, any hardship -- financial, work-wise,      |
|          | 5  | family-wise -- that we should know about?            |
| 02:29    | 6  | PROSPECTIVE JUROR:  No.                              |
| 02:29    | 7  | MS. CORRIGAN:  All right.  Thank you.                |
| 02:29    | 8  | THE COURT:  All right.  The peremptory would         |
|          | 9  | remain with the defense.                             |
| 02:29    | 10 | MS. CORRIGAN:  Thank you, Your Honor.  May we have   |
|          | 11 | a moment?                                            |
| 02:29    | 12 | THE COURT:  You may.                                 |
| 02:29    | 13 | *(Defense counsel confer.)*                          |
| 02:29    | 14 | MS. CORRIGAN:  Defense would pass, Your Honor.       |
| 02:29    | 15 | THE COURT:  All right.  The peremptory would now     |
|          | 16 | pass to the government.                              |
| 02:30    | 17 | MS. HEINZ:  Your Honor, may I have one moment?       |
| 02:30    | 18 | THE COURT:  Certainly.                               |
| 02:30    | 19 | *(Government counsel confer.)*                       |
| 02:30    | 20 | MS. HEINZ:  Government would pass, Your Honor.       |
| 02:30    | 21 | THE COURT:  All right.  Besides me making the        |
|          | 22 | additional inquiry, as I did with the other jurors, of |
|          | 23 | Mr. Buffum, which I'd like to do, is there any reason that |
|          | 24 | any of you would like a sidebar?                     |
| 02:30    | 25 | MS. CORRIGAN:  No, Your Honor.                       |

| | | |
|---|---|---|
| 02:30 | 1 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 02:30 | 2 | MS. HEINZ:  No, Your Honor. |
| 02:30 | 3 | THE COURT:  Then, Mr. Buffum, the same questions. |
| | 4 | What I'm worried about is I've been involved in six-month |
| | 5 | trials, nine-month trials, and sometimes I'll get a juror |
| | 6 | and in good faith they believe that they can serve, but the |
| | 7 | employer has a little bit different viewpoint. |
| 02:30 | 8 | Can you serve with us six to seven weeks? |
| 02:30 | 9 | PROSPECTIVE JUROR:  Yes. |
| 02:30 | 10 | THE COURT:  I never know how a trial's going to |
| | 11 | go.  We could go much faster, but we could go a little |
| | 12 | slower also. |
| 02:31 | 13 | PROSPECTIVE JUROR:  I'll be all right. |
| 02:31 | 14 | THE COURT:  You'll be okay? |
| 02:31 | 15 | PROSPECTIVE JUROR:  Yeah. |
| 02:31 | 16 | THE COURT:  Ladies and gentlemen, if the twelve of |
| | 17 | you would stand, Debbie's going to administer an oath to |
| | 18 | you. |
| 02:31 | 19 | PROSPECTIVE JUROR:  Your Honor? |
| 02:31 | 20 | MS. CORRIGAN:  Your Honor, we have a question from |
| | 21 | a juror. |
| 02:31 | 22 | PROSPECTIVE JUROR:  I'm kinda concerned about the |
| | 23 | end point. |
| 02:31 | 24 | THE COURT:  And what's your end point? |
| 02:31 | 25 | PROSPECTIVE JUROR:  Well, I'm supposed to be |

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | moving at the end of July to Florida.                      |
| 02:31 | 2  | THE COURT:  Okay.  Well, that's just the                   |
|       | 3  | information we need.                                        |
| 02:31 | 4  | MS. CORRIGAN:  Right.                                       |
| 02:31 | 5  | THE COURT:  Why don't you have a seat again,               |
|       | 6  | folks.  Not so fast.  I'm glad to hear it now, because once |
|       | 7  | we send the other hundred jurors home, we can't get 'em    |
|       | 8  | back.  So thank you.                                        |
| 02:31 | 9  | What date?                                                 |
| 02:31 | 10 | PROSPECTIVE JUROR:  As early as July 24th,                 |
|       | 11 | potentially.                                               |
| 02:31 | 12 | THE COURT:  I just don't know what your                    |
|       | 13 | deliberation process is, and I can't guarantee that you    |
|       | 14 | won't be deliberating on July 24th.  You see what I mean?  |
|       | 15 | We've estimated in good faith.  So, Counsel.               |
| 02:32 | 16 | MS. CORRIGAN:  Your Honor, also I think there              |
|       | 17 | would be some prep time for the move that would probably   |
|       | 18 | impact.  Is that correct?                                   |
| 02:32 | 19 | THE COURT:  I'm going to take July 24th without            |
|       | 20 | confusion.                                                  |
| 02:32 | 21 | MS. CORRIGAN:  All right.                                   |
| 02:32 | 22 | THE COURT:  I think we'll be done, but I don't             |
|       | 23 | want to guarantee that.  You two talk.                     |
| 02:32 | 24 | *(Counsel confer.)*                                        |
| 02:32 | 25 | THE COURT:  Thank you, by the way.  That's just            |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | what we need.                                            |
| 02:33 | 2  | MS. HEINZ:  We've conferred, and we do not think         |
|       | 3  | this will be an issue.                                   |
| 02:33 | 4  | THE COURT:  Counsel.                                     |
| 02:33 | 5  | MS. CORRIGAN:  That's correct, Your Honor.               |
| 02:33 | 6  | MR. LENGYEL-LEAHU:  That's correct, Your Honor.          |
| 02:33 | 7  | THE COURT:  We'll have alternates just in case,          |
|       | 8  | and all parties are aware of this.                       |
| 02:33 | 9  | PROSPECTIVE JUROR:  Thank you.                           |
| 02:33 | 10 | THE COURT:  If the twelve of you would stand once        |
|       | 11 | again, and Debbie's going to administer an oath to you.  |
| 02:33 | 12 | THE CLERK:  If you'd please raise your right             |
|       | 13 | hands.                                                   |
| 02:33 | 14 | *(Jury sworn.)*                                          |
| 02:33 | 15 | THE COURT:  All right.  Please be seated for just        |
|       | 16 | a moment.                                                |
| 02:33 | 17 | Now, we have six chairs in the back, and what you        |
|       | 18 | folks should know in the audience is we're going to get six |
|       | 19 | alternates.  Let me explain to you and the prospective   |
|       | 20 | jurors down below, because they may be coming up.  It may be |
|       | 21 | possible before 4:30 we can get the six of you and I'm not |
|       | 22 | inviting a hundred of you back tomorrow.                 |
| 02:34 | 23 | And an alternate sits in waiting.  They may never        |
|       | 24 | actually be a part of the jury, because if an alternate  |
|       | 25 | takes your place, something's happened:  You had to move to |

Florida; there was an illness or sickness, some tragedy
usually that means that for good legal reason and cause that
juror has to be replaced.

02:34          It's our guarantee that we don't start a case all
over again because we fall below twelve jurors.  And so six
may be excessive, but I've had as many as ten alternates
before in cases that took a little longer, and you'd be
surprised, it's hard to get twelve folks together.  It's
hard not to get the flu.  Things happen in families.

02:34          Deb, I need six chairs out from the back, and I
need them set up right there.

02:35          Now, what we're going to do initially is there's
going to be six chairs.  They don't look too comfortable, do
they?  There will be more comfortable chairs if you're an
alternate.  Second, I'll move two of the six alternates up
into the jury box.  We don't know which ones yet, and
therefore, eventually, there will be four alternates down
below.  Two of the six will join the jury up in the box.  So
there will be a lot more room, but I'm not certain how many
musical chairs we're going to play in the next few moments.

02:35          Next is, once again each counsel has a number of
preempts, but when they've exhausted those preempts, that's
the end of the process.  And I'm not going to tell you how
many.

02:35          Let me say that normally, by code, if you're the

1   first alternate selected, the second, third, fourth, fifth,

2   or sixth, we would call you in that order.  So if a juror

3   was unable to continue, we'd call one of you folks up to

4   take Juror No. 5's place if Juror No. 5 couldn't continue,

5   for instance.  Normally, we'd take Alternate 1.  That's not

6   what we're going to do.  All six of you are co-equal.  And

7   if one of the sitting jurors can't continue, it's very

8   dramatic.

02:36   9        Debbie puts your name into a bowl, and she's going

10   to pick one of your names out.  That means you could be

11   alternate No. 4, but you're really the person that we

12   select.

02:36   13        Why?  Because we know that Alternate No. 6 has to

14   remain just as alert as Alternate No. 1, because you've got

15   an excellent chance of being drawn.  So don't be misled when

16   we say Alternate No. 1, 2, 3, 4, 5, or 6.  Understood?

02:36   17        So we're going to slowly call six names.

02:36   18        And, counsel, you have seven boxes at the bottom of

19   your sheet.

02:36   20        So let's start with Seat No. 1, the first name.

02:37   21        THE CLERK:  Christopher Leon.

02:37   22        THE COURT:  Mr. Leon, if you would come up, sir,

23   and take the seat closest to me.

02:37   24        The second prospective juror.

02:37   25        THE CLERK:  Frank Fraga.

02:37   1           THE COURT:  Mr. Fraga, if you'd be kind enough to

       2   come up and if you'd take the second seat.  I promise you,

       3   if you're selected, they will be much more comfortable,

       4   gentlemen.

02:37   5           The third prospective juror.

02:37   6           THE CLERK:  Dillon Cassell.

02:37   7           THE COURT:  Mr. Cassell, if you'd be kind enough,

       8   sir, to take the third white chair.

02:37   9           The fourth potential alternate.

02:37  10           THE CLERK:  Daniel Hayden.

02:37  11           THE COURT:  Thank you.  That would be in the

      12   fourth chair, sir.  Thank you.

02:38  13           The fifth.

02:38  14           THE CLERK:  John Gilliard.

02:38  15           THE COURT:  Mr. Gilliard, if you'd be kind enough

      16   to take the fifth chair.

02:38  17           And the sixth potential alternate.

02:38  18           THE CLERK:  Scott Kirby.

02:38  19           THE COURT:  Mr. Kirby, the last chair that's open,

      20   sir.

02:38  21           All right.  Now, the same basic questions.

02:38  22       *(Court and clerk confer.)*

02:38  23           THE COURT:  Mr. Kirby.  Maybe Mr. Kirby didn't

      24   report today.

02:38  25           Could we call down.  We're going to call down and

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | see if Mr. Kirby is in the jury room.  We have him marked as      |
|       | 2  | being here, but potentially, he might not have been brought      |
|       | 3  | up.                                                              |
| 02:38 | 4  | THE CLERK:  They're bringing him up.                            |
| 02:38 | 5  | THE COURT:  Okay.                                               |
| 02:39 | 6  | Counsel, could I start, in Mr. Kirby's absence,                |
|       | 7  | with the first five jurors?                                      |
| 02:39 | 8  | MS. CORRIGAN:  Yes, Your Honor.                                 |
| 02:39 | 9  | MR. LENGYEL-LEAHU:  Yes, Your Honor.                            |
| 02:39 | 10 | MS. HEINZ:  Yes, Your Honor.                                    |
| 02:39 | 11 | THE COURT:  So let me start with the basic                     |
|       | 12 | questions for Mr. Christopher Leon.  It's the same question.     |
|       | 13 | Between last Wednesday and today's date, are there different     |
|       | 14 | answers that you might have placed on this questionnaire?        |
| 02:39 | 15 | PROSPECTIVE JUROR:  No.                                         |
| 02:39 | 16 | THE COURT:  Could you still be fair and impartial              |
|       | 17 | to both sides?                                                  |
| 02:39 | 18 | PROSPECTIVE JUROR:  Yes.                                        |
| 02:39 | 19 | THE COURT:  Will you follow the law?                           |
| 02:39 | 20 | PROSPECTIVE JUROR:  Yes.                                        |
| 02:39 | 21 | THE COURT:  Okay.  Then I don't have any further              |
|       | 22 | questions of you.                                               |
| 02:39 | 23 | We try to concoct a pretty good questionnaire for             |
|       | 24 | you.  Okay.                                                     |
| 02:39 | 25 | Mr. Fraga, the same question.  Between last                    |

1    Wednesday and your answers to this questionnaire, would some

2    of these answers change or are these the same answers?

02:39   3          PROSPECTIVE JUROR:  No, they're the same.

02:39   4          THE COURT:  Same today.

02:39   5          PROSPECTIVE JUROR:  Same.

02:39   6          THE COURT:  Would you be very impartial to both

7    sides?

02:39   8          PROSPECTIVE JUROR:  Yes.

02:39   9          THE COURT:  Would you follow the law?

02:39   10          PROSPECTIVE JUROR:  Yes.

02:39   11          THE COURT:  Now, you've heard all the questions.

02:39   12          PROSPECTIVE JUROR:  Yes, I have.

02:39   13          THE COURT:  You've been out in the audience a long

14    time.

02:39   15          Mr. Cassell, the same question.  Jury questionnaire

16    last Wednesday.  Here we are in court on Tuesday.  Would

17    your answers have changed to any of these questions on the

18    questionnaire?

02:40   19          PROSPECTIVE JUROR:  They're the same.

02:40   20          THE COURT:  The same basic question, and that is,

21    would you be fair and impartial to both sides?

02:40   22          PROSPECTIVE JUROR:  Yes.

02:40   23          THE COURT:  Will you follow the law?

02:40   24          PROSPECTIVE JUROR:  Yes.

02:40   25          THE COURT:  Mr. Hayden, same question to you.

|      |    |                                                                    |
|------|----|--------------------------------------------------------------------|
|      | 1  | Last Wednesday you filled out a questionnaire.  Today you're       |
|      | 2  | back in court.  Plenty of time for reflection.  Would your        |
|      | 3  | answers change in any way?                                        |
| 02:40 | 4  | PROSPECTIVE JUROR:  No.                                          |
| 02:40 | 5  | THE COURT:  Same answers.                                        |
| 02:40 | 6  | PROSPECTIVE JUROR:  Same answers.                                |
| 02:40 | 7  | THE COURT:  Would you be fair and impartial to                  |
|      | 8  | both sides?                                                       |
| 02:40 | 9  | PROSPECTIVE JUROR:  Yes, sir.                                    |
| 02:40 | 10 | THE COURT:  Would you follow the law?                            |
| 02:40 | 11 | PROSPECTIVE JUROR:  Yes, sir.                                    |
| 02:40 | 12 | THE COURT:  Thank you.                                           |
| 02:40 | 13 | Mr. Gilliard, sir, same question.  Last Wednesday               |
|      | 14 | you filled out a questionnaire.                                  |
| 02:40 | 15 | PROSPECTIVE JUROR:  Yes.                                         |
| 02:40 | 16 | THE COURT:  Time for reflection.  You're back in               |
|      | 17 | court on Tuesday.  Would your answers remain the same, or        |
|      | 18 | would there be changes to these answers?                         |
| 02:40 | 19 | PROSPECTIVE JUROR:  Same, sir.                                   |
| 02:40 | 20 | THE COURT:  Would you be fair and impartial to                  |
|      | 21 | both sides?                                                       |
| 02:40 | 22 | PROSPECTIVE JUROR:  Yes.                                         |
| 02:40 | 23 | THE COURT:  Would you follow the law?                            |
| 02:40 | 24 | PROSPECTIVE JUROR:  Yes.                                         |
| 02:40 | 25 | THE COURT:  And I said Mr. Kirby, I think, is                    |

|        |    |                                                                  |
|--------|----|------------------------------------------------------------------|
|        | 1  | about to join us, and he's walking right through the door        |
|        | 2  | now.                                                             |
| 02:40  | 3  | Mr. Kirby, thank you, sir.  If you will come in,                 |
|        | 4  | have a seat.  And Mr. Kirby, last Wednesday you filled out a     |
|        | 5  | questionnaire.  Between last Wednesday and today's date,         |
|        | 6  | would your answers change as to any of those questions on       |
|        | 7  | the questionnaire?                                              |
| 02:41  | 8  | PROSPECTIVE JUROR:  No.                                          |
| 02:41  | 9  | THE COURT:  Okay.  Now, on -- would you show                    |
|        | 10 | Mr. Kirby the questionnaire for just a moment.  Would you       |
|        | 11 | take this over to him?                                          |
| 02:41  | 12 | THE CLERK:  *(Complies.)*                                        |
| 02:41  | 13 | THE COURT:  On Question No. 33, you answered yes.               |
|        | 14 | It's a question where we asked if you would be impartial.       |
|        | 15 | And then on the following page, I put a little red tab by       |
|        | 16 | it.  The same question was asked again, and it was the basic    |
|        | 17 | same question, and you answered "No."  And counsel wasn't       |
|        | 18 | certain if you just had misread that question and your          |
|        | 19 | answer was "Yes," you'd be fair and impartial; or if you        |
|        | 20 | read and thought about the question again, you know, on the     |
|        | 21 | next page with three more questions and your answer was         |
|        | 22 | "No," you couldn't be fair and impartial.                       |
| 02:42  | 23 | PROSPECTIVE JUROR:  That was a mistake.                          |
| 02:42  | 24 | THE COURT:  That was a mistake.  Okay.  Then would              |
|        | 25 | you be fair and impartial to both sides?                        |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

77

| | | |
|---|---|---|
| 02:42 | 1 | PROSPECTIVE JUROR:  Yes. |
| 02:42 | 2 | THE COURT:  Would you follow the law? |
| 02:42 | 3 | PROSPECTIVE JUROR:  Yes. |
| 02:42 | 4 | THE COURT:  Okay.  Then I'll turn you over to |
| | 5 | counsel. |
| 02:42 | 6 | Counsel on behalf of the government. |
| 02:42 | 7 | *(Document returned to the clerk.)* |
| 02:42 | 8 | THE COURT:  By the way, before we get started and |
| | 9 | don't waste your time.  You've heard our time estimate.  We |
| | 10 | think we can get this done sooner rather than later, but I |
| | 11 | want to be cautious and just say, you know, in good faith I |
| | 12 | don't want you glaring at me if we're into the third week or |
| | 13 | maybe even the last week of July.  We just never know in |
| | 14 | complex litigation how a case goes.  So it's our good faith |
| | 15 | estimate.  So if you have a problem, raise it with counsel |
| | 16 | or with me. |
| 02:42 | 17 | Counsel on behalf of the government. |
| 02:42 | 18 | MS. HEINZ:  Thank you, Your Honor. |
| 02:42 | 19 | **VOIR DIRE BY MS. HEINZ** |
| 02:43 | 20 | MS. HEINZ:  Mr. Leon, good afternoon.  Mr. Leon, |
| | 21 | do you live with anyone? |
| 02:43 | 22 | PROSPECTIVE JUROR:  Yes. |
| 02:43 | 23 | MS. HEINZ:  Okay.  Who do you live with?  Just |
| | 24 | like mother, father -- |
| 02:43 | 25 | PROSPECTIVE JUROR:  Yeah. |

| | | |
|---|---|---|
| 02:43 | 1 | MS. HEINZ:  -- girlfriend. |
| 02:43 | 2 | PROSPECTIVE JUROR:  Yes, parents. |
| 02:43 | 3 | MS. HEINZ:  Just tell me.  Parents? |
| 02:43 | 4 | PROSPECTIVE JUROR:  Yeah. |
| 02:43 | 5 | MS. HEINZ:  Okay.  Okay.  All right. |
| 02:43 | 6 | You get along with your parents? |
| 02:43 | 7 | PROSPECTIVE JUROR:  Yes. |
| 02:43 | 8 | MS. HEINZ:  You have brothers and sisters? |
| 02:43 | 9 | PROSPECTIVE JUROR:  Just a sister. |
| 02:43 | 10 | MS. HEINZ:  Okay.  Are you working? |
| 02:43 | 11 | PROSPECTIVE JUROR:  No. |
| 02:43 | 12 | MS. HEINZ:  So you don't, um, you're fine.  You're |
| | 13 | supported by your parents? |
| 02:43 | 14 | PROSPECTIVE JUROR:  Yes. |
| 02:43 | 15 | MS. HEINZ:  Okay.  Mr. Fraga. |
| 02:43 | 16 | PROSPECTIVE JUROR:  Yes. |
| 02:43 | 17 | MS. HEINZ:  Are there any economic reasons why you |
| | 18 | wouldn't be able to serve as a juror? |
| 02:44 | 19 | PROSPECTIVE JUROR:  None. |
| 02:44 | 20 | MS. HEINZ:  Mr. Cassell. |
| 02:44 | 21 | PROSPECTIVE JUROR:  Yes. |
| 02:44 | 22 | MS. HEINZ:  Do you live with people? |
| 02:44 | 23 | PROSPECTIVE JUROR:  Yes, roommates. |
| 02:44 | 24 | MS. HEINZ:  With roommates. |
| 02:44 | 25 | PROSPECTIVE JUROR:  Okay. |

02:44  1                MS. HEINZ:  And how many roommates do you have?

02:44  2                PROSPECTIVE JUROR:  Two.

02:44  3                MS. HEINZ:  Okay.  And are they people your age or

       4      older?

02:44  5                PROSPECTIVE JUROR:  One is one year older, and

       6      another is two or three years older.

02:44  7                MS. HEINZ:  Okay.  And you're working?

02:44  8                PROSPECTIVE JUROR:  Yes.

02:44  9                MS. HEINZ:  And if you were to sit on this trial,

      10      which is a pretty long trial, would that cause you any

      11      problems at work?

02:44 12                PROSPECTIVE JUROR:  No.

02:44 13                MS. HEINZ:  Okay.  Mr. Hayden.

02:44 14                PROSPECTIVE JUROR:  Yes.

02:44 15                MS. HEINZ:  Any economic issues with serving on

      16      this jury?

02:44 17                PROSPECTIVE JUROR:  None.

02:44 18                MS. HEINZ:  Thank you.  And Mr. Gilliard.

02:44 19                PROSPECTIVE JUROR:  Gilliard.

02:45 20                MS. HEINZ:  Gilliard.  And you're retired.

02:45 21                PROSPECTIVE JUROR:  Yes.

02:45 22                MS. HEINZ:  Any economic issues with serving on

      23      this jury?

02:45 24                PROSPECTIVE JUROR:  No.

02:45 25                MS. HEINZ:  Okay.  And, Mr. Kirby, do you live by

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | yourself or with other people?                           |
| 02:45 | 2  | PROSPECTIVE JUROR:  Other people.                        |
| 02:45 | 3  | MS. HEINZ:  Okay.  And are they mother, father?          |
| 02:45 | 4  | PROSPECTIVE JUROR:  Roommates.                           |
| 02:45 | 5  | MS. HEINZ:  Roommates.  And are they the same age        |
|       | 6  | as you?                                                  |
| 02:45 | 7  | PROSPECTIVE JUROR:  Yep.                                 |
| 02:45 | 8  | MS. HEINZ:  Okay.  And you're employed.  Do you          |
|       | 9  | have any economic issues with working --                 |
| 02:45 | 10 | PROSPECTIVE JUROR:  No.                                   |
| 02:45 | 11 | MS. HEINZ:  -- with serving?  Okay.                       |
| 02:45 | 12 | Nothing further, Your Honor.                             |
| 02:45 | 13 | THE COURT:  Let me turn to Mr. Lengyel-Leahu and         |
|       | 14 | any questions that you might have.                        |
| 02:45 | 15 | **VOIR DIRE BY MR. LENGYEL-LEAHU**                        |
| 02:45 | 16 | MR. LENGYEL-LEAHU:  Mr. Leon, you have heard             |
|       | 17 | everything that was said in court all day today; correct? |
| 02:46 | 18 | PROSPECTIVE JUROR:  Yes.                                 |
| 02:46 | 19 | MR. LENGYEL-LEAHU:  Okay.  And you been *(verbatim)*     |
|       | 20 | participating in the process, albeit in the audience.    |
| 02:46 | 21 | PROSPECTIVE JUROR:  Yes.                                 |
| 02:46 | 22 | MR. LENGYEL-LEAHU:  Of everything that you've            |
|       | 23 | heard today, is there anything that you could add that would |
|       | 24 | help us determine whether you should sit as an alternate and |
|       | 25 | then, potentially, ultimately, a juror in this case?     |

| | | |
|---|---|---|
| 02:46 | 1 | PROSPECTIVE JUROR:  No. |
| 02:46 | 2 | MR. LENGYEL-LEAHU:  Thank you. |
| 02:46 | 3 | Mr. Fraga. |
| 02:46 | 4 | PROSPECTIVE JUROR:  Uh-huh. |
| 02:46 | 5 | MR. LENGYEL-LEAHU:  You indicated some pretty |
| | 6 | strong opinions in your questionnaire.  And those are how |
| | 7 | you feel today? |
| 02:46 | 8 | PROSPECTIVE JUROR:  I still have those opinions, |
| | 9 | but I can be nonbiased.  I can be -- I won't be judgmental. |
| 02:46 | 10 | MR. LENGYEL-LEAHU:  And I've asked of the other |
| | 11 | members specifically, can you separate out the fact that |
| | 12 | events you may have heard or events you may see have no |
| | 13 | relation to my client?  He shouldn't be judged from what |
| | 14 | other people do.  Would that be a fair assessment for you? |
| 02:47 | 15 | PROSPECTIVE JUROR:  I could put those aside.  I |
| | 16 | would base everything on the facts and the law that the |
| | 17 | judge gives us. |
| 02:47 | 18 | MR. LENGYEL-LEAHU:  Okay.  You can turn off the |
| | 19 | noise and you get away from the news for a little while -- |
| 02:47 | 20 | PROSPECTIVE JUROR:  Correct. |
| 02:47 | 21 | MR. LENGYEL-LEAHU:  -- and just focus on the |
| | 22 | evidence in this case so we can have your undivided |
| | 23 | attention. |
| 02:47 | 24 | PROSPECTIVE JUROR:  Yes. |
| 02:47 | 25 | MR. LENGYEL-LEAHU:  Appreciate that. |

02:47  1                Thank you, sir.

02:47  2                You're one of our younger members.

02:47  3           PROSPECTIVE JUROR:  Yes.

02:47  4           MR. LENGYEL-LEAHU:  Welcome.

02:47  5           PROSPECTIVE JUROR:  Thank you.

02:47  6           MR. LENGYEL-LEAHU:  You're our blank slate.  You

       7  watch both CNN and BBC; correct?

02:47  8           PROSPECTIVE JUROR:  I more read it, not often --

02:47  9           MR. LENGYEL-LEAHU:  You read?

02:47  10          PROSPECTIVE JUROR:  -- but sometimes.  Yes.

02:47  11          MR. LENGYEL-LEAHU:  Very good.  You understand

       12  that news media as a source of information is necessarily

       13  biased; correct?

02:47  14          PROSPECTIVE JUROR:  Definitely.

02:47  15          MR. LENGYEL-LEAHU:  And the evidence in the case

       16  that you're going to receive, you're gonna be the one to

       17  evaluate what's true.

02:47  18          PROSPECTIVE JUROR:  Correct.

02:47  19          MR. LENGYEL-LEAHU:  And you can do that,

       20  separating out any other influences in your life and focus

       21  strictly on what you hear here in court and what you see.

02:48  22          PROSPECTIVE JUROR:  Yes.

02:48  23          MR. LENGYEL-LEAHU:  And you're not going to

       24  ascribe to our clients anything that other people are doing.

02:48  25          PROSPECTIVE JUROR:  Pardon?

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 83 of 123  Page ID #:4162
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

83

| | | |
|---|---|---|
| 02:48 | 1 | MR. LENGYEL-LEAHU:  You're not going to ascribe or |
| | 2 | look at our clients, uh, with respect to things that you |
| | 3 | hear or see that other people are doing. |
| 02:48 | 4 | PROSPECTIVE JUROR:  Oh, uh, no, definitely not. |
| 02:48 | 5 | MR. LENGYEL-LEAHU:  Your judgment in this case |
| | 6 | would be based solely on the evidence here in this |
| | 7 | courtroom. |
| 02:48 | 8 | PROSPECTIVE JUROR:  Correct. |
| 02:48 | 9 | MR. LENGYEL-LEAHU:  Thank you. |
| 02:48 | 10 | Mr. Hayden. |
| 02:48 | 11 | PROSPECTIVE JUROR:  Yes. |
| 02:48 | 12 | MR. LENGYEL-LEAHU:  Um, you also have some |
| | 13 | important individuals in your life that have spent some time |
| | 14 | in the military. |
| 02:48 | 15 | PROSPECTIVE JUROR:  In fact. |
| 02:48 | 16 | MR. LENGYEL-LEAHU:  Your relationship with them, |
| | 17 | would that have any influence on your ability to deliberate |
| | 18 | on the issues that are gonna be involved based on what you |
| | 19 | heard of the complaint? |
| 02:49 | 20 | PROSPECTIVE JUROR:  Not at all. |
| 02:49 | 21 | MR. LENGYEL-LEAHU:  Do you think you can be |
| | 22 | independent and objective to the evidence in this case |
| | 23 | regardless of the fact of their military service and what |
| | 24 | they were doing? |
| 02:49 | 25 | PROSPECTIVE JUROR:  That's a fact. |

02:49   1           MR. LENGYEL-LEAHU:  Appreciate it.

02:49   2           Mr. Gilliard.

02:49   3           PROSPECTIVE JUROR:  Yes.

02:49   4           MR. LENGYEL-LEAHU:  Similar question.  What you

5  hear or what you've heard up to now has not been evidence in

6  this case; correct?

02:49   7           PROSPECTIVE JUROR:  Right.

02:49   8           MR. LENGYEL-LEAHU:  And do you feel comfortable

9  that you can put all of that information aside and judge

10  this case, if you were to sit in the jury, listen to the

11  evidence as an alternate, and maintain a verdict that's only

12  based on the case that's brought to you by the prosecution?

02:49   13          PROSPECTIVE JUROR:  Yes, I do.

02:49   14          MR. LENGYEL-LEAHU:  And you would have no problem

15  if the defense chose not to put on any evidence, and if you

16  weren't convinced that the prosecutor has proved their case

17  beyond a reasonable doubt -- you still wouldn't side with

18  them; correct?

02:50   19          PROSPECTIVE JUROR:  Not at all.

02:50   20          MR. LENGYEL-LEAHU:  It's not going to be a

21  question of how much evidence on one side and how little

22  evidence you see on the other side; it's going to be solely

23  based on their ability to get to the standard of beyond a

24  reasonable doubt.

02:50   25          PROSPECTIVE JUROR:  Yes.

| | | |
|---|---|---|
| 02:50 | 1 | MR. LENGYEL-LEAHU:  Thank you. |
| 02:50 | 2 | Mr. Kirby, welcome. |
| 02:50 | 3 | PROSPECTIVE JUROR:  Hello. |
| 02:50 | 4 | MR. LENGYEL-LEAHU:  Were you here this morning? |
| 02:50 | 5 | PROSPECTIVE JUROR:  I was not. |
| 02:50 | 6 | MR. LENGYEL-LEAHU:  You were not here? |
| 02:50 | 7 | PROSPECTIVE JUROR:  I showed up late. |
| 02:50 | 8 | MR. LENGYEL-LEAHU:  Okay. |
| 02:50 | 9 | THE COURT:  That may be why he was downstairs, |
| | 10 | Counsel.  I wasn't aware of that.  I'm happy to read the |
| | 11 | indictment again.  I'm happy to ask him about that |
| | 12 | indictment.  I was curious why he was downstairs, but we |
| | 13 | placed calls to every single juror who wasn't here this |
| | 14 | morning, so this is one of the gentlemen. |
| 02:51 | 15 | MR. LENGYEL-LEAHU:  Okay. |
| 02:51 | 16 | THE COURT:  Let me ask him if he recalls that |
| | 17 | indictment that I read. |
| 02:51 | 18 | MR. LENGYEL-LEAHU:  Yes. |
| 02:51 | 19 | THE COURT:  Last week, Mr. Kirby, we read an |
| | 20 | indictment.  It's a charging document.  It's a piece of |
| | 21 | paper.  It has no evidentiary value.  We could burn it. |
| | 22 | It's to put us on notice, though, why we're here, and so |
| | 23 | therefore, I don't want you to attach any significance |
| | 24 | concerning any evidentiary value that that document has. |
| 02:51 | 25 | But it tells us it's a criminal case, what the |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | charges are, and it helps you fill out the questionnaire.    |
|       | 2  | Do you recall that reading?                                  |
| 02:51 | 3  | PROSPECTIVE JUROR:  I do.                                     |
| 02:51 | 4  | THE COURT:  Okay.  Counsel.                                   |
| 02:51 | 5  | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                   |
| 02:51 | 6  | I guess the next question is, um, do you have job            |
|       | 7  | requirements that are gonna make it difficult for you to    |
|       | 8  | attend a six-week trial?                                      |
| 02:51 | 9  | PROSPECTIVE JUROR:  I do not.                                 |
| 02:51 | 10 | MR. LENGYEL-LEAHU:  Okay.  Today's a one-off sort           |
|       | 11 | of thing and -- is that fair?                                |
| 02:51 | 12 | PROSPECTIVE JUROR:  Yeah.                                     |
| 02:52 | 13 | MR. LENGYEL-LEAHU:  Okay.  The burden of proof,             |
|       | 14 | you understand, is on the government in this case; correct?  |
| 02:52 | 15 | Have you ever sat on a jury before?                          |
| 02:52 | 16 | PROSPECTIVE JUROR:  I have not.                               |
| 02:52 | 17 | MR. LENGYEL-LEAHU:  Okay.  Do you watch legal               |
|       | 18 | shows or have any legal training at all?                     |
| 02:52 | 19 | PROSPECTIVE JUROR:  Nope.                                     |
| 02:52 | 20 | MR. LENGYEL-LEAHU:  Watch the news?                          |
| 02:52 | 21 | PROSPECTIVE JUROR:  Not often.                               |
| 02:52 | 22 | MR. LENGYEL-LEAHU:  Okay.  So you understand that           |
|       | 23 | the burden of proof is on the government in a case like      |
|       | 24 | this; correct?                                               |
| 02:52 | 25 | PROSPECTIVE JUROR:  Correct.                                  |

02:52      1            MR. LENGYEL-LEAHU:  And that they have to prove

           2    every element of the charges that are brought beyond a

           3    reasonable doubt.  Do you understand that?

02:52      4            PROSPECTIVE JUROR:  Yes.

02:52      5            MR. LENGYEL-LEAHU:  Okay.  Now, do you also

           6    understand that the defense doesn't have to put on any

           7    evidence?  Are you familiar with that?

02:52      8            PROSPECTIVE JUROR:  Yes.

02:52      9            MR. LENGYEL-LEAHU:  And if they don't put on any

          10    evidence, you don't hold that against the defense.  What you

          11    have to do is analyze the prosecution's case to determine

          12    whether or not they've made it to the point where you're

          13    convinced beyond a reasonable doubt of their allegations.

          14    Do you understand that?

02:52     15            PROSPECTIVE JUROR:  Yes.

02:52     16            MR. LENGYEL-LEAHU:  Do you agree to do that in

          17    this case?

02:53     18            PROSPECTIVE JUROR:  Yes.

02:53     19            MR. LENGYEL-LEAHU:  Okay.  Do you agree that you

          20    wouldn't just vote simply because everyone else is voting a

          21    particular way and join the crowd?

02:53     22            PROSPECTIVE JUROR:  No.

02:53     23            MR. LENGYEL-LEAHU:  This is the one time that your

          24    vote counts more importantly than any other time in your

          25    life.  You're not one of millions; you're one of twelve.

02:53    1                PROSPECTIVE JUROR:  Yes.

02:53    2                MR. LENGYEL-LEAHU:  You take that responsibility

         3     seriously?

02:53    4                PROSPECTIVE JUROR:  Yes.

02:53    5                MR. LENGYEL-LEAHU:  And you will deliberate and

         6     talk with the jurors about the evidence?

02:53    7                PROSPECTIVE JUROR:  Yes.

02:53    8                MR. LENGYEL-LEAHU:  And if you feel someone is

         9     looking at the evidence incorrectly, you will tell them,

        10     wouldn't you?

02:53   11                PROSPECTIVE JUROR:  Yes.

02:53   12                MR. LENGYEL-LEAHU:  And you'd be able to bring

        13     your independent judgment into a case like this; is that

        14     right?

02:53   15                PROSPECTIVE JUROR:  Yes.

02:53   16                MR. LENGYEL-LEAHU:  What we'd ask other members,

        17     and I'd ask you, we don't know you very well, and you don't

        18     know us very well.  Everybody else has been here all day,

        19     but I get it -- um, if you were sitting next to me and you

        20     heard that indictment, and then you saw yourself up on the

        21     jury panel, would you want someone like you making a

        22     decision in a case like this?

02:54   23                PROSPECTIVE JUROR:  Yes.

02:54   24                MR. LENGYEL-LEAHU:  That's good enough for me,

        25     Your Honor.

| | | |
|---|---|---|
| 02:54 | 1 | THE COURT:  Ms. Corrigan. |
| 02:54 | 2 | MS. CORRIGAN:  Thank you, Your Honor. |
| 02:54 | 3 | **VOIR DIRE BY MS. CORRIGAN** |
| 02:54 | 4 | MS. CORRIGAN:  Just briefly, Mr. Leon. |
| 02:54 | 5 | PROSPECTIVE JUROR:  Yes. |
| 02:54 | 6 | MS. CORRIGAN:  You indicated that you're not |
| | 7 | working currently; correct? |
| 02:54 | 8 | PROSPECTIVE JUROR:  Correct. |
| 02:54 | 9 | MS. CORRIGAN:  So I'm just looking at the |
| | 10 | information you provided to us 'cause I'm a little confused. |
| | 11 | Did you just list your major -- is that what you gave us, |
| | 12 | rather than what your occupation is? |
| 02:54 | 13 | PROSPECTIVE JUROR:  Yeah. |
| 02:54 | 14 | MS. CORRIGAN:  Okay.  Just get outta college? |
| 02:54 | 15 | PROSPECTIVE JUROR:  Yeah. |
| 02:54 | 16 | MS. CORRIGAN:  Okay.  All right.  So at this |
| | 17 | point, you don't have any overhead or any bills to pay, |
| | 18 | anything that's gonna stress you out if you're sitting here |
| | 19 | for six weeks? |
| 02:54 | 20 | PROSPECTIVE JUROR:  No. |
| 02:54 | 21 | MS. CORRIGAN:  Mom and Dad pay your bills? |
| 02:54 | 22 | PROSPECTIVE JUROR:  Yeah. |
| 02:55 | 23 | MS. CORRIGAN:  All right.  Any vacations, moving, |
| | 24 | anything that we should know about? |
| 02:55 | 25 | PROSPECTIVE JUROR:  No. |

| 02:55 | 1 | MS. CORRIGAN:  All right.  Would you be kind |
|---|---|---|
| | 2 | enough to pass the mic. |
| 02:55 | 3 | Thank you.  Mr. Fraga.  Same sort, line of |
| | 4 | questions.  I know you've seen us kind of wrapping things |
| | 5 | up, but I wanna just make sure we're not missing anything. |
| | 6 | Anything we've missed out here? |
| 02:55 | 7 | PROSPECTIVE JUROR:  Okay.  I'm sorry.  What was |
| | 8 | your question? |
| 02:55 | 9 | MS. CORRIGAN:  Have we missed anything on you? |
| 02:55 | 10 | PROSPECTIVE JUROR:  No. |
| 02:55 | 11 | MS. CORRIGAN:  Anything that we should know that |
| | 12 | you're dying to tell us? |
| 02:55 | 13 | PROSPECTIVE JUROR:  No, that's fine.  I'm fine. |
| 02:55 | 14 | MS. CORRIGAN:  All right.  No impact, financial |
| | 15 | impact or work impact on you? |
| 02:55 | 16 | PROSPECTIVE JUROR:  No. |
| 02:55 | 17 | MS. CORRIGAN:  Okay.  Mr. Cassell. |
| 02:55 | 18 | PROSPECTIVE JUROR:  Yes. |
| 02:55 | 19 | MS. CORRIGAN:  Same with you.  I see that you've |
| | 20 | been working for about ten months at a certain position. |
| | 21 | And you have talked to your employer about the fact -- |
| 02:55 | 22 | PROSPECTIVE JUROR:  Yes. |
| 02:55 | 23 | MS. CORRIGAN:  -- you're gonna be here for six |
| | 24 | weeks? |
| 02:55 | 25 | PROSPECTIVE JUROR:  Yes. |

02:55   1         MS. CORRIGAN:  And they are going to continue to

        2    pay you?

02:55   3         PROSPECTIVE JUROR:  I'm not sure about the pay,

        4    but I know the time won't be a problem and the financial

        5    burden won't be a problem either.

02:55   6         MS. CORRIGAN:  It won't.  You'll still be able to

        7    pay your fair share of the rent?

02:56   8         PROSPECTIVE JUROR:  Yes.

02:56   9         MS. CORRIGAN:  Okay.  Even if you're not getting

        10   paid.

02:56   11        PROSPECTIVE JUROR:  Yes.

02:56   12        MS. CORRIGAN:  Mr. Hayden.

02:56   13        PROSPECTIVE JUROR:  Yes.

02:56   14        MS. CORRIGAN:  Same questions to you.  Anything

        15   we've missed?  Anything that you would want to tell us?

02:56   16        PROSPECTIVE JUROR:  None.

02:56   17        MS. CORRIGAN:  All right.  Would you feel

        18   comfortable, if you were a defendant in this case, having

        19   you as a juror?

02:56   20        PROSPECTIVE JUROR:  I think so.

02:56   21        MS. CORRIGAN:  Any hesitation?

02:56   22        PROSPECTIVE JUROR:  Nope.

02:56   23        MS. CORRIGAN:  All right.  Would you be kind

        24   enough to pass the mic to Mr. Gilliard.

02:56   25        I'll give the wrap-up questions to you too.

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | Anything that we should know?  Any hardships that we're    |
|       | 2  | missing out on?  Any plans to move?  I know you're -- I see |
|       | 3  | you're retired.                                            |
| 02:56 | 4  | PROSPECTIVE JUROR:  No.                                    |
| 02:56 | 5  | MS. CORRIGAN:  No issues, no financial hardships.          |
|       | 6  | You're able to sit.  No health problems.  Anything that we |
|       | 7  | should be aware of?                                        |
| 02:56 | 8  | PROSPECTIVE JUROR:  No, no problem.                        |
| 02:56 | 9  | MS. CORRIGAN:  Okay.  And then, Mr. Kirby, I know          |
|       | 10 | the judge asked you about those questions, but I want to   |
|       | 11 | make sure that, in fact, because it appeared, at least     |
|       | 12 | initially, that you might have been indicating you couldn't |
|       | 13 | be fair sitting as a juror in this case, knowing what at   |
|       | 14 | least you had gleaned from the questionnaires, um, are --  |
|       | 15 | and I know the other defendant's counsel has asked you     |
|       | 16 | questions, the government's asked you questions.           |
| 02:57 | 17 | Are you certain that, um, you are able to be fair,         |
|       | 18 | or are you uncomfortable expressing that in front of       |
|       | 19 | everybody, and would you prefer to have a conversation     |
|       | 20 | outside the presence of the rest of the folks here?       |
| 02:57 | 21 | PROSPECTIVE JUROR:  I can be fair.                         |
| 02:57 | 22 | MS. CORRIGAN:  You can.  Okay.                             |
| 02:57 | 23 | And any financial hardships we should be aware of?         |
|       | 24 | I notice you work at -- you've been at a job for about three |
|       | 25 | years.  Are they going to continue to pay you?            |

**DEBBIE GALE, U.S. COURT REPORTER**

02:57   1          PROSPECTIVE JUROR:  Yes.

02:57   2          MS. CORRIGAN:  And they're aware that it's gonna

        3   be up to about six weeks?

02:57   4          PROSPECTIVE JUROR:  Yes.

02:57   5          MS. CORRIGAN:  Any trips planned?  Any moves?

        6   Nothing?

02:57   7          PROSPECTIVE JUROR:  Nope.

02:57   8          MS. CORRIGAN:  All right.  Thank you.

02:57   9          THE COURT:  The first peremptory passes to the

        10   government.

02:58   11          MS. HEINZ:  Your Honor, the government would thank

        12   and excuse Mr. Leon.

02:58   13          THE COURT:  Mr. Leon, thank you very much, sir.

        14   If you'd go back to the jury room with our thanks and

        15   appreciation, and they'll excuse you.

02:58   16          Call another juror, please.

02:58   17          THE CLERK:  Joe Ortiz.

02:58   18          THE COURT:  Mr. Ortiz, if you will come up and

        19   take the first seat, sir.

02:58   20          And, Mr. Ortiz, have you heard all the prior

        21   questions that were asked today?

02:58   22          PROSPECTIVE JUROR:  Yes, Your Honor.

02:58   23          THE COURT:  And you had a questionnaire that you

        24   filled out last week.  Are there any changes to the answers

        25   that you gave last week and today's date?

02:58    1              PROSPECTIVE JUROR:  No, sir.

02:58    2              THE COURT:  Okay.  On page 12, there's an issue

         3    concerning insulin.  We will make you comfortable.  Okay?

         4    Anything that you need to do in that regard is fine.

02:59    5              PROSPECTIVE JUROR:  Yeah.  If I just -- I know not

         6    to be disrespectful to the Court, you can't eat or drink

         7    anything.

02:59    8              THE COURT:  Yes, you can.  You'd be amazed what we

         9    can do here.

02:59   10              PROSPECTIVE JUROR:  Okay.

02:59   11              THE COURT:  If you need food, we're gonna have

        12    food.  Okay?  Don't tell the rest of the federal courts,

        13    they'll have a heart attack.  If you need something to

        14    sustain yourself along the way, let me know.  Bread or, you

        15    know, whatever.

02:59   16              PROSPECTIVE JUROR:  Thank you.

02:59   17              THE COURT:  It's the quality of the deliberations.

        18    I'm pretty informal, but don't tell anybody else that.

        19    Okay?

02:59   20              PROSPECTIVE JUROR:  All right.

02:59   21              THE COURT:  If you need something, let us know.

        22    In fact, if you need to stretch and stand up.  If you're

        23    getting tired at some point, just walk over into the corner,

        24    any of you.  It can get to be long days.  Okay?  You'll see

        25    that we'll settle into a pretty good routine.

| | | |
|---|---|---|
| 03:00 | 1 | Would you be fair and impartial to both sides? |
| 03:00 | 2 | PROSPECTIVE JUROR:  Yes, sir. |
| 03:00 | 3 | THE COURT:  Would you follow the law? |
| 03:00 | 4 | PROSPECTIVE JUROR:  Yes, sir. |
| 03:00 | 5 | THE COURT:  I'll turn you over to counsel. |
| 03:00 | 6 | Counsel. |
| 03:00 | 7 | MS. HEINZ:  No further questions. |
| 03:00 | 8 | THE COURT:  Mr. Lengyel-Leahu. |
| 03:00 | 9 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 03:00 | 10 | **VOIR DIRE BY MR. LENGYEL-LEAHU** |
| 03:00 | 11 | MR. LENGYEL-LEAHU:  On your sheet, you indicated a |
| | 12 | number of medications that you take, uh, not listing 'em |
| | 13 | specifically, but do they affect your ability to |
| | 14 | concentrate, or does it cause you fatigue, or might they |
| | 15 | interfere with your ability to focus during the length of |
| | 16 | the trial? |
| 03:00 | 17 | PROSPECTIVE JUROR:  No, sir.  I'm diabetic, and as |
| | 18 | long as -- you know, if my sugar were to drop, if I had |
| | 19 | something sweet -- that's why I was asking the judge -- then |
| | 20 | I'd be fine. |
| 03:00 | 21 | THE COURT:  Bring it with you as long as you share |
| | 22 | it. |
| 03:00 | 23 | *(Laughter in the courtroom.)* |
| 03:00 | 24 | PROSPECTIVE JUROR:  That's the only -- only issue. |
| 03:00 | 25 | MR. LENGYEL-LEAHU:  And the question we haven't |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | asked anybody yet -- and I can't believe we forgot:  Is it           |
|       | 2  | possible that you or anybody has any scheduled medical               |
|       | 3  | appointments?                                                        |
| 03:01 | 4  | We had a juror last week that had surgery, or                        |
|       | 5  | actually scheduled for surgery this week and, of course,             |
|       | 6  | rescheduling would be impossible.                                    |
| 03:01 | 7  | So is there anyone with any time constraints, that                   |
|       | 8  | they got a surgery or some other very important doctor's             |
|       | 9  | appointment that can't be postponed during the course of our         |
|       | 10 | trial?                                                                |
| 03:01 | 11 | THE COURT:  Mr. Gilliard does.                                        |
| 03:01 | 12 | PROSPECTIVE JUROR:  I have an eye appointment.                        |
| 03:01 | 13 | THE COURT:  What day is that?                                         |
| 03:01 | 14 | PROSPECTIVE JUROR:  On the 16th of July.  I think                    |
|       | 15 | it's on the 16th or the 12th of July.                                |
| 03:01 | 16 | THE COURT:  Do you know what time?                                    |
| 03:01 | 17 | PROSPECTIVE JUROR:  8:00 o'clock in the morning.                     |
| 03:01 | 18 | THE COURT:  Perfect.  We can do that here, by the                    |
|       | 19 | way, also.                                                            |
| 03:01 | 20 | *(Laughter.)*                                                        |
| 03:01 | 21 | MR. LENGYEL-LEAHU:  How many fingers?                                 |
| 03:01 | 22 | THE COURT:  That's not a disqualifier.  We can                       |
|       | 23 | gently work around that, and sometimes the doctors will even         |
|       | 24 | come in earlier.  You'll be surprised.  Sometimes they'll            |
|       | 25 | take you last in the day.  Let's see where we are.  We may           |

|       |    |                                                                            |
|-------|----|----------------------------------------------------------------------------|
|       | 1  | even be done with the case by that time.                                   |
| 03:02 | 2  | PROSPECTIVE JUROR:  Well, it took me two months to                         |
|       | 3  | get the appointment.                                                        |
| 03:02 | 4  | THE COURT:  Well, you know, those doctors come to                          |
|       | 5  | court also.  It's amazing.  They do drop-bys.  I'm just                     |
|       | 6  | kidding you.                                                                |
| 03:02 | 7  | We'll make that work.  I don't want those kinds of                         |
|       | 8  | things to be a disqualifier.  July 16th is a long ways off.                |
|       | 9  | Okay?                                                                       |
| 03:02 | 10 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                                  |
| 03:02 | 11 | THE COURT:  Okay.  Ms. Corrigan.                                            |
| 03:02 | 12 | MS. CORRIGAN:  Thank you.                                                   |
| 03:02 | 13 | **VOIR DIRE BY MS. CORRIGAN**                                               |
| 03:02 | 14 | MS. CORRIGAN:  If we could -- Mr. Ortiz, do you                             |
|       | 15 | have the mic?                                                               |
| 03:02 | 16 | PROSPECTIVE JUROR:  Yes, ma'am.                                             |
| 03:02 | 17 | MS. CORRIGAN:  Great.  Thank you.  I notice that                            |
|       | 18 | you disclosed to us an unfortunate event that occurred with                |
|       | 19 | your son.  I think unfortunate is the nicest way I can put                  |
|       | 20 | it.                                                                         |
| 03:02 | 21 | PROSPECTIVE JUROR:  Yes.                                                    |
| 03:02 | 22 | MS. CORRIGAN:  Without getting into the details of                         |
|       | 23 | it, about how long ago did that happen?                                     |
| 03:02 | 24 | PROSPECTIVE JUROR:  That was about 30 years ago.                           |
| 03:02 | 25 | MS. CORRIGAN:  Okay.  And -- all right.  So I just                          |

```
  1    wanted to make sure it wasn't recent or anything you were

  2    having to deal with.  Any lingering negative thoughts that

  3    haunt you over that event?

  4         PROSPECTIVE JUROR:  No, no.

  5         MS. CORRIGAN:  I have nothing further, Your Honor.

  6         THE COURT:  All right.  The peremptory would pass

  7    to the defense.

  8         MS. CORRIGAN:  May we have a moment?

  9       (Defense counsel confer.)

 10         MS. CORRIGAN:  Defense would like to thank and

 11    excuse Mr. Hayden.

 12         THE COURT:  Mr. Hayden, thank you very much, sir.

 13    If you go back to the jury room, they're going to thank and

 14    excuse you and send you right home.  Thank you.

 15         Call another juror, please.

 16         THE CLERK:  Robert Hyder.

 17         THE COURT:  Mr. Hyder, the same questions.  You

 18    filled out a questionnaire last week.  Are there any answers

 19    that you'd like to change in the interim period of time?

 20         PROSPECTIVE JUROR:  No, sir.

 21         THE COURT:  Would you be fair and impartial to

 22    both sides, then?

 23         PROSPECTIVE JUROR:  Yes, sir.

 24         THE COURT:  Would you follow the law?

 25         PROSPECTIVE JUROR:  Yes, sir.
```

03:03   4
03:03   5
03:03   6
03:03   8
03:03   9
03:03   10
03:03   12
03:03   15
03:03   16
03:04   17
03:04   20
03:04   21
03:04   23
03:04   24
03:04   25

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 99 of 123  Page ID #:4178
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

99

03:04   1            THE COURT:  Any economic issues in terms of your
        2    ability to sit with us?
03:04   3            PROSPECTIVE JUROR:  Probably.
03:04   4            THE COURT:  Tell me about that now so we save some
        5    time.
03:04   6            PROSPECTIVE JUROR:  Yeah.  It would definitely be
        7    a financial hardship being here, being that my job does not
        8    cover a six-week length.
03:04   9            THE COURT:  So you found that out in the interim?
03:04   10           PROSPECTIVE JUROR:  I found that out actually
        11   yesterday.
03:04   12           THE COURT:  Counsel.
03:04   13           MS. CORRIGAN:  So stipulate.
03:04   14           MR. LENGYEL-LEAHU:  Stip, Your Honor.
03:04   15           MS. HEINZ:  So stip.
03:04   16           THE COURT:  Thanks for checking.
03:04   17       That's the thing we need to know between the time
        18   you dutifully respond to our summons and then today's date.
03:04   19           You're excused, sir, by stipulation of counsel.
03:05   20       If you will call another juror, please.
03:05   21           THE CLERK:  Carmen FloresArroyo.
03:05   22           THE COURT:  Do you use Flores or Arroyo?  Father
        23   or mother's name?
03:05   24           PROSPECTIVE JUROR:  Flores is my maiden name, and
        25   Arroyo is my married name.

03:05   1            THE COURT:  FloresArroyo.  Between the time of

        2    your filling out the questionnaire last week and today's

        3    date, are there any answers that you gave that you'd like to

        4    change?

03:05   5            PROSPECTIVE JUROR:  No, sir.

03:05   6            THE COURT:  Then, the simple question, would you

        7    be fair and impartial to both sides?

03:05   8            PROSPECTIVE JUROR:  Yes.

03:05   9            THE COURT:  Would you follow the law?

03:05  10            PROSPECTIVE JUROR:  Yes.

03:05  11            THE COURT:  I'll turn you back over to counsel.

03:05  12            Counsel.

03:05  13                 **VOIR DIRE BY MS. HEINZ**

03:05  14            MS. HEINZ:  Any issues with you serving on this

       15    jury for the length of time that's anticipated that this

       16    will take?

03:06  17            PROSPECTIVE JUROR:  No.

03:06  18            MS. HEINZ:  Thank you.

03:06  19            THE COURT:  Counsel, Mr. Lengyel-Leahu.

03:06  20              **VOIR DIRE BY MR. LENGYEL-LEAHU**

03:06  21            MR. LENGYEL-LEAHU:  Mrs. Flores Arroyo, hi.

03:06  22            PROSPECTIVE JUROR:  Hi.

03:06  23            MR. LENGYEL-LEAHU:  You have a grade school

       24    promotion coming up?

03:06  25            PROSPECTIVE JUROR:  Yes.

| | | |
|---|---|---|
| 03:06 | 1 | MR. LENGYEL-LEAHU:  A clap-out?  We call it |
| | 2 | "clap-out." |
| 03:06 | 3 | PROSPECTIVE JUROR:  Oh. |
| 03:06 | 4 | MR. LENGYEL-LEAHU:  Me too.  That's gonna be on |
| | 5 | June 16th? |
| 03:06 | 6 | PROSPECTIVE JUROR:  Correct. |
| 03:06 | 7 | MR. LENGYEL-LEAHU:  Is that the only conflict that |
| | 8 | you have? |
| 03:06 | 9 | PROSPECTIVE JUROR:  Yes. |
| 03:06 | 10 | MR. LENGYEL-LEAHU:  Okay.  Well, you've heard all |
| | 11 | the questions today.  Is there anything that we've talked |
| | 12 | about today that would give cause for you to try to tell us |
| | 13 | there might be something that would be difficult for you to |
| | 14 | be fair and objective in a case like this? |
| 03:07 | 15 | PROSPECTIVE JUROR:  Um, no.  The only current |
| | 16 | thing that has occurred since last Tuesday is my company is |
| | 17 | going through a reorganization, and I'm one of the managers. |
| | 18 | Not that it would affect this, um, but from what I |
| | 19 | understand, there's some major events going on that I have |
| | 20 | to communicate tomorrow morning. |
| 03:07 | 21 | However, I do believe if I'm not available to be |
| | 22 | there, they could probably get somebody to step in in one of |
| | 23 | the other offices. |
| 03:07 | 24 | MR. LENGYEL-LEAHU:  Thank you. |
| 03:07 | 25 | THE COURT:  Counsel, we'll be in session on |

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | June 16th also, so make sure.                              |
| 03:07 | 2  | MR. LENGYEL-LEAHU:  Do you have someone that can           |
|       | 3  | film the clap-out or the graduation ceremony for you?      |
| 03:07 | 4  | THE COURT:  And what time is it?                           |
| 03:07 | 5  | PROSPECTIVE JUROR:  It is at 8:45 in the morning.          |
| 03:07 | 6  | THE COURT:  And how long does it last?                     |
| 03:07 | 7  | PROSPECTIVE JUROR:  It will go until 10:00.                |
| 03:08 | 8  | THE COURT:  So we'll be in session, Counsel.              |
|       | 9  | Witnesses lined up on both sides.                          |
| 03:08 | 10 | MR. LENGYEL-LEAHU:  You have friends in the police         |
|       | 11 | department.                                                |
| 03:08 | 12 | PROSPECTIVE JUROR:  Yes.                                   |
| 03:08 | 13 | MR. LENGYEL-LEAHU:  Again, I asked these questions         |
|       | 14 | of the other folks.  Would your relationship with them have|
|       | 15 | any influence on your ability to fairly and objectively    |
|       | 16 | weigh testimony of other police?                           |
| 03:08 | 17 | PROSPECTIVE JUROR:  No.                                    |
| 03:08 | 18 | MR. LENGYEL-LEAHU:  Thank you.                             |
| 03:08 | 19 | **VOIR DIRE BY MS. CORRIGAN**                              |
| 03:08 | 20 | MS. CORRIGAN:  Let's just go back really quick to          |
|       | 21 | the graduation.  Assuming you want to attend it, right? -- |
|       | 22 | and not just have it filmed?  It's from -- I'm sorry -- what|
|       | 23 | time to what time?                                         |
| 03:08 | 24 | PROSPECTIVE JUROR:  8:45 to 10:00.                        |
| 03:08 | 25 | MS. CORRIGAN:  And do you have family events               |

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | planned during the afternoon that you would also like to   |
|       | 2  | attend?                                                    |
| 03:08 | 3  | PROSPECTIVE JUROR:  There is an event following            |
|       | 4  | that ceremony.  It's not mandatory that I attend.  I'd like |
|       | 5  | to attend, but it's not.                                   |
| 03:08 | 6  | MS. CORRIGAN:  Would it be important for -- for            |
|       | 7  | you to attend?  Would you prefer?                          |
| 03:08 | 8  | PROSPECTIVE JUROR:  It is important.  I mean, all          |
|       | 9  | my children's events are important to me, so yes.          |
| 03:09 | 10 | MS. CORRIGAN:  It -- it would be -- you'd be               |
|       | 11 | missed if you didn't show up for your youngest child's     |
|       | 12 | promotion events; correct?                                 |
| 03:09 | 13 | PROSPECTIVE JUROR:  I would be missed, yes.                |
| 03:09 | 14 | MS. CORRIGAN:  Okay.                                       |
| 03:09 | 15 | May I confer?                                              |
| 03:09 | 16 | THE COURT:  It's a discussion between all of you,          |
|       | 17 | Counsel.                                                   |
| 03:09 | 18 | *(Counsel confer.)*                                        |
| 03:09 | 19 | MS. CORRIGAN:  Your Honor, there's a mutual                |
|       | 20 | agreement to stipulate to allow Ms. FloresArroyo to not    |
|       | 21 | participate in this jury trial.                            |
| 03:09 | 22 | THE COURT:  Is it stipulated to by the government?         |
| 03:09 | 23 | MS. HEINZ:  Yes, Your Honor.                               |
| 03:09 | 24 | THE COURT:  By the defense?                                |
| 03:09 | 25 | MR. LENGYEL-LEAHU:  Yes, Your Honor.                       |

03:09    1                    MS. CORRIGAN:  Yes.

03:09    2                    THE COURT:  All right.  You're excused.  Thank you

         3    much.

03:09    4                    Next, please.

03:09    5                    THE CLERK:  Richard Ramirez.

03:10    6                    THE COURT:  And, Mr. Ramirez, it's the same

         7    question.  Last week you filled out a questionnaire.  Are

         8    there any answers that you gave last week that you'd change

         9    on today's date?

03:10   10                    PROSPECTIVE JUROR:  No.

03:10   11                    THE COURT:  Then would you still be fair and

        12    impartial to both sides?

03:10   13                    PROSPECTIVE JUROR:  Yes.

03:10   14                    THE COURT:  And would you follow the law?

03:10   15                    PROSPECTIVE JUROR:  Yes.

03:10   16                    THE COURT:  We know an awful lot about each of you

        17    from that questionnaire, so thank you.

03:10   18                    Counsel.

03:10   19                    **VOIR DIRE BY MS. HEINZ**

03:10   20                    MS. HEINZ:  Mr. Ramirez, similarly, is there

        21    anything, anything at all, that you have coming up or an

        22    employment issue that would make it a problem for you to

        23    serve on this jury if you were to do so?

03:10   24                    PROSPECTIVE JUROR:  No.

03:10   25                    MS. HEINZ:  Thank you.

| | | |
|---|---|---|
| 03:10 | 1 | THE COURT:  Counsel. |
| 03:10 | 2 | **VOIR DIRE BY MR. LENGYEL-LEAHU** |
| 03:10 | 3 | MR. LENGYEL-LEAHU:  Good afternoon. |
| 03:10 | 4 | PROSPECTIVE JUROR:  Good afternoon. |
| 03:10 | 5 | MR. LENGYEL-LEAHU:  Um, lots of different news |
| | 6 | sources that you get a lotta different informations *(sic)* |
| | 7 | from -- |
| 03:11 | 8 | *(Court reporter requests clarification for the* |
| | 9 | *record.)* |
| 03:11 | 10 | MR. LENGYEL-LEAHU:  Lots of different news |
| | 11 | sources, lots of information that you've received.  Can you |
| | 12 | wash all that out and focus solely on the case that we're |
| | 13 | gonna hear in this trial? |
| 03:11 | 14 | PROSPECTIVE JUROR:  Yes. |
| 03:11 | 15 | MR. LENGYEL-LEAHU:  Um, family in the -- in the |
| | 16 | police department.  Does that have any effect on your |
| | 17 | ability to objectively weigh the testimony that you're going |
| | 18 | to hear from other police? |
| 03:11 | 19 | PROSPECTIVE JUROR:  No. |
| 03:11 | 20 | MR. LENGYEL-LEAHU:  If you were my client and |
| | 21 | sitting next to me in a case such as this, would you want |
| | 22 | yourself -- someone like yourself, knowing everything that |
| | 23 | you know about yourself, sitting in a jury in judgment? |
| 03:11 | 24 | PROSPECTIVE JUROR:  Yes. |
| 03:11 | 25 | MR. LENGYEL-LEAHU:  Okay.  Thank you. |

| | | |
|---|---|---|
| 03:11 | 1 | THE COURT:  Ms. Corrigan. |
| 03:11 | 2 | MS. CORRIGAN:  Thank you. |
| 03:11 | 3 | **VOIR DIRE BY MS. CORRIGAN** |
| 03:11 | 4 | MS. CORRIGAN:  Mr. Ramirez, in your capacity in |
| | 5 | your job for the County, do you interact at all with bench |
| | 6 | officers -- in other words, judges, any County lawyers -- |
| | 7 | during the course of your day? |
| 03:12 | 8 | PROSPECTIVE JUROR:  County Counsel. |
| 03:12 | 9 | MS. CORRIGAN:  Just County Counsel. |
| 03:12 | 10 | PROSPECTIVE JUROR:  Yeah. |
| 03:12 | 11 | MS. CORRIGAN:  Over at -- out of the main |
| | 12 | executive offices, and that's it? |
| 03:12 | 13 | PROSPECTIVE JUROR:  That's correct. |
| 03:12 | 14 | MS. CORRIGAN:  All right.  Well, in your -- you're |
| | 15 | an appraiser, but like do you ever interact or discuss |
| | 16 | anything with people like Liz Pejeau?  It's P-E-J-E-A-U. |
| 03:12 | 17 | Do you know who she is?  She's with County Counsel. |
| 03:12 | 18 | PROSPECTIVE JUROR:  No. |
| 03:12 | 19 | MS. CORRIGAN:  Okay.  Thank you. |
| 03:12 | 20 | THE COURT:  All right.  The peremptory would pass |
| | 21 | back to the government. |
| 03:12 | 22 | MS. HEINZ:  Your Honor, the government would thank |
| | 23 | and excuse Mr. Gilliard. |
| 03:12 | 24 | THE COURT:  Thank you, sir.  If you'd go back to |
| | 25 | the jury commissioner, they'll send you home right away. |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | Thank you for your attendance, sir.                          |
| 03:12 | 2  | Call another juror, please.                                  |
| 03:13 | 3  | THE CLERK:  Victor Derek Sevilla.                            |
| 03:13 | 4  | THE COURT:  Mr. Sevilla, if you will come up and             |
|       | 5  | have a seat, sir.                                            |
| 03:13 | 6  | Now, Counsel, I notice that Mr. Sevilla was brought          |
|       | 7  | to court by the jury commissioner.                           |
| 03:13 | 8  | Mr. Sevilla, were you here this morning?                     |
| 03:13 | 9  | PROSPECTIVE JUROR:  No, I wasn't.                            |
| 03:13 | 10 | THE COURT:  All right.  And I don't know if                  |
|       | 11 | counsel noted that, but, counsel, would you like me to       |
|       | 12 | re-read the Indictment?  Would you like me to summarize that |
|       | 13 | and see if the gentleman recalls that reading?  What's your  |
|       | 14 | pleasure?                                                    |
| 03:13 | 15 | MS. CORRIGAN:  If the Court could just ask him if            |
|       | 16 | he recalls the reading of the Indictment and whether he      |
|       | 17 | remembers the charges and the nature of 'em.                 |
| 03:13 | 18 | THE COURT:  Mr. Sevilla, last week I read to you a           |
|       | 19 | charging document.  The document has no evidentiary value.   |
|       | 20 | What it does, though, is it puts us on notice about why      |
|       | 21 | we're here, but you're not to attach any significance to the |
|       | 22 | document in terms of fact or proof.                          |
| 03:14 | 23 | Do you recall me reading that document?                      |
| 03:14 | 24 | PROSPECTIVE JUROR:  Yes, I do.                               |
| 03:14 | 25 | THE COURT:  Do you recall the charges?                       |

| | | |
|---|---|---|
| 03:14 | 1 | PROSPECTIVE JUROR:  Yes. |
| 03:14 | 2 | THE COURT:  Okay. |
| 03:14 | 3 | Now, then, between last Wednesday, when you filled |
| | 4 | out the questionnaire, and today's date, are there any |
| | 5 | answers that you gave that you would change on today's date? |
| 03:14 | 6 | PROSPECTIVE JUROR:  I don't -- I'm not sure if |
| | 7 | this was on the questionnaire, but, um, I wanted to inform |
| | 8 | you about the military, that I did want to -- I was going to |
| | 9 | go into the military pretty soon, and I was looking into |
| | 10 | that. |
| 03:14 | 11 | THE COURT:  Okay.  And they -- I don't know what |
| | 12 | that means.  In other words, is it next week?  Next month? |
| 03:14 | 13 | PROSPECTIVE JUROR:  It's -- it's recent.  It's |
| | 14 | coming soon. |
| 03:14 | 15 | THE COURT:  How soon? |
| 03:14 | 16 | PROSPECTIVE JUROR:  Mid-July, I believe. |
| 03:14 | 17 | THE COURT:  Counsel. |
| 03:14 | 18 | MS. HEINZ:  Government would stip. |
| 03:14 | 19 | MS. CORRIGAN:  Yes, stipulate. |
| 03:14 | 20 | MR. LENGYEL-LEAHU:  Stip. |
| 03:14 | 21 | THE COURT:  We're going to thank and excuse you. |
| | 22 | We're not going to hold up military service.  Thank you very |
| | 23 | much. |
| 03:15 | 24 | And if you will call another juror, please. |
| 03:15 | 25 | THE CLERK:  Waleed Nasr. |

03:15  1          THE COURT:  Mr. Nasr, if you will have a seat in

2      Seat No. 5.  That's a pretty hot seat, by the way.

03:15  3          The same question, last week you filled out a

4      questionnaire.

03:15  5          PROSPECTIVE JUROR:  Yes.

03:15  6          THE COURT:  And are there any answers that you

7      would like to change or elaborate upon from the

8      questionnaire that you filled out last week?

03:15  9          PROSPECTIVE JUROR:  No.

03:15  10         THE COURT:  Would you still be fair and impartial

11     to both sides?

03:15  12         PROSPECTIVE JUROR:  Yes.

03:15  13         THE COURT:  Would you follow the law?

03:15  14         PROSPECTIVE JUROR:  Yes.

03:15  15         THE COURT:  Let me turn you over to counsel.

03:15  16         Counsel.

03:15  17         MS. HEINZ:  Thank you.

03:15  18              **VOIR DIRE BY MS. HEINZ**

03:15  19         MS. HEINZ:  Mr. Nasr, I believe you indicated that

20     Arabic is your first language.

03:15  21         PROSPECTIVE JUROR:  Yes.

03:15  22         MS. HEINZ:  There will be some Arabic, I

23     anticipate, in this case, and it will be translated into

24     English.  Will you be able to accept the English language

25     translation and go by that, even though you know the Arabic

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | language?                                                   |
| 03:16 | 2  | PROSPECTIVE JUROR:  Yes.                                    |
| 03:16 | 3  | MS. HEINZ:  Thank you.                                      |
| 03:16 | 4  | THE COURT:  Counsel, Mr. Lengyel-Leahu.                     |
| 03:16 | 5  | **VOIR DIRE BY MR. LENGYEL-LEAHU**                          |
| 03:16 | 6  | MR. LENGYEL-LEAHU:  Sir, you spent quite a bit of          |
|       | 7  | time in the Middle East.                                    |
| 03:16 | 8  | PROSPECTIVE JUROR:  Yes.                                    |
| 03:16 | 9  | MR. LENGYEL-LEAHU:  Uh, you're familiar with a lot         |
|       | 10 | of information that you got from your time there; is that  |
|       | 11 | right?                                                      |
| 03:16 | 12 | PROSPECTIVE JUROR:  Yes.                                    |
| 03:16 | 13 | MR. LENGYEL-LEAHU:  Um, as I've asked the other           |
|       | 14 | folks, is there a way that you can separate the things that |
|       | 15 | you may have heard or been exposed to there, um, from your  |
|       | 16 | deliberations in a case such as this and reviewing the      |
|       | 17 | evidence that you're gonna hear in this case?              |
| 03:16 | 18 | PROSPECTIVE JUROR:  Yes.                                    |
| 03:16 | 19 | MR. LENGYEL-LEAHU:  And you could feel                     |
|       | 20 | comfortable, um, deliberating about information exclusively |
|       | 21 | based on what the evidence is here today.                   |
| 03:16 | 22 | PROSPECTIVE JUROR:  Yes.                                    |
| 03:16 | 23 | MR. LENGYEL-LEAHU:  Um, and I talked to several'a         |
|       | 24 | the other jurors about this also.  Um, you understand that  |
|       | 25 | you're going to be, uh -- you're gonna swear an oath to     |

|         |    |                                                                              |
|---------|----|------------------------------------------------------------------------------|
|         | 1  | follow the law.                                                              |
| 03:17   | 2  | PROSPECTIVE JUROR:  Yes, I understand.                                       |
| 03:17   | 3  | MR. LENGYEL-LEAHU:  And in your case in                                      |
|         | 4  | particular, uh, you might not like the result that leads you                 |
|         | 5  | to.  Would you be able to follow the law as instructed by                    |
|         | 6  | the judge, even if it's a decision that, um, may cause you                   |
|         | 7  | some personal discomfort?                                                    |
| 03:17   | 8  | PROSPECTIVE JUROR:  Yes.                                                     |
| 03:17   | 9  | MR. LENGYEL-LEAHU:  If you were sitting next to me                           |
|         | 10 | and the charges were the same as you've heard here, would                    |
|         | 11 | you want someone like yourself sitting in judgment?                          |
| 03:17   | 12 | PROSPECTIVE JUROR:  Yes.                                                     |
| 03:17   | 13 | MR. LENGYEL-LEAHU:  Thank you.                                               |
| 03:17   | 14 | THE COURT:  Ms. Corrigan.                                                    |
| 03:17   | 15 | **VOIR DIRE BY MS. CORRIGAN**                                                |
| 03:17   | 16 | MS. CORRIGAN:  Good afternoon, Mr. Nasr.  In                                 |
|         | 17 | reading your questionnaire, I note -- um, are you the sole                    |
|         | 18 | breadwinner of your household?                                               |
| 03:18   | 19 | PROSPECTIVE JUROR:  Yes.                                                     |
| 03:18   | 20 | MS. CORRIGAN:  Will this -- would sitting on a                               |
|         | 21 | six-week trial impact you financially to a point that could                  |
|         | 22 | cause you stress?                                                            |
| 03:18   | 23 | PROSPECTIVE JUROR:  No.                                                      |
| 03:18   | 24 | MS. CORRIGAN:  No.  Okay.  So you're in a position                           |
|         | 25 | that you'll get paid for the next six weeks?                                  |

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 112 of 123  Page ID #:4191
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

112

03:18   1              PROSPECTIVE JUROR:  Yes.

03:18   2              MS. CORRIGAN:  All right.  Anything that we're

        3   missing?  You've heard all the questions that we've been

        4   asking all day.  Anything that you'd like to tell us that

        5   we're missing?

03:18   6              PROSPECTIVE JUROR:  No.

03:18   7              MS. CORRIGAN:  Okay.  Thank you.

03:18   8              THE COURT:  The peremptory would now pass back to

        9   the defense.

03:18  10          Counsel, if you'd like a couple minutes.

03:18  11              MS. CORRIGAN:  Yes, please, Your Honor.

03:18  12          *(Defense counsel confer.)*

03:19  13              MS. CORRIGAN:  Defense would like to thank and

       14   excuse Mr. Nasr.

03:19  15              THE COURT:  Mr. Nasr, thank you, sir.  If you'd go

       16   back to the jury room with our appreciation.  The

       17   commissioner will excuse you at that time, sir.

03:19  18          Call another juror, please.

03:19  19              THE CLERK:  Ricardo Gallegos.

03:20  20              THE COURT:  Mr. Gallegos, are there any answers

       21   that you'd change or comment upon from the time you filled

       22   out the questionnaire last Wednesday till today's date, or

       23   would they be the same answers?

03:20  24              PROSPECTIVE JUROR:  Actually, there was one on

       25   legal training.  I think I put "NA," which I actually wanna

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | switch it to "No."                                                 |
| 03:20 | 2  | THE COURT:  Say that again.                                        |
| 03:20 | 3  | PROSPECTIVE JUROR:  Legal training, I put "NA,"                   |
|       | 4  | which I want to switch it to "No."  I was confused at the         |
|       | 5  | time.                                                              |
| 03:20 | 6  | THE COURT:  All right.                                            |
| 03:20 | 7  | I'm going to show you your questionnaire.  On                     |
|       | 8  | page 10, Question No. 33, you answered the question,             |
| 03:20 | 9  | *"When you consider any feelings or*                              |
|       | 10 | *opinions you have, do you think you can*                          |
|       | 11 | *evaluate fairly the evidence presented*                          |
|       | 12 | *in the case?"*                                                    |
| 03:20 | 13 | And then on the following page at Question No. 36,                |
|       | 14 | we asked the same question.  And you indicated "No."            |
| 03:21 | 15 | Could you look at that for just a moment, and I                   |
|       | 16 | want to see if your thought changed in reading the               |
|       | 17 | additional questions or whether that was a mistake.              |
| 03:21 | 18 | *(Document provided to prospective juror.)*                        |
| 03:21 | 19 | PROSPECTIVE JUROR:  No, I do not have any strong                 |
|       | 20 | feelings or opinion.                                              |
| 03:21 | 21 | THE COURT:  I couldn't understand.  It's my fault.              |
| 03:21 | 22 | PROSPECTIVE JUROR:  Do not have any strong                       |
|       | 23 | feelings.                                                          |
| 03:21 | 24 | THE COURT:  You do not have any strong feelings.                |
|       | 25 | Look at the bottom questions on the page, and you'll see I       |

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | put a red tag on the bottom question, I think it's                       |
|       | 2  | Question No. 33.  And then look at Question No. 36.  If my                |
|       | 3  | memory's correct, it's the same question.  And you answered              |
|       | 4  | that you'd be fair the first time, and then the second time              |
|       | 5  | the same question was asked, you answered "No."                          |
| 03:22 | 6  | And I want to see if that's just a mistake or if                         |
|       | 7  | your feelings changed and you didn't feel you could be fair.             |
| 03:22 | 8  | PROSPECTIVE JUROR:  Oh, the second one was                               |
|       | 9  | incorrect.  I got confused.                                              |
| 03:22 | 10 | THE COURT:  Okay.  So you could be fair?                                 |
| 03:22 | 11 | PROSPECTIVE JUROR:  Yes, I can be fair.                                   |
| 03:22 | 12 | THE COURT:  All right.  Thank you very much.                             |
| 03:22 | 13 | Would you follow the law -- I'll get my                                  |
|       | 14 | questionnaire back from you.  Thank you very much.                       |
| 03:22 | 15 | *(Document returned to Court.)*                                          |
| 03:22 | 16 | THE COURT:  Would you follow the law that I                              |
|       | 17 | instruct you on at the end of the case?                                  |
| 03:22 | 18 | PROSPECTIVE JUROR:  Yes.                                                  |
| 03:22 | 19 | THE COURT:  I'll turn you over to counsel on                             |
|       | 20 | behalf of the government.                                                |
| 03:22 | 21 | **VOIR DIRE BY MS. HEINZ**                                               |
| 03:22 | 22 | MS. HEINZ:  Hello.                                                        |
| 03:22 | 23 | PROSPECTIVE JUROR:  Hello.                                                |
| 03:22 | 24 | MS. HEINZ:  Just, again, I want to cover a couple                        |
|       | 25 | of things on the jury questionnaire with you briefly.                    |

8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

115

03:22  1              PROSPECTIVE JUROR:  Yes.

03:22  2              MS. HEINZ:  Okay.  There were sort of a series of

3      questions where you were asked if you would follow the

4      Court's instructions and whether you would have any

5      difficulty following Court's instructions.

03:23  6              PROSPECTIVE JUROR:  Okay.

03:23  7              MS. HEINZ:  Okay.  So you answered that you would

8      follow the Court's instructions.  But then you checked a box

9      that indicated you would have difficulty following the

10     Court's instructions.  Was -- was -- can you tell me if you

11     checked the box correctly or incorrectly or if there was an

12     issue there?

03:23  13             PROSPECTIVE JUROR:  Well, when it comes to media,

14     um, normally revolved around it *(verbatim)* because my family

15     tends to really watch a lot, uh, on the news.  And at my

16     job, they tend to talk about it a lot.  So a little

17     difficult for me to keep that aside.

03:23  18             MS. HEINZ:  Understood.  So it would be

19     difficult -- you think it would be difficult for you to not

20     pay attention to the media?

03:23  21             PROSPECTIVE JUROR:  Yes, correct.

03:23  22             MS. HEINZ:  Thank you.

03:23  23             THE COURT:  Mr. Lengyel-Leahu.

03:23  24                **VOIR DIRE BY MR. LENGYEL-LEAHU**

03:23  25             MR. LENGYEL-LEAHU:  Do you work at night, sir?

03:23    1              PROSPECTIVE JUROR:  From 11 -- uh, I'm sorry --

         2    from noon to 8:00.

03:24    3              MR. LENGYEL-LEAHU:  Okay.  So we could fairly

         4    assume that you're not gonna be able to go to work during

         5    the course of this trial, right?

03:24    6              PROSPECTIVE JUROR:  Correct.

03:24    7              MR. LENGYEL-LEAHU:  Would that have a financial

         8    impact on you?

03:24    9              PROSPECTIVE JUROR:  Truthfully, I actually haven't

        10    told how long the case will be, so I have no idea if they'll

        11    pay me or not.

03:24   12              MR. LENGYEL-LEAHU:  Understood.

03:24   13         My questions are going to be about whether -- if

        14    you did hear information or if you were made aware, would

        15    you tell the Court of things that were going on that were

        16    having an effect on your ability to deliberate?

03:24   17              PROSPECTIVE JUROR:  Could you repeat?

03:24   18              MR. LENGYEL-LEAHU:  Yeah.  If you heard things

        19    either on the news, through your friends, or the people that

        20    you talk to or Twitter with, would you be able to inform the

        21    Court that was having an influence on your deliberations?

03:24   22              PROSPECTIVE JUROR:  By my personal -- like, just

        23    my personality, I don't tend to actually tell anyone

        24    anything.  I'm more of a quiet person.

03:25   25              MR. LENGYEL-LEAHU:  Well, for the next weeks,

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | could you at least let us know?                           |
| 03:25 | 2  | PROSPECTIVE JUROR:  I could try, yeah.                    |
| 03:25 | 3  | MR. LENGYEL-LEAHU:  Okay.  This financial impact          |
|       | 4  | on you, you haven't spoken to work; is that right?        |
| 03:25 | 5  | PROSPECTIVE JUROR:  Uh, no -- well, I only told           |
|       | 6  | 'em about today and the last -- on last week, but I didn't|
|       | 7  | tell 'em how long this case would be.                     |
| 03:25 | 8  | MR. LENGYEL-LEAHU:  Um, so if the judge came down         |
|       | 9  | and asked you directly, you wouldn't have an answer for us,|
|       | 10 | would you?                                                |
| 03:25 | 11 | PROSPECTIVE JUROR:  No, I wouldn't.                       |
| 03:25 | 12 | MR. LENGYEL-LEAHU:  Okay.                                 |
| 03:25 | 13 | Thank you.                                                |
| 03:25 | 14 | THE COURT:  Ms. Corrigan.                                 |
| 03:25 | 15 | MS. CORRIGAN:  Thank you.                                 |
| 03:25 | 16 | **VOIR DIRE BY MS. CORRIGAN**                             |
| 03:25 | 17 | MS. CORRIGAN:  Mr. Gallegos, if you didn't get           |
|       | 18 | paid for six weeks, what would happen?                    |
| 03:25 | 19 | PROSPECTIVE JUROR:  Honestly, there, um, I believe        |
|       | 20 | there wouldn't be any problems.                           |
| 03:26 | 21 | MS. CORRIGAN:  You could still pay your bills and         |
|       | 22 | make your rent?  I don't know what other -- I don't need to|
|       | 23 | know all your bills, but I would -- uh, would you be able to|
|       | 24 | stay on top your bills and pay rent or pay your mortgage? |
| 03:26 | 25 | PROSPECTIVE JUROR:  I think I should be fine.             |

03:26  1          MS. CORRIGAN:  You have enough money in your

2      savings to do that?

03:26  3          PROSPECTIVE JUROR:  Not -- honestly, I'm not sure,

4      but --

03:26  5          MS. CORRIGAN:  Okay.

03:26  6          PROSPECTIVE JUROR:  -- I think I could manage.

03:26  7          MS. CORRIGAN:  Okay.  If you couldn't manage,

8      let's say, you got to day -- or week three, and you figured

9      out, uh-oh, can't pay my bills, what's gonna happen at that

10     point?

03:26  11         PROSPECTIVE JUROR:  Um, I think I still will be

12     fine, 'cause, well, my sister right now, she's unemployed,

13     so I'm taking over her bills as well.  So until she actually

14     gets her own job, uh, she -- I think she'll be able to cover

15     for mine, but to be honest, I'm not sure.

03:26  16         MS. CORRIGAN:  Okay.  So you're not only covering

17     your own bills, but you're covering your sister's bills for

18     right now?

03:27  19         PROSPECTIVE JUROR:  For now.

03:27  20         MS. CORRIGAN:  Does she live with you?

03:27  21         PROSPECTIVE JUROR:  I live with my parents.

03:27  22         MS. CORRIGAN:  Got it.  So you don't have to pay

23     rent?

03:27  24         PROSPECTIVE JUROR:  No.

03:27  25         MS. CORRIGAN:  Do you have to -- do you pay for

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | anyone else's upkeep?                                       |
| 03:27 | 2  | PROSPECTIVE JUROR:  No.  Just my own and my                |
|       | 3  | sister's for now.                                          |
| 03:27 | 4  | MS. CORRIGAN:  And your sister's friend?                   |
| 03:27 | 5  | PROSPECTIVE JUROR:  My sister only.                        |
| 03:27 | 6  | MS. CORRIGAN:  Oh, okay, sorry.                            |
| 03:27 | 7  | Now, we've talked a little bit about personalities         |
|       | 8  | and that sort of thing in the courtroom.  If you were to end |
|       | 9  | up being a juror because you got selected out of the bowl at |
|       | 10 | some point, you said you were a quiet person.  But if you  |
|       | 11 | held -- if you had a belief in that jury room and you had  |
|       | 12 | 11 other people sitting there, would you be able to step up |
|       | 13 | to the plate and say, "Hey, I don't agree"?  And it's okay |
|       | 14 | if you can't.  We just -- it's something that's important. |
|       | 15 | Because if you tend to be a quiet, shy person, it's a nice |
|       | 16 | quality, but we need to know whether it's something that you |
|       | 17 | will bring to the courtroom.                               |
| 03:28 | 18 | PROSPECTIVE JUROR:  I actually think it would be           |
|       | 19 | conflicting.                                               |
| 03:28 | 20 | MS. CORRIGAN:  It could conflict you.  Could you           |
|       | 21 | expand a little bit.  I'm not trying to embarrass you.  I  |
|       | 22 | think you understand why I get a little bit worried about  |
|       | 23 | that.                                                      |
| 03:28 | 24 | PROSPECTIVE JUROR:  Uh, personally, I won't be so          |
|       | 25 | forward to actually come out and say like, "Hey, this is   |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | wrong" or bring out my own opinion, basically.               |
| 03:28 | 2  |      MS. CORRIGAN:  Do you think that would affect your |
|       | 3  | deliberations?                                               |
| 03:28 | 4  |      PROSPECTIVE JUROR:  I believe so, yes. |
| 03:28 | 5  |      MS. CORRIGAN:  Would it affect your deliberations |
|       | 6  | in a bad way?                                                |
| 03:28 | 7  |      PROSPECTIVE JUROR:  Hmm...     |
| 03:28 | 8  |      MS. CORRIGAN:  In other words, would you sit back |
|       | 9  | maybe down the line and say, "Boy, I wish I had stepped up   |
|       | 10 | and said something"?                                         |
| 03:28 | 11 |      PROSPECTIVE JUROR:  Feeling guilty you mean? |
| 03:28 | 12 |      MS. CORRIGAN:  Yes.           |
| 03:28 | 13 |      PROSPECTIVE JUROR:  Probably not. |
| 03:28 | 14 |      MS. CORRIGAN:  Probably not.  Even if you knew you |
|       | 15 | should have stepped up and said something?                  |
| 03:28 | 16 |      PROSPECTIVE JUROR:  Correct.  |
| 03:28 | 17 |      MS. CORRIGAN:  You wouldn't feel bad about it? |
| 03:28 | 18 |      PROSPECTIVE JUROR:  No.       |
| 03:29 | 19 |      MS. CORRIGAN:  Is there anything else that you |
|       | 20 | would like to disclose to us that -- or just tell us about  |
|       | 21 | that might be kind of itching at you as to why maybe you    |
|       | 22 | shouldn't be a juror in this case?                          |
| 03:29 | 23 |      PROSPECTIVE JUROR:  Nothing at all. |
| 03:29 | 24 |      MS. CORRIGAN:  Okay.  If -- um, I notice that |
|       | 25 | your -- the location of your employment is in north county, |

|         |    |                                                          |
|---------|----|----------------------------------------------------------|
|         | 1  | right?                                                   |
| 03:29   | 2  | PROSPECTIVE JUROR:  Yes.                                 |
| 03:29   | 3  | MS. CORRIGAN:  In the event that you learned that        |
|         | 4  | something might have happened around that area, would that |
|         | 5  | affect your feelings about that case?                    |
| 03:29   | 6  | PROSPECTIVE JUROR:  No.                                  |
| 03:29   | 7  | MS. CORRIGAN:  All right.  Thank you.                    |
| 03:29   | 8  | THE COURT:  Peremptory now passes back to the            |
|         | 9  | government.                                              |
| 03:30   | 10 | MS. HEINZ:  Your Honor, the government will thank        |
|         | 11 | and excuse Mr. Gallegos.                                 |
| 03:30   | 12 | THE COURT:  Mr. Gallegos, thank you, sir.  If            |
|         | 13 | you'd go back to the jury room, the jury commissioner is |
|         | 14 | going to thank and excuse you, sir.                      |
| 03:30   | 15 | Call another juror, please.                              |
| 03:30   | 16 | THE CLERK:  Marina del Rosario Sanchez.                  |
| 03:30   | 17 | THE COURT:  Once again, Ms. Sanchez, last week you       |
|         | 18 | filled out a questionnaire and that critical question I've |
|         | 19 | always had is have you changed any of your answers or would |
|         | 20 | you change any of your answers on that questionnaire?    |
| 03:30   | 21 | PROSPECTIVE JUROR:  I would just like to bring up        |
|         | 22 | financial hardship that I would inquire.  I just found out |
|         | 23 | after coming here last week my employer will -- only pays |
|         | 24 | for eight hours.                                         |
| 03:31   | 25 | THE COURT:  Just a moment.  Counsel?                     |

03:31   1               MS. CORRIGAN:  Stip.

03:31   2               MS. HEINZ:  Stip.

03:31   3               MR. LENGYEL-LEAHU:  Stip.

03:31   4               THE COURT:  It's appreciated.  That's what we

5       need.  I think people report in good faith, and they find

6       out their employer isn't willing to have you serve.  So

7       you're excused by stipulation of all counsel.

03:31   8           *(Live reporter switch at 3:31 p.m.)*

03:31   9           *(Further proceedings reported by Deborah Parker*

10          *in Volume IV.)*

03:31   11                            -oOo-

03:31   12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 8:15-cr-00060-DOC  Document 290  Filed 03/31/17  Page 123 of 123  Page ID #:4202
8:15-CR-0060-DOC - 6/7/2016 - Day 1, Volume III

123

```
03:31    1                          -oOo-

03:31    2

03:31    3                        CERTIFICATE

03:31    4

03:31    5        I hereby certify that pursuant to Section 753,

         6   Title 28, United States Code, the foregoing is a true and

         7   correct transcript of the stenographically reported

         8   proceedings held in the above-entitled matter and that the

         9   transcript page format is in conformance with the

        10   regulations of the Judicial Conference of the United States.

03:31   11

03:31   12   Date:  January 31, 2017

03:31   13

03:31   14
03:31                        /s/ Debbie Gale
03:31   15                   _____
03:31                        DEBBIE GALE, U.S. COURT REPORTER
03:31   16                   CSR NO. 9472, RPR, CCRR

03:31   17

        18

        19

        20

        21

        22

        23

        24

        25
```