1            **UNITED STATES DISTRICT COURT**

2            **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                 - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                      )        <u>**CERTIFIED**</u>
6            Plaintiff,               )
                                      )
7        vs.                          ) No. 8:15-CR-0060-DOC
                                      )    Day 4, Volume I
8    1) NADER SALEM ELHUZAYEL;        )
     2) MUHANAD ELFATIH M.A. BADAWI,  )
9                                     )
             Defendants.              )
10   _____)

11

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     Jury Trial

17                Santa Ana, California

18               Friday, June 10, 2016

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1   **APPEARANCES OF COUNSEL:**

2

    FOR THE UNITED STATES OF AMERICA:
3

        DEPARTMENT OF JUSTICE
4       OFFICE OF THE UNITED STATES ATTORNEY
        Criminal Division
5       BY:  Judith A. Heinz
             Assistant United States Attorney
6       312 North Spring Street
        15th Floor
7       Los Angeles, California 90012
        213-894-7280
8       USACAC.Criminal@usdoj.gov

9       DEPARTMENT OF JUSTICE
        OFFICE OF THE UNITED STATES ATTORNEY
10      Criminal Division
        BY:  Deirdre Z. Eliot
11           Assistant United States Attorney
        411 West 4th Street
12      Suite 8000
        Santa Ana, California 92701
13      714-338-3500
        USACAC.SACriminal@usdoj.gov
14
        DEPARTMENT OF JUSTICE
15      OFFICE OF THE UNITED STATES ATTORNEY
        General Crimes Section
16      BY:  Julius J. Nam
             Assistant United States Attorney
17      312 North Spring Street
        Suite 1200
18      Los Angeles, California 90012
        213-894-4491
19      julius.nam@usdoj.gov

20

    FOR DEFENDANT NADER SALEM ELHUZAYEL:
21

        Pal A. Lengyel-Leahu *(retained)*
22      LAW OFFICES OF PAL A. LENGYEL-LEAHU
        360 East First Street
23      Suite 609
        Tustin, California 92780
24      714-497-6813
        plitigate@aol.com
25

**DEBBIE GALE, U.S. COURT REPORTER**

1    **APPEARANCES OF COUNSEL (Continued):**

2

    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3

4        Katherine T. Corrigan *(CJA appointment)*
         CORRIGAN WELBOURN AND STOKKE APLC
5        4100 Newport Place
         Suite 550
6        Newport Beach, California 92660
         949-251-0330
7        kate@cwsdefense.com

8

9    ALSO PRESENT:

10       Cambria Lisonbee (assisting Ms. Corrigan)
         Joshua Hopps (assisting Mr. Lengyel-Leahu)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    <u>I N D E X</u>

2              <u>Jury Trial - Day 4, Volume I</u>

3    **PROCEEDINGS**                              **PAGE**

4    WALES, Scott                                  7

5    BOWENS, Patrick                              10

6    OSBORNE, Catherine                           22

7    OLARSCH, Paul                                30

8    TRAN, Mai                                    41

9    NGUYEN, Duc, Vietnamese Interpreter, sworn   56

10   PHAM, Hung                                   57

11   SALINAS-GARCIA, Saul                         65

12   SHERRIN, Shannon                             81

13   STEINHILBER, Rudi                            91

14   PARK, Sunrye Ann, Korean Interpreter, sworn  101

15   KIM, Yoo Yun                                 101

16   MEDINA, Andrea                               114

17   CIVILETTO, Charles Mark                      120

18   Stipulation re Exhibit No. 956               125

19   LOPEZ, Manuel T.                             130

20

21                        **WITNESSES**

22   **WITNESSES**          **DIRECT   CROSS   REDIRECT   RECROSS**

23   BOWENS, PATRICK
     By Ms. Heinz              10
24

25

**WITNESSES**

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| OSBORNE, Catherine | | | | |
| By Mr. Nam | 23 | | | |
| OLARSCH, Paul | | | | |
| By Mr. Nam | 31 | | | |
| TRAN, Mai | | | | |
| By Mr. Nam | 42 | | | |
| PHAM, Hung | | | | |
| By Mr. Nam | 58 | | | |
| By Mr. Lengyel-Leahu | | 64 | | |
| SALINAS-GARCIA, Saul | | | | |
| By Mr. Nam | 66 | | | |
| By Mr. Lengyel-Leahu | | 80 | | |
| SHERRIN, Shannon | | | | |
| By Mr. Nam | 82 | | | |
| STEINHILBER, Rudi | | | | |
| By Mr. Nam | 91 | | | |
| KIM, Yoo Yun | | | | |
| By Mr. Nam | 102 | | | |
| MEDINA, Andrea | | | | |
| By Ms. Eliot | 115 | | | |
| CIVILETTO, C. Mark | | | | |
| By Ms. Heinz | 120 | | | |
| By Mr. Lengyel-Leahu | | 126 | | |
| LOPEZ, Manuel T. | | | | |
| By Mr. Nam | 130 | | | |
| By Mr. Lengyel-Leahu | | 140 | | |

**EXHIBITS**

| EXHIBIT NO./DESCRIPTION | IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 609       checkbook | | 123 |
| 615       AT&T receipt for iPhone, LG tablet and accessories | | 116 |
| 760       Call chart | | 21 |
| 761       Call chart | | 21 |
| 914-A     Copy of check to Purpose Driven Personnel dated 4/4/2015 | | 26 |
| 915-A     Check from Steinhilber account | | 95 |
| 924-A     Copy of Cali Food Company check | | 36 |
| 927-A     Copy of check | | 49 |
| 929-A     Copy of check from Salinas Landscaping | | 75 |
| 933-A     Copy of check from Sherrin account | | 89 |
| 942-A     Check on Kim account | | 108 |
| 951       Photograph of Wells Fargo Bank at 2350 West Lincoln Avenue in Anaheim | | 134 |
| 952       Photograph of Chase Bank at 910 South Brookhurst | | 137 |
| 955       Copy of Check No. 3341 from Exhibit 609 | | 124 |
| 956       Copy of Check No. 3357 from Exhibit 609 | | 124 |

|        |    |                                                                    |
|--------|----|--------------------------------------------------------------------|
|        | 1  | **SANTA ANA, CALIFORNIA, FRIDAY, JUNE 10, 2016**                   |
|        | 2  | **Day 4, Volume I**                                                |
|        | 3  | (8:11 a.m.)                                                        |
| 07:56  | 4  | *(Outside the presence of the jury.)*                             |
|        | 5  | **SCOTT WALES, CALLED BY THE GOVERNMENT, PREVIOUSLY SWORN**        |
|        | 6  | **RESUMED THE STAND**                                              |
| 08:11  | 7  | THE COURT:  We're on the record.  All counsel are                 |
|        | 8  | present.  The witness is present.                                 |
| 08:11  | 9  | Counsel, will the government have further redirect?               |
| 08:11  | 10 | MS. ELIOT:  No, Your Honor.                                        |
| 08:11  | 11 | THE COURT:  I always just want to make certain                    |
|        | 12 | that the defense has asked all the questions at least of          |
|        | 13 | this witness at this time that they'd like to.  So let me         |
|        | 14 | turn to Mr. Lengyel-Leahu.                                         |
| 08:11  | 15 | MR. LENGYEL-LEAHU:  Yes.  All the questions of                    |
|        | 16 | this witness at this time, subject to recall in the               |
|        | 17 | defendant's case.                                                 |
| 08:11  | 18 | THE COURT:  Okay.                                                  |
| 08:11  | 19 | And, Ms. Corrigan, at this time, have you asked all               |
|        | 20 | the questions you would like to ask?                              |
| 08:11  | 21 | MS. CORRIGAN:  I have, Your Honor.                                 |
| 08:11  | 22 | THE COURT:  Then, you know, simply inform the jury                |
|        | 23 | that there's no redirect, and we'll ask you then to step          |
|        | 24 | down.                                                             |
| 08:11  | 25 | THE WITNESS:  Yes, your Honor.                                     |

**DEBBIE GALE, U.S. COURT REPORTER**

08:11    1              THE COURT:  Not yet.  We'll do that in front of

         2   the jury.

08:11    3              MS. HEINZ:  Your Honor, just one brief question:

         4   If he's subject to recall, do you want to exclude this

         5   witness from the courtroom?

08:11    6              THE COURT:  Is he your investigator?

08:11    7              *(To the clerk:)* Just a moment, Deb.

08:11    8              MS. HEINZ:   He's one of the case agents on the

         9   case.

08:11   10              THE COURT:  He can remain, Counsel.

08:11   11         From what I've heard of his testimony, I don't see

        12   how he would be influenced with the tapes and the Twitters

        13   being played.

08:12   14         His expertise has been what I call common sense

        15   expertise.  There's nothing novel about it.  So just to

        16   exclude him, if he's one of your investigating agents --

        17   you're entitled to have an investigating agent present.

08:12   18              MS. HEINZ:  Thank you, Your Honor.

08:12   19              THE COURT:  All right.

08:12   20         Now, Deb, get the jury.

08:12   21         *(In the presence of the jury.)*

08:12   22              THE COURT:  All right.  Thank you.  The jury's

        23   present.  The alternates are present.  Good morning.  All

        24   counsel are present.  The parties are present.

08:12   25         How are you holding up?  Okay?

Case 8:15-cr-00060-DOC   Document 293   Filed 03/31/17   Page 9 of 144   Page ID #:4485
8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

9

| | | |
|---|---|---|
| 08:12 | 1 | Okay.  I need to make sure I reach a balance where |
| | 2 | I'm not forcing the parties to present evidence too fast; |
| | 3 | but, by the same token, I think we'll get the case to you in |
| | 4 | a timely fashion.  Okay? |
| 08:13 | 5 | Well, Counsel, then good morning to all counsel and |
| | 6 | the parties. |
| 08:13 | 7 | And, Counsel, on behalf of the government, do you |
| | 8 | have any further examination on redirect? |
| 08:13 | 9 | MS. ELIOT:  We do not, Your Honor. |
| 08:13 | 10 | THE COURT:  Then, sir, I'm gonna ask you to step |
| | 11 | down.  You may remain in the courtroom.  You're going to be |
| | 12 | recalled again, apparently, by the defense and/or the |
| | 13 | government in the future. |
| 08:13 | 14 | THE WITNESS:  Yes, Your Honor. |
| 08:13 | 15 | THE COURT:  Subject to recall. |
| 08:13 | 16 | *(Witness steps down.)* |
| 08:13 | 17 | THE COURT:  And then, Counsel, your next witness, |
| | 18 | please. |
| 08:13 | 19 | MS. HEINZ:  The United States calls Supervisory |
| | 20 | Special Agent Patrick Bowens. |
| 08:13 | 21 | THE COURT:  Thank you. |
| 08:14 | 22 | Thank you, sir.  Would you step between the double |
| | 23 | doors and, at that location, sir, would you raise your right |
| | 24 | hand, please. |
| | 25 | |

| | | |
|---|---|---|
| 08:14 | 1 | **PATRICK BOWENS, CALLED BY THE GOVERNMENT, SWORN** |
| 08:14 | 2 | THE WITNESS:  Yes, I do. |
| 08:14 | 3 | THE COURT:  Thank you, sir. |
| 08:14 | 4 | Would you be kind enough to state your full name to |
| | 5 | the jury and spell your last, please. |
| 08:14 | 6 | THE WITNESS:  Yes, sir. |
| 08:14 | 7 | Patrick, B is my middle initial, and last name |
| | 8 | Bowens, B-O-W-E-N-S. |
| 08:14 | 9 | THE COURT:  Thank you. |
| 08:14 | 10 | Direct examination by the government, please. |
| 08:14 | 11 | **DIRECT EXAMINATION** |
| 08:14 | 12 | BY MS. HEINZ: |
| 08:14 | 13 | Q.   Good morning. |
| 08:14 | 14 | A.   Good morning. |
| 08:15 | 15 | Q.   What do you do for a living? |
| 08:15 | 16 | A.   I'm an FBI Special Agent. |
| 08:15 | 17 | Q.   Okay.  Are you a Supervisory Special Agent? |
| 08:15 | 18 | A.   I am. |
| 08:15 | 19 | Q.   And how long have you been with the FBI? |
| 08:15 | 20 | A.   19 years. |
| 08:15 | 21 | Q.   And what is your current position? |
| 08:15 | 22 | A.   I'm a unit chief of the TICTU, which is T-I-C-T-U. |
| | 23 | That's the acronym for it.  And it stands for the |
| | 24 | Telecommunications Intercept and Collection Technology Unit. |
| 08:15 | 25 | Q.   Is TICTU within a technology division of the FBI? |

| | | |
|---|---|---|
| 08:15 | 1 | A.   Yes, it is. |
| 08:15 | 2 | Q.   What division? |
| 08:15 | 3 | A.   It is Operational Technology Division. |
| 08:15 | 4 | Q.   And where is TICTU located? |
| 08:15 | 5 | A.   Quantico, Virginia. |
| 08:15 | 6 | Q.   How long have you been a supervisor at TICTU? |
| 08:15 | 7 | A.   Four years at TICTU. |
| 08:15 | 8 | Q.   Have you testified previously in federal court |
| | 9 | regarding the work done by the TICTU unit? |
| 08:15 | 10 | A.   Yes, I have. |
| 08:15 | 11 | Q.   About how many times? |
| 08:15 | 12 | A.   I'd say eight or nine times. |
| 08:15 | 13 | Q.   Please describe what TICTU does. |
| 08:16 | 14 | A.   The bread and butter, what TICTU does, is collections |
| | 15 | of telephone calls. |
| 08:16 | 16 | Q.   In general -- just in general -- what are your |
| | 17 | responsibilities as a supervisor with the TICTU unit? |
| 08:16 | 18 | A.   Well, I was just recently assigned as the unit chief. |
| | 19 | So I have administrative oversight to make sure that the |
| | 20 | budget things are covered and all the communications, the |
| | 21 | collections are done correctly.  The buck stops with me.  If |
| | 22 | we are a success, it's me; if we're a failure, it's me.  So |
| | 23 | basically that's it. |
| 08:16 | 24 | Q.   I just want to ask you a couple questions about your |
| | 25 | background. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

12

| | | |
|---|---|---|
| 08:16 | 1 | Where were you assigned before TICTU? |
| 08:16 | 2 | A.   I was assigned with the TPDU, which is the Technical |
| | 3 | Personnel Development Unit. |
| 08:16 | 4 | Q.   And do you have a college degree? |
| 08:16 | 5 | A.   Yes, I do. |
| 08:16 | 6 | Q.   In what? |
| 08:16 | 7 | A.   I have a bachelor of science degree in criminal |
| | 8 | justice. |
| 08:16 | 9 | Q.   Okay.  All right.  In this case, did TICTU obtain |
| | 10 | recordings of telephone conversations pursuant to court |
| | 11 | authorization? |
| 08:17 | 12 | A.   Yes, we did. |
| 08:17 | 13 | Q.   I'd like you to take a look at what's been marked as |
| | 14 | Government's Exhibit 762. |
| 08:17 | 15 | Does what has been marked as Government's Exhibit 762 |
| | 16 | demonstrate through pictures the process of telephone call |
| | 17 | collection? |
| 08:17 | 18 | A.   Yes, it does. |
| 08:17 | 19 | Q.   Would Government's Exhibit 762 assist you in explaining |
| | 20 | this process to us? |
| 08:17 | 21 | A.   Yes, it would. |
| 08:17 | 22 | MS. HEINZ:  Your Honor, I'd like to place |
| | 23 | Government's Exhibit 762 before the jury. |
| 08:17 | 24 | THE COURT:  Any objection? |
| 08:17 | 25 | MS. CORRIGAN:  No, Your Honor. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:17 | 1 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 08:17 | 2 | THE COURT:  You may do so. |
| 08:17 | 3 | *(Exhibit displayed.)* |
| 08:18 | 4 | BY MS. HEINZ: |
| 08:18 | 5 | Q.   Supervisory Special Agent Bowens, using Government's |
| | 6 | Exhibit 762, would you please explain to us the process |
| | 7 | through which TICTU collects and stores a telephone call |
| | 8 | recording? |
| 08:18 | 9 | A.   Yes, I will.  If you look at the lower left-hand |
| | 10 | portion of your screen there, after we receive a lawful |
| | 11 | court order, if a person makes -- the normal procedure where |
| | 12 | a call works on the cellphone -- this -- the -- from the |
| | 13 | cellphone, the call goes to a cell tower or several cell |
| | 14 | towers. |
| 08:18 | 15 | From that point, it goes to what's called the company -- |
| | 16 | telephone company switch -- in the middle of the screen |
| | 17 | there.  The switch is a network device that routes your call |
| | 18 | to its intended destination.  So whoever you planned on |
| | 19 | calling, that's what it routs you with.  Up near the top |
| | 20 | left of your screen, it says "Other party."  It could be |
| | 21 | anybody that you call.  That's a normal route of a call. |
| 08:18 | 22 | Now, pursuant to a court order, your phone call goes the |
| | 23 | same way -- from cellphone, to tower, to the switch -- where |
| | 24 | the telephone company provisions the switch that the FBI |
| | 25 | receives a portion -- receives that same telephone call.  It |

1    does not delay the call that goes to the other party, but it

2    also goes to the FBI.  We are a silent third-party listener

3    to the call pursuant to a court order.

08:19    4            THE COURT:  So you would be under the "Other

5    Party"?

08:19    6            THE WITNESS:  No, sir.

08:19    7        The "Other Party" would be whoever else you're --

8    the other -- if there's another person that's involved in a

9    crime, or if it's -- even if it's like Domino Pizza or any

10   calls that come within there.

08:19   11            THE COURT:  Okay.  Thank you.

08:19   12            THE WITNESS:  You're welcome.

08:19   13   BY MS. HEINZ:

08:19   14   Q.   I'm looking at sort of the right-hand side of that

15   chart and I see a building that has on top of it "OTD."

08:19   16   A.   Yes.

08:19   17   Q.   What is this?

08:19   18   A.   That is Operational Technology Division.

08:19   19   Q.   Okay.  And is that where you work?

08:19   20   A.   It is.

08:19   21   Q.   And then down below where it says "OTD," there is

22   another building that says "FBI Office."

08:20   23        Tell us what that is.

08:20   24   A.   That would be the field office that is requesting the

25   intercept of the phone call.  There's a lawful court order

```
            1    to have the intercept.  In this instance, it could represent
            2    Los Angeles.
08:20       3    Q.   All right.  And I think that this chart also represents
            4    or has depicted two call channels.  Would you explain that
            5    to us?
08:20       6    A.   Yes.  So any call that you make is composed of two
            7    parts:  The top part is the "CDC," which is a call data
            8    sign, and things that are contained on the CDC are things
            9    that's -- if you think about your phone bill, you have the
           10    date of the call, the time of the call, the person called,
           11    the number making the call, a lotta different information.
           12    That's the data side.  There's two different channels on
           13    this.
08:20      14        So these are married up.  Whenever it hits the switch,
           15    they provision it, where one part goes through my building,
           16    over OTD at the top; the other part, which is called the
           17    "CCC" or the Call Content Channel, goes straight to the
           18    local office.  So the CCC is your voice, is your actual
           19    communications.  Okay?
08:21      20        These are married up -- they're split temporarily.  They
           21    come back together at the field office.  In this instance,
           22    it'll come back together at Los Angeles, at our equipment
           23    there.  Our equipment combines the information back and
           24    begins to record information.
08:21      25    Q.   And would you describe briefly the kinds of safeguards
```

1    or security measures within the FBI that prevents

2    unauthorized people from accessing these calls?

08:21    3    A.    Okay.  Same picture down there.  The FBI office, like

4    in Los Angeles, for instance, and all of the offices that

5    receive this information, there is a central CMP -- I'm

6    sorry -- gimme a minute -- "CMP" is the Central Monitoring

7    Plant.

08:22    8        So the Central Monitoring Plant has controlled access.

9    You have to have a badge that you "badge" in.  It's like a

10   plastic badge that gives you access.  And it gives you a

11   code to put in to enter this place.  And there're only a

12   handful of people who has *(sic)* authorization to go in, so

13   it's controlled access to this building.  That's where our

14   equipment is.

08:22    15       At the conclusion of that, um -- well, from that point,

16   at the Central Monitoring Plant, it's then piped into the

17   monitoring room.  It may be on the same floor, may be on a

18   second or third floor -- fifth floor, whatever.  And so,

19   that room where the people who monitor/listen to it --

20   there's controlled access -- *(verbatim.)*

08:22    21       *(Court reporter requests clarification for the*

22       *record.)*

08:22    23          THE WITNESS:  -- people that monitor the phone

24   call or listen to the phone call, can hear it.

08:22    25          There's controlled access to that, as well.  It's

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | not just free to anyone to listen to.  You have to also   |
|       | 2  | log-in, have a password to listen to a conversation.      |
| 08:23 | 3  | Q.   All right.  Let's talk -- I want to talk about -- take |
|       | 4  | sort of a sample phone call.  Okay?  So a phone call is    |
|       | 5  | initiated.  It's made.  It ends.  Okay?                   |
| 08:23 | 6  |     What happens there procedurally that protects the     |
|       | 7  | accuracy or integrity of that recording?                  |
| 08:23 | 8  | A.   Okay.  At the completion of the phone call -- it's   |
|       | 9  | called a termination of the phone call -- there's a       |
|       | 10 | comparison:  A verification of the phone call itself.  So  |
|       | 11 | the call is analyzed.                                     |
| 08:23 | 12 |     Say the call began here; the call ended here.        |
|       | 13 | Everything in between there, it is analyzed and it is gonna |
|       | 14 | be stored on the SANS material.  What's called a -- what  |
|       | 15 | happens:  You got a hash, H-A-S-H.  So when it's transferred |
|       | 16 | over, it says this is your recording, and it gives it a -- |
|       | 17 | does what's called a mathematical equation called an      |
|       | 18 | "algorithm."  It says this is the complete call from      |
|       | 19 | beginning to end, everything in between.  It is assigned to |
|       | 20 | that phone call, and it is sent over to the SANS, S-A-N-S, |
|       | 21 | which is story -- storage area network.                   |
| 08:24 | 22 |     So this number that is attached goes with that call,  |
|       | 23 | wherever it goes in the system.  Says, this is the call as |
|       | 24 | we received it from the phone company -- from beginning to |
|       | 25 | end, everything in between, this is it.  It's in our system. |

08:24   1        If anybody tries to tamper with the call, in any way

        2   alter it any type'a way, it will not have that HASH, which

        3   is also called a digital fingerprint.  So in our system it

        4   will be there.

08:24   5        And for an extra layer of authorization to say, yes,

        6   this is correct, we have another thing called a digital

        7   signature that verifies that the HASH or what you call the

        8   digital fingerprint is intact and has not been tampered

        9   with.

08:25  10   Q.   What happens to the phone call after this unique

       11   signature is given to it?

08:25  12   A.   Okay.

08:25  13   Q.   Is it -- where does it reside?

08:25  14   A.   Resides on the SANS, the Storage Area Network in our

       15   system.

08:25  16   Q.   In this process is something called a session

       17   identification number assigned to the call?

08:25  18   A.   Yes.

08:25  19   Q.   Okay.  And is that also sometimes called an SID?

08:25  20   A.   That's correct.

08:25  21   Q.   And were you asked to review certain cellular phone

       22   calls that were assigned SID numbers in this case?

08:25  23   A.   Yes, I was.

08:25  24   Q.   And did you conduct that review with the assistance of

       25   charts that set forth the SID number and the corresponding

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | government's exhibit number?                                        |
| 08:25 | 2  | A.   Yes, I did.                                                    |
| 08:25 | 3  | MS. HEINZ:  Please show the witness what has been                   |
|       | 4  | marked as Government's Exhibit 760 and 761.                         |
| 08:26 | 5  | *(Exhibits provided to the witness.)*                               |
| 08:26 | 6  | BY MS. HEINZ:                                                       |
| 08:26 | 7  | Q.   Do you recognize what has been marked as Government's          |
|       | 8  | Exhibits 760 and 761?                                               |
| 08:26 | 9  | A.   Yes, I do.                                                     |
| 08:26 | 10 | Q.   And are these the charts containing the session               |
|       | 11 | identification numbers, or SID numbers, for the telephone           |
|       | 12 | calls that you reviewed in this case?                               |
| 08:26 | 13 | A.   Yes, it is.                                                    |
| 08:26 | 14 | Q.   Okay.  And does Government's Exhibit 760 contain               |
|       | 15 | information about telephone calls on the Telephone No.              |
|       | 16 | (714)270-3532?                                                      |
| 08:26 | 17 | A.   Yes, it does.                                                  |
| 08:26 | 18 | Q.   And does government 761 contain information about              |
|       | 19 | telephone calls on the Telephone No. (714)757-7815?                 |
| 08:27 | 20 | A.   Yes, it does.                                                  |
| 08:27 | 21 | Q.   Okay.  And does each chart contain columns with an            |
|       | 22 | exhibit number and a corresponding session identification           |
|       | 23 | number or SID number?                                               |
| 08:27 | 24 | A.   Yes, it does.                                                  |
| 08:27 | 25 | Q.   And could you briefly explain how you conducted the            |

|        |    |                                                                     |
|--------|----|---------------------------------------------------------------------|
|        | 1  | review that you performed?                                          |
| 08:27  | 2  | A.   Yes.  As I was saying earlier, there's controlled              |
|        | 3  | access to our equipment.  I could not get it without an             |
|        | 4  | engineer to bring in and log into it.  So I sat down with an        |
|        | 5  | engineer that logged into the -- our system, and found each         |
|        | 6  | one of these telephone numbers that you will see, shortly --        |
|        | 7  | I assume.                                                           |
| 08:27  | 8  | Each one of the numbers were verified that the sig- --          |
|        | 9  | digital signature, which I spoke of to you earlier, the             |
|        | 10 | extra layer of authenticity, saying that the -- each one of         |
|        | 11 | these, uh, calls have not been tampered or altered and it           |
|        | 12 | was intact -- meaning, that the -- they had not been                |
|        | 13 | tampered or altered in anyway. *(Verbatim.)*                        |
| 08:28  | 14 | Q.   Okay.  So is -- what you're saying is, is that your            |
|        | 15 | review confirmed that there had been no change to the               |
|        | 16 | cellphone recordings that were received from the provider?          |
| 08:28  | 17 | A.   That is correct.                                               |
| 08:28  | 18 | Q.   Okay.  Looking again at what's been marked as                  |
|        | 19 | Government's Exhibit 760 and 761.  Do these charts also             |
|        | 20 | contain the date, time, and contact number for each of the          |
|        | 21 | listed calls?                                                       |
| 08:28  | 22 | A.   Yes, it does.                                                   |
| 08:28  | 23 | Q.   And have you reviewed that information?                         |
| 08:28  | 24 | A.   Yes, I have.                                                    |
| 08:28  | 25 | Q.   And is that information correctly represented on these         |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | two charts?                                                   |
| 08:28 | 2  | A.    Yes, it is.                                            |
| 08:28 | 3  |           MS. HEINZ:  Your Honor, at this time the           |
|       | 4  | government would move to admit Government's Exhibits 760 and |
|       | 5  | 761 into evidence, subject to a showing of relevance.       |
| 08:28 | 6  |           MS. CORRIGAN:  No objection.                       |
| 08:28 | 7  |           MR. LENGYEL-LEAHU:  No objection.                  |
| 08:28 | 8  |           THE COURT:  Each are received, Counsel.           |
| 08:28 | 9  |        *(Exhibit No. 760 and 761 received in evidence.)*     |
| 08:28 | 10 |           MS. HEINZ:  Thank you, Your Honor.                 |
| 08:28 | 11 |           THE COURT:  760, 761.                              |
| 08:28 | 12 |           MS. HEINZ:  Thank you, Your Honor.                 |
| 08:28 | 13 |        No further questions at this time.                    |
| 08:28 | 14 |           THE COURT:  Now, you had 762.  That was your      |
|       | 15 | diagram on the board.                                        |
| 08:29 | 16 |           MS. HEINZ:  Yes, Your Honor.  The government would |
|       | 17 | move to admit that for the record only.                      |
| 08:29 | 18 |           THE COURT:  Just for the record?                   |
| 08:29 | 19 |           MS. HEINZ:  Yes, Your Honor.                       |
| 08:29 | 20 |           MS. CORRIGAN:  No objection.                       |
| 08:29 | 21 |           THE COURT:  So that won't be going to the jury.   |
| 08:29 | 22 |           MS. HEINZ:  That's correct, Your Honor.           |
| 08:29 | 23 |           THE COURT:  Counsel?                               |
| 08:29 | 24 |           MR. LENGYEL-LEAHU:  No objection.                  |
| 08:29 | 25 |           MS. CORRIGAN:  No objection.                       |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:29 | 1 | THE COURT:  All right. |
| 08:29 | 2 | (To the jury:) For the record, that'll be received, |
| | 3 | but you won't be seeing this diagram back in the jury room. |
| | 4 | It won't be a piece of evidence that you'll actually look |
| | 5 | at.  You can see it here in court. |
| 08:29 | 6 | All right.  Thank you, Counsel. |
| 08:29 | 7 | And, Counsel, let's begin with Mr. Lengyel-Leahu. |
| 08:29 | 8 | MR. LENGYEL-LEAHU:  Pass, Your Honor.  Thank you. |
| 08:29 | 9 | THE COURT:  Let's turn to Ms. Corrigan. |
| 08:29 | 10 | MS. CORRIGAN:  I have no questions, Your Honor. |
| 08:29 | 11 | THE COURT:  All right.  Thank you. |
| 08:29 | 12 | Could I ask the gentleman to remain until the |
| | 13 | recess for just a moment in the hallway -- the witness. |
| 08:29 | 14 | MS. HEINZ:  Okay. |
| 08:29 | 15 | THE COURT:  Sir, if you would be kind enough to |
| | 16 | remain until the recess for a moment.  Thank you very much. |
| 08:29 | 17 | THE WITNESS:  You're welcome. |
| 08:29 | 18 | THE COURT:  You're not excused yet. |
| 08:29 | 19 | (Witness steps down.) |
| 08:29 | 20 | And the next witness, Counsel. |
| 08:30 | 21 | MR. NAM:  The United States calls Catherine |
| | 22 | Osborne. |
| 08:30 | 23 | **CATHERINE OSBORNE, CALLED BY THE GOVERNMENT, SWORN** |
| 08:30 | 24 | THE WITNESS:  I do. |
| 08:30 | 25 | THE COURT:  If you'd walk along the side of the |

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | jury railing, the entrance to the jury box is along the             |
|       | 2  | side.  It's closest to the wall.                                    |
| 08:30 | 3  | If you'd be seated, please.  And after you're                       |
|       | 4  | comfortably seated, would you face the jury; would you state        |
|       | 5  | your full name and spell your last name.                            |
| 08:30 | 6  | THE WITNESS:  Catherine Osborne, O-S-B-O-R-N-E.                      |
| 08:30 | 7  | THE COURT:  This would be direct examination by                     |
|       | 8  | the government.                                                      |
| 08:31 | 9  | MR. NAM:  Thank you, Your Honor.                                     |

**DIRECT EXAMINATION**

BY MR. NAM:

Q.   Ms. Osborne, what do you do for a living?

A.   I work as a bookkeeper and Human Resources manager for Pathway Staffing Incorporated.

Q.   Where is Pathway Staffing Incorporated located?

A.   In the City of Orange.

Q.   What kind of a company is Pathway Staffing Incorporated?

A.   We are a recruiting firm.

Q.   Do you recruit for other businesses?

A.   Correct.  Yes.

Q.   How long have you worked for Pathway Staffing Incorporated?

A.   I've worked there since August of 2012.

Q.   Could you briefly describe your key responsibilities at

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

24

| | | |
|---|---|---|
| | 1 | Pathway Staffing Incorporated? |
| 08:31 | 2 | A.   Yes.  I do all of the human resources for the company, |
| | 3 | and also I do the -- maintain the general ledger, do |
| | 4 | financial statements, review all checks issued, prepare |
| | 5 | monthly financial statements.  And I am also a custodian of |
| | 6 | records. |
| 08:32 | 7 | Q.   So you mentioned reviewing checks.  Do you review |
| | 8 | checks going out of the company and coming into the company? |
| 08:32 | 9 | A.   Yes.  Correct. |
| 08:32 | 10 | Q.   Did you have the same responsibilities at Pathway |
| | 11 | Staffing Incorporated in April and May of 2015? |
| 08:32 | 12 | A.   Yes, I did. |
| 08:32 | 13 | Q.   And are you familiar with the companies that Pathway |
| | 14 | Staffing Incorporated was in this business with in April and |
| | 15 | May of 2015? |
| 08:32 | 16 | A.   Yes, I am. |
| 08:32 | 17 | Q.   Do you know what your company's checks looked like in |
| | 18 | April and May of 2015? |
| 08:32 | 19 | A.   I do. |
| 08:32 | 20 | Q.   Which bank did you have your company checking account |
| | 21 | with in April and May of 2015? |
| 08:32 | 22 | A.   Citibank. |
| 08:32 | 23 | Q.   In April and May of 2015 was there an incident in which |
| | 24 | you had to reissue one of your company's checks? |
| 08:32 | 25 | A.   Yes.  We did. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:32 | 1 | Q.    Who was the intended recipient of the original check? |
| 08:32 | 2 | A.    It was a business called Purpose Driven Personnel. |
| 08:33 | 3 | Q.    Is that a company that Pathway Staffing had regular |
| | 4 | business relationship with?  *(Verbatim.)* |
| 08:33 | 5 | A.    Yes, we did. |
| 08:33 | 6 | Q.    And about how much, if you recall, was that original |
| | 7 | check for? |
| 08:33 | 8 | A.    Approximately $687. |
| 08:33 | 9 | Q.    And about when did your company issue that original |
| | 10 | check? |
| 08:33 | 11 | A.    The beginning of April 2015. |
| 08:33 | 12 | Q.    Did your company mail the check to Purpose Driven |
| | 13 | Personnel? |
| 08:33 | 14 | A.    Yes, we did. |
| 08:33 | 15 | Q.    Did your company have to mail another check to Purpose |
| | 16 | Driven Personnel for the same amount again? |
| 08:33 | 17 | A.    Yes, we did. |
| 08:33 | 18 | Q.    And approximately when was it? |
| 08:33 | 19 | A.    It was approximately the first week of June. |
| 08:33 | 20 | Q.    And was that new check meant to be a replacement for |
| | 21 | the original? |
| 08:34 | 22 | A.    Correct. |
| 08:34 | 23 | MR. NAM:  I'd like to ask that Exhibit 914-A be |
| | 24 | placed before the witness. |
| 08:34 | 25 | *(Exhibit provided to the witness.)* |

| | | |
|---|---|---|
| 08:34 | 1 | BY MR. NAM: |
| 08:34 | 2 | Q.   Do you recognize Exhibit 914-A? |
| 08:34 | 3 | A.   Yes.  This is a copy of our check. |
| 08:34 | 4 | Q.   When you say "our check," which check is it |
| | 5 | specifically? |
| 08:34 | 6 | A.   It is a copy of the check that we issued to Purpose |
| | 7 | Driven Personnel on April 4th, 2015. |
| 08:34 | 8 | MR. NAM:  Your Honor, at this time the government |
| | 9 | moves to admit Exhibit 914-A. |
| 08:34 | 10 | THE COURT:  Any objection, Counsel? |
| 08:34 | 11 | MS. CORRIGAN:  No, Your Honor. |
| 08:34 | 12 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 08:34 | 13 | THE COURT:  All right.  914-A is received. |
| 08:34 | 14 | *(Exhibit No. 914-A received in evidence.)* |
| 08:34 | 15 | *(Exhibit displayed.)* |
| 08:34 | 16 | BY MR. NAM: |
| 08:34 | 17 | Q.   I'm now showing you Exhibit 914-C.  You should see it |
| | 18 | in front of you on your screen. |
| 08:35 | 19 | *(Court reporter requests clarification for the* |
| | 20 | *record.)* |
| 08:35 | 21 | MR. NAM:  I'm sorry.  914-A.  I apologize. |
| 08:35 | 22 | BY MR. NAM: |
| 08:35 | 23 | Q.   It should be in front of you on your screen. |
| 08:35 | 24 | In Exhibit 914-A is your company's name and address on |
| | 25 | the top left portion of the check? |

| | | |
|---|---|---|
| 08:35 | 1 | A.   Yes, that is where the address would be.  But it's |
| | 2 | blacked out partially on this exhibit. |
| 08:35 | 3 | MR. NAM:  Your Honor, the government has, with |
| | 4 | consultation with the defense, grayed out portions that are |
| | 5 | more private to the company. |
| 08:35 | 6 | THE COURT:  All right. |
| 08:35 | 7 | *(To the jury:)* So, ladies and gentlemen, you should |
| | 8 | know that probably certain numbers on the check have been |
| | 9 | blurred out or grayed out so that there are no personal |
| | 10 | account information being shown to you. |
| 08:35 | 11 | But you'll probably have the last four numbers, for |
| | 12 | instance, on the check. |
| 08:35 | 13 | MR. NAM:  That's correct, Your Honor. |
| 08:35 | 14 | THE COURT:  And some of the other personal |
| | 15 | information. |
| 08:36 | 16 | MR. NAM:  That's correct, Your Honor. |
| 08:36 | 17 | THE COURT:  You may display it. |
| 08:36 | 18 | MR. NAM:  With this witness and other witnesses, |
| | 19 | as well? |
| 08:36 | 20 | THE COURT:  You may display it. |
| 08:36 | 21 | MR. NAM:  Thank you, Your Honor. |
| 08:36 | 22 | BY MR. NAM: |
| 08:36 | 23 | Q.   Toward the bottom right portion, does that indicate the |
| | 24 | intended recipient of this check? |
| 08:36 | 25 | A.   Um, in the bottom -- |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

28

| | | |
|---|---|---|
| 08:36 | 1 | Q.    Apologize.  Let me rephrase. |
| 08:36 | 2 | A.    -- on the left -- |
| 08:36 | 3 | Q.    I withdraw that question. |
| 08:36 | 4 | In the bottom left portion of the check, do you see the, |
| | 5 | uh -- is the intended recipient of the check listed there? |
| 08:36 | 6 | A.    Yes, that's correct. |
| 08:36 | 7 | Q.    And -- and the -- what was the name of the intended |
| | 8 | recipient? |
| 08:36 | 9 | A.    Purpose Driven Personnel. |
| 08:36 | 10 | Q.    Do you see a signature on the bottom right portion of |
| | 11 | the check? |
| 08:36 | 12 | A.    Yes.  That -- |
| 08:36 | 13 | Q.    What -- |
| 08:36 | 14 | A.    -- is the signature of our business owner. |
| 08:36 | 15 | Q.    And what is the business owner's name? |
| 08:36 | 16 | A.    David Osborne. |
| 08:36 | 17 | MR. NAM:  If you could display the back portion, a |
| | 18 | copy of the back portion of the check. |
| 08:37 | 19 | *(Exhibit displayed.)* |
| 08:37 | 20 | BY MR. NAM: |
| 08:37 | 21 | Q.    To the right of what is being displayed, do you see |
| | 22 | what appears to be a signature or someone's initials? |
| 08:37 | 23 | A.    Yes. |
| 08:37 | 24 | Q.    Is that something that you recognize? |
| 08:37 | 25 | A.    No, it is not. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:37 | 1 | Q.   Do you know a person named Nader Elhuzayel? |
| 08:37 | 2 | A.   I do not. |
| 08:37 | 3 | Q.   Do you know a person named Husam Elhuzayel? |
| 08:37 | 4 | A.   No, I do not. |
| 08:37 | 5 | Q.   Do you know a person named Falak Elhuzayel? |
| 08:37 | 6 | A.   I do not. |
| 08:37 | 7 | Q.   Did you give any of the individuals whose names I just |
| | 8 | mentioned permission to deposit this check into one of |
| | 9 | Nader Elhuzayel's bank accounts? |
| 08:37 | 10 | A.   I did not.  And our business did not. |
| 08:37 | 11 | MR. NAM:  No further questions, Your Honor. |
| 08:37 | 12 | THE COURT:  All right. |
| 08:37 | 13 | Mr. Lengyel-Leahu, do you have questions on |
| | 14 | cross-examination? |
| 08:37 | 15 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 08:37 | 16 | THE COURT:  All right.  Ms. Corrigan, do you have |
| | 17 | questions on cross-examination? |
| 08:38 | 18 | MS. CORRIGAN:  No, Your Honor.  It doesn't pertain |
| | 19 | to my client. |
| 08:38 | 20 | THE COURT:  Yeah. |
| 08:38 | 21 | I'm keeping all of the witnesses on call.  Does |
| | 22 | this witness need to be kept on call? |
| 08:38 | 23 | MS. CORRIGAN:  No. |
| 08:38 | 24 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 08:38 | 25 | MS. HEINZ:  No, Your Honor. |

| | | |
|---|---|---|
| 08:38 | 1 | MR. NAM:  No. |
| 08:38 | 2 | MS. HEINZ:  I'm sorry. |
| 08:38 | 3 | THE COURT:  All right. |
| 08:38 | 4 | *(To the witness:)* We're going to excuse you from |
| | 5 | these proceedings.  Thank you very much.  You do not have to |
| | 6 | return to court. |
| 08:38 | 7 | THE WITNESS:  Okay. |
| 08:38 | 8 | *(Witness excused.)* |
| 08:38 | 9 | THE COURT:  Counsel, if you'd like to call your |
| | 10 | next witness, please. |
| 08:38 | 11 | MR. NAM:  Yes, Your Honor.  The United States |
| | 12 | calls -- just a moment, Your Honor. |
| 08:38 | 13 | The United States calls Paul Olarsch. |
| 08:38 | 14 | THE COURT:  Would you step between the double |
| | 15 | doors and raise your right hand, please. |
| 08:39 | 16 | **PAUL OLARSCH, CALLED BY THE GOVERNMENT, SWORN** |
| 08:39 | 17 | THE WITNESS:  I do. |
| 08:39 | 18 | THE COURT:  Thank you, sir.  If you'd be seated, |
| | 19 | please. |
| 08:39 | 20 | And would you face the jury and state your full |
| | 21 | name and spell your last. |
| 08:39 | 22 | THE WITNESS:  Paul Louis Olarsch O-L-A-R-S-C-H. |
| 08:39 | 23 | THE COURT:  Thank You.  This would be direct |
| | 24 | examination by the government. |
| 08:39 | 25 | *(Court reporter requests clarification for the* |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

31

|         |    |                                                          |
|---------|----|----------------------------------------------------------|
|         | 1  | *record.)*                                               |
| 08:39   | 2  | THE WITNESS:  L-O-U-I-S.                                  |
| 08:39   | 3  | THE COURT:  Thank you.                                    |
| 08:39   | 4  | **DIRECT EXAMINATION**                                    |
| 08:39   | 5  | BY MR. NAM:                                               |
| 08:39   | 6  | Q.   Mr. Olarsch, what do you do for a living?            |
| 08:39   | 7  | A.   I'm a manager of a supermarket in World Food -- in  |
|         | 8  | San Diego, World Foods Supermarket.                      |
| 08:39   | 9  | Q.   Is World Foods Supermarket run by a corporation?    |
| 08:40   | 10 | A.   Yes.                                                |
| 08:40   | 11 | Q.   What is the name of that corporation?               |
| 08:40   | 12 | A.   Tran Truong Brothers Incorporated.                  |
| 08:40   | 13 | Q.   Is that also based in San Diego?                    |
| 08:40   | 14 | A.   Yes.                                                |
| 08:40   | 15 | Q.   Since when have you worked for World Foods Supermarket? |
| 08:40   | 16 | A.   Since July of 2004.                                 |
| 08:40   | 17 | Q.   Could you briefly describe your key responsibilities as |
|         | 18 | a manager at World Foods Supermarket?                    |
| 08:40   | 19 | A.   I'm responsible for all operations of the store.  That |
|         | 20 | would be sales, inventory, human resources, accounting, real |
|         | 21 | estate -- everything.                                    |
| 08:40   | 22 | Q.   In your responsibility over accounting, does that   |
|         | 23 | include managing payments going in, out -- going -- going |
|         | 24 | out of the company and coming into the company?          |
| 08:40   | 25 | A.   Yes, that's correct.                                |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 293   Filed 03/31/17   Page 32 of 144   Page ID #:4508
8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

32

| | | |
|---|---|---|
| 08:40 | 1 | Q.    And did your -- did you have the same responsibilities |
| | 2 | at your company in April and May of 2015? |
| 08:40 | 3 | A.    Yes. |
| 08:40 | 4 | Q.    Do you know what your company's checks looked like in |
| | 5 | April and May of 2015? |
| 08:41 | 6 | A.    Yes. |
| 08:41 | 7 | Q.    And are you familiar with the company's that World |
| | 8 | Foods Supermarket was in business relationship with at that |
| | 9 | time? |
| 08:41 | 10 | A.    Yes. |
| 08:41 | 11 | Q.    Was Cali Food Company one of them? |
| 08:41 | 12 | A.    Yes. |
| 08:41 | 13 | Q.    In April and May of 2015, was there an incident in |
| | 14 | which you had to reissue one of your company's checks to |
| | 15 | Cali Food company? |
| 08:41 | 16 | A.    Yes. |
| 08:41 | 17 | Q.    About how much was the check for? |
| 08:41 | 18 | A.    I don't remember exactly. |
| 08:41 | 19 | Q.    Do you remember what the check was intended to be |
| | 20 | about?  What -- what -- |
| 08:41 | 21 | MR. NAM:  I withdraw that question, Your Honor. |
| 08:41 | 22 | BY MR. NAM: |
| 08:41 | 23 | Q.    What was the check for? |
| 08:41 | 24 | A.    The check was payment for delivery of merchandise to my |
| | 25 | store. |

| | | |
|---|---|---|
| 08:42 | 1 | Q.    And about when did your company process that check? |
| 08:42 | 2 | A.    Without looking at it, I can't remember the exact date. |
| 08:42 | 3 | Q.    Did you -- did your com- -- do you recall delivering |
| | 4 | that check to Cali Food Company? |
| 08:42 | 5 | A.    Yes. |
| 08:42 | 6 | Q.    Did -- and was that check delivered to the Cali Food |
| | 7 | Company? |
| 08:42 | 8 | A.    Yes. |
| 08:42 | 9 | Q.    And how did the delivery occur? |
| 08:42 | 10 | A.    The driver who delivers the merchandise to our store |
| | 11 | comes to the lottery counter at the front of my store in |
| | 12 | San Diego, requests a check.  The manager on duty would hand |
| | 13 | them that check, and they would sign for it, and date, and |
| | 14 | then take it. |
| 08:42 | 15 | Q.    As part of your managerial responsibilities at World |
| | 16 | Foods Supermarket, are you also custodian of records for the |
| | 17 | supermarket? |
| 08:42 | 18 | A.    Yes, that's correct. |
| 08:42 | 19 | Q.    And before testifying today, did you review your |
| | 20 | business records relating to the check that we've been |
| | 21 | talking about? |
| 08:43 | 22 | A.    Yes, I did. |
| 08:43 | 23 | Q.    Did you see if there was a record of the driver from |
| | 24 | Cali Food Company, uh, initialing receipt of the check at |
| | 25 | your supermarket counter? |

| 08:43 | 1 | A.    Yes. |
|---|---|---|
| 08:43 | 2 | Q.    Did you have to reissue the check that we've been |
| | 3 | talking about, uh, for the same amount to Cali Food Company? |
| 08:43 | 4 | A.    Yes. |
| 08:43 | 5 | Q.    And when was that replacement check, uh, made to the -- |
| | 6 | to Cali Food Company? |
| 08:43 | 7 | A.    Again, without looking at it, I don't remember the |
| | 8 | exact date. |
| 08:43 | 9 | Q.    Would it be fair to say it was sometime after? |
| 08:43 | 10 | A.    Within a month or two months, yes. |
| 08:43 | 11 | Q.    Why did you have to issue a replacement check to Cali |
| | 12 | Food Company in Spring of 2014 *(sic)*? |
| 08:44 | 13 | A.    The driver came to our store and presented us with a |
| | 14 | police report from Garden Grove Police Department saying |
| | 15 | that, um, the checks were -- |
| 08:44 | 16 |          MR. LENGYEL-LEAHU:  Your Honor? |
| 08:44 | 17 |          THE WITNESS:  -- stolen. |
| 08:44 | 18 |          MR. LENGYEL-LEAHU:  Calls for hearsay. |
| 08:44 | 19 |          THE COURT:  It's contemporaneous.  In other words, |
| | 20 | it shows his action.  So let me explain to the jury. |
| 08:44 | 21 |          *(To the jury:)* The conversation about the police |
| | 22 | making a statement about a report is hearsay.  We don't have |
| | 23 | that officer here to say that he did that. |
| 08:44 | 24 |          But there's -- the exception to the hearsay rule is |
| | 25 | that, if hearsay is received by this witness, it shows what |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

35

| | | |
|---|---|---|
| | 1 | action he took.  In other words, his statement is, *"I then* |
| | 2 | *reissued another check."*  You can take that into account. |
| | 3 | He reissued another check. |
| 08:44 | 4 | But the conversation about what that police report |
| | 5 | might contain or what it said is hearsay. |
| 08:44 | 6 | Although, we haven't gotten into that, Counsel, so |
| | 7 | there's the exception. |
| 08:45 | 8 | MR. LENGYEL-LEAHU:  I -- I just thought the |
| | 9 | witness was about to tell us what the police -- |
| 08:45 | 10 | THE COURT:  He wasn't.  That's why it's not |
| | 11 | hearsay.  But I'm being cautious in explaining or doing my |
| | 12 | humble best to explain that exception to the jury. |
| 08:45 | 13 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 08:45 | 14 | THE COURT:  So, so far, Counsel, it's not even |
| | 15 | hearsay. |
| 08:45 | 16 | MR. LENGYEL-LEAHU:  Thank you. |
| 08:45 | 17 | MR. NAM:  Thank you, Your Honor. |
| 08:45 | 18 | May I proceed? |
| 08:45 | 19 | THE COURT:  Please. |
| 08:45 | 20 | BY MR. NAM: |
| 08:45 | 21 | Q.   Mr. Olarsch, you could not recall the specific date of |
| | 22 | the issuance of the checks but, uh, do you recall about |
| | 23 | when -- uh, what time of the year that we're talking about? |
| 08:45 | 24 | A.   I believe it was May of last year. |
| 08:45 | 25 | Q.   Would it refresh your recollection if you saw one of |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | the checks in question?                                  |
| 08:45 | 2  | A.   Yes, it would.                                      |
| 08:45 | 3  |        MR. NAM:  I'd like to ask that Exhibit 924-A be   |
|       | 4  | placed before the witness.                               |
| 08:45 | 5  |     *(Exhibits provided to the witness.)*                |
| 08:46 | 6  | BY MR. NAM:                                              |
| 08:46 | 7  | Q.   Mr. Olarsch, do you recognize Exhibit 924-A?        |
| 08:46 | 8  | A.   Yes.                                                |
| 08:46 | 9  | Q.   We've talked about at least two different checks, uh, |
|       | 10 | which -- what does Exhibit 924 -- what is Exhibit 924-A? |
| 08:46 | 11 | A.   It's a copy of a check issued from my store to my   |
|       | 12 | vendor Cali Food Company.                                |
| 08:46 | 13 | Q.   Is this -- is this the first one or the second one? |
| 08:46 | 14 | A.   This is the first check.                            |
| 08:46 | 15 |        MR. NAM:  Your Honor, at this time the government  |
|       | 16 | moves to admit Exhibit 924-A.                            |
| 08:46 | 17 |        MS. CORRIGAN:  No objection.                      |
| 08:46 | 18 |        MR. LENGYEL-LEAHU:  No objection.                 |
| 08:46 | 19 |        THE COURT:  924-A is received, Counsel.           |
| 08:46 | 20 |     *(Exhibit No. 924-A received in evidence.)*         |
| 08:46 | 21 |     *(Exhibit displayed.)*                               |
| 08:46 | 22 | BY MR. NAM:                                              |
| 08:46 | 23 | Q.   Now, showing you on the screen Exhibit 924-A.       |
| 08:47 | 24 |    Is your company's business information listed on the top |
|       | 25 | left portion of this check?                              |

08:47  1   A.   Yes, it is.

08:47  2   Q.   So the top portion shows the name of the corporation;

       3   is that right?

08:47  4   A.   That's correct.

08:47  5   Q.   And does it also indicate the number of your

       6   supermarket below?

08:47  7   A.   Yes.

08:47  8   Q.   And what amount does this show?

08:47  9   A.   $570.

08:47  10  Q.   And what date does it show as the initial issuance

       11  date?

08:47  12  A.   It's a little blurry on my screen.  It appears to be

       13  2/16/2015.

08:47  14  Q.   Do you recognize the numbers at the bottom of the

       15  check?

08:47  16  A.   Yes, I do.

08:47  17  Q.   Some of the numbers have been grayed out.  But do you

       18  recognize the remaining numbers as associated with your

       19  account?

08:48  20  A.   Yes.

08:48  21  Q.   Is there a signature at the bottom right corner of the

       22  check?

08:48  23  A.   Yes.

08:48  24  Q.   And who's signature is it?

08:48  25  A.   The name is San Tran.  He is an officer of the

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

38

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | business.                                                |
| 08:48 | 2  | Q.    And is that how most of your checks are issued:  With |
|       | 3  | San Tran's signature?                                    |
| 08:48 | 4  | A.    Yes.                                               |
| 08:48 | 5  | Q.    And does this check also indicate the recipient of the |
|       | 6  | check?                                                   |
| 08:48 | 7  | A.    Yes.                                               |
| 08:48 | 8  | Q.    And who was the recipient?                         |
| 08:48 | 9  | A.    Cali Food Company.                                 |
| 08:48 | 10 | Q.    And is it your testimony -- you mentioned a date of |
|       | 11 | May 2015.  Would that be the date -- the approximate date |
|       | 12 | when your replacement check was processed?               |
| 08:48 | 13 | A.    I believe that's what I was thinking.              |
| 08:48 | 14 | *(Court reporter requests clarification for the*         |
|       | 15 | *record.)*                                               |
| 08:48 | 16 |         THE WITNESS:  San, S-A-N.                        |
| 08:49 | 17 | BY MR. NAM:                                              |
| 08:49 | 18 | Q.    I'd like to direct your attention to the back side of |
|       | 19 | the check -- or copy of the back side of the check.      |
| 08:49 | 20 | *(Exhibit displayed.)*                                   |
| 08:49 | 21 | BY MR. NAM:                                              |
| 08:49 | 22 | Q.    Do you see what appears to be handwriting on the right |
|       | 23 | side of the screen?                                      |
| 08:49 | 24 | A.    Yes.                                               |
| 08:49 | 25 | Q.    Do you -- do you recognize the handwriting?        |

| | | |
|---|---|---|
| 08:49 | 1 | A.   No, I do not. |
| 08:49 | 2 | Q.   Does it appear to be a signature? |
| 08:49 | 3 | A.   It appears to be a signature, yes. |
| 08:49 | 4 | Q.   Do you recognize that signature -- what appears to be |
| | 5 | the signature? |
| 08:49 | 6 | A.   I do not. |
| 08:49 | 7 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Asked |
| | 8 | and answered. |
| 08:49 | 9 | THE COURT:  I'm sorry? |
| 08:49 | 10 | MR. LENGYEL-LEAHU:  Asked and answered. |
| 08:49 | 11 | THE COURT:  Overruled. |
| 08:49 | 12 | BY MR. NAM: |
| 08:49 | 13 | Q.   Did you give permission to anyone other than Cali Food |
| | 14 | Company to deposit or cash this check? |
| 08:49 | 15 | A.   No. |
| 08:49 | 16 | Q.   Do you know a person named Nader Elhuzayel? |
| 08:50 | 17 | A.   No. |
| 08:50 | 18 | Q.   Do you know a person named Husam Elhuzayel? |
| 08:50 | 19 | A.   No. |
| 08:50 | 20 | Q.   Do you know a person named Falak Elhuzayel? |
| 08:50 | 21 | A.   No. |
| 08:50 | 22 | Q.   Did you give any of them permission to deposit this |
| | 23 | check to one of Nader Elhuzayel's bank accounts? |
| 08:50 | 24 | A.   No. |
| 08:50 | 25 | MR. NAM:  No further questions, Your Honor. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

40

| | | |
|---|---|---|
| 08:50 | 1 | THE COURT:  Cross-examination, Mr. Lengyel-Leahu? |
| 08:50 | 2 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 08:50 | 3 | THE COURT:  Cross-examination, Ms. Corrigan? |
| 08:50 | 4 | MS. CORRIGAN:  No, Your Honor. |
| 08:50 | 5 | THE COURT:  Ms. Corrigan, would this be the |
| | 6 | appropriate place that the Court reminds the jury that the |
| | 7 | testimony concerning banking is not a charge that's being |
| | 8 | brought against your client? |
| 08:50 | 9 | MS. CORRIGAN:  That would be fantastic, |
| | 10 | Your Honor. |
| 08:50 | 11 | THE COURT:  All right. |
| 08:50 | 12 | *(To the jury:)* At different times I'll remind you |
| | 13 | along the way that certain evidence is presented, um, or |
| | 14 | being presented that may pertain to one or more defendants. |
| 08:50 | 15 | In this matter there's a charge that pertains to |
| | 16 | Mr. Elhuzayel only, concerning what's been referred to as |
| | 17 | "bank fraud."  And, therefore, this evidence is coming in, |
| | 18 | if it's appropriate, concerning that charge as to that |
| | 19 | defendant.  Mr. Badawi's not charged in that matter. |
| 08:51 | 20 | And you heard me also give a similar admonition to |
| | 21 | some evidence that came in that was allegedly related to |
| | 22 | Mr. Badawi but wasn't related to Mr. Elhuzayel. |
| 08:51 | 23 | So it's a reminder along the way because you don't |
| | 24 | have the charging document in front of you.  Okay? |
| 08:51 | 25 | MS. CORRIGAN:  Thank you, Your Honor. |

| | | |
|---|---|---|
| 08:51 | 1 | THE COURT:  Okay. |
| 08:51 | 2 | Now, other questions, Mr. Lengyel-Leahu? -- just to |
| | 3 | be certain. |
| 08:51 | 4 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 08:51 | 5 | THE COURT:  Ms. Corrigan? -- just to be certain. |
| 08:51 | 6 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 08:51 | 7 | THE COURT:  May the witness be excused, Counsel? |
| 08:51 | 8 | MR. NAM:  The United States calls -- |
| 08:51 | 9 | THE COURT:  No. |
| 08:51 | 10 | May the witness be excused? |
| 08:51 | 11 | MS. ELIOT:  Yes.  Yes, Your Honor.  Thank you. |
| 08:51 | 12 | MR. NAM:  No *(sic)*, Your Honor. |
| 08:51 | 13 | THE COURT:  *(To the witness:)* Thank you very much. |
| 08:51 | 14 | THE WITNESS:  Okay.  Thank you. |
| 08:51 | 15 | THE COURT:  You're excused from these proceedings. |
| 08:51 | 16 | THE WITNESS:  Okay. |
| 08:51 | 17 | *(Witness excused.)* |
| 08:51 | 18 | THE COURT:  And, Counsel, if you'd like to call |
| | 19 | your next witness, please. |
| 08:51 | 20 | MR. NAM:  Thank you, Your Honor. |
| 08:51 | 21 | The United States calls Mai Tran. |
| 08:52 | 22 | THE COURT:  Mai Tran. |
| 08:52 | 23 | Would you raise your right hand, please. |
| 08:52 | 24 | **MAI TRAN, CALLED BY THE GOVERNMENT, SWORN** |
| 08:52 | 25 | THE WITNESS:  Yes. |

| | | |
|---|---|---|
| 08:52 | 1 | THE COURT:  Thank you.  If you'd be kind enough to |
| | 2 | walk along the side of the jury railing.  If somebody could |
| | 3 | help her, please.  The entrance to the jury *(sic)* box is |
| | 4 | closest to the wall. |
| 08:52 | 5 | If you be so kind to be seated right here in the |
| | 6 | witness box.  After you're comfortably seated, would you |
| | 7 | face the jurors and state your full name, please. |
| 08:52 | 8 | THE WITNESS:  Mai Tran. |
| 08:52 | 9 | THE COURT:  And would you spell your last, please. |
| 08:53 | 10 | THE WITNESS:  T-R-A-N. |
| 08:53 | 11 | THE COURT:  All right. |
| 08:53 | 12 | Direct examination, please, by the government. |
| 08:53 | 13 | MR. NAM:  Thank you, Your Honor. |
| 08:53 | 14 | **DIRECT EXAMINATION** |
| 08:53 | 15 | BY MR. NAM: |
| 08:53 | 16 | Q.   Ms. Tran, what do you do for a living? |
| 08:53 | 17 | A.   I have a business. |
| 08:53 | 18 | Q.   What kind of a business is it? |
| 08:53 | 19 | A.   Restaurant. |
| 08:53 | 20 | Q.   And where is this restaurant business located? |
| 08:53 | 21 | A.   Redlands. |
| 08:53 | 22 | Q.   Are you an owner of the restaurant? |
| 08:53 | 23 | A.   One of them, yeah. |
| 08:53 | 24 | Q.   How many owners are there? |
| 08:53 | 25 | A.   Three. |

**DEBBIE GALE, U.S. COURT REPORTER**

| 08:53 | 1  | Q.   And who are the other owners? |
| 08:53 | 2  | A.   My husband and my husband nephew. *(Verbatim.)* |
| 08:53 | 3  | Q.   What is the name of the restaurant that you run? |
| 08:53 | 4  | A.   Noodle 21. |
| 08:53 | 5  | Q.   What kind of a restaurant is it? |
| 08:53 | 6  | A.   Asian. |
| 08:53 | 7  | Q.   And noodles? |
| 08:53 | 8  | A.   Yes. |
| 08:53 | 9  | Q.   How long have you run your restaurant business? |
| 08:53 | 10 | A.   Almost six years now. |
| 08:53 | 11 | Q.   Among the three owners, who handles payments coming in |
|       | 12 | and going out of the restaurant? |
| 08:54 | 13 | A.   I am. *(Verbatim.)* |
| 08:54 | 14 | Q.   Was your restaurant open for business and in, uh -- in |
|       | 15 | April and May of 2015? |
| 08:54 | 16 | A.   Yes. |
| 08:54 | 17 | Q.   Were there payments going out of the business in April |
|       | 18 | and May of 2015? |
| 08:54 | 19 | A.   Yes. |
| 08:54 | 20 | Q.   And were there payments coming in, as well? |
| 08:54 | 21 | A.   Yes. |
| 08:54 | 22 | Q.   In April and May of 2015, uh, were you also at that |
|       | 23 | time in charge of payments for your restaurant? |
| 08:54 | 24 | A.   Yes. |
| 08:54 | 25 | Q.   Did that include writing checks on behalf of your |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | restaurant?                                                   |
| 08:54 | 2  | A.   Yes.                                                     |
| 08:54 | 3  | Q.   Do you know what your restaurants checks looked like in |
|       | 4  | April and May of 2015?                                        |
| 08:54 | 5  | A.   Yes.                                                     |
| 08:54 | 6  | Q.   Are you familiar with the companies that Noodle 21 was  |
|       | 7  | in business relationship with at that time? *(Verbatim.)*    |
| 08:55 | 8  | A.   Can you say again?                                       |
| 08:55 | 9  | Q.   Sure.  Are you familiar --                              |
| 08:55 | 10 |       MR. NAM:  I'll rephrase the question, Your Honor.      |
| 08:55 | 11 | BY MR. NAM:                                                   |
| 08:55 | 12 | Q.   Do you remember the companies that Noodle 21 was in     |
|       | 13 | business relationship with in April and May 2015?            |
|       | 14 | *(Verbatim.)*                                                |
| 08:55 | 15 | A.   Yes.                                                     |
| 08:55 | 16 | Q.   Was Cali Food Company one of them?                      |
| 08:55 | 17 | A.   Yes.                                                     |
| 08:55 | 18 | Q.   And what type of business relationship was it?          |
| 08:55 | 19 | A.   They delivered noodles.                                  |
| 08:55 | 20 | Q.   Was it primarily a company -- Cali Food Company         |
|       | 21 | delivering noodles and you making payment for those noodles? |
| 08:55 | 22 | A.   Yes.                                                     |
| 08:55 | 23 | Q.   In about April 2015 was there an incident in which you  |
|       | 24 | had to write a replacement check for one of your payments to |
|       | 25 | Cali Food company?                                            |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

45

| | | |
|---|---|---|
| 08:56 | 1 | A.   Yes. |
| 08:56 | 2 | Q.   Do you recall how much the check was for? |
| 08:56 | 3 | A.   I think, was like 300-something -- 55 or 65. |
| 08:56 | 4 | Q.   And about when did you initially write that check? |
| 08:56 | 5 | A.   I wrote the check on, I think, February 25th, 2015. |
| 08:56 | 6 | Q.   Did you mail that check to Cali Food -- |
| 08:56 | 7 | A.   No. |
| 08:56 | 8 | Q.   -- Company? |
| 08:56 | 9 | A.   No. |
| 08:56 | 10 | Q.   How did you deliver that check? |
| 08:56 | 11 | A.   When they deliver, I give it -- the check to the guy. |
| 08:56 | 12 | THE COURT:  I'm sorry.  Gave the check to who? |
| 08:56 | 13 | THE WITNESS:  The guy who deliver. |
| 08:56 | 14 | THE COURT:  Okay. |
| 08:56 | 15 | BY MR. NAM: |
| 08:56 | 16 | Q.   Was that the primary method of payment -- |
| 08:56 | 17 | A.   Yes. |
| 08:56 | 18 | Q.   -- to Cali Food Company? |
| 08:56 | 19 | A.   Yes. |
| 08:56 | 20 | Q.   They deliver you noodles and whoever's doing the |
| | 21 | delivery picks up your check? |
| 08:56 | 22 | A.   Yes. |
| 08:56 | 23 | Q.   Do you remember the name of the driver? |
| 08:56 | 24 | A.   Uh, it's Hung. |
| 08:57 | 25 | Q.   Hung? |

| | | |
|---|---|---|
| 08:57 | 1 | *(Court reporter requests clarification for the* |
| | 2 | *record.)* |
| 08:57 | 3 | THE COURT:  Can we get the spelling of that, |
| | 4 | Counsel? |
| 08:57 | 5 | THE WITNESS:  H-U-N-G. |
| 08:57 | 6 | THE COURT:  Thank you. |
| 08:57 | 7 | BY MR. NAM: |
| 08:57 | 8 | Q.   You testified just now that you had to write a |
| | 9 | replacement check.  Was that -- why did you have to write a |
| | 10 | replacement check to Cali Food Company? |
| 08:57 | 11 | A.   Because -- |
| 08:57 | 12 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls |
| | 13 | for hearsay and speculation. |
| 08:57 | 14 | MR. NAM:  Your Honor -- |
| 08:57 | 15 | THE COURT:  Overruled. |
| 08:57 | 16 | It shows the action that the party took in relation |
| | 17 | to the information that's being conveyed to her.  That's not |
| | 18 | hearsay. |
| 08:57 | 19 | Counsel. |
| 08:57 | 20 | MR. NAM:  Thank you, Your Honor. |
| 08:57 | 21 | BY MR. NAM: |
| 08:57 | 22 | Q.   I'll repeat the question, Ms. Tran. |
| 08:57 | 23 | THE COURT:  I'm sorry.  It's the exception to the |
| | 24 | hearsay rule, anyway. |
| 08:57 | 25 | Thank you, Counsel. |

08:57    1    BY MR. NAM:

08:57    2    Q.   Why did you have to write a replacement check for -- to

         3    Cali Food Company?

08:57    4    A.   Because he lost the check.

08:57    5    Q.   And how do you know that he lost the check?

08:58    6    A.   He call us.

08:58    7    Q.   And when you say "he," are you referring to Hung?

08:58    8    A.   Hung, yes.

08:58    9         MR. LENGYEL-LEAHU:   Your Honor, our objection's

        10    hearsay.

08:58   11         THE COURT:   Overruled.

08:58   12         MR. NAM:   Your Honor, the government'd also submit

        13    that the hearsay exception of the effect on the listener

        14    would also apply here.

08:58   15         THE COURT:   Thank you.

08:58   16    BY MR. NAM:

08:58   17    Q.   So when did he tell you that, uh, he had lost the

        18    check?

08:58   19    A.   I think was on 20 -- two days after or -- I don't

        20    remember exactly.

08:58   21    Q.   So would it be fair to say it was few days *(verbatim)*

        22    after you had made the initial payment to him --

08:58   23    A.   Yeah, yes.

08:58   24    Q.   -- when he came by that he told you that the check was

        25    lost?

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:58 | 1 | A.    Two day after I wrote the check.  *(Verbatim.)* |
| 08:58 | 2 | Q.    I'm now showing you what has been marked as |
| | 3 | Exhibit 927-A. |
| 08:59 | 4 | A.    Sorry.  Can I have my glasses? |
| 08:59 | 5 | Q.    Where do you have your glasses? |
| 08:59 | 6 | A.    In my purse. |
| 08:59 | 7 | MR. NAM:  Your Honor, may Special Agents -- uh, |
| | 8 | one of our case agents bring the glasses? |
| 08:59 | 9 | THE COURT:  Certainly. |
| 08:59 | 10 | MR. NAM:  May I approach? |
| 08:59 | 11 | THE COURT:  You may. |
| 08:59 | 12 | *(Exhibit provided to the witness.)* |
| 09:00 | 13 | THE WITNESS:  Okay. |
| 09:00 | 14 | BY MR. NAM: |
| 09:00 | 15 | Q.    Do you recognize Exhibit 927-A? |
| 09:00 | 16 | A.    Okay.  Can you repeat?  What is that? |
| 09:00 | 17 | Q.    Um, the -- Ms. Tran -- |
| 09:00 | 18 | A.    Yes. |
| 09:00 | 19 | Q.    -- what you're holding is -- has been marked by the |
| | 20 | government as Exhibit 927-A. |
| 09:00 | 21 | Do you recognize what is inside that folder that you're |
| | 22 | looking at? |
| 09:00 | 23 | A.    Yes. |
| 09:00 | 24 | Q.    What is Exhibit 927-A? |
| 09:00 | 25 | A.    Uh, was a check.  I wrote it to Cali Food. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:00 | 1 | Q.   Is this a copy of one of your checks? |
| 09:00 | 2 | A.   Yes. |
| 09:00 | 3 | Q.   And you just testified that you had to write a |
| | 4 | replacement check. |
| 09:00 | 5 | Is 927-A your initial check -- a copy of your initial |
| | 6 | check or a replacement check, second check? |
| 09:00 | 7 | A.   No.  A copy of the first check, yes. |
| 09:01 | 8 | MR. NAM:  Your Honor, at this time the government |
| | 9 | moves to admit Exhibit 927-A. |
| 09:01 | 10 | MS. CORRIGAN:  No objection. |
| 09:01 | 11 | MR. LENGYEL-LEAHU:  Objection *(sic)*. |
| 09:01 | 12 | THE COURT:  927-A is received. |
| 09:01 | 13 | *(Court reporter requests clarification for the* |
| | 14 | *record.)* |
| 09:01 | 15 | MR. LENGYEL-LEAHU:  "No objection."  I'm sorry. |
| 09:01 | 16 | *(Exhibit No. 927-A received in evidence.)* |
| 09:01 | 17 | BY MR. NAM: |
| 09:01 | 18 | Q.   Ms. Tran, I'm now showing you Exhibit 927-A on your |
| | 19 | screen.  And it's being expanded. |
| 09:01 | 20 | *(Exhibit displayed.)* |
| 09:01 | 21 | BY MR. NAM: |
| 09:01 | 22 | Q.   Does the left -- generally, left portion of the check |
| | 23 | indicate the name of your company? |
| 09:01 | 24 | A.   Yes. |
| 09:01 | 25 | Q.   And the location where your company is? |

| | | |
|---|---|---|
| 09:01 | 1 | A.   Uh-huh, yes. |
| 09:01 | 2 | Q.   Uh, does it also indicate the name of your bank? |
| 09:01 | 3 | A.   *(No response.)* |
| 09:01 | 4 | Q.   Does, uh -- does this check indicate the name of the |
| | 5 | bank, uh, that you had checking account with? *(Verbatim.)* |
| 09:01 | 6 | A.   Yes. |
| 09:01 | 7 | Q.   Okay.  And what is the name of that bank? |
| 09:01 | 8 | A.   Chase. |
| 09:01 | 9 | Q.   Do you recognize the numbers that are below, portions |
| | 10 | of which have been grayed out -- but do you recognize the |
| | 11 | numbers below as related to your account? |
| 09:02 | 12 | A.   Yes. |
| 09:02 | 13 | Q.   When was this check written? |
| 09:02 | 14 | A.   Excuse me? |
| 09:02 | 15 | Q.   When -- when does -- when was this check written?  What |
| | 16 | is the date on this check? |
| 09:02 | 17 | A.   Oh.  It's February 25th. |
| 09:02 | 18 | Q.   Is what's written on this check your handwriting? |
| 09:02 | 19 | A.   Yes. |
| 09:02 | 20 | Q.   Did you write the -- did you write everything on this |
| | 21 | check? |
| 09:02 | 22 | A.   No. |
| 09:02 | 23 | Q.   What's at the bottom right corner, um -- do you see |
| | 24 | what appears to be a signature?  Bottom right corner. |
| 09:02 | 25 | A.   Uh-huh.  Yes. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

51

| | | |
|---|---|---|
| 09:02 | 1 | Q.   Is that your signature? |
| 09:02 | 2 | A.   Yes. |
| 09:02 | 3 | Q.   Okay.  You just testified that not everything on this |
| | 4 | check is in your handwriting. |
| 09:02 | 5 | Could you, uh -- the screen that is in front of you -- |
| | 6 | the monitor that is in front of you is a touch-screen |
| | 7 | monitor.  So if you pressed hard, you would be able to make |
| | 8 | a colored -- you can make circles or any kind of a mark. |
| 09:03 | 9 | Just pressing hard with your finger, would you please |
| | 10 | circle the area where, uh, it doesn't -- it does not |
| | 11 | represent your own handwriting. |
| 09:03 | 12 | Is it working? |
| 09:03 | 13 | A.   No. |
| 09:03 | 14 | Q.   May I try? |
| 09:03 | 15 | A.   Yeah. |
| 09:03 | 16 | Q.   *(Indicates.)* |
| 09:03 | 17 | A.   Yeah. |
| 09:03 | 18 | Q.   Does that portion represent the part of the check that |
| | 19 | is not your handwriting? |
| 09:03 | 20 | A.   Uh-huh, yes. |
| 09:03 | 21 | Q.   Was that handwriting there on the check when you were |
| | 22 | writing this check initially? |
| 09:03 | 23 | A.   Can you say again? |
| 09:04 | 24 | Q.   Was that circled portion there on this check when you |
| | 25 | first wrote this check? |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:04 | 1 | A.   No. |
| 09:04 | 2 | Q.   Does it appear to have been added onto the check after |
| | 3 | you wrote it? |
| 09:04 | 4 | A.   Yes. |
| 09:04 | 5 | Q.   Would that be after you gave it to Hung, the driver? |
| 09:04 | 6 | A.   Yes. |
| 09:04 | 7 | Q.   Is this a check that you learned was stolen from |
| | 8 | Mr. Hung? |
| 09:04 | 9 | A.   Yes. |
| 09:04 | 10 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls |
| | 11 | for hearsay.  Testimony was he lost... |
| 09:04 | 12 | THE COURT:  Sustained. |
| 09:04 | 13 | She used the word "lost," Counsel. |
| 09:04 | 14 | BY MR. NAM: |
| 09:04 | 15 | Q.   Uh, is this the -- is this the check that you had to |
| | 16 | replace? |
| 09:04 | 17 | A.   Yes. |
| 09:04 | 18 | Q.   When did you -- and was -- did you replace a check -- |
| | 19 | is it your testimony that you replaced the check after you |
| | 20 | learned that the, uh -- this check was lost? |
| 09:04 | 21 | A.   Yes. |
| 09:05 | 22 | Q.   Did you, uh -- I'd like to direct your attention to the |
| | 23 | back side -- a copy of what would be the back side of this |
| | 24 | check. |
| 09:05 | 25 | *(Exhibit displayed.)* |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

53

| | | |
|---|---|---|
| 09:05 | 1 | BY MR. NAM: |
| 09:05 | 2 | Q.   Is there a handwriting on the back side of this check? |
| 09:05 | 3 | A.   No. |
| 09:05 | 4 | Q.   Do you see, uh, a mark -- do you see any marks that |
| | 5 | appears *(verbatim)* to be handwriting on the left corner -- |
| | 6 | bottom left corner of what is on the screen? |
| 09:05 | 7 | MR. LENGYEL-LEAHU:  Objection, Your Honor. |
| | 8 | Leading.  She indicated she didn't see any handwriting. |
| 09:05 | 9 | THE COURT:  Overruled. |
| 09:05 | 10 | BY MS. ELIOT: |
| 09:05 | 11 | Q.   Do you want me to repeat the question? |
| 09:05 | 12 | A.   Yes, yes. |
| 09:05 | 13 | Q.   Okay.  I will -- I will highlight a portion of what |
| | 14 | would -- what is the back side of the -- of this copy.  And |
| | 15 | I'll -- I'll ask you if you see a *(verbatim)* handwriting. |
| 09:06 | 16 | *(Exhibit displayed.)* |
| 09:06 | 17 | BY MR. NAM: |
| 09:06 | 18 | Q.   *(Indicates.)* |
| 09:06 | 19 | A.   No. |
| 09:06 | 20 | Q.   Do you -- do you see any handwriting in -- in the area |
| | 21 | that I just circled? |
| 09:06 | 22 | MR. LENGYEL-LEAHU:  Objection.  Asked and |
| | 23 | answered. |
| 09:06 | 24 | THE COURT:  Overruled. |
| | 25 | |

| | | |
|---|---|---|
| 09:06 | 1 | BY MR. NAM: |
| 09:06 | 2 | Q.   Would you please answer it? |
| 09:06 | 3 | A.   Can you say again? |
| 09:06 | 4 | Q.   Sure.  Do you see, uh, in -- in the area that I've |
| | 5 | circled in yellow, is that -- do you see any handwriting |
| | 6 | there? |
| 09:06 | 7 | A.   Yeah.  But it's not mine. |
| 09:07 | 8 | Q.   Did you -- do you recognize that handwriting as, um -- |
| | 9 | as anyone's? |
| 09:07 | 10 | A.   No. |
| 09:07 | 11 | Q.   Did you give permission to anyone other than Cali Food |
| | 12 | Company to deposit this check? |
| 09:07 | 13 | A.   No. |
| 09:07 | 14 | Q.   Did you give permission to anyone other than Cali Food |
| | 15 | Company to cash this check? |
| 09:07 | 16 | A.   No. |
| 09:07 | 17 | Q.   Did you give permission to a person named |
| | 18 | Nader Elhuzayel to deposit this check in his bank account? |
| 09:07 | 19 | A.   No. |
| 09:07 | 20 | Q.   Do you know a person named Nader Elhuzayel? |
| 09:07 | 21 | A.   No. |
| 09:07 | 22 | Q.   Do you -- did you give permission to, uh, |
| | 23 | Husam Elhuzayel to deposit this check? |
| 09:07 | 24 | A.   No. |
| 09:07 | 25 | Q.   Do you know Husam Elhuzayel? |

| | | |
|---|---|---|
| 09:07 | 1 | A.   No. |
| 09:07 | 2 | Q.   Did you give permission to a person named |
| | 3 | Falak Elhuzayel to deposit this check? |
| 09:07 | 4 | A.   No. |
| 09:07 | 5 | Q.   Do you know Falak Elhuzayel? |
| 09:07 | 6 | A.   No. |
| 09:07 | 7 | Q.   Did you give any of the individuals that I just |
| | 8 | mentioned permission to deposit this check in any bank |
| | 9 | account? |
| 09:08 | 10 | A.   No. |
| 09:08 | 11 | MR. NAM:  No further questions, Your Honor. |
| 09:08 | 12 | THE COURT:  Cross-examination. |
| 09:08 | 13 | Mr. Lengyel-Leahu? |
| 09:08 | 14 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:08 | 15 | THE COURT:  Ms. Corrigan? |
| 09:08 | 16 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 09:08 | 17 | THE COURT:  May this witness also be excused and |
| | 18 | not left on call? |
| 09:08 | 19 | MS. CORRIGAN:  Yes, Your Honor. |
| 09:08 | 20 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 09:08 | 21 | MR. NAM:  *(No response.)* |
| 09:08 | 22 | THE COURT:  (To the witness:) Thank you very much. |
| | 23 | You're excused. |
| 09:08 | 24 | *(Witness excused.)* |
| 09:08 | 25 | THE COURT:  Counsel, if you would like to call |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

56

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | your next witness, please.                                            |
| 09:08 | 2  | MR. NAM: Your Honor, the next witness will be                         |
|       | 3  | accompanied by the certified interpreter.                             |
| 09:08 | 4  | THE COURT: Okay. Thank you.                                           |
| 09:08 | 5  | MR. NAM: The United States calls Hung Pham.                          |
| 09:08 | 6  | THE COURT: Thank you.                                                 |
| 09:08 | 7  | Mr. Hung Pham, if you would step forward, along                       |
|       | 8  | with the interpreter. And if you'd both stop at that                  |
|       | 9  | location.                                                             |
| 09:09 | 10 | And first, may I ask the interpreter's name,                          |
|       | 11 | please.                                                               |
| 09:09 | 12 | VIETNAMESE INTERPRETER: My name is *(inaudible)*.                     |
| 09:09 | 13 | THE COURT: I'm sorry. Louder.                                         |
| 09:09 | 14 | VIETNAMESE INTERPRETER: My name is Duc Nguyen.                        |
|       | 15 | I'm a Certified Court Interpreter, license --                         |
| 09:09 | 16 | THE COURT: Certified?                                                 |
| 09:09 | 17 | VIETNAMESE INTERPRETER: -- License No. 301485.                        |
| 09:09 | 18 | THE COURT: Thank you.                                                 |
| 09:09 | 19 | Would you like the interpreter sworn, Counsel?                        |
| 09:09 | 20 | MR. LENGYEL-LEAHU: Yes, please, Your Honor.                          |
| 09:09 | 21 | THE COURT: Sir, would you raise your right hand                       |
|       | 22 | as the interpreter.                                                   |
| 09:09 | 23 | **VIETNAMESE INTERPRETER SWORN**                                      |
| 09:09 | 24 | *(Interpreter sworn to translate from English to*                     |
|       | 25 | *Vietnamese and from Vietnamese to English to the*                    |

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | *best of his ability.)* |
| 09:09 | 2 | VIETNAMESE INTERPRETER:  Yes. |
| 09:09 | 3 | THE COURT:  Thank you. |
| 09:09 | 4 | Counsel, is there any further swearing that either |
|  | 5 | counsel would like?  Any counsel? |
| 09:09 | 6 | MS. CORRIGAN:  No, Your Honor. |
| 09:09 | 7 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 09:09 | 8 | *(Witness is testifies through the Vietnamese* |
|  | 9 | *language Interpreter as follows:)* |
| 09:09 | 10 | THE COURT:  Then, sir -- once again, this is |
|  | 11 | Mr. Hung Pham; is that correct? |
| 09:09 | 12 | THE WITNESS:  Yes. |
| 09:09 | 13 | THE COURT:  Mr. Hung Pham, would you raise your |
|  | 14 | right hand.  Debbie is going to administer an oath to you. |
| 09:10 | 15 | **HUNG PHAM, CALLED BY THE GOVERNMENT, SWORN** |
| 09:10 | 16 | THE WITNESS:  Yes, I do. |
| 09:10 | 17 | THE COURT:  Thank you.  The interpreter can stand |
|  | 18 | behind the witness.  It's much easier. |
| 09:10 | 19 | If you would be seated, please. |
| 09:10 | 20 | So, once again, sir, would you state your full name |
|  | 21 | for the jurors, please. |
| 09:11 | 22 | THE WITNESS:  My name is Hung Ngoc Pham. |
| 09:11 | 23 | THE COURT:  Would you spell all of your names, |
|  | 24 | please. |
| 09:11 | 25 | THE WITNESS:  H-U-N-G, N-G-O-C, T-H-A-N-H, |

|  |  |  |
|---|---|---|
|  | 1 | P-H-A-M. |
| 09:11 | 2 | THE COURT:  All right.  Thank you very much.  This |
|  | 3 | would be direct examination by the government. |
| 09:11 | 4 | MR. NAM:  Thank you, Your Honor. |
| 09:11 | 5 | **DIRECT EXAMINATION** |
| 09:11 | 6 | BY MR. NAM: |
| 09:11 | 7 | Q.   Mr. Pham, good morning.  What do you do for a living? |
| 09:12 | 8 | A.   Yeah, I'm a driver and delivery persons.  *(Verbatim.)* |
| 09:12 | 9 | Q.   Which company do you work for? |
| 09:12 | 10 | A.   Cali Food. |
| 09:12 | 11 | Q.   Where is Cali Food located? |
| 09:12 | 12 | A.   Yeah.  8350 in Anaheim -- City of Anaheim.  *(Verbatim.)* |
| 09:12 | 13 | Q.   How long have you worked for Cali Food? |
| 09:12 | 14 | A.   Two years. |
| 09:12 | 15 | Q.   What kind of a company is Cali Food? |
| 09:12 | 16 | A.   They manufacture a noodle package. |
| 09:12 | 17 | Q.   When you say you're a driver for Cali Food Company, |
|  | 18 | what do you transport? |
| 09:13 | 19 | A.   Yeah.  I -- I delivery *(verbatim)* the noodles package. |
| 09:13 | 20 | Q.   Where do you make deliveries on behalf of Cali Food? |
| 09:13 | 21 | A.   Yeah.  All of L.A., Redlands, and San Diego County. |
| 09:13 | 22 | Q.   And how many days do you work a week? |
| 09:13 | 23 | A.   Five.  I work five days a week. |
| 09:13 | 24 | Q.   Do you make deliveries every day of the week? |
| 09:13 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 09:14 | 1 | Q.   Besides making deliveries, when you go to different |
| | 2 | places, what do you do? |
| 09:14 | 3 | A.   I only do delivery. |
| 09:14 | 4 | Q.   When you go to different places for delivery, do you |
| | 5 | also pick up checks? |
| 09:14 | 6 | A.   Yeah.  I -- I collect cash and checks. |
| 09:14 | 7 | Q.   What do you do with the checks and cash that you |
| | 8 | collect after making deliveries? |
| 09:14 | 9 | A.   Yeah.  I -- I put in my wallet. |
| 09:14 | 10 | Q.   What does the wallet look like? |
| 09:15 | 11 | A.   Yeah.  It's -- it's a bag.  It is from Wells Fargo. |
| | 12 | It's a black color. |
| 09:15 | 13 | Q.   Is it one of those bags where, uh -- |
| 09:15 | 14 | MR. NAM:  I withdraw that question, Your Honor. |
| 09:15 | 15 | BY MR. NAM: |
| 09:15 | 16 | Q.   About how long is the check -- I'm sorry -- about how |
| | 17 | big is the bag? |
| 09:15 | 18 | A.   It's about the size of this box.  *(Indicating.)* |
| 09:15 | 19 | MR. NAM:  May the record reflect that the witness |
| | 20 | has identified Kleenex box as about the approximate size of |
| | 21 | the bag he carries? |
| 09:15 | 22 | THE COURT:  The record will so reflect, Counsel. |
| 09:15 | 23 | MR. NAM:  Thank you, Your Honor. |
| 09:15 | 24 | BY MR. NAM: |
| 09:15 | 25 | Q.   You mentioned making deliveries to San Diego.  Is World |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

60

|  |  |  |
|--|--|--|
|  | 1 | Foods Supermarket one of the businesses that you made |
|  | 2 | deliveries to in San Diego? |
| 09:16 | 3 | A.   That's correct. |
| 09:16 | 4 | Q.   How often do you make deliveries there? |
| 09:16 | 5 | A.   I delivery *(verbatim)* there four times a month. |
| 09:16 | 6 | Q.   And how often do you collect payments for deliveries |
|  | 7 | from World Foods Supermarket? |
| 09:16 | 8 | A.   I collect once a month. |
| 09:16 | 9 | Q.   In April and May of 2015, did you have the same |
|  | 10 | practice with World Foods Supermarket; that is, make four |
|  | 11 | deliveries a month and collect once a month? |
| 09:17 | 12 | A.   That's correct. |
| 09:17 | 13 | Q.   When you collect checks from World Foods Supermarket, |
|  | 14 | where do you collect that check from? |
| 09:17 | 15 | A.   Most of the time the owner of the -- of the supermarket |
|  | 16 | give me the check, or sometime the secretaries give me the |
|  | 17 | check. |
| 09:17 | 18 | Q.   Is there a counter that you go to to pick up the check? |
| 09:17 | 19 | A.   Yeah.  I -- I went to the cashier's counter.  And when |
|  | 20 | I receive the check, I have to sign for it. |
| 09:18 | 21 | Q.   Do you also make deliveries to a restaurant called |
|  | 22 | Noodle 21 in Redlands? |
| 09:18 | 23 | A.   Yes. |
| 09:18 | 24 | Q.   How often do you make deliveries there? |
| 09:18 | 25 | A.   I "delivery" there four times a month. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

61

| | | |
|---|---|---|
| 09:18 | 1 | Q. How often do you collect payments for those deliveries? |
| 09:18 | 2 | A. Yeah. I collect four times a month. |
| 09:18 | 3 | Q. In February did you also make deliveries to Noodle 21 |
| | 4 | restaurant in Redlands? |
| 09:19 | 5 | A. Yes, I do. *(Verbatim.)* |
| 09:19 | 6 | Q. Did you have the same practice at that time making |
| | 7 | deliveries and receiving payments? |
| 09:19 | 8 | A. Yes. |
| 09:19 | 9 | Q. In February of 2015, was there a time when you |
| | 10 | experienced theft of your items in your vehicle? |
| 09:19 | 11 | A. Yes. |
| 09:19 | 12 | Q. Do you recall the date when this occurred? |
| 09:20 | 13 | A. Yeah. It was the night of the 26th. |
| 09:20 | 14 | Q. Would that be the 26th of February of 2015? |
| 09:20 | 15 | A. Yes, that is accurate. |
| 09:20 | 16 | Q. What did you -- what happened that evening? |
| 09:20 | 17 | A. Yeah. On that evenings *(verbatim)*, when I came back |
| | 18 | from San Diego, uh, when I get home, I forgot and left |
| | 19 | the -- the bag of money and checks in the seats of my car. |
| 09:20 | 20 | Q. Where was your car? |
| 09:20 | 21 | A. Yeah. My car was parked at the 13861 Bowen Street. |
| 09:21 | 22 | Q. And is that in Garden Grove? |
| 09:21 | 23 | A. Yes, that -- that's correct. |
| 09:21 | 24 | Q. And what did you discover the next morning? |
| 09:21 | 25 | A. Yeah. The next morning, at 7:00 o'clock, when I -- |

```
        1   when I start to going to work, I saw my car was, you know,

        2   was "search," you know, messed up and "everythings."

        3   (Verbatim.)

09:21   4       The bag of money I left on the seats, and I put the

        5   pillow on top, was gone.  And I saw the inside of my car was

        6   "search" and, uh, totally "mess" up.

09:22   7   Q.   Was that -- just to be clear, was that the bag where --

        8   in which you carried money -- payment money for your

        9   company, Cali Food Company?

09:22  10   A.   That's correct.

09:22  11   Q.   Was that money supposed to go to your company the next

       12   day?

09:22  13   A.   Yeah.  The next -- the next morning, which is the

       14   Friday, that's when I -- I give and calculate the money

       15   to -- for my boss.

09:22  16   Q.   What did you do after you saw that the bag containing

       17   payments for your company was gone?

09:23  18   A.   Yeah.  I -- I telephone to my company.  And my boss

       19   told me that I have to go to work right away because I'm

       20   late.  But I told my boss, uh, it's not possible; I have to

       21   call the police.

09:23  22   Q.   Did you call the police?

09:23  23   A.   Yeah.  I -- I don't know English, so I ask my -- the

       24   secretary of my company to call the police.

09:23  25   Q.   Did you eventually receive a note or a card indicating
```

|     |    | that a report was filed? |
| --- | -- | --- |
| 09:23 | 2 | A.   Yeah.  On that day the police gave me the file number |
|     | 3 | of the report. |
| 09:24 | 4 | Q.   About how many checks were inside that bag? |
| 09:24 | 5 | A.   Approximately 15 to 16 checks. |
| 09:24 | 6 | Q.   Was -- do you know if one of those checks was from |
|     | 7 | World Foods Supermarket? |
| 09:24 | 8 | A.   Yes, sir, there is. *(Verbatim.)* |
| 09:24 | 9 | Q.   Did you later notify World Foods Supermarket that the |
|     | 10 | check was lost? |
| 09:25 | 11 | A.   Yeah.  I told the secretary of my company to call all |
|     | 12 | the supermarket and the restaurant that I did delivery that |
|     | 13 | the check are stolen, and then told them to stop payment. |
| 09:25 | 14 | Q.   Was a check from Noodle 21 one of the checks that was |
|     | 15 | in that bag that was lost? |
| 09:25 | 16 | A.   Yes, there is.  *(Verbatim.)* |
| 09:25 | 17 | Q.   Was there cash in that bag, as well? |
| 09:25 | 18 | A.   Yes.  There is $600 cash. |
| 09:25 | 19 | Q.   Did you have to pay the company back for the cash that |
|     | 20 | was stolen? |
| 09:25 | 21 | A.   Yeah.  I had to reimburse 50 percent of the stolen |
|     | 22 | money, which is $300, and every Monday, deduct a hundred |
|     | 23 | dollars from my pay -- paycheck -- for my salary. |
| 09:26 | 24 | Q.   Did you at any point give the checks from World Foods |
|     | 25 | Supermarket and Noodle 21 to another person before leaving |

|        | 1  | it in the bag in your vehicle the night of the 26th of |
|        | 2  | February? |
| 09:26  | 3  | A.   No. |
| 09:26  | 4  | Q.   Did you at any point give permission for the checks |
|        | 5  | from Noodle 21 and World Foods Supermarket to be deposited |
|        | 6  | at the account of a person named Nader Elhuzayel? |
| 09:27  | 7  | A.   Never. |
| 09:27  | 8  | Q.   Do you know a person named Nader Elhuzayel? |
| 09:27  | 9  | A.   No. |
| 09:27  | 10 | Q.   Do you know a person named Falak Elhuzayel? |
| 09:27  | 11 | A.   No. |
| 09:27  | 12 | Q.   Do you know a person named Husam Elhuzayel? |
| 09:27  | 13 | A.   No. |
| 09:27  | 14 | Q.   Did you give any of them permission to cash the checks |
|        | 15 | from Noodle 21 and World Foods Supermarket at a bank? |
| 09:28  | 16 | A.   Never.  No. |
| 09:28  | 17 | Q.   Did you give any of them permission to deposit those |
|        | 18 | two checks at any bank account? |
| 09:28  | 19 | A.   No.  Never. |
| 09:28  | 20 |          MR. NAM:  No further questions, Your Honor. |
| 09:28  | 21 |          THE COURT:  Cross-examination, Mr. Lengyel-Leahu? |
| 09:28  | 22 |          MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 09:28  | 23 |                    **CROSS-EXAMINATION** |
| 09:28  | 24 | BY MR. LENGYEL-LEAHU: |
| 09:28  | 25 | Q.   Good morning.  You didn't see who took the bag out of |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | your car?                                                    |
| 09:28 | 2  | A.   No, I didn't.                                           |
| 09:28 | 3  |        MR. LENGYEL-LEAHU:  No further questions,             |
|       | 4  | Your Honor.                                                  |
| 09:28 | 5  |        THE COURT:  Cross-examination, Ms. Corrigan?          |
| 09:28 | 6  |        MS. CORRIGAN:  No.  Thank you, Your Honor.            |
| 09:29 | 7  |        THE COURT:  Redirect by the government?               |
| 09:29 | 8  |        MR. NAM:  No further questions, Your Honor.           |
| 09:29 | 9  |        THE COURT:  May Mr. Hung Pham excused?                |
| 09:29 | 10 |        MR. NAM:  Yes, Your Honor.                            |
| 09:29 | 11 |        MR. LENGYEL-LEAHU:  *(No response.)*                  |
| 09:29 | 12 |        MS. CORRIGAN:  *(No response.)*                       |
| 09:29 | 13 |        THE COURT:  Sir, thank you very much for coming to    |
|       | 14 | court.  You're excused from these proceedings.              |
| 09:29 | 15 |        THE WITNESS:  Thank you.                              |
| 09:29 | 16 |     *(Witness excused.)*                                     |
| 09:29 | 17 |        THE COURT:  Counsel, your next witness, please.       |
| 09:29 | 18 |        MR. NAM:  The United States call Salud *(sic)*        |
|       | 19 | Salinas-Garcia.                                             |
| 09:29 | 20 |        THE COURT:  Thank you.                                |
| 09:30 | 21 |   **SAUL SALINAS-GARCIA, CALLED BY THE GOVERNMENT, SWORN**  |
| 09:30 | 22 |        THE WITNESS:  Okay.                                   |
| 09:30 | 23 |        THE COURT:  Thank you.                                |
| 09:30 | 24 |     Mr. Garcia, would you be kind enough to walk along       |
|       | 25 | the side of the jury railing.  If you would come this way,   |

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
|       | 1  | sir.  Thank you.  And then just walk right by this black    |
|       | 2  | curtain, towards the wall.  The entrance to the jury *(sic)*|
|       | 3  | box is closest to the wall.                                 |
| 09:30 | 4  | And then, sir, would you be seated, please.                 |
| 09:30 | 5  | Would you state your full name for the jurors, sir.         |
| 09:30 | 6  | THE WITNESS:  Saul Salinas.                                  |
| 09:30 | 7  | THE COURT:  Move closer.                                     |
| 09:30 | 8  | THE WITNESS:  Saul Salinas.                                  |
| 09:30 | 9  | THE COURT:  And would you spell your last name?             |
|       | 10 | Do you use your mother or father's name?                    |
| 09:30 | 11 | THE WITNESS:  Father's name -- last name.                   |
| 09:30 | 12 | THE COURT:  Spell your last name.                            |
| 09:30 | 13 | THE WITNESS:  S-A-L-I-N-A-S.                                 |
| 09:30 | 14 | THE COURT:  Thank you.                                       |
| 09:30 | 15 | Counsel, direct examination, please.                        |
| 09:30 | 16 | MR. NAM:  Thank you, Your Honor.                            |
| 09:30 | 17 | **DIRECT EXAMINATION**                                       |
| 09:30 | 18 | BY MR. NAM:                                                  |
| 09:30 | 19 | Q.   Good morning, Mr. Salinas.                             |
| 09:30 | 20 | A.   Good morning.                                          |
| 09:30 | 21 | Q.   What do you do for a living?                           |
| 09:31 | 22 | A.   I do landscaping services.                            |
| 09:31 | 23 | Q.   Do you work for a company?                            |
| 09:31 | 24 | A.   I work by myself.                                      |
| 09:31 | 25 | Q.   You own your business?                                |

| | | |
|---|---|---|
| 09:31 | 1 | A.   Yes. |
| 09:31 | 2 | Q.   What is the name of your company? |
| 09:31 | 3 | A.   Salinas Landscaping. |
| 09:31 | 4 | Q.   And what type of services does your company provide? |
| 09:31 | 5 | A.   Lawn services. |
| 09:31 | 6 | Q.   What is the location of your business? |
| 09:31 | 7 | A.   Anaheim. |
| 09:31 | 8 | Q.   And how long have you run your business, Salinas |
| | 9 | Landscaping? |
| 09:31 | 10 | A.   Four years. |
| 09:31 | 11 | *(Court reporter requests clarification for the* |
| | 12 | *record.)* |
| 09:31 | 13 | THE WITNESS:  Four years. |
| 09:31 | 14 | BY MR. NAM: |
| 09:31 | 15 | Q.   Are you the sole owner of Salinas Landscaping? |
| 09:31 | 16 | A.   Me and my two brothers. |
| 09:31 | 17 | Q.   Does Salinas Landscaping have company checks? |
| 09:31 | 18 | A.   Yes. |
| 09:31 | 19 | Q.   Do you have company checks under your name? |
| 09:31 | 20 | A.   Yes. |
| 09:31 | 21 | Q.   What about your brothers? |
| 09:31 | 22 | A.   Uh, my brothers, they have his own account. |
| 09:32 | 23 | Q.   So is it your testimony that each brother has his own |
| | 24 | business checking account under Salinas Landscaping? |
| 09:32 | 25 | A.   Yes. |

| 09:32 | 1 | Q.   Who else can write checks with your name on the |
| | 2 | business check? |
| 09:32 | 3 | A.   Only me. |
| 09:32 | 4 | Q.   I want to take you to the months of April and May, |
| | 5 | Spring of 2015. |
| 09:32 | 6 | Do you remember what your business checks looked like in |
| | 7 | Spring of 2015? |
| 09:32 | 8 | A.   April.  *(Verbatim.)* |
| 09:32 | 9 | Q.   In April of 2015, do you remember what the checks |
| | 10 | looked like? |
| 09:32 | 11 | A.   Yes. |
| 09:32 | 12 | Q.   With which bank did you have your business checks for |
| | 13 | Salinas Landscaping? |
| 09:32 | 14 | A.   Chase Bank. |
| 09:32 | 15 | Q.   In April of 2015, did you experience theft of one of |
| | 16 | your company checks? |
| 09:33 | 17 | A.   Yes. |
| 09:33 | 18 | Q.   When in April did that incident happen? |
| 09:33 | 19 | A.   27th. |
| 09:33 | 20 | Q.   Where did it happen? |
| 09:33 | 21 | A.   My house. |
| 09:33 | 22 | Q.   Did you report the theft to the police? |
| 09:33 | 23 | A.   Yes. |
| 09:33 | 24 | Q.   When did you make that report? |
| 09:33 | 25 | A.   In April. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

69

| | | |
|---|---|---|
| 09:33 | 1 | Q.   Do you remember the date? |
| 09:33 | 2 | A.   Uh, 27th. |
| 09:33 | 3 | Q.   Was it on the same day, then? |
| 09:33 | 4 | A.   Yes. |
| 09:33 | 5 | Q.   Which police department did you make the report to? |
| 09:33 | 6 | A.   Anaheim Police. |
| 09:33 | 7 | Q.   Where was your check? |
| 09:33 | 8 | A.   My binder. |
| 09:33 | 9 | Q.   And where was the binder? |
| 09:33 | 10 | A.   Inside'a my truck. |
| 09:33 | 11 | Q.   And where was the truck? |
| 09:33 | 12 | A.   Front'a my house. |
| 09:33 | 13 | Q.   I see.  How many of your business checks got stolen |
| | 14 | that day? |
| 09:33 | 15 | A.   Only one. |
| 09:33 | 16 | Q.   What else did you lose that day? |
| 09:33 | 17 | A.   Two cell phones, the check that got stolen, and my |
| | 18 | business binder. |
| 09:34 | 19 | Q.   Did you also have chainsaws stolden -- stolen? |
| 09:34 | 20 | A.   Yes. |
| 09:34 | 21 | Q.   Were these chainsaws that you used for your business? |
| 09:34 | 22 | A.   The STIHL brand. |
| 09:34 | 23 | Q.   What was that again?  I'm sorry. |
| 09:34 | 24 | A.   The STIHL brand. |
| 09:34 | 25 | Q.   So what did you do with your business checking account |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

70

|  |  |  |
|---|---|---|
|  | 1 | for Salinas Landscaping after you realized that one of your |
|  | 2 | checks was stolen from your vehicle? |
| 09:34 | 3 | A.   I went to my bank to take out my money. |
| 09:34 | 4 | Q.   Why did you do that? |
| 09:34 | 5 | A.   Because I got scared that somebody can take my money |
|  | 6 | out. |
| 09:34 | 7 | Q.   Did you want to prevent another person from using your |
|  | 8 | check to take money out of your business checking account? |
| 09:34 | 9 |             MR. LENGYEL-LEAHU:  Objection. |
| 09:34 | 10 |             THE WITNESS:  Yes. |
| 09:34 | 11 |             MR. LENGYEL-LEAHU:  Leading, Your Honor. |
| 09:35 | 12 |             THE COURT:  Sustained. |
| 09:35 | 13 |             MR. LENGYEL-LEAHU:  Move to strike. |
| 09:35 | 14 |             THE COURT:  Stricken. |
| 09:35 | 15 |          Reask the question, Counsel. |
| 09:35 | 16 |          Yes, Your Honor. |
| 09:35 | 17 | BY MR. NAM: |
| 09:35 | 18 | Q.   What was the reason for taking all your money out? |
| 09:35 | 19 | A.   I don't want somebody take my money. |
| 09:35 | 20 | Q.   After you took your money out of your business checking |
|  | 21 | account, did you return to your bank again soon thereafter? |
| 09:35 | 22 |             MR. LENGYEL-LEAHU:  Objection.  Leading. |
| 09:35 | 23 |             THE COURT:  No.  Overruled. |
| 09:35 | 24 |          *(To the witness:)* You can answer that question. |
| 09:35 | 25 |             THE WITNESS:  Can you repeat? |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:35 | 1 | BY MR. NAM: |
| 09:35 | 2 | Q.   Sure.  After you took your money from your business |
| | 3 | checking account, did you return to the bank thereafter? |
| 09:35 | 4 | A.   Yes.  Because I got a copy to get to the Police |
| | 5 | Department. |
| 09:35 | 6 | Q.   And did you receive -- |
| 09:35 | 7 | MR. LENGYEL-LEAHU:  Move to strike. |
| | 8 | Nonresponsive. |
| 09:35 | 9 | THE COURT:  Overruled. |
| 09:35 | 10 | BY MR. NAM: |
| 09:35 | 11 | Q.   Did you return to your Chase Bank? |
| 09:35 | 12 | A.   Yes. |
| 09:35 | 13 | Q.   And why did you return to Chase Bank? |
| 09:35 | 14 | A.   To get the copy for the check because they cash it. |
| 09:35 | 15 | Q.   So are you referring to the check that you had lost? |
| 09:36 | 16 | A.   Yes. |
| 09:36 | 17 | Q.   That was stolen from your vehicle? |
| 09:36 | 18 | A.   Yes. |
| 09:36 | 19 | Q.   And someone had -- when you say they cashed it, are you |
| | 20 | referring to someone cashing -- writing the check and |
| | 21 | cashing it? |
| 09:36 | 22 | A.   Yes. |
| 09:36 | 23 | Q.   How did you learn that someone had, uh, written the |
| | 24 | check and cashed it? |
| 09:36 | 25 | A.   I received a e-mail from my bank. |

Case 8:15-cr-00060-DOC   Document 293   Filed 03/31/17   Page 72 of 144   Page ID #:4548
8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

72

| 09:36 | 1 | Q.    And what did the e-mail say? |
| 09:36 | 2 | A.    I got the overdraft. |
| 09:36 | 3 | MR. LENGYEL-LEAHU:  Your Honor -- |
| 09:36 | 4 | THE COURT:  Counsel, is that hearsay? |
| 09:36 | 5 | MR. NAM:  That's the effect on the listener that |
| | 6 | explains the subsequent conduct, Your Honor. |
| 09:36 | 7 | THE COURT:  So this would be 801 -- or 803, |
| | 8 | subsection? |
| 09:36 | 9 | MR. NAM:  There is not a specific subsection |
| | 10 | referring to, uh -- so the government is not offering the |
| | 11 | content of the e-mail for the truth of the matter, but only |
| | 12 | to explain the witness's conduct. |
| 09:36 | 13 | THE COURT:  All right. |
| 09:36 | 14 | Overruled.  You can reask the question. |
| 09:37 | 15 | MR. NAM:  Yes, Your Honor. |
| 09:37 | 16 | THE COURT:  Now, Counsel, that may also fall under |
| | 17 | 803, subsection (a); but, it also may be non-hearsay, as |
| | 18 | well.  So under either theory, you can present it. |
| 09:37 | 19 | BY MR. NAM: |
| 09:37 | 20 | Q.    So is this your testimony:  That you learned in your |
| | 21 | e-mail that your account was overdrawn? |
| 09:37 | 22 | A.    Yes. |
| 09:37 | 23 | THE COURT:  And I said "803, subsection (a)."  I'm |
| | 24 | sorry.  803, subsection (1). |
| 09:37 | 25 | MR. NAM:  Thank you, Your Honor. |

| | | |
|---|---|---|
| 09:37 | 1 | BY MR. NAM: |
| 09:37 | 2 | Q.   And your account was overdrawn because someone had used |
| | 3 | your stolen check and cashed it? |
| 09:37 | 4 | MR. LENGYEL-LEAHU:  Objection.  Calls -- |
| 09:37 | 5 | THE WITNESS:  Yes. |
| 09:37 | 6 | MR. LENGYEL-LEAHU:  -- for speculation. |
| 09:37 | 7 | THE COURT:  I'm gonna strike the answer.  Strike |
| | 8 | the question. |
| 09:37 | 9 | Reask the question, Counsel. |
| 09:37 | 10 | BY MR. NAM: |
| 09:37 | 11 | Q.   Did you see -- when you visited the bank, did you see a |
| | 12 | copy of the check that was stolen from your vehicle? |
| 09:38 | 13 | A.   Yes. |
| 09:38 | 14 | Q.   And had you written anything on that check? |
| 09:38 | 15 | A.   I'm sorry? |
| 09:38 | 16 | Q.   Had you written anything on the check that was stolen? |
| 09:38 | 17 | A.   Yes.  They return my, um -- the overdraft fee. |
| 09:38 | 18 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Move |
| | 19 | to strike.  Nonresponsive. |
| 09:38 | 20 | THE COURT:  I didn't hear the answer.  I didn't |
| | 21 | understand the answer. |
| 09:38 | 22 | MR. NAM:  May I rephrase the question to clarify? |
| 09:38 | 23 | THE COURT:  You may. |
| 09:38 | 24 | BY MR. NAM: |
| 09:38 | 25 | Q.   The check that was stolen from you, was it a blank |

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | check?                                                             |
| 09:38 | 2  | A.    No -- oh, yes.  Sorry.                                       |
| 09:38 | 3  | Q.    Did you write any amount on it?                              |
| 09:38 | 4  | A.    No, I didn't.                                                |
| 09:38 | 5  | Q.    Did you sign it?                                             |
| 09:38 | 6  | A.    No.                                                          |
| 09:38 | 7  | Q.    The copy of the check that you saw when you went to the      |
|       | 8  | bank, after taking all the money out from your checking           |
|       | 9  | account, was it filled out?                                       |
| 09:39 | 10 | A.    Yes.                                                         |
| 09:39 | 11 | Q.    I'm now showing you what has been marked as                  |
|       | 12 | Exhibit 929-A.                                                     |
| 09:39 | 13 |           THE COURT:  Just a moment before that's shown,           |
|       | 14 | Counsel.                                                           |
| 09:39 | 15 |           Is there any objection to this item?                     |
| 09:39 | 16 |           MR. LENGYEL-LEAHU:  No, Your Honor.                      |
| 09:39 | 17 |           THE COURT:  All right.                                   |
| 09:39 | 18 |           Counsel.                                                 |
| 09:39 | 19 |         *(Exhibit provided to witness.)*                           |
| 09:39 | 20 | BY MR. NAM:                                                        |
| 09:39 | 21 | Q.    Mr. Salinas, do you recognize Exhibit 929-A?                 |
| 09:39 | 22 | A.    Yes.                                                         |
| 09:39 | 23 | Q.    What is Exhibit 929-A that is in front of you?               |
| 09:39 | 24 | A.    They were crossing lines in the written number.             |
|       | 25 | *(Verbatim.)*                                                      |

| | | |
|---|---|---|
| 09:39 | 1 | Q.   Does it -- what is it that you see in front of you, |
| | 2 | just generally? |
| 09:39 | 3 | A.   It's the check that I got stolen.  *(Verbatim.)* |
| 09:40 | 4 | Q.   Is it a copy -- is it a copy of -- copy of the check |
| | 5 | that you also saw at the bank when you visited after the |
| | 6 | check got stolen? |
| 09:40 | 7 | A.   Yes. |
| 09:40 | 8 |          MR. NAM:  At this time, Your Honor, the government |
| | 9 | moves to admit Exhibit 929-A. |
| 09:40 | 10 |          THE COURT:  Any objection? |
| 09:40 | 11 |          MR. LENGYEL-LEAHU:  No objection, Your Honor. |
| 09:40 | 12 |          MS. CORRIGAN:  No, Your Honor. |
| 09:40 | 13 |          THE COURT:  All right.  929-A is received. |
| 09:40 | 14 |      *(Exhibit No. 929-A received in evidence.)* |
| 09:40 | 15 |      *(Exhibit displayed.)* |
| 09:40 | 16 | BY MR. NAM: |
| 09:40 | 17 | Q.   I'm now showing you Exhibit 929-A on your screen in |
| | 18 | front of you.  It may be easier to see there; but, of |
| | 19 | course, you can refer to Exhibit 929-A directly in front of |
| | 20 | you.  I will point out certain portions of the check on the |
| | 21 | screen, and I'll be asking you to explain certain portions. |
| 09:41 | 22 |      Mr. Salinas, what does this portion that I'm about to |
| | 23 | circle indicate?  *(Indicating.)* |
| 09:41 | 24 | A.   It's my name and the name of the -- my company. |
| 09:41 | 25 | Q.   Does it also indicate your address? |

| | | |
|---|---|---|
| 09:41 | 1 | A.   Yes -- uh, no. |
| 09:41 | 2 | Q.   Certain -- certain portions are grayed out for your |
| | 3 | privacy.  But in the original -- in the exhibit, paper |
| | 4 | exhibit in front of you, does it indicate your address? |
| 09:41 | 5 | A.   *(No response.)* |
| 09:41 | 6 | Q.   Sir, is your address below your company name in the |
| | 7 | original check? |
| 09:41 | 8 | A.   Yes. |
| 09:41 | 9 | Q.   Does that portion indicate the name of your bank? |
| | 10 | *(Indicating.)* |
| 09:42 | 11 | A.   Yes. |
| 09:42 | 12 | Q.   Chase Bank.  Do you recognize the series of numbers |
| | 13 | that are at the bottom of the check?  Certain portions have |
| | 14 | been grayed out for your privacy.  But do you recognize the |
| | 15 | numbers that you can see? |
| 09:42 | 16 | A.   No. |
| 09:42 | 17 | Q.   I'll be circling certain numbers.  And if you can let |
| | 18 | me know if... *(indicating.)* |
| 09:42 | 19 |     Do you remember what your account number was for this |
| | 20 | checking account back in April of 2015? |
| 09:42 | 21 | A.   No. |
| 09:42 | 22 | Q.   Do you recognize what's there as -- do you recognize |
| | 23 | the number that was circled as connected to the -- to this |
| | 24 | checking account? |
| 09:42 | 25 |          MR. LENGYEL-LEAHU:  Objection, Your Honor.  Lack |

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | of foundation.                                                |
| 09:42 | 2  | THE WITNESS:  No.                                             |
| 09:42 | 3  | THE COURT:  The answer's "No."                               |
| 09:42 | 4  | Overruled.                                                   |
| 09:43 | 5  | BY MR. NAM:                                                   |
| 09:43 | 6  | Q.  Well, is it -- do you see handwriting on this check?     |
| 09:43 | 7  | A.  Yes.                                                      |
| 09:43 | 8  | Q.  Is this the handwriting that you saw on the copy of the  |
|       | 9  | check that you saw at your Chase Bank in April or May of     |
|       | 10 | 2015?                                                         |
| 09:43 | 11 | A.  Yes.                                                      |
| 09:43 | 12 | Q.  Did you write any of the handwriting that you see on     |
|       | 13 | this check?                                                  |
| 09:43 | 14 | A.  I didn't do it.                                           |
| 09:43 | 15 | Q.  Did you write the payee name that I'm about to circle?   |
|       | 16 | *(Indicating.)*                                              |
| 09:43 | 17 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Asked           |
|       | 18 | and answered.                                                |
| 09:43 | 19 | THE COURT:  Overruled.                                       |
| 09:43 | 20 | THE WITNESS:  No.                                             |
| 09:43 | 21 | BY MR. NAM:                                                   |
| 09:43 | 22 | Q.  Did you write -- did you give this check to a person    |
|       | 23 | named Nader Elhuzayel?                                        |
| 09:43 | 24 | A.  No.                                                       |
| 09:43 | 25 | Q.  The signature -- do you see the signature at the bottom |

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | right corner of this check? |
| 09:43 | 2 | A.   Yes. |
| 09:43 | 3 | Q.   Is that your signature? |
| 09:43 | 4 | A.   No. |
| 09:43 | 5 | MR. LENGYEL-LEAHU:  Asked and answered, |
|  | 6 | Your Honor. |
| 09:43 | 7 | THE COURT:  Overruled. |
| 09:43 | 8 | BY MR. NAM: |
| 09:43 | 9 | Q.   Is it your signature, sir? |
| 09:44 | 10 | A.   No. |
| 09:44 | 11 | Q.   I'd like your direction -- I'd like to direct your |
|  | 12 | attention to the back side of this check. |
| 09:44 | 13 | *(Exhibit displayed.)* |
| 09:44 | 14 | BY MR. NAM: |
| 09:44 | 15 | Q.   Do you see what appears to be an initial at the |
|  | 16 | right -- far right corner -- far right end of -- I'm |
|  | 17 | sorry -- far left end of this check -- of this screen? |
| 09:44 | 18 | A.   Yes. |
| 09:44 | 19 | Q.   Do you recognize the handwriting there? |
| 09:44 | 20 | A.   No. |
| 09:44 | 21 | Q.   Do you recognize that it -- to be anyone's initials? |
| 09:44 | 22 | A.   No. |
| 09:44 | 23 | Q.   Did you give permission to anyone to write this check? |
| 09:44 | 24 | A.   No. |
| 09:44 | 25 | Q.   Did you give anyone permission to give this check to a |

|  |  |  |
|---|---|---|
|  | 1 | person named Nader Elhuzayel? |
| 09:45 | 2 | A.   No. |
| 09:45 | 3 | Q.   Did you give anyone permission to deposit this check |
|  | 4 | into one of Nader Elhuzayel's bank accounts? |
| 09:45 | 5 | A.   No. |
| 09:45 | 6 | Q.   Do you know a person named Nader Elhuzayel? |
| 09:45 | 7 | A.   No. |
| 09:45 | 8 | Q.   Do you know a person named Falak Elhuzayel? |
| 09:45 | 9 | A.   No. |
| 09:45 | 10 | Q.   Do you know a person named Husam Elhuzayel? |
| 09:45 | 11 | A.   No. |
| 09:45 | 12 | Q.   Did you give any of the three individuals that I just |
|  | 13 | mentioned permission to deposit this check into any bank |
|  | 14 | account? |
| 09:45 | 15 | A.   No. |
| 09:45 | 16 |             MR. LENGYEL-LEAHU:  Objection.  Asked and |
|  | 17 | answered, Your Honor. |
| 09:45 | 18 |             THE COURT:  Overruled. |
| 09:45 | 19 | BY MR. NAM: |
| 09:45 | 20 | Q.   Did you owe $750 to a person named Nader Elhuzayel at |
|  | 21 | all? |
| 09:45 | 22 |             MR. LENGYEL-LEAHU:  Objection.  Asked and |
|  | 23 | answered -- |
| 09:45 | 24 |             THE WITNESS:  No. |
| 09:45 | 25 |             MR. LENGYEL-LEAHU:  -- your Honor. |

| | | |
|---|---|---|
| 09:45 | 1 | THE COURT:  Overruled. |
| 09:45 | 2 | MR. NAM:  No further questions, Your Honor. |
| 09:45 | 3 | THE COURT:  Cross-examination, please. |
| 09:45 | 4 | Mr. Lengyel-Leahu. |
| 09:45 | 5 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 09:45 | 6 | **CROSS-EXAMINATION** |
| 09:45 | 7 | BY MR. LENGYEL-LEAHU: |
| 09:46 | 8 | Q.   Good morning. |
| 09:46 | 9 | A.   Good morning. |
| 09:46 | 10 | Q.   You didn't see who took your binder out'a your truck, |
| | 11 | did you? |
| 09:46 | 12 | A.   No. |
| 09:46 | 13 | MR. LENGYEL-LEAHU:  Nothing further, Your Honor. |
| 09:46 | 14 | THE COURT:  Ms. Corrigan, do you have questions on |
| | 15 | behalf of Mr. Badawi? |
| 09:46 | 16 | MS. CORRIGAN:  No, Your Honor. |
| 09:46 | 17 | THE COURT:  Government on redirect? |
| 09:46 | 18 | MR. NAM:  Nothing further, Your Honor. |
| 09:46 | 19 | THE COURT:  All right. |
| 09:46 | 20 | May Mr. Saul Salinas-Garcia be excused, Counsel? |
| 09:46 | 21 | MS. CORRIGAN:  Yes, Your Honor. |
| 09:46 | 22 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 09:46 | 23 | MR. NAM:  Yes, Your Honor. |
| 09:46 | 24 | THE COURT:  Sir, thank you very much.  You're |
| | 25 | excused from these proceedings. |

```
09:46    1         (Witness excused.)

09:46    2              THE COURT:  Counsel, your next witness, please.

09:46    3         Now, I think you have about three more civilians in

         4    the hallway; is that correct?

09:46    5              MR. NAM:  Um --

09:46    6              THE COURT:  Well, let's get the next person.

09:46    7              MR. NAM:  Yes.

09:46    8              THE COURT:  I'd like to finish the civilians who

         9    are standing in the hallway and get them back out of the

        10    court, if possible.  They're relatively short witnesses.

09:47   11         Counsel, your next witness, please.

09:47   12              MR. NAM:  The United States calls Shannon Sherrin.

09:47   13              THE COURT:  Thank you.

09:47   14    SHANNON SHERRIN, CALLED BY THE GOVERNMENT, SWORN

09:47   15              THE WITNESS:  I do.

09:47   16              THE COURT:  Thank you.  If you'd be seated in the

        17    witness box.  Just walk along the side of that black curtain

        18    and the entrance to the witness box is closest to the wall.

09:47   19         State your full name and spell your last name,

        20    please.

09:47   21              THE WITNESS:  Shannon Sherrin, S-H-E-R-R-I-N.

09:47   22              THE COURT:  Thank you.

09:47   23         Direct examination by the government, please.

09:47   24              MR. NAM:  Thank you, Your Honor.

        25
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 09:47 | 1  | **DIRECT EXAMINATION**                                       |
| 09:47 | 2  | BY MR. NAM:                                                   |
| 09:47 | 3  | Q.   Good morning, Ms. Sherrin.                              |
| 09:48 | 4  | A.   Good morning.                                           |
| 09:48 | 5  | Q.   Where do you live?                                      |
| 09:48 | 6  | A.   Buena Park, California.                                 |
| 09:48 | 7  | Q.   Have you always lived at your current address in       |
|       | 8  | Buena Park?                                                  |
| 09:48 | 9  | A.   No.                                                     |
| 09:48 | 10 | Q.   Where was the last place you lived before moving to    |
|       | 11 | Buena Park?                                                  |
| 09:48 | 12 | A.   Cypress, California.                                    |
| 09:48 | 13 | Q.   Was that near Cypress College?                         |
| 09:48 | 14 | A.   Yes.                                                    |
| 09:48 | 15 | Q.   Your previous home in Cypress, did you own or rent?    |
| 09:48 | 16 | A.   Rent.                                                   |
| 09:48 | 17 | Q.   Was it an apartment or single-family residence?        |
| 09:48 | 18 | A.   A single-family residence.                             |
| 09:48 | 19 | Q.   Was your home managed by a rental property management  |
|       | 20 | company?                                                     |
| 09:48 | 21 | A.   Yes.                                                    |
| 09:48 | 22 | Q.   What was the name of that company?                     |
| 09:48 | 23 | A.   Ponderosa Property Management.                         |
| 09:48 | 24 | Q.   Was it to Ponderosa that you sent your rent payment for|
|       | 25 | your home?                                                   |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

83

| | | |
|---|---|---|
| 09:48 | 1 | A.   Yes. |
| 09:48 | 2 | Q.   How often did you make a rent payment? |
| 09:48 | 3 | A.   Every month. |
| 09:48 | 4 | Q.   And when was your monthly payment due? |
| 09:49 | 5 | A.   On the 1st of every month. |
| 09:49 | 6 | Q.   Do you recall how much your monthly rent payment was at |
| | 7 | that time? |
| 09:49 | 8 | A.   $2,195. |
| 09:49 | 9 | Q.   And what method of payment did you typically use in |
| | 10 | making your rent payment? |
| 09:49 | 11 | A.   Check. |
| 09:49 | 12 | Q.   And how did you typically deliver your rent payment to |
| | 13 | Ponderosa? |
| 09:49 | 14 | A.   By mail. |
| 09:49 | 15 | Q.   In April and May of 2015, was there an incident in |
| | 16 | which you had to send a replacement check to Ponderosa? |
| 09:49 | 17 | A.   Yes. |
| 09:49 | 18 | Q.   To whom did you write the first check? |
| 09:49 | 19 | A.   Ponderosa. |
| 09:49 | 20 | Q.   And about when did you send the initial check? |
| 09:49 | 21 | A.   Monday the 27th, I believe. |
| 09:50 | 22 | Q.   Did you check your records before testifying today? |
| 09:50 | 23 | A.   Yes. |
| 09:50 | 24 | Q.   And so you -- that's -- is that why you are able to |
| | 25 | recall specifically? |

**DEBBIE GALE, U.S. COURT REPORTER**

| 09:50 | 1 | A. | Yes. |

09:50  1   A.   Yes.

09:50  2   Q.   And how much was the check for?

09:50  3   A.   $2,195.

09:50  4   Q.   Did you mail the check to --

09:50  5   A.   Yes, I did.

09:50  6   Q.   And did you mail the check yourself?

09:50  7   A.   Yes, I did.

09:50  8   Q.   Was that check with -- a checking account at a bank?

09:50  9   A.   Yes.

09:50  10  Q.   Which bank was it with?

09:50  11  A.   Wells Fargo.

09:50  12  Q.   And did you share that checking account with anyone?

09:50  13  A.   Yes.  My husband Paul Sherrin.

09:50  14  Q.   And who -- between you and your husband, who actually

       15  wrote the check?

09:50  16  A.   My husband, Paul Sherrin.

09:50  17  Q.   Did you observe your husband write the check?

09:50  18  A.   Yes.

09:50  19  Q.   Did you observe him sign the check?

09:50  20  A.   Yes.

09:50  21  Q.   But it is you who actually mailed the check?

09:50  22  A.   Yes.

09:50  23  Q.   Where did you mail it?  Where did you place it --

09:51  24  A.   My mailbox.

09:51  25  Q.   -- to be mailed?

**DEBBIE GALE, U.S. COURT REPORTER**

09:51   1      Why did you have to send a replacement check for that

     2   check that we've been talking about?

09:51   3   A.   Because the property management never received my

     4   original check.

09:51   5   Q.   And how did you learn that the property management

     6   never received it?

09:51   7   A.   I called them. I sent it on Monday. I called them by

     8   Friday because I had looked at my bank account. It hadn't

     9   been cashed yet, which, usually they take the money out

    10   right away, so I just wanted to make sure it was there. And

    11   they hadn't received it yet.

09:51   12   Q.   When did you end up sending a new check to make rent

    13   payment?

09:51   14   A.   That following Monday.

09:51   15   Q.   Would that have been beginning of May at that point?

    16   *(Verbatim.)*

09:51   17   A.   Yes.

09:51   18   Q.   Did your property management charge you any late fee?

09:51   19   A.   Uh, no.

09:51   20   Q.   Did you see the initial check that you sent out again

    21   sometime thereafter?

09:51   22   A.   Yes.

09:52   23   Q.   When did you see that check?

09:52   24   A.   I saw that at the bank.

09:52   25   Q.   Which bank?

09:52   1    A.    Uh, Wells Fargo.

09:52   2    Q.    The -- was that at a branch that you usually visit

        3    for --

09:52   4    A.    Yes.

09:52   5    Q.    -- bank business?

09:52   6          Approximately when was it?

09:52   7    A.    It was the next day, Tuesday, the -- I sent the

        8    cashier's check Monday, so it was the following day Tuesday.

        9    They called me at work and, uh, informed me, so I went down

        10   to the bank and looked at a check.

09:52   11   Q.    You referred to a cashier's check just now.  Are you --

        12   are you making that reference as a reference to the

        13   replacement check?

09:52   14   A.    No.  I saw the original check on Tuesday.

09:52   15   Q.    And before that?

09:52   16   A.    The cashier's check was sent on Monday.  The next day,

        17   I -- the bank called me and I went down and looked at the

        18   original check.

09:52   19   Q.    The cashier's check was the second check that you sent

        20   out?

09:52   21   A.    Yes.

09:52   22   Q.    Why, um -- why did you visit the bank that day, uh, to

        23   see a copy of the initial check?

09:53   24   A.    Uh, because they called me and informed me that there

        25   was some suspicion of -- of a check fraud.

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

87

| | | |
|---|---|---|
| 09:53 | 1 | Q.   Do you know why there was suspicion of check fraud? |
| 09:53 | 2 | MR. LENGYEL-LEAHU:  Objection.  Calls for |
| | 3 | speculation, Your Honor.  Hearsay. |
| 09:53 | 4 | THE COURT:  Overruled. |
| 09:53 | 5 | This shows contemporaneous action.  It's also under |
| | 6 | 803, subsection (1), if it was hearsay.  I don't think it's |
| | 7 | being offered for hearsay purposes -- or for the truth. |
| | 8 | It's to show her action. |
| 09:53 | 9 | So the question was? |
| 09:53 | 10 | BY MR. NAM: |
| 09:53 | 11 | Q.   Do you know why there was suspicion of fraudulent |
| | 12 | activity? |
| 09:53 | 13 | A.   Um, actually, the check was initially tagged because of |
| | 14 | the signature on the check.  So I went down to verify that |
| | 15 | it was my husband's signature.  And then the next day it was |
| | 16 | actually cashed, so -- |
| 09:54 | 17 | Q.   Do you know if that cashing of the check occurred as a |
| | 18 | payment to Ponderosa? |
| 09:54 | 19 | A.   Um, no.  They never received the check. |
| 09:54 | 20 | Q.   But you saw it in the bank records that the initial |
| | 21 | check that you sent was cashed by someone? |
| 09:54 | 22 | A.   Yes. |
| 09:54 | 23 | Q.   And you saw that on -- in your bank record? |
| 09:54 | 24 | A.   Yes. |
| 09:54 | 25 | Q.   After learning that your initial, uh, check was cashed |

**DEBBIE GALE, U.S. COURT REPORTER**

|  | 1 | somewhere, did you, uh, check with Ponderosa to see if |
|---|---|---|
| 09:54 | 2 | Ponderosa had actually received the check? |
| 09:54 | 3 | A.   Uh, yeah.  The day that the check was cashed, I called |
|  | 4 | them back just to make sure that nobody in their, uh, |
|  | 5 | department had cashed it -- just in case someone was off |
|  | 6 | that day -- but they said they never received it. |
| 09:54 | 7 | Q.   And was that after you had sent the replacement check? |
| 09:54 | 8 | A.   Uh, yes. |
| 09:55 | 9 | Q.   I'm now showing you what has been marked as |
|  | 10 | Exhibit 914-A.  You'll be handed a folder.  I apologize. |
|  | 11 | It's 933-A. |
| 09:55 | 12 | THE COURT:  933-A.  All right. |
| 09:55 | 13 | *(Exhibit provided to the witness.)* |
| 09:55 | 14 | THE COURT:  Counsel, your question now.  Let's |
|  | 15 | move along. |
| 09:55 | 16 | MR. NAM:  Yes, Your Honor. |
| 09:55 | 17 | BY MR. NAM: |
| 09:55 | 18 | Q.   Do you recognize 933-A? |
| 09:55 | 19 | A.   Yes. |
| 09:55 | 20 | Q.   What is 933-A? |
| 09:55 | 21 | A.   The check that my husband wrote to Ponderosa. |
| 09:56 | 22 | Q.   Is this a copy of the original check? |
| 09:56 | 23 | A.   Yes. |
| 09:56 | 24 | MR. NAM:  Your Honor, at this time the government |
|  | 25 | moves to admit Exhibit 933-A. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:56 | 1 | THE COURT:  Any objection? |
| 09:56 | 2 | MR. LENGYEL-LEAHU:  No objection. |
| 09:56 | 3 | MS. CORRIGAN:  No objection. |
| 09:56 | 4 | THE COURT:  All right.  Received. |
| 09:56 | 5 | *(Exhibit No. 933-A received in evidence.)* |
| 09:56 | 6 | THE COURT:  A couple questions now, Counsel.  And |
| | 7 | then we'll finish this direct. |
| 09:56 | 8 | Let's move along now. |
| 09:56 | 9 | MR. NAM:  Yes, Your Honor. |
| 09:56 | 10 | BY MR. NAM: |
| 09:56 | 11 | Q.   I just wanna confirm couple things with you. |
| 09:56 | 12 | Does this check indicate -- have a signature? |
| 09:56 | 13 | A.   Yes. |
| 09:56 | 14 | Q.   And whose signature is it? |
| 09:56 | 15 | A.   My husband, Paul Sherrin. |
| 09:56 | 16 | Q.   Is this a copy of this same check that you initially |
| | 17 | sent out? |
| 09:56 | 18 | A.   Yes. |
| 09:56 | 19 | Q.   And you saw at the bank that it was cashed by someone? |
| 09:56 | 20 | A.   Yes. |
| 09:56 | 21 | Q.   Did you give permission to anyone other than Ponderosa |
| | 22 | to cash this check? |
| 09:56 | 23 | A.   No. |
| 09:56 | 24 | Q.   Did you give anyone -- other than Ponderosa Property |
| | 25 | Management -- to deposit this check?   *(Verbatim.)* |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

90

| | | |
|---|---|---|
| 09:57 | 1 | A.   No. |
| 09:57 | 2 | Q.   At any account?  *(Verbatim.)* |
| 09:57 | 3 | A.   No. |
| 09:57 | 4 | Q.   Do you know a person named Nader Elhuzayel? |
| 09:57 | 5 | A.   No. |
| 09:57 | 6 | Q.   Do you know a person named Husam Elhuzayel? |
| 09:57 | 7 | A.   No. |
| 09:57 | 8 | Q.   Do you know a person named Falak Elhuzayel? |
| 09:57 | 9 | A.   No. |
| 09:57 | 10 | Q.   Did you give any of them permission to deposit this |
| | 11 | check at one of Nader Elhuzayel's bank accounts? |
| 09:57 | 12 | A.   No. |
| 09:57 | 13 | MR. NAM:  No further questions, Your Honor. |
| 09:57 | 14 | THE COURT:  Cross-examination. |
| 09:57 | 15 | Mr. Lengyel-Leahu? |
| 09:57 | 16 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:57 | 17 | THE COURT:  And, Ms. Corrigan? |
| 09:57 | 18 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 09:57 | 19 | THE COURT:  May this witness be excused, Counsel. |
| 09:57 | 20 | MR. NAM:  Yes, Your Honor. |
| 09:57 | 21 | MS. CORRIGAN:  Yes. |
| 09:57 | 22 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 09:57 | 23 | THE COURT:  All right. |
| 09:57 | 24 | *(To the witness:)*  Thank you very much.  You're |
| | 25 | excused from these proceedings. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:57 | 1 | THE WITNESS:  Thank you. |
| 09:57 | 2 | *(Witness excused.)* |
| 09:57 | 3 | THE COURT:  Counsel, your next witness, please. |
| 09:57 | 4 | MR. NAM:  Government calls Rudi Steinhilber. |
| 09:58 | 5 | THE COURT:  Thank you. |
| 09:58 | 6 | If you'd step forward, sir, between the double |
| | 7 | doors.  Would you be kind enough to raise your right hand. |
| 09:58 | 8 | **RUDI STEINHILBER, CALLED BY THE GOVERNMENT, SWORN** |
| 09:58 | 9 | THE WITNESS:  Yes, I do. |
| 09:58 | 10 | THE COURT:  If you'd walk along the side of the |
| | 11 | jury box.  There's a black curtain.  Walk in this direction, |
| | 12 | sir.  Thank you.  And then walk towards the wall.  The |
| | 13 | entrance to the jury *(sic)* box is closest to the wall. |
| 09:58 | 14 | If you'd be seated.  After you're seated, would you |
| | 15 | face the jury. |
| 09:58 | 16 | Would you state your full name and spell your last |
| | 17 | name, please. |
| 09:58 | 18 | THE WITNESS:  Rudi Steinhilber, |
| | 19 | S-T-E-I-N-H-I-L-B-E-R. |
| 09:59 | 20 | THE COURT:  All right.  Thank you. |
| 09:59 | 21 | Direct examination by the government. |
| 09:59 | 22 | MR. NAM:  Yes, Your Honor. |
| 09:59 | 23 | **DIRECT EXAMINATION** |
| 09:59 | 24 | BY MR. NAM: |
| 09:59 | 25 | Q.   What do you do for a living? |

| 09:59 | 1 | A.   I do sales. |
| 09:59 | 2 | Q.   Do you work for a company? |
| 09:59 | 3 | A.   Yes. |
| 09:59 | 4 | Q.   And what is the name of the company that you work for? |
| 09:59 | 5 | A.   Stein Industries. |
| 09:59 | 6 | Q.   Where is Stein Industries located? |
| 09:59 | 7 | A.   It's in Fullerton, California. |
| 09:59 | 8 | Q.   And what kind of a company is Stein Industries? |
| 09:59 | 9 | A.   It's a sheet metal manufacturing. |
| 09:59 | 10 | Q.   And how long have you worked for Stein Industries? |
| 09:59 | 11 | A.   34 years. |
| 09:59 | 12 | Q.   You mentioned, uh, that you do sales.  But what is the |
|  | 13 | specific position that you hold in the company? |
| 09:59 | 14 | A.   I'm the president of the company. |
| 09:59 | 15 | Q.   Are you also the custodian of records for the company? |
| 10:00 | 16 | A.   Yes. |
| 10:00 | 17 | Q.   Could you briefly describe your, uh, day-to-day |
|  | 18 | responsibilities at Stein Industries? |
| 10:00 | 19 | A.   I oversee the management of the office and, um, sales |
|  | 20 | of the company. |
| 10:00 | 21 | Q.   You also handle, uh, and oversee financials? |
| 10:00 | 22 | A.   Yes. |
| 10:00 | 23 | Q.   Are you familiar with the checks being issued by the |
|  | 24 | company? |
| 10:00 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 10:00 | 1 | Q.   And any payments received by the company? |
| 10:00 | 2 | A.   Yes. |
| 10:00 | 3 | Q.   Are you also familiar with the recipients of the |
| | 4 | payments that the company, uh, makes payments to? |
| 10:00 | 5 | A.   Yes. |
| 10:00 | 6 | Q.   Did you have the same responsibilities and -- at your |
| | 7 | company in April and May of 2015? |
| 10:00 | 8 | A.   Yes. |
| 10:00 | 9 | Q.   In April and May of 2015, did your responsibilities |
| | 10 | include writing checks for the company? |
| 10:00 | 11 | A.   I signed the checks, yes. |
| 10:01 | 12 | Q.   Do you know what your company's checks looked like in |
| | 13 | April and May of 2015? |
| 10:01 | 14 | A.   Yes. |
| 10:01 | 15 | Q.   And are you familiar with a company named Amada |
| | 16 | Capital? |
| 10:01 | 17 | A.   Yes. |
| 10:01 | 18 | Q.   And is that a company that your company that -- has |
| | 19 | relationship with? *(Verbatim.)* |
| 10:01 | 20 | A.   Yes. |
| 10:01 | 21 | Q.   If you could just very briefly describe what that |
| | 22 | relationship is about. |
| 10:01 | 23 | MR. LENGYEL-LEAHU:  Objection.  Relevance. |
| 10:01 | 24 | THE COURT:  Counsel? |
| 10:01 | 25 | MR. NAM:  Just to establish a very brief context |

DEBBIE GALE, U.S. COURT REPORTER

|        | 1  | of the checks that -- the check that was being -- |
|--------|----|---|
| 10:01  | 2  | THE COURT:  *(To the witness:)*  Very briefly, sir. |
|        | 3  | What's the relationship with Amada Capital? |
| 10:01  | 4  | THE WITNESS:  We purchase equipment -- |
|        | 5  | manufacturing equipment from them. |
| 10:01  | 6  | THE COURT:  Thank you. |
| 10:01  | 7  | BY MR. NAM: |
| 10:01  | 8  | Q.   In April of 2015, was there an incident which -- in |
|        | 9  | which you had to reissue a check that you, uh -- that was |
|        | 10 | meant for -- meant as a payment for Amada Capital? |
| 10:01  | 11 | A.   Yes. |
| 10:02  | 12 | Q.   And about how much was the initial check? |
| 10:02  | 13 | A.   I believe it was 1,600.74, somewhere -- I know it was |
|        | 14 | 1600 and some cents. |
| 10:02  | 15 | Q.   Uh-huh, yes.  Well, when did you write the initial |
|        | 16 | check? |
| 10:02  | 17 | A.   It was in -- I believe it was the end of March. |
| 10:02  | 18 | Q.   Did you -- did your company mail the initial check to |
|        | 19 | Amada Capital? |
| 10:02  | 20 | A.   Yes. |
| 10:02  | 21 | Q.   And when did you have to issue a replacement -- or |
|        | 22 | check for the check that you just mentioned? |
| 10:02  | 23 | A.   In May. |
| 10:02  | 24 | Q.   And when you made that payment, was it for the same |
|        | 25 | payment amount? |

| | | |
|---|---|---|
| 10:02 | 1 | A.    The same payment, plus a late fee. |
| 10:02 | 2 | Q.    Why did you have to send that replacement check with a |
| | 3 | late fee? |
| 10:03 | 4 | A.    They, uh, notified us that they didn't receive the |
| | 5 | payment and they issued a late fee. |
| 10:03 | 6 | Q.    I'm now showing you what has been marked as |
| | 7 | Exhibit 915-A.  915-A. |
| 10:03 | 8 | *(Exhibit provided to the witness.)* |
| 10:03 | 9 | BY MR. NAM: |
| 10:03 | 10 | Q.    Do you recognize this Exhibit 915-A? |
| 10:03 | 11 | A.    Yes. |
| 10:03 | 12 | Q.    What is Exhibit 915-A? |
| 10:03 | 13 | A.    It's a check we issued to Amada Capital. |
| 10:03 | 14 | Q.    Which one is it?  The first one or the second one that |
| | 15 | we've been talking about? |
| 10:03 | 16 | A.    This would be the first one. |
| 10:03 | 17 | MR. NAM:  Your Honor, at this time the government |
| | 18 | moves to admit Exhibit 915-A. |
| 10:03 | 19 | THE COURT:  Is there any objection, Counsel? |
| 10:03 | 20 | MR. LENGYEL-LEAHU:  No objection. |
| 10:03 | 21 | MS. CORRIGAN:  No, Your Honor. |
| 10:03 | 22 | THE COURT:  Received. |
| 10:03 | 23 | *(Exhibit No. 915-A received in evidence.)* |
| 10:03 | 24 | BY MR. NAM: |
| 10:03 | 25 | Q.    I'm now showing you 915-A on the screen.  Certain |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

96

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
|       | 1  | portions have been redacted for privacy of the parties.           |
| 10:04 | 2  | *(Exhibit displayed.)*                                            |
| 10:04 | 3  | BY MR. NAM:                                                        |
| 10:04 | 4  | Q.   Does the portion that I'm about to check indicate the        |
|       | 5  | name of your company and the address?  *(Indicating.)*           |
| 10:04 | 6  | A.   Yes.                                                          |
| 10:04 | 7  | Q.   And the second checkmark that I've placed, is that the       |
|       | 8  | name of the intended recipient of this check?                     |
| 10:04 | 9  | A.   Yes.                                                          |
| 10:04 | 10 | Q.   And you indicated that this check would've been written      |
|       | 11 | at the end of March.  Does it indicate the specific date?         |
| 10:04 | 12 | A.   Yes.                                                          |
| 10:04 | 13 | Q.   What is the date?                                             |
| 10:04 | 14 | A.   3/31/2015.                                                    |
| 10:04 | 15 | Q.   And what was the amount?                                      |
| 10:04 | 16 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  The                   |
|       | 17 | document speaks for itself.                                        |
| 10:04 | 18 | THE COURT:  Overruled.                                             |
| 10:04 | 19 | BY MR. NAM:                                                        |
| 10:04 | 20 | Q.   What is the amount that this check was issued for?           |
| 10:04 | 21 | A.   $1674.91.                                                     |
| 10:05 | 22 | Q.   Do you see a signature at the bottom right corner of         |
|       | 23 | the check?                                                         |
| 10:05 | 24 | A.   Yes.                                                          |
| 10:05 | 25 | Q.   Whose signature is this?                                      |

| | | |
|---|---|---|
| 10:05 | 1 | A.    That's my signature. |
| 10:05 | 2 | Q.    I want to just very briefly look at the back of this |
| | 3 | check. |
| 10:05 | 4 |     *(Exhibit displayed.)* |
| 10:05 | 5 | BY MR. NAM: |
| 10:05 | 6 | Q.    Do you see what appears to be a handwriting? |
| 10:05 | 7 | A.    Yes. |
| 10:05 | 8 | Q.    Do you recognize the handwriting? |
| 10:05 | 9 | A.    No. |
| 10:05 | 10 | Q.    Have you reviewed, uh, prior to today, uh, the checks |
| | 11 | that you had issued to Amada Capital, other than this check, |
| | 12 | uh -- those checks that had been deposited with Amada |
| | 13 | Capital and a copy of which was returned to your company? |
| 10:05 | 14 | A.    Yes. |
| 10:05 | 15 | Q.    And in the ones that you reviewed, what did you see on |
| | 16 | the back side? |
| 10:05 | 17 | A.    They have a stamp with numbers, two rows of numbers. |
| 10:05 | 18 | Q.    So do you recognize the handwriting here to be that of |
| | 19 | anyone at Amada Capital? |
| 10:06 | 20 |         MR. LENGYEL-LEAHU:  Objection, Your Honor.  Asked |
| | 21 | and answered. |
| 10:06 | 22 |         THE COURT:  You can answer that question one more |
| | 23 | time. |
| 10:06 | 24 |         THE WITNESS:  Can you repeat the question? |
| | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

| 10:06 | 1 | BY MR. NAM: |
|---|---|---|
| 10:06 | 2 | Q.   Do you recognize this handwriting as related to anyone |
| | 3 | at Amada Capital? |
| 10:06 | 4 | A.   No. |
| 10:06 | 5 | Q.   Did you give permission to anyone other than Amada |
| | 6 | Capital to deposit this check? |
| 10:06 | 7 | A.   No. |
| 10:06 | 8 | Q.   Did you give permission to a person named |
| | 9 | Nader Elhuzayel to deposit this check at a bank -- bank |
| | 10 | account? |
| 10:06 | 11 | A.   No. |
| 10:06 | 12 | Q.   Do you know Nader Elhuzayel? |
| 10:06 | 13 | A.   No. |
| 10:06 | 14 | Q.   Do you know a person named Husam Elhuzayel? |
| 10:06 | 15 | A.   No. |
| 10:06 | 16 | MR. LENGYEL-LEAHU:  Objection.  Relevance, |
| | 17 | Your Honor. |
| 10:06 | 18 | THE COURT:  Overruled. |
| 10:06 | 19 | BY MR. NAM: |
| 10:06 | 20 | Q.   Do you know a person named Falak Elhuzayel? |
| 10:06 | 21 | A.   No. |
| 10:06 | 22 | Q.   Among the three persons that I mentioned, did you give |
| | 23 | any of them permission to deposit this check at any bank |
| | 24 | account? |
| 10:06 | 25 | A.   No. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:07 | 1 | MR. NAM:  Nothing further, Your Honor. |
| 10:07 | 2 | THE COURT:  Cross-examination. |
| 10:07 | 3 | Mr. Lengyel-Leahu? |
| 10:07 | 4 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 10:07 | 5 | THE COURT:  Ms. Corrigan? |
| 10:07 | 6 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 10:07 | 7 | THE COURT:  May this witness be excused also? |
| 10:07 | 8 | MS. CORRIGAN:  Yes, Your Honor. |
| 10:07 | 9 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 10:07 | 10 | MR. NAM:  Yes, Your Honor. |
| 10:07 | 11 | THE COURT:  All right.  Sir, thank you very much. |
| | 12 | We're trying to excuse you and get you back to your |
| | 13 | business. |
| 10:07 | 14 | THE WITNESS:  Thank you. |
| 10:07 | 15 | THE COURT:  Pleasure.  You may step down. |
| 10:07 | 16 | *(Witness excused.)* |
| 10:07 | 17 | THE COURT:  Counsel, call your next witness, |
| | 18 | please. |
| 10:07 | 19 | MR. NAM:  *(No response.)* |
| 10:07 | 20 | THE COURT:  Your next witness, please. |
| 10:07 | 21 | MR. NAM:  May I have just a moment, Your Honor? |
| 10:07 | 22 | THE COURT:  Sure. |
| 10:07 | 23 | MR. NAM:  We have one more civilian witness -- |
| 10:07 | 24 | THE COURT:  Oh. |
| 10:07 | 25 | MR. NAM:  -- your Honor. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:07 | 1 | THE COURT:  Who? |
| 10:07 | 2 | MR. NAM:  The United States calls Yoo Yun Kim. |
| 10:07 | 3 | THE COURT:  Thank you. |
| 10:07 | 4 | Do we need an interpreter for Ms. *(sic)* Kim? |
| 10:08 | 5 | MR. NAM:  That's correct, Your Honor.  A Korean |
| | 6 | interpreter, I believe. |
| 10:08 | 7 | THE COURT:  And do we have a Korean interpreter? |
| 10:08 | 8 | MR. NAM:  Yes, Your Honor.  An interpreter is |
| | 9 | coming in as well. |
| 10:08 | 10 | THE COURT:  Thank you very much. |
| 10:08 | 11 | MR. LENGYEL-LEAHU:  Your Honor, one of the jurors |
| | 12 | raised her hand.  I think she has -- |
| 10:08 | 13 | A JUROR:  I need an extra pen. |
| 10:08 | 14 | THE COURT:  Hum? |
| 10:08 | 15 | A JUROR:  A pen. |
| 10:08 | 16 | THE COURT:  Oh, a pen.  Absolutely.  We have an |
| | 17 | unlimited supply of pens, I promise.  So we'll get you some |
| | 18 | pens.  In fact, we'll start putting up notepads at the side |
| | 19 | so you have them whenever you need them, if you run out of |
| | 20 | any notepads.  And we'll start putting pencils up there -- |
| | 21 | pens for you. |
| 10:08 | 22 | Sir, would you -- I'm sorry.  Are you the Korean |
| | 23 | interpreter? |
| 10:08 | 24 | Would you be kind enough to state your name, |
| | 25 | please. |

| | | |
|---|---|---|
| 10:08 | 1 | THE INTERPRETER:  Sunrye Ann Park.  State of |
| | 2 | California Certified Court Interpreter in Korean language. |
| | 3 | And my oath is on file. |
| 10:08 | 4 | THE COURT:  And you're certified? |
| 10:08 | 5 | KOREAN INTERPRETER:  Yes.  I'm certified as an |
| | 6 | interpreter. |
| 10:08 | 7 | **KOREAN INTERPRETER SWORN** |
| 10:08 | 8 | *(Interpreter sworn to translate from English to* |
| | 9 | *Korean and from Korean to English to the best of* |
| | 10 | *his/her ability.)* |
| 10:09 | 11 | THE WITNESS:  I do. |
| 10:09 | 12 | THE COURT:  Thank you very much. |
| 10:09 | 13 | And now, sir, would you raise your right hand.  And |
| | 14 | you are Mr. Yoo Yun Kim. |
| 10:09 | 15 | **YOO YUN KIM, CALLED BY THE GOVERNMENT, SWORN** |
| 10:09 | 16 | THE WITNESS:  I do. |
| 10:09 | 17 | THE COURT:  Thank you, sir.  If you'd be kind |
| | 18 | enough to lower your hand.  And if you and the interpreter |
| | 19 | would walk along this wall over here. |
| 10:09 | 20 | Mr. Kim, if you'd be seated.  And if the |
| | 21 | interpreter would stand behind you. |
| 10:10 | 22 | Mr. Kim, would you state your full name for the |
| | 23 | jury, please. |
| 10:10 | 24 | THE WITNESS:  Yoo Yun Kim. |
| 10:10 | 25 | THE COURT:  Would you spell your last, sir. |

| 10:10 | 1 | THE WITNESS:  K-I-M. |
|---|---|---|
| 10:10 | 2 | THE COURT:  Thank you. |
| 10:10 | 3 | Direct examination by the government, please. |
| 10:10 | 4 | MR. NAM:  Thank you, Your Honor. |
| 10:10 | 5 | **DIRECT EXAMINATION** |
| 10:10 | 6 | BY MR. NAM: |
| 10:10 | 7 | Q.   Good morning, Mr. Kim. |
| 10:10 | 8 | A.   Good morning. |
| 10:10 | 9 | MR. NAM:  And, Madam Interpreter, if you could |
|  | 10 | speak -- |
| 10:10 | 11 | KOREAN INTERPRETER:  Okay.  Sorry. |
| 10:10 | 12 | BY MR. NAM: |
| 10:10 | 13 | Q.   Where do you live, Mr. Kim? |
| 10:10 | 14 | A.   In Anaheim. |
| 10:10 | 15 | Q.   Do you live in an apartment or a single-family |
|  | 16 | residence? |
| 10:10 | 17 | A.   In an apartment. |
| 10:10 | 18 | Q.   How long have you lived at your current apartment? |
| 10:11 | 19 | A.   About five years. |
| 10:11 | 20 | Q.   Before you moved to your current apartment, where did |
|  | 21 | you live? |
| 10:11 | 22 | MR. LENGYEL-LEAHU:  Objection.  Relevance, |
|  | 23 | Your Honor. |
| 10:11 | 24 | THE COURT:  I'm not certain yet.  I don't know if |
|  | 25 | there's a check missing; and, if it's missing, from what |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

103

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | occasion.  So overruled.                                       |
| 10:11 | 2  | BY MR. NAM:                                                    |
| 10:11 | 3  | Q.   Do you need me to ask the question again, Mr. Kim?        |
| 10:11 | 4  | A.   Yes, please.                                             |
| 10:11 | 5  | Q.   Before you moved to the current apartment, where did     |
|       | 6  | you live?                                                      |
| 10:11 | 7  | A.   In the same apartment complex.                           |
| 10:11 | 8  | Q.   Was it at a different apartment unit?                    |
| 10:11 | 9  | A.   Yes.  I was living in the same apartment complex, but    |
|       | 10 | in a different unit.                                          |
| 10:11 | 11 | Q.   Do you have a checking account with a bank?              |
| 10:12 | 12 | A.   Yes, I do.                                               |
| 10:12 | 13 | Q.   Which bank do you have your checking account with?       |
| 10:12 | 14 | A.   Hanmi Bank.                                              |
| 10:12 | 15 | *(Court reporter requests clarification for the*             |
|       | 16 | *record.)*                                                    |
| 10:12 | 17 | KOREAN INTERPRETER:  H-A-N-M-I.                              |
| 10:12 | 18 | BY MR. NAM:                                                    |
| 10:12 | 19 | Q.   How long have you had your checking account with Hanmi   |
|       | 20 | Bank?                                                          |
| 10:12 | 21 | A.   More than 15 years.                                      |
| 10:12 | 22 | Q.   Have you ever had an incident in which a box of checks   |
|       | 23 | that you ordered from Hanmi Bank never arrived?              |
| 10:12 | 24 | A.   Yes.                                                     |
| 10:12 | 25 | Q.   Was this in around April of 2015?                       |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 293   Filed 03/31/17   Page 104 of 144   Page ID #:4580
8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

104

| | | |
|---|---|---|
| 10:13 | 1 | A.   Yes. |
| 10:13 | 2 | Q.   Did you later learn that that box of checks was mailed |
| | 3 | to your old address? |
| 10:13 | 4 | A.   Yes. |
| 10:13 | 5 | Q.   Going back to April 2015.  When you learned that the |
| | 6 | initial box of checks that you ordered did not arrive at |
| | 7 | your address, what did you do? |
| 10:13 | 8 | A.   I went to the bank and I placed another order. |
| 10:14 | 9 | Q.   Did you receive any temporary checks in the meantime |
| | 10 | while waiting for the new order to arrive? |
| 10:14 | 11 | MR. LENGYEL-LEAHU:  Objection.  Leading. |
| 10:14 | 12 | THE COURT:  Sustained. |
| 10:14 | 13 | Reask the question. |
| 10:14 | 14 | MR. NAM:  Yes, Your Honor. |
| 10:14 | 15 | BY MR. NAM: |
| 10:14 | 16 | Q.   Did the -- did the new order of checks that you made |
| | 17 | arrive at your apartment? |
| 10:14 | 18 | MR. LENGYEL-LEAHU:  Objection.  Leading. |
| 10:14 | 19 | THE COURT:  Sustained. |
| 10:14 | 20 | BY MR. NAM: |
| 10:14 | 21 | Q.   Did, uh -- Mr. Kim, you just testified that you made a |
| | 22 | new order of checks.  Did -- what happened after you made |
| | 23 | that order? |
| 10:14 | 24 | MR. LENGYEL-LEAHU:  Objection.  Vague, Your Honor. |
| 10:14 | 25 | THE COURT:  Overruled. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

105

| | | |
|---|---|---|
| 10:15 | 1 | BY MR. NAM: |
| 10:15 | 2 | Q.   Do you need me to repeat the question, Mr. Kim? |
| 10:15 | 3 | A.   Yes, please. |
| 10:15 | 4 | Q.   What happened after you made the second order of |
| | 5 | checks? |
| 10:15 | 6 | A.   The check box that I reordered didn't arrive.  And I |
| | 7 | knew that there was something going on.  I don't know |
| | 8 | exactly, but something bad was going on.  So I had to place |
| | 9 | another order. |
| 10:15 | 10 | MR. LENGYEL-LEAHU:  Objection.  Move to strike the |
| | 11 | portion that was nonresponsive. |
| 10:15 | 12 | THE COURT:  Overruled. |
| 10:15 | 13 | It was responsive, Counsel. |
| 10:15 | 14 | BY MR. NAM: |
| 10:15 | 15 | Q.   So as you were -- after you made the second order of |
| | 16 | checks, did you have to -- did you have to have your bank |
| | 17 | account number changed? |
| 10:16 | 18 | MR. LENGYEL-LEAHU:  Leading. |
| 10:16 | 19 | THE COURT:  Overruled. |
| 10:16 | 20 | THE WITNESS:  Yes. |
| 10:16 | 21 | BY MR. NAM: |
| 10:16 | 22 | Q.   Why did you have to get a new account number? |
| 10:16 | 23 | A.   I changed my account number because the bank employee |
| | 24 | informed me there was something going on.  So he just -- he |
| | 25 | or she -- told me to get a new account number. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:16 | 1 | Q.   Do you know what your bank employee meant by something |
| | 2 | going on? |
| 10:16 | 3 | MR. LENGYEL-LEAHU:  Objection, Your Honor. |
| | 4 | Speculation and hearsay. |
| 10:16 | 5 | THE COURT:  No.  This is a question about what he |
| | 6 | thought.  Overruled. |
| 10:16 | 7 | MR. NAM:  I'm asking if the witness -- |
| 10:16 | 8 | THE COURT:  I know what you're asking.  And he can |
| | 9 | answer the question.  Thank you. |
| 10:17 | 10 | MR. NAM:  Thank you, Your Honor. |
| 10:17 | 11 | THE COURT:  Unless you want me to reverse that |
| | 12 | ruling?  I'm just joking with you.  Thank you. |
| 10:17 | 13 | Answer the question, sir. |
| 10:17 | 14 | THE WITNESS:  The employee told me that somebody |
| | 15 | used my check in my -- the check that was -- the employee |
| | 16 | told me that somebody used my check.  And the employee told |
| | 17 | me that it's better for me to get a new account number. |
| 10:17 | 18 | THE COURT:  *(To the jury:)* Now, let me caution you |
| | 19 | once again:  That's an employee telling him something.  But |
| | 20 | that person's not here.  In other words, we're not hearing |
| | 21 | from that person, so we don't have the ability for |
| | 22 | cross-examination. |
| 10:17 | 23 | It's not being introduced for the truth of what |
| | 24 | that employee said to him.  It's introduced so that we now |
| | 25 | can hear what his actions were; in other words, basically |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

107

|   |   |   |
|---|---|---|
| | 1 | contemporaneous actions.  If it is hearsay, it comes under |
| | 2 | 803, subsection (1).  Actually, it's not introduced for |
| | 3 | hearsay purposes.  It's just to show what action he takes |
| | 4 | subsequent to the information. |
| 10:18 | 5 | But you can't take that information as truthful. |
| | 6 | In other words, whatever that information is, it's hearsay. |
| 10:18 | 7 | Counsel, your next question now. |
| 10:18 | 8 | BY MR. NAM: |
| 10:18 | 9 | Q.   Mr. Kim, I'm going to -- I'd like to show you what has |
| | 10 | been marked by the government as Exhibit 942-A. |
| 10:18 | 11 | *(Exhibit provided to the witness.)* |
| 10:18 | 12 | BY MR. NAM: |
| 10:18 | 13 | Q.   Do you recognize this Exhibit 942-A? |
| 10:18 | 14 | A.   Yes. |
| 10:18 | 15 | Q.   What is Exhibit 942-A? |
| 10:19 | 16 | A.   It appears to me that this is my check used by somebody |
| | 17 | else. |
| 10:19 | 18 | Q.   Does it -- does it have your name on it? |
| 10:19 | 19 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  The |
| | 20 | document does speak for itself. |
| 10:19 | 21 | THE COURT:  Overruled. |
| 10:19 | 22 | THE WITNESS:  Are you talking about the name above |
| | 23 | the address line? |
| 10:19 | 24 | BY MR. NAM: |
| 10:19 | 25 | Q.   I'm talking about your name.  Is it on the check? |

| | | |
|---|---|---|
| 10:19 | 1 | A.   Yes. |
| 10:19 | 2 | MR. NAM:  The government moves to admit 942-A, |
| | 3 | Your Honor. |
| 10:19 | 4 | MS. CORRIGAN:  No objection. |
| 10:19 | 5 | THE COURT:  Any objection, Counsel? |
| 10:19 | 6 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 10:19 | 7 | THE COURT:  Received.  942-A is received. |
| 10:19 | 8 | *(Exhibit No. 942-A received in evidence.)* |
| 10:19 | 9 | *(Exhibit displayed.)* |
| 10:19 | 10 | BY MR. NAM: |
| 10:19 | 11 | Q.   Now I'm showing you on the screen, where it may be |
| | 12 | easier to read, 942-A.  I'll circle a portion. |
| | 13 | *(Indicating).* |
| 10:20 | 14 | Does that indicate your name? |
| 10:20 | 15 | A.   Yes. |
| 10:20 | 16 | Q.   On the -- not on the screen, but on the exhibit itself |
| | 17 | that you have in front of you, on paper, does it have your |
| | 18 | then current address in April of 2015? |
| 10:20 | 19 | A.   No. |
| 10:20 | 20 | Q.   Does it -- what -- do you recognize the address that is |
| | 21 | on the exhibit? |
| 10:20 | 22 | A.   Yes. |
| 10:20 | 23 | Q.   Without reading what that address is, what is that, |
| | 24 | uh -- what is the relationship between that address and you? |
| 10:21 | 25 | A.   This address is correct.  Only the part -- the unit |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

109

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | number is wrong.                                         |
| 10:21 | 2  | Q.    Is that an old -- a unit where you used to live?  |
| 10:21 | 3  | A.    Yes.                                               |
| 10:21 | 4  | Q.    And does this check indicate that it is from Hanmi |
|       | 5  | Bank?                                                    |
| 10:21 | 6  | A.    Yes.                                               |
| 10:21 | 7  | Q.    Do you also, uh, see numbers lined up at the bottom of |
|       | 8  | the check?                                               |
| 10:21 | 9  | A.    Yes.                                               |
| 10:21 | 10 | Q.    Do you recognize any of the numbers there?        |
| 10:21 | 11 | A.    Yes.                                               |
| 10:21 | 12 | Q.    What are those numbers?                            |
| 10:21 | 13 | A.    It's my account number.                            |
| 10:22 | 14 | Q.    Is this an account number that you had before you  |
|       | 15 | changed the number?                                      |
| 10:22 | 16 | A.    Yes.                                               |
| 10:22 | 17 | Q.    Did you write this check?                          |
| 10:22 | 18 | A.    No.                                                |
| 10:22 | 19 | Q.    Do you see a signature at the bottom right portion of |
|       | 20 | the check?                                               |
| 10:22 | 21 | A.    Yes.                                               |
| 10:22 | 22 | Q.    Is that your signature?                            |
| 10:22 | 23 | A.    No.                                                |
| 10:22 | 24 | Q.    Do you see a name next to the "Pay to the Order of" |
|       | 25 | portion of the check?                                    |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

110

| | | |
|---|---|---|
| 10:22 | 1 | A.    Yes. |
| 10:22 | 2 | Q.    Do you recognize the name there? |
| 10:22 | 3 | A.    No. |
| 10:22 | 4 | Q.    Is that the name of someone you know? |
| 10:22 | 5 | A.    No. |
| 10:22 | 6 | Q.    I'd like to direct your attention to the copy of the |
| | 7 | back side of this check. |
| 10:23 | 8 | *(Exhibit displayed.)* |
| 10:23 | 9 | BY MR. NAM: |
| 10:23 | 10 | Q.    Do you see what appears to be a signature at the right |
| | 11 | side of the screen? |
| 10:23 | 12 | A.    Yes. |
| 10:23 | 13 | Q.    Is that a signature that you recognize? |
| 10:23 | 14 | A.    No. |
| 10:23 | 15 | Q.    Is it the signature of someone you know? |
| 10:23 | 16 | A.    No. |
| 10:23 | 17 | Q.    Returning to the front portion of the check just one |
| | 18 | more time. |
| 10:23 | 19 | *(Exhibit displayed.)* |
| 10:23 | 20 | BY MR. NAM: |
| 10:23 | 21 | Q.    Do you recognize the handwriting as that of someone you |
| | 22 | know? |
| 10:23 | 23 | A.    No. |
| 10:23 | 24 | Q.    Did you give anyone permission to write this check to |
| | 25 | Nader Elhuzayel in the amount of thousand-five dollars? |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

111

| | | |
|---|---|---|
| 10:24 | 1 | A.    No. |
| 10:24 | 2 | Q.    Do you know if -- do you know a person by the name of |
| | 3 | Nader Elhuzayel? |
| 10:24 | 4 | A.    No.  I have no idea. |
| 10:24 | 5 | Q.    Do you know a person named Husam Elhuzayel? |
| 10:24 | 6 | THE INTERPRETER:  Could you repeat that name? |
| 10:24 | 7 | BY MR. NAM: |
| 10:24 | 8 | Q.    Do you know a person named Husam Elhuzayel? |
| 10:24 | 9 | A.    No, I don't know. *(Verbatim.)* |
| 10:24 | 10 | Q.    Do you know a person named Falak Elhuzayel? |
| 10:24 | 11 | A.    No.  This is the first time I've ever heard that name. |
| 10:24 | 12 | Q.    Mr. Kim, were you asked about whether you know Mr.-- |
| | 13 | whether you know Falak, Husam, or Nader Elhuzayel by law -- |
| | 14 | law enforcement agent *(sic)* before you testified today? |
| 10:24 | 15 | MR. LENGYEL-LEAHU:  Objection.  Relevance, |
| | 16 | Your Honor. |
| 10:25 | 17 | THE COURT:  Objection. |
| 10:25 | 18 | What's the relevance? |
| 10:25 | 19 | MR. NAM:  Because the witness appears to have |
| | 20 | testified incorrectly.  I just wanted to put it on the |
| | 21 | record that he has been interviewed by law enforcement |
| | 22 | before.  And -- and he indicated that he did not know these |
| | 23 | individuals.  Given that he just testified that this is the |
| | 24 | first time he'd heard -- |
| 10:25 | 25 | THE COURT:  Isn't that subject to |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | cross-examination?  I don't understand.                      |
| 10:25 | 2  | Did he make a misidentification or --                        |
| 10:25 | 3  | MR. NAM:  No, Your Honor.                                     |
| 10:25 | 4  | THE COURT:  -- indicate -- did he indicate he knew           |
|       | 5  | Elhuzayel before?                                            |
| 10:25 | 6  | MR. NAM:  No, Your Honor.                                     |
| 10:25 | 7  | THE COURT:  I'm confused, then.                              |
| 10:25 | 8  | MR. NAM:  May I, uh -- just out of the *(sic)*               |
|       | 9  | abundance of caution, I wanted to make sure that he -- he    |
|       | 10 | does not know Falak Elhuzayel, and that he's said that to    |
|       | 11 | law enforcement before, not only --                          |
| 10:25 | 12 | THE COURT:  No.  Sustained.  The objection's                 |
|       | 13 | sustained, Counsel.                                          |
| 10:25 | 14 | MR. NAM:  Very well, Your Honor.                             |
| 10:25 | 15 | THE COURT:  Thank you.  It's hearsay.                        |
| 10:25 | 16 | BY MR. NAM:                                                  |
| 10:25 | 17 | Q.   Finally, Mr. Kim, uh, was this check one of the checks  |
|       | 18 | that you were expecting to, uh, receive from your bank?      |
| 10:26 | 19 | A.   Yes, that's right.                                      |
| 10:26 | 20 | Q.   After you made the first order?                         |
| 10:26 | 21 | A.   Yes.  I think this is one of the checks that I ordered  |
|       | 22 | for the first time.                                          |
| 10:26 | 23 | MR. NAM:  Nothing further, Your Honor.                       |
| 10:26 | 24 | THE COURT:  Thank you.                                       |
| 10:26 | 25 | Cross-examination, please.                                   |

| | | |
|---|---|---|
| 10:26 | 1 | Mr. Lengyel-Leahu? |
| 10:26 | 2 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 10:26 | 3 | THE COURT:  And, Ms. Corrigan? |
| 10:26 | 4 | MS. CORRIGAN:  No.  Thank you. |
| 10:26 | 5 | THE COURT:  May this witness also be excused, |
| | 6 | Counsel? |
| 10:26 | 7 | MR. NAM:  Yes, Your Honor. |
| 10:26 | 8 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 10:26 | 9 | MS. CORRIGAN:  *(No response.)* |
| 10:26 | 10 | THE COURT:  Thank you very much. |
| 10:26 | 11 | *(To the witness:)* Sir, thank you very much for |
| | 12 | coming to court.  Go about your business now, and thank you |
| | 13 | for your attendance. |
| 10:26 | 14 | THE WITNESS:  Thank you, Your Honor. |
| 10:27 | 15 | *(Witness excused.)* |
| 10:27 | 16 | THE COURT:  Now, does that finish the interpreters |
| | 17 | that you had today?  The Vietnamese and Korean interpreters? |
| 10:27 | 18 | MR. NAM:  That's correct, Your Honor. |
| 10:27 | 19 | THE COURT:  Does that finish your civilian |
| | 20 | witnesses for today? |
| 10:27 | 21 | MR. NAM:  There may be one more coming. |
| 10:27 | 22 | THE COURT:  Counsel's rising to the occasion.  No. |
| | 23 | Just tell me -- I want the civilians on the stand, and I |
| | 24 | want them on the stand this morning. |
| 10:27 | 25 | Are there anymore civilian witnesses out in that |

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | hallway?                                               |
| 10:27 | 2  | MR. NAM:  No, Your Honor.                              |
| 10:27 | 3  | MS. ELIOT:  I believe there's a civilian witness       |
|       | 4  | in a room, and I would just like --                    |
| 10:27 | 5  | THE COURT:  Go get that witness.                       |
| 10:27 | 6  | MS. ELIOT:  May I discuss an issue with defense        |
|       | 7  | counsel, first?                                        |
| 10:27 | 8  | THE COURT:  Counsel, go get that witness now.          |
| 10:27 | 9  | *(To the jury:)* Just bear with us for a few more      |
|       | 10 | moments so we can get the civilians who've been standing in |
|       | 11 | the hallway back out of court today.  They're relatively |
|       | 12 | short witnesses.                                       |
| 10:28 | 13 | Thank you very much.  If you'd step forward,           |
|       | 14 | please.  And I'm not sure -- what's your name.         |
| 10:28 | 15 | THE WITNESS:  Andrea Medina.                           |
| 10:28 | 16 | THE COURT:  Thank you very much.                       |
| 10:28 | 17 | Would you raise your right hand, please.               |
| 10:28 | 18 | **ANDREA MEDINA, CALLED BY THE GOVERNMENT, SWORN**     |
| 10:28 | 19 | THE WITNESS:  I do.                                    |
| 10:28 | 20 | THE COURT:  If you would be seated, please, in the     |
|       | 21 | witness box.                                           |
| 10:28 | 22 | Then would you tell the jury your full name.           |
| 10:28 | 23 | THE WITNESS:  Andrea Medina.                           |
| 10:28 | 24 | THE COURT:  And spell your last name.                  |
| 10:28 | 25 | THE WITNESS:  Medina, M-E-D-I-N-A.                     |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

115

| | | |
|---|---|---|
| 10:28 | 1 | THE COURT:  Thank you. |
| 10:28 | 2 | Direct examination, please. |
| 10:29 | 3 | **DIRECT EXAMINATION** |
| 10:29 | 4 | BY MS. ELIOT: |
| 10:29 | 5 | Q.  Good morning, Ms. Medina.  Where are you employed? |
| 10:29 | 6 | A.  AT&T Mobility. |
| 10:29 | 7 | THE COURT:  I'm sorry.  You have a soft voice. |
| | 8 | And I apologize.  Would you state that again?  Where are you |
| | 9 | employed? |
| 10:29 | 10 | THE WITNESS:  I work for AT&T. |
| 10:29 | 11 | THE COURT:  AT&T? |
| 10:29 | 12 | THE WITNESS:  Correct. |
| 10:29 | 13 | THE COURT:  All right.  Thank you. |
| 10:29 | 14 | Counsel. |
| 10:29 | 15 | BY MS. ELIOT: |
| 10:29 | 16 | Q.  Do you work at an AT&T retail store? |
| 10:29 | 17 | A.  Correct. |
| 10:29 | 18 | Q.  And what city is that located in? |
| 10:29 | 19 | A.  City of Fullerton. |
| 10:29 | 20 | Q.  Were you working there on May 21st, 2015? |
| 10:29 | 21 | A.  Correct. |
| 10:29 | 22 | Q.  Are you in sales at the AT&T retail store? |
| 10:29 | 23 | A.  Yes. |
| 10:29 | 24 | MS. ELIOT:  Your Honor, if we could place before |
| | 25 | the witness what has been marked as Government's Exhibit |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

116

|  |  |  |
|---|---|---|
|  | 1 | 615. |
| 10:29 | 2 | THE COURT:  625? |
| 10:29 | 3 | MS. ELIOT:  I'm sorry.  Six-one-five. |
| 10:29 | 4 | THE COURT:  615.  Thank you. |
| 10:29 | 5 | BY MS. ELIOT: |
| 10:29 | 6 | Q.   Ms. Medina, do you recognize the documents marked as |
|  | 7 | 615? |
| 10:29 | 8 | A.   Yes, I do. |
| 10:29 | 9 | Q.   What are they? |
| 10:30 | 10 | A.   It's a receipt with *(verbatim)* a purchase of an iPhone, |
|  | 11 | LG tablet, and some accessories for the cellphone. |
| 10:30 | 12 | MS. ELIOT:  Your Honor, at this time the |
|  | 13 | government moves to admit Exhibit 615. |
| 10:30 | 14 | THE COURT:  Any objection, Counsel? |
| 10:30 | 15 | MS. CORRIGAN:  No, Your Honor. |
| 10:30 | 16 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 10:30 | 17 | THE COURT:  615's received, Counsel. |
| 10:30 | 18 | MS. ELIOT:  Thank you, Your Honor. |
| 10:30 | 19 | *(Exhibit No. 615 received in evidence.)* |
| 10:30 | 20 | *(Exhibit displayed.)* |
| 10:30 | 21 | BY MS. ELIOT: |
| 10:30 | 22 | Q.   Does the receipt reflect a transaction date of |
|  | 23 | May 21st, 2015? |
| 10:30 | 24 | A.   Correct. |
| 10:30 | 25 | Q.   And do you recall that particular transaction that day? |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:30 | 1 | A.    Yes, I do. |
| 10:30 | 2 | Q.    And on that receipt, does it indicate that the location |
| | 3 | was your retail store in Fullerton? |
| 10:30 | 4 | A.    Yes. |
| 10:30 | 5 | Q.    Does the receipt identify the sales associate who rang |
| | 6 | up the sale? |
| 10:30 | 7 | A.    Yes. |
| 10:30 | 8 | Q.    And who is that associate? |
| 10:30 | 9 | A.    That's me.  Andrea Medina. |
| 10:30 | 10 | Q.    And on the receipt, is there an approximate time of the |
| | 11 | transaction on May 21st? |
| 10:30 | 12 | A.    11:24 with 13 seconds. |
| 10:31 | 13 | Q.    Do you recall the customers you waited on for that |
| | 14 | transaction that day? |
| 10:31 | 15 | A.    Yes, I do. |
| 10:31 | 16 | Q.    And can you describe the customers, how many, and |
| | 17 | their -- male or female? |
| 10:31 | 18 | A.    It was a female and her son.  They came into the store |
| | 19 | to open up a line of -- open up an account with us.  We -- |
| | 20 | we sold, um -- we opened a business account based on the |
| | 21 | mom's, um, business.  Um, they wanted a cellphone.  Um, I |
| | 22 | offered the promotions we had.  So they end up *(verbatim)* |
| | 23 | taking also a, um -- a tablet with 'em. |
| 10:31 | 24 | Q.    And was the cellphone a new or a refurbished phone? |
| 10:31 | 25 | A.    We only sell brand new.  So it was a brand new phone. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:31 | 1 | Q.   And do you recall how the customers paid for the |
| | 2 | transaction? |
| 10:31 | 3 | A.   They paid cash. |
| 10:31 | 4 | MS. ELIOT:  Nothing further, Your Honor. |
| 10:31 | 5 | THE COURT:  Cross-examination? |
| 10:31 | 6 | Mr. Lengyel-Leahu? |
| 10:32 | 7 | MR. LENGYEL-LEAHU:  No, thank you. |
| 10:32 | 8 | THE COURT:  Ms. Corrigan? |
| 10:32 | 9 | MS. CORRIGAN:  No, Your Honor. |
| 10:32 | 10 | THE COURT:  May this witness be excused, Counsel? |
| 10:32 | 11 | MS. ELIOT:  Yes, Your Honor. |
| 10:32 | 12 | THE COURT:  I'm sorry? |
| 10:32 | 13 | MS. CORRIGAN:  Yes. |
| 10:32 | 14 | THE COURT:  May this witness be excused, |
| | 15 | Mr. Lengyel-Leahu. |
| 10:32 | 16 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 10:32 | 17 | THE COURT:  Thank you. |
| 10:32 | 18 | All right.  Thank you very much. |
| 10:32 | 19 | *(Witness excused.)* |
| 10:32 | 20 | THE COURT:  Now does that resolve all the civilian |
| | 21 | witnesses you have out in the hallway? |
| 10:32 | 22 | MS. ELIOT:  Yes, Your Honor. |
| 10:32 | 23 | THE COURT:  So the rest of the witnesses today |
| | 24 | would be law enforcement or law enforcement connected? |
| 10:32 | 25 | MS. ELIOT:  Yes, Your Honor. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:32 | 1 | THE COURT:  Okay. |
| 10:32 | 2 | All right.  Then why don't we take a recess for |
| | 3 | just a moment. |
| 10:32 | 4 | Who would your next witness be? |
| 10:32 | 5 | MS. HEINZ:  The next witness will be Special Agent |
| | 6 | Mark Civiletto. |
| 10:32 | 7 | THE COURT:  All right. |
| 10:32 | 8 | Can you proceed with that agent without Alyssa |
| | 9 | Powell and Michael Khouri? |
| 10:32 | 10 | MS. HEINZ:  Yes, we can. |
| 10:32 | 11 | THE COURT:  Well, why don't we start?  Because I |
| | 12 | think after a reminder by all counsel yesterday, that we |
| | 13 | need to have a little longer recess today, from about 11:00 |
| | 14 | to probably 1:00 o'clock, about that period of time.  So |
| | 15 | you're going to have -- be having a little lengthier |
| | 16 | lunchtime, for some business that we can conduct. |
| 10:33 | 17 | And I'm wondering if we can start with that witness |
| | 18 | until about, oh, 10 to the hour? |
| 10:33 | 19 | MS. HEINZ:  Yes.  Of course, Your Honor. |
| 10:33 | 20 | THE COURT:  Thank you. |
| 10:33 | 21 | If you'd be kind enough to get that witness, |
| | 22 | please. |
| 10:33 | 23 | (To the jury:) So bear with us for just a moment so |
| | 24 | we're making use of your time -- okay? -- wisely. |
| 10:33 | 25 | Thank you, sir.  Would you step forward, please. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

120

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | And raise your right hand, please.                               |
| 10:33 | 2  | **CHARLES MARK CIVILETTO, CALLED BY THE GOVERNMENT, SWORN**       |
| 10:33 | 3  | THE WITNESS:  I do.                                               |
| 10:33 | 4  | THE COURT:  Thank you, sir.  If you'd be kind                    |
|       | 5  | enough to walk along the side of the jury railing.  The          |
|       | 6  | entrance to the jury *(sic)* box is just to my left.             |
| 10:33 | 7  | And, if you'd be seated in the witness box, sir.                 |
| 10:34 | 8  | Please state your full name and spell your last.                 |
| 10:34 | 9  | THE WITNESS:  Full name is Charles Mark Civiletto,               |
|       | 10 | C-I-V-I-L-E-T-T-O.                                                |
| 10:34 | 11 | THE COURT:  Thank you.  And we're going to begin                 |
|       | 12 | with your direct examination today.  And you'll be returning     |
|       | 13 | early this afternoon.                                            |
| 10:34 | 14 | Counsel, on behalf of the government, your direct                |
|       | 15 | examination, please.                                             |
| 10:34 | 16 | MS. HEINZ:  Thank you, Your Honor.                               |
| 10:34 | 17 | **DIRECT EXAMINATION**                                           |
| 10:34 | 18 | BY MS. HEINZ:                                                    |
| 10:34 | 19 | Q.   Special Agent Civiletto, where are you employed?            |
| 10:34 | 20 | A.   The Federal Bureau of Investigation.                        |
| 10:34 | 21 | Q.   And what is your position?                                  |
| 10:34 | 22 | A.   Special Agent.                                              |
| 10:34 | 23 | Q.   How long have you been employed with the FBI?               |
| 10:34 | 24 | A.   It will be 7 years July 5th.                                |
| 10:34 | 25 | Q.   During your employment with the FBI, have you received      |

```
                1   training in the execution of search warrants?
10:34           2   A.   I have.
10:34           3   Q.   Please describe briefly that training.
10:34           4   A.   We had formal training in the new agent training class
                5   in Quantico, Virginia.
10:34           6   Q.   And during your time at the FBI, have you participated
                7   in the execution of search warrants?
10:34           8   A.   I have.
10:34           9   Q.   Approximately how many?
10:34          10   A.   Probably about twelve.
10:35          11   Q.   Turning your attention to May 21st, 2015.
10:35          12       On May 21st 2015, did you participate in the execution
               13   of a search warrant?
10:35          14   A.   I did.
10:35          15   Q.   Okay.  And was -- was the execution of that search
               16   warrant -- where was it?
10:35          17   A.   The location was 2123 West Lincoln Avenue in Anaheim,
               18   California.
10:35          19   Q.   And based on the evidence or the infor -- the materials
               20   that you found there at that location, what were the names
               21   that were on most of the documents?  The last name.
10:35          22   A.   The last name that we saw the most was "Elhuzayer"
               23   (sic).
10:35          24   Q.   Was that search guided by a search warrant?
10:35          25   A.   Yes, it was.
```

| | | |
|---|---|---|
| 10:35 | 1 | Q.   And was your role -- what was your role during the |
| | 2 | execution of the search warrant? |
| 10:35 | 3 | A.   I was the team leader. |
| 10:35 | 4 | Q.   Okay.  I'd like you to look at what's been marked as |
| | 5 | Government's Exhibit 609. |
| 10:36 | 6 | *(Exhibit provided to the witness.)* |
| 10:36 | 7 | BY MS. HEINZ: |
| 10:36 | 8 | Q.   What is Government's Exhibit 609? |
| 10:36 | 9 | A.   It's a checkbook. |
| 10:36 | 10 | Q.   And before today have you ever seen Government's |
| | 11 | Exhibit 609? |
| 10:36 | 12 | A.   I have. |
| 10:36 | 13 | Q.   When was the first time that you saw it? |
| 10:36 | 14 | A.   On May 21st, 2015, at the search location. |
| 10:36 | 15 | Q.   And did you seize Government's Exhibit 609 during the |
| | 16 | search of the location? |
| 10:36 | 17 | A.   I did. |
| 10:36 | 18 | Q.   After you seized it, what did you do with Government's |
| | 19 | Exhibit 609? |
| 10:36 | 20 | A.   I turned it over to the collection agent for |
| | 21 | processing. |
| 10:36 | 22 | Q.   I'd like you to look at what's been marked as |
| | 23 | Government's Exhibit 955 and 956. |
| 10:37 | 24 | *(Exhibits provided to the witness.)* |
| | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:37 | 1 | BY MS. HEINZ: |
| 10:37 | 2 | Q.   What are Government's Exhibits 955 and 956? |
| 10:37 | 3 | A.   They are checks. |
| 10:37 | 4 | Q.   Are they actually checks or are they photographs of |
| | 5 | checks? |
| 10:37 | 6 | A.   They're photographs of a check. |
| 10:37 | 7 | Q.   Have you compared Government's Exhibits 955 and 956 to |
| | 8 | what is Government's Exhibit 609? |
| 10:37 | 9 | A.   Yes. |
| 10:37 | 10 | Q.   And what is Government's Exhibit 609? |
| 10:37 | 11 | A.   It is a checkbook. |
| 10:37 | 12 | Q.   Does Government's Exhibit 955 accurately depict |
| | 13 | Check No. 3341 that is within the checkbook that is |
| | 14 | Government's Exhibit 609? |
| 10:38 | 15 | A.   Yes, it does. |
| 10:38 | 16 | Q.   And does Exhibit 956 accurately depict Check No. 3357 |
| | 17 | that is within the checkbook that is Government's |
| | 18 | Exhibit 609? |
| 10:38 | 19 | A.   Yes, it does. |
| 10:38 | 20 |         MS. HEINZ:  Your Honor, the government moves |
| | 21 | Government's Exhibits 609, 955 and 956 into evidence. |
| 10:38 | 22 |         MS. CORRIGAN:  No objection. |
| 10:38 | 23 |         MR. LENGYEL-LEAHU:  No objection. |
| 10:38 | 24 |         THE COURT:  All right.  609's received. |
| 10:38 | 25 |         *(Exhibit No. 609 received in evidence.)* |

| | | |
|---|---|---|
| 10:38 | 1 | THE COURT:  955 and 956 are received, counsel. |
| 10:38 | 2 | *(Exhibit Nos. 955 and 956 received in evidence.)* |
| 10:38 | 3 | MS. HEINZ:  Would you please publish. |
| 10:38 | 4 | *(Exhibit displayed.)* |
| 10:38 | 5 | THE COURT:  So this would be 955; is that correct? |
| 10:38 | 6 | MS. HEINZ:  Yes. |
| 10:38 | 7 | BY MS. ELIOT: |
| 10:38 | 8 | Q.   And, Special Agent Civiletto, what is on the screen in |
| | 9 | front of you?  Is that Exhibit 955? |
| 10:38 | 10 | A.   Yes, it is. |
| 10:38 | 11 | MS. HEINZ:  Could you please publish 956. |
| 10:39 | 12 | *(Exhibit displayed.)* |
| 10:39 | 13 | BY MS. HEINZ: |
| 10:39 | 14 | Q.   Special Agent Civiletto, the same question:  Is what is |
| | 15 | on the screen before you?  Is that Government's Exhibit 956? |
| 10:39 | 16 | A.   Yes, it is. |
| 10:39 | 17 | MS. CORRIGAN:  And, Your Honor, just for the |
| | 18 | record, I notice that the name Badawi's in the lower |
| | 19 | right-hand corner of this document.  And I would just ask |
| | 20 | that the Court admonish the jury that this evidence was |
| | 21 | found at the co-defendant's residence and not my |
| | 22 | residence -- or my client's residence; and that he's not the |
| | 23 | subject of the bank fraud charges. |
| 10:39 | 24 | I'm just concerned that there might be some |
| | 25 | association. |

| | | |
|---|---|---|
| 10:39 | 1 | THE COURT:  Some confusion? |
| 10:39 | 2 | **STIPULATION** |
| 10:39 | 3 | MS. HEINZ:  Yes.  Your Honor, the government would |
| | 4 | stipulate that that entry at the bottom is simply a number |
| | 5 | that was put on it by the government, and that Mr. Badawi |
| | 6 | has nothing to do with this exhibit or this check. |
| 10:39 | 7 | THE COURT:  Stipulated to by Ms. Corrigan? |
| 10:39 | 8 | MS. CORRIGAN:  So stipulated. |
| 10:40 | 9 | THE COURT:  All right.  Thank you. |
| 10:40 | 10 | MS. HEINZ:  Your Honor, at this time could we show |
| | 11 | the jurors Government's Exhibit 609? |
| 10:40 | 12 | THE COURT:  You mean on the screen? |
| 10:40 | 13 | MS. HEINZ:  No.  It's a physical exhibit, |
| | 14 | Your Honor. |
| 10:40 | 15 | THE COURT:  No.  I'm not going to allow that at |
| | 16 | this time, Counsel. |
| 10:40 | 17 | MS. HEINZ:  Thank you, Your Honor. |
| 10:40 | 18 | THE COURT:  It's consumptive of time.  They'll |
| | 19 | have that during the deliberations. |
| 10:40 | 20 | MS. HEINZ:  Thank you, Your Honor. |
| 10:40 | 21 | Nothing further. |
| 10:40 | 22 | THE COURT:  Thank you. |
| 10:40 | 23 | Cross-examination, please. |
| 10:40 | 24 | Mr. Lengyel-Leahu? |
| 10:40 | 25 | MR. LENGYEL-LEAHU:  *(No response.)* |

| | | |
|---|---|---|
| 10:40 | 1 | THE COURT:  *(To the witness:)*  Maybe you won't be |
| | 2 | returning after lunch.  We'll see. |
| 10:40 | 3 | **CROSS-EXAMINATION** |
| 10:40 | 4 | BY MR. LENGYEL-LEAHU: |
| 10:40 | 5 | Q.   At what time did you execute this search warrant? |
| 10:40 | 6 | A.   It was later in the afternoon.  I don't recall the |
| | 7 | exact time. |
| 10:41 | 8 | Q.   And you were the team leader? |
| 10:41 | 9 | A.   Yes, I was. |
| 10:41 | 10 | Q.   And this occurred at the motel? |
| 10:41 | 11 | A.   Yes, it did. |
| 10:41 | 12 | Q.   When you say in the afternoon -- it was still daylight? |
| 10:41 | 13 | A.   Yes, it was.  It was later in the evening, though. |
| 10:41 | 14 | Q.   Sun hadn't quite set yet; is that right? |
| 10:41 | 15 | A.   No, it has not -- did not. |
| 10:41 | 16 | Q.   Okay.  And how many members of your team were there? |
| 10:41 | 17 | A.   I would say approximately ten. |
| 10:41 | 18 | Q.   And the only item that you seized was this checkbook |
| | 19 | and these two checks? |
| 10:41 | 20 | A.   The only item that I seized. |
| 10:41 | 21 | There were other items that were seized. |
| 10:41 | 22 | Q.   Yeah.  I was just asking you for what you, as a team |
| | 23 | leader -- |
| 10:42 | 24 | A.   Correct. |
| 10:42 | 25 | Q.   -- seized. |

| | | |
|---|---|---|
| 10:42 | 1 | A.    Correct. |
| 10:42 | 2 | Q.    And once you seize an item, you place it into evidence; |
| | 3 | is that right? |
| 10:42 | 4 | A.    That's correct. |
| 10:42 | 5 | Q.    And I would imagine when you handle evidence, you're |
| | 6 | wearing gloves; is that right? |
| 10:42 | 7 | A.    That's correct. |
| 10:42 | 8 | Q.    To prevent any contamination of the evidence, DNA, |
| | 9 | fingerprints, that sort of thing? |
| 10:42 | 10 | A.    That's correct.  We were wearing gloves. |
| 10:42 | 11 | Q.    Okay.  Could you describe the room, how it appeared to |
| | 12 | you when you came in? |
| 10:42 | 13 | MS. HEINZ:  Objection.  Relevance. |
| 10:42 | 14 | THE COURT:  Overruled. |
| 10:42 | 15 | *(To the witness:)* You can answer the question, sir. |
| 10:42 | 16 | *(To counsel:)* Do you mean...? |
| 10:42 | 17 | MR. LENGYEL-LEAHU:  The general estate of |
| | 18 | housecleaning. |
| 10:42 | 19 | THE COURT:  Overruled. |
| 10:42 | 20 | THE WITNESS:  We took over the premises from the |
| | 21 | FBI SWAT team.  When we took over the premises and we opened |
| | 22 | the door, the conditions -- it was a one-room motel.  And |
| | 23 | the conditions resembled something of a hoarding condition |
| | 24 | with contents everywhere. |
| | 25 | |

| | | |
|---|---|---|
| 10:43 | 1 | BY MR. LENGYEL-LEAHU: |
| 10:43 | 2 | Q.    A one-room hotel.  How many beds? |
| 10:43 | 3 | A.    There were two. |
| 10:43 | 4 | Q.    You say you took it over from the SWAT team.  The SWAT |
| | 5 | team had arrived first? |
| 10:43 | 6 | A.    That's correct. |
| 10:43 | 7 | Q.    Did they make physical entry into the premises? |
| 10:43 | 8 | A.    They did. |
| 10:43 | 9 | Q.    So, in essence, your search occurs after some other |
| | 10 | group has already gone in? |
| 10:43 | 11 | A.    Yes.  Their job was to secure it and render that |
| | 12 | facility safe. |
| 10:43 | 13 | Q.    Well, that's their job.  But what I'm getting at is, if |
| | 14 | you're performing a forensics search, you -- you generally |
| | 15 | wanna be the first one there; right? |
| 10:43 | 16 |          MS. HEINZ:  Objection.  Relevance. |
| 10:43 | 17 |          THE COURT:  Overruled. |
| 10:43 | 18 |          *(To the witness:)* You can answer the question, sir. |
| 10:44 | 19 |          THE WITNESS:  Sir, in this situation, uh, first -- |
| | 20 | safety is first.  And when you have a team of ten people |
| | 21 | going in, I'd prefer to make the area safe before we make |
| | 22 | entry. |
| 10:44 | 23 | BY MR. LENGYEL-LEAHU: |
| 10:44 | 24 | Q.    Okay.  But -- but, for scientific purposes, to prevent |
| | 25 | any contamination of the -- at the scene, you would |

 1    personally wanna be the first one there to make sure that

 2    you could testify that that's the condition it was in

 3    without any possible contamination; correct?

10:44  4    A.   I can just testify to what I saw, sir.  And when we

 5    went in, those were the conditions.  And I wasn't with the

 6    FBI SWAT team.

10:44  7              MR. LENGYEL-LEAHU:  Okay.  Thank you.

10:44  8              THE COURT:  Ms. Corrigan, do you have questions on

 9    cross-examination?

10:44 10              MS. CORRIGAN:  No, Your Honor.  It doesn't concern

11    my client.

10:44 12              THE COURT:  Any questions on redirect examination?

10:44 13              MS. HEINZ:  None, Your Honor.

10:44 14              THE COURT:  *(To the witness:)*  Now, I'm going to

15    ask you to remain on call.  I don't know if you'll be needed

16    back in court, but it will save subpoenas going out or

17    across the country.

10:44 18         Thank you very much, sir.  You may step down.

10:44 19         *(Witness steps down.)*

10:44 20              THE COURT:  And do you have another witness you

21    can call, Counsel, just before we take a recess?

10:45 22              MR. NAM:  The United States calls Manuel T. Lopez.

10:45 23              THE COURT:  Thank you.

10:45 24         And if you'd ask the gentleman to step in, please.

10:45 25         Thank you, sir.  Would you raise your right hand,

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | please.                                                         |
| 10:45 | 2  | **MANUEL T. LOPEZ, CALLED BY THE GOVERNMENT, SWORN**            |
| 10:45 | 3  | THE WITNESS:  Yes.                                              |
| 10:45 | 4  | THE COURT:  Thank you, sir.  If you'd be kind                   |
|       | 5  | enough to walk along the side of the jury railing.  The        |
|       | 6  | entrance to the jury *(sic)* box is to my left.  I know it's a  |
|       | 7  | little crowded.  And I apologize.                               |
| 10:45 | 8  | And then would you be seated, sir.  And after                   |
|       | 9  | you're comfortably seated, would you face the jury, state       |
|       | 10 | your full name, and spell your last name, please.               |
| 10:45 | 11 | THE WITNESS:  My name is Manuel Theodore Lopez,                 |
|       | 12 | L-O-P-E-Z.                                                      |
| 10:46 | 13 | THE COURT:  Thank you.                                          |
| 10:46 | 14 | And direct examination, please.                                 |
| 10:46 | 15 | MR. NAM:  Thank you, Your Honor.                                |
| 10:46 | 16 | **DIRECT EXAMINATION**                                          |
| 10:46 | 17 | BY MR. NAM:                                                     |
| 10:46 | 18 | Q.   Good morning.  Who do you work for?                        |
| 10:46 | 19 | A.   I work for the Anaheim Police Department.                  |
| 10:46 | 20 | Q.   And what is your rank?                                     |
| 10:46 | 21 | A.   A sergeant.                                                |
| 10:46 | 22 | Q.   And what -- do you belong to any particular unit?          |
| 10:46 | 23 | A.   As of right now, just patrol.                             |
| 10:46 | 24 | Q.   And how long have you worked, uh -- how long have you      |
|       | 25 | worked for your agency?                                         |

| | | |
|---|---|---|
| 10:46 | 1 | A.   For this agency, approximately 13 years. |
| 10:46 | 2 | Q.   In this spring of 2015, were you part of a law |
| | 3 | enforcement team that conducted surveillance of a person |
| | 4 | named Nader Salem Elhuzayel? |
| 10:46 | 5 | A.   Yes. |
| 10:46 | 6 | Q.   In what capacity were you part of that team? |
| 10:46 | 7 | A.   Can you elaborate a little bit more? |
| 10:46 | 8 | Q.   Sure.  I will rephrase the question. |
| 10:47 | 9 |      What was your role as part of that surveillance team? |
| 10:47 | 10 | A.   At the time I was working as a task force officer for |
| | 11 | the Joint Terrorism Task Force. |
| 10:47 | 12 | Q.   And did you, in particular, conduct surveillance of |
| | 13 | Nader Salem Elhuzayel on the 29th of April of 2015? |
| 10:47 | 14 | A.   Yes. |
| 10:47 | 15 | Q.   And is Nader Salem Elhuzayel in the courtroom today? |
| 10:47 | 16 | A.   Yes, he is. |
| 10:47 | 17 | Q.   Would you identify him, please. |
| 10:47 | 18 | A.   He's standing (sic) at the end of the table, the far |
| | 19 | back table, by the gentleman with the, uh, tan suit. |
| 10:47 | 20 |           THE COURT:  Well, nobody's standing. |
| 10:47 | 21 |           Is he standing? |
| 10:47 | 22 |           THE WITNESS:  I mean, he's seating (sic) by, uh -- |
| | 23 | with the gray suit at the end of that back table. |
| 10:47 | 24 |           THE COURT:  All right. |
| 10:47 | 25 |           The record -- well, there's two gray suits.  You |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

132

|  |  |  |
|---|---|---|
|  | 1 | see the gentleman in the camel colored suit?  Which side is |
|  | 2 | he on of that gentleman? |
| 10:47 | 3 | THE WITNESS:  He'd be to that gentleman's right. |
| 10:47 | 4 | THE COURT:  All right.  The record will indicate |
|  | 5 | he's indicated and identified Mr. Elhuzayel. |
| 10:48 | 6 | Counsel. |
| 10:48 | 7 | BY MR. NAM: |
| 10:48 | 8 | Q.   During what part of the day on the 29th of April of |
|  | 9 | 2015 did you conduct surveillance of the |
|  | 10 | Defendant Elhuzayel? |
| 10:48 | 11 | A.   We started at approximately 1400 hours. |
| 10:48 | 12 | Q.   Would that be 2:00 p.m.? |
| 10:48 | 13 | A.   Yes. |
| 10:48 | 14 | Q.   And did -- did you see the defendant go to a bank |
|  | 15 | around 4:00 o'clock in the afternoon? |
| 10:48 | 16 | A.   Yes. |
| 10:48 | 17 | Q.   Was he traveling with anyone? |
| 10:48 | 18 | A.   Yes. |
| 10:48 | 19 | Q.   Who was he traveling with? |
| 10:48 | 20 | A.   He was traveling with his mother and his brother. |
| 10:48 | 21 | Q.   Do you know their names? |
| 10:48 | 22 | A.   I believe his mother's name is Falak, and his brother's |
|  | 23 | name is Amin. |
| 10:48 | 24 | Q.   And which bank, uh, were they heading to? |
| 10:48 | 25 | A.   They went to the Wells Fargo Bank in Anaheim. |

**DEBBIE GALE, U.S. COURT REPORTER**

| 10:48 | 1 | Q.   Do you remember the address of that bank? |

10:48   1   Q.   Do you remember the address of that bank?

10:48   2   A.   Yes.  I believe it's 2350 West Lincoln.

10:49   3   Q.   Is that a particular Wells Fargo Bank branch you're

4   familiar with?

10:49   5   A.   Yes.

10:49   6   Q.   I'm now asking that Exhibit 951 be placed before you.

7   951 and 952.

10:49   8        (Exhibits provided to the witness.)

10:49   9           THE WITNESS:  Did you want me to look at them?

10:49   10          MR. NAM:  Yes, please.

10:49   11   BY MR. NAM:

10:49   12   Q.   The exhibits that have been marked as 951 and 952, do

13   you recognize them?

10:49   14   A.   Yes.

10:49   15   Q.   I want to start with -- first, with 951.  What is

16   Exhibit 951?

10:49   17   A.   That's the photo of the Wells Fargo Bank at 2350 West

18   Lincoln in Anaheim.

10:49   19   Q.   Did you observe the defendant arrive at the bank?

10:49   20   A.   Yes.

10:49   21   Q.   And what did the defendant do when he arrived this

22   bank -- at this bank?

10:50   23   A.   I went to the ATM.

10:50   24          MR. NAM:  Your Honor, at this time the government

25   moves to admit Exhibit 951.

| | | |
|---|---|---|
| 10:50 | 1 | MS. CORRIGAN:  Objection. |
| 10:50 | 2 | MR. LENGYEL-LEAHU:  No objection. |
| 10:50 | 3 | THE COURT:  Received.  951's received. |
| 10:50 | 4 | *(Exhibit No. 951 received in evidence.)* |
| 10:50 | 5 | *(Exhibit displayed.)* |
| 10:50 | 6 | BY MR. NAM: |
| 10:50 | 7 | Q.   I'm now showing you 951 on the screen. |
| 10:50 | 8 | Could you describe what you saw after you saw the |
| | 9 | defendant arrived -- uh, arrive at this Welgo Far -- uh, |
| | 10 | Wells Fargo Bank branch? |
| 10:50 | 11 | A.   Yes.  He walked to those -- the ATM machine at that |
| | 12 | bank in that picture. |
| 10:50 | 13 | Q.   Would you mark on the screen approximately where that |
| | 14 | ATM was? |
| 10:50 | 15 | A.   How do I mark it? |
| 10:50 | 16 | Q.   Perhaps -- |
| 10:50 | 17 | MR. NAM:  May I mark it for -- may I circle in the |
| | 18 | area and -- |
| 10:50 | 19 | THE COURT:  No.  It's somewhat leading. |
| 10:50 | 20 | *(To the witness:)* I think if you just put your |
| | 21 | finger on the screen, it will make a mark. |
| 10:51 | 22 | BY MR. NAM: |
| 10:51 | 23 | Q.   Would you describe where the ATM that you're describing |
| | 24 | is on the screen? |
| 10:51 | 25 | A.   Yes.  It's two clearly marked ATM's right there.  They |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | enlarged it right now on the screen.  And it was those ATM's         |
|       | 2  | there.                                                               |
| 10:51 | 3  | Q.   Do you recall which one?                                        |
| 10:51 | 4  | A.   I don't.                                                        |
| 10:51 | 5  | Q.   Is it -- are you certain that it was one of the ATM's           |
|       | 6  | that you saw -- you see there?                                       |
| 10:51 | 7  | A.   Yes.                                                            |
| 10:51 | 8  | Q.   How long was the defendant at -- at one of those ATM's?         |
| 10:51 | 9  | A.   Only a couple of minutes.                                       |
| 10:51 | 10 | Q.   And he did approach the ATM by himself?                         |
| 10:51 | 11 | A.   I think he walked up to the ATM machine maybe with his,         |
|       | 12 | um -- his brother.                                                   |
| 10:51 | 13 | Q.   And after spending couple'a minutes there, what did the         |
|       | 14 | defendant do?                                                        |
| 10:51 | 15 | A.   They returned right back to the car.                            |
| 10:51 | 16 | Q.   And then what did you see?                                      |
| 10:51 | 17 | A.   They drove away.                                                |
| 10:51 | 18 | Q.   Do you remember the precise time that the defendant was         |
|       | 19 | at the ATM?                                                          |
| 10:52 | 20 | A.   I believe it was 3:51 p.m. to about 3:54 p.m.                   |
| 10:52 | 21 |        MR. LENGYEL-LEAHU:  Objection, Your Honor.  The               |
|       | 22 | answer's speculative.                                                |
| 10:52 | 23 |        THE COURT:  'cause he said, "I believe that"?                 |
| 10:52 | 24 |        MR. LENGYEL-LEAHU:  Yes.                                      |
| 10:52 | 25 |        THE COURT:  No.  Overruled.                                   |

| | | |
|---|---|---|
| 10:52 | 1 | BY MR. NAM: |
| 10:52 | 2 | Q.   Did you also conduct surveillance of defendant -- of |
| | 3 | the defendant on May 1, 2015? |
| 10:52 | 4 | A.   Yes. |
| 10:52 | 5 | Q.   What part of the day was -- did this surveillance take |
| | 6 | place? |
| 10:52 | 7 | A.   It started again at 2:00 p.m. that day. |
| 10:52 | 8 | Q.   Did you observe the defendant go to a bank? |
| 10:52 | 9 | A.   Yes. |
| 10:52 | 10 | Q.   At about what time did that happen? |
| 10:52 | 11 | A.   It was about 6:30 p.m. |
| 10:52 | 12 | Q.   And what kind of a bank was it?  What was the name of |
| | 13 | the bank? |
| 10:52 | 14 | A.   It was a Chase Bank. |
| 10:52 | 15 | Q.   I'd like to direct your attention to the other exhibit |
| | 16 | that is in front of you. |
| 10:53 | 17 | *(Exhibit provided to the witness.)* |
| 10:53 | 18 | BY MR. NAM: |
| 10:53 | 19 | Q.   What is Exhibit 952? |
| 10:53 | 20 | A.   That is the picture of the Chase Bank that he went to |
| | 21 | that day. |
| 10:53 | 22 | Q.   Are you referring to May 1, 2015? |
| 10:53 | 23 | A.   Yes. |
| 10:53 | 24 | Q.   In the afternoon? |
| 10:53 | 25 | A.   Yes. |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

137

| | | |
|---|---|---|
| 10:53 | 1 | MR. NAM:  Your Honor, the government moves to |
| | 2 | admit Exhibit 951. |
| 10:53 | 3 | MS. CORRIGAN:  No objection. |
| 10:53 | 4 | MR. LENGYEL-LEAHU:  Lack of foundation. |
| 10:53 | 5 | THE COURT:  This would be 952. |
| 10:53 | 6 | MR. NAM:  Sorry, Your Honor. |
| 10:53 | 7 | THE COURT:  And, Counsel, any objection? |
| 10:53 | 8 | MR. LENGYEL-LEAHU:  Improper foundation. |
| 10:53 | 9 | THE COURT:  Counsel? |
| 10:53 | 10 | MS. CORRIGAN:  No objection. |
| 10:53 | 11 | THE COURT:  952's received. |
| 10:53 | 12 | MR. LENGYEL-LEAHU:  Oh, I'm sorry, Your Honor.  I |
| | 13 | did object:  Improper foundation. |
| 10:53 | 14 | MR. NAM:  I can lay the foundation. |
| 10:53 | 15 | THE COURT:  Well, if you'd like to. |
| 10:53 | 16 | BY MR. NAM: |
| 10:53 | 17 | Q.   Does this -- does this exhibit fairly and accurately |
| | 18 | depict the Chase Bank branch that you saw on May 1st, 2015? |
| 10:53 | 19 | A.   Yes.  And the address here is 910 South Brookhurst. |
| 10:53 | 20 | MR. NAM:  The government again moves to admit 952. |
| 10:53 | 21 | MR. LENGYEL-LEAHU:  No objection. |
| 10:54 | 22 | MS. CORRIGAN:  No objection. |
| 10:54 | 23 | THE COURT:  Received. |
| 10:54 | 24 | (Exhibit No. 952 received in evidence.) |
| | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:54 | 1 | BY MR. NAM: |
| 10:54 | 2 | Q.   Did you observe the defendant arrive at this bank? |
| 10:54 | 3 | MR. LENGYEL-LEAHU:  Leading. |
| 10:54 | 4 | THE COURT:  Overruled. |
| 10:54 | 5 | *(To the witness:)* You can answer the question. |
| 10:54 | 6 | THE WITNESS:  Yes. |
| 10:54 | 7 | BY MR. NAM: |
| 10:54 | 8 | Q.   Was he traveling with anyone? |
| 10:54 | 9 | A.   Yes. |
| 10:54 | 10 | Q.   Who was he traveling with? |
| 10:54 | 11 | A.   Um, his mother and his brother. |
| 10:54 | 12 | Q.   What was the name of the brother? |
| 10:54 | 13 | A.   His brother's name was Husam. |
| 10:54 | 14 | *(Court reporter requests clarification for the* |
| | 15 | *record.)* |
| 10:54 | 16 | THE WITNESS:  Husam, H-U-S-A-M. |
| 10:54 | 17 | BY MR. NAM: |
| 10:54 | 18 | Q.   What did you observe the defendant do after he arrived |
| | 19 | at this Chase Bank branch? |
| 10:54 | 20 | A.   Nader and his brother Husam exited the vehicle and |
| | 21 | walked to the ATM. |
| 10:54 | 22 | Q.   Does this photograph show where the ATM is? |
| 10:54 | 23 | A.   Yes.  It's just past those blue awnings. |
| 10:54 | 24 | Q.   Does the enlarged portion of the Exhibit 952 show one |
| | 25 | of the ATM's -- the ATM's that, uh -- one of the ATM's that |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | the defendant visited?                                       |
| 10:55 | 2  | A.    Yes.                                                    |
| 10:55 | 3  | Q.    How long was the defendant at one of these ATM's?      |
| 10:55 | 4  | A.    Maybe about 10 or 15 minutes, somewhere around there.  |
| 10:55 | 5  | Q.    Was his brother there with him throughout that time?   |
| 10:55 | 6  | A.    Yes.                                                    |
| 10:55 | 7  | Q.    What did you observe the defendant do after he spent   |
|       | 8  | some time -- 10, 15 minutes -- at one of the ATM's there?    |
| 10:55 | 9  | A.    They returned to their car and drove away.             |
| 10:55 | 10 | Q.    And who was driving the vehicle?                        |
| 10:55 | 11 | A.    From what I recall, the mother Falak.                   |
| 10:55 | 12 |         (Court reporter requests clarification for the       |
|       | 13 |      record.)                                                |
| 10:55 | 14 |              THE WITNESS:   F-A-L-A-K.                        |
| 10:55 | 15 | BY MR. NAM:                                                   |
| 10:55 | 16 | Q.    And do you, uh -- and do you recall the specific time  |
|       | 17 | or the range of time that the -- when the defendant was at   |
|       | 18 | this ATM?                                                     |
| 10:55 | 19 | A.    The 6:30 range is when he arrived there.  And I'm not  |
|       | 20 | sure of the exact time'a when they left.                     |
| 10:56 | 21 | Q.    Would that be sometime around 6:45 --                   |
| 10:56 | 22 | A.    Sure, that would be --                                  |
| 10:56 | 23 | Q.    -- in your testimony?                                   |
| 10:56 | 24 |      Going back to the Wells Fargo branch, do you know the   |
|       | 25 | address of that Wells Fargo branch?                          |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:56 | 1 | A.   Sure.  It was 2350 West Lincoln. |
| 10:56 | 2 | MR. NAM:  Nothing further, Your Honor. |
| 10:56 | 3 | THE COURT:  Cross-examination. |
| 10:56 | 4 | Mr. Lengyel-Leahu? |
| 10:56 | 5 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 10:56 | 6 | **CROSS-EXAMINATION** |
| 10:56 | 7 | BY MR. LENGYEL-LEAHU: |
| 10:56 | 8 | Q.   Good morning. |
| 10:56 | 9 | A.   Good morning. |
| 10:56 | 10 | Q.   You say you were a part of a surveillance team, uh -- |
| | 11 | is that accurate? |
| 10:56 | 12 | A.   Yes. |
| 10:56 | 13 | Q.   And you were tasked with, uh, providing surveillance |
| | 14 | over my client; is that right? |
| 10:57 | 15 | A.   Yes. |
| 10:57 | 16 | Q.   Were these the only two days that you were involved in |
| | 17 | surveillance of him? |
| 10:57 | 18 | MR. NAM:  Objection, Your Honor.  Outside the |
| | 19 | scope. |
| 10:57 | 20 | THE COURT:  Overruled. |
| 10:57 | 21 | *(To the witness:)* You can answer that question. |
| 10:57 | 22 | THE WITNESS:  No, I -- no. |
| 10:57 | 23 | BY MR. LENGYEL-LEAHU: |
| 10:57 | 24 | Q.   Oh.  On how many occasions were you involved in |
| | 25 | surveillance of my client? |

8:15-CR-0060-DOC - 6/10/2016 - Day 4, Volume I

141

| | | |
|---|---|---|
| 10:57 | 1 | A.   I'm not sure the exact amount'a days. |
| 10:57 | 2 | Q.   Would it have been more than five or six? |
| 10:57 | 3 | MR. NAM:  Objection, Your Honor.  Calls for |
| | 4 | speculation. |
| 10:57 | 5 | THE COURT:  Overruled. |
| 10:57 | 6 | THE WITNESS:  I'm not sure.  I wouldn't -- I don't |
| | 7 | wanna estimate a wrong count. |
| 10:57 | 8 | BY MR. LENGYEL-LEAHU: |
| 10:57 | 9 | Q.   You seem to have a very clear memory of -- |
| 10:57 | 10 | THE COURT:  Counsel, that's argumentative. |
| 10:57 | 11 | Now your question. |
| 10:57 | 12 | BY MR. LENGYEL-LEAHU: |
| 10:57 | 13 | Q.   Did you review your reports prior to your testimony |
| | 14 | today? |
| 10:57 | 15 | A.   Yes. |
| 10:57 | 16 | Q.   And that assisted you in remembering, uh, the exact -- |
| | 17 | the -- the times and the locations where you were performing |
| | 18 | surveillance on these two specific days? |
| 10:58 | 19 | A.   Times.  But I knew those locations. |
| 10:58 | 20 | Q.   You're familiar with the area? |
| 10:58 | 21 | A.   Correct. |
| 10:58 | 22 | Q.   It's part of your beat in Anaheim? |
| 10:58 | 23 | A.   It's part of the City of Anaheim, yes. |
| 10:58 | 24 | THE COURT:  Well, this might be a good time for a |
| | 25 | recess. |

**DEBBIE GALE, U.S. COURT REPORTER**

10:58   1        *(To the witness:)* Why don't we have you review your

        2   notes so that you can answer the question about how many

        3   times you surveilled Mr. Elhuzayel, during the recess.

        4   Would that be acceptable?  Good.  Excellent.

10:58   5        So we'll reconvene at 1:00 o'clock, Counsel.  And I

        6   think you'll have your answer to the question about how many

        7   days.

10:58   8             MR. LENGYEL-LEAHU:  Appreciate that.

10:58   9             THE COURT:  Good time to recess.  That way we're

       10   not wasting time.  And you can review your notes, sir.  All

       11   right?

10:58  12        *(To the jury:)* Now, please don't discuss this

       13   matter amongst yourselves, nor discuss or form any opinion

       14   concerning the case.

10:58  15        We need a little bit of time today, so you're free

       16   until 1:00 o'clock.  But at 1:00 o'clock, we're going to

       17   reconvene.  Okay?

10:58  18        Have a nice lunch.  Please don't form or express

       19   any opinion concerning the case -- nor form any opinion

       20   about this matter.

10:59  21        *(Jury recesses at 10:58 a.m.)*

10:59  22             THE COURT:  Sergeant, thank you very much.  You

       23   may step down.

10:59  24        *(Witness steps down.)*

10:59  25        *(Outside the presence of the jury.)*

**DEBBIE GALE, U.S. COURT REPORTER**

10:59   1              THE COURT:  Now, today's the sabbath in the Muslim

        2    faith, and there should be two hours of prayer.

10:59   3              *(To the defendants:)* So if you two gentlemen want

        4    to engage in prayer, we've made accommodations for you in

        5    the back.

10:59   6              Counsel, we resume at 1:00 o'clock.

10:59   7              MS. CORRIGAN:  Thank you, Your Honor.

10:59   8              MR. LENGYEL-LEAHU:  Thank you, Your Honor.

10:59   9          *(Recess held at 10:59 a.m.)*

10:59  10          *(Further proceedings reported by Deborah Parker*

       11       *in Volume II.)*

10:59  12                              -oOo-

10:59  13

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25

**DEBBIE GALE, U.S. COURT REPORTER**

```
10:59   1                          -oOo-

10:59   2

10:59   3                       CERTIFICATE

10:59   4

10:59   5          I hereby certify that pursuant to Section 753,

        6   Title 28, United States Code, the foregoing is a true and

        7   correct transcript of the stenographically reported

        8   proceedings held in the above-entitled matter and that the

        9   transcript page format is in conformance with the

       10   regulations of the Judicial Conference of the United States.

10:59  11

10:59  12   Date:  March 28, 2017

10:59  13

10:59  14
10:59                          /s/ Debbie Gale
10:59  15                     _____
10:59                         DEBBIE GALE, U.S. COURT REPORTER
10:59  16                     CSR NO. 9472, RPR, CCRR

10:59  17

       18

       19

       20

       21

       22

       23

       24

       25
```