**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

- - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) **CERTIFIED** |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 8:15-CR-0060-DOC |
| | ) Day 5, Volume I |
| 1) NADER SALEM ELHUZAYEL; | ) |
| 2) MUHANAD ELFATIH M.A. BADAWI, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Jury Trial

Santa Ana, California

Monday, June 13, 2016

Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

**APPEARANCES:**


FOR THE UNITED STATES OF AMERICA:

        DEPARTMENT OF JUSTICE
        OFFICE OF THE UNITED STATES ATTORNEY
        Criminal Division
        BY:  Judith A. Heinz
             Assistant United States Attorney
        312 North Spring Street
        15th Floor
        Los Angeles, California 90012
        213-894-7280
        USACAC.Criminal@usdoj.gov

        DEPARTMENT OF JUSTICE
        OFFICE OF THE UNITED STATES ATTORNEY
        Criminal Division
        BY:  Deirdre Z. Eliot
             Assistant United States Attorney
        411 West 4th Street
        Suite 8000
        Santa Ana, California 92701
        714-338-3500
        USACAC.SACriminal@usdoj.gov

        DEPARTMENT OF JUSTICE
        OFFICE OF THE UNITED STATES ATTORNEY
        General Crimes Section
        BY:  Julius J. Nam
             Assistant United States Attorney
        312 North Spring Street
        Suite 1200
        Los Angeles, California 90012
        213-894-4491
        julius.nam@usdoj.gov


FOR DEFENDANT NADER SALEM ELHUZAYEL:

        Pal A. Lengyel-Leahu *(retained)*
        LAW OFFICES OF PAL A. LENGYEL-LEAHU
        360 East First Street
        Suite 609
        Tustin, California 92780
        714-497-6813
        plitigate@aol.com

1    **APPEARANCES (Continued):**

2    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3        Katherine T. Corrigan *(CJA appointment)*
         CORRIGAN WELBOURN AND STOKKE APLC
4        4100 Newport Place
         Suite 550
5        Newport Beach, California 92660
         949-251-0330
6        kate@cwsdefense.com

7

8    ALSO PRESENT:

9        Cambria Lisonbee (assisting Ms. Corrigan)
         Joshua Hopps (assisting Mr. Lengyel-Leahu)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**I N D E X**

Jury Trial - Day 5, Volume I

| PROCEEDINGS | PAGE |
|---|---|

1

2

3

| | |
|---|---|
| Discussion re Orlando shooting (outside presence of jury) | 7 |
| Individual voir dire of jurors and alternates by the Court | 14 |
| Juror No. 12 excused | 50 |
| Witness Vicencia resumes the stand | 68 |
| Selection of alternate to become Juror No. 12 | 69 |
| Witness testimony resumed | 70 |
| Voir Dire By Mr. Lengyel-Leahu | 80 |
| Discussion re Jury Instructions | 152 |

**WITNESSES**

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| VICENCIA, Nicholas | | | | |
| By Mr. Nam (resumed) | 70 | | | |

**EXHIBITS**

| EXHIBIT NO./DESCRIPTION | IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 707 Audio recording of call to Chase Bank on 4/30/2015 | | 134 |
| 710 Audio recording of call to Chase Bank on 5/2/2015 | | 138 |
| 718 Audio recording of call on 4/29/2015 | | 140 |

Case 8:15-cr-00060-DOC   Document 294   Filed 03/31/17   Page 5 of 158   Page ID #:4625
8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

5

**EXHIBITS**

| EXHIBIT NO./DESCRIPTION | IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 723    Audio of call to Wells Fargo Bank on 5/6/2015 | | 142 |
| 729    Audio of call to Wells Fargo Bank on 5/6/2015 | | 146 |
| 731    Audio of call to "checklookup" on 5/5/2015 | | 146 |
| 739    Audio of voicemail from Chase debit card fraud department - 5/9/2015 | | 149 |
| 740    Audio of call to Chase Bank from Elhuzayel - 5/9/2015 | | 149 |
| 827    Audio recording | | 145 |
| 928    Chase Bank ATM Photograph 1 - 5/1/2015 | | 103 |
| 930    Wells Fargo Bank ATM photographs - 5/1/2015 | | 109 |
| 931    Wells Fargo Bank ATM withdrawal webpage dialog 5/4/2015 | | 109 |
| 932    Wells Fargo Bank ATM photographs - 5/5/2015 | | 113 |
| 934    Wells Fargo website screen shot - 5/5/2015 | | 113 |
| 936    Wells Fargo Bank ATM photographs - 5/6/2015 AM | | 118 |
| 937    Wells Fargo Bank ATM withdrawal record printout - 5/6/2015 | | 118 |

| | | | |
|---|---|---|---|

1

**EXHIBITS**

2

**EXHIBIT NO./DESCRIPTION          IDENTIFICATION      IN EVIDENCE**

3

4

   938      Wells Fargo Bank                              121
             withdrawal printout -
             5/6/2015

5

6

   939      Wells Fargo Bank                              125
             interior photographs -
             5/6/2015

7

8

   940      Wells Fargo Bank ATM                          125
             withdrawal record
             printout - 5/6/2015

9

   941      Chase Bank ATM                               129
10
             photograph - 5/6/2015

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 8:15-cr-00060-DOC   Document 294   Filed 03/31/17   Page 7 of 158   Page ID #:4627
8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

7

|  |  |  |
|---|---|---|
|  | 1 | **SANTA ANA, CALIFORNIA, MONDAY, JUNE 13, 2016** |
|  | 2 | **Day 5, Volume I** |
|  | 3 | (8:12 a.m.) |
| 08:12 | 4 | THE COURT:  All right.  We're on the record in the |
|  | 5 | matter of Mr. Badawi.  Mr. Badawi and counsel are present, |
|  | 6 | and Mr. Elhuzayel and counsel are present, and the |
|  | 7 | government's present. |
| 08:12 | 8 | So all parties are present and on the record.  The |
|  | 9 | jury is not present. |
| 08:12 | 10 | *(Outside the presence of the jury.)* |
| 08:12 | 11 | **DISCUSSION RE ORLANDO SHOOTING** |
| 08:12 | 12 | THE COURT:  Counsel, over the weekend, obviously, |
|  | 13 | there was an attack down in Orlando, Florida. |
| 08:13 | 14 | Before I bring the jury in and put you in the |
|  | 15 | position of making a record or making a statement and then |
|  | 16 | sending them out, I thought I would directly raise that with |
|  | 17 | you because it's on the front page, of course, of every |
|  | 18 | newspaper in the country and on CNN. |
| 08:13 | 19 | Is there any request or thought that you're going |
|  | 20 | to make?  And I'd like to hear that now before the jury |
|  | 21 | comes in.  You have to make that in the presence of the |
|  | 22 | jury. *(Verbatim.)* |
| 08:13 | 23 | So, Ms. Corrigan. |
| 08:13 | 24 | MS. CORRIGAN:  Thank you, Your Honor.  Yesterday I |
|  | 25 | spoke with Mr. Heinz, and at least my request, and I believe |

|   | 1 | it's the government's request also, that each of the jurors |
|---|---|---|
|   | 2 | be individually spoken with by the Court to determine, |
|   | 3 | number one, if they have any connection or link to any of |
|   | 4 | the victims or anyone in Orlando; number two, if they are |
|   | 5 | aware of the news, which I can't believe they wouldn't be. |
|   | 6 | The flags are at half-staff out front and across the nation. |
|   | 7 | Even at the Stanley Cup finals last night, obviously, this |
|   | 8 | was mentioned.  So I don't think anybody could get away from |
|   | 9 | it. |
| 08:14 | 10 | THE COURT:  You watched the Stanley Cup? |
| 08:14 | 11 | MS. CORRIGAN:  I did, while I was reading |
|   | 12 | discovery.  Kind of watched it.  I'm actually not sure who |
|   | 13 | won.  But anyway -- so, the -- but I would like to determine |
|   | 14 | whether their fairness as jurors have been affected |
|   | 15 | negatively, which I would imagine these folks might have |
|   | 16 | changed their views of this case over the weekend and their |
|   | 17 | ability to sit as fair jurors.  Obviously, if we end up in a |
|   | 18 | situation, there may be a mistrial. |
| 08:14 | 19 | So that's where we are. |
| 08:14 | 20 | THE COURT:  Mr. Lengyel-Leahu. |
| 08:14 | 21 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.  I |
|   | 22 | agree that they should be individually spoken with and |
|   | 23 | perhaps remind them of their oath that they would not allow |
|   | 24 | any event outside this courtroom to have an impact on the |
|   | 25 | decision that they make regarding the evidence in this case. |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | But determining whether or not these events would cause them     |
|       | 2  | to change their previous answers, cause them to, as they         |
|       | 3  | further reflect, they could no longer be fair in a case such      |
|       | 4  | as this, where the specific organization that the government     |
|       | 5  | is alleging is involved in our client's behavior has             |
|       | 6  | taken -- they call it credit; I call it blame for what           |
|       | 7  | occurred.  I think that would be appropriate.                    |
| 08:15 | 8  | THE COURT:  Okay.                                                 |
| 08:15 | 9  | MR. LENGYEL-LEAHU:  And give them the opportunity                |
|       | 10 | to opt out if they no longer feel they could be fair.            |
| 08:15 | 11 | THE COURT:  Government.                                           |
| 08:15 | 12 | MS. HEINZ:  Your Honor, the government agrees that               |
|       | 13 | it would be wise to individually voir dire each juror to         |
|       | 14 | find out if they can still be fair in this case.                 |
| 08:15 | 15 | Of course, the charges in this case are not               |
|       | 16 | connected at all with Orlando, and that is a totally             |
|       | 17 | separate incident, but, um -- and perhaps that also could be     |
|       | 18 | discussed with each individual juror.                            |
| 08:16 | 19 | But I do think it would be wise to voir dire each         |
|       | 20 | one individually.                                                |
| 08:16 | 21 | THE COURT:  I'm going to summarize what I'm               |
|       | 22 | hearing, and let's have a discussion and not a preprepared       |
|       | 23 | script with each juror.  First, there's a request to ask if      |
|       | 24 | they have any links, any loved ones or persons that they         |
|       | 25 | know in Orlando who might've been victims of the shootings       |

1    that occurred.

08:16    2         Second, I think we can assume that the jury has

3    already heard of the Orlando shooting, so instead of asking

4    that naive question, "*Have you heard of the Orlando*

5    *shootings*?" I think we should simply say there have been

6    shootings in Orlando over the weekend and just presume that

7    they know that.  Unless you want me to ask if they've heard,

8    and if you do, I will.

08:16    9         But the third area is what you've driven at from

10   the defense perspective.  Both counsel are really,

11   obviously, concerned.  The Court and the government is also

12   about their continued willingness to be fair.

08:17   13         But before that question is asked, remember,

14   they've already heard a substantial amount of evidence.  So

15   I'm a little concerned that they would take that as, "*Well,*

16   *if we take the evidence into account that we've heard thus*

17   *far, now could we be fair.*"  Well, they need to be reminded

18   that this case puts them in the position of being a judge.

19   They need to be reminded, as you said, Ms. Heinz, and simply

20   told that these events in Orlando has nothing to do with the

21   two young men on trial here.

08:17   22         And then I think they should be asked if they can

23   continue to be fair and reminded of their oath.  So that's

24   the order that I propose.

08:17   25         Now, I'll reach out to each one of you for any

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | additional suggestions.                                    |
| 08:17 | 2  | Government?                                                 |
| 08:17 | 3  | MS. HEINZ:  The government has no additional                |
|       | 4  | suggestions, Your Honor, and the government agrees with sort |
|       | 5  | of the order that you've outlined.                         |
| 08:18 | 6  | THE COURT:  Ms. Corrigan?                                   |
| 08:18 | 7  | MS. CORRIGAN:  I agree with it.                             |
| 08:18 | 8  | THE COURT:  Mr. Lengyel-Leahu?                              |
| 08:18 | 9  | MR. LENGYEL-LEAHU:  I didn't spend a lotta time            |
|       | 10 | watching TV yesterday, but I did see something about there's |
|       | 11 | an additional arrest that took place in L.A.               |
| 08:18 | 12 | THE COURT:  That was in Los Angeles, and it was            |
|       | 13 | allegedly involving the gay rights parade that was occurring |
|       | 14 | in the West Hollywood area.  There's no known linkage that  |
|       | 15 | I'm picking up from any of the press to the Orlando        |
|       | 16 | shootings.  There hasn't been much notoriety about that.    |
|       | 17 | But there may be local coverage that I missed.  I tried to  |
|       | 18 | get back to every television station to see what was        |
|       | 19 | being -- if you want me to raise that also, I'm happy to.  |
| 08:18 | 20 | MR. LENGYEL-LEAHU:  Well, I made the connection            |
|       | 21 | just from a couple'a things that flashed across my --       |
| 08:19 | 22 | THE COURT:  Just a minute.                                  |
| 08:19 | 23 | *(To law clerks:)* Neel and Ariel, this is                 |
|       | 24 | Mr. Staples.                                                |
| 08:19 | 25 | *(To AUSA:)* And, Greg, this is Neel and Ariel.  If        |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | you'd -- thank you very much --                              |
| 08:19 | 2  | MR. LENGYEL-LEAHU:  It may be --                     |
| 08:19 | 3  | THE COURT:  -- if you would take our group,          |
|       | 4  | please.  Thank you.                                  |
| 08:19 | 5  | MR. LENGYEL-LEAHU:  It may be just a reminder.       |
| 08:19 | 6  | THE COURT:  Well, you know, if they want to remain   |
|       | 7  | for a few more moments to see the way this is sorted out,    |
|       | 8  | we'll go right next door.                            |
| 08:19 | 9  | MR. STAPLES:  We actually have to -- we need an IT   |
|       | 10 | person nextdoor.                                     |
| 08:19 | 11 | THE COURT:  We'll get one.  Neel and Ariel are in    |
|       | 12 | charge of that; they'll take care of it.  Thanks, Greg.      |
| 08:19 | 13 | I'm sorry.  Counsel.                                 |
| 08:19 | 14 | MR. LENGYEL-LEAHU:  Maybe just a reminder to the     |
|       | 15 | jury that news reports are not evidence, and the notion of   |
|       | 16 | whatever they're hearing is clearly not relevant for a juror |
|       | 17 | to deliberate on or to consider when making a decision in a  |
|       | 18 | criminal case.  Something along those lines might help.      |
| 08:19 | 19 | THE COURT:  And two things I'll share with you.      |
|       | 20 | These are naive thoughts on my part, but they are thoughts.  |
| 08:20 | 21 | First of all, I don't think that we could predict   |
|       | 22 | when an attack would take place.  I don't think this,        |
|       | 23 | unfortunately, will be the last attack that occurs.          |
| 08:20 | 24 | Number two, the jury probably hasn't been watching  |
|       | 25 | as much television as all of us have tried to, to see what's |

1    going on; but it's apparent that whatever the statement was

2    and linkage to ISIL came a short time into the attack.

08:20    3         It appears to be a lone wolf attack, in a sense.

4    And then a claim by this individual to have linkage to ISIL.

08:20    5         Third, of all the times that I was least worried,

6    and unfortunately it turned out to be wrong, it was Ramadan.

7    Of all the times, I wouldn't have expected an attack in this

8    period of time.  And my greatest concern has always been the

9    convention, what was going to be said in this period of

10   time, even not knowing who the nominees were.

08:21   11         Unfortunately, this is going to heat up.  If, in

12   fact, we can't get a fair jury, I'm going to suggest to both

13   of you that this case can't be tried until after the

14   election.  Because this is going to continue to heat up

15   along the way with more and more rhetoric.  The presumptive

16   nominees now -- Hillary Clinton is the presumptive

17   nominee -- is saying she'll use the word "radical Muslim"

18   now for the first time.  Donald Trump, the presumptive

19   nominee, is taking the same position he's taken

20   historically.  This is only going to get more exacerbated in

21   the press and more debated.

08:21   22         Let's see if we can continue.  If we can't, I'm

23   going to discuss this matter with you in terms of timing.

24   I'm a little concerned that if we start in September or

25   October, we're right in the election.

08:21  1          So hopefully, we don't get to that point because I

2     don't think it's predictable in the future.  And I think

3     starting over again places you in the same position of what

4     next.  I don't think you can pick and choose the time.

08:22  5          **INDIVIDUAL VOIR DIRE OF JURORS AND ALTERNATES**

08:22  6          THE COURT:  *(To the clerk:)* So if you'd ask Juror

7     No. 1, Deb.  I'm going to need to talk to Juror No. 1 first.

8     That's going to be Nicholas Buttum *(sic)*, B-U-T-T-U-M

9     *(verbatim)*.

08:22 10          THE CLERK:  Right.

08:22 11          THE COURT:  I want him singled out and brought in.

12    Have him seated in Seat No. 12, although he's Juror No. 1.

08:23 13          *(Juror No. 1 called in and seated.)*

08:23 14          THE COURT:  Thank you.  Mr. Buttum, if you'd come

15    in, please.  If you would have a seat.

08:23 16          Let me start by saying that there was a shooting

17    in Orlando, Florida, over the weekend.  Are you aware of

18    that from some news coverage?

08:23 19          JUROR NO. 1:  Yes.

08:23 20          THE COURT:  I think most of the country is.  We

21    expected that.  Do you have any links to any persons,

22    friends, loved ones that might be victims of that shooting?

08:23 23          JUROR NO. 1:  No.

08:23 24          THE COURT:  Let me remind you that that shooting

25    has nothing to do with the two young men on trial, but we're

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | a little concerned about the inflammatory nature that could |
|  | 2 | have any potential carryover to this trial, so we're talking |
|  | 3 | to each of you individually for a moment. |
| 08:23 | 4 | Do you understand that these two young men have |
|  | 5 | nothing to do with that incident in Florida? |
| 08:23 | 6 | JUROR NO. 1:  Yes. |
| 08:24 | 7 | THE COURT:  Okay.  I think the most important |
|  | 8 | question we have, then, is, remember that you're judges; |
|  | 9 | you're neutral; you're hearing the government case; you |
|  | 10 | haven't heard from the defense.  You're a judge. |
| 08:24 | 11 | But would you -- can you continue to be fair in |
|  | 12 | light of the activity down in Orlando, with no carryover |
|  | 13 | from that activity to this case? |
| 08:24 | 14 | JUROR NO. 1:  Yes. |
| 08:24 | 15 | THE COURT:  I'm gonna ask you that one more time. |
|  | 16 | Are you absolutely certain? |
| 08:24 | 17 | JUROR NO. 1:  I am. |
| 08:24 | 18 | THE COURT:  Okay.  There's obviously going to be |
|  | 19 | continued news reports coming out in the next couple days. |
|  | 20 | We're going to ask you to minimize, you know, your reading |
|  | 21 | of that.  I think that there's a lot of what I call flurry |
|  | 22 | of activity right now.  There are what I call the "talking |
|  | 23 | heads" -- some are astute; some are not quite as astute -- |
|  | 24 | and they refer to that on television, but they're the news |
|  | 25 | people who supposedly have opinions. |

08:24   1           I don't think, counsel, we can, other than

        2   sequestering the jury, which I don't think any of us are in

        3   favor of, cut them off from the news.  I think we need to

        4   continually admonish the jury that whatever they're hearing

        5   or seeing on television has no relevance to this case

        6   concerning Orlando.

08:25   7           Is that acceptable to you, sir?

08:25   8           JUROR NO. 1:  Yes.

08:25   9           THE COURT:  Counsel, acceptable to the government?

08:25  10           MS. HEINZ:  Acceptable, Your Honor.

08:25  11           THE COURT:  Ms. Corrigan?

08:25  12           MS. CORRIGAN:  Yes, Your Honor.

08:25  13           THE COURT:  Mr. Lengyel-Leahu?

08:25  14           MR. LENGYEL-LEAHU:  Yes, Your Honor.

08:25  15           THE COURT:  Thank you very much.

08:25  16           If you would go back, though don't say anything

       17   about why we're talking to each of you individually.  You're

       18   a pretty smart juror; you'll figure it out, but don't say

       19   anything about the questions we're asking.

08:25  20           *(Juror No. 1 exits the courtroom.)*

08:25  21           THE COURT:  And the next one would be Scarlette

       22   Rios.

08:25  23           *(Juror No. 2 called in and seated.)*

08:26  24           THE COURT:  Ms. Rios, if you'd come down and have

       25   a seat in Seat No. 12.  It's the bottom one and will save a

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | lot of time.                                                 |
| 08:26 | 2  | Obviously, you must be aware of some shootings               |
|       | 3  | that occurred down in Orlando, Florida.  It was all over the |
|       | 4  | national news and the newspapers.  Are you aware of that?    |
| 08:26 | 5  | JUROR NO. 2:  Yes.                                            |
| 08:26 | 6  | THE COURT:  Okay.  Now, we obviously are                     |
|       | 7  | concerned, and we want it understood that that has           |
|       | 8  | absolutely nothing to do with the two young men on trial in  |
|       | 9  | this case, but we're aware of the inflammatory or            |
|       | 10 | potentially inflammatory nature of that Florida incident.    |
| 08:26 | 11 | I think that the critical question that we're                |
|       | 12 | asking you is can you continue to be fair?  Can you continue |
|       | 13 | to be that judge and not have the Orlando, Florida, news     |
|       | 14 | carry over into any decision you might be making in this     |
|       | 15 | case?                                                         |
| 08:26 | 16 | JUROR NO. 2:  Yes.                                            |
| 08:26 | 17 | THE COURT:  I'm going to ask you that one more               |
|       | 18 | time:  Are you absolutely sure?                              |
| 08:26 | 19 | JUROR NO. 2:  Yes.                                            |
| 08:26 | 20 | THE COURT:  Then you'll continue to follow our               |
|       | 21 | admonition.  We expect there will be continued coverage down |
|       | 22 | in Orlando, et cetera.  We're not gonna sequester you or cut |
|       | 23 | off news sources.  That's impossible in this day and age.    |
|       | 24 | But you continue to recognize that's an unrelated matter?    |
| 08:27 | 25 | JUROR NO. 2:  Yes.                                            |

08:27  1            THE COURT:  Fair enough.

08:27  2            Counsel on behalf of the government, do you have

       3   questions or concerns?

08:27  4            MS. HEINZ:  No, Your Honor.

08:27  5            THE COURT:  Ms. Corrigan?

08:27  6            MS. CORRIGAN:  No, Your Honor.  Thank you.

08:27  7            THE COURT:  Mr. Lengyel-Leahu?

08:27  8            MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor.

       9   We're satisfied.

08:27 10            THE COURT:  Thank you very much.

08:27 11            Go back in the jury room.  Please don't share any

      12   of the questions we're asking.  We need to talk to each one

      13   of you for a moment.

08:27 14        *(Juror No. 2 exits the courtroom.)*

08:27 15            THE COURT:  Juror No. 3, please.  This would be

      16   Jesus Ambriz.

08:27 17        *(Juror No. 3 called in and seated.)*

08:28 18            THE COURT:  Sir, have a seat in Seat No. 12.  We

      19   know you're Juror No. 3, but -- I assume you're aware --

      20   most the country is -- of some shootings that took place

      21   down in Orlando, Florida.

08:28 22            JUROR NO. 3:  Yes, I am.

08:28 23            THE COURT:  Do you have any loved ones or any

      24   persons that you might know as friends who were victims of

      25   that shooting?

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

19

| | | |
|---|---|---|
| 08:28 | 1 | JUROR NO. 3:  No, I'm not. |
| 08:28 | 2 | THE COURT:  We want to remind you that that |
| | 3 | incident in Florida has nothing do with this trial or the |
| | 4 | two young men on this trial, but we're worried about the |
| | 5 | inflammatory nature of that.  So we're talking to each of |
| | 6 | you individually. |
| 08:28 | 7 | Would you continue to be fair in this matter?  In |
| | 8 | other words, would you continue to be that judge who's |
| | 9 | neutral.  You've heard part of the government case.  We |
| | 10 | haven't heard from the defense yet.  You've been admonished |
| | 11 | to not form or express any opinion. |
| 08:28 | 12 | Would you continue to be fair? |
| 08:29 | 13 | JUROR NO. 3:  Absolutely. |
| 08:29 | 14 | THE COURT:  I'm going to ask that one more time to |
| | 15 | be sure:  Are you sure? |
| 08:29 | 16 | JUROR NO. 3:  Yes. |
| 08:29 | 17 | THE COURT:  Okay.  Now, we expect that the Orlando |
| | 18 | shooting is going to continue to get increased coverage. |
| | 19 | Politicians are going to start marking statements.  The news |
| | 20 | reports are going to come out.  We want it clearly |
| | 21 | understood and will continue to admonish you along the way |
| | 22 | that that is an unrelated event that has nothing to do with |
| | 23 | this trial. |
| 08:29 | 24 | Is that acceptable to you? |
| 08:29 | 25 | JUROR NO. 3:  Yes, it is. |

| | | |
|---|---|---|
| 08:29 | 1 | THE COURT:  Let me turn to the government.  Do you |
| | 2 | have questions or concerns, Counsel? |
| 08:29 | 3 | MS. HEINZ:  Yes, Your Honor.  That's fine. |
| 08:29 | 4 | THE COURT:  Any concerns? |
| 08:29 | 5 | MS. HEINZ:  I'm sorry, Your Honor.  No, no |
| | 6 | concerns. |
| 08:29 | 7 | THE COURT:  Ms. Corrigan, do you have any concerns |
| | 8 | or questions? |
| 08:29 | 9 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 08:29 | 10 | THE COURT:  Mr. Lengyel-Leahu, any concerns or |
| | 11 | questions? |
| 08:29 | 12 | MR. LENGYEL-LEAHU:  No, Your Honor.  Thank you. |
| | 13 | We're satisfied. |
| 08:29 | 14 | THE COURT:  Thank you very much. |
| 08:29 | 15 | Sir, if you would go back in the jury room, then. |
| | 16 | Please don't share the questions we're asking.  We're going |
| | 17 | to talk to each of you individually just to make certain. |
| 08:29 | 18 | JUROR NO. 3:  Okay. |
| 08:29 | 19 | *(Juror No. 3 exits the courtroom.)* |
| 08:29 | 20 | THE COURT:  Juror No. 4, please, Andrew Huang. |
| 08:30 | 21 | *(Juror No. 4 called in and seated.)* |
| 08:30 | 22 | THE COURT:  Thank you.  Mr. Huang, if you would |
| | 23 | have a seat.  Be seated in Seat No. 12 for a moment.  It's a |
| | 24 | lot easier.  We know you're Juror No. 4. |
| 08:30 | 25 | But over the weekend, there was a shooting down in |

|       |    | |
|-------|----|-|
|       | 1  | Orlando, Florida. |
| 08:30 | 2  | JUROR NO. 4:  Correct. |
| 08:30 | 3  | THE COURT:  We assume that most of the country's |
|       | 4  | heard about that from the press.  Have you heard about that |
|       | 5  | incident? |
| 08:30 | 6  | JUROR NO. 4:  I do. |
| 08:30 | 7  | THE COURT:  Do you have any friends, loved ones, |
|       | 8  | anyone you know who are victims of that shooting? |
| 08:30 | 9  | JUROR NO. 4:  No. |
| 08:30 | 10 | THE COURT:  We wanted to remind you that that |
|       | 11 | shooting has absolutely nothing to do with these two young |
|       | 12 | men on trial in this case; but we're concerned about the |
|       | 13 | inflammatory nature of that, so we're talking to each of you |
|       | 14 | individually. |
| 08:30 | 15 | Do you feel that you would continue to be fair and |
|       | 16 | impartial on this case; in other words, be that neutral |
|       | 17 | judge and make certain you put that Florida incident |
|       | 18 | completely out of your discussions and thought process |
|       | 19 | concerning -- |
| 08:31 | 20 | PROSPECTIVE JUROR:  Sure, I do. |
| 08:31 | 21 | THE COURT:  -- this matter?  I'm gonna ask one |
|       | 22 | more time:  Are you certain of that? |
| 08:31 | 23 | PROSPECTIVE JUROR:  I'm certain. |
| 08:31 | 24 | THE COURT:  Okay.  During the course of the next |
|       | 25 | couple weeks, while we're still in session -- we're moving |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | much quicker than we anticipated -- there's going to be      |
|       | 2  | increased coverage of the Orlando shooting.  There are going |
|       | 3  | to be people on television referring to it and casting       |
|       | 4  | opinions on CNN, FOX, MSNBC, and papers, et cetera.  If      |
|       | 5  | you're reading any of that, we're going to continue to       |
|       | 6  | admonish you, and even if we don't, to disregard that and    |
|       | 7  | any -- any thought process that that has anything to do with |
|       | 8  | this matter.  Is that acceptable to you?                     |
| 08:31 | 9  | JUROR NO. 4:  Yes.                                            |
| 08:31 | 10 | THE COURT:  Let me turn to the government, then.             |
|       | 11 | Counsel on behalf of the government, are you satisfied?       |
| 08:31 | 12 | MS. HEINZ:  Yes, Your Honor.                                  |
| 08:31 | 13 | THE COURT:  Any questions?                                    |
| 08:31 | 14 | MS. HEINZ:  No, Your Honor.                                   |
| 08:32 | 15 | THE COURT:  Ms. Corrigan, same question.                     |
| 08:32 | 16 | MS. CORRIGAN:  No, Your Honor.  Thank you.                   |
| 08:32 | 17 | THE COURT:  Satisfied?                                        |
| 08:32 | 18 | MS. CORRIGAN:  Yes, Your Honor.                               |
| 08:32 | 19 | THE COURT:  All right.  Mr. Lengyel-Leahu, are you          |
|       | 20 | satisfied?                                                    |
| 08:32 | 21 | MR. LENGYEL-LEAHU:  I'm satisfied, Your Honor.              |
|       | 22 | Thank you.                                                    |
| 08:32 | 23 | THE COURT:  All right.  Then, sir, thank you very          |
|       | 24 | much.                                                         |
| 08:32 | 25 | JUROR NO. 4:  Thank you.                                      |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

23

08:32    1          THE COURT:  And please don't share the questions

         2    with any of the other jurors.  We're going through all 18 of

         3    you just to make certain.

08:32    4          JUROR NO. 4:  Okay.

08:32    5       *(Juror No. 4 exits the courtroom.)*

08:32    6          THE COURT:  It would be Enrique Mejia.

08:32    7       *(Juror No. 5 called in and seated.)*

08:32    8          THE COURT:  Mr. Mejia, would you seat yourself in

         9    Seat No. 12.  You don't have to go all the way up to your

        10    seat.  You're Juror No. 5.

08:32   11          Over the weekend, there was a shooting down in

        12    Orlando, Florida.  Are you aware of that?

08:32   13          JUROR NO. 5:  Yeah.

08:33   14          THE COURT:  We think most of the country is.  What

        15    we're concerned about is the inflammatory nature of that,

        16    and we want to make certain that it's understood by you,

        17    individually, and the rest of the jurors, individually and

        18    collectively, that that shooting has nothing to do with the

        19    case involving these two young men on trial in our court.

08:33   20          JUROR NO. 5:  Right.

08:33   21          THE COURT:  Do you understand that?

08:33   22          JUROR NO. 5:  Yes.

08:33   23          THE COURT:  So the critical question is, because

        24    of the continued press coverage -- and there's going to be

        25    press coverage in the future concerning that Orlando

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | shooting -- that you continue -- strike that.                |
| 08:33 | 2  | Would you be fair and impartial in this case going           |
|       | 3  | forward?                                                      |
| 08:33 | 4  | JUROR NO. 5: Yes.                                             |
| 08:33 | 5  | THE COURT: All right. I'm going to ask that one              |
|       | 6  | more time to be absolutely certain. Are you sure of that?    |
| 08:33 | 7  | JUROR NO. 5: Yes.                                             |
| 08:33 | 8  | THE COURT: That means you're gonna remain as a              |
|       | 9  | judge. You've heard portions of the government case. You     |
|       | 10 | haven't heard from the defense yet. We haven't heard         |
|       | 11 | closing argument, instruction. You'll continue to be         |
|       | 12 | neutral?                                                      |
| 08:33 | 13 | JUROR NO. 5: Yes.                                             |
| 08:33 | 14 | THE COURT: All right. Now, um, in addition,                 |
|       | 15 | there's going to be significant coverage, I'm assuming,      |
|       | 16 | coming out of Orlando. We're gonna have people on            |
|       | 17 | television giving their viewpoint, et cetera. Presidential   |
|       | 18 | nominees are gonna be giving their viewpoints --             |
| 08:34 | 19 | JUROR NO. 5: Yeah.                                            |
| 08:34 | 20 | THE COURT: -- trust me, on both sides. We're not            |
|       | 21 | gonna sequester you. There's no way in this modern age of    |
|       | 22 | telecommunication and news that we can lock you up in a      |
|       | 23 | hotel like the good old days and cut off all of your news,   |
|       | 24 | and we wouldn't do it anyway. We just want you to have that  |
|       | 25 | continuing admonition and understand that there's no         |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | relationship to the matter before you today and the next     |
|       | 2  | week or two with this Orlando shooting.  Fair enough?        |
| 08:34 | 3  | JUROR NO. 5:  Yes.                                            |
| 08:34 | 4  | THE COURT:  Counsel, are you satisfied?                       |
| 08:34 | 5  | MS. HEINZ:  Yes, Your Honor.                                  |
| 08:34 | 6  | THE COURT:  Any questions?                                    |
| 08:34 | 7  | MS. HEINZ:  No, Your Honor.                                   |
| 08:34 | 8  | THE COURT:  Ms. Corrigan?                                     |
| 08:34 | 9  | MS. CORRIGAN:  No, Your Honor.  Thank you.  I'm              |
|       | 10 | satisfied.                                                    |
| 08:34 | 11 | THE COURT:  Mr. Lengyel-Leahu?                                |
| 08:34 | 12 | MR. LENGYEL-LEAHU:  We're satisfied.  Thank you,            |
|       | 13 | Your Honor.                                                   |
| 08:34 | 14 | THE COURT:  All right.  Thank you very much, sir.           |
|       | 15 | Please don't share this with the other jurors.  We want to   |
|       | 16 | talk to each of you briefly.                                  |
| 08:34 | 17 | JUROR NO. 5:  Okay.                                           |
| 08:34 | 18 | *(Juror No. 5 exits the courtroom.)*                          |
| 08:34 | 19 | THE COURT:  And I believe it would be Anthony               |
|       | 20 | Traviglia.                                                    |
| 08:35 | 21 | *(Juror No. 6 called in and seated.)*                        |
| 08:35 | 22 | THE COURT:  Thank you, sir.  Over the weekend,              |
|       | 23 | there was a shooting down in Orlando, Florida.  Are you      |
|       | 24 | aware of that?                                                |
| 08:35 | 25 | JUROR NO. 6:  Yeah.                                           |

08:35   1          THE COURT:  I think most of the country's aware of

     2   it.  And, of course, we're concerned, and we wanna make

     3   certain that it's understood that that shooting in Orlando

     4   has nothing to do with the case involving the two young men

     5   in this court.

08:35   6          JUROR NO. 6:  Of course.

08:35   7          THE COURT:  But we wanna be certain by talking to

     8   each of the jurors because it's inflammatory.

08:35   9          And would you continue to be fair in this matter

    10   concerning this trial and these two men?

08:36  11          JUROR NO. 6:  Yes.

08:36  12          THE COURT:  And I'm gonna be -- just ask it one

    13   more time to be absolutely certain.  Are you certain of

    14   that?

08:36  15          JUROR NO. 6:  I am.

08:36  16          THE COURT:  So you'll remain that neutral judge;

    17   in other words, listening to all of the evidence?  You're

    18   not gonna make up your mind or form an opinion, and you can

    19   put this Florida shooting at least off to the side and not

    20   have any reflection in this matter?

08:36  21          JUROR NO. 6:  Yes, Your Honor.

08:36  22          THE COURT:  Now, the Florida case is gonna get

    23   continued coverage from Orlando, and there's gonna be people

    24   on television, even presidential candidates are gonna start

    25   talking about what their thoughts and feelings are.

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | Whatever that colloquy is, whatever that discussion, we know         |
|       | 2  | we can't cut you off from news sources, from television.  We         |
|       | 3  | just want it understood that's a completely separate matter          |
|       | 4  | unrelated to our case.  Is that acceptable to you?                   |
| 08:36 | 5  | JUROR NO. 6:  Yes.                                                   |
| 08:36 | 6  | THE COURT:  Counsel, are you satisfied?                              |
| 08:36 | 7  | MS. HEINZ:  Government is satisfied.                                 |
| 08:36 | 8  | THE COURT:  Any questions?                                           |
| 08:36 | 9  | MS. HEINZ:  No, Your Honor.                                          |
| 08:36 | 10 | THE COURT:  Ms. Corrigan, are you satisfied?                        |
| 08:36 | 11 | MS. CORRIGAN:  Yes, Your Honor.                                      |
| 08:36 | 12 | THE COURT:  Any questions?                                           |
| 08:36 | 13 | MR. LENGYEL-LEAHU:  No, Your Honor.                                  |
| 08:37 | 14 | THE COURT:  Mr. Lengyel-Leahu, are you satisfied?                   |
| 08:37 | 15 | MR. LENGYEL-LEAHU:  Just one question.                               |
| 08:37 | 16 | THE COURT:  Ask it of me, and I'll ask the juror.                   |
| 08:37 | 17 | MR. LENGYEL-LEAHU:  That he doesn't know anybody.                    |
| 08:37 | 18 | THE COURT:  Thank you.                                               |
| 08:37 | 19 | Do you know anybody?  Do you have any friends or                     |
|       | 20 | relatives down there?                                                |
| 08:37 | 21 | JUROR NO. 6:  No.                                                    |
| 08:37 | 22 | THE COURT:  And you don't know anybody who's a                       |
|       | 23 | victim of that shooting?                                             |
| 08:37 | 24 | JUROR NO. 6:  No.                                                    |
| 08:37 | 25 | THE COURT:  Thank you.  I'd forgotten that.                          |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:15-cr-00060-DOC   Document 294   Filed 03/31/17   Page 28 of 158   Page ID #:4648
8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

28

08:37   1                Do you want me to call back in to any of the other
        2    jurors?
08:37   3                MS. CORRIGAN:  I think you did as well, now that I
        4    think about.  And it was Rios.
08:37   5                THE COURT:  I apologize for that.  Please remind
        6    me.
08:37   7                We're gonna send you back to the jury room.
08:37   8                PROSPECTIVE JUROR:  Okay.
08:37   9                THE COURT:  Please don't discuss our questions.
        10   We're asking each juror separately.
08:37   11               JUROR NO. 6:  All right.
08:37   12          (Juror No. 6 exits the courtroom.)
08:37   13               THE COURT:  I think it might've been Scarlette
        14   Rios.  We'll take the next juror and come back with
        15   Scarlette Rios.  Thank you for reminding me.
08:37   16          (Juror No. 7 called in and seated.)
08:37   17               THE COURT:  Thank you.  Just take Seat No. 12, the
        18   first seat.  You're Michelle Hutchinson; is that correct?
08:38   19               JUROR NO. 7:  Yes, sir.
08:38   20               THE COURT:  Over the weekend there was a shooting
        21   down in Orlando, Florida.  Are you aware of that shooting?
08:38   22               JUROR NO. 7:  Vaguely, yes.
08:38   23               THE COURT:  I think most of the country is, and if
        24   not, it's on every television station and every newspaper.
08:38   25               Do you have any friends or relatives or anyone you

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | know who's a victim of that shooting?                        |
| 08:38   | 2  | JUROR NO. 7:  No, sir.                                        |
| 08:38   | 3  | THE COURT:  Okay.  We're concerned that there                |
|         | 4  | might be something inflammatory, and we're concerned and     |
|         | 5  | want it understood that that shooting in Florida has nothing |
|         | 6  | to do with the trial involving the two young men before us   |
|         | 7  | in this matter.                                              |
| 08:38   | 8  | JUROR NO. 7:  I agree, and I understand.                     |
| 08:38   | 9  | THE COURT:  Does that mean -- well, would you                |
|         | 10 | continue to be fair in this matter, then?                    |
| 08:38   | 11 | JUROR NO. 7:  Absolutely.                                    |
| 08:38   | 12 | THE COURT:  And would you put that other matter to           |
|         | 13 | the side?  In other words, by that, you recognize it has     |
|         | 14 | nothing do with this case?                                   |
| 08:38   | 15 | JUROR NO. 7:  Absolutely.                                    |
| 08:38   | 16 | THE COURT:  You're sure of that?                             |
| 08:38   | 17 | JUROR NO. 7:  Yes.                                           |
| 08:39   | 18 | THE COURT:  The case in Orlando is gonna continue            |
|         | 19 | to get increased press coverage.  I have no doubt about      |
|         | 20 | that.  Even presidential presumptive nominees are starting   |
|         | 21 | to make a lot of comments.  And it's impossible to sequester |
|         | 22 | you.  In the 1930s, we'd put you in a hotel room and cut off |
|         | 23 | all news sources.  We're not gonna do that.  So we just want |
|         | 24 | you to obey the admonition and recognize that Orlando matter |
|         | 25 | has nothing to do with our case.                             |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:39 | 1 | Is that acceptable? |
| 08:39 | 2 | JUROR NO. 7:  Yes. |
| 08:39 | 3 | THE COURT:  Let me turn to the government.  Is |
| | 4 | this person acceptable, Counsel? |
| 08:39 | 5 | MS. HEINZ:  I'm sorry, Your Honor.  I got |
| | 6 | distracted.  I'm sorry. |
| 08:39 | 7 | THE COURT:  Is there any concern, any reason for |
| | 8 | cause? |
| 08:39 | 9 | MS. HEINZ:  No, Your Honor. |
| 08:39 | 10 | THE COURT:  Acceptable? |
| 08:39 | 11 | MS. HEINZ:  Yes, Your Honor. |
| 08:39 | 12 | THE COURT:  Any questions? |
| 08:39 | 13 | MS. HEINZ:  No, Your Honor. |
| 08:39 | 14 | THE COURT:  Then let me turn to Ms. Corrigan.  Is |
| | 15 | this person acceptable to the defense? |
| 08:39 | 16 | MS. CORRIGAN:  Yes, Your Honor.  No questions. |
| 08:39 | 17 | THE COURT:  Mr. Lengyel-Leahu? |
| 08:39 | 18 | MR. LENGYEL-LEAHU:  You were fine, Your Honor. |
| | 19 | She's acceptable and no cause. |
| 08:39 | 20 | THE COURT:  Thank you very much. |
| 08:39 | 21 | If you'd go back in the jury room.  We're gonna |
| | 22 | talk to each of you very quickly this morning. |
| 08:40 | 23 | *(Juror No. 7 exits the courtroom.)* |
| 08:40 | 24 | THE COURT:  *(To the clerk:)* Deb, could you bring |
| | 25 | out Scarlette Rios again.  I forgot to ask her one question. |

| | | |
|---|---|---|
| 08:40 | 1 | *(Juror No. 2 recalled and seated.)* |
| 08:40 | 2 | MS. CORRIGAN:  Your Honor, that last juror, |
| | 3 | Ms. Hutchinson, the Court did not ask her not to talk to |
| | 4 | anybody going back there.  Perhaps she should be reminded |
| | 5 | quickly. |
| 08:40 | 6 | THE COURT:  Ms. Rios, I forgot to ask you one |
| | 7 | question.  Do you know anybody down in Florida who's a |
| | 8 | victim of that shooting? |
| 08:40 | 9 | JUROR NO. 2:  No. |
| 08:40 | 10 | THE COURT:  Counsel, any further questions? |
| 08:40 | 11 | MS. HEINZ:  No, Your Honor. |
| 08:40 | 12 | MS. CORRIGAN:  No, Your Honor. |
| 08:40 | 13 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 08:40 | 14 | THE COURT:  Is it acceptable if Debbie asks |
| | 15 | Ms. Hutchinson not to mention any questions that we asked. |
| 08:40 | 16 | MS. HEINZ:  Yes, Your Honor. |
| 08:40 | 17 | MS. CORRIGAN:  Yes, Your Honor. |
| 08:41 | 18 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 08:41 | 19 | THE COURT:  *(To the clerk:)* Debbie, tell |
| | 20 | Ms. Hutchinson not to mention any questions to the other |
| | 21 | jurors. |
| 08:41 | 22 | *(Juror No. 2 exits the courtroom.)* |
| 08:41 | 23 | THE COURT:  And would you bring us Donald Tuleja. |
| 08:41 | 24 | *(Juror No. 8 called in and seated.)* |
| 08:41 | 25 | THE COURT:  Sir, if you would have a seat. |

08:41  1          There's been a shooting down in Orlando, Florida,

2      over the weekend.  Are you aware of that?

08:41  3          JUROR NO. 8:  Yes.

08:41  4          THE COURT:  I think most of the country is.  Do

5      you have any friends or do you know anybody who's a victim

6      of that shooting?

08:41  7          JUROR NO. 8:  I do not.

08:41  8          THE COURT:  Okay.  I want to say again that that

9      that shooting in Orlando has nothing to do with the case

10     presently before us.  But we're concerned about the

11     inflammatory nature that might have some carryover.

08:42  12         Would you be -- continue to be fair in this matter

13     and, you know, be that neutral juror, or would there be any

14     concern about -- on our part, about you being a juror in

15     this matter going forward?

08:42  16         JUROR NO. 8:  I'd be fine.

08:42  17         THE COURT:  Okay.  You understand that's a

18     completely separate matter?

08:42  19         JUROR NO. 8:  Yes.

08:42  20         THE COURT:  All right.  And are you sure of that?

08:42  21         JUROR NO. 8:  I am.

08:42  22         THE COURT:  Okay.  We just need that absolute

23     clarity today.

08:42  24         There's going to be, I think, actually, increased

25     press coverage:  CNN, MSNBC, FOX, all the networks are going

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
|       | 1  | to continue; they're even gonna have experts in.  And we    |
|       | 2  | wanna remind you that whatever's said about Orlando has     |
|       | 3  | nothing do with our matter.                                 |
| 08:42 | 4  | Is that acceptable to you?                                   |
| 08:42 | 5  | JUROR NO. 8:  Yes.                                           |
| 08:42 | 6  | THE COURT:  We're gonna ask you not to ask or               |
|       | 7  | mention any of the questions we're asking you separately to |
|       | 8  | any of the other jurors, but we're talking to each of you   |
|       | 9  | individually just to make certain that that -- each juror   |
|       | 10 | would be fair and impartial going forward.                  |
| 08:43 | 11 | Counsel, do you have -- are you -- any issues for           |
|       | 12 | cause concerning this juror?                                |
| 08:43 | 13 | MS. HEINZ:  None, Your Honor.  Thank you.                    |
| 08:43 | 14 | THE COURT:  Any questions?                                   |
| 08:43 | 15 | MS. HEINZ:  No, Your Honor.                                  |
| 08:43 | 16 | THE COURT:  Ms. Corrigan?                                    |
| 08:43 | 17 | MS. CORRIGAN:  No, Your Honor.  Thank you.                   |
| 08:43 | 18 | THE COURT:  Cause?                                           |
| 08:43 | 19 | MS. CORRIGAN:  No, Your Honor.                               |
| 08:43 | 20 | THE COURT:  Any questions?                                   |
| 08:43 | 21 | MS. CORRIGAN:  No, Your Honor.                               |
| 08:43 | 22 | THE COURT:  Mr. Lengyel-Leahu, any issues for               |
|       | 23 | cause?                                                       |
| 08:43 | 24 | MR. LENGYEL-LEAHU:  No, Your Honor.                          |
| 08:43 | 25 | THE COURT:  Any questions I've forgotten, because           |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

34

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | I've forgotten a couple?                                     |
| 08:43 | 2  | MR. LENGYEL-LEAHU:  We're satisfied, Your Honor.            |
| 08:43 | 3  | THE COURT:  Sir, don't say anything to the other            |
|       | 4  | jurors.  We'll be right with you.  Let us talk to the rest   |
|       | 5  | of the folks.                                                |
| 08:43 | 6  | *(Juror No. 8 exits the courtroom.)*                         |
| 08:43 | 7  | THE COURT:  Lee Okubo next.                                  |
| 08:44 | 8  | *(Juror No. 9 called in and seated.)*                        |
| 08:44 | 9  | THE COURT:  Ms. Okubo, if you'd come in, just have          |
|       | 10 | a seat in any of the seats.                                  |
| 08:44 | 11 | Over the weekend, there was a shooting down in              |
|       | 12 | Orlando, Florida.  Are you aware of that?                    |
| 08:44 | 13 | JUROR NO. 9:  Yes.                                           |
| 08:44 | 14 | THE COURT:  I think most of the country's aware of          |
|       | 15 | that.                                                         |
| 08:44 | 16 | Do you have any friends, relatives, anyone you              |
|       | 17 | know who's a victim of that shooting?                        |
| 08:44 | 18 | JUROR NO. 9:  No.                                            |
| 08:44 | 19 | THE COURT:  Okay.  We wanna make certain that               |
|       | 20 | there's no carryover from that shooting to this case, any    |
|       | 21 | inflammatory, let's say, carryover and remind you that that |
|       | 22 | shooting in Florida has nothing to do with the matter of    |
|       | 23 | these two young men who are on trial in our case.           |
| 08:44 | 24 | Do you understand that?                                      |
| 08:44 | 25 | JUROR NO. 9:  Yes, I do.                                     |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:45 | 1 | THE COURT:  Now, that -- but the critical question |
| | 2 | for us is, would you continue to be fair in this matter and |
| | 3 | impartial?  Would you continue to be fair and impartial in |
| | 4 | our case? |
| 08:45 | 5 | JUROR NO. 9:  Yes. |
| 08:45 | 6 | THE COURT:  Are you sure? |
| 08:45 | 7 | JUROR NO. 9:  Yes. |
| 08:45 | 8 | THE COURT:  Okay. |
| 08:45 | 9 | That Florida shooting's going to have increased |
| | 10 | coverage.  Nominees for the President are making speeches |
| | 11 | about it, and major newspaper coverages or news stations |
| | 12 | will continue to have experts, supposedly, come in and |
| | 13 | discuss these matters.  We wanna make certain that if you're |
| | 14 | listening to that, that you continue to understand that |
| | 15 | Orlando has nothing to do with our matter that's before us. |
| 08:45 | 16 | Is that acceptable to you? |
| 08:45 | 17 | JUROR NO. 9:  Yes. |
| 08:45 | 18 | THE COURT:  Okay.  Let me -- just a moment. |
| 08:45 | 19 | Counsel, do you have any issues for cause? |
| 08:45 | 20 | MS. HEINZ:  None, Your Honor. |
| 08:45 | 21 | THE COURT:  Any questions? |
| 08:45 | 22 | MS. HEINZ:  No, Your Honor. |
| 08:45 | 23 | THE COURT:  Ms. Corrigan, do you have any issues |
| | 24 | for cause? |
| 08:45 | 25 | MS. CORRIGAN:  No, Your Honor. |

**DEBBIE GALE, U.S. COURT REPORTER**

08:45    1             THE COURT:  Any questions?

08:45    2             MS. CORRIGAN:  No, Your Honor.

08:45    3             THE COURT:  Mr. Lengyel-Leahu, any issues for

       4   cause?

08:46    5             MR. LENGYEL-LEAHU:  No, Your Honor.

08:46    6             THE COURT:  Any questions?

08:46    7             MR. LENGYEL-LEAHU:  No.  Thank you.

08:46    8             THE COURT:  Please don't share the questions we're

       9   asking each of you.  They're brief, but we wanted to talk to

     10   each of you individually for a moment.  So we'll be right

     11   with you.

08:46   12        *(Juror No. 9 exits the courtroom.)*

08:46   13             THE COURT:  *(To the clerk:)* If you would get the

     14   next juror, Deb, for a moment and take Ms. Okubo back.  We'd

     15   like to see Mr. Alan De La Rosa Zamora.

08:46   16        *(Juror No. 10 called in and seated.)*

08:46   17             THE COURT:  Thank you, sir.  Over the weekend,

     18   there was a shooting down in Texas -- or strike that.  Down

     19   in Orlando -- my apologies -- down in Orlando, Florida.  Are

     20   you aware of that?

08:46   21             JUROR NO. 10:  Yes.

08:46   22             THE COURT:  Do you have any friends or relatives

     23   who were the victims of that shooting?

08:46   24             JUROR NO. 10:  NO.

08:46   25             THE COURT:  Okay.  Now, we're concerned because

Case 8:15-cr-00060-DOC  Document 294  Filed 03/31/17  Page 37 of 158  Page ID #:4657
8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

37

|  |  |  |
|---|---|---|
|  | 1 | that shooting in Orlando has nothing to do with the issues |
|  | 2 | involving the two young men on trial in this matter.  But we |
|  | 3 | need to be certain about fairness. |
| 08:47 | 4 | Would you be fair and impartial as a juror going |
|  | 5 | forward with this matter? |
| 08:47 | 6 | JUROR NO. 10:  Yes. |
| 08:47 | 7 | THE COURT:  And I want to make that absolutely |
|  | 8 | clear.  I'm gonna ask you again:  Are you absolutely sure of |
|  | 9 | that? |
| 08:47 | 10 | JUROR NO. 10:  Yes. |
| 08:47 | 11 | THE COURT:  Okay.  You understand that that's a |
|  | 12 | separate matter.  And it's gonna get coverage, I promise |
|  | 13 | you, in the news; in fact, Presidential nominees are going |
|  | 14 | to be making speeches.  Different television networks will |
|  | 15 | have experts come in.  And there's no way that we can |
|  | 16 | sequester you from that kind of information.  As long as you |
|  | 17 | recognize that going forward Orlando has nothing to do with |
|  | 18 | our case.  Acceptable to you? |
| 08:47 | 19 | JUROR NO. 10:  Yes. |
| 08:47 | 20 | THE COURT:  Okay.  Counsel, issues for cause? |
| 08:47 | 21 | MS. HEINZ:  No, Your Honor. |
| 08:47 | 22 | THE COURT:  Acceptable to you, then?  Any |
|  | 23 | questions? |
| 08:47 | 24 | MS. HEINZ:  Yes.  No questions, Your Honor. |
| 08:47 | 25 | THE COURT:  Ms. Corrigan, acceptable for cause? |

| | | |
|---|---|---|
| 08:48 | 1 | MS. CORRIGAN:  Yes, Your Honor, and no questions. |
| 08:48 | 2 | THE COURT:  Mr. Lengyel-Leahu, acceptable for |
| | 3 | cause? |
| 08:48 | 4 | MR. LENGYEL-LEAHU:  Acceptable, Your Honor, yes. |
| 08:48 | 5 | THE COURT:  Any questions? |
| 08:48 | 6 | MR. LENGYEL-LEAHU:  No questions, Your Honor. |
| 08:48 | 7 | THE COURT:  All right.  Sir, please don't share |
| | 8 | what we're asking.  These brief questions are just designed |
| | 9 | to talk to each of you individually. |
| 08:48 | 10 | *(Juror No. 10 exits the courtroom.)* |
| 08:48 | 11 | THE COURT:  Asela Omiligespiritu. |
| 08:49 | 12 | *(Juror No. 11 called in and seated.)* |
| 08:49 | 13 | THE COURT:  If you would have a seat in any of the |
| | 14 | seats; it doesn't matter. |
| 08:49 | 15 | Over the weekend, there was a shooting in Orlando, |
| | 16 | Florida.  Are you aware of that shooting? |
| 08:49 | 17 | JUROR NO. 11:  Yes, I am, because I have a nephew |
| | 18 | who lives in Orlando. |
| 08:49 | 19 | THE COURT:  The nephew lives in Orlando. |
| 08:49 | 20 | JUROR NO. 11:  Yes. |
| 08:49 | 21 | THE COURT:  Was he a victim of that shooting? |
| 08:49 | 22 | JUROR NO. 11:  He wasn't, but he work -- he's a |
| | 23 | nurse, so he work at the Orlando Regional Hospital.  We have |
| | 24 | a discussion. *(Verbatim.)* |
| 08:49 | 25 | THE COURT:  Ah. |

08:49   1          JUROR NO. 11:  I didn't share.  I cannot discuss

2    more.  I just wanna make sure that he is safe and he's okay.

3    And that's it.

08:49   4          THE COURT:  Did he share with you the victims that

5    were coming in?  In other words, he must have been involved

6    in treating some of the people who were shot?

08:49   7          JUROR NO. 11:  He's a trauma nurse, and he said,

8    "*I am on a 16-hour shift.  I'm okay.  I'm safe.*"  I said,

9    "*That's all I need to know.*"

08:50  10          THE COURT:  There was no further discussion about

11   what he'd --

08:50  12          JUROR NO. 11:  There was no --

08:50  13          THE COURT:  Was there any further discussion about

14   what he had seen, the number of people being brought to the

15   hospital or their condition?

08:50  16          JUROR NO. 11:  No.  He said, "*I'm concentrating on

17   my work,*" and I said, "*That's what you have to do, and I

18   don't wanna discuss more about this because I'm on a jury at

19   this point.*"

08:50  20          THE COURT:  So you checked on his safety?

08:50  21          JUROR NO. 11:  Just for his safety.

08:50  22          THE COURT:  We're concerned about any inflammatory

23   nature of that incident having any effect on our trial,

24   because you understand that that Orlando shooting has

25   nothing to do with the two young men on trial in our court?

| | | |
|---|---|---|
| 08:50 | 1 | JUROR NO. 11:  Yes.  I stay away from TV, and I |
| | 2 | stay away from discussing it with my husband. |
| 08:50 | 3 | THE COURT:  Okay.  Do you believe that you'd be -- |
| | 4 | continue to be fair and impartial, then, in this case? |
| 08:50 | 5 | JUROR NO. 11:  Yes. |
| 08:50 | 6 | THE COURT:  Are you sure? |
| 08:50 | 7 | JUROR NO. 11:  I am very sure.  That's why I stay |
| | 8 | away from TV and radio. |
| 08:50 | 9 | THE COURT:  Now, there will be increased coverage, |
| | 10 | I promise you, on TV and radio, and we don't expect that all |
| | 11 | of that can be shut off; but we would continue to remind you |
| | 12 | that that Orlando shooting has nothing to do with this case. |
| 08:51 | 13 | Is that understood? |
| 08:51 | 14 | JUROR NO. 11:  Yes. |
| 08:51 | 15 | THE COURT:  Counsel, do you have any issues for |
| | 16 | cause? |
| 08:51 | 17 | MS. HEINZ:  No, Your Honor. |
| 08:51 | 18 | THE COURT:  Any questions? |
| 08:51 | 19 | MS. HEINZ:  No, Your Honor. |
| 08:51 | 20 | THE COURT:  Ms. Corrigan, any issues for cause? |
| 08:51 | 21 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 08:51 | 22 | THE COURT:  Any questions? |
| 08:51 | 23 | MS. CORRIGAN:  No, Your Honor. |
| 08:51 | 24 | THE COURT:  Mr. Lengyel-Leahu, any issues for |
| | 25 | cause? |

| | | |
|---|---|---|
| 08:51 | 1 | MR. LENGYEL-LEAHU:  No, but maybe a question or |
| | 2 | two, Your Honor. |
| 08:51 | 3 | THE COURT:  Ask me the question, Counsel.  I'll |
| | 4 | ask her.  I want to make sure that they're appropriate |
| | 5 | questions. |
| 08:51 | 6 | MR. LENGYEL-LEAHU:  The time when she spoke with |
| | 7 | her son? |
| 08:51 | 8 | THE COURT:  What time did you speak with your son? |
| 08:51 | 9 | JUROR NO. 11:  Nephew.  I got a text from a cousin |
| | 10 | in the Philippines to check on our nephew. |
| 08:51 | 11 | THE COURT:  Nephew. |
| 08:51 | 12 | JUROR NO. 11:  It's a nephew. |
| 08:51 | 13 | THE COURT:  It's a nephew. |
| 08:51 | 14 | JUROR NO. 11:  And I didn't know about it because |
| | 15 | my TV was off, and my -- basically, electronic was off |
| | 16 | because it's the weekend.  So I pick up the land line and |
| | 17 | call him directly on his cellphone.  This was around, I |
| | 18 | would say, 7:00 o'clock in the morning California time. |
| 08:52 | 19 | THE COURT:  Was that on Sunday? |
| 08:52 | 20 | JUROR NO. 11:  It was yesterday morning around |
| | 21 | 7:00 o'clock. |
| 08:52 | 22 | THE COURT:  Okay.  Counsel? |
| 08:52 | 23 | MR. LENGYEL-LEAHU:  I'm concerned 'cause I'm not |
| | 24 | sure they made the connection. |
| 08:52 | 25 | THE COURT:  Well, why don't you just ask her. |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | I'll let you do that.                                                 |
| 08:52 | 2  | MR. LENGYEL-LEAHU:  Okay.  At 7:00 o'clock in the                     |
|       | 3  | morning, I don't think it had been reported.                         |
| 08:52 | 4  | THE COURT:  No, Counsel.                                              |
| 08:52 | 5  | MR. LENGYEL-LEAHU:  Any affiliation.  I'm just                        |
|       | 6  | wondering how she made the connection to this case.                  |
| 08:52 | 7  | THE COURT:  I don't understand the question.                         |
| 08:52 | 8  | MR. LENGYEL-LEAHU:  I'm trying to frame it.                           |
| 08:52 | 9  | THE COURT:  It had been well reported.  It                           |
|       | 10 | occurred at 2:00 a.m.                                                 |
| 08:52 | 11 | MR. LENGYEL-LEAHU:  I'm not sure how to frame it.                    |
| 08:52 | 12 | THE COURT:  I'm letting you ask the question, but                    |
|       | 13 | it's confusing.                                                      |
| 08:52 | 14 | MR. LENGYEL-LEAHU:  Could we sidebar for a second?                   |
| 08:53 | 15 | THE COURT:  Well, would you go outside in the                        |
|       | 16 | hallway for just a moment with Debbie.  We'll bring you               |
|       | 17 | right back in.                                                        |
| 08:53 | 18 | *(Juror No. 11 exits the courtroom.)*                                 |
| 08:53 | 19 | THE COURT:  Counsel, the difficulty is it occurred                   |
|       | 20 | at 2:00 a.m. early Sunday morning.                                   |
| 08:53 | 21 | MR. LENGYEL-LEAHU:  Right.                                            |
| 08:53 | 22 | THE COURT:  News press, I believe, were picking it                   |
|       | 23 | up almost immediately.  It went national; it went viral.             |
| 08:53 | 24 | MR. LENGYEL-LEAHU:  Right.                                            |
| 08:53 | 25 | THE COURT:  By the time the West Coast woke up, it                   |

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
|         | 1  | was on the news.  So what's your question?                           |
| 08:53   | 2  | MR. LENGYEL-LEAHU:  Um, I saw it first headed into                    |
|         | 3  | church, and it seemed to me like it was just a mass                   |
|         | 4  | shooting.  And I texted to someone who called my attention            |
|         | 5  | to it, and I said -- shooting up a gay bar.  I don't make             |
|         | 6  | the connection immediately to ISIS or ISIL, but she did in           |
|         | 7  | her conversation with her nephew.                                     |
| 08:53   | 8  | THE COURT:  No, no.  She said that she checked on                     |
|         | 9  | his safety.  She never said she made a connection to ISIL.            |
| 08:54   | 10 | MR. LENGYEL-LEAHU:  Well, she did because she                         |
|         | 11 | said, "*I don't wanna talk anymore about it because I'm a*            |
|         | 12 | *juror in this case.*"                                                |
| 08:54   | 13 | So I'm thinking that either she put the steps                         |
|         | 14 | together before it was reported that was ISIL.                        |
| 08:54   | 15 | THE COURT:  What question would you like to ask                       |
|         | 16 | her?                                                                  |
| 08:54   | 17 | MR. LENGYEL-LEAHU:  I don't know.  ISIL didn't                        |
|         | 18 | take credit for this that I'm aware of until after I got out          |
|         | 19 | of church somewhere around 1:00 o'clock.                             |
| 08:54   | 20 | THE COURT:  I'm gonna let you ask the question.                       |
|         | 21 | Tell me the question you want to ask her.                             |
| 08:54   | 22 | MR. LENGYEL-LEAHU:  I don't know how to frame it.                     |
|         | 23 | I don't know how to frame it, but that's where I want to get          |
|         | 24 | it.                                                                  |
| 08:54   | 25 | MS. CORRIGAN:  Your Honor, I think in terms of the                    |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       |  1 | timeline, he was in church.  I know I was up at about 5:00    |
|       |  2 | working out, and it was on the news at that point.  The       |
|       |  3 | 9-1-1 call that the shooter made was already out in public    |
|       |  4 | probably by, I don't know, I'd say 7:00-ish, but that was     |
|       |  5 | when he claimed to be connected with ISIL.  And then I think  |
|       |  6 | the ISIL taking responsibility thing, I think you're          |
|       |  7 | correct, or codefendant's lawyer is correct; it came out      |
|       |  8 | later in the morning, early afternoon.  But either way, the   |
|       |  9 | ISIL issue was in full, uh, uh --                             |
| 08:55 | 10 | THE COURT:  But she's never said that.  She didn't            |
|       | 11 | say that when she came into court.  The question is if you    |
|       | 12 | want me to inquire in that area, I would be happy to.  All    |
|       | 13 | she said so far is that "*I was checking on my nephew's*      |
|       | 14 | *safety*."  Now, if there's information -- and "*I'm a juror on* |
|       | 15 | *this case.*"                                                 |
| 08:55 | 16 | You may be absolutely right.  Maybe she's made a              |
|       | 17 | connection because, as Ms. Corrigan said, by that time, it    |
|       | 18 | was common knowledge that the shooter was claiming an         |
|       | 19 | affiliation with ISIL.  I'm happy to inquire.                 |
| 08:55 | 20 | MR. LENGYEL-LEAHU:  See, I didn't -- I wasn't --              |
| 08:55 | 21 | THE COURT:  I encourage you to let me inquire.                |
|       | 22 | That's why I'm asking you the question, because if there's    |
|       | 23 | not cause, you end up heightening it.  It's easier for the    |
|       | 24 | Court to make another inquiry.                                |
| 08:55 | 25 | Now, if you want to ask the questions, I'm happy              |

|  |  |  |
|---|---|---|
|  | 1 | to let you do so.  I'm happy to let any counsel ask any |
|  | 2 | juror questions. |
| 08:55 | 3 | The difficulty, though, is if you got yourself in |
|  | 4 | a box and there wasn't cause, then you've borne *(sic)* into a |
|  | 5 | jury when the Court can ask the same question, quite |
|  | 6 | frankly, in a way that reflects on the Court asking it, not |
|  | 7 | you.  But if you would like to ask a question, I'm happy to |
|  | 8 | let you. |
| 08:56 | 9 | MR. LENGYEL-LEAHU:  I'm just in the rock and the |
|  | 10 | hard place because we've had several mass shootings where |
|  | 11 | the initial press jumped to conclusions.  But since I don't |
|  | 12 | know what her initial information about the incident was, |
|  | 13 | how did she jump to the conclusion that that incident -- |
|  | 14 | maybe she heard from her aunt -- ISIS shot up a bar in |
|  | 15 | Orlando, if she heard it that way. |
| 08:56 | 16 | THE COURT:  Tell me the question you'd like to |
|  | 17 | ask, or I will just let you ask whatever question you |
|  | 18 | choose. |
| 08:56 | 19 | MR. LENGYEL-LEAHU:  She said she could be fair. |
|  | 20 | I'll pass, Your Honor. |
| 08:56 | 21 | MS. CORRIGAN:  Or perhaps what about asking her -- |
|  | 22 | she made the statement that she said to her nephew, I don't |
|  | 23 | want any further -- essentially, that I'm not gonna ask you |
|  | 24 | anything further; I'm on a jury.  Perhaps a general question |
|  | 25 | as to why she said that.  And then inquire whether after |

|  | 1 | that she can still be fair.  I mean, maybe that's what -- is |
|  | 2 | that what you're looking for? |
| 08:57 | 3 | THE COURT:  Do you want to ask a question, or do |
|  | 4 | you want me to ask the question?  So far, I'm assuming you |
|  | 5 | wanted the Court to ask questions, then saying "*Do you have* |
|  | 6 | *any questions*" as a follow up, but your choice. |
| 08:57 | 7 | MS. CORRIGAN:  I don't need anything further.  I'm |
|  | 8 | fine. |
| 08:57 | 9 | MR. LENGYEL-LEAHU:  I think I'm fine, Your Honor. |
| 08:57 | 10 | THE COURT:  Well, I want to be absolutely certain. |
| 08:57 | 11 | MR. LENGYEL-LEAHU:  I'm certain I'm comfortable |
|  | 12 | with this juror.  She's promised, and I don't believe she's |
|  | 13 | gonna allow that to influence her decision in this case. |
| 08:57 | 14 | THE COURT:  All right.  If everybody's satisfied, |
|  | 15 | then. |
| 08:57 | 16 | *(To the clerk:)* Deb, ask that juror to remain back |
|  | 17 | in the jury room and ask the next juror to come in, and that |
|  | 18 | would be Rosemary Valdovinos. |
| 08:57 | 19 | So there's no issue for cause with that juror; is |
|  | 20 | that correct, government? |
| 08:57 | 21 | MS. HEINZ:  That's correct, Your Honor. |
| 08:57 | 22 | THE COURT:  Ms. Corrigan? |
| 08:57 | 23 | MS. CORRIGAN:  Yes, Your Honor. |
| 08:57 | 24 | THE COURT:  Mr. Lengyel-Leahu? |
| 08:57 | 25 | MR. LENGYEL-LEAHU:  Yeah.  No issue for cause. |

| | | |
|---|---|---|
| 08:58 | 1 | THE COURT:  All right.  Now, when the next juror's |
| | 2 | coming in, in the meantime, we can decide what to do about |
| | 3 | that every night, whether we want to heighten it, whether |
| | 4 | you want an admonition every night.  Let's decide that by |
| | 5 | the end of the day how we wanna conduct ourselves, whether |
| | 6 | you want a continuing admonishment or not.  On one hand, |
| | 7 | it's good; on the other hand, it heightens the issue. |
| 08:58 | 8 | *(Juror No. 12 called in and seated.)* |
| 08:58 | 9 | THE COURT:  Morning.  Over the weekend, |
| | 10 | Ms. Valdovinos -- |
| 08:58 | 11 | JUROR NO. 12:  Good morning. |
| 08:58 | 12 | THE COURT:  -- there was a shooting down in |
| | 13 | Orlando, Florida, over the weekend.  Are you aware of that? |
| 08:58 | 14 | JUROR NO. 12:  Yes. |
| 08:58 | 15 | THE COURT:  I think most of the country is by this |
| | 16 | time.  Do you have any loved ones or friends who were |
| | 17 | victims of that shooting? |
| 08:58 | 18 | JUROR NO. 12:  No. |
| 08:58 | 19 | THE COURT:  That incident in -- shooting in |
| | 20 | Orlando has nothing to do with the two young men who are on |
| | 21 | trial before this jury.  But we're concerned about there |
| | 22 | being any potential, you know, inflammatory nature that |
| | 23 | would have some carryover. |
| 08:59 | 24 | Would you be fair and impartial in this matter |
| | 25 | going forward as a juror? |

08:59    1           JUROR NO. 12:  I thought about it.

08:59    2           THE COURT:  Okay.

08:59    3           JUROR NO. 12:  After the incident and actually

4  this morning as well.  Um, maybe 'cause it's so recent, I

5  really do feel very emotional about it.

08:59    6           THE COURT:  Yeah.

08:59    7           JUROR NO. 12:  My feelings are strong and, um,

8  I -- like I said, I thought about it, and I think I would

9  have a very difficult time --

08:59   10           THE COURT:  Okay.

08:59   11           JUROR NO. 12:  -- putting those feelings aside

12  'cause they're very strong.

08:59   13           THE COURT:  Do you feel there might be some

14  carryover from that shooting into the matter before you

15  today?

08:59   16           JUROR NO. 12:  Unfortunately, I do.

08:59   17           THE COURT:  We appreciate that.  Would you remain

18  out in the hallway for just a moment.  Let me talk to

19  counsel for just a minute.

08:59   20           JUROR NO. 12:  Sure, sure.

08:59   21     (Juror No. 12 exits the courtroom.)

09:00   22           THE COURT:  Now, counsel, there's a lot of

23  questions that can be asked from this point forward; in

24  other words, we can go back and forth with rehabilitation,

25  non-rehabilitation.  I think you just got a very honest

```
 1    concern.  And I would be prepared to excuse this juror for
 2    cause.  I mean, we can go back and forth about
 3    rehabilitating and what degree and are you absolutely
 4    certain.  But I think you just got real clarity from this
 5    juror.
 6              MS. HEINZ:  The government would stip.
 7              MR. LENGYEL-LEAHU:  Stip.
 8              MS. CORRIGAN:  Stip.
 9              THE COURT:  All right.  Bring Ms. Valdovinos in.
10         (Juror No. 12 recalled and seated.)
11              THE COURT:  Ms. Valdovinos, have a seat for just a
12    moment.  First of all, we always want to thank you.  All
13    sides have stipulated and they're gonna excuse you.
14              JUROR NO. 12:  Okay.
15              THE COURT:  I don't think anyone wants you to go
16    through that struggle over the next couple weeks.  And
17    you've given us a very honest answer, and I think on behalf
18    of the government and each of defense counsel, they're very
19    appreciative.  So it's kind of unanimous:  Let's let that
20    nice lady go about her business.  Okay?
21              JUROR NO. 12:  Okay.
22              THE COURT:  If you would be so kind, though, I
23    don't want to put you back in the jury room for a moment.
24    Do you have all of your effects with you at the present
25    time?
```

09:01  1              JUROR NO. 12:  No.  My purse is still in there.

09:01  2              THE COURT:  Okay.  Where is your purse located?

09:01  3              JUROR NO. 12:  In the jury room.

09:01  4              THE COURT:  Where is it?

09:01  5              JUROR NO. 12:  By the chair where I'm standing.

09:01  6              THE COURT:  Better yet, why don't you get your

       7    purse, come back into court, but don't make any statement to

       8    any of the jurors.

09:01  9              Would that be acceptable to you?

09:01  10             JUROR NO. 12:  That's fine.

09:01  11             THE COURT:  Don't say, "*I'm leaving the jury.*"

       12   Don't do anything.  Just go get your purse and come back

       13   with us.

09:01  14             JUROR NO. 12:  That's fine.

09:01  15             THE COURT:  Okay.

09:01  16        *(Juror No. 12 exits the courtroom.)*

09:01  17             THE COURT:  And, Counsel, let's just send her home

       18   from this point forward.  Let's not have any further mixing

       19   with the jury.  Acceptable?

09:01  20             MS. CORRIGAN:  Yes, Your Honor.

09:02  21             MS. HEINZ:  Yes, Your Honor.

09:02  22             MR. LENGYEL-LEAHU:  Yes.

09:02  23        *(Juror No. 12 returns to the courtroom.)*

09:02  24                    **JUROR NO. 12 EXCUSED**

09:02  25             THE COURT:  Okay.  Ms. Valdovinos, we're gonna

```
  1    thank and excuse you at this time.  You're free to go.  You

  2    can talk to anybody about the case now, but, please, of

  3    course, none of the jurors.  If you've become friends with

  4    any of them, any of the alternates, no conversation, no

  5    contact.  Is that acceptable?

09:02  6               JUROR NO. 12:  That's acceptable.

09:02  7               THE COURT:  Thank you for your service.

09:02  8               JUROR NO. 12:  Thank you.

09:02  9               THE COURT:  Counsel, any further admonition needed

  10   by the Court?

09:02  11              MS. HEINZ:  Not from the government.

09:02  12              THE COURT:  Counsel?

09:02  13              MS. CORRIGAN:  No, Your Honor.

09:02  14              THE COURT:  Counsel?

09:02  15              MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor.

09:02  16              THE COURT:  Thank you very much.

09:02  17              (To the clerk:)  Deb, as soon as you come back, if

  18   we can see alternate number -- well, alternate Robert Roy.

09:03  19          (Juror No. 12 exits the courtroom.)

09:03  20              THE COURT:  Now, as we're getting Mr. Roy, look at

  21   your notes.  Of course, this has been inartfully done.  I'd

  22   rather have a conversation.  So if there's additional

  23   questions or concerns with the first eleven, I'm happy to

  24   open that back up again and bring them in.  So look at your

  25   notes one more time and make certain.  But let's go through
```

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | the six alternates.                                                 |
| 09:03 | 2  | MS. HEINZ:  Your Honor, her notebook is on the --                   |
| 09:03 | 3  | THE CLERK:  I'll grab it.                                            |
| 09:03 | 4  | *(Alternate Juror called in and seated.)*                           |
| 09:03 | 5  | THE COURT:  Mr. Roy, anyplace you'd like to be                      |
|       | 6  | seated is acceptable.  Over the weekend, there was a                |
|       | 7  | shooting down in Orlando, Florida.  Are you aware of that?          |
| 09:03 | 8  | ALTERNATE JUROR:  Yes, I am, Your Honor.                            |
| 09:03 | 9  | THE COURT:  Most of the country is, from the news                   |
|       | 10 | press, et cetera.                                                   |
| 09:03 | 11 | Do you have any friends, relatives, acquaintances                   |
|       | 12 | who were victims of that shooting?                                  |
| 09:04 | 13 | ALTERNATE JUROR:  No, I don't.                                      |
| 09:04 | 14 | THE COURT:  From our perspective we're worried                      |
|       | 15 | about the inflammatory nature of that, but we're also very          |
|       | 16 | aware that that shooting has nothing to do with the present         |
|       | 17 | matter before us.  But we need to make certain that the             |
|       | 18 | jurors are fair.  And that is, would you continue to be fair        |
|       | 19 | in this matter going forward as a juror?                            |
| 09:04 | 20 | ALTERNATE JUROR:  Certainly, Your Honor.                            |
| 09:04 | 21 | THE COURT:  Okay.  You understand that that                         |
|       | 22 | shooting in Orlando has nothing to do with the two young men        |
|       | 23 | on trial here.                                                      |
| 09:04 | 24 | ALTERNATE JUROR:  I do, Your Honor.                                 |
| 09:04 | 25 | THE COURT:  And to be sure, are you absolutely                      |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | certain of that?                                             |
| 09:04 | 2  | ALTERNATE JUROR:  I'm very certain.                          |
| 09:04 | 3  | THE COURT:  The case down in Orlando is gonna               |
|       | 4  | continue to get increased coverage, in my opinion.  They're |
|       | 5  | gonna get experts on CNN, MSNBC, Fox, you name it.  And we  |
|       | 6  | just want to make certain going forward we're not going to  |
|       | 7  | shut off sources of information.  We can't in this          |
|       | 8  | electronic age.  But we're going to ask you to make certain |
|       | 9  | that you constantly are aware, remind yourself and obey the |
|       | 10 | admonition, that that is a totally unrelated matter.        |
| 09:05 | 11 | Acceptable to you, sir?                                     |
| 09:05 | 12 | ALTERNATE JUROR:  Yes.  Very acceptable, yes,               |
|       | 13 | Your Honor.                                                 |
| 09:05 | 14 | THE COURT:  Let me turn to the government.  Any            |
|       | 15 | issues for cause, Counsel?                                  |
| 09:05 | 16 | MS. HEINZ:  No, Your Honor.                                 |
| 09:05 | 17 | THE COURT:  Any questions you'd like to ask?               |
| 09:05 | 18 | MS. HEINZ:  No, Your Honor.                                 |
| 09:05 | 19 | THE COURT:  Ms. Corrigan, any questions you'd like         |
|       | 20 | to ask?                                                     |
| 09:05 | 21 | MS. CORRIGAN:  No, Your Honor.                              |
| 09:05 | 22 | THE COURT:  Any issues for cause?                          |
| 09:05 | 23 | MS. CORRIGAN:  No, Your Honor.                              |
| 09:05 | 24 | THE COURT:  Mr. Lengyel-Leahu, any questions you'd        |
|       | 25 | like to ask?                                                |

09:05    1            MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor.

09:05    2            THE COURT:  Any issues for cause?

09:05    3            MR. LENGYEL-LEAHU:  No, sir.

09:05    4            THE COURT:  Then, sir, if you'd not discuss the

         5    few brief questions we're asking each juror, but we wanted

         6    to talk to you each individually.  We'll come right back and

         7    get all of you in a few moments.

09:05    8         *(Alternate juror exits the courtroom.)*

09:05    9            THE COURT:  *(To the clerk:)* The next juror,

        10    Debbie, if you would be so kind, is Mr. Frank Fraga.

09:05   11         *(Second alternate juror called in and seated.)*

09:06   12            THE COURT:  Mr. Fraga, anyplace you'd like to be

        13    seated is acceptable.

09:06   14            Over the weekend, there was a shooting down in

        15    Orlando, Florida.  Are you aware of that shooting?

09:06   16            ALTERNATE JUROR:  Yes, I am.

09:06   17            THE COURT:  I think most of the country is, from

        18    television and the press.

09:06   19            ALTERNATE JUROR:  Yeah.

09:06   20            THE COURT:  Do you have any friends, relatives,

        21    acquaintances who were victims of that shooting?

09:06   22            ALTERNATE JUROR:  No, I do not.

09:06   23            THE COURT:  Okay.  That shooting in Orlando has

        24    nothing to do with the two young men who are on trial in our

        25    court.

09:06  1                    ALTERNATE JUROR:  Correct.

09:06  2                    THE COURT:  But we wanted to make certain that

3    there was no potential carryover, anything inflammatory that

4    would affect our jury, so we're talking to each of you

5    individually.

09:07  6                    Would you be fair and impartial once again going

7    forward in this matter?

09:07  8                    ALTERNATE JUROR:  I will continue as a juror with,

9    uh, nonbiased.

09:07  10                   THE COURT:  Okay.  Are you absolutely certain?

09:07  11                   ALTERNATE JUROR:  Yes.

09:07  12                   THE COURT:  There's going to be increased

13   coverage, I promise you.  Whatever the coverage has been

14   will increase over Orlando.  You're going to have

15   Presidential presumptive nominees making statements.  You're

16   going to have experts coming on different television

17   networks.  We know it's impossible to cut off that kind of

18   information in the electronic age, but we constantly remind

19   you that the Florida incident has nothing to do with our

20   case.

09:07  21                   Is that acceptable to you?

09:07  22                   ALTERNATE JUROR:  Yes, it is.

09:07  23                   THE COURT:  Counsel, do you have any questions on

24   behalf of the government?

09:07  25                   MS. HEINZ:  No, Your Honor.

| | | |
|---|---|---|
| 09:07 | 1 | THE COURT: Any issues for cause? |
| 09:07 | 2 | MS. HEINZ: No, Your Honor. |
| 09:07 | 3 | THE COURT: Ms. Corrigan, any questions? |
| 09:07 | 4 | MS. CORRIGAN: No, Your Honor. |
| 09:07 | 5 | THE COURT: Any issues for cause? |
| 09:07 | 6 | MS. CORRIGAN: No, Your Honor. |
| 09:07 | 7 | THE COURT: Mr. Lengyel-Leahu, any questions? |
| 09:07 | 8 | MR. LENGYEL-LEAHU: No. Thank you, Your Honor. |
| 09:07 | 9 | THE COURT: Any issues for cause? |
| 09:08 | 10 | MR. LENGYEL-LEAHU: No, sir. |
| 09:08 | 11 | THE COURT: Thank you. If you would please not |
| | 12 | discuss the few brief questions we're asking you. We want |
| | 13 | to talk to each one of you. |
| 09:08 | 14 | ALTERNATE JUROR: Okay. |
| 09:08 | 15 | THE COURT: Thank you very much. |
| 09:08 | 16 | *(Second alternate juror exits the courtroom.)* |
| 09:08 | 17 | THE COURT: *(To the clerk:)* I think Alan or Dillon |
| | 18 | Cassell. Is that okay, Deb? |
| 09:08 | 19 | THE CLERK: Yes. |
| 09:08 | 20 | *(Third alternate juror called in and seated.)* |
| 09:08 | 21 | THE COURT: Okay. Thank you, sir. Anyplace you'd |
| | 22 | like to be seated is acceptable. |
| 09:08 | 23 | You're Mr. Cassell. |
| 09:08 | 24 | ALTERNATE JUROR: Yes. |
| 09:08 | 25 | THE COURT: And over the weekend, Mr. Cassell, |

|   |   |   |
|---|---|---|
|  | 1 | there was a shooting down in Orlando, Florida.  Are you |
|  | 2 | aware of that? |
| 09:08 | 3 | ALTERNATE JUROR:  Yes. |
| 09:08 | 4 | THE COURT:  Yeah, it's been in all the newspapers, |
|  | 5 | all the television stations. |
| 09:08 | 6 | Did you have any relatives, friends, acquaintances |
|  | 7 | who are victims of that shooting? |
| 09:09 | 8 | ALTERNATE JUROR:  Not that I know of. |
| 09:09 | 9 | THE COURT:  Okay.  That shooting has nothing to do |
|  | 10 | with the matter before this Court and these two young men, |
|  | 11 | the accusations made that you're going to attempt to decide. |
|  | 12 | But we're concerned about the inflammatory nature having any |
|  | 13 | of potential carryover. |
| 09:09 | 14 | Do you believe that you'd be fair and impartial |
|  | 15 | going forward in this matter? |
| 09:09 | 16 | ALTERNATE JUROR:  Yes. |
| 09:09 | 17 | THE COURT:  Okay.  And are you absolutely certain? |
| 09:09 | 18 | ALTERNATE JUROR:  Absolutely. |
| 09:09 | 19 | THE COURT:  Okay.  The case is going to get, down |
|  | 20 | in Orlando, increased coverage.  They're going to have |
|  | 21 | experts on television, different people saying things in |
|  | 22 | papers, the presumptive nominees are going to be making |
|  | 23 | speeches.  And we recognize we can't cut off that source of |
|  | 24 | information in the electronic age, but we constantly remind |
|  | 25 | you and admonish you that that Orlando incident has nothing |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | to do with the trial before us.                              |
| 09:10 | 2  | Is that acceptable to you, sir?                              |
| 09:10 | 3  | ALTERNATE JUROR:  Yes, it is.                                |
| 09:10 | 4  | THE COURT:  Let me turn to the government.  Do you           |
|       | 5  | have any questions?                                          |
| 09:10 | 6  | MS. HEINZ:  No, Your Honor.                                  |
| 09:10 | 7  | THE COURT:  Any issues for cause?                            |
| 09:10 | 8  | MS. HEINZ:  No, Your Honor.                                  |
| 09:10 | 9  | THE COURT:  Ms. Corrigan, any questions?                     |
| 09:10 | 10 | MS. CORRIGAN:  No, Your Honor.                               |
| 09:10 | 11 | THE COURT:  Any issues for cause?                            |
| 09:10 | 12 | MS. CORRIGAN:  None.                                         |
| 09:10 | 13 | THE COURT:  Mr. Lengyel-Leahu, any questions?               |
| 09:10 | 14 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor.             |
| 09:10 | 15 | THE COURT:  Any issues for cause?                            |
| 09:10 | 16 | MR. LENGYEL-LEAHU:  No, sir.                                 |
| 09:10 | 17 | THE COURT:  Sir, please don't tell the other                |
|       | 18 | jurors what we're asking.  We're just talking to each of you |
|       | 19 | individually to make sure we have an absolutely fair jury.   |
|       | 20 | Okay.  Thank you very much.                                  |
| 09:10 | 21 | *(Third alternate juror exits the courtroom.)*              |
| 09:10 | 22 | THE COURT:  Scott Kirby.                                     |
| 09:10 | 23 | *(Fourth alternate juror called in and seated.)*           |
| 09:10 | 24 | THE COURT:  Mr. Kirby, anyplace you'd like to be            |
|       | 25 | seated is fine.  Mr. Kirby, over the weekend down in         |

**DEBBIE GALE, U.S. COURT REPORTER**

|  |  |  |
|---|---|---|
|  | 1 | Orlando, Florida, there was a shooting.  Are you aware of |
|  | 2 | that shooting? |
| 09:11 | 3 | ALTERNATE JUROR:  Yes, I am. |
| 09:11 | 4 | THE COURT:  It's been in every newspaper.  It's |
|  | 5 | been on every television. |
| 09:11 | 6 | Do you have any relatives, loved onces, |
|  | 7 | acquaintances, friends who were victims of that shooting? |
| 09:11 | 8 | ALTERNATE JUROR:  I do not. |
| 09:11 | 9 | THE COURT:  Okay.  That shooting in Orlando has |
|  | 10 | nothing to do with the matter that you may be deciding.  But |
|  | 11 | we are concerned about the inflammatory nature of that. |
|  | 12 | Everybody's going to be making a statement, the presumptive |
|  | 13 | nominees for both parties.  Television will get in experts |
|  | 14 | to talk about it.  And we wanna make certain going forward, |
|  | 15 | if you would be a fair and impartial juror.  Would you? |
| 09:11 | 16 | ALTERNATE JUROR:  Yes. |
| 09:11 | 17 | THE COURT:  Are you absolutely certain? |
| 09:11 | 18 | ALTERNATE JUROR:  Yes. |
| 09:11 | 19 | THE COURT:  Okay.  Then, in this electronic age, |
|  | 20 | we're not gonna sequester you.  It's impossible to cut off |
|  | 21 | information.  We just ask you to constantly remind yourself |
|  | 22 | and know that you're admonished that that incident in |
|  | 23 | Florida has nothing to do with our matter. |
| 09:12 | 24 | Acceptable to you, sir? |
| 09:12 | 25 | ALTERNATE JUROR:  Yes. |

| | | |
|---|---|---|
| 09:12 | 1 | THE COURT:  Government, do you have questions? |
| 09:12 | 2 | MS. HEINZ:  No, Your Honor. |
| 09:12 | 3 | THE COURT:  Any issues for cause? |
| 09:12 | 4 | MS. HEINZ:  No, Your Honor. |
| 09:12 | 5 | THE COURT:  Ms. Corrigan, do you have any |
| | 6 | questions? |
| 09:12 | 7 | MS. CORRIGAN:  No, Your Honor. |
| 09:12 | 8 | THE COURT:  Any issues for cause? |
| 09:12 | 9 | MS. CORRIGAN:  None. |
| 09:12 | 10 | THE COURT:  Mr. Lengyel-Leahu, any questions? |
| 09:12 | 11 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:12 | 12 | THE COURT:  Any issues for cause? |
| 09:12 | 13 | MR. LENGYEL-LEAHU:  No. |
| 09:12 | 14 | THE COURT:  Mr. Kirby, please don't share that |
| | 15 | with the last two alternates.  We're going to talk to them |
| | 16 | and then we'll bring you back in. |
| 09:12 | 17 | *(Fourth alternate juror exits the courtroom.)* |
| 09:12 | 18 | THE COURT:  Mr. Stalling *(sic)*, please. |
| 09:12 | 19 | *(Fifth alternate juror called in and seated.)* |
| 09:12 | 20 | THE COURT:  Mr. Stalling, anyplace you'd like to |
| | 21 | be seated is acceptable. |
| 09:12 | 22 | Over the weekend, there was a shooting down in |
| | 23 | Orlando, Florida.  Are you aware of that? |
| 09:13 | 24 | ALTERNATE JUROR:  Yes. |
| 09:13 | 25 | THE COURT:  I think everybody in the country is, |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | from the television, newspapers.                             |
| 09:13 | 2  | And do you have any friends, relatives, loved                |
|       | 3  | ones, acquaintances who were the victims of that shooting?   |
| 09:13 | 4  | ALTERNATE JUROR:  No, I do not.                              |
| 09:13 | 5  | THE COURT:  Okay.  We want to make certain that             |
|       | 6  | there's no carryover to this matter because it could be     |
|       | 7  | inflammatory.  That shooting in Texas -- I'm -- strike      |
|       | 8  | that -- in Orlando has absolutely nothing to do with our    |
|       | 9  | matter.  But we wanna make certain if you'd be a fair and   |
|       | 10 | impartial juror and continue to be so going forward.        |
| 09:13 | 11 | ALTERNATE JUROR:  Yes, I believe I can still be             |
|       | 12 | fair.                                                        |
| 09:13 | 13 | THE COURT:  Are you absolutely certain?                     |
| 09:13 | 14 | ALTERNATE JUROR:  Yes.                                      |
| 09:13 | 15 | THE COURT:  Okay.  We just wanna be absolutely             |
|       | 16 | certain that that's the case with each individual juror    |
|       | 17 | before we reassemble the jury this morning.                |
| 09:13 | 18 | There's gonna be increased coverage, in my                 |
|       | 19 | opinion.  In other words, you're just seeing the coverage   |
|       | 20 | start.  I think each television hist- -- will get experts  |
|       | 21 | on, who give their opinion.  You'll see that in the        |
|       | 22 | newspapers.  And we wanna make certain that -- mentally we  |
|       | 23 | know we can't cut off that information -- but that that has |
|       | 24 | no carryover to our case and you'd continue to be fair and |
|       | 25 | impartial.  Once again, is that acceptable to you?          |

| | | |
|---|---|---|
| 09:14 | 1 | ALTERNATE JUROR:  Yes. |
| 09:14 | 2 | THE COURT:  Let me ask the government if there are |
| | 3 | any questions. |
| 09:14 | 4 | MS. HEINZ:  No, Your Honor. |
| 09:14 | 5 | THE COURT:  Any issues for cause? |
| 09:14 | 6 | MS. HEINZ:  No, Your Honor. |
| 09:14 | 7 | THE COURT:  To Ms. Corrigan, any questions? |
| 09:14 | 8 | MS. CORRIGAN:  No, Your Honor. |
| 09:14 | 9 | THE COURT:  Any issues for cause? |
| 09:14 | 10 | MS. CORRIGAN:  None. |
| 09:14 | 11 | THE COURT:  Mr. Lengyel-Leahu, any questions? |
| 09:14 | 12 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:14 | 13 | THE COURT:  Any issues for cause? |
| 09:14 | 14 | MR. LENGYEL-LEAHU:  No, sir. |
| 09:14 | 15 | THE COURT:  Then, sir, if you would go back to the |
| | 16 | jury room.  Please don't share our questions with Mr. Ortiz. |
| | 17 | He's our last alternate. |
| 09:14 | 18 | *(Fifth alternate juror exits the courtroom.)* |
| 09:14 | 19 | *(Sixth alternate juror called in and seated.)* |
| 09:14 | 20 | THE COURT:  Mr. Ortiz, if you'd have a seat.  Any |
| | 21 | seat's acceptable that you'd like to sit in. |
| 09:15 | 22 | Mr. Ortiz, over the weekend, there was a shooting |
| | 23 | down in Texas -- strike that.  I keep saying Texas.  I |
| | 24 | apologize.  There was a shooting down in Orlando, Florida. |
| | 25 | Do you recall -- or are you aware of that shooting? |

09:15   1            ALTERNATE JUROR:  Yes, sir.

09:15   2            THE COURT:  Okay.  Every newspaper has picked it

        3    up in the country.  Every television station has.  Is there

        4    any relative, friend, acquaintance, loved one that you know

        5    who was a victim of that shooting in Orlando, Florida?

09:15   6            ALTERNATE JUROR:  No, sir.

09:15   7            THE COURT:  We want to make certain that there's

        8    no carryover from that shooting in Orlando to the matter

        9    involving the two young men with these accusations in our

       10    trial; that that shooting has nothing to do with our case.

       11    But we wanna know from each individual juror, and we're

       12    asking you, would you be fair and impartial going forward in

       13    deciding this matter?

09:16  14            ALTERNATE JUROR:  Yes, sir.

09:16  15            THE COURT:  Are you absolutely certain?

09:16  16            ALTERNATE JUROR:  Yes, sir.

09:16  17            THE COURT:  Along the way, I think there's gonna

       18    be increased coverage.  In other words, everybody thinks

       19    that the coverage is out now.  I think every television

       20    station's going to get an expert on and it's going to

       21    continue on.  Even the presumptive nominees are now making

       22    statements about the Orlando, Florida, shooting.

09:16  23            And we're going to say to you that we want you to

       24    continue to put that matter out of your mind -- out of your

       25    mind's a bad word -- to separate that matter.  It has

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | nothing to do with our case and to continue to be fair and   |
|        | 2  | impartial.  Is that acceptable?                              |
| 09:16  | 3  | ALTERNATE JUROR:  Yes, sir.                                   |
| 09:16  | 4  | THE COURT:  Counsel, any questions on behalf of              |
|        | 5  | the government?                                              |
| 09:16  | 6  | MS. HEINZ:  No, Your Honor.                                   |
| 09:16  | 7  | THE COURT:  Any issues for cause?                            |
| 09:16  | 8  | MS. HEINZ:  No, Your Honor.                                   |
| 09:16  | 9  | THE COURT:  Ms. Corrigan, any questions on behalf           |
|        | 10 | of the defense?                                             |
| 09:16  | 11 | MS. CORRIGAN:  No, Your Honor.                                |
| 09:16  | 12 | THE COURT:  Any issues for cause?                            |
| 09:16  | 13 | MS. CORRIGAN:  None.                                          |
| 09:16  | 14 | THE COURT:  Mr. Lengyel-Leahu, any questions?               |
| 09:17  | 15 | MR. LENGYEL-LEAHU:  No.  Thank you, your Honor.             |
| 09:17  | 16 | THE COURT:  Any issues for cause?                            |
| 09:17  | 17 | MR. LENGYEL-LEAHU:  No, Your Honor.                          |
| 09:17  | 18 | THE COURT:  Sir, please go back with the jurors.            |
|        | 19 | Please don't tell any of them the questions we're asking     |
|        | 20 | you.  We'll be right back with you in a few moments.         |
| 09:17  | 21 | ALTERNATE JUROR:  Okay.                                       |
| 09:17  | 22 | *(Sixth alternate juror exits the courtroom.)*               |
| 09:17  | 23 | *(Outside the presence of the jury.)*                        |
| 09:17  | 24 | THE COURT:  Now, Counsel, let me say to you, as we          |
|        | 25 | got started, I didn't want a script.  I just wanted to talk  |

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
|       | 1  | with them, but some things I wish I would have asked.  For        |
|       | 2  | instance, towards the end of the questioning, I started           |
|       | 3  | asking about acquaintances.  When we started the                  |
|       | 4  | questioning, I asked about relatives, friends, you know,          |
|       | 5  | family members, sometimes family members and relatives.  I       |
|       | 6  | didn't use the word "acquaintances" until part way through.      |
| 09:17 | 7  | Do you want me to make any additional inquiry?                    |
|       | 8  | I'm happy to, individually.  If you have any additional           |
|       | 9  | questions that either side would like me to ask to make           |
|       | 10 | certain that you're comfortable for cause issues, I'd like        |
|       | 11 | to see that in writing.                                           |
| 09:17 | 12 | But your thoughts, Counsel.                                       |
| 09:17 | 13 | MS. HEINZ:  Your Honor, I think that the jurors                   |
|       | 14 | were very conscientious and understood that when you were        |
|       | 15 | asking about family, friends, that they should bring up          |
|       | 16 | anyone that they had a connection with.  And the sense I got     |
|       | 17 | was that the ones who said, no, I have no connection, do          |
|       | 18 | not.                                                              |
| 09:18 | 19 | THE COURT:  I just want to be certain.  Any                       |
|       | 20 | questions you'd like me to ask any individual juror or           |
|       | 21 | collectively?                                                     |
| 09:18 | 22 | MS. HEINZ:  No.                                                   |
| 09:18 | 23 | THE COURT:  Any issues for cause?                                |
| 09:18 | 24 | MS. HEINZ:  No, Your Honor.                                      |
| 09:18 | 25 | THE COURT:  Ms. Corrigan, any questions that you'd              |

|       |    |                                                                            |
|-------|----|----------------------------------------------------------------------------|
|       | 1  | like the court to ask individually of any of the jurors?  If               |
|       | 2  | so, I'm happy to do that.                                                   |
| 09:18 | 3  | MS. CORRIGAN:  No, Your Honor.  Thank you.                                  |
| 09:18 | 4  | THE COURT:  Any issues for cause?                                           |
| 09:18 | 5  | MS. CORRIGAN:  None.                                                        |
| 09:18 | 6  | THE COURT:  Mr. Lengyel-Leahu, the same offer.                             |
|       | 7  | Any questions the Court's forgotten to ask or inartfully                   |
|       | 8  | asked, I'm happy to reask again, or to ask for the first                   |
|       | 9  | time.                                                                       |
| 09:18 | 10 | MR. LENGYEL-LEAHU:  No, Your Honor.  We're                                 |
|       | 11 | satisfied with the voir dire the Court, uh, just performed.                |
| 09:18 | 12 | THE COURT:  Any issues for cause?                                          |
| 09:18 | 13 | MR. LENGYEL-LEAHU:  No, sir.                                                |
| 09:18 | 14 | THE COURT:  My suggestion is that we give both                            |
|       | 15 | gentlemen a restroom break right now.  That we not start in                |
|       | 16 | to session.  It's 9:15.  Take the gentlemen down, give them                |
|       | 17 | a restroom break.  Why don't you take a break for just a                   |
|       | 18 | moment; then we'll reassemble the jury.  But we'll actually                |
|       | 19 | draw the alternate at the time that the jury's in court.                   |
| 09:19 | 20 | So Debbie will place six names into some kind of                          |
|       | 21 | container.  And those will be Robert Roy, Frank Fraga,                      |
|       | 22 | Dillon Cassell, Scott Kirby, Nicholas Stalling, and Joe                    |
|       | 23 | Ortiz.  It will be done right in their presence, if that's                 |
|       | 24 | acceptable to the government.                                              |
| 09:19 | 25 | MS. HEINZ:  Yes, Your Honor.                                               |

| | | |
|---|---|---|
| 09:19 | 1 | THE COURT:  Ms. Corrigan? |
| 09:19 | 2 | MS. CORRIGAN:  Yes. |
| 09:19 | 3 | THE COURT:  Mr. Lengyel-Leahu? |
| 09:19 | 4 | MR. LENGYEL-LEAHU:  I like that, 'cause it lets |
| | 5 | the other jurors know how we do the process, and they'll see |
| | 6 | and pay attention. |
| 09:19 | 7 | THE COURT:  I've gotta funny story.  If you attend |
| | 8 | a church in Africa, and you give a donation, the people are |
| | 9 | so poor, and they worry about money, they actually take the |
| | 10 | collection from the community, and they count it in front of |
| | 11 | the community by different wards.  And that's the way that |
| | 12 | they check corruption.  So if you're giving a bag of feed or |
| | 13 | chicken, that gets counted, or small amounts of currency. |
| | 14 | And it's just a wonderful thing. |
| 09:20 | 15 | So I agree with you.  It's a very transparent way |
| | 16 | to do it, and it lets them see the process so they're not |
| | 17 | guessing if somebody was selected and for what reason.  So |
| | 18 | we'll do that in open court. |
| 09:20 | 19 | So about 15 minutes.  Is that acceptable? |
| 09:20 | 20 | Anything else on behalf of the government? |
| 09:20 | 21 | MS. HEINZ:  No, Your Honor. |
| 09:20 | 22 | MS. CORRIGAN:  No, Your Honor. |
| 09:20 | 23 | THE COURT:  Mr. Lengyel-Leahu? |
| 09:20 | 24 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:20 | 25 | THE COURT:  Thank you.  Why don't we take 15 |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | minutes.  We'll be back in session.                      |
| 09:20 | 2  | *(Recess held at 9:20 a.m.)*                             |
| 09:35 | 3  | THE COURT:  All right.  Then, Counsel, unless            |
|       | 4  | there's anything further, we're back on the record.  All |
|       | 5  | counsel, the parties are present.                        |
| 09:35 | 6  | Can we summon the jury, Counsel?                         |
| 09:35 | 7  | MS. HEINZ:  Just one very minor housekeeping.            |
|       | 8  | With respect to the witness that is currently on the stand, |
|       | 9  | two AUSAs are going to be questioning him, one after the  |
|       | 10 | other on two different matters.                           |
| 09:35 | 11 | THE COURT:  Okay.  Any objection, Counsel?               |
| 09:35 | 12 | MS. CORRIGAN:  No, Your Honor.                            |
| 09:35 | 13 | THE COURT:  Counsel?                                      |
| 09:35 | 14 | MR. LENGYEL-LEAHU:  No, Your Honor.                       |
| 09:35 | 15 | MS. HEINZ:  Thank you, Your Honor.                        |
| 09:35 | 16 | THE COURT:  Would that witness like to retake the        |
|       | 17 | stand.                                                    |
| 09:36 | 18 | And it's Agent Neil Shimke?                               |
| 09:36 | 19 | MR. NAM:  Your Honor, it's Nicholas Vicencia.            |
| 09:36 | 20 | THE COURT:  Vicencia, I'm sorry.  If you would           |
|       | 21 | retake the stand.  My apologies, of course.             |
| 12:09 | 22 | **NICHOLAS VICENCIA, CALLED BY THE GOVERNMENT**          |
|       | 23 | **PREVIOUSLY SWORN, RESUMED THE STAND**                  |
| 09:36 | 24 | THE COURT:  Nicholas Vicencia or Viconzia?              |
| 09:36 | 25 | THE WITNESS:  Vicencia.                                   |

09:36   1          THE COURT:  V-I-C-O-N-Z-I-A?

09:36   2          THE WITNESS:  V-I-C-E-N-C-I-A.

09:36   3          THE COURT:  E-N-C-I-A.  Thank you.  I'm sorry.

09:36   4          *(To the clerk:)*  Okay.  Deb, if you'd be kind

        5   enough to bring the jury in.

09:37   6          *(In the presence of the jury.)*

09:38   7          THE COURT:  We're back in session.  The jury's

        8   present.  The alternates are present.  All counsel are

        9   present.  The parties are present.  The witness is on the

       10   witness stand, Agent Nicholas Vicencia.

09:38  11          One of the jurors has been excused, Juror No. 12,

       12   outside your presence.  So one of the six alternates will

       13   now be chosen to take that juror's place and become a member

       14   of the sitting jury.

09:38  15          **SELECTION OF ALTERNATE TO BECOME JUROR NO. 12**

09:38  16          THE COURT:  So Debbie has put each of your

       17   names -- there's six names inside a bowl.

09:38  18          *(To the clerk:)* And, Debbie, if you would be kind

       19   enough to reach in -- they're folded up -- take out a name.

09:38  20          THE CLERK:  Joe Ortiz.

09:38  21          THE COURT:  Mr. Ortiz, if you'd be kind enough, if

       22   you'd now be seated in Seat No. 12.

09:38  23          *(Juror No. 12 is seated.)*

09:38  24          THE COURT:  Then, Counsel, is there anything

       25   further concerning that process or procedure on behalf of

|       |    | the government? |
|-------|----|-----------------|
| 09:38 | 2  | MS. HEINZ:  No, Your Honor.  Thank you. |
| 09:38 | 3  | THE COURT:  Mr. Lengyel-Leahu? |
| 09:38 | 4  | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 09:39 | 5  | THE COURT:  Ms. Corrigan? |
| 09:39 | 6  | MS. CORRIGAN:  No, Your Honor. |
| 09:39 | 7  | THE COURT:  Then if you would like to continue |
|       | 8  | your direct examination of Agent Vicencia. |
| 09:39 | 9  | MR. NAM:  Thank you, Your Honor. |
| 09:39 | 10 | **WITNESS TESTIMONY RESUMED** |
| 09:39 | 11 | **DIRECT EXAMINATION (Resumed)** |
| 09:39 | 12 | BY MR. NAM: |
| 09:39 | 13 | Q.   Special Agent Vicencia, before returning to the |
|       | 14 | Wells Fargo Bank documents that we were looking at on Friday |
|       | 15 | when we broke, I'd like to return to the disc placed at |
|       | 16 | Government's Exhibit Folder 703. |
| 09:39 | 17 | MR. NAM:  Would 703 and exhibit also 760 be placed |
|       | 18 | before Special Agent Vicencia? |
| 09:39 | 19 | THE COURT:  703 and 760? |
| 09:39 | 20 | MR. NAM:  Yes, Your Honor. |
| 09:39 | 21 | THE COURT:  Thank you. |
| 09:39 | 22 | BY MR. NAM: |
| 09:39 | 23 | Q.   Do you recall testifying that you listened to all the |
|       | 24 | recordings that are part of this disc in exhibit folder 703? |
| 09:40 | 25 | A.   Yes. |

09:40  1   Q.   And how do you know that you listened to all the

2   recordings therein?

09:40  3   A.   I reviewed the recordings one by one and to ensure that

4   the proper exhibit number was marked on the disc; and after

5   I listened to the complete disc, I initialed and dated it

6   when I completed listening to all the telephone calls.

09:40  7   Q.   In addition to what has already been received into

8   evidence on Friday, does the disc contain audio recordings

9   that have been marked as Government Exhibits 707, 728, and

10   729?

09:40  11   A.   Yes.

09:40  12   Q.   Have you compared these audio recordings on, uh, this

13   disc to audio recordings stored in an FBI data base?

09:40  14   A.   Yes.

09:40  15   Q.   Are the recordings the same?

09:40  16   A.   Yes, they are.

09:40  17   Q.   Did you initial the disc after comparing those three

18   audios as well on this disc with, uh -- with other

19   recordings stored in an FBI database?

09:41  20   A.   Yes, I have.

09:41  21   Q.   The recordings that we've been talking about, are they

22   all conversations that were recorded from calls made from a

23   cellphone associated with Defendant Elhuzayel?

09:41  24   A.   Yes.

09:41  25   Q.   Do you recall the number of that cellphone?

| | | |
|---|---|---|
| 09:41 | 1 | A.   (714) 270-3532. |
| 09:41 | 2 | Q.   How do you know that this number, (714) 270-3532, is |
| | 3 | associated with Defendant Elhuzayel? |
| 09:41 | 4 | A.   I reviewed several different records that were |
| | 5 | associated with the telephone to include a gmail account -- |
| | 6 | I'm sorry, excuse me -- an iCloud account, Nader828@iCloud, |
| | 7 | subscriber records. |
| 09:41 | 8 | Q.   I'd like to show you right now what has been admitted |
| | 9 | as Government Exhibit 502. |
| 09:42 | 10 | THE COURT:  502? |
| 09:42 | 11 | MR. NAM:  *(No response.)* |
| 09:42 | 12 | *(Exhibit displayed.)* |
| 09:42 | 13 | MR. NAM:  If you could zoom into the area where |
| | 14 | the contact information, the SMS information can be seen. |
| 09:42 | 15 | *(Exhibit displayed.)* |
| 09:42 | 16 | BY MR. NAM: |
| 09:42 | 17 | Q.   Is this a subscriber record to the iCloud account that |
| | 18 | you've just talked about? |
| 09:42 | 19 | A.   Yes, it is. |
| 09:42 | 20 | Q.   And what is the phone number that is associated with |
| | 21 | this iCloud account? |
| 09:42 | 22 | MR. LENGYEL-LEAHU:  Objection.  Your Honor, the |
| | 23 | document speaks for itself. |
| 09:42 | 24 | THE COURT:  Overruled. |
| 09:42 | 25 | THE WITNESS:  (714) 270-3532. |

| | | |
|---|---|---|
| 09:42 | 1 | BY MR. NAM: |
| 09:42 | 2 | Q.   And are you aware of any admission provided by |
| | 3 | Defendant Elhuzayel as to his connection with this account? |
| 09:42 | 4 | A.   Yes.  I reviewed an audio-video recording of his |
| | 5 | post-arrest statement where he told the agents that it was |
| | 6 | his e-mail account. |
| 09:43 | 7 | Q.   Are there any other -- is there any -- are there any |
| | 8 | other records that you're aware of that further connect this |
| | 9 | number, (714) 270-3532, with Defendant Elhuzayel? |
| 09:43 | 10 | A.   Yes.  There was also two gmail accounts that were |
| | 11 | associated with 'em that the subscriber records also had |
| | 12 | that phone number. |
| 09:43 | 13 | Q.   Are you also aware of any Facebook account profile that |
| | 14 | connects this number with the defendant? |
| 09:43 | 15 | A.   Yes.  There was also a Facebook page associated with |
| | 16 | the defendant that the subscriber page had that phone number |
| | 17 | as well. |
| 09:43 | 18 | Q.   Like to show you Exhibit 401, which has been admitted |
| | 19 | into evidence already. |
| 09:43 | 20 | *(Exhibit displayed.)* |
| 09:43 | 21 | BY MR. NAM: |
| 09:43 | 22 | Q.   Does Exhibit 401 show a connection between the phone |
| | 23 | number that we've been talking about and the defendant? |
| 09:44 | 24 | A.   Yes.  This is subscriber information from -- provided |
| | 25 | by Facebook that has the defendant's name, Nader Elhuzayel, |

|          |    |                                                                     |
|----------|----|---------------------------------------------------------------------|
|          | 1  | the iCloud account that I just mentioned, and also his              |
|          | 2  | cellular telephone (714) 270-3532.                                  |
| 09:44    | 3  | Q.   I'd like to now turn toward how you were able to make          |
|          | 4  | identifications of voices.                                          |
| 09:44    | 5  |      When you listened to the audio recordings on the disc          |
|          | 6  | in Government Exhibit -- the 703 folder -- did you recognize        |
|          | 7  | some of the voices on these recordings?                             |
| 09:44    | 8  | A.   Yes.                                                           |
| 09:44    | 9  | Q.   Whose voices did you recognize?                               |
| 09:44    | 10 |      MR. LENGYEL-LEAHU:  Objection, Your Honor.  Lack              |
|          | 11 | of foundation.                                                      |
| 09:44    | 12 |      THE COURT:  Well, the issue is to some -- when you            |
|          | 13 | listen to the audio recordings on the disc in                       |
|          | 14 | Government 703, the question and lack of foundation is as to        |
|          | 15 | which recordings within 703 he listened to.  I thought there        |
|          | 16 | were numerous recordings in 703.                                    |
| 09:45    | 17 |      MR. NAM:  That's correct, Your Honor.                         |
| 09:45    | 18 |      THE COURT:  Which ones?                                       |
| 09:45    | 19 |      MR. NAM:  All of the recordings therein,                      |
|          | 20 | Your Honor.  I'm seeking to lay the foundation as to how the        |
|          | 21 | witness was able to make voice identifications.                     |
| 09:45    | 22 |      THE COURT:  But in the first recording, we just              |
|          | 23 | hear -- that we played Friday, just a "yeah," or one word.          |
|          | 24 | Later on, there may be voluminous conversations where the           |
|          | 25 | agent can form the opinion that that's the same voice.              |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | There may be other conversations where we hear very little.  |
| 09:45 | 2  | So I'm gonna sustain the objection.                          |
| 09:45 | 3  | What recordings are -- is he relying on?  It                 |
|       | 4  | certainly can't be 705.                                      |
| 09:46 | 5  | MR. NAM:  Uh, no, Your Honor.                                 |
| 09:46 | 6  | THE COURT:  So which ones?                                    |
| 09:46 | 7  | MR. NAM:  If I may -- if I may make a very brief              |
|       | 8  | proffer?                                                      |
| 09:46 | 9  | THE COURT:  Sure.                                             |
| 09:46 | 10 | MR. NAM:  The witness would be able to testify as            |
|       | 11 | to prior recordings of Defendant Elhuzayel's voice, that he  |
|       | 12 | heard both and reviewed several times, as well as            |
|       | 13 | contemporaneous in person.                                   |
| 09:46 | 14 | THE COURT:  Are these in 703?                                 |
| 09:46 | 15 | MR. NAM:  No, Your Honor.                                     |
| 09:46 | 16 | THE COURT:  'Cause this question's directed                  |
|       | 17 | towards 703.                                                 |
| 09:46 | 18 | MR. NAM:  The question was if whether he was --              |
| 09:46 | 19 | THE COURT:  But why don't you just reask the                 |
|       | 20 | question.  I may be confused, so, please.                    |
| 09:46 | 21 | MR. NAM:  Yes, Your Honor.  Thank you.                        |
| 09:46 | 22 | BY MR. NAM:                                                   |
| 09:46 | 23 | Q.   Special Agent Vicencia, did you recognize some of the   |
|       | 24 | voices on these recordings contained in the disc 703?        |
| 09:46 | 25 | MR. LENGYEL-LEAHU:  Objection, Your Honor.                   |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | Foundation.                                                  |
| 09:46 | 2  | THE COURT:  Yeah, I thought that was the same               |
|       | 3  | question.                                                    |
| 09:47 | 4  | I thought you were comparing 703.                           |
| 09:47 | 5  | I'm going to sustain the objection.                         |
| 09:47 | 6  | In other words, which discs is he relying on?              |
|       | 7  | That's all I want to know.                                  |
| 09:47 | 8  | MR. NAM:  Your Honor, I will make a specific,              |
|       | 9  | uh --                                                        |
| 09:47 | 10 | THE COURT:  All I'm asking -- it's very simple.            |
|       | 11 | Did he rely -- is there enough conversation on 710, for    |
|       | 12 | instance?  Is there enough conversation on 723?  Just a    |
|       | 13 | sweeping question, did he listen to 703 and, therefore, he |
|       | 14 | can make an evaluation.  I think the defense is entitled to|
|       | 15 | know what discs had a sufficient conversation so he could  |
|       | 16 | listen to that and say with clarity, you know, I listened to|
|       | 17 | 706, 717, 723, 725, and those had sufficient conversation. |
|       | 18 | Because 705 does not.                                       |
| 09:47 | 19 | MR. NAM:  Very well, Your Honor.                           |
| 09:47 | 20 | THE COURT:  Okay.                                          |
| 09:47 | 21 | BY MR. NAM:                                                 |
| 09:47 | 22 | Q.   Special Agent --                                       |
| 09:47 | 23 | MR. NAM:  Thank you, Your Honor.                          |
| 09:47 | 24 | BY MR. NAM:                                                 |
| 09:47 | 25 | Q.   Special Agent Vicencia, have you spoken directly with |

|  |  |  |
|---|---|---|
|  | 1 | Defendant Elhuzayel? |
| 09:47 | 2 | A.    No, not directly. |
| 09:47 | 3 | Q.    Have you heard him speak in your presence? |
| 09:48 | 4 | A.    Yes. |
| 09:48 | 5 | Q.    When did you first hear Defendant Elhuzayel speak? |
| 09:48 | 6 | A.    On May 21st, 2015. |
| 09:48 | 7 | Q.    Where was he? |
| 09:48 | 8 | A.    At the Los Angeles International Airport. |
| 09:48 | 9 | Q.    And how close were you to Defendant Elhuzayel when he |
|  | 10 | was speaking? |
| 09:48 | 11 | A.    At times, I was 10 to 15 feet, and at other times, I |
|  | 12 | was approximately 1 to 2 feet away from him. |
| 09:48 | 13 | Q.    What was Defendant Elhuzayel doing when, uh, he was |
|  | 14 | speaking? |
| 09:48 | 15 | A.    When I first heard him speak was with Turkish Airline |
|  | 16 | employees, and then I also heard him speak to another |
|  | 17 | passenger in line. |
| 09:48 | 18 | Q.    Were you able to see his face when he was speaking? |
| 09:48 | 19 | A.    Yes. |
| 09:48 | 20 | Q.    Were you able to understand him clearly when he was |
|  | 21 | speaking? |
| 09:48 | 22 | A.    Yes. |
| 09:48 | 23 | Q.    What other -- what other times did you hear him speak |
|  | 24 | directly? |
| 09:48 | 25 | A.    I heard him speak with TSA agents and also FBI agents |

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | at LAX.                                                |
| 09:48 | 2  | Q.   How close were you when he was speaking?          |
| 09:49 | 3  | A.   At times, I was 10 to 15 feet away, and at other times, |
|       | 4  | I was approximately a foot away from him.              |
| 09:49 | 5  | Q.   Were you able to see his face clearly?            |
| 09:49 | 6  | A.   Yes.                                              |
| 09:49 | 7  | Q.   Were you able to hear his voice clearly?          |
| 09:49 | 8  | A.   Yes.                                              |
| 09:49 | 9  | Q.   And what other times did you hear him speak?      |
| 09:49 | 10 | A.   I've heard him speak on the telephone during      |
|       | 11 | post-arrest telephone calls he made.                  |
| 09:49 | 12 | Q.   Who was he speaking with?                         |
| 09:49 | 13 | A.   He was speaking with members of his family.       |
| 09:49 | 14 | Q.   Did you review the recording that he just spoke of? |
| 09:49 | 15 |           THE COURT:  703?                             |
| 09:49 | 16 |           MR. NAM:  No, Your Honor.  A different -- a   |
|       | 17 | different recording, Your Honor.                       |
| 09:49 | 18 |           THE COURT:  The recording just spoke of.  Okay. |
| 09:49 | 19 |           MR. LENGYEL-LEAHU:  Objection.  Vague as to which |
|       | 20 | recording.                                            |
| 09:49 | 21 |           THE COURT:  Sustained.                       |
| 09:49 | 22 | BY MR. NAM:                                            |
| 09:49 | 23 | Q.   The recording -- the recording that he just spoke of |
|       | 24 | with -- that recorded the conversation between the defendant |
|       | 25 | and his family members, did you, uh -- did you review such a |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | recording?                                                           |
| 09:50 | 2  | A.   Yes.                                                            |
| 09:50 | 3  | MR. LENGYEL-LEAHU:  Asked and answered.                             |
| 09:50 | 4  | THE COURT:  Overruled.                                               |
| 09:50 | 5  | THE WITNESS:  I reviewed three separate telephone                   |
|       | 6  | calls.  One was on May 25th, 2015, uh, and I believe the            |
|       | 7  | other two was on June 2nd, and June 4, 2015.  Three separate        |
|       | 8  | telephone calls.                                                     |
| 09:50 | 9  | BY MR. NAM:                                                          |
| 09:50 | 10 | Q.   Did you also review the defendant's post-arrest                |
|       | 11 | interview recording, the interview that occurred at LAX --          |
| 09:50 | 12 | MR. LENGYEL-LEAHU:  Leading.                                        |
| 09:50 | 13 | BY MR. NAM:                                                          |
| 09:50 | 14 | Q.   -- May 22nd, 2015?                                             |
| 09:50 | 15 | THE COURT:  Overruled.  You can answer that                        |
|       | 16 | question.                                                            |
| 09:50 | 17 | THE WITNESS:  Yes, I have.                                          |
| 09:50 | 18 | BY MR. NAM:                                                          |
| 09:50 | 19 | Q.   How many times have you reviewed that recording?              |
| 09:50 | 20 | A.   I reviewed the entire recording three times.  And I've        |
|       | 21 | reviewed portions of it three to five times.                       |
| 09:50 | 22 | Q.   Did you also hear portions of that interview live?            |
| 09:51 | 23 | A.   Yes, I did.                                                    |
| 09:51 | 24 | Q.   Where were you when that interview was taking place?          |
| 09:51 | 25 | A.   Initially, before the defendant walked into the room,         |

1    the interview room, with two other FBI agents, I was at the

2    threshold of the doorway, um, when they greeted each other.

3    And the door was eventually closed.  I was listening on the

4    other side of the door for about 15 to 20 minutes.

09:51   5    Q.   Were you are able to hear the defendant clearly?

09:51   6    A.   Yes, I was.

09:51   7    Q.   And were you able to distinguish his voice with the

8    voices of others in the room with the defendant?

09:51   9    A.   Yes.

09:51   10   Q.   How were you able to make that distinction?

09:51   11   A.   'Cause I heard all three people speak before.

09:51   12           THE COURT:  All right.  Then, counsel, I believe

13   I'm satisfied, but in an abundance of caution, if you would

14   like to take the witness on voir dire, either counsel are

15   welcome to.

09:51   16           MS. CORRIGAN:  Not from me, Your Honor.

09:52   17           THE COURT:  All right.  Counsel, if you would have

18   a seat for just a moment before we proceed with the

19   recordings.

09:52   20           MR. NAM:  Your Honor --

09:52   21           THE COURT:  Let's make sure there's an adequate

22   foundation.  If Counsel has a concern, I'd like him to ask

23   questions.

09:52   24           **VOIR DIRE BY MR. LENGYEL-LEAHU**

09:52   25           MR. LENGYEL-LEAHU:  Thank you, Your Honor.

| | | |
|---|---|---|
| 09:52 | 1 | BY MR. LENGYEL-LEAHU: |
| 09:52 | 2 | Q.   You were not involved in the wire taps in this case; is |
| | 3 | that right? |
| 09:52 | 4 | A.   I don't understand. |
| 09:52 | 5 | MR. NAM:  Objection, Your Honor.  Vague and |
| | 6 | ambiguous. |
| 09:52 | 7 | THE COURT:  Do you understand the question? |
| 09:52 | 8 | THE WITNESS:  I don't understand what he means by |
| | 9 | "involved." |
| 09:52 | 10 | THE COURT:  Sustained. |
| 09:52 | 11 | BY MR. LENGYEL-LEAHU: |
| 09:52 | 12 | Q.   You were part of the team that was listening in the |
| | 13 | conversations that were recorded either by phone or in the |
| | 14 | car or any other means; is that right? |
| 09:52 | 15 | A.   I did listen to 'em. |
| 09:52 | 16 | Q.   At the time that they were captured? |
| 09:52 | 17 | A.   Live?  No. |
| 09:52 | 18 | Q.   Okay.  That's what I was referring to. |
| 09:52 | 19 | A.   Okay. |
| 09:52 | 20 | Q.   You weren't part of the team that was involved in |
| | 21 | the -- or the listening in on the conversations; right? |
| 09:53 | 22 | A.   Not live, no. |
| 09:53 | 23 | Q.   Not live.  Okay.  So somebody told you that those |
| | 24 | conversations were the ones that they said were captured of |
| | 25 | Nader; right? |

| | | |
|---|---|---|
| 09:53 | 1 | A.   No.  I independently listened to 'em at a later date. |
| 09:53 | 2 | Q.   Okay.  But someone gave them to you and said they were |
| | 3 | conversations involving Nader? |
| 09:53 | 4 | A.   No.  I went into the system myself and listened to 'em. |
| 09:53 | 5 | Q.   Okay.  And they were labeled as conversations of Nader? |
| 09:53 | 6 | A.   No, they were not.  They were a session number or a -- |
| | 7 | they didn't have summaries at the time when I first reviewed |
| | 8 | them. |
| 09:53 | 9 | Q.   And so you were not involved in the interview of my |
| | 10 | client at LAX; is that right? |
| 09:53 | 11 | A.   That's correct. |
| 09:53 | 12 | Q.   And since LAX, you've never had a personal one-on-one |
| | 13 | interview with my client; is that correct? |
| 09:54 | 14 | A.   That is correct. |
| 09:54 | 15 | Q.   Prior to LAX, you never had a conversation directly |
| | 16 | with my client other than overhearing him in the line; is |
| | 17 | that right? |
| 09:54 | 18 | A.   Overhearing him in the line and also when he was |
| | 19 | speaking with an FBI agent prior to going into the interview |
| | 20 | room. |
| 09:54 | 21 | Q.   Okay.  So you were eavesdropping on these |
| | 22 | conversations; you weren't having the conversations with my |
| | 23 | client; is that correct? |
| 09:54 | 24 | A.   Correct.  I wouldn't use the word "eavesdrop" but... |
| 09:54 | 25 | Q.   Overhearing someone else's conversation, how else do we |

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | define it?                                                 |
| 09:54 | 2  | MR. NAM:  Objection.  Argumentative.                       |
| 09:54 | 3  | THE COURT:  Sustained.                                     |
| 09:54 | 4  | BY MR. LENGYEL-LEAHU:                                      |
| 09:54 | 5  | Q.   Okay.  I withdraw the word "eavesdropping."           |
| 09:54 | 6  | You were standing in the vicinity of two other people      |
|       | 7  | having a conversation; is that fair?                       |
| 09:54 | 8  | A.   Three people, yes.                                    |
| 09:54 | 9  | Q.   Okay.  For instance, at the ticket agency, they were  |
|       | 10 | checking him into his flight, correct?                     |
| 09:54 | 11 | A.   Correct.                                              |
| 09:54 | 12 | Q.   And he was checking his bags into the flight, correct? |
| 09:55 | 13 | A.   Initially, he checked two of his bags in.             |
| 09:55 | 14 | Q.   So that's a yes?                                      |
| 09:55 | 15 | A.   Yes.                                                  |
| 09:55 | 16 | Q.   Okay.  And he checked the bags through to Tel Aviv.   |
|       | 17 | You heard that, correct?                                   |
| 09:55 | 18 | MR. NAM:  Objection.  Beyond the scope.  This is           |
|       | 19 | not regarding voice identification, Your Honor.            |
| 09:55 | 20 | MR. LENGYEL-LEAHU:  Trying to get a background of          |
|       | 21 | what he actually heard, Your Honor, that's all.           |
| 09:55 | 22 | THE COURT:  Overruled.  You can answer the                |
|       | 23 | question.                                                  |
| 09:55 | 24 | THE WITNESS:  He initially -- I'm sorry.  Can you          |
|       | 25 | repeat the question?                                       |

**DEBBIE GALE, U.S. COURT REPORTER**

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
| 09:55  | 1  | BY MR. LENGYEL-LEAHU:                                         |
| 09:55  | 2  | Q.   At the ticket counter, when he was checking his bags    |
|        | 3  | in, you heard him say, "*I'm checking the bags through to*   |
|        | 4  | *Tel Aviv*"; correct?                                         |
| 09:55  | 5  | A.   I didn't hear him specifically say that.                 |
| 09:55  | 6  | Q.   So you didn't hear what they said?                       |
| 09:55  | 7  | A.   I heard portions of what he said.                        |
| 09:55  | 8  | Q.   Okay.  But when you -- when the prosecution asked you,   |
|        | 9  | they said, "*you clearly heard him*."  So that's not true, is |
|        | 10 | it?  You didn't clearly hear him.  You didn't hear what he    |
|        | 11 | said.                                                         |
| 09:55  | 12 | MR. NAM:  Objection.  Argumentative.                          |
| 09:55  | 13 | THE COURT:  Well, it depends on the point in time.           |
|        | 14 | His initial testimony was that he heard a conversation with   |
|        | 15 | Turkish Airline employees, TSA, FBI agents at LAX.  So are    |
|        | 16 | you referring to the portion with the baggage claim people    |
|        | 17 | at Turkish Airlines?                                           |
| 09:56  | 18 | MR. LENGYEL-LEAHU:  At the ticket -- when he was             |
|        | 19 | checking in, Your Honor.                                       |
| 09:56  | 20 | THE COURT:  Let's be clear about the time, because           |
|        | 21 | that's an extended conversation, apparently, and it involves  |
|        | 22 | two different incidences.  One was his testimony that he      |
|        | 23 | talked to the agent; another one was the baggage being        |
|        | 24 | passed through, apparently.  So which one?                     |
| 09:56  | 25 | MR. LENGYEL-LEAHU:  Okay.                                     |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:56 | 1 | BY MR. LENGYEL-LEAHU: |
| 09:56 | 2 | Q.   At the point where he was checking in -- |
| 09:56 | 3 | A.   Yes. |
| 09:56 | 4 | Q.   -- that's at the ticket agency -- well, they call it |
| | 5 | the ticket agent counter; correct? |
| 09:56 | 6 | A.   Correct. |
| 09:56 | 7 | Q.   Where you give them your information about your ticket; |
| | 8 | right? |
| 09:56 | 9 | A.   Correct. |
| 09:56 | 10 | Q.   So you say you heard that conversation clearly? |
| 09:56 | 11 | A.   I heard portions of that conversation. |
| 09:56 | 12 | Q.   Okay.  So that conversation you didn't hear clearly; |
| | 13 | you didn't hear all of it; correct? |
| 09:56 | 14 | A.   Correct.  When I saw him speaking and what draw -- drew |
| | 15 | me to get closer was, when he was waiting, I saw him speak |
| | 16 | with another person in line, so I got closer to him to hear |
| | 17 | it clearly. |
| 09:57 | 18 | Q.   Let's talk about the person in line.  That was a |
| | 19 | female, wasn't it? |
| 09:57 | 20 | A.   No, it was a male. |
| 09:57 | 21 | Q.   It was a male? |
| 09:57 | 22 | A.   Yes. |
| 09:57 | 23 | Q.   You're certain about that? |
| 09:57 | 24 | A.   Yes.  I spoke to that person later. |
| 09:57 | 25 | Q.   Okay.  And that -- and what part of the conversation |

|  |  |  |
|---|---|---|
|  | 1 | did you hear?  Not what he told you the conversation was. |
|  | 2 | What part of the conversation did you hear with that |
|  | 3 | individual? |
| 09:57 | 4 | MR. NAM:  Objection.  Irrelevant, Your Honor. |
| 09:57 | 5 | THE COURT:  Overruled. |
| 09:57 | 6 | THE WITNESS:  The defendant was, uh, waiting for |
|  | 7 | some -- |
| 09:57 | 8 | MR. LENGYEL-LEAHU:  Objection, Your Honor. |
|  | 9 | Nonresponsive. |
| 09:57 | 10 | BY MR. LENGYEL-LEAHU: |
| 09:57 | 11 | Q.   What part of the conversation -- |
| 09:57 | 12 | THE COURT:  No, no.  Just a moment.  That's |
|  | 13 | confusing.  Counsel initially objected because he thought |
|  | 14 | you were getting into content.  You apparently are not. |
| 09:57 | 15 | MR. LENGYEL-LEAHU:  I'm sorry, Your Honor. |
| 09:57 | 16 | THE COURT:  But "*what part of the conversation*," I |
|  | 17 | don't know how that's answerable. |
| 09:57 | 18 | MR. LENGYEL-LEAHU:  The government has |
|  | 19 | represented -- |
| 09:57 | 20 | THE COURT:  Thank you, Counsel.  Your question, |
|  | 21 | please. |
| 09:57 | 22 | BY MR. LENGYEL-LEAHU: |
| 09:57 | 23 | Q.   What did my client say to the passenger in line? |
| 09:57 | 24 | MR. NAM:  Objection.  Hearsay. |
| 09:57 | 25 | THE COURT:  Overruled. |

09:57   1              THE WITNESS:  I don't remember the specific words.

        2    I remember hearing him clearly.  It was -- to paraphrase, he

        3    was --

09:58   4    BY MR. LENGYEL-LEAHU:

09:58   5    Q.   No, no.  I didn't ask you to paraphrase.  Excuse me for

        6    interrupting.

09:58   7    A.   Okay.

09:58   8    Q.   You either remember or you don't, and you either heard

        9    it clearly or you didn't?

09:58   10   A.   I heard it clearly, but I don't remember specifically

        11   what he said.  I did not record it.

09:58   12   Q.   It was about getting married, wasn't it?  Does that

        13   refresh your recollection?

09:58   14              MR. NAM:  Objection.  Counsel's testifying.

09:58   15              THE COURT:  Overruled.

09:58   16              THE WITNESS:  The portion I heard, he was

        17   complaining how long it was taking to get his ticket.

09:58   18   BY MR. LENGYEL-LEAHU:

09:58   19   Q.   He also mentioned that he was going there to get

        20   married; correct?  Or do you not remember that?

09:58   21              MR. NAM:  Objection.  Asked and answered.

09:58   22              THE COURT:  Overruled.  It's argumentative, so

        23   rephrase the question.

09:58   24   BY MR. LENGYEL-LEAHU:

09:58   25   Q.   Did you or did you not hear him tell the passenger in

| | | |
|---|---|---|
| | 1 | line that he was going there to get married? |
| 09:58 | 2 | A.   I did not hear that part of the conversation, no. |
| 09:58 | 3 | Q.   When you interviewed the passenger later, did he not |
| | 4 | say that that's what he said? |
| 09:58 | 5 | MR. NAM:  Objection.  Hearsay. |
| 09:58 | 6 | THE COURT:  Sustained. |
| 09:58 | 7 | BY MR. LENGYEL-LEAHU: |
| 09:58 | 8 | Q.   Did you read your report regarding your interview with |
| | 9 | the individual? |
| 09:59 | 10 | A.   I didn't conduct the interview.  I was present for |
| | 11 | portions of that interview with another agent from LAX. |
| 09:59 | 12 | Q.   I'm sorry.  Then I misunderstood your prior testimony. |
| | 13 | You said you interviewed the passenger in line that he spoke |
| | 14 | with.  Did you or did you not interview him? |
| 09:59 | 15 | A.   Yes, I participated in the interview. |
| 09:59 | 16 | Q.   Meaning you stand there and listen -- |
| 09:59 | 17 | *(Court reporter requests clarification for the* |
| | 18 | *record.)* |
| 09:59 | 19 | BY MR. LENGYEL-LEAHU: |
| 09:59 | 20 | Q.   I'm sorry.  You're telling us now that you stood there |
| | 21 | and you listened to somebody else interview him? |
| 09:59 | 22 | A.   Correct.  I asked one or two questions, I think. |
| 09:59 | 23 | Q.   Okay.  And you reviewed the report? |
| 09:59 | 24 | A.   No, I have not. |
| 09:59 | 25 | Q.   Wait a minute.  There was a report written of an |

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | interview in which you participated at least partly --                |
|       | 2  | partially, and you didn't bother to review that report for            |
|       | 3  | accuracy?                                                             |
| 09:59 | 4  | MR. NAM:  Objection.  Relevance.                                       |
| 09:59 | 5  | THE COURT:  Overruled.                                                 |
| 09:59 | 6  | THE WITNESS:  I did not review that report, no.                       |
| 09:59 | 7  | BY MR. LENGYEL-LEAHU:                                                  |
| 09:59 | 8  | Q.   Okay.  Other than these conversations that you've now            |
|       | 9  | testified, the only other time that you actually heard my            |
|       | 10 | client speak was in conversations with his family on the             |
|       | 11 | phone and the conversation with the FBI in the backroom at           |
|       | 12 | LAX; is that right?                                                   |
| 10:00 | 13 | A.   No.                                                              |
| 10:00 | 14 | Q.   You've heard him speak other times?                             |
| 10:00 | 15 | A.   Yes.                                                             |
| 10:00 | 16 | Q.   Other than what you've testified here today?                    |
| 10:00 | 17 | A.   Yes.                                                             |
| 10:00 | 18 | Q.   Okay.  Based on all of that information, that's the             |
|       | 19 | foundation for why you believe that the statements that the          |
|       | 20 | people -- or the government wants to play in this court, you          |
|       | 21 | believe that that's my client; is that right?                        |
| 10:00 | 22 | A.   There's other facts that lead me to believe that it's           |
|       | 23 | also him.                                                             |
| 10:00 | 24 | Q.   Okay.  How many brothers does he have?                          |
| 10:00 | 25 | A.   Three.                                                           |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:00 | 1 | Q.   How many cousins? |
| 10:00 | 2 | A.   I don't know. |
| 10:00 | 3 | Q.   How many other family members? |
| 10:00 | 4 | A.   I believe -- |
| 10:00 | 5 | Q.   Well, let's say three levels of sanguinity. |
| 10:00 | 6 | A.   I'm only aware of his immediate family.  I don't know |
| | 7 | any other family members. |
| 10:01 | 8 | Q.   So you've never compared any of these recording to |
| | 9 | their voices; is that correct? |
| 10:01 | 10 | A.   Some of 'em I have. |
| 10:01 | 11 | Q.   How many times have you spoken to the other members of |
| | 12 | his family? |
| 10:01 | 13 | A.   I've spoken to his mother on one occasion, and I've |
| | 14 | spoken to one of his other brothers on three separate |
| | 15 | occasions. |
| 10:01 | 16 | Q.   Okay.  Are you an expert in voice recognition? |
| 10:01 | 17 | A.   No, I am not. |
| 10:01 | 18 | Q.   Are you aware of any voice recognition software or any |
| | 19 | analysis that's been done with any of these recordings to |
| | 20 | make a determination that they are, in fact, Nader and have |
| | 21 | excluded out any other possible member of his family who |
| | 22 | mighta been using his phone? |
| 10:01 | 23 | A.   No, I'm not aware of that. |
| 10:01 | 24 | MR. LENGYEL-LEAHU:  No further questions. |
| 10:01 | 25 | THE COURT:  All right.  Counsel, I'm satisfied |

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | with the foundation.  In an abundance of caution, you may    |
|         | 2  | proceed.  In an abundance of caution, though, I'll take it   |
|         | 3  | subject to a motion to strike.  Some of these phone calls    |
|         | 4  | may be helpful to both sides, but it's certainly helpful to  |
|         | 5  | the jury in determining if this is the speaker, as you go    |
|         | 6  | through those phone calls.                                   |
| 10:02   | 7  |         So, Counsel.                                          |
| 10:02   | 8  | BY MR. NAM:                                                   |
| 10:02   | 9  | Q.   Special Agent Vicencia --                               |
| 10:02   | 10 |         MR. NAM:  Your Honor, am I understanding the         |
|         | 11 | Court's ruling correctly that I may proceed?                 |
| 10:02   | 12 |         THE COURT:  You may.                                 |
| 10:02   | 13 |         MR. NAM:  Thank you, Your Honor.                     |
| 10:02   | 14 | BY MR. NAM:                                                  |
| 10:02   | 15 | Q.   Special Agent Vicencia, based on your experience of     |
|         | 16 | hearing the defendant, Defendant Elhuzayel, and reviewing    |
|         | 17 | recordings of Defendant Elhuzayel, did you recognize a voice |
|         | 18 | in the audio recordings that are contained in the disc 703   |
|         | 19 | folder, the voice that you knew to be Defendant Elhuzayel?   |
| 10:03   | 20 | A.   Yes.                                                    |
| 10:03   | 21 | Q.   In any of the calls on the disc at Exhibit 703 that you |
|         | 22 | listened to, did Defendant Elhuzayel identify himself by his |
|         | 23 | name?                                                        |
| 10:03   | 24 | A.   Yes.  On some of the phone calls, he did.               |
| 10:03   | 25 | Q.   And did these calls include recorded conversations with |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | bank employees?                                              |
| 10:03 | 2  | A.   Yes.                                                    |
| 10:03 | 3  | Q.   I'd like to turn to other voices that can be heard on   |
|       | 4  | this disc.  Have you spoken directly with Husam Elhuzayel?   |
| 10:03 | 5  | A.   Yes, I have.                                            |
| 10:03 | 6  | Q.   Who is Husam Elhuzayel?                                 |
| 10:03 | 7  | A.   Husam -- he also goes by the name Sam Elhuzayel -- is   |
|       | 8  | Defendant Nader Elhuzayel's brother.                         |
| 10:03 | 9  | Q.   When did you first speak with him?                      |
| 10:03 | 10 | A.   The first time I've spoken to him was on May 21st,      |
|       | 11 | 2015.                                                        |
| 10:03 | 12 | Q.   Where'd this conversation -- where did this             |
|       | 13 | conversation take place?                                     |
| 10:03 | 14 | A.   It took place at his residence in Anaheim, California.  |
| 10:04 | 15 | Q.   And how long did this conversation last?                |
| 10:04 | 16 | A.   Approximately two hours.                                |
| 10:04 | 17 | Q.   And how close were you to Husam Elhuzayel when you      |
|       | 18 | spoke with him for approximately two hours?                  |
| 10:04 | 19 | A.   One to 2 feet.                                          |
| 10:04 | 20 | Q.   Was a recording made of this interview?                 |
| 10:04 | 21 | A.   Yes.                                                    |
| 10:04 | 22 | Q.   Have you listened to the interview recording again?     |
| 10:04 | 23 | A.   Yes, I have.                                            |
| 10:04 | 24 | Q.   Did you speak with him again this past week outside the |
|       | 25 | courtroom?                                                   |

| | | |
|---|---|---|
| 10:04 | 1 | A.   Yes, I did. |
| 10:04 | 2 | Q.   How long was the conversation? |
| 10:04 | 3 | A.   Thirty seconds to a minute.  I asked him how his child |
| | 4 | was. |
| 10:04 | 5 | Q.   Was Husam Elhuzayel's voice as you remembered it this |
| | 6 | past week? |
| 10:04 | 7 | A.   Yes, it was. |
| 10:04 | 8 | Q.   When you listened to recordings of calls on the disc in |
| | 9 | Exhibit 703, did you recognize a voice as the same voice you |
| | 10 | knew to be the voice of Husam Elhuzayel? |
| 10:05 | 11 | A.   Yes. |
| 10:05 | 12 | Q.   Was the voice you recognized as Husam's referred to as |
| | 13 | Husam or Sam in these recordings? |
| 10:05 | 14 | A.   Yes. |
| 10:05 | 15 | Q.   Finally, turning to one other voice, have you spoken |
| | 16 | directly with Falak Elhuzayel? |
| 10:05 | 17 | A.   Yes, I have. |
| 10:05 | 18 | Q.   Who is Falak Elhuzayel? |
| 10:05 | 19 | A.   She's Defendant Nader Elhuzayel's mother. |
| 10:05 | 20 | Q.   When did you first speak with Falak Elhuzayel? |
| 10:05 | 21 | A.   The first I ever spoke to her was in June 2015. |
| 10:05 | 22 | Q.   Where did this conversation take place? |
| 10:05 | 23 | A.   Outside of her residence in Anaheim, California. |
| 10:05 | 24 | Q.   How long did this conversation last? |
| 10:05 | 25 | A.   Approximately 20 minutes. |

| | | |
|---|---|---|
| 10:05 | 1 | Q.   How close were you to Falak Elhuzayel when you spoke |
| | 2 | with her for about 20 minutes? |
| 10:05 | 3 | A.   Approximately 2 to 3 feet.  We were right in front of |
| | 4 | each other. |
| 10:05 | 5 | Q.   Have you listened to any audio recordings of |
| | 6 | Falak Elhuzayel's voice? |
| 10:06 | 7 | A.   Yes, I have. |
| 10:06 | 8 | Q.   What have you listened to? |
| 10:06 | 9 | A.   I listened to two post-arrest telephone calls from the |
| | 10 | defendant to his mother. |
| 10:06 | 11 | Q.   And how long were these calls? |
| 10:06 | 12 | A.   One was a little over 3 minutes, and the second one was |
| | 13 | approximately 29 minutes, uh, but his mother, Falak, and |
| | 14 | also his father, Salem, were handing the phone back and |
| | 15 | forth throughout the conversations. |
| 10:06 | 16 | Q.   When you listened to the audio, was Falak Elhuzayel's |
| | 17 | voice clear? |
| 10:07 | 18 | A.   Yes. |
| 10:07 | 19 | Q.   When you listened to the audios of calls recorded on |
| | 20 | the disc at Exhibit 703, did you recognize a voice as the |
| | 21 | voice you knew to be Falak Elhuzayel's? |
| 10:07 | 22 | A.   Yes. |
| 10:07 | 23 | Q.   In some of the calls, does a person speaking with that |
| | 24 | same voice say her name is Falak Elhuzayel? |
| 10:07 | 25 | A.   Yes, they do. *(Verbatim.)* |

| | | |
|---|---|---|
| 10:07 | 1 | Q.    Based on your familiarity with the voices of Nader, |
| | 2 | Husam, and Falak Elhuzayel and listening to recorded |
| | 3 | telephone calls in which the three names are identified by |
| | 4 | name, do you recognize the voices of Defendant Nader |
| | 5 | Elhuzayel, Husam Elhuzayel, and/or Falak Elhuzayel in the |
| | 6 | telephone calls on the disc in the folder for Government |
| | 7 | Exhibit 703 and specifically those marked as 707, 728, and |
| | 8 | 729? |
| 10:08 | 9 | MR. LENGYEL-LEAHU:  Renew our objection on |
| | 10 | foundation, Your Honor. |
| 10:08 | 11 | THE COURT:  And, Counsel, would you like to voir |
| | 12 | dire on Falak and Husam. |
| 10:08 | 13 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 10:08 | 14 | THE COURT:  All right.  Overruled. |
| 10:08 | 15 | THE WITNESS:  Yes. |
| 10:08 | 16 | BY MR. NAM: |
| 10:08 | 17 | Q.    In addition, um, have you reviewed transcripts of all |
| | 18 | the recordings of telephone calls that are on the disc in |
| | 19 | the folder for Government Exhibit 703? |
| 10:08 | 20 | A.    Yes. |
| 10:08 | 21 | Q.    Are the voice identifications in the transcripts |
| | 22 | correct? |
| 10:08 | 23 | MR. LENGYEL-LEAHU:  Objection, Your Honor |
| | 24 | foundation.  Asked and answered. |
| 10:08 | 25 | THE COURT:  Overruled. |

10:08    1              THE WITNESS:  Yes.

10:08    2              MR. NAM:  Your Honor, at this time the government

         3    moves to -- uh, moves 707, 707-A.

10:08    4              THE COURT:  Let's take those one by one as you

         5    play them.  I'd like to -- it's a continuing objection.

         6    I've taken it subject to a motion to strike.  So I think you

         7    made 705 and 705-A.  So I'm -- are you -- which is the next

         8    you want to play?

10:09    9              MR. NAM:  The first one we would play is 707.

10:09   10              THE COURT:  Then you may play 707 at this time.

10:09   11              MR. NAM:  Before we play 707, Your Honor, I'd like

        12    to ask a question to the witness.

10:09   13              I'd like to ask Special Agent Vicencia -- I'd like

        14    to ask you to refer Exhibit 760, which should be before you.

        15    It has been, uh, admitted subject to showing of relevance in

        16    this case.

10:09   17    BY MR. NAM:

10:09   18    Q.   Exhibit 707 -- looking at Exhibit 760, when was

        19    Exhibit 707, a call, made?

10:09   20    A.   It was made on April 30th, 2015, at 12:57 p.m.

10:10   21              MR. NAM:  I will now play Exhibit 707.

10:13   22         (Audio played.)

10:13   23         (Transcript displayed.)

10:17   24    BY MR. NAM:

10:17   25    Q.   Special Agent Vicencia, there was a reference to the

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | address 9852 Katella.  Is that an address you recognize?     |
| 10:17 | 2  | A.    Yes.                                                    |
| 10:17 | 3  | Q.    Whose address is it?                                    |
| 10:17 | 4  | A.    It's a previous address of Defendant Nader Elhuzayel.   |
| 10:17 | 5  | Q.    During the conversation we just heard, who is the       |
|       | 6  | person who says, "*This is Nader*"?                           |
| 10:17 | 7  | MR. LENGYEL-LEAHU:  Objection, Your Honor.                    |
|       | 8  | Foundation.                                                   |
| 10:17 | 9  | THE COURT:  You can answer that question.                     |
|       | 10 | Overruled.                                                    |
| 10:17 | 11 | THE WITNESS:  Defendant Nader Elhuzayel.                      |
| 10:17 | 12 | MR. NAM:  I'd like to ask that Exhibit 903,                   |
|       | 13 | 927-A --                                                      |
| 10:17 | 14 | THE COURT:  903 and?                                          |
| 10:17 | 15 | MR. NAM:  927-A, Your Honor.                                  |
| 10:17 | 16 | THE COURT:  927-A.                                            |
| 10:18 | 17 | MR. NAM:  -- be placed before the witness.                   |
| 10:18 | 18 | THE COURT:  Thank you.                                        |
| 10:18 | 19 | MR. NAM:  903 has been received into evidence                 |
|       | 20 | already, Your Honor.                                          |
| 10:18 | 21 | BY MR. NAM:                                                   |
| 10:18 | 22 | Q.    Special Agent Vicencia, I'd like to direct your         |
|       | 23 | attention to page 1 of 9 -- Exhibit 903.                      |
| 10:18 | 24 | A.    Yes, I have it.                                         |
| 10:18 | 25 | Q.    Chase Bank statement for account number ending with     |

1    6763.

10:18    2        *(Exhibit displayed.)*

10:18    3    BY MR. NAM:

10:18    4    Q.   On April 20th, is there a -- I'm sorry.  On April 30th,

5    the line for April 30th, is there a deposit in the amount of

6    $356?

10:18    7    A.   Yes.

10:18    8    Q.   It was a cash or a check deposit?

10:18    9    A.   It was a check deposit.

10:18    10   Q.   And where was the deposit made?

10:18    11   A.   It was at the Chase Banking Center located at 910 South

12   Brookhurst Street in Anaheim, California, with an ATM card

13   ending in 2333 at an ATM.

10:19    14   Q.   I'll direct your attention to Exhibit 927-A, which has

15   been admitted already.  Is this a check in the amount of

16   $356 -- a copy of a check?

10:19    17   A.   Yes, it is.

10:19    18   Q.   Whose check is it?

10:19    19   A.   It's from a restaurant called "Noodle 21," and it's

20   made payable -- I can't read the first word, but it says

21   "Cali Food" after it for $356.

10:19    22   Q.   On this exhibit, do you see when the deposit of this

23   check, this Noodle 21, check was posted to Defendant

24   Elhuzayel's account?

10:19    25   A.   It was posted on April 30th, 2015.

10:20 1    Q.   Now, in your review of the phone calls on the disc in

2    Exhibit 703 folder, did you find phone calls in which

3    Defendant Elhuzayel and his family members Husam and Falak

4    Elhuzayel discussed check deposits?

10:20 5    A.   Yes.

10:20 6            MR. NAM:  Your Honor, at this time, I'd like to

7    play Exhibit 706.

10:20 8            THE COURT:  You may play 706.

10:13 9        (Audio played.)

10:13 10       (Transcript displayed.)

10:21 11   BY MR. NAM:

10:21 12   Q.   Special Agent Vicencia, do you recall the reference to

13   a "*check being a good one*" here?

10:21 14   A.   Yes.

10:21 15   Q.   What is your understanding of this reference a "*check

16   being a good one*"?

10:21 17           MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls

18   for speculation.

10:21 19           THE COURT:  Overruled.

10:21 20           THE WITNESS:  My understanding is that it refers

21   to if a check still has enough funds to be cashed.

10:21 22   BY MR. NAM:

10:21 23   Q.   I'd like to now proceed to May 1st, in Exhibit 903,

24   returning to page 1, the Chase Bank statement for account

25   ending with 6763.  Do you see a deposit in the amount of

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | $750?                                                        |
| 10:22  | 2  | A.   Yes, I do.                                              |
| 10:22  | 3  | Q.   It was a cash or a check deposit?                       |
| 10:22  | 4  | A.   It was a check deposit.                                 |
| 10:22  | 5  | Q.   Where was the deposit made?                             |
| 10:22  | 6  | A.   Again, at the Chase banking center located at 910 South |
|        | 7  | Brookhurst Street in Anaheim, California, ending in card     |
|        | 8  | No. 2333 at an ATM.                                          |
| 10:22  | 9  | Q.   I direct your attention now to Exhibit 929-A, if the    |
|        | 10 | folder can be placed before the witness.  Exhibit 929-A has  |
|        | 11 | been admitted already.                                       |
| 10:22  | 12 |           MR. NAM:  Can we project Exhibit 929?              |
| 10:22  | 13 |      *(Exhibit displayed.)*                                  |
| 10:23  | 14 | BY MR. NAM:                                                  |
| 10:23  | 15 | Q.   Is this a copy of a check in the amount of $750?        |
| 10:23  | 16 | A.   Yes, it is.                                             |
| 10:23  | 17 | Q.   Whose check is it?                                      |
| 10:23  | 18 | A.   The check is from Saul Salinas-Garcia, DBA, doing       |
|        | 19 | business as, Salinas Landsca- -- it's cut off -- and it's    |
|        | 20 | made payable to Nader Elhuzayel with a date of April 30th,   |
|        | 21 | 2015, for $750.  And at the bottom left, it says it's for a  |
|        | 22 | flat screen -- flat screen television.                      |
| 10:23  | 23 | Q.   What do you understanding the last word in the name row |
|        | 24 | to mean, where it ends with "landsca"?                       |
| 10:23  | 25 |           MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls  |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | for speculation.                                                       |
| 10:23 | 2  | THE COURT:  Would you move up the realtime for                         |
|       | 3  | just one moment?                                                       |
| 10:23 | 4  | Overruled.  You can answer that question.                              |
| 10:23 | 5  | THE WITNESS:  Landscape or landscaping.                                |
| 10:24 | 6  | BY MR. NAM:                                                            |
| 10:24 | 7  | Q.   When was this check posted?                                       |
| 10:24 | 8  | A.   It was posted on May 1st, 2015.                                   |
| 10:24 | 9  | Q.   Returning again to Exhibit 903, page 1, for the 6763              |
|       | 10 | account.  On May 1, the same day as the deposit of Mr. Saul            |
|       | 11 | Salinas-Garcia's check, was there also a withdrawal made?              |
| 10:24 | 12 | A.   Yes.                                                              |
| 10:24 | 13 | Q.   What was the location of the withdrawal?                          |
| 10:24 | 14 | A.   The same banking center, at 910 South Brookhurst Street           |
|       | 15 | in Anaheim, California, at an ATM.                                     |
| 10:24 | 16 | Q.   What was the amount of the withdrawal?                            |
| 10:24 | 17 | A.   $300.                                                             |
| 10:24 | 18 | Q.   What's the significance of the withdrawal amount, if              |
|       | 19 | any?                                                                   |
| 10:24 | 20 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls                      |
|       | 21 | for speculation.                                                       |
| 10:24 | 22 | THE COURT:  Sustained in its present form.                             |
| 10:24 | 23 | BY MR. NAM:                                                            |
| 10:24 | 24 | Q.   Special Agent Vicencia, do you know the significance of           |
|       | 25 | this amount?                                                           |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

102

| | | |
|---|---|---|
| 10:24 | 1 | THE COURT:  Still sustained, Counsel. |
| 10:25 | 2 | BY MR. NAM: |
| 10:25 | 3 | Q.   I'm now showing you what has been marked as |
| | 4 | Government's Exhibit 928, which has been received into |
| | 5 | evidence. |
| 10:25 | 6 | *(Exhibit displayed.)* |
| 10:25 | 7 | BY MR. NAM: |
| 10:25 | 8 | Q.   Do you recognize Exhibit 928? |
| 10:25 | 9 | A.   Yes. |
| 10:25 | 10 | Q.   What is it -- what is, um -- |
| 10:25 | 11 | MR. NAM:  Your Honor, I apologize.  This may not |
| | 12 | have been received into evidence.  I apologize for |
| | 13 | misspeaking. |
| 10:25 | 14 | THE COURT:  928.  All right. |
| 10:25 | 15 | *(Exhibit displays are removed.)* |
| 10:25 | 16 | MR. NAM:  I will lay the foundation, Your Honor. |
| 10:25 | 17 | BY MR. NAM: |
| 10:25 | 18 | Q.   Now, do you recognize Exhibit 928? |
| 10:25 | 19 | A.   Yes. |
| 10:25 | 20 | Q.   What is Exhibit 928? |
| 10:25 | 21 | A.   It's an ATM security photograph from Chase. |
| 10:25 | 22 | Q.   Was this part of the record you received from Chase |
| | 23 | Bank for Defendant Elhuzayel's account ending with 6763 |
| | 24 | pursuant to a lawful court process? |
| 10:26 | 25 | A.   Yes. |

10:26   1           MR. NAM:  At this time, the government moves to

        2    admit Exhibit 928, Your Honor.

10:26   3           THE COURT:  Any objection?

10:26   4           MR. LENGYEL-LEAHU:  No objection, Your Honor.

10:26   5           MS. CORRIGAN:  *(No response.)*

10:26   6           THE COURT:  Received.

10:26   7       *(Exhibit No. 928 received in evidence.)*

10:26   8    BY MR. NAM:

10:26   9    Q.   I'm now showing you Exhibit 928.

10:26  10       *(Exhibit displayed.)*

10:26  11    BY MR. NAM:

10:26  12    Q.   Who is depicted on this photo?

10:26  13    A.   Husam Elhuzayel, Defendant Nader Elhuzayel's brother.

10:26  14    Q.   Does this include the location of the ATM where this

       15    photo was taken?

10:26  16    A.   Yes.  The address of the ATM is 910 South Brookhurst

       17    Street.

10:26  18    Q.   And what is the date and time stamp on this photo?

10:26  19    A.   May 1st, 2015, at 6:33 p.m.

10:26  20    Q.   In your review of the calls made from the 3532 phone

       21    number, associated with Defendant Elhuzayel, did you see a

       22    call made to Chase Bank regarding this account, 6763, on

       23    May 1st prior to this time -- uh, prior to the time this ATM

       24    photo was taken?

10:27  25    A.   Yes.

| | | |
|---|---|---|
| 10:27 | 1 | Q.   Which exhibit is it? |
| 10:27 | 2 | A.   708. |
| 10:27 | 3 | Q.   And what was the purpose of the calls as recorded in |
| | 4 | Exhibit 708? |
| 10:27 | 5 | MR. LENGYEL-LEAHU:  Objection.  Foundation, |
| | 6 | Your Honor.  Calls for speculation. |
| 10:27 | 7 | THE COURT:  Overruled on foundation. |
| 10:27 | 8 | But isn't the tape going to be self-explanatory, |
| | 9 | Counsel? |
| 10:27 | 10 | MR. NAM:  I was not intending on playing it, just |
| | 11 | for the sake of economy of time, but have the witness |
| | 12 | describe very briefly what's -- what's contained in the |
| | 13 | recording, Your Honor.  But if the Court would prefer, we |
| | 14 | can play it. |
| 10:27 | 15 | THE COURT:  Counsel? |
| 10:27 | 16 | MR. LENGYEL-LEAHU:  Yes, we'll play it, |
| | 17 | Your Honor. |
| 10:28 | 18 | THE COURT:  Okay.  Thank you.  You may play it. |
| 10:28 | 19 | MR. NAM:  Yes, Your Honor. |
| 10:13 | 20 | (Audio played.) |
| 10:13 | 21 | (Transcript displayed.) |
| 10:29 | 22 | BY MR. NAM: |
| 10:29 | 23 | Q.   Among the calls you reviewed on the disc at Exhibit |
| | 24 | Folder 703, did you notice any pattern as to when the |
| | 25 | available balances are checked by the 3532 phone number? |

| | | |
|---|---|---|
| 10:29 | 1 | A.    Yes. |
| 10:29 | 2 | Q.    And what was that pattern? |
| 10:29 | 3 | A.    The day after a deposit was made and before a |
| | 4 | withdrawal was made the next -- the following day. |
| 10:30 | 5 | Q.    I'm now proceeding to May 2nd, back to Exhibit 903, |
| | 6 | page 1. |
| 10:30 | 7 | *(Exhibit displayed.)* |
| 10:30 | 8 | BY MR. NAM: |
| 10:30 | 9 | Q.    On May 2nd, one day after the deposit of Mr. Saul |
| | 10 | Salinas' check that you testified about just now, were there |
| | 11 | any withdrawals made from this account? |
| 10:30 | 12 | A.    I'm sorry.  What was the date? |
| 10:30 | 13 | Q.    May 2nd. |
| 10:30 | 14 | A.    Yes.  There were two withdrawals. |
| 10:30 | 15 | Q.    And when were they posted? |
| 10:30 | 16 | A.    Excuse me, I'm sorry.  There's three withdrawals. |
| 10:30 | 17 | Q.    And when were they -- when were the May 2nd withdrawals |
| | 18 | posted to this account? |
| 10:30 | 19 | A.    On May 4th, 2015. |
| 10:31 | 20 | Q.    Do you know why bank transactions are -- do you know |
| | 21 | why bank transactions made on one day are posted on the next |
| | 22 | business day? |
| 10:31 | 23 | A.    My understanding is the bank computer system usually |
| | 24 | takes approximately one business day to catch up to the |
| | 25 | previous day's transactions. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:31 | 1 | Q.   In your review of the calls made from the 3532 number, |
| | 2 | do you receive a call that is made on May 2nd? |
| 10:31 | 3 | A.   Yes. |
| 10:31 | 4 | Q.   How many calls? |
| 10:31 | 5 | A.   There's one call. |
| 10:31 | 6 | Q.   What time was -- was the call made? |
| 10:32 | 7 | A.   9:31 a.m. |
| 10:32 | 8 | MR. NAM:  Your Honor, at this time the government |
| | 9 | would like to play Exhibit 710. |
| 10:32 | 10 | THE COURT:  You may play 0710. |
| 10:13 | 11 | *(Audio played.)* |
| 10:13 | 12 | *(Transcript displayed.)* |
| 10:33 | 13 | BY MR. NAM: |
| 10:33 | 14 | Q.   Does Exhibit 903 indicate whether Mr. Saul Salinas' |
| | 15 | check written for $750 was returned? |
| 10:33 | 16 | A.   Yes. |
| 10:33 | 17 | Q.   When did that happen? |
| 10:33 | 18 | A.   It returned on -- it was posted on the statement on |
| | 19 | May 4th, but it was returned on 5/1, May 1st. |
| 10:33 | 20 | MR. LENGYEL-LEAHU:  Did he say it was posted on |
| | 21 | May 4th, and returned on May 1st, Your Honor? |
| 10:33 | 22 | THE COURT:  That's what I heard also. |
| 10:34 | 23 | THE WITNESS:  Do you want me to clarify? |
| 10:34 | 24 | BY MR. NAM: |
| 10:34 | 25 | Q.   Would you please clarify your answer? |

| | | |
|---|---|---|
| 10:34 | 1 | A.   Yes.  The check was returned on the account so, |
| | 2 | therefore, the funds were withdrawn on May 1st, but it |
| | 3 | didn't post to the statement until May 4th. |
| 10:34 | 4 | THE COURT:  I see. |
| 10:34 | 5 | BY MR. NAM: |
| 10:34 | 6 | Q.   On Friday, Special Agent Vicencia, you were looking at |
| | 7 | Wells Fargo checking account statement and we'd like to |
| | 8 | return there now to Exhibit 902. |
| 10:34 | 9 | MR. NAM:  And could exhibits 902, 930, 931, 932 |
| | 10 | and 934 be placed before the witness.  And if you could |
| | 11 | project Exhibit 902, page 3, which has been received into |
| | 12 | evidence already. |
| 10:34 | 13 | *(Exhibit displayed.)* |
| 10:35 | 14 | BY MR. NAM: |
| 10:35 | 15 | Q.   Turning to the date of May 4th. |
| 10:35 | 16 | A.   Okay. |
| 10:35 | 17 | Q.   Do you see an entry regarding a deposited check |
| | 18 | returned on May 4th? |
| 10:35 | 19 | A.   Yes. |
| 10:35 | 20 | Q.   Which check was it? |
| 10:35 | 21 | A.   It was in the amount of $570. |
| 10:35 | 22 | Q.   Earlier in this bank statement, on a previous page, do |
| | 23 | you see a check in the amount of $570 that was deposited to |
| | 24 | this account? |
| 10:35 | 25 | A.   Yes.  A few days earlier on May 29th. |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

108

| | | |
|---|---|---|
| 10:36 | 1 | Q.   I'm now showing you Exhibit 924-A. |
| 10:36 | 2 | THE COURT:  Did you say May 29th? |
| 10:36 | 3 | THE WITNESS:  I'm sorry.  If I did, I misspoke. |
| | 4 | April 29th. |
| 10:36 | 5 | MR. LENGYEL-LEAHU:  What exhibit, Counsel? |
| 10:36 | 6 | MR. NAM:  924-A. |
| 10:36 | 7 | 924-A, Your Honor, has been received into evidence |
| | 8 | through a prior witness, and I'm now showing you |
| | 9 | Exhibit 924-A. |
| 10:36 | 10 | *(Exhibit displayed.)* |
| 10:36 | 11 | BY MR. NAM: |
| 10:36 | 12 | Q.   Is this the check deposited on April 29th and returned |
| | 13 | on May 4th? |
| 10:37 | 14 | A.   Yes. |
| 10:37 | 15 | Q.   Whose check is it? |
| 10:37 | 16 | A.   It's from Tran Truong Brothers, Inc., dba World Foods |
| | 17 | Supermarket.  And it's paid to Cali Food Co for the amount |
| | 18 | of $570. |
| 10:37 | 19 | Q.   Now, returning to page 3 of the bank statement at |
| | 20 | Exhibit 902 and returning to specifically May 4th, is there |
| | 21 | a withdrawal in the amount of $20? |
| 10:37 | 22 | A.   Yes. |
| 10:37 | 23 | Q.   Where was the withdrawal made? |
| 10:37 | 24 | A.   It was at the Wells Fargo banking center located at |
| | 25 | 2350 West Lincoln Avenue in Anaheim, California, with |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | card -- debit card ending 5283 at an ATM.                            |
| 10:37 | 2  | Q.   Please now look at what has been marked as Exhibit 931          |
|       | 3  | and 930.                                                             |
| 10:38 | 4  | A.   Okay.                                                           |
| 10:38 | 5  | Q.   Do you recognize these exhibits?                               |
| 10:38 | 6  | A.   Yes.                                                            |
| 10:38 | 7  | Q.   What is Exhibit 931?                                           |
| 10:38 | 8  | A.   931 is the web dialogue screen shots provided by               |
|       | 9  | Wells Fargo showing a cash withdrawal at an ATM.                     |
| 10:38 | 10 | Q.   What about 930?                                                 |
| 10:38 | 11 | A.   930 is ATM security photographs of the ATM of that             |
|       | 12 | transaction.                                                         |
| 10:38 | 13 | Q.   Did you receive these two documents as part of                 |
|       | 14 | Defendant Elhuzayel's Wells Fargo Bank records?                      |
| 10:39 | 15 | A.   Yes, I did.                                                     |
| 10:39 | 16 |        MR. NAM:  Government moves to admit these two                |
|       | 17 | exhibits, Your Honor, 931 and 930.                                   |
| 10:39 | 18 |        THE COURT:  931 and 930 are received.  Well, I'm             |
|       | 19 | sorry.  Mr. Lengyel-Leahu?                                           |
| 10:39 | 20 |        MR. LENGYEL-LEAHU:  No objection, Your Honor.                |
| 10:39 | 21 |        THE COURT:  All right.  They're received.                    |
| 10:39 | 22 |     (Exhibit Nos. 930 and 931 received in evidence.)               |
| 10:39 | 23 | BY MR. NAM:                                                          |
| 10:39 | 24 | Q.   Now, showing you Exhibit 931.                                   |
| 10:39 | 25 |        (Exhibit displayed.)                                          |

| | | |
|---|---|---|
| 10:39 | 1 | BY MR. NAM: |
| 10:39 | 2 | Q.   What kind of a transaction was this for? |
| 10:39 | 3 | A.   It was a withdrawal, cash withdrawal. |
| 10:39 | 4 | Q.   Of -- in the amount of $20 that you just testified |
| | 5 | about? |
| 10:39 | 6 | A.   Yes. |
| 10:39 | 7 | Q.   Do you see a date and time stamp on this exhibit? |
| 10:39 | 8 | A.   Yes, I do. |
| 10:39 | 9 | Q.   What is it? |
| 10:39 | 10 | A.   May 4th, 2015.  The time is -- I can't make out |
| | 11 | specifically. |
| 10:40 | 12 | Q.   If -- |
| 10:40 | 13 | A.   Highlight it. |
| 10:40 | 14 | Q.   -- we enlarged it, would that be helpful? |
| 10:40 | 15 | A.   Again, the only thing I can make out is the "5."  I |
| | 16 | can't make out the minutes.  And "p.m." |
| 10:40 | 17 | Q.   Let us turn to Exhibit 930.  What does Exhibit 930 |
| | 18 | show? |
| 10:40 | 19 | A.   It shows an ATM surveillance photograph. |
| 10:40 | 20 | *(Exhibit displayed.)* |
| 10:40 | 21 | BY MR. NAM: |
| 10:40 | 22 | Q.   And who is depicted on this photograph? |
| 10:40 | 23 | A.   Defendant Nader Elhuzayel. |
| 10:40 | 24 | Q.   Where was this ATM? |
| 10:40 | 25 | A.   At the Wells Fargo branch at the Lincoln and Gilbert |

|         |    | banking center. |
|---------|----|-----------------|
| 10:40   | 2  | Q.   How many photographs are there as part of this exhibit? |
| 10:40   | 3  | A.   Six. |
| 10:40   | 4  | Q.   What is the range of time stamps that you see? |
| 10:41   | 5  |      And we can scroll just slowly one by one to show the |
|         | 6  | jury. |
| 10:41   | 7  |      *(Various photos displayed.)* |
| 10:41   | 8  |      THE WITNESS:  The first one is at 8:01 p.m., |
|         | 9  | 8:02 p.m.  Uh -- |
| 10:41   | 10 |      *(Exhibit displayed.)* |
| 10:41   | 11 |      THE WITNESS:  Again, at 8:02 p.m. |
| 10:41   | 12 |      *(Exhibit displayed.)* |
| 10:41   | 13 |      THE WITNESS:  8:02 p.m. |
| 10:41   | 14 |      *(Exhibit displayed.)* |
| 10:41   | 15 |      MR. NAM:  At this time, Your Honor, the government |
|         | 16 | would ask to play Exhibit 718, an audio recording. |
| 10:41   | 17 |      THE COURT:  You may play 718. |
| 11:18   | 18 |      *(Audio recording played.)* |
| 11:18   | 19 |      *(Transcript displayed.)* |
| 10:57   | 20 | BY MR. NAM: |
| 10:57   | 21 | Q.   Special Agent Vicencia, the call refers to a $570 |
|         | 22 | check.  Which check is it referring to? |
| 10:57   | 23 | A.   What exhibit number is that? |
| 10:57   | 24 | Q.   Could you point it out from the -- |
| 10:57   | 25 | A.   On the statement? |

| | | |
|---|---|---|
| 10:57 | 1 | Q.   From the statement, Exhibit 902. |
| 10:57 | 2 | A.   Yeah.  It was the check deposited into -- |
| 10:57 | 3 | *(Exhibit displayed.)* |
| 10:58 | 4 | THE WITNESS:  -- Defendant Elhuzayel's Wells Fargo |
| | 5 | account on April 29th, 2015, for $570. |
| 10:58 | 6 | BY MR. NAM: |
| 10:58 | 7 | Q.   Is that the check that you testified about that was |
| | 8 | Mr. Saul Salinas' check? |
| 10:58 | 9 | A.   Yes, that's correct. |
| 10:58 | 10 | Q.   I'm moving on to May 5th. |
| 10:58 | 11 | A.   Okay. |
| 10:58 | 12 | Q.   Exhibit 902, page 3, was there a deposit on May 5th? |
| 10:58 | 13 | A.   Yes. |
| 10:58 | 14 | Q.   What was the amount? |
| 10:58 | 15 | A.   $2,195. |
| 10:58 | 16 | Q.   Where was the deposit made? |
| 10:58 | 17 | A.   At an ATM located at the Wells Fargo banking center at |
| | 18 | 570 South Brookhurst Street in Anaheim, California, using |
| | 19 | debit card ending in 5283. |
| 10:58 | 20 | Q.   I'm now showing you Exhibit 933-A, which has been |
| | 21 | admitted.  What does this exhibit show? |
| 10:59 | 22 | *(Exhibit displayed.)* |
| 10:59 | 23 | THE WITNESS:  It's a check from Shannon and |
| | 24 | Paul R. Sherin, dated April 25th, 2015, made payable to |
| | 25 | Ponderosa Property Management for $2,195. |

| | | |
|---|---|---|
| 10:59 | 1 | BY MR. NAM: |
| 10:59 | 2 | Q.   Has Government's Exhibit 934 and 932 been placed in |
| | 3 | front of you? |
| 10:59 | 4 | A.   Yes. |
| 10:59 | 5 | Q.   Do you recognize Exhibit 934 and 932? |
| 10:59 | 6 | A.   Yes, I do. |
| 10:59 | 7 | Q.   What are they? |
| 10:59 | 8 | A.   Again, 934 is a web dialogue screen shot provided by |
| | 9 | Wells Fargo, dated May 5th, 2015, at 8:32 p.m. for a card -- |
| | 10 | debit card ending in 5283 for an account ending in 9201 for |
| | 11 | a check deposit for $2,195. |
| 11:00 | 12 | Q.   And what is Exhibit 932? |
| 11:00 | 13 | A.   932 is four ATM security cameras *(sic)* dated May 5, |
| | 14 | 2015. |
| 11:00 | 15 | Q.   Did you receive these documents as part of |
| | 16 | Defendant Elhuzayel's Wells Fargo Bank records? |
| 11:00 | 17 | A.   Yes. |
| 11:00 | 18 |          MR. NAM:  Government moves to admit Exhibits 934 |
| | 19 | and 932, Your Honor. |
| 11:00 | 20 |          THE COURT:  Any objection, Counsel? |
| 11:00 | 21 |          MR. LENGYEL-LEAHU:  No objection. |
| 11:00 | 22 |          THE COURT:  934 and 932 are received. |
| 11:01 | 23 |      *(Exhibit Nos. 932 and 934 received in evidence.)* |
| 11:01 | 24 | BY MR. NAM: |
| 11:01 | 25 | Q.   I'm now showing you Exhibit 934. |

| | | |
|---|---|---|
| 11:01 | 1 | *(Exhibit displayed.)* |
| 11:01 | 2 | BY MR. NAM: |
| 11:01 | 3 | Q.   Is this the web dialogue page that you just described? |
| 11:01 | 4 | A.   Yes, it is. |
| 11:01 | 5 | Q.   I'm now showing you Exhibit 932. |
| 11:01 | 6 | *(Exhibit displayed.)* |
| 11:01 | 7 | BY MR. NAM: |
| 11:01 | 8 | Q.   932 has multiple photographs? |
| 11:01 | 9 | A.   Correct. |
| 11:01 | 10 | Q.   What is the date and time stamp range on these |
| | 11 | photographs? |
| 11:01 | 12 | A.   They're all taken on May 5th, 2015, and two of 'em are |
| | 13 | at 8:31 p.m., and the other two are at 8:32 p.m. |
| 11:02 | 14 | Q.   Does that match with the time stamp that you see on the |
| | 15 | web dialogue page? |
| 11:02 | 16 | A.   Yes.  The web dialogue says 8:32 p.m. |
| 11:02 | 17 | Q.   Who's depicted on these photographs? |
| 11:02 | 18 | A.   Three of the photographs I clearly recognize Defendant |
| | 19 | Nader Elhuzayel.  The fourth photograph has his back turned |
| | 20 | so I can't see his face. |
| 11:02 | 21 |     The other three have a second person, who I recognize as |
| | 22 | Husam Elhuzayel. |
| 11:02 | 23 | Q.   Returning to Exhibit 903, page 3, was there a |
| | 24 | withdrawal on the same day as the deposit? |
| 11:03 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 11:03 | 1 | Q.    What was the amount of the withdrawal? |
| 11:03 | 2 | A.    $300. |
| 11:03 | 3 | Q.    Do you recognize that to be the maximum amount |
| | 4 | allowed -- |
| 11:03 | 5 | A.    Yes. |
| 11:03 | 6 | Q.    -- upon depositing a check initially? |
| 11:03 | 7 | A.    Yes.  The immediate withdrawal. |
| 11:03 | 8 | Q.    Moving to the next day, May 6th, in the same bank |
| | 9 | record, but before we get into the specific transactions, |
| | 10 | May 6th, what is the significance of this date in this case? |
| 11:03 | 11 | A.    May 6th is the day before the airline ticket for |
| | 12 | Defendant Nader Elhuzayel to travel on to Istanbul, Turkey, |
| | 13 | and it was purchased all the way to Tel Aviv. |
| 11:04 | 14 | Q.    Did Defendant Elhuzayel visit banks on this day, |
| | 15 | May 6th, one day before the date of the plane ticket |
| | 16 | purchase? |
| 11:04 | 17 | A.    Yes. |
| 11:04 | 18 | Q.    How many banks did Defendant Elhuzayel visit May 6th? |
| 11:04 | 19 | A.    *(No response.)* |
| 11:04 | 20 | Q.    If you could look at the transactions, and you see on |
| | 21 | page 3 of Exhibit 902? |
| 11:04 | 22 | A.    Yeah.  I see three, three different banks. |
| 11:04 | 23 | Q.    Are these three different Wells Fargo banks? |
| 11:04 | 24 | A.    Yes. |
| 11:04 | 25 | MR. NAM:  At this time, Your Honor, the government |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | seeks permission to play Exhibit 723.                            |
| 11:04 | 2  | THE COURT:  You may play 723.                                    |
| 11:05 | 3  | BY MR. NAM:                                                      |
| 11:05 | 4  | Q.  Oh, before it's played, 723, Special Agent Vicencia,        |
|       | 5  | what is the date and time of this recording?                     |
| 11:05 | 6  | THE WITNESS:  It's made on May 6th, 2015, at                     |
|       | 7  | 7:40 a.m.                                                         |
| 11:05 | 8  | MR. NAM:  Yes.  Please play the recording.                       |
| 11:05 | 9  | *(Audio recording played.)*                                      |
| 11:05 | 10 | *(Transcript displayed.)*                                        |
| 11:06 | 11 | BY MR. NAM:                                                      |
| 11:06 | 12 | Q.  Special Agent Vicencia, do you recognize the amount         |
|       | 13 | $1,998.70 *(sic)* on page 3 of Exhibit 902 anywhere?            |
| 11:06 | 14 | A.  Yes.                                                         |
| 11:06 | 15 | Q.  Where is -- where do you see the same number?               |
| 11:06 | 16 | A.  I'm sorry.  Can you repeat that?                            |
| 11:06 | 17 | Q.  On which date do you see the same number recorded?          |
| 11:06 | 18 | A.  I see it on May 5th, 2015, on the right-hand side of         |
|       | 19 | the statement under the ending daily balance.                    |
| 11:06 | 20 | Q.  What are the two transactions that immediately precede      |
|       | 21 | that balance?                                                     |
| 11:07 | 22 | A.  There was a deposit that we spoke of earlier of $2,195,      |
|       | 23 | and immediately after that, a withdrawal of $300.                |
| 11:07 | 24 | Q.  On the 6th of May, when the call recording that we just      |
|       | 25 | heard from, uh, was made at 7:40 a.m., how many withdrawals      |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

117

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | are -- were made from this account?                             |
| 11:07 | 2  | A.    Total of three.                                           |
| 11:07 | 3  | Q.    What was the first amount?                                |
| 11:07 | 4  | A.    $200 at an ATM on May 6th at the banking center located   |
|       | 5  | at 2350 West Lincoln Avenue in Anaheim, California, with        |
|       | 6  | card -- debit card ending 5283.                                 |
| 11:07 | 7  | Q.    And was that location different from the location where   |
|       | 8  | the withdrawal was made a day earlier?                          |
| 11:08 | 9  | A.    Yes, it was.                                              |
| 11:08 | 10 |          MR. NAM:  I'd like to ask that Government Exhibits     |
| 11:08 | 11 | 936, 937, 938, 939, 940, and 941 be placed before the          |
|       | 12 | witness.                                                        |
| 11:08 | 13 |       *(Exhibits displayed.)*                                   |
| 11:08 | 14 | BY MR. NAM:                                                     |
| 11:08 | 15 | Q.    First, please take a look at what has been marked as      |
|       | 16 | Government's Exhibits 936 and 937.  Do you recognize            |
|       | 17 | Exhibits 936 and 937?                                           |
| 11:08 | 18 | A.    One moment.  Yes.                                         |
| 11:08 | 19 | Q.    What are Exhibits 936 and 937?                            |
| 11:09 | 20 | A.    936 is several ATM security photographs from             |
|       | 21 | Wells Fargo; and Exhibit 937 again is a screen shot titled      |
|       | 22 | "Web Page Dialogue," dated May 6th, 2015, at 8:28 a.m. with     |
|       | 23 | the amount -- a cash withdrawal of $200 at the Wells Fargo      |
|       | 24 | banking center, 2350 West Lincoln Avenue in Anaheim.           |
| 11:09 | 25 | Q.    Did you receive these documents as part of               |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

118

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | Defendant Elhuzayel's Wells Fargo Bank records?                    |
| 11:09 | 2  | A.   Yes.                                                           |
| 11:09 | 3  |        MR. NAM:  Government moves to admit Exhibits 936            |
|       | 4  | and 937, Your Honor.                                               |
| 11:09 | 5  |        THE COURT:  Counsel Lengyel-Leahu, any objection?          |
| 11:09 | 6  |        MR. LENGYEL-LEAHU:  No objection, Your Honor.              |
| 11:09 | 7  |        THE COURT:  936 and 937 are received.                      |
| 11:09 | 8  |     (Exhibit Nos. 936 and 937 received in evidence.)             |
| 11:09 | 9  |        MR. NAM:  Thank you, Your Honor.                           |
| 11:09 | 10 | BY MR. NAM:                                                        |
| 11:09 | 11 | Q.   I'm now showing you Exhibit 936.                             |
| 11:10 | 12 |     (Exhibit displayed.)                                          |
| 11:10 | 13 | BY MR. NAM:                                                        |
| 11:10 | 14 | Q.   As you mentioned, there are a number of photographs.         |
|       | 15 | As we move slowly through these photographs, Special Agent        |
|       | 16 | Vicencia, if you could describe who is depicted in each of        |
|       | 17 | those photographs.                                                |
| 11:10 | 18 | A.   In this first photograph, I recognize Defendant Nader        |
|       | 19 | Elhuzayel, and the date and time stamp is May 6, 2015, at         |
|       | 20 | 8:23 a.m.                                                          |
| 11:10 | 21 | Q.   And on the second photograph?                                |
| 11:10 | 22 |     (Exhibit displayed.)                                          |
| 11:10 | 23 |        THE WITNESS:  Again, I recognize Defendant Nader           |
|       | 24 | Elhuzayel and his brother, Husam Elhuzayel, and the same          |
|       | 25 | date, May 6th, it's now at -- also at 8:23 a.m.                   |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 11:10 | 1 | MR. NAM:  Could we move to the next photograph. |
| 11:10 | 2 | *(Exhibit displayed.)* |
| 11:10 | 3 | THE WITNESS:  This is a photograph at the same |
| | 4 | banking center, just from a different angle.  It's date- and |
| | 5 | time-stamped at the same time, but it has a total of three |
| | 6 | individuals', um, back. *(Verbatim.)* |
| 11:11 | 7 | BY MR. NAM: |
| 11:11 | 8 | Q.  Does the third individual appear to be there with the |
| | 9 | Defendant Elhuzayel and his brother? |
| 11:11 | 10 | A.  No.  It appears that that individual's using a separate |
| | 11 | ATM. |
| 11:11 | 12 | Q.  Is that based on your review of a different photograph |
| | 13 | as part of this series? |
| 11:11 | 14 | A.  Yes. |
| 11:11 | 15 | *(Exhibit displayed.)* |
| 11:11 | 16 | THE WITNESS:  This photograph is also date- and |
| | 17 | time-stamped May 6th, 2015, at 8:23 a.m. |
| 11:11 | 18 | BY MR. NAM: |
| 11:11 | 19 | Q.  I'll continue with the next -- I'll proceed with the |
| | 20 | next set of questions, Special Agent Vicencia. |
| 11:11 | 21 | MR. NAM:  But before that, Your Honor, the |
| | 22 | government seeks permission to play Exhibit 726. |
| 11:11 | 23 | THE COURT:  You may play 726. |
| 11:12 | 24 | MR. NAM:  Before it's played, Special Agent |
| | 25 | Vicencia, what is the date and time of this recording?  It's |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | Exhibit 726.                                                 |
| 11:12 | 2  |     THE WITNESS:  The date is May 6, 2015, and the |
|       | 3  | time is 8:20 a.m.                                            |
| 11:12 | 4  |     *(Audio recording played.)*          |
| 11:12 | 5  |     *(Transcript displayed.)*            |
| 11:12 | 6  | BY MR. NAM:                                                   |
| 11:12 | 7  | Q.   Special Agent Vicencia, going back to Exhibit 902, the  |
|       | 8  | Wells Fargo Bank statement, in addition to the $200          |
|       | 9  | withdrawal that you just testified about, was there another  |
|       | 10 | withdrawal on this same date from Defendant Elhuzayel's      |
|       | 11 | account?                                                     |
| 11:13 | 12 | A.   Yes.                                                    |
| 11:13 | 13 | Q.   What was the next amount?                                |
| 11:13 | 14 | A.   The next amount was $900.                                |
| 11:13 | 15 | Q.   Was it from the same Wells Fargo Bank where the $200    |
|       | 16 | withdrawal was made?                                         |
| 11:13 | 17 | A.   No.  It was at a separate account.  I'm sorry, excuse   |
|       | 18 | me -- separate banking center located at 222 South Harbor    |
|       | 19 | Boulevard in Anaheim, California.                            |
| 11:13 | 20 | Q.   Was it made at an ATM or before a teller?               |
| 11:13 | 21 | A.   It was inside the branch at approximately 11:39 a.m.    |
| 11:13 | 22 | Q.   Please take a look at what has been marked as           |
|       | 23 | Government's Exhibit 938, if it has been placed before you.  |
| 11:13 | 24 |     Do you recognize 938?                 |
| 11:13 | 25 | A.   Yes.                                                     |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 11:14 | 1 | Q.    What is Exhibit 938? |
| 11:14 | 2 | A.    This was a -- call it a screen shot, but it's in a |
| | 3 | different format than the previous web dialogues I've |
| | 4 | discussed, showing a cash withdrawal of $900. |
| 11:14 | 5 | Q.    Is there a time stamp on this document? |
| 11:14 | 6 | A.    Yes.  The date and time stamp is May 6, 2015, at 11:38. |
| 11:14 | 7 | Q.    Did you receive this as part of Defendant Elhuzayel's |
| | 8 | Wells Fargo Bank records? |
| 11:14 | 9 | A.    Yes, I did. |
| 11:14 | 10 | MR. NAM:  The government moves to admit |
| | 11 | Exhibit 938, Your Honor. |
| 11:14 | 12 | THE COURT:  Any objection, Mr. Lengyel-Leahu? |
| 11:14 | 13 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 11:14 | 14 | THE COURT:  Received. |
| 11:14 | 15 | *(Exhibit No. 938 received in evidence.)* |
| 11:14 | 16 | *(Exhibit displayed.)* |
| 11:14 | 17 | BY MR. NAM: |
| 11:14 | 18 | Q.    I'm now showing you Exhibit 938.  Is this the document |
| | 19 | that you were just reading from? |
| 11:14 | 20 | A.    Yes. |
| 11:14 | 21 | Q.    And what is the amount that -- is that $900 the amount |
| | 22 | of transaction that is shown on this record? |
| 11:15 | 23 | A.    Yes.  In the middle of the printout here, it says "*cash* |
| | 24 | *out $900.*" |
| 11:15 | 25 | Q.    Exhibit 728 is another audio recording that is on the |

|  |  |  |
|---|---|---|
|  | 1 | disc that you reviewed.  What is the date and time of that |
|  | 2 | recording, 728? |
| 11:15 | 3 | A.   Again, it's on May 6th, 2015.  The time now is |
|  | 4 | 11:42 a.m. |
| 11:15 | 5 | MR. NAM:  Your Honor, the government seeks |
|  | 6 | permission to play Exhibit 728. |
| 11:15 | 7 | THE COURT:  728.  You may play 728. |
| 11:15 | 8 | MR. NAM:  Thank you, Your Honor. |
| 11:15 | 9 | *(Audio recording played.)* |
| 11:15 | 10 | *(Transcript displayed.)* |
| 11:16 | 11 | BY MR. NAM: |
| 11:16 | 12 | Q.   The reference to going to State College, what is that |
|  | 13 | in reference to in this context? |
| 11:16 | 14 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Calls |
|  | 15 | for speculation. |
| 11:16 | 16 | THE COURT:  Overruled.  You can answer that |
|  | 17 | question. |
| 11:16 | 18 | THE WITNESS:  I believe he's -- they're referring |
|  | 19 | to the banking center located off State College Boulevard in |
|  | 20 | Anaheim, California. |
| 11:16 | 21 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Move |
|  | 22 | to strike. |
| 11:16 | 23 | THE COURT:  Overruled. |
| 11:16 | 24 | BY MR. NAM: |
| 11:16 | 25 | Q.   Is that where the next withdrawal is made? |

| | | |
|---|---|---|
| 11:16 | 1 | A.    Yes, it is. |
| 11:16 | 2 | Q.    Is that indicated on page 3 of Exhibit 902? |
| 11:16 | 3 | A.    Yes. |
| 11:16 | 4 | Q.    And what was the amount that was withdrawn from the |
| | 5 | Wells Fargo branch at State College? |
| 11:16 | 6 | A.    The amount was $890 at the Wells Fargo banking center |
| | 7 | located at 220 South State College Boulevard in Anaheim, |
| | 8 | California. |
| 11:17 | 9 | Q.    And does the bank statement show the time of |
| | 10 | withdrawal? |
| 11:17 | 11 | A.    Yes.  The time was 11:56 a.m. |
| 11:17 | 12 | Q.    On exhibit -- on the list of audio recordings that you |
| | 13 | have before you, is there a call that is made to Wells Fargo |
| | 14 | from the phone number ending with 3532 in the ten to fifteen |
| | 15 | minutes before -- prior to 11:56? |
| 11:17 | 16 | A.    Excuse me one second. |
| 11:17 | 17 |       MR. NAM:  Your Honor, I withdraw the question. |
| | 18 | I'll rephrase the question. |
| 11:17 | 19 | BY MR. NAM: |
| 11:17 | 20 | Q.    Exhibit 729, what is the date and time for Exhibit 729? |
| 11:18 | 21 | A.    May 6, 2015, at 11:44 a.m. |
| 11:18 | 22 |       MR. NAM:  Permission to play Exhibit 729, |
| | 23 | Your Honor. |
| 11:18 | 24 |       THE COURT:  Well, just a moment.  Is the audio |
| | 25 | that we just heard was 728.  Is 729 also an audio? |

| | | |
|---|---|---|
| 11:18 | 1 | MR. NAM:  It is an audio, Your Honor. |
| 11:18 | 2 | THE COURT:  All right.  You may play 729. |
| 11:18 | 3 | *(Audio recording played.)* |
| 11:18 | 4 | *(Transcript displayed.)* |
| 11:19 | 5 | BY MR. NAM: |
| 11:19 | 6 | Q.   On page 3 of Exhibit of 902, after the last withdrawal |
| | 7 | of $890 was made on May 6th, what was the remaining balance? |
| 11:19 | 8 | *(Exhibit displayed.)* |
| 11:19 | 9 | THE WITNESS:  $8.77. |
| 11:20 | 10 | BY MR. NAM: |
| 11:20 | 11 | Q.   I'd like to direct your attention to what has been |
| | 12 | marked as Government's Exhibit 939 and 940. |
| 11:20 | 13 | Do you recognize Exhibits 939 and 940? |
| 11:20 | 14 | A.   Yes. |
| 11:20 | 15 | Q.   What are they? |
| 11:20 | 16 | A.   Exhibit 939 are security still photographs inside of |
| | 17 | the Wells Fargo banking center at State College.  And then |
| | 18 | Government's Exhibit 940 is what I also previously described |
| | 19 | as a screen shot of a cash withdrawal of $890, dated May 6, |
| | 20 | 2015. |
| 11:21 | 21 | Q.   Did you receive these documents as part of |
| | 22 | Defendant Elhuzayel's Wells Fargo Bank records? |
| 11:21 | 23 | A.   Yes. |
| 11:21 | 24 | MR. NAM:  Your Honor, the government moves to |
| | 25 | admit Exhibits 939 and 940. |

| | | |
|---|---|---|
| 11:21 | 1 | THE COURT:  Mr. Lengyel-Leahu, any objection? |
| 11:21 | 2 | MR. LENGYEL-LEAHU:  No objection, Your Honor. |
| 11:21 | 3 | THE COURT:  939, 940 are received. |
| 11:21 | 4 | *(Exhibit Nos. 939 and 940 received in evidence.)* |
| 11:21 | 5 | BY MR. NAM: |
| 11:21 | 6 | Q.   Turning first to Exhibit 939, what is the time stamp? |
| 11:21 | 7 | *(Exhibit displayed.)* |
| 11:21 | 8 | THE WITNESS:  11:55 a.m. |
| 11:21 | 9 | BY MR. NAM: |
| 11:21 | 10 | Q.   And who is depicted on this photograph? |
| 11:21 | 11 | A.   Defendant Nader Elhuzayel. |
| 11:21 | 12 | Q.   If you could move to the next photograph. |
| 11:21 | 13 | *(Exhibit displayed.)* |
| 11:21 | 14 | BY MR. NAM: |
| 11:21 | 15 | Q.   Does this show the same person, Defendant Elhuzayel? |
| 11:21 | 16 | A.   Yes.  At 11:55 a.m. |
| 11:21 | 17 | MR. NAM:  And could we go to the next photograph. |
| 11:21 | 18 | *(Exhibit displayed.)* |
| 11:22 | 19 | MR. NAM:  And if you can move to the last two |
| | 20 | photographs in this series. |
| 11:22 | 21 | *(Exhibit displayed.)* |
| 11:22 | 22 | BY MR. NAM: |
| 11:22 | 23 | Q.   What is the time stamp on this one? |
| 11:22 | 24 | MR. NAM:  Could we zoom in on the time? |
| 11:22 | 25 | THE WITNESS:  11:58 a.m. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 11:22 | 1 | BY MR. NAM: |
| 11:22 | 2 | Q.   Based on these photos, about how long does the |
| | 3 | defendant appear to have been in this -- inside this bank? |
| 11:22 | 4 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  The |
| | 5 | documents speak for themselves. |
| 11:22 | 6 | THE COURT:  Overruled. |
| 11:22 | 7 | THE WITNESS:  Approximately three minutes. |
| 11:22 | 8 | BY MR. NAM: |
| 11:22 | 9 | Q.   And do the times that we see connected with the |
| | 10 | photographs match up with the time that you see in |
| | 11 | Exhibit 940, the printout that you just testified about? |
| 11:23 | 12 | A.   Yes.  The time stamp on 940 is 11:56 a.m. |
| 11:23 | 13 | *(Exhibit displayed.)* |
| 11:23 | 14 | BY MR. NAM: |
| 11:23 | 15 | Q.   You testified earlier that on May 5th a deposit in the |
| | 16 | amount of $2195 -- $2,195 was made on the 5th of May.  Was |
| | 17 | that check ever returned? |
| 11:23 | 18 | A.   Yes, it was. |
| 11:23 | 19 | Q.   Does the bank statement indicate that at Exhibit 902? |
| 11:24 | 20 | A.   Yes.  On May 7th, 2015. |
| 11:24 | 21 | Q.   Moving to the next set of documents, Exhibit 731, an |
| | 22 | audio recording of a telephone call, what is the date and |
| | 23 | time for Exhibit 731? |
| 11:24 | 24 | A.   May 5, 2015, at 6:42 p.m. |
| 11:24 | 25 | MR. NAM:  Your Honor, the government seeks |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | permission to play Exhibit 731.                              |
| 11:24 | 2  | THE COURT:  You may play 731.                                |
| 11:24 | 3  | MR. NAM:  Thank you, Your Honor.                             |
| 11:18 | 4  | *(Audio recording played.)*                                  |
| 11:18 | 5  | *(Transcript displayed.)*                                    |
| 11:30 | 6  | BY MR. NAM:                                                  |
| 11:30 | 7  | Q.   Special Agent Vicencia, are you familiar with the      |
|       | 8  | website checklookup.com?                                     |
| 11:30 | 9  | A.   Yes.                                                    |
| 11:30 | 10 | Q.   What kind of a website is it?                           |
| 11:30 | 11 | A.   It's a website that charges a fee to see if a check is  |
|       | 12 | still valid.                                                 |
| 11:30 | 13 | Q.   And do you recall how much this particular website     |
|       | 14 | charged as part of this call?                                |
| 11:31 | 15 | MR. LENGYEL-LEAHU:  Objection.  Relevance,                   |
|       | 16 | Your Honor.                                                  |
| 11:31 | 17 | THE COURT:  Overruled.                                       |
| 11:31 | 18 | THE WITNESS:  Five dollars.                                  |
| 11:31 | 19 | BY MR. NAM:                                                  |
| 11:31 | 20 | Q.   I'd like to direct your attention to Exhibit 903,      |
|       | 21 | page 2.                                                      |
| 11:31 | 22 | *(Exhibit displayed.)*                                       |
| 11:31 | 23 | BY MR. NAM:                                                  |
| 11:31 | 24 | Q.   903 has been admitted.  It's a Chase Bank statement for |
|       | 25 | an account number ending with 6763.                          |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

128

| | | |
|---|---|---|
| 11:31 | 1 | What is the first entry on page 2 of this bank |
| | 2 | statement? |
| 11:32 | 3 | A.   It's a $5 debit dated May 7th, 2015.  Sorry, excuse me. |
| | 4 | The posting date was May 7th.  The debit was on May 6th. |
| 11:32 | 5 | Q.   Do you recognize the bank name, Hanmi Bank? |
| 11:32 | 6 | A.   Yes. |
| 11:32 | 7 | Q.   Now, showing you Exhibit 942-A, which has been admitted |
| | 8 | through a prior witness. |
| 11:33 | 9 | Whose check is this? |
| 11:33 | 10 | A.   The check is owned by Yoo Yun Kim. |
| 11:33 | 11 | Q.   And what is the bank that issued this check? |
| 11:33 | 12 | A.   Hanmi Bank. |
| 11:33 | 13 | Q.   And what is the amount that is written on this check? |
| 11:33 | 14 | A.   $1,005. |
| 11:33 | 15 | Q.   And is -- was this check deposited at |
| | 16 | Defendant Elhuzayel's Chase Bank account? |
| 11:33 | 17 | A.   Yes.  It was deposited into his account on May 6th, |
| | 18 | 2015. |
| 11:33 | 19 | Q.   You also see that on page 1 of Exhibit 903? |
| 11:33 | 20 | A.   Yes. |
| 11:33 | 21 | Q.   What is the date there for this deposit? |
| 11:33 | 22 | A.   May 6th, 2015. |
| 11:34 | 23 | Q.   And was it made with a card ending with 2333? |
| 11:34 | 24 | A.   Yes, it was. |
| 11:34 | 25 | Q.   And was that the same number that was used to pay $5 at |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | checklookup.com that was recorded in the audio call?                 |
| 11:34 | 2  | A.    Yes.                                                           |
| 11:34 | 3  | Q.    Is Exhibit 941 in front of you?                               |
| 11:34 | 4  | A.    Yes.                                                           |
| 11:34 | 5  | Q.    Do you recognize Exhibit 941?                                 |
| 11:34 | 6  | A.    Yes, I do.                                                    |
| 11:34 | 7  | Q.    What is Exhibit 941?                                          |
| 11:34 | 8  | A.    It's an ATM security photograph provided by Chase.           |
| 11:34 | 9  | Q.    Did you receive it as part of Defendant Elhuzayel's          |
|       | 10 | Chase Bank records?                                                 |
| 11:34 | 11 | A.    Yes.                                                          |
| 11:34 | 12 |        MR. NAM:  The government moves to admit                     |
|       | 13 | Exhibit 941, Your Honor.                                            |
| 11:34 | 14 |        THE COURT:  Any objection, Mr. Lengyel-Leahu?               |
| 11:34 | 15 |        MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor.             |
| 11:34 | 16 |        THE COURT:  Received.                                       |
| 11:34 | 17 |     *(Exhibit No. 941 received in evidence.)*                      |
| 11:35 | 18 | BY MR. NAM:                                                         |
| 11:35 | 19 | Q.    I'm now showing you Exhibit 941.                             |
| 11:35 | 20 |     *(Exhibit displayed.)*                                         |
| 11:35 | 21 | BY MR. NAM:                                                         |
| 11:35 | 22 | Q.    Who is depicted on this photograph?                          |
| 11:35 | 23 | A.    Defendant Nader Elhuzayel.                                   |
| 11:35 | 24 | Q.    What is the date and time stamp that you see there?          |
| 11:35 | 25 | A.    May 6, 2015, at 6:53 p.m.                                    |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

130

11:35   1    Q.   Were there withdrawals -- returning to Exhibit 903.

2    Were there withdrawals on May 6th or the next day from

3    Defendant Elhuzayel's Chase Bank account?

11:36   4    A.   The next withdrawal I see was on May 7th, the next day,

5    yes.

11:36   6    Q.   How many?

11:36   7    A.   Two.

11:36   8    Q.   And what was the amount for each?

11:36   9    A.   Both were $500.

11:36   10   Q.   Together, do they amount to approximately the amount of

11   the check that was deposited on the 6th of May?

11:36   12   A.   Yes.  The deposit was $1,005 and the withdrawal was

13   $1,000.

11:36   14   Q.   Did the thousand-five-dollar check get returned?

11:36   15   A.   Yes, it did.

11:36   16   Q.   And what was the date on that?

11:36   17   A.   It was posted on the statement on May 11th, 2015.

11:37   18   Q.   Do you see Exhibit 739 on your list of exhibits that

19   are part of, um -- that are included on the disc at

20   Exhibit 703?

11:37   21   A.   Yes.

11:37   22   Q.   What is the date and time when Exhibit 739 was

23   recorded?

11:37   24   A.   May 9th at 5:17 p.m.

11:37   25   Q.   And Exhibit 740, what is the date and time for

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | Exhibit 740?                                                          |
| 11:37 | 2  | A.   May 9th, 2015, at 5:21 p.m.                                      |
| 11:37 | 3  |          MR. NAM:  Your Honor, permission to -- the                   |
|       | 4  | government seeks permission to play Exhibits 739 and 740 in           |
|       | 5  | a row.                                                                |
| 11:38 | 6  |          THE COURT:  You may play 739 and 740.                        |
| 11:38 | 7  |          MR. NAM:  And these will be the last two                     |
|       | 8  | recordings, Your Honor.                                               |
| 11:18 | 9  |      *(Audio recording played.)*                                     |
| 11:18 | 10 |      *(Transcript displayed.)*                                       |
| 11:39 | 11 |          MR. NAM:  740.                                               |
| 11:18 | 12 |      *(Audio recording played.)*                                     |
| 11:18 | 13 |      *(Transcript displayed.)*                                       |
| 11:59 | 14 |          THE COURT:  All right.  Why don't we cut the tape            |
|       | 15 | right there.  We'll come back to it after lunch.  We'll take          |
|       | 16 | the recess now.                                                      |
| 11:59 | 17 |      You're admonished not to discuss this matter                    |
|       | 18 | amongst yourselves nor form or express any opinion                   |
|       | 19 | concerning the case.  We'll see you at 1:15.                         |
| 11:59 | 20 |      Counsel will remain in session.                                 |
| 11:59 | 21 |      *(Jury recesses for lunch at 11:59 a.m.)*                       |
| 11:59 | 22 |      *(Outside the presence of the jury.)*                          |
| 11:59 | 23 |          THE COURT:  Sir, if you would remain seated for             |
|       | 24 | just a moment, we're going to go over some evidentiary               |
|       | 25 | items.                                                               |

| | | |
|---|---|---|
| 11:59 | 1 | THE WITNESS:  Yes, sir. |
| 11:59 | 2 | THE COURT:  *(To the Clerk:)*  Deb, we're going to |
| | 3 | go through the evidentiary items from this morning and catch |
| | 4 | up. |
| 12:00 | 5 | All right.  From this morning's session beginning |
| | 6 | with 703, that has not been received yet, according to my |
| | 7 | records.  And 760 -- and those are all the phone calls. |
| | 8 | That's the compilation. |
| 12:00 | 9 | Individual phone calls have been received |
| | 10 | previously, and we'll go over those, but I don't have 730 |
| | 11 | received. |
| 12:00 | 12 | THE CLERK:  I don't either. |
| 12:00 | 13 | MS. CORRIGAN:  That's correct. |
| 12:00 | 14 | MR. NAM:  That's correct, Your Honor. |
| 12:00 | 15 | THE COURT:  I do not have 760, the list of the |
| | 16 | phone calls, received yet. |
| 12:00 | 17 | THE CLERK:  It was received on June 10th. |
| 12:00 | 18 | THE COURT:  It was received.  Thank you. |
| 12:00 | 19 | Today there was an additional list.  Last Friday |
| | 20 | you called out these exhibits at the last part of the day |
| | 21 | Counsel:  703, 705, and 705-A, 706, 710, 717, 718, 723, 720, |
| | 22 | 725, 726, 731.  *(Verbatim.)*  There was an objection |
| | 23 | concerning lack of foundation to 733, 739, and 740. |
| 12:01 | 24 | This morning, right after you elicited 703 and 760 |
| | 25 | that you referred to initially, you added 707, which was not |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | called out on Friday, 728 and 729.  Now, we'll get to each           |
|       | 2  | of those in just a moment.                                           |
| 12:01 | 3  | 502 was the next exhibit you referred to.  It was                    |
|       | 4  | a subscriber information.  (714) 720-3532.  I do not have            |
|       | 5  | that received.                                                       |
| 12:01 | 6  | *(To the clerk:)* Do you, Debbie?                                    |
| 12:01 | 7  | THE CLERK:  Which number?                                            |
| 12:01 | 8  | THE COURT:  502.                                                     |
| 12:01 | 9  | THE CLERK:  Yes.                                                     |
| 12:01 | 10 | MS. CORRIGAN:  I have it received.                                   |
| 12:01 | 11 | THE CLERK:  Yes.                                                     |
| 12:01 | 12 | THE COURT:  You have that received previously?                      |
| 12:01 | 13 | MR. NAM:  Yes, Your Honor.                                           |
| 12:01 | 14 | THE COURT:  Okay.  Excellent.                                        |
| 12:01 | 15 | The next exhibit referred to was 401.  And that                     |
|       | 16 | showed plus one (714) 720-3532, the cellphone.                      |
| 12:01 | 17 | *(To the clerk:)* Do you have that received, Debbie?                |
| 12:01 | 18 | THE CLERK:  41?                                                      |
| 12:01 | 19 | THE COURT:  401.  Now, my handwritten notes could                   |
|       | 20 | be inaccurate, but I have 401.                                       |
| 12:02 | 21 | THE CLERK:  I have it.                                               |
| 12:02 | 22 | MS. CORRIGAN:  Yes.                                                  |
| 12:02 | 23 | THE COURT:  760, which is the list of the phone                     |
|       | 24 | calls.  But the next audio was April 30th, 2015 -- it's             |
|       | 25 | Exhibit 707 -- and this is the audio in which the defendant         |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| | 1 | identifies himself as "*This is Nader*," and he wanted to |
| | 2 | verify a check and gave his address as 9852 Katella Avenue. |
| | 3 | And then you can hear what apparently is his mother in the |
| | 4 | background and a discussion and a check amount $356, and |
| | 5 | he's verifying his account. |
| 12:02 | 6 | Are you asking for the receipt of that tape? |
| 12:02 | 7 | MR. NAM:  Yes, Your Honor. |
| 12:02 | 8 | THE COURT:  Any objection, Mr. Lengyel-Leahu? |
| 12:03 | 9 | MR. LENGYEL-LEAHU:  Only to the Court's |
| | 10 | characterization of the determination that it was, in fact, |
| | 11 | Nader who was saying that it was Nader.  The voice on the |
| | 12 | phone said it.  It's clear about that, but there's been |
| | 13 | no -- or at least the government -- the defense continues to |
| | 14 | object to whether or not they can authenticate. |
| 12:03 | 15 | THE COURT:  Well, let me say, obviously, I haven't |
| | 16 | said that in front of the jury, but the foundation's been |
| | 17 | laid, Counsel.  So 707's received. |
| 12:03 | 18 | *(Exhibit No. 707 received in evidence.)* |
| 12:03 | 19 | THE COURT:  Now, would you look at your Indictment |
| | 20 | for a moment and look at page 6 and 7.  And would you show |
| | 21 | me the amount of $356.  I don't see it. |
| 12:03 | 22 | MR. NAM:  That particular amount is not charges. |
| 12:04 | 23 | THE COURT:  Okay.  I just want to make sure that |
| | 24 | I'm not missing anything.  Okay.  Thank you. |
| 12:04 | 25 | You then referred to 903 again, which is the |

|        |    |                                                            |
|--------|----|------------------------------------------------------------|
|        | 1  | general ledger.                                            |
| 12:04  | 2  | *(To the Clerk:)*  And just to make certain, Debbie,      |
|        | 3  | do you have that received?                                 |
| 12:04  | 4  | THE CLERK:  Yes.                                           |
| 12:04  | 5  | THE COURT:  All right.  Then you refer to 927-A,          |
|        | 6  | and this is the deposit from Noodle 21, and I have 927-A as |
|        | 7  | received.                                                  |
| 12:04  | 8  | *(To the Clerk:)*  Deb, do you have that received?        |
| 12:04  | 9  | THE CLERK:  Which, was Noodle 21 redacted?                |
| 12:04  | 10 | THE COURT:  I don't know if it's redacted or not.         |
| 12:04  | 11 | MR. NAM:  The 927-A is not a redacted version,            |
|        | 12 | Your Honor.                                                |
| 12:04  | 13 | THE COURT:  Well, you asked 920-A *(sic)* be              |
|        | 14 | received.  Is that what you want?                          |
| 12:04  | 15 | *(To the Clerk:)*  Deb, do you have 927-A received?       |
| 12:04  | 16 | THE CLERK:  I do.                                          |
| 12:04  | 17 | THE COURT:  Then that's been received.                    |
| 12:04  | 18 | Then an audio 6- -- 706 was played, and allegedly         |
|        | 19 | you can hear the mother and the brother, Husam, and        |
|        | 20 | allegedly the defendant and the statement that the check was |
|        | 21 | not a good one.                                            |
| 12:05  | 22 | Are you requesting the receipt of 706?                     |
| 12:05  | 23 | MR. NAM:  Yes, Your Honor.                                 |
| 12:05  | 24 | THE COURT:  Objections, Mr. Lengyel-Leahu?                |
| 12:05  | 25 | MR. LENGYEL-LEAHU:  No, Your Honor.                       |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

136

| | | |
|---|---|---|
| 12:05 | 1 | THE COURT:  All right.  706 is received. |
| 12:05 | 2 | *(To the clerk:)* Deb, do you have that? |
| 12:05 | 3 | THE CLERK:  I had it previously received. |
| 12:05 | 4 | THE COURT:  Well, it was previously received, but |
| | 5 | we're going to make sure.  These items were received on |
| | 6 | Friday, but we're going to go back through 'em. |
| 12:05 | 7 | THE CLERK:  Okay. |
| 12:05 | 8 | THE COURT:  729-A was referred to again.  And |
| | 9 | 729-A had previously been received as a copy in the amount |
| | 10 | of $750 from Salina *(sic)* Landscaping. |
| 12:05 | 11 | *(To the clerk:)* Do you have that received, Deb?  I |
| | 12 | do. |
| 12:05 | 13 | THE CLERK:  729-A? |
| 12:05 | 14 | THE COURT:  729-A. |
| 12:05 | 15 | THE CLERK:  I don't. |
| 12:05 | 16 | MS. CORRIGAN:  Your Honor, that's a transcript. |
| 12:06 | 17 | THE COURT:  929-A. |
| 12:06 | 18 | MS. CORRIGAN:  The Court said seven -- okay. |
| 12:06 | 19 | THE COURT:  929-A. |
| 12:06 | 20 | MR. NAM:  That's correct, Your Honor.  That has |
| | 21 | been received into evidence. |
| 12:06 | 22 | MS. CORRIGAN:  I have that. |
| 12:06 | 23 | THE COURT:  I know that.  Now, just a moment. |
| 12:06 | 24 | THE CLERK:  Yes. |
| 12:06 | 25 | THE COURT:  Everybody has that received.  Then my |

```
         1    records are accurate.
12:06    2           Then there was a reference back to 903 again,
         3    which is the general ledger; then you moved to 928, the ATM
         4    security photo from Chase, allegedly showing Mr. Husam at
         5    the ATM on May 1, 2015, at 6:33 p.m.
12:06    6           I have that as received.
12:06    7           (To the clerk:) Do you have that as received, Deb?
12:06    8           THE CLERK:  Yes.
12:06    9           THE COURT:  Counsel?
12:06   10           MR. NAM:  Yes, Your honor.
12:06   11           MS. CORRIGAN:  Yes.
12:06   12           MR. LENGYEL-LEAHU:  I'm not sure.
12:06   13           THE COURT:  928.
12:06   14           MR. LENGYEL-LEAHU:  928, but that's the photograph
        15    of the brother.
12:06   16           THE COURT:  That's correct.
12:06   17           MR. LENGYEL-LEAHU:  Okay.  Okay.  I wasn't sure I
        18    heard that correctly.
12:06   19           THE COURT:  Allegedly, Counsel, I'm picking
        20    your...
12:06   21           MR. LENGYEL-LEAHU:  Allegedly.
12:06   22           THE COURT:  928 I have as received.
12:06   23           Then 710 was the next reference.  It's a phone
        24    call concerning the Account 6763, and there's an available
        25    balance, according to my handwritten notes of 807 and 22
```

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | cents; and allegedly, the defendant, Nader Elhuzayel, is                  |
|       | 2  | saying, "*Yeah, we're good*." And eventually this check is                |
|       | 3  | apparently returned on May 1st after it had been posted on                |
|       | 4  | May 4th *(verbatim)*. I do not have that as received.                     |
| 12:07 | 5  | Are you requesting its receipt, Counsel?                                  |
| 12:07 | 6  | MR. NAM: Yes, Your Honor.                                                 |
| 12:07 | 7  | THE COURT: Any objection?                                                 |
| 12:07 | 8  | MR. LENGYEL-LEAHU: No. Thank you, Your Honor.                             |
|       | 9  | No.                                                                       |
| 12:07 | 10 | THE COURT: 710 is received.                                              |
| 12:07 | 11 | *(Exhibit No. 710 received in evidence.)*                                 |
| 12:07 | 12 | THE COURT: Then I have Exhibit 902. It's the                             |
|       | 13 | withdrawal of $20 on May 4th. I do not have 902 received at              |
|       | 14 | this time. Is there a request?                                           |
| 12:07 | 15 | MR. NAM: 902 has been received into evidence.                            |
| 12:07 | 16 | THE COURT: It has?                                                       |
| 12:07 | 17 | *(To the clerk:)* Deb, do you have it received?                          |
| 12:07 | 18 | THE CLERK: Yes.                                                          |
| 12:07 | 19 | THE COURT: Excellent.                                                    |
| 12:07 | 20 | MS. CORRIGAN: I have the same.                                           |
| 12:07 | 21 | THE COURT: Then I have a reference back to 924-A.                        |
|       | 22 | It's a check deposit on April 29th and returned on May 4th               |
|       | 23 | from World Foods.                                                        |
| 12:08 | 24 | Do you have that as received, Counsel?                                   |
| 12:08 | 25 | MR. NAM: 924-A, Your Honor?                                              |

| | | |
|---|---|---|
| 12:08 | 1 | THE COURT: 924-A. |
| 12:08 | 2 | MR. NAM: Yes, Your Honor. |
| 12:08 | 3 | THE COURT: *(To the clerk:)* and, Deb, do you? |
| 12:08 | 4 | THE CLERK: Yes. |
| 12:08 | 5 | THE COURT: Counsel? |
| 12:08 | 6 | MS. CORRIGAN: Yes. |
| 12:08 | 7 | MR. LENGYEL-LEAHU: Yes. |
| 12:08 | 8 | THE COURT: Okay. Thank you. |
| 12:08 | 9 | I have 931 as received. It's the Wells Fargo |
| | 10 | account showing a $20 cash withdrawal. |
| 12:08 | 11 | Mr. Lengyel-Leahu. |
| 12:08 | 12 | MR. LENGYEL-LEAHU: That's what I show. |
| 12:08 | 13 | THE COURT: This particularly concerns you. I'll |
| | 14 | ask Ms. Corrigan also, but the government? |
| 12:08 | 15 | MR. NAM: Yes, Your Honor. |
| 12:08 | 16 | THE COURT: *(To the clerk:)* Deb? |
| 12:08 | 17 | THE CLERK: Yes. |
| 12:08 | 18 | THE COURT: 930 is the ATM security photograph of |
| | 19 | allegedly Nader Elhuzayel. I have that as received. |
| 12:08 | 20 | Mr. Lengyl-Leahu? |
| 12:08 | 21 | MR. LENGYEL-LEAHU: Agreed, yes, Your Honor. |
| 12:08 | 22 | THE COURT: Ms. Corrigan? |
| 12:08 | 23 | MS. CORRIGAN: Yes. |
| 12:08 | 24 | THE COURT: Government? |
| 12:08 | 25 | MR. NAM: That's correct, Your Honor. |

| 12:08 | 1 | THE COURT: *(To the clerk:)* Deb? |
| 12:08 | 2 | THE CLERK: Yes. |
| 12:08 | 3 | THE COURT: Okay. Then we have 718. It's an |
|  | 4 | audio recording. It's a rather long conversation, and |
|  | 5 | somebody identifies themselves as Nader Elhuzayel and talks |
|  | 6 | about an account from $700 down to $100. And this would |
|  | 7 | apparently conform to Count 18 -- I'm sorry, my apologies -- |
|  | 8 | 12, which is the deposit of $570 on 4/29/2015. |
| 12:09 | 9 | Are you requesting the audio of 718 be received? |
| 12:09 | 10 | MR. NAM: Yes, Your Honor. |
| 12:09 | 11 | THE COURT: Counsel? |
| 12:09 | 12 | MR. LENGYEL-LEAHU: No objection. |
| 12:09 | 13 | THE COURT: Any objection, Mr. Lengyel-Leahu? |
| 12:09 | 14 | MR. LENGYEL-LEAHU: No objection. |
| 12:09 | 15 | THE COURT: Counsel, Ms. Corrigan? |
| 12:09 | 16 | MS. CORRIGAN: No, Your Honor. |
| 12:09 | 17 | THE COURT: All right. |
| 12:09 | 18 | *(To the clerk:)* Deb, 718 is received now for your |
|  | 19 | records. |
| 12:09 | 20 | THE CLERK: Yes. |
| 12:09 | 21 | *(Exhibit No. 718 received in evidence.)* |
| 12:09 | 22 | THE COURT: 902 is the next exhibit referred to. |
|  | 23 | It's the deposit of $2,195 on May 5th. It seems to pertain |
|  | 24 | to Count 20. And I don't have 902 received. |
| 12:09 | 25 | *(To the clerk:)* Do you, Deb? |

| | | |
|---|---|---|
| 12:09 | 1 | THE CLERK:  I do. |
| 12:09 | 2 | THE COURT:  Excellent.  Counsel for the |
| | 3 | government; is that your record also? |
| 12:09 | 4 | MR. NAM:  Yes, sir, Your Honor. |
| 12:09 | 5 | THE COURT:  Mr. Lengyel-Leahu, is that your record |
| | 6 | as well? |
| 12:09 | 7 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 12:09 | 8 | THE COURT:  Ms. Corrigan? |
| 12:09 | 9 | MS. CORRIGAN:  Yes. |
| 12:09 | 10 | THE COURT:  933-A is Shannon Sherin over at |
| | 11 | Ponderosa Home.  I have 933-A as previously received. |
| 12:10 | 12 | *(To the clerk:)* Do you, Deb? |
| 12:10 | 13 | THE CLERK:  Yes. |
| 12:10 | 14 | THE COURT:  Counsel for the government? |
| 12:10 | 15 | MR. NAM:  Yes, Your Honor. |
| 12:10 | 16 | THE COURT:  Mr. Lengyel-Leahu? |
| 12:10 | 17 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 12:10 | 18 | THE COURT:  Ms. Corrigan? |
| 12:10 | 19 | MS. CORRIGAN:  Yes. |
| 12:10 | 20 | THE COURT:  934 I have an ATM deposit.  I have |
| | 21 | that received as well as 932, which is the ATM security |
| | 22 | camera photo of allegedly Mr. Nader Elhuzayel and Husam |
| | 23 | Elhuzayel. |
| 12:10 | 24 | I have each of those received.  Do you, Counsel? |
| 12:10 | 25 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |

8:15-CR-0060-DOC - 6/13/2016 - Day 5, Volume I

142

| | | |
|---|---|---|
| 12:10 | 1 | MR. NAM:  Yes, Your Honor. |
| 12:10 | 2 | MS. CORRIGAN:  Yes, Your Honor. |
| 12:10 | 3 | THE CLERK:  Yes. |
| 12:10 | 4 | THE COURT:  Then we move to 723.  It's an audio |
| | 5 | recording, and there's a discussion concerning $1,998.77. |
| 12:10 | 6 | And I do not have that received.  Are you |
| | 7 | requesting its receipt, Counsel? |
| 12:10 | 8 | MR. NAM:  Yes, Your Honor.  723, Your Honor? |
| 12:11 | 9 | THE COURT:  723. |
| 12:11 | 10 | MR. NAM:  That's correct, Your Honor. |
| 12:11 | 11 | THE COURT:  Thank you. |
| 12:11 | 12 | Mr. Lengyel-Leahu? |
| 12:11 | 13 | MR. LENGYEL-LEAHU:  No objection. |
| 12:11 | 14 | THE COURT:  Ms. Corrigan? |
| 12:11 | 15 | MS. CORRIGAN:  Yes. |
| 12:11 | 16 | THE COURT:  *(To the clerk:)* Deb? |
| 12:11 | 17 | THE CLERK:  Yes. |
| 12:11 | 18 | THE COURT:  723's received. |
| 12:11 | 19 | *(Exhibit No. 723 received in evidence.)* |
| 12:11 | 20 | THE COURT:  936 are photos of allegedly Nader and |
| | 21 | Husam Elhuzayel.  I have that as received.  And 936 as |
| | 22 | received. |
| 12:11 | 23 | And 937, I have a screen shot of a withdrawal of |
| | 24 | $900, May 6, 2015, which seems to pertain to Count 23.  The |
| | 25 | prior discussion was also a discussion about a withdrawal of |

| | | |
|---|---|---|
| | 1 | $300 on May 5th, which appears to be, from your perspective, |
| | 2 | Count 21.  And another withdrawal on May 6th, which is your |
| | 3 | Count 22.  And now this would allegedly be Count 23. |
| 12:11 | 4 | And I have 936 and 937 received. |
| 12:11 | 5 | Mr. Lengyel-Leahu? |
| 12:11 | 6 | MR. LENGYEL-LEAHU:  My note is slightly different |
| | 7 | on 937, Your Honor.  I show it to be a -- $200 in my notes. |
| 12:12 | 8 | THE COURT:  You're probably right.  The 900 and |
| | 9 | 200 got a little confusing there, and you may be right. |
| 12:12 | 10 | I have 936 and 937 received.  Do you? |
| 12:12 | 11 | MR. LENGYEL-LEAHU:  Yes.  937 is the 200. |
| 12:12 | 12 | THE COURT:  Counsel? |
| 12:12 | 13 | MR. NAM:  Yes, Your Honor. |
| 12:12 | 14 | MS. CORRIGAN:  Yes, Your Honor. |
| 12:12 | 15 | THE COURT:  *(To the clerk:)* Deb? |
| 12:12 | 16 | THE CLERK:  Yes. |
| 12:12 | 17 | THE COURT:  Then there's an audio recording which |
| | 18 | has not been received.  It's Exhibit 726.  It's allegedly an |
| | 19 | audio recording of Nader Elhuzayel talking about going to |
| | 20 | another Wells Fargo Bank. |
| 12:12 | 21 | And, Counsel, do you have -- I have that as not |
| | 22 | received.  Are you requesting that audio recording? |
| 12:12 | 23 | MR. NAM:  Yes, Your Honor, the government so |
| | 24 | requests. |
| 12:12 | 25 | THE COURT:  Any objection, Mr. Lengyel-Leahu? |

12:12  1          MR. LENGYEL-LEAHU:  No, sir.

12:12  2          THE COURT:  This doesn't pertain to you,

3    Ms. Corrigan.

12:12  4          MS. CORRIGAN:  I have it reflected that it was

5    received on Friday.

12:12  6          THE CLERK:  Me too.

12:12  7          THE COURT:  It was.  But I'm just going back over

8    them again because there were foundational objections.

12:12  9          And then 733 was still in contention, so let's be

10   careful.

12:12  11         726 is received.

12:12  12         938 is a time stamp showing a withdrawal of $900.

13   I have 938 received.

12:13  14         *(To the clerk:)* Do you, Deb?

12:13  15         THE CLERK:  Yes.

12:13  16         THE COURT:  Mr. Lengyel-Leahu?

12:13  17         MR. LENGYEL-LEAHU:  Yes, sir.

12:13  18         THE COURT:  Ms. Corrigan?

12:13  19         MS. CORRIGAN:  Yes.

12:13  20         THE COURT:  Government?

12:13  21         MR. NAM:  Yes, Your Honor.

12:13  22         THE COURT:  728 is another audio recording.  This

23   is the one about going to State College.  There was an

24   objection about the witness explaining that State College

25   was not a college -- it was apparently a street -- which was

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | overruled.                                                   |
| 12:13 | 2  | And is there any objection to 728 being received?           |
| 12:13 | 3  | MR. LENGYEL-LEAHU:  No objection.                           |
| 12:13 | 4  | MS. CORRIGAN:  No.                                          |
| 12:13 | 5  | THE COURT:  728's received.                                 |
| 12:13 | 6  | *(Exhibit No. 728 received in evidence.)*                   |
| 12:13 | 7  | THE COURT:  *(To the clerk:)* And, Debbie, you now          |
|       | 8  | have that, right?                                           |
| 12:13 | 9  | THE CLERK:  Yes.                                            |
| 12:13 | 10 | THE COURT:  729 was also played.  That is an                |
|       | 11 | audio.  It states that the primary account has $898.77, and |
|       | 12 | there was a reference back to 902, which was previously     |
|       | 13 | received.  The last withdrawal was on May 6th for $890.     |
| 12:13 | 14 | Counsel, are you requesting receipt of that audio?          |
| 12:13 | 15 | MR. NAM:  Yes, Your Honor.                                  |
| 12:13 | 16 | THE COURT:  Any objection, Mr. Lengyel-Leahu?               |
| 12:13 | 17 | MR. LENGYEL-LEAHU:  No objection, Your Honor.               |
| 12:14 | 18 | THE COURT:  It's received.                                  |
| 12:14 | 19 | MS. CORRIGAN:  No objection.                                |
| 12:14 | 20 | THE COURT:  *(To the clerk:)* Deb, you have that            |
|       | 21 | also, right?                                                |
| 12:14 | 22 | THE CLERK:  729.                                            |
| 12:14 | 23 | THE COURT:  *(To the clerk:)* Which is an audio,            |
|       | 24 | Deb.                                                        |
| 12:14 | 25 | *(Exhibit No. 729 received in evidence.)*                  |

12:14   1            THE COURT:  739 is a security photo inside the

        2    Wells Fargo Bank allegedly of Nader Elhuzayel.  It appears

        3    to be in reference to also a screen shot, which is 940 and

        4    the withdrawal of $890.

12:14   5            I have 939 and 940 received.

12:14   6            *(To the clerk:)* Do you also, Debbie?

12:14   7            THE CLERK:  Yes.

12:14   8            THE COURT:  Counsel, Mr. Lengyel-Leahu?

12:14   9            MR. LENGYEL-LEAHU:  Yes.

12:14   10           THE COURT:  Ms. Corrigan?

12:14   11           MS. CORRIGAN:  Yes.

12:14   12           THE COURT:  Government?

12:14   13           MR. NAM:  Yes, Your Honor.

12:14   14           THE COURT:  There's an audio call of May 5, 2015,

        15   which is Exhibit 731.  It's at 6:42 p.m.  It's a call

        16   verifying two checks with a router *(sic)* number.

12:14   17           And are you requesting its receipt, Counsel?

12:14   18           MR. NAM:  Yes, Your Honor.

12:14   19           THE COURT:  Any objection, Mr. Lengyel-Leahu?

12:14   20           MR. LENGYEL-LEAHU:  No, Your Honor.

12:14   21           MS. CORRIGAN:  No, Your Honor.

12:14   22           THE COURT:  *(To the clerk:)* And, Deb, 731 is now

        23   received.

12:15   24           *(Exhibit No. 731 received in evidence.)*

12:15   25           THE COURT:  903 is account 6793.  It's showing the

|     |    |                                                                    |
|-----|----|--------------------------------------------------------------------|
|     | 1  | $5 debit which was charged back because apparently this was        |
|     | 2  | a checklookup.com call that charges money.  I don't have --        |
|     | 3  | and I have this marked as Exhibit 903.                             |
| 12:15 | 4 | Is that an accurate marking in my notes?                         |
| 12:15 | 5 | MR. NAM:  Exhibit 903?                                           |
| 12:15 | 6 | THE COURT:  903.  Is that an accurate marking in                |
|     | 7  | my notes?                                                          |
| 12:15 | 8 | MR. NAM:  That is correct, Your Honor.  That has                |
|     | 9  | been received.                                                     |
| 12:15 | 10 | MR. LENGYEL-LEAHU:  I think 903 is the audio.                  |
| 12:15 | 11 | THE COURT:  *(To the clerk:)* Deb, has that been              |
|     | 12 | received?                                                          |
| 12:15 | 13 | THE CLERK:  Yes.                                               |
| 12:15 | 14 | THE COURT:  Mr. Lengyel-Leahu?                                 |
| 12:15 | 15 | MR. LENGYEL-LEAHU:  My record is 903 is the audio.            |
| 12:15 | 16 | THE COURT:  No.                                                |
| 12:15 | 17 | MR. LENGYEL-LEAHU:  I got it wrong.                            |
| 12:15 | 18 | MS. CORRIGAN:  903 is a Chase Bank statement.                  |
| 12:15 | 19 | THE COURT:  It's a Chase.                                      |
| 12:15 | 20 | MR. LENGYEL-LEAHU:  Sorry.  My bad.                            |
| 12:15 | 21 | THE COURT:  Okay.  Any concern or objection?                   |
| 12:15 | 22 | MR. LENGYEL-LEAHU:  No, Your Honor.                            |
| 12:15 | 23 | THE COURT:  All right.  That was previously                    |
|     | 24 | received, 903.                                                     |
| 12:15 | 25 | 942 is a check, Yoo Yun Kim, for $1,005, deposited            |

|        | 1  | May 6, 2015. |
|--------|----|--------------|
| 12:15  | 2  | *(To the clerk:)* I don't have 942-A received, Deb. |
|        | 3  | Do you have it previously received? |
| 12:16  | 4  | THE CLERK:  942-A I do have received. |
| 12:16  | 5  | THE COURT:  You have it previously received. |
| 12:16  | 6  | Is that your record also, Mr. Lengyel-Leahu? |
| 12:16  | 7  | MR. LENGYEL-LEAHU:  Again, I wrote the number down |
|        | 8  | as 942; I have -32.  Yes, I have -42 in. |
| 12:16  | 9  | MS. CORRIGAN:  I have 942-A. |
| 12:16  | 10 | THE COURT:  It's a check. |
| 12:16  | 11 | MR. LENGYEL-LEAHU:  Yes. |
| 12:16  | 12 | THE COURT:  Do you have that, Counsel? |
| 12:16  | 13 | MS. CORRIGAN:  I do.  I have it received on |
|        | 14 | June 10th. |
| 12:16  | 15 | THE COURT:  Okay.  Counsel, is that your record |
|        | 16 | also? |
| 12:16  | 17 | MR. NAM:  Yes, Your Honor. |
| 12:16  | 18 | THE COURT:  Excellent. |
| 12:16  | 19 | 941 is an ATM security photo allegedly of Nader |
|        | 20 | Elhuzayel.  I have that as received. |
| 12:16  | 21 | *(To the clerk:)* Deb, do you have that as received? |
| 12:16  | 22 | THE CLERK:  Yes. |
| 12:16  | 23 | THE COURT:  Okay.  And Mr. Lengyel-Leahu? |
| 12:16  | 24 | MR. LENGYEL-LEAHU:  Yes, sir. |
| 12:16  | 25 | THE COURT:  Ms. Corrigan? |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 12:16 | 1 | MS. CORRIGAN:  Agreed. |
| 12:16 | 2 | THE COURT:  Government? |
| 12:16 | 3 | MR. NAM:  Yes, Your Honor. |
| 12:16 | 4 | THE COURT:  739 and 940 are the two audios played |
| | 5 | back to back just before the recess.  Are you requesting |
| | 6 | their receipt, Counsel? |
| 12:16 | 7 | MR. NAM:  Yes, Your Honor. |
| 12:16 | 8 | THE COURT:  They seem to be self-authenticating. |
| 12:16 | 9 | Mr. Lengyel-Leahu, is that accurate? |
| 12:16 | 10 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 12:16 | 11 | MS. CORRIGAN:  Agreed. |
| 12:16 | 12 | THE COURT:  All right.  Thank you.  And the |
| | 13 | Government 739, 740 is then received. |
| 12:17 | 14 | *(Exhibit Nos. 739 and 740 received in evidence.)* |
| 12:17 | 15 | THE COURT:  Check your records because this is |
| | 16 | what is missing.  If you go back to Friday.  Let's check |
| | 17 | these off.  733 has never been offered. |
| 12:17 | 18 | MR. NAM:  Government is not offering 733 anymore, |
| | 19 | Your Honor. |
| 12:17 | 20 | THE COURT:  Okay.  All right. |
| 12:17 | 21 | Now, how are we doing?  How far along are you with |
| | 22 | this witness?  'Cause I heard that there was going to be |
| | 23 | split examination of this witness, another U.S. Attorney. |
| 12:17 | 24 | MR. NAM:  We're nearing -- uh, after this audio is |
| | 25 | completed -- |

```
12:17    1            THE COURT:  You have about $5,000 in one of the
         2   deposits.
12:17    3            MR. NAM:  That's correct, Your Honor.  And a
         4   withdrawal.
12:17    5            THE COURT:  $200.
12:17    6            MR. NAM:  That's correct, Your Honor.  So it will
         7   be very short thereafter.  There will not be any audios
         8   played thereafter.
12:17    9            THE COURT:  Then what's going to happen?  Are you
        10   done with that portion of your examination?
12:17   11            MR. NAM:  And with the witness altogether.
        12   Ms. Heinz is going to take over at that point.
12:18   13            THE COURT:  With this witness?
12:18   14            MS. HEINZ:  Yes, Your Honor.
12:18   15            THE COURT:  What are you going to be examining on?
12:18   16            MS. HEINZ:  I'm going to be examining him on part
        17   of the federal financial aid fraud, and I'm anticipating 15
        18   minutes.
12:18   19            THE COURT:  And those are the banks having --
12:18   20            MS. HEINZ:  Those are the banks -- that's the bank
        21   section of the federal financial aid fraud.
12:18   22            THE COURT:  Okay.  Okay.  Now, don't let these
        23   witnesses go away.  Is Alyssa Powell out in the hallway?  Is
        24   she here?  That's a civilian person, and we need to get to
        25   her at some point.
```

12:18   1           MR. NAM:  Yes, Your Honor.

12:18   2           THE COURT:  Is Michael Khouri present out in the

        3   hallway?

12:18   4           MR. NAM:  He is, Your Honor.

12:18   5           THE COURT:  We need to get to these people.  These

        6   are civilians just standing around.  I'll leave that to you.

        7   But minimally, they'll testify tonight, and minimally, I

        8   don't want to hear that Misti Larraga is not available, Mark

        9   Fendrich, Angela Azer, Marisol Mendoza, Matthew Whittemore,

       10   Officer Ryan Starr, and Mark Espiritu.  We're not going home

       11   until they're done.  That can be midnight or that can be

       12   4:00 o'clock.  It doesn't matter.  But we finish.  Fair

       13   enough?  In other words, don't let them wander off thinking

       14   that we've moved a little more slowly because we've had to

       15   because of the Orlando shooting today.  That's not the fault

       16   of anybody.

12:19  17           But we'll complete, minimally, all of those

       18   witnesses today.  Minimally.

12:19  19           Now, we need to get busy because you'll be amazed

       20   at how much time is spent on just silly paperwork.  And by

       21   that I mean redundant instructions.  So if you stay there

       22   for just a moment, I spent my weekend going over the

       23   instructions.  I want to share some thoughts with you.  Just

       24   remain seated.

12:19  25           *(Court exits the bench.)*

| | | |
|---|---|---|
| 12:20 | 1 | THE COURT:  Counsel, come up to the bench.  I'll |
| | 2 | make a record as we go, and I'll speak loudly. |
| 12:20 | 3 | *(To the Reporter:)*  Now, Deb, can you hear me? |
| 12:20 | 4 | THE REPORTER:  I can. |
| 12:20 | 5 | THE COURT:  Excellent.  We're going to spend an |
| | 6 | hour of silliness that you can accomplish over lunch. |

**DISCUSSION RE JURY INSTRUCTIONS**

| | | |
|---|---|---|
| 12:20 | 8 | THE COURT:  I have no concern or complaint about |
| | 9 | the instructions, but a lot of these instructions were |
| | 10 | pre-instructions that I never gave.  We launched into the |
| | 11 | case. |
| 12:21 | 12 | So, by way of example, your instructions are |
| | 13 | mostly pre-instructions until we get to -- well, let's just |
| | 14 | go over them for a moment.  It's easier for me. |
| 12:21 | 15 | Instruction No. 1.  It's not needed. |
| 12:21 | 16 | Instruction No. 2.  Do the parties want the actual |
| | 17 | indictment included, or are you satisfied with the summation |
| | 18 | of charges?  In other words, don't answer these questions |
| | 19 | now. |
| 12:22 | 20 | Instruction No. 3.  You're going to see this is |
| | 21 | redundant.  You're to pick up this instruction later on |
| | 22 | because this is intended as a pre-instruction. |
| 12:22 | 23 | Instruction No. 4 is also redundant.  You're going |
| | 24 | to pick that up later in the packet, but just double-check |
| | 25 | because, of course, we're going to give it. |

12:22  1        Instruction No. 5.  Direct or circumstantial

    2  evidence.  I'm not certain if that's redundant, if it was

    3  given later on or not.  So just check.  Of course we're

    4  going to give it.

12:22  5        Instruction No. 6.  Absolutely.  We've already

    6  done that.  In other words, if you'd like it included to

    7  make a nice round packet, that's fine.  I'll give it.  But

    8  it's not necessary.

12:22  9        You'll see Instruction No. 7 again later on in the

   10  same packet.  These are good clean instructions.  I wanna

   11  thank you for them.  I just didn't give 'em.

12:23 12        Instruction No. 8.  A few words about the conduct

   13  of jurors.  It's unnecessary now because we've been doing

   14  that, I hope, along the way.

12:23 15        Instruction No. 9.  This was a pre-instruction.

   16  It's not needed now.

12:23 17        In other words, we'll spend an hour of your time

   18  tonight, literally, and I'm trying to preserve you for a

   19  good presentation.

12:23 20        Instruction No. 10.  This is, if you wish to take

   21  notes, that's fine, but it has to be written in the past

   22  tense now.  It can't be "*If you wish to take notes.*"

12:23 23        "*Some of you have taken notes*" -- and I think the

   24  only relevant paragraph is the last one.  Whether or not you

   25  take notes, or took notes, you should rely on your own

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | memory of the evidence.  The first paragraph is irrelevant,  |
|       | 2  | but I'll leave that up to you.                               |
| 12:23 | 3  | Instruction No. 11.  The next phase of the trial             |
|       | 4  | will now begin.  Well, it's not needed.                      |
| 12:23 | 5  | Instruction No. 12.  Government's proposed                   |
|       | 6  | language is in English.  Absolutely.  But it has to be       |
|       | 7  | written in the past tense.  That you've heard Vietnamese and |
|       | 8  | Korean.                                                       |
| 12:24 | 9  | Instruction No. 13.  Absolutely.  This is a                  |
|       | 10 | critical instruction.  Just make sure it's eventually        |
|       | 11 | included in our regular packet.  I think it's redundant.     |
|       | 12 | Absolutely, it needs to be given.                            |
| 12:24 | 13 | Now, you really start -- well, strike that.                  |
|       | 14 | You're about to take your first break.  We've had a lot of   |
|       | 15 | first breaks.                                                |
| 12:24 | 16 | We don't need that.                                          |
| 12:24 | 17 | "*From time to time during the trial, it*                    |
|       | 18 | *may become necessary for me to take up*                     |
|       | 19 | *legal matters.*"                                            |
| 12:24 | 20 | If you want that included, we just write it in the           |
|       | 21 | past tense, "*We took up legal matters,*" but there haven't  |
|       | 22 | been many sidebars.  Most of those came for cause during     |
|       | 23 | jury selection.  So I leave that to you.  I really don't     |
|       | 24 | care.                                                        |
| 12:24 | 25 | Instruction No. 16.  I'm not certain.                        |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 12:25 | 1 | MS. HEINZ:  So far -- |
| 12:25 | 2 | THE COURT:  So far we haven't run into that |
| | 3 | problem, so we're alerted to it. |
| 12:25 | 4 | Instruction No. 17.  Absolutely. |
| 12:25 | 5 | MS. HEINZ:  Yes. |
| 12:25 | 6 | THE COURT:  In fact, you can make that more |
| | 7 | explicit if you want to. |
| 12:25 | 8 | Instruction No. 18.  We need to minimally modify |
| | 9 | that.  So I was writing this weekend: |
| 12:25 | 10 | *"You heard recordings that have been* |
| | 11 | *received into evidence.  These* |
| | 12 | *recordings contain subtitles that are* |
| | 13 | *being provided to help you."* |
| 12:25 | 14 | In other words, we're just rewriting that |
| | 15 | instruction into a past tense form. |
| 12:25 | 16 | And the same thing with instruction No. 19.  In |
| | 17 | fact, you can have my instructions if you want.  I've just |
| | 18 | been writing on them. |
| 12:25 | 19 | *"You heard testimony of a witness who* |
| | 20 | *testified in the Korean and Vietnamese* |
| | 21 | *languages, or language.  These witnesses* |
| | 22 | *testified through an official court* |
| | 23 | *interpreter."* |
| 12:25 | 24 | In other words, we're just writing it in the past |
| | 25 | tense, not the future tense. |

DEBBIE GALE, U.S. COURT REPORTER

12:26    1                On Instruction Number 20.  The same thing:

12:26    2                *"You heard evidence that was received*

          3                *for a limited purpose."*

12:26    4           And here, you and Ms. Corrigan might wanna segment

          5    out the limited purpose from Ms. Corrigan's perspective

          6    about the banking activity.  So I'm encouraging you to

          7    redraft that.

12:26    8           Your instructions really begin on Instruction

          9    No. 21.  And I just wanna make certain we don't miss

         10    anything.

12:26   11           And so let's take that up tonight, but I think we

         12    can literally save an hour of your time just milling around

         13    tonight.  And let's just go that far today, and I'll try to

         14    take another matter.  I'm going to go through lunch, but I

         15    want you to have some lunch.

12:26   16           Now, make sure you have your instructions with you

         17    tonight, though.  Okay?

12:27   18           All right.  You go have a nice lunch.

12:27   19           Counsel, would you like me -- in light of the

         20    Orlando shootings, Counsel, the toll is probably going to

         21    rise.  And there's two ways to resolve the admonitions this

         22    morning and our individual voir dire of the jury.

12:27   23           And you've really gotta give me your guidance as

         24    to what you need, and I'm gonna look to the defense first.

         25    Although the government's input's important, I think this is

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | particularly of concern, obviously, to the defense.          |
| 12:27 | 2  | I can admonish them again at the end of the day.             |
|       | 3  | I can admonish them tomorrow morning and at the end of the   |
|       | 4  | day or at lunchtime or whatever you'd like.  The difficult   |
|       | 5  | call, I recognize, for you is do I keep heightening that, or |
|       | 6  | do you want that admonishment?  If so, I'm happy to give it  |
|       | 7  | at any time.  So why don't you talk, as counsel, first.      |
| 12:28 | 8  | Talk to the government see if there's a consensus            |
|       | 9  | about how you'd like the Court to admonish the jury that the |
|       | 10 | shootings in Orlando do not pertain to this case.  And if    |
|       | 11 | you would like me to do so, I would appreciate you drafting  |
|       | 12 | it for me so I have your words.                              |
| 12:28 | 13 | All right.  Sir, thank you very much.                        |
| 12:28 | 14 | THE WITNESS:  Thank you, sir.                                |
| 12:28 | 15 | THE COURT:  Step down.                                       |
| 12:28 | 16 | All right.  If you would, be kind enough to take             |
|       | 17 | these two gentlemen out and get them fed.                    |
| 12:29 | 18 | *(Lunch recess held at 12:29 p.m.)*                          |
| 12:29 | 19 | *(Further proceedings reported by Deborah Parker*            |
|       | 20 | *in Volume II.)*                                             |
| 12:29 | 21 | -oOo-                                                         |
| 12:29 | 22 |                                                              |
|       | 23 |                                                              |
|       | 24 |                                                              |
|       | 25 |                                                              |

**DEBBIE GALE, U.S. COURT REPORTER**

```
12:29    1                              -oOo-

12:29    2

12:29    3                          CERTIFICATE

12:29    4

12:29    5         I hereby certify that pursuant to Section 753,

         6    Title 28, United States Code, the foregoing is a true and

         7    correct transcript of the stenographically reported

         8    proceedings held in the above-entitled matter and that the

         9    transcript page format is in conformance with the

        10    regulations of the Judicial Conference of the United States.

12:29   11

12:29   12    Date:  March 9, 2017

12:29   13

12:29   14
12:29                              /s/ Debbie Gale
12:29   15
12:29                          _____
12:29   16                     DEBBIE GALE, U.S. COURT REPORTER
                               CSR NO. 9472, RPR, CCRR
12:29   17

        18

        19

        20

        21

        22

        23

        24

        25
```