1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4              - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                      )        **CERTIFIED**
6              Plaintiff,             )
                                      )
7         vs.                         ) No. 8:15-CR-0060-DOC
                                      )    Day 7, Volume I
8    1) NADER SALEM ELHUZAYEL;        )
     2) MUHANAD ELFATIH M.A. BADAWI,  )
9                                     )
               Defendants.            )
10   _____)

11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Jury Trial

17               Santa Ana, California

18            Wednesday, June 15, 2016

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1    **APPEARANCES OF COUNSEL:**

2

FOR THE UNITED STATES OF AMERICA:
3

         DEPARTMENT OF JUSTICE
4        OFFICE OF THE UNITED STATES ATTORNEY
         Criminal Division
5        BY:  Judith A. Heinz
              Assistant United States Attorney
6        312 North Spring Street
         15th Floor
7        Los Angeles, California 90012
         213-894-7280
8        USACAC.Criminal@usdoj.gov

9        DEPARTMENT OF JUSTICE
         OFFICE OF THE UNITED STATES ATTORNEY
10       Criminal Division
         BY:  Deirdre Z. Eliot
11            Assistant United States Attorney
         411 West 4th Street
12       Suite 8000
         Santa Ana, California 92701
13       714-338-3500
         USACAC.SACriminal@usdoj.gov

14

15
         DEPARTMENT OF JUSTICE
16       OFFICE OF THE UNITED STATES ATTORNEY
         General Crimes Section
17       BY:  Julius J. Nam
              Assistant United States Attorney
18       312 North Spring Street
         Suite 1200
19       Los Angeles, California 90012
         213-894-4491
20       julius.nam@usdoj.gov

21

FOR DEFENDANT NADER SALEM ELHUZAYEL:
22

         Pal A. Lengyel-Leahu *(retained)*
23       LAW OFFICES OF PAL A. LENGYEL-LEAHU
         360 East First Street
24       Suite 609
         Tustin, California 92780
25       714-497-6813
         plitigate@aol.com

1

2    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3

4            Katherine T. Corrigan *(CJA appointment)*
             CORRIGAN WELBOURN AND STOKKE APLC
5            4100 Newport Place
             Suite 550
6            Newport Beach, California 92660
             949-251-0330
7            kate@cwsdefense.com

8    ALSO PRESENT:

9            Cambria Lisonbee (assisting Ms. Corrigan)
             Joshua Hopps (assisting Mr. Lengyel-Leahu)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 8:15-cr-00060-DOC   Document 297   Filed 03/31/17   Page 4 of 81   Page ID #:4933
8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

4

1                           **I N D E X**

2                   Jury Trial - Day 7, Volume I

3

4    **PROCEEDINGS**                                       **PAGE**

5    Discussion with Alternate Juror                       8

6    Discussion re exhibits                               10

7    Discussion re Defendant Badawi's health              11

8    NGO, THUAN                                           18

9    Audio recording played; transcript displayed -       19
     Exhibit No. 803.3
10
     Audio recording played; transcript displayed -       19
11   Exhibit No. 804

12   Audio recording played; transcript displayed -       20
     Exhibit No. 828.1
13
     Audio recording played; transcript displayed -       21
14   Exhibit No. 829.1

15   Audio recording played; transcript displayed -       21
     Exhibit No. 829.2
16
     Audio recording played; transcript displayed -       22
17   Exhibit No. 830.1

18   Audio recording played; transcript displayed -       24
     Exhibit No. 840
19
     Stipulation between Ms. Heinz and                    32
20   Mr. Lengyel-Leahu

21   Stipulation between Ms. Heinz and Ms. Corrigan       34

22   GATES, David                                         36

23   Video recording played, Exhibit No. 1005             38

24   GHETIAN, Jason                                       41

25

Case 8:15-cr-00060-DOC   Document 297   Filed 03/31/17   Page 5 of 81   Page ID #:4934
8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

5

| PROCEEDINGS | | | PAGE |
|---|---|---|---|

1  PROCEEDINGS                                        PAGE

2  Video recording played, transcript displayed -    47
   Exhibit Nos. 1016 and 1016-A
3
   Video recording played, transcript displayed,     49
4  Exhibit Nos. 1020 and 1020-A

5

6                         WITNESSES

7  WITNESSES            DIRECT  CROSS  REDIRECT  RECROSS

8  NGO, Thuan
   By Ms. Heinz (resumed)    18
9  By Mr. Lengyel-Leahu             25

10 GATES, David
   By Ms. Eliot              36
11 By Mr. Lengyel-Leahu             40

12 GHETIAN, Jason
   By Ms. Heinz              42           68
13 By Mr. Lengyel-Leahu             50              71
   By Ms. Corrigan                  77

14

15                        EXHIBITS

16 EXHIBIT NO./DESCRIPTION      IDENTIFICATION   IN EVIDENCE

17   604    Defendant Elhuzayel's                 39
            passport
18
     605    U.S. Passport for Nader               44
19          Salem Elhuzayel

20   610    iPhone 6 in Defendant                 44
            Elhuzayel's possession
21
     623    Photo of U.S. currency               45
22          found in the possession
            of Defendant Elhuzayel
23
     624    Photo of credit cards                45
24          and driver's license
            found in Defendant
25          Elhuzayel's wallet

1                                    **EXHIBITS**

2       **EXHIBIT NO./DESCRIPTION            IDENTIFICATION      IN EVIDENCE**

3         1016      Video excerpt of                                47
4                   interview of Defendant
                    Elhuzayel
5
          1016-A   Transcript of Exhibit                            47
6                  1016

7         1020     Excerpt of interview of                          49
                   Defendant Elhuzayel
8
          1020-A  Transcript of Exhibit                             49
9                 1020

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    | **SANTA ANA, CALIFORNIA, WEDNESDAY, JUNE 15, 2016** |
|-------|----|----|
|       | 1  | |
|       | 2  | **Day 7, Volume I** |
|       | 3  | (8:02 a.m.) |
| 07:57 | 4  | *(Outside the presence of the jury.)* |
| 08:02 | 5  | THE COURT:  All right.  Then we're on the record |
|       | 6  | in the matter of Mr. Elhuzayel and Mr. Badawi. |
| 08:02 | 7  | Let the record reflect all counsel are present, all |
|       | 8  | parties are present, both defendants are present. |
| 08:02 | 9  | We received a call this morning about 7:15 a.m. |
|       | 10 | from Juror No. 3, Jesus Ambriz, who has two flat tires and |
|       | 11 | is on the freeway waiting a response.  He's not here yet, |
|       | 12 | and we haven't gotten a call back. |
| 08:03 | 13 | So Deb is going to inform the jury of that in just |
|       | 14 | a moment, while we take another matter, which is the juror |
|       | 15 | that we spoke about, who's the alternate, Scott Kirby. |
| 08:03 | 16 | Would this be the appropriate time to ask Mr. Kirby |
|       | 17 | to join us? |
| 08:03 | 18 | MS. CORRIGAN:  Yes, Your Honor. |
| 08:03 | 19 | THE COURT:  I would suggest that we have Mr. Kirby |
|       | 20 | describe what occurred in his own words.  I don't want to |
|       | 21 | put that juror on the spot, as if they've done something |
|       | 22 | inappropriate, if they're responding or innocently saying |
|       | 23 | something to opposing counsel. |
| 08:03 | 24 | So why don't we -- because, then, if there is an |
|       | 25 | issue for cause, we'll excuse him.  If there's not, I just |

|        |    |                                                                  |
|--------|----|------------------------------------------------------------------|
|        | 1  | don't want that juror then in what I call the "poisoned          |
|        | 2  | well" thinking badly of either counsel.                          |
| 08:03  | 3  | So if you'd ask Mr. Scott Kirby to join us for just              |
|        | 4  | a moment.                                                        |
| 08:04  | 5  | *(Alternate juror escorted into the courtroom.)*                 |
| 08:04  | 6  | **DISCUSSION WITH ALTERNATE JUROR**                              |
| 08:05  | 7  | THE COURT:  Mr. Kirby, if you would have a seat                  |
|        | 8  | for just a moment.  Any location's fine, sir.                    |
| 08:05  | 9  | Yesterday, it came to our attention that there                   |
|        | 10 | might have been a conversation or a brief conversation with      |
|        | 11 | one of the counsel.  And we just wanted to see what              |
|        | 12 | occurred, if anything, during that conversation.                 |
| 08:05  | 13 | Did you have a brief conversation with either                    |
|        | 14 | counsel for the government or counsel for the defense?           |
| 08:06  | 15 | ALTERNATE JUROR KIRBY:  I believe I asked the                    |
|        | 16 | origin of Mr. Lengyel-Leahu.  I think I asked him where his      |
|        | 17 | name originated from.                                            |
| 08:06  | 18 | THE COURT:  And what was the response?                           |
| 08:06  | 19 | ALTERNATE JUROR KIRBY:  Transylvania.                            |
| 08:06  | 20 | THE COURT:  Did you then say anything in return?                 |
| 08:06  | 21 | ALTERNATE JUROR KIRBY:  No.                                      |
| 08:06  | 22 | THE COURT:  Did he say anything further to you?                  |
| 08:06  | 23 | ALTERNATE JUROR KIRBY:  I don't believe so.  No.                 |
| 08:06  | 24 | THE COURT:  Okay.  The reason I'm asking is I                    |
|        | 25 | don't want there to be any conversation.  They're invisible      |

|  |  |  |
|---|---|---|
|  | 1 | to people and, as such -- if you had a chance to discuss |
|  | 2 | anything with the government counsel or either defense |
|  | 3 | counsel, I think you'd like these people immensely.  They're |
|  | 4 | very nice people.  But it gives the impression to the other |
|  | 5 | side who's not present or to Court -- we don't know what's |
|  | 6 | being said.  And I have to create a record of that, which is |
|  | 7 | why you're here. |
| 08:06 | 8 | ALTERNATE JUROR KIRBY:  Gotcha. |
| 08:06 | 9 | THE COURT:  Do you feel that this would cause any |
|  | 10 | bias or prejudice, sympathy or favoritism towards or against |
|  | 11 | any of the -- or biases against either of the parties? |
| 08:07 | 12 | ALTERNATE JUROR KIRBY:  No. |
| 08:07 | 13 | THE COURT:  Would you remain fair, then? |
| 08:07 | 14 | ALTERNATE JUROR KIRBY:  Yes. |
| 08:07 | 15 | THE COURT:  Okay. |
| 08:07 | 16 | Now, Counsel, do you have any questions on behalf |
|  | 17 | of any counsel? |
| 08:07 | 18 | MS. HEINZ:  No, Your Honor. |
| 08:07 | 19 | MS. CORRIGAN:  No, Your Honor. |
| 08:07 | 20 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 08:07 | 21 | THE COURT:  All right. |
| 08:07 | 22 | Sir, if you'd return to the jury room.  Please |
|  | 23 | don't discuss with any of the jurors what we've asked you. |
|  | 24 | We appreciate your answers.  Thank you, sir. |
| 08:07 | 25 | ALTERNATE JUROR KIRBY:  Not a problem. |

| | | |
|---|---|---|
| 08:07 | 1 | THE COURT:  Now, Counsel, is there a motion for |
| | 2 | cause? |
| 08:07 | 3 | MS. HEINZ:  Not from the government. |
| 08:07 | 4 | MS. CORRIGAN:  No, Your Honor. |
| 08:07 | 5 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 08:07 | 6 | THE COURT:  Well, then he'll remain. |
| 08:07 | 7 | We're simply now waiting for that one juror with |
| | 8 | the two flat tires.  And I don't know who's responding, if |
| | 9 | it's a family member, Triple A.  We didn't get notice of |
| | 10 | where he was. |
| 08:07 | 11 | THE CLERK:  Triple A. |
| 08:07 | 12 | THE COURT:  Triple A? |
| 08:07 | 13 | THE CLERK:  Yeah. |
| 08:07 | 14 | THE COURT:  They're pretty quick. |
| 08:07 | 15 | **DISCUSSION RE EXHIBITS** |
| 08:07 | 16 | MS. CORRIGAN:  Your Honor, there's -- couple |
| | 17 | other -- two little matters that I think can be handled. |
| 08:07 | 18 | THE COURT:  Okay. |
| 08:07 | 19 | MS. CORRIGAN:  And they're -- one of 'em is, um, |
| | 20 | yesterday, on one of the calls that was played, I just wanna |
| | 21 | alert the Court that as to 803.2A the government is just |
| | 22 | gonna make a minor revision to it to indicate that my |
| | 23 | client's not one of the participants.  So there will be a |
| | 24 | clean Exhibit 803.2A put into the record. |
| 08:08 | 25 | THE COURT:  Oh, I thought you were referring to |

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | the Evidence Code section for a moment, Counsel.           |
| 08:08 | 2  | MS. CORRIGAN:  No.                                          |
| 08:08 | 3  | THE COURT:  I'm just joking with you.                      |
| 08:08 | 4  | MS. CORRIGAN:  That's just -- more just                    |
|       | 5  | housekeeping than anything.                                |
| 08:08 | 6  | THE COURT:  Okay.                                          |
| 08:08 | 7  | MS. CORRIGAN:  And that was one'a the calls that           |
|       | 8  | was played.                                                |

08:08    9           **DISCUSSION RE DEFENDANT BADAWI'S HEALTH**

08:08   10           MS. CORRIGAN:  The other issue's, uh, I have

        11   spoken briefly to my client and this, uh -- this can be in

        12   front of everybody and -- about the taking of his vitals

        13   twice a day.  I'd also spoke with Marcelino Hazelwood, who's

        14   in the courtroom.  He would -- he's with the Marshals

        15   Office, and he's conferred with Santa Ana Jail.

08:08   16           As the Court can probably -- has probably observed,

        17   my client appears to be in good shape.  He's been talking

        18   with me during the court proceedings.  He's been, you know,

        19   alert, and he seems to be maintaining his weight.

08:09   20           The other thing is, is based on his mother's

        21   request he had -- and, uh, Mr. Hazelwood did confirm for

        22   me -- that he has been eating throughout the day and, uh,

        23   passed on fasting due to, obviously, him needing to maintain

        24   his energy.  So I just wanted to let the Court know that he

        25   is -- I am informed that he is eating through the day, and

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | that there haven't been any issues on that.  And I've                |
|       | 2  | noticed that there've been Boosts.                                   |
| 08:09 | 3  | So what I'm gonna ask, if the Court would permit a                   |
|       | 4  | modification to perhaps ratcheting down the daily vitals to          |
|       | 5  | taking the vitals once a day.  They prick his finger every           |
|       | 6  | day for the sugars.  And, um, so to -- my understanding is           |
|       | 7  | there isn't any problem in Santa Ana Jail, uh, my                    |
|       | 8  | understanding is -- would not -- would not have any issue            |
|       | 9  | with the Court modifying that, or just going on to regular           |
|       | 10 | schedules of whatever they would normally do for taking              |
|       | 11 | vitals.  I think that -- or, I think --                              |
| 08:10 | 12 | THE COURT:  If he's eating and maintains his                         |
|       | 13 | strength, then -- and I'll make the record that he does              |
|       | 14 | appear in very good health conditions *(verbatim)* at the            |
|       | 15 | present time.  It's also been relayed to me that he                  |
|       | 16 | fluctuates between 130 and 132 pounds.  I have no desire to          |
|       | 17 | have an excessive amount of vitals taken.  It was only               |
|       | 18 | necessary if he was he dissipating in strength and health.          |
| 08:10 | 19 | I'm going to order that that be reduced to once a                    |
|       | 20 | day.                                                                 |
| 08:10 | 21 | *(To U.S. Marshal:)* And can that be handled                         |
|       | 22 | informally, Marcelino, with a call over?  Or do you need an          |
|       | 23 | order?                                                               |
| 08:10 | 24 | U.S. MARSHAL:  No, Your Honor.  This will suffice                    |
|       | 25 | I'll just call over.                                                 |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:10 | 1 | THE COURT:  All right. |
| 08:10 | 2 | Then, Ms. Corrigan, once a day. |
| 08:10 | 3 | MS. CORRIGAN:  Great.  Thank you. |
| 08:10 | 4 | THE COURT:  Now, is there anything further that |
| | 5 | you'd like to raise at this time? |
| 08:10 | 6 | MS. CORRIGAN:  No, Your Honor. |
| 08:10 | 7 | THE COURT:  Mr. Lengyel-Leahu, anything further? |
| 08:10 | 8 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 08:10 | 9 | THE COURT:  Counsel for the government? |
| 08:11 | 10 | MS. HEINZ:  No, Your Honor. |
| 08:11 | 11 | THE COURT:  We have information about the missing |
| | 12 | juror? |
| 08:11 | 13 | THE CLERK:  He is currently with Triple A and |
| | 14 | being moved off the highway.  He's going to try and Uber it |
| | 15 | here and hopefully will be here within half an hour. |
| 08:11 | 16 | MS. CORRIGAN:  That's easy. |
| 08:11 | 17 | THE COURT:  Counsel, would you like me to send the |
| | 18 | Marshal to get him? |
| 08:11 | 19 | MS. HEINZ:  No, Your Honor. |
| 08:11 | 20 | THE COURT:  You think I'm joking.  I'm not joking. |
| 08:11 | 21 | MS. HEINZ:  No, I'm not.  Although he might |
| | 22 | appreciate it, but -- |
| 08:11 | 23 | THE COURT:  I'm just wondering if we couldn't get |
| | 24 | him through traffic.  And Marcelino would be happy to go get |
| | 25 | him. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

14

| | | |
|---|---|---|
| 08:11 | 1 | (To U.S. Marshal:) He's over on the 57 Freeway in |
| | 2 | traffic, Marcelino.  I'm just joking.  You're not going out |
| | 3 | there.  But, uh, we could.  And we could get him here very |
| | 4 | quickly, if you'd like.  It's just a lotta drama doing that, |
| | 5 | frankly.  But he would make it through traffic. |
| 08:11 | 6 | MS. CORRIGAN:  I think that -- that, uh, he'll |
| | 7 | probably make it quicker, rather than them going all the way |
| | 8 | to get 'em. |
| 08:11 | 9 | Plus, also, we have potential communication, then, |
| | 10 | with a government agent. |
| 08:11 | 11 | THE COURT:  I -- I'm just joking with all of you. |
| | 12 | We're not gonna get him with the Marshal car.  But I do want |
| | 13 | the Court, Deb, to get that receipt from Uber, and I want |
| | 14 | that paid for by the court. |
| 08:12 | 15 | THE CLERK:  Okay. |
| 08:12 | 16 | THE COURT:  Okay?  All right. |
| 08:12 | 17 | Well, Counsel, why don't you just visit with each |
| | 18 | other, and we'll be back as soon as the marshal -- or as |
| | 19 | soon as the gentleman gets here. |
| 08:12 | 20 | But how long ago did you get the information that |
| | 21 | he -- |
| 08:12 | 22 | THE CLERK:  I just talked to him. |
| 08:12 | 23 | THE COURT:  Just talked to him. |
| 08:12 | 24 | THE CLERK:  Just talked to him. |
| 08:12 | 25 | THE COURT:  You know, my guess is by the time Uber |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

15

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | responds and gets him to court --                        |
| 08:12 | 2  | From what location?                                      |
| 08:12 | 3  | THE CLERK:  He said he's close by.  15 minutes.          |
| 08:12 | 4  | THE COURT:  Oh, close by.                                |
| 08:12 | 5  | You probably have at least 15 minutes, so if you         |
|       | 6  | want to get coffee or just relax.                        |
| 08:12 | 7  | Do you want to take the gentlemen back then, or do       |
|       | 8  | you wanna have -- visit with your clients, Counsel?      |
| 08:12 | 9  | MR. LENGYEL-LEAHU:  They can go back.                    |
| 08:12 | 10 | THE COURT:  Go back?  Counsel?                           |
| 08:12 | 11 | MS. CORRIGAN:  I think my client's looking to have       |
|       | 12 | a little bit of a break.                                 |
| 08:12 | 13 | THE COURT:  Okay.                                        |
| 08:12 | 14 | *(To U.S. Marshal:)* Well, Marcelino, if you'd be so     |
|       | 15 | kind, why don't the marshals take the gentlemen back so they |
|       | 16 | can relax.                                               |
| 08:12 | 17 | Counsel, we'll see you in about 15 minutes.  Okay?       |
| 08:12 | 18 | *(Recess held at 8:12 a.m. )*                            |
| 08:51 | 19 | *(Proceedings resumed at 8:52 a.m.)*                     |
| 08:51 | 20 | *(Outside the presence of the jury.)*                    |
| 08:52 | 21 | THE COURT:  All right.  Then we're on the record.        |
|       | 22 | The defendants are once again present.  Counsel and the  |
|       | 23 | parties are present.                                     |
| 08:52 | 24 | Mr. Jesus Ambriz has just arrived.  He's the             |
|       | 25 | gentleman who has the flat tire.                         |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 08:52 | 1 | But we are missing the alternate juror Dillon |
| | 2 | Cassell, who never checked in this morning.  He's the young |
| | 3 | man in the front row, who we found it necessary to stand |
| | 4 | up -- on at least one or two occasions -- for. |
| 08:52 | 5 | Debbie's been calling him, but we've received no |
| | 6 | response.  So it appears that we're continuing to wait. |
| 08:52 | 7 | *(To the clerk:)* And was that a cell phone you had, |
| | 8 | Debbie? |
| 08:52 | 9 | THE CLERK:  Yes.  I called and left a message. |
| | 10 | I'll try again. |
| 08:53 | 11 | THE COURT:  Okay. |
| 08:54 | 12 | *(Clerk and court confer )* |
| 08:54 | 13 | THE COURT:  Just a moment. |
| 08:54 | 14 | Debbie, why don't you just tell Counsel what I'm |
| | 15 | about to hear.  That'll save it being transmitted from me. |
| 08:54 | 16 | THE CLERK:  Mr. Cassell overslept.  And he said he |
| | 17 | was going to call in to speak to the Court.  He doesn't feel |
| | 18 | well and he did not know how that worked. |
| 08:54 | 19 | MR. LENGYEL-LEAHU:  There's no indication of, if |
| | 20 | he left now, when he would get here? |
| 08:54 | 21 | THE CLERK:  He's still at home. |
| 08:54 | 22 | MR. LENGYEL-LEAHU:  Stip. |
| 08:54 | 23 | MS. CORRIGAN:  Judy, you wanna stip? |
| 08:54 | 24 | THE COURT:  As counsel meet and confer with each |
| | 25 | other. |

| | | |
|---|---|---|
| 08:54 | 1 | MS. CORRIGAN:  I think we have, Your Honor, a |
| | 2 | stip. |
| 08:54 | 3 | MS. HEINZ:  The government would stip. |
| 08:55 | 4 | MR. LENGYEL-LEAHU:  We'd stip, Your Honor. |
| 08:55 | 5 | THE COURT:  All right. |
| 08:55 | 6 | Then, with that stipulation, we're going to thank |
| | 7 | and excuse the alternate who is Mr. Dillon Cassell; is that |
| | 8 | correct? |
| 08:55 | 9 | MS. CORRIGAN:  Yes. |
| 08:55 | 10 | THE COURT:  Deb, would you tell the juror, "thank |
| | 11 | you" for his service.  He's excused. |
| 08:55 | 12 | THE CLERK:  Yes. |
| 08:55 | 13 | THE COURT:  Okay. |
| 08:55 | 14 | I think that that also may resolve another issue; |
| | 15 | and that is, Ms. Corrigan you called my attention to him on |
| | 16 | one occasion.  I saw him on another occasion and had |
| | 17 | everyone stand.  And yesterday I saw him drowsy-ing off. |
| | 18 | He's the only juror who I've seen do that. |
| 08:55 | 19 | And, therefore, if he was called as the alternate, |
| | 20 | I was going to raise with each of you *sua sponte* and just |
| | 21 | check and see if you really wanted that juror to serve. |
| | 22 | He's been unintentionally napping. |
| 08:56 | 23 | So, with that excuse, I think -- or consent by all |
| | 24 | of you and stipulation, I think that resolves a problem. |
| 08:56 | 25 | *(To the clerk:)* Deb, would you be kind enough to |

|       |    |                                                      |
|-------|----|------------------------------------------------------|
|       | 1  | get the jurors.                                      |
| 08:56 | 2  | THE CLERK:  Sure.                                    |
| 08:57 | 3  | *(In the presence of the jury.)*                    |
| 08:58 | 4  | THE COURT:  All right.  The jury's present.  The    |
|       | 5  | alternates are present.                              |
| 08:58 | 6  | *(To the jury:)* Out of your presence, the Alternate |
|       | 7  | Dillon Cassell has been excused.                     |
| 08:58 | 8  | So the record should reflect, then, there are four  |
|       | 9  | alternates left, and twelve sitting jurors.         |
| 08:58 | 10 | Counsel, if you would like to continue with the     |
|       | 11 | witness, please.                                     |
| 08:58 | 12 | MS. HEINZ:  Thank you, Your Honor.                  |
|       | 13 | **THUAN NGO, CALLED BY THE GOVERNMENT, PREVIOUSLY SWORN** |
|       | 14 | **RESUMED THE STAND**                               |
| 08:58 | 15 | **DIRECT EXAMINATION (Resumed)**                    |
| 08:58 | 16 | MS. HEINZ:  Could we please show Exhibit 842.       |
| 08:59 | 17 | *(Exhibit displayed.)*                              |
| 08:59 | 18 | BY MS. HEINZ:                                        |
| 08:59 | 19 | Q.   And, Special Agent Ngo, I'd like you to look at |
|       | 20 | Government's Exhibit 842, please.  Okay?             |
| 08:59 | 21 | The next call -- I'm sorry -- the next recording that |
|       | 22 | we're going to play is Exhibit 803.3.               |
| 08:59 | 23 | Could you please let us know what the date and the time |
|       | 24 | of that recording is?                                |
| 08:59 | 25 | A.   Yes.  It's 5/15/2015.                           |

| | | |
|---|---|---|
| 08:59 | 1 | MS. HEINZ:  And please play Government's Exhibit |
| | 2 | 803.3. |
| 08:59 | 3 | *(Audio recording played.)* |
| 08:59 | 4 | *(Transcript displayed.)* |
| 09:01 | 5 | BY MS. HEINZ: |
| 09:01 | 6 | Q.   Special Agent Ngo, to be, um -- we've been listening to |
| | 7 | a series of recordings yesterday and then again today. |
| 09:02 | 8 |     Are -- these recordings that are in the series of the |
| | 9 | Government's Exhibit 802 and 803, are these sequential |
| | 10 | conversations? |
| 09:02 | 11 | A.   Yes. |
| 09:02 | 12 | Q.   Okay.  The next recording we're going to play is |
| | 13 | Government's Exhibit 804. |
| 09:02 | 14 |     Could you tell us the date of Government's Exhibit 804? |
| 09:02 | 15 | A.   Same date, 5/15/2015. |
| 09:02 | 16 | *(Audio recording played.)* |
| 09:02 | 17 | *(Transcript displayed.)* |
| 09:08 | 18 | BY MS. HEINZ: |
| 09:08 | 19 | Q.   Special Agent Ngo, the next recording we're going to |
| | 20 | play is Government's Exhibit 828.1.  Would you tell us the |
| | 21 | date of this recording? |
| 09:08 | 22 | A.   Yes.  It's 5/16/2015. |
| 09:08 | 23 | Q.   So this is the following day; is that correct? |
| 09:08 | 24 | A.   Yes, ma'am. |
| 09:08 | 25 | MS. HEINZ:  Please play Exhibit 828.1. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

20

| | | |
|---|---|---|
| 09:08 | 1 | *(Audio recording played.)* |
| 09:08 | 2 | *(Transcript displayed.)* |
| 09:10 | 3 | BY MS. HEINZ: |
| 09:10 | 4 | Q.   Special Agent Ngo, one of the speakers in that |
| | 5 | recording is identified by the initials "KB." |
| 09:10 | 6 | Would you please tell us who that is. |
| 09:10 | 7 | A.   Yes. |
| 09:10 | 8 | MR. LENGYEL-LEAHU:  Objection, Your Honor. |
| | 9 | Foundation. |
| 09:10 | 10 | THE COURT:  Overruled. |
| 09:10 | 11 | THE WITNESS:  Yes, ma'am.  It's Khalid Bahta. |
| 09:10 | 12 | BY MS. HEINZ: |
| 09:10 | 13 | Q.   The next recording we're going to play is 828.2. |
| 09:10 | 14 | And Special Agent Ngo, is this a recording continuing in |
| | 15 | the same conversations? |
| 09:10 | 16 | A.   Yes. |
| 09:15 | 17 | Q.   Special Agent Ngo, in that recording there is a |
| | 18 | reference to Omar al-Farouk. |
| 09:15 | 19 | Do you know what that reference is? |
| 09:15 | 20 | A.   Yes, ma'am. |
| 09:15 | 21 | Q.   What is it? |
| 09:15 | 22 | A.   It's a *masjid* in -- |
| 09:15 | 23 | *(Court reporter requests clarification for the* |
| | 24 | *record.)* |
| 09:15 | 25 | THE WITNESS:  I'm sorry.  A *masjid*, or mosque, in |

**DEBBIE GALE, U.S. COURT REPORTER**

|  | 1 | Anaheim. |
| 09:15 | 2 | BY MS. HEINZ: |
| 09:15 | 3 | Q.   The next conversation, uh -- the next recording we're |
|  | 4 | going to play is Government's Exhibit 829.1. |
| 09:15 | 5 |    Could you tell us the date of that? |
| 09:15 | 6 | A.   Yes.  Same date, 5/16/2015. |
| 09:15 | 7 |         THE COURT:  5/16?  I couldn't hear you. |
| 09:15 | 8 |         THE WITNESS:  Yes, sir. |
| 09:15 | 9 |         THE COURT:  5/16?  All right.  Thank you. |
| 09:15 | 10 |    *(Audio recording played.)* |
| 09:15 | 11 |    *(Transcript displayed.)* |
| 09:18 | 12 | BY MS. HEINZ: |
| 09:18 | 13 | Q.   The next recording is Government's Exhibit 829.2. |
| 09:19 | 14 |    Special Agent Ngo, is this also part of that same |
|  | 15 | conversation? |
| 09:19 | 16 | A.   Yes, ma'am. |
| 09:19 | 17 | Q.   Okay. |
| 09:19 | 18 |    *(Audio recording played.)* |
| 09:19 | 19 |    *(Transcript displayed.)* |
| 09:22 | 20 | BY MS. HEINZ: |
| 09:22 | 21 | Q.   Special Agent Ngo, as part of that recording there is |
|  | 22 | something marked "cell phone." |
| 09:23 | 23 |    Do you recognize that part of the recording -- recognize |
|  | 24 | what it is? |
| 09:23 | 25 | A.   Yes. |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

22

| | | |
|---|---|---|
| 09:23 | 1 | Q.   What is it? |
| 09:23 | 2 | MR. LENGYEL-LEAHU:  Objection, Your Honor.  Lack |
| | 3 | of foundation. |
| 09:23 | 4 | THE COURT:  Overruled. |
| 09:23 | 5 | *(To the witness:)* You can answer the question. |
| 09:23 | 6 | THE WITNESS:  It's a speech by Anwar Awlaki.  And |
| | 7 | it sounds like they're watching the video of the speech. |
| 09:23 | 8 | BY MS. HEINZ: |
| 09:23 | 9 | Q.   Okay.  The next recording we're going to play is 829.2. |
| 09:23 | 10 | THE COURT:  I think, you just played 829.2. |
| 09:23 | 11 | MS. HEINZ:  I'm sorry.  830.1. |
| 09:23 | 12 | THE COURT:  830.1.  Thank you. |
| 09:23 | 13 | *(Audio recording played.)* |
| 09:23 | 14 | *(Transcript displayed.)* |
| 09:24 | 15 | BY MS. HEINZ: |
| 09:24 | 16 | Q.   And the next recording we're going to play is |
| | 17 | Government's Exhibit 840. |
| 09:24 | 18 | And if you could tell us -- Special Agent Ngo, if you |
| | 19 | could look at what's been marked as Government's |
| | 20 | Exhibit 844. |
| 09:24 | 21 | MS. HEINZ:  I believe this is already in evidence, |
| | 22 | so if we could show it? |
| 09:24 | 23 | BY MS. HEINZ: |
| 09:24 | 24 | Q.   Could you let us know what the date and the time is of |
| | 25 | the recording that we're going to hear, which is |

|  |  |  |
|---|---|---|
|  | 1 | Government's Exhibit 840? |
| 09:25 | 2 | A.   Yes.  The date is 5/20/2015, and the time is 7:58, |
|  | 3 | Pacific Standard Time, p.m. |
| 09:25 | 4 | *(Government counsel and technician confer.)* |
| 09:25 | 5 | MS. HEINZ:  We will not be playing Government's |
|  | 6 | Exhibit 840 at this time because we're having a technical |
|  | 7 | issue. |
| 09:25 | 8 | THE COURT:  Well, if you want, just take your time |
|  | 9 | with it.  It's the last exhibit you wanted to play. |
| 09:25 | 10 | MS. HEINZ:  I think we're going to need a break to |
|  | 11 | correct the issue. |
| 09:25 | 12 | THE COURT:  *(To the jury:)* Why don't we take a |
|  | 13 | break so Counsel can play the last exhibit.  We'll come back |
|  | 14 | and get you in 15 minutes or so.  Just stretch for a moment, |
|  | 15 | and we'll come right back.  Let's see if we can get the |
|  | 16 | technical glitch resolved. |
| 09:26 | 17 | Please don't discuss this matter amongst yourselves |
|  | 18 | nor form or express any opinion concerning the case. |
| 09:26 | 19 | *(Recess held at 9:26 a.m.)* |
| 09:41 | 20 | *(Proceedings resumed at 9:41 a.m.)* |
| 09:41 | 21 | *(Outside the presence of the jury.)* |
| 09:41 | 22 | THE COURT:  All right.  We're back in session. |
| 09:41 | 23 | The jury's not present.  All counsel are present. |
|  | 24 | The parties are present. |
| 09:41 | 25 | And, Deb, would you be kind enough to get the jury. |

| | | |
|---|---|---|
| 09:41 | 1 | THE CLERK:  Sure. |
| 09:42 | 2 | *(In the presence of the jury.)* |
| 09:43 | 3 | THE COURT:  All right.  The jury's present.  The |
| | 4 | alternates are present.  All counsel are present.  The |
| | 5 | witness is present. |
| 09:43 | 6 | And, Counsel, if you would like to continue with |
| | 7 | 840. |
| 09:43 | 8 | MS. HEINZ:  Thank you, Your Honor. |
| 09:43 | 9 | So at this time we will play 840 and we're also |
| | 10 | going to put the translation up on the ELMO. |
| 09:43 | 11 | *(Audio recording played.)* |
| 09:43 | 12 | *(Transcript displayed.)* |
| 09:45 | 13 | BY MS. HEINZ: |
| 09:45 | 14 | Q.  Finally, Special Agent Ngo, did you want to correct |
| | 15 | something that you said yesterday? |
| 09:45 | 16 | A.  Yes.  Yesterday defense counsel asked me, I believe -- |
| | 17 | and I'm not sure of the exact question, but if I had talked |
| | 18 | to -- or listened to a recording of one of Mr. Elhuzayel's |
| | 19 | or Mr. Badawi's brothers.  And I had forgotten and I said |
| | 20 | no, that I had not talked to them. |
| 09:45 | 21 | But Special Agent Nick Vicencia and I actually |
| | 22 | interviewed Mr. Elhuzayel's brother, Husam.  And that was |
| | 23 | recorded, and I did listen to that recording.  And that was |
| | 24 | the day of the arrest, so that was a little over a year ago. |
| | 25 | And I'm sorry.  I'm -- deeply apologize.  I forgot about |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | that.                                                        |
| 09:46 | 2  | MS. HEINZ:  Thank you.                                       |
| 09:46 | 3  | No further questions.                                        |
| 09:46 | 4  | THE COURT:  Cross-examination, Mr. Lengyel-Leahu.            |
| 09:46 | 5  | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                   |
| 09:46 | 6  | **CROSS-EXAMINATION**                                        |
| 09:46 | 7  | BY MR. LENGYEL-LEAHU:                                         |
| 09:46 | 8  | Q.   Good morning, agent.                                    |
| 09:46 | 9  | A.   Good morning, sir.                                       |
| 09:46 | 10 | Q.   My client has three brothers; is that correct?          |
| 09:46 | 11 | A.   That's my understanding; yes, sir.                      |
| 09:46 | 12 | Q.   Three that you know about.                              |
| 09:46 | 13 | A.   Three that I know about, yes.                           |
| 09:46 | 14 | Q.   And you spoke to one of the brothers in person.         |
| 09:46 | 15 | A.   I did.                                                  |
| 09:46 | 16 | Q.   What about the other brother?                           |
| 09:46 | 17 | A.   I have not spoken to the other two brothers, no.        |
| 09:46 | 18 | Q.   Okay.  And you know the one brother, he's autistic?     |
| 09:47 | 19 | A.   I am aware of that; yes, sir.                           |
| 09:47 | 20 | Q.   He's been in court several times?                       |
| 09:47 | 21 | A.   Yes, sir.  I've observed him in court.                  |
| 09:47 | 22 | Q.   Okay.  And that causes certain speech disabilities with |
|       | 23 | him; is that right?                                          |
| 09:47 | 24 | MS. HEINZ:  Objection, Your Honor.  Beyond the               |
|       | 25 | scope, and relevance.                                        |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:47 | 1 | THE COURT:  Sustained. |
| 09:47 | 2 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 09:47 | 3 | BY MR. LENGYEL-LEAHU: |
| 09:47 | 4 | Q.   Do you know when the eavesdropping devices were placed |
| | 5 | in the vehicles? |
| 09:47 | 6 | MS. HEINZ:  Objection.  Law enforcement privilege. |
| 09:47 | 7 | THE COURT:  "When" is different than the process |
| | 8 | or procedure, Counsel. |
| 09:47 | 9 | Are you still objecting as to the date? |
| 09:47 | 10 | MS. HEINZ:  Um. |
| 09:47 | 11 | THE COURT:  I'll overrule that objection. |
| 09:47 | 12 | *(To the witness:)* You can answer when. |
| 09:47 | 13 | THE WITNESS:  I don't know specifically, sir, no. |
| 09:47 | 14 | BY MR. LENGYEL-LEAHU: |
| 09:47 | 15 | Q.   You were part of the team that removed them? |
| 09:47 | 16 | A.   No, sir.  I wasn't part of the team that removed them. |
| | 17 | I just received the devices. |
| 09:48 | 18 | Q.   Okay.  So they were brought to you? |
| 09:48 | 19 | A.   Yes, sir. |
| 09:48 | 20 | Q.   What is your understanding as to when they were |
| | 21 | removed? |
| 09:48 | 22 | A.   They were removed the day that -- that the arrest |
| | 23 | occurred. |
| 09:48 | 24 | Q.   Okay. |
| 09:48 | 25 | A.   I think it went into the night, so you could consider |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | it the next day.                                                 |
| 09:48 | 2  | Q.    Okay.  And the devices themselves capture the              |
|       | 3  | conversation; is that right?                                     |
| 09:48 | 4  |           MS. HEINZ:  Objection.  Law enforcement privilege.      |
| 09:48 | 5  |           THE COURT:  Sustained.                                 |
| 09:48 | 6  | BY MR. LENGYEL-LEAHU:                                             |
| 09:48 | 7  | Q.    I believe your testimony yesterday is that you took        |
|       | 8  | these devices and downloaded the contents of this                |
|       | 9  | information onto an FBI computer; is that accurate?              |
| 09:48 | 10 | A.    Yes, sir.                                                  |
| 09:48 | 11 | Q.    Okay.  So the devices had certain information on 'em       |
|       | 12 | that was then transferred to the equipment that you were         |
|       | 13 | managing; is that right?                                         |
| 09:49 | 14 | A.    Yes.                                                       |
| 09:49 | 15 | Q.    And you told it was an exact copy of that. *(Verbatim.)*   |
| 09:49 | 16 | A.    It is an exact copy; yes, sir.                             |
| 09:49 | 17 | Q.    Okay.  So -- just so we're clear, this wasn't a radio      |
|       | 18 | transmission in realtime; this was a collection of evidence      |
|       | 19 | that was later downloaded on to your computer.                   |
| 09:49 | 20 |           MS. HEINZ:  Objection.  Law enforcement privilege.     |
| 09:49 | 21 |           THE COURT:  I'm going to sustain that objection,       |
|       | 22 | Counsel.                                                         |
| 09:49 | 23 | BY MR. LENGYEL-LEAHU:                                            |
| 09:49 | 24 | Q.    Did you have occasion to listen to all of the             |
|       | 25 | information downloaded from the devices?                         |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:49 | 1 | A.   I've listened to -- there were -- there were more than |
| | 2 | one -- one device, and I did not listen to all of them.  No. |
| 09:50 | 3 | Q.   Well, I thought you testified that the information that |
| | 4 | you downloaded was an accurate duplication of what was on |
| | 5 | the devices? |
| 09:50 | 6 | A.   They -- they are. |
| 09:50 | 7 | Q.   Are you telling the jury that you're saying that it's |
| | 8 | accurate, but you hadn't listened to it? |
| 09:50 | 9 | A.   I've listened to -- I've listened to one of the |
| | 10 | devices, and not the -- the devices captured different parts |
| | 11 | of hours in the day.  So, um, that's -- what I mean is |
| | 12 | there's -- there are devices that continued on and there |
| | 13 | were other devices that didn't capture everything. |
| 09:50 | 14 | Q.   So the devices that you did not listen to, you didn't |
| | 15 | compare them to determine if they were accurate? |
| 09:50 | 16 | A.   No.  I did compare them. |
| 09:50 | 17 | Q.   Now I'm confused.  Forgive me.  I'm trying to follow. |
| 09:51 | 18 | Did you listen to the information contained on the |
| | 19 | devices? |
| 09:51 | 20 | A.   I did, sir. |
| 09:51 | 21 | Q.   Did you compare it to the information that you |
| | 22 | downloaded on to the FBI computer? |
| 09:51 | 23 | A.   I listened to the ones that were the exhibits that |
| | 24 | we've discussed. |
| 09:51 | 25 | Q.   Okay.  So you don't have any testimony regarding the |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | parts that you didn't listen to, regarding them being        |
|       | 2  | accurately copied?                                           |
| 09:51 | 3  | A.   I don't have any testimony on the extra recordings that |
|       | 4  | I didn't listen to.                                          |
| 09:51 | 5  | Q.   Are you aware of anybody in the FBI who may have        |
|       | 6  | compared the download to what the FBI collected on the       |
|       | 7  | computer just to make sure that it was accurate?             |
| 09:51 | 8  | MS. HEINZ:  Objection.  Misstates the prior                  |
|       | 9  | testimony.                                                    |
| 09:51 | 10 | THE COURT:  Sustained.                                       |
| 09:52 | 11 | BY MR. LENGYEL-LEAHU:                                         |
| 09:52 | 12 | Q.   Are you aware of any other devices that were previously |
|       | 13 | installed and collected later from these vehicles?           |
| 09:52 | 14 | MS. HEINZ:  Objection.  Law enforcement privilege.          |
| 09:52 | 15 | THE COURT:  Well, if you add "that he retrieved             |
|       | 16 | and downloaded," I'll allow the question.  In other words,   |
|       | 17 | it's law enforcement privilege.  If there are other devices  |
|       | 18 | inserted besides these two, it's law enforcement privilege.  |
| 09:52 | 19 | If you're asking if he retrieved any others in           |
|       | 20 | addition to these two, I'm gonna allow you to ask him.  I    |
|       | 21 | think he's answered that question, but...                    |
| 09:53 | 22 | BY MR. LENGYEL-LEAHU:                                         |
| 09:53 | 23 | Q.   Okay.  Are these the only three devices that you        |
|       | 24 | retrieved?                                                    |
| 09:53 | 25 | A.   I downloaded two of the devices -- the two types of     |

|         |    |                                                                        |
|---------|----|------------------------------------------------------------------------|
|         | 1  | devices, not the third one.                                            |
| 09:53   | 2  | Q.   Okay.  Because it was a duplicate of the other one?               |
| 09:53   | 3  | MS. HEINZ:  Objection.  Law enforcement privilege.                     |
| 09:53   | 4  | MR. LENGYEL-LEAHU:  I believe he testified                             |
|         | 5  | yesterday there was two devices in one vehicle and one                 |
|         | 6  | device in the other vehicle.                                           |
| 09:53   | 7  | THE COURT:  I think he did, too.  Overruled.                           |
| 09:53   | 8  | *(To the witness:)* You can answer that question.                      |
| 09:53   | 9  | THE WITNESS:  They're -- the third device is not a                     |
|         | 10 | device that is collected by, um, regular agents.                       |
| 09:53   | 11 | THE COURT:  And from that point forward, if                            |
|         | 12 | there's a privilege asserted, I'm going to sustain it.                 |
| 09:53   | 13 | MR. LENGYEL-LEAHU:  Okay.                                              |
| 09:53   | 14 | BY MR. LENGYEL-LEAHU:                                                   |
| 09:53   | 15 | Q.   What period of time was captured on the devices that              |
|         | 16 | you listened to?                                                       |
| 09:54   | 17 | A.   I would need to go back and look at the record to                 |
|         | 18 | refresh my memory.                                                     |
| 09:54   | 19 | Q.   Go ahead.                                                         |
| 09:54   | 20 | A.   What I focused on was two days in particular:                     |
|         | 21 | 5/15/2015 and 5/16/2015.                                               |
| 09:54   | 22 | Q.   That wasn't my question.  My question was what period             |
|         | 23 | of time was involved in the devices that you personally                |
|         | 24 | listened to?                                                           |
| 09:55   | 25 | A.   I can't remember the full period of time, sir.                    |

| | | |
|---|---|---|
| 09:55 | 1 | Q.   Did you make a report? |
| 09:55 | 2 | A.   I did not make a report, no. |
| 09:55 | 3 | Q.   Did you take any notes? |
| 09:55 | 4 | A.   I didn't -- I didn't take any notes, sir. |
| 09:55 | 5 | Q.   Is that standard FBI practice, to be working on an |
| | 6 | investigation and not take notes of your work and what you |
| | 7 | have accomplished? |
| 09:55 | 8 | A.   I, um -- you know, I was -- my task was to take a look |
| | 9 | at the transcripts of the recordings and also to review the |
| | 10 | recordings to see if the transcripts were accurate. |
| 09:55 | 11 | Q.   That wasn't my question, sir. |
| 09:55 | 12 | Is it standard FBI practice not to take notes of the |
| | 13 | work that you perform when doing an investigation? |
| 09:55 | 14 | A.   It would depend on the work, sir. |
| 09:55 | 15 | Q.   Okay.  These devices, do they capture all of the |
| | 16 | conversation in a car? |
| 09:56 | 17 | MS. HEINZ:  Objection.  Law enforcement privilege. |
| 09:56 | 18 | THE COURT:  Sustained. |
| 09:56 | 19 | BY MR. LENGYEL-LEAHU: |
| 09:56 | 20 | Q.   Which cars were involved in the bugging? |
| 09:56 | 21 | A.   There were three cars, sir. |
| 09:56 | 22 | Q.   Which three cars? |
| 09:56 | 23 | A.   There was a Toyota Camry and two Toyota Corollas. |
| 09:56 | 24 | Q.   Do you have an understanding as to the owner of the |
| | 25 | Camry? |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 09:57 | 1 | MS. HEINZ:  Objection.  Lack of foundation. |
| 09:57 | 2 | THE COURT:  Well, can you two stipulate to that? |
| | 3 | I mean, is this the turning point of the lawsuit? |
| 09:57 | 4 | Why don't you two have a little conference back |
| | 5 | here.  *(Indicating.)*  It might save a lot of time if there's |
| | 6 | any issue concerning the ownership of the Corolla. |
| 09:57 | 7 | *(Counsel confer.)* |
| 09:57 | 8 | THE COURT:  *(To the jury:)* Now, ladies and |
| | 9 | gentlemen, maybe they can't stipulate.  But if we can find |
| | 10 | out the -- through a stipulation, it'll save a lot of time. |
| 09:58 | 11 | And, Counsel, the time period may be in dispute. |
| | 12 | There may be changes of ownership.  I'm just not sure, |
| | 13 | but... |
| 09:58 | 14 | MR. LENGYEL-LEAHU:  I think we've come to an |
| | 15 | arrangement, Your Honor. |
| 09:58 | 16 | THE COURT:  Okay.  What's the arrangement between |
| | 17 | the two of -- |
| 09:58 | 18 | **STIPULATION** |
| 09:58 | 19 | MR. LENGYEL-LEAHU:  The Camry was the Badawi |
| | 20 | vehicle. |
| 09:58 | 21 | THE COURT:  All right.  Is that stipulated to? |
| 09:58 | 22 | MS. HEINZ:  Yes, Your Honor. |
| 09:58 | 23 | THE COURT:  All right. |
| 09:58 | 24 | THE WITNESS:  Yes. |
| 09:58 | 25 | THE COURT:  So the Toyota Camry is a Badawi |

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | vehicle.                                                     |
| 09:58   | 2  | MR. LENGYEL-LEAHU:  And the two Corollas were the            |
|         | 3  | Elhuzayel vehicles.                                          |
| 09:58   | 4  | MS. HEINZ:  Excuse me, Your Honor.  Could I just             |
|         | 5  | consult with Counsel?                                        |
| 09:58   | 6  | THE COURT:  Yeah.  Why don't you two talk one more           |
|         | 7  | time.                                                        |
| 09:58   | 8  | *(Counsel confer.)*                                          |
| 09:58   | 9  | MR. LENGYEL-LEAHU:  Correction.                              |
| 09:58   | 10 | The two Corollas were also owned by the Badawi               |
|         | 11 | family.                                                      |
| 09:59   | 12 | THE WITNESS:  Yes.                                           |
| 09:59   | 13 | BY MR. LENGYEL-LEAHU:                                        |
| 09:59   | 14 | Q.   In one of the conversations -- I believe it was         |
|         | 15 | 829.2 -- there was a reference that has been translated as   |
|         | 16 | *"Jesus, the son of Mary."*  Do you remember that reference? |
| 09:59   | 17 | A.   Yes.                                                    |
| 09:59   | 18 | Q.   Do you understand what that reference is to -- what     |
|         | 19 | person that's to?                                            |
| 09:59   | 20 | MS. HEINZ:  Objection.  Lack of foundation.                  |
| 09:59   | 21 | THE COURT:  Sustained.                                       |
| 09:59   | 22 | BY MR. LENGYEL-LEAHU:                                        |
| 09:59   | 23 | Q.   The discussions surrounding the statement *"Jesus, son* |
|         | 24 | *of Mary,"* were prophesies of the end of times; is that     |
|         | 25 | right?                                                       |

| | | |
|---|---|---|
| 09:59 | 1 | MS. HEINZ:  Objection.  Testifying. |
| 09:59 | 2 | THE COURT:  Sustained. |
| 09:59 | 3 | MR. LENGYEL-LEAHU:  Nothing further. |
| 10:00 | 4 | THE COURT:  Cross-examination, Ms. Corrigan? |
| 10:00 | 5 | MS. CORRIGAN:  If I might have a moment, |
| | 6 | Your Honor? |
| 10:00 | 7 | *(Defense and government counsel confer.)* |
| 10:00 | 8 | MS. CORRIGAN:  Your Honor, this is the issue that |
| | 9 | I brought up earlier.  And I think we're just going to |
| | 10 | stipulate.  I won't need to ask a question. |
| 10:00 | 11 | **STIPULATION** |
| 10:00 | 12 | MS. CORRIGAN:  But as to Exhibit 803.2, which is |
| | 13 | one of the recordings that was played, there's a stipulation |
| | 14 | that my client, Muhanad Badawi, was not a participate in |
| | 15 | that conversation. |
| 10:00 | 16 | THE COURT:  Is that stipulated to by the |
| | 17 | government? |
| 10:00 | 18 | MS. HEINZ:  Just to be clear:  He did not |
| | 19 | participate in the conversation, but he was in the vehicle. |
| 10:01 | 20 | MS. CORRIGAN:  Yes.  And that's the further part |
| | 21 | of the stipulation. |
| 10:01 | 22 | THE COURT:  So he was not a participant in the |
| | 23 | verbal conversation, but he was present in the vehicle; is |
| | 24 | that correct? |
| 10:01 | 25 | MS. CORRIGAN:  Correct. |

| | | |
|---|---|---|
| 10:01 | 1 | And the corrected transcript will be placed within |
| | 2 | the exhibits. |
| 10:01 | 3 | And I have nothing further. |
| 10:01 | 4 | THE COURT:  All right. |
| 10:01 | 5 | *(To the jury:)* So a stipulation is a binding |
| | 6 | agreement; in other words, that's a conclusive piece of |
| | 7 | evidence that you're to consider. |
| 10:01 | 8 | Then, Counsel, are there questions on redirect? |
| 10:01 | 9 | MS. HEINZ:  No, Your Honor. |
| 10:01 | 10 | THE COURT:  Sir, you may step down.  We're going |
| | 11 | to ask you to remain available, though.  The lawsuit will |
| | 12 | conclude as early as this Thursday, and as late as Friday. |
| 10:01 | 13 | Thank you very much, sir. |
| 10:01 | 14 | THE WITNESS:  Thank you, sir. |
| 10:01 | 15 | *(Witness steps down.)* |
| 10:01 | 16 | THE COURT:  Counsel, if you'd like to call your |
| | 17 | next witness, please. |
| 10:01 | 18 | I'm sorry.  Not the "lawsuit."  I'm sorry.  The |
| | 19 | evidence in the matter. *(Verbatim.)* |
| 10:01 | 20 | MS. ELIOT:  Your Honor, the government calls |
| | 21 | Special Agent David Gates. |
| 10:02 | 22 | THE COURT:  Thank you. |
| 10:02 | 23 | Thank you, sir.  If you'd be kind enough to step |
| | 24 | between the double doors, Agent Gates.  And would you raise |
| | 25 | your right hand, please. |

| | | |
|---|---|---|
| 10:02 | 1 | **DAVID GATES, CALLED BY THE GOVERNMENT, SWORN** |
| 10:02 | 2 | THE WITNESS:  Yes. |
| 10:02 | 3 | THE COURT:  Thank you. |
| 10:02 | 4 | If you would walk along this black railing.  The |
| | 5 | entrance to the jury *(sic)* box is to my left.  It's closest |
| | 6 | to the wall. |
| 10:02 | 7 | THE WITNESS:  Yes, sir. |
| 10:02 | 8 | THE COURT:  If you would be seated, sir. |
| 10:02 | 9 | THE WITNESS:  Thank you. |
| 10:02 | 10 | THE COURT:  After you're comfortably seated, would |
| | 11 | you face the jury.  Would you state your full name and spell |
| | 12 | your last, please. |
| 10:02 | 13 | THE WITNESS:  My name is David Gates, G-A-T-E-S. |
| 10:02 | 14 | THE COURT:  Thank you. |
| 10:02 | 15 | Direct examination by the government. |
| 10:02 | 16 | MS. ELIOT:  Thank you, Your Honor. |
| 10:02 | 17 | **DIRECT EXAMINATION** |
| 10:02 | 18 | BY MS. ELIOT: |
| 10:02 | 19 | Q.   Good morning.  What do you do for a living? |
| 10:02 | 20 | A.   I'm an FBI Special Agent. |
| 10:02 | 21 | Q.   How long have you been a Special Agent with the FBI? |
| 10:02 | 22 | A.   A little bit over 13 years. |
| 10:03 | 23 | Q.   Where are you currently assigned? |
| 10:03 | 24 | A.   I'm assigned to the FBI's office at LAX or Los Angeles |
| | 25 | International Airport. |

| | | |
|---|---|---|
| 10:03 | 1 | Q. How long have you been assigned at LAX? |
| 10:03 | 2 | A. Almost twelve years.  Most of my career. |
| 10:03 | 3 | Q. Where were you on May 21st, 2015, at approximately 4:25 |
| | 4 | in the afternoon? |
| 10:03 | 5 | A. I was at LAX, working. |
| 10:03 | 6 | Q. Were you involved in the arrest of one of the |
| | 7 | defendants in this case? |
| 10:03 | 8 | A. Yes. |
| 10:03 | 9 | Q. Can you describe the person who was arrested at LAX on |
| | 10 | that date? |
| 10:03 | 11 | A. His name was Mr. Elhuzayel.  Um, young male. |
| 10:03 | 12 | Q. And where -- did you make contact with him that day? |
| 10:03 | 13 | A. I did. |
| 10:03 | 14 | Q. And where did you make contact with him at LAX? |
| 10:03 | 15 | A. At the Tom Bradley International Terminal, directly |
| | 16 | behind TSA screening -- or the Transportation Security |
| | 17 | Administration -- screening point at the Tom Bradley |
| | 18 | terminal. |
| 10:03 | 19 | MS. ELIOT:  If we could display on the screen |
| | 20 | Government's Exhibit 1005 in evidence. |
| 10:04 | 21 | THE COURT:  1005.  Thank you. |
| 10:04 | 22 | MS. ELIOT:  Special Agent Gates, we're now showing |
| | 23 | you a video clip on the screen before you.  If you could |
| | 24 | watch that and we'll discuss it in a moment. |
| 10:04 | 25 | *(Video recording played.)* |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:04 | 1 | MS. ELIOT:  If we could pause the video for a |
| | 2 | moment, please. |
| 10:04 | 3 | BY MS. ELIOT: |
| 10:04 | 4 | Q.   Do you recognize the persons depicted on the screen? |
| 10:04 | 5 | A.   Yes. |
| 10:04 | 6 | Q.   And who do you recognize? |
| 10:04 | 7 | A.   I recognize me. |
| 10:04 | 8 | Q.   Where are you standing?  On the left or the right? |
| 10:04 | 9 | A.   I'm on the left, in the suit, with no tie. |
| 10:04 | 10 | Q.   And who is the person that you're standing beside? |
| 10:04 | 11 | A.   That's Mr. Elhuzayel. |
| 10:04 | 12 | Q.   And this is near the TSA checkpoint? |
| 10:04 | 13 | A.   It's -- yes, this is directly where people finish their |
| | 14 | screening process, so it's right there. |
| 10:04 | 15 | Q.   And what did you do when Defendant Elhuzayel approached |
| | 16 | the checkpoint where you were? |
| 10:05 | 17 | A.   Well, you mean, when I approached him? |
| 10:05 | 18 | Q.   Yes. |
| 10:05 | 19 | A.   I talked to him briefly.  In my left hand is his |
| | 20 | boarding pass, and I believe it's his passport also. |
| 10:05 | 21 | MS. ELIOT:  If we could now place before the |
| | 22 | witness what has been marked as Government's Exhibit 604. |
| 10:05 | 23 | THE COURT:  Has this exhibit been received? |
| 10:05 | 24 | MS. ELIOT:  No, Your Honor. |
| 10:05 | 25 | THE COURT:  Okay.  Thank you. |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

39

| | | |
|---|---|---|
| 10:05 | 1 | *(Exhibit provided to the witness.)* |
| 10:05 | 2 | BY MS. ELIOT: |
| 10:05 | 3 | Q.   Do you recognize this exhibit? |
| 10:05 | 4 | A.   Yes.  It's a boarding pass. |
| 10:05 | 5 | Q.   Is it the boarding pass that you have in your hand on |
| | 6 | the screen? |
| 10:05 | 7 | A.   Yes. |
| 10:05 | 8 | MS. ELIOT:  Your Honor, at this time the |
| | 9 | government moves to admit Exhibit 604 into evidence. |
| 10:05 | 10 | THE COURT:  Any objection? |
| 10:05 | 11 | Mr. Lengyel-Leahu? |
| 10:05 | 12 | MR. LENGYEL-LEAHU:  No.  Thank you, Your Honor. |
| 10:05 | 13 | THE COURT:  Ms. Corrigan? |
| 10:05 | 14 | MS. CORRIGAN:  No, Your Honor.  Thank you. |
| 10:05 | 15 | THE COURT:  Received. |
| 10:05 | 16 | *(Exhibit No. 604 received in evidence.)* |
| 10:05 | 17 | MS. ELIOT:  Thank you, Your Honor. |
| 10:05 | 18 | BY MS. ELIOT: |
| 10:05 | 19 | Q.   What is the name of the passenger on the boarding pass? |
| 10:05 | 20 | A.   Nader Elhuzayel. |
| 10:05 | 21 | Q.   And what is the airline and flight number? |
| 10:06 | 22 | A.   It's Turkish Airlines Flight 10. |
| 10:06 | 23 | Q.   And what is the initial destination listed on the |
| | 24 | boarding pass? |
| 10:06 | 25 | A.   It's Istanbul. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:06 | 1 | MS. ELIOT:  I have no further questions, |
| | 2 | Your Honor. |
| 10:06 | 3 | THE COURT:  Cross-examination, Mr. Lengyel-Leahu. |
| 10:06 | 4 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 10:06 | 5 | **CROSS-EXAMINATION** |
| 10:06 | 6 | BY MR. LENGYEL-LEAHU: |
| 10:06 | 7 | Q.   Where's the final destination? |
| 10:06 | 8 | A.   On the boarding pass it says, "Istanbul." |
| 10:06 | 9 | Q.   Just says "Istanbul" on the boarding pass? |
| 10:06 | 10 | A.   That's correct. |
| 10:06 | 11 | Q.   Flight 10 goes on to Tel Aviv? |
| 10:06 | 12 | A.   No. |
| 10:06 | 13 | MR. LENGYEL-LEAHU:  Thank you. |
| 10:06 | 14 | THE COURT:  Cross-examination, Ms. Corrigan. |
| 10:06 | 15 | MS. CORRIGAN:  No, Your Honor. |
| 10:06 | 16 | THE COURT:  Redirect by the government? |
| 10:06 | 17 | MS. ELIOT:  Nothing, Your Honor.  Thank you. |
| 10:06 | 18 | THE COURT:  All right. |
| 10:06 | 19 | Thank you, sir.  We're going to ask you to remain |
| | 20 | on call.  I doubt that you'll be called back to court, but |
| | 21 | it's in an effort to save additional subpoenas. |
| 10:06 | 22 | THE WITNESS:  Yes, sir. |
| 10:06 | 23 | THE COURT:  Thank you, sir. |
| 10:06 | 24 | Counsel, call your next witness, please. |
| 10:06 | 25 | THE WITNESS:  Sir, do I leave this here. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

41

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | *(Indicating.)*                                              |
| 10:06 | 2  | THE COURT:  Please just leave that on the ledge.             |
| 10:06 | 3  | *(Witness steps down.)*                                       |
| 10:07 | 4  | MS. HEINZ:  The government calls Jason Ghetian.              |
| 10:07 | 5  | THE COURT:  Thank you, sir.  Would you be kind               |
|       | 6  | enough to raise your right hand, please.                     |
| 10:07 | 7  | **JASON GHETIAN, CALLED BY THE GOVERNMENT, SWORN**           |
| 10:07 | 8  | THE WITNESS:  I do.                                           |
| 10:07 | 9  | THE COURT:  Thank you, sir.  Would you be kind               |
|       | 10 | enough to walk along the side of the jury railing.  There's  |
|       | 11 | a black curtain, and the entrance to the witness box is      |
|       | 12 | closest to the wall.                                         |
| 10:07 | 13 | And after you're comfortably seated, would you               |
|       | 14 | state your name for the jury, please, and spell your last.   |
| 10:07 | 15 | THE WITNESS:  My name is Jason Timothy Ghetian,             |
|       | 16 | G-H-E-T-I-A-N.                                                |
| 10:07 | 17 | THE COURT:  Thank you.                                        |
| 10:07 | 18 | And this would be direct examination by Ms. Heinz            |
|       | 19 | on behalf of the government.                                 |
| 10:07 | 20 | **DIRECT EXAMINATION**                                       |
| 10:07 | 21 | BY MS. HEINZ:                                                 |
| 10:07 | 22 | Q.   Special Agent Ghetian, where are you employed?         |
| 10:07 | 23 | A.   With the FBI.                                            |
| 10:07 | 24 | Q.   And how long have you been employed with the FBI?      |
| 10:07 | 25 | A.   About 12 and a half years.                              |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

42

| | | |
|---|---|---|
| 10:07 | 1 | Q.   And what is your position? |
| 10:08 | 2 | A.   I'm a Special Agent. |
| 10:08 | 3 | Q.   What is your current assignment? |
| 10:08 | 4 | A.   I investigate counterterrorism cases in Orange County. |
| 10:08 | 5 | Q.   Okay.  And you're based in Orange County? |
| 10:08 | 6 | A.   I am. |
| 10:08 | 7 | Q.   All right.  On May 21st, 2015, did you inventory what |
| | 8 | was on Defendant Elhuzayel's person at the time of his |
| | 9 | arrest? |
| 10:08 | 10 | A.   I did. |
| 10:08 | 11 | Q.   Okay.  And would you look around the courtroom and see |
| | 12 | if you see that person, Mr. Elhuzayel, the person who you |
| | 13 | inventoried his personal possessions -- would you look |
| | 14 | around the courtroom and see if you see him? |
| 10:08 | 15 | A.   I do. |
| 10:08 | 16 | Q.   Okay.  Would you point out where he's sitting? |
| 10:08 | 17 | A.   He's sitting at the defense counsel's table. |
| | 18 | *(Indicating.)* |
| 10:08 | 19 | Q.   Would you describe what he's wearing? |
| 10:08 | 20 | A.   Wearing a dark suit with -- appears to be a maroon tie. |
| 10:08 | 21 | MS. HEINZ:  Your Honor, may the record reflect |
| | 22 | that the witness has identified Defendant Elhuzayel? |
| 10:09 | 23 | THE COURT:  The record will reflect that the |
| | 24 | witness has identified the defendant, Mr. Elhuzayel. |
| | 25 | |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

43

| | | |
|---|---|---|
| 10:09 | 1 | BY MS. HEINZ: |
| 10:09 | 2 | Q.   When you inventoried the items that were on |
| | 3 | Mr. Elhuzayel's person on May 21st, 2015, would you please |
| | 4 | tell us what they were? |
| 10:09 | 5 | A.   Yes.  He had $1,016 in U.S. currency.  He had a brand |
| | 6 | new iPhone 6.  He had a wallet filled with a bunch of credit |
| | 7 | cards.  He had a U.S. Passport. |
| 10:09 | 8 | MS. HEINZ:  All right.  Would you please place |
| | 9 | before the witness what has been marked as Government's |
| | 10 | Exhibits 610, 605, 623, and 624. |
| 10:10 | 11 | (Exhibits provided to the witness.) |
| 10:10 | 12 | BY MS. HEINZ: |
| 10:10 | 13 | Q.   Would you please look at what's been marked as |
| | 14 | Government's Exhibit 610. |
| 10:10 | 15 | What is Government's Exhibit 610? |
| 10:10 | 16 | A.   It's an iPhone 6. |
| 10:10 | 17 | Q.   Would you please look at what has been marked as |
| | 18 | Government's Exhibit 605. |
| 10:10 | 19 | What is Government's Exhibit 605? |
| 10:10 | 20 | A.   It's a U.S. Passport. |
| 10:10 | 21 | Q.   What is the name on the U.S. Passport? |
| 10:10 | 22 | A.   May I open it? |
| 10:10 | 23 | Q.   Yes. |
| 10:11 | 24 | A.   It's the passport from Nader Salem Elhuzayel. |
| 10:11 | 25 | Q.   Please look at what's been marked as Government's |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

44

|  |  |  |
|---|---|---|
|  | 1 | Exhibit 623. |
| 10:11 | 2 | What is Government's Exhibit 623? |
| 10:11 | 3 | A.   It's a photograph of the U.S. currency found in the |
|  | 4 | possession of Nader Elhuzayel on May 21st, 2015. |
| 10:11 | 5 | Q.   Please look at what's been marked as Government's |
|  | 6 | Exhibit 624. |
| 10:11 | 7 | What is Government's Exhibit 624? |
| 10:11 | 8 | A.   It is a photograph of the credit cards and other |
|  | 9 | items -- driver's license -- found in the wallet of Nader |
|  | 10 | Elhuzayel on May 21st, 2015. |
| 10:11 | 11 | MS. HEINZ:  Your Honor, the government moves into |
|  | 12 | evidences Government's Exhibit 610, 605, 623 and 624. |
| 10:12 | 13 | THE COURT:  Any objection? |
| 10:12 | 14 | MR. LENGYEL-LEAHU:  No, Your Honor. |
| 10:12 | 15 | THE COURT:  Ms. Corrigan? |
| 10:12 | 16 | MS. CORRIGAN:  No, Your Honor. |
| 10:12 | 17 | THE COURT:  610 is received. |
| 10:12 | 18 | *(Exhibit No. 610 received in evidence.)* |
| 10:12 | 19 | THE COURT:  605 is received. |
| 10:12 | 20 | *(Exhibit No. 605 received in evidence.)* |
| 10:12 | 21 | THE COURT:  623 is received. |
| 10:12 | 22 | *(Exhibit No. 623 received in evidence.)* |
| 10:12 | 23 | THE COURT:  624 is received. |
| 10:12 | 24 | *(Exhibit No. 624 received in evidence.)* |
|  | 25 |  |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

45

| | | |
|---|---|---|
| 10:12 | 1 | MS. HEINZ:  Would you please display Government's |
| | 2 | Exhibit 623. |
| 10:13 | 3 | (Photograph displayed.) |
| 10:13 | 4 | BY MS. HEINZ: |
| 10:13 | 5 | Q.   Okay.  Directing your attention to what is being |
| | 6 | displayed right now, which is Government's Exhibit 623 -- |
| 10:14 | 7 | I'm sorry, is there a problem? |
| 10:14 | 8 | A.   Yes.  That's Exhibit 624. |
| 10:14 | 9 | Q.   Excuse me.  So looking at Government's Exhibit 624. |
| | 10 | Okay?  Approximately how many credit cards did |
| | 11 | Defendant Elhuzayel have at the time of his arrest? |
| 10:14 | 12 | A.   It's hard to tell what's a credit or debit card, but |
| | 13 | approximately nine. |
| 10:14 | 14 | Q.   Now I'm going to show you what's been marked as |
| | 15 | Government's Exhibit 623. |
| 10:14 | 16 | (Photograph displayed.) |
| 10:14 | 17 | BY MS. HEINZ: |
| 10:14 | 18 | Q.   So is Government's Exhibit -- what is Government's |
| | 19 | Exhibit 623, once again? |
| 10:15 | 20 | A.   It is the U.S. currency found in the possession of |
| | 21 | Nader Elhuzayel on May 21st, 2015, in the amount of $1,016. |
| 10:15 | 22 | Q.   On May 21st, 2015, did you interview |
| | 23 | Defendant Elhuzayel? |
| 10:15 | 24 | A.   I did. |
| 10:15 | 25 | Q.   And when you interviewed Defendant Elhuzayel on |

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | May 21st, 2015, where were you?                        |
| 10:15 | 2  | A.   I was at the Los Angeles International Airport.    |
| 10:15 | 3  | Q.   Did you interview him by yourself?                |
| 10:15 | 4  | A.   No, I did not.                                    |
| 10:15 | 5  | Q.   At the time of the interview, had Defendant Elhuzayel |
|       | 6  | been arrested?                                         |
| 10:15 | 7  | A.   He had.  Well, I placed him under arrest.         |
| 10:15 | 8  | Q.   Did you advise him of his *Miranda* rights?       |
| 10:15 | 9  | A.   I did.                                            |
| 10:15 | 10 | Q.   After you advised him of his *Miranda* rights, did he |
|       | 11 | agree to talk to you?                                  |
| 10:16 | 12 | A.   He did.                                           |
| 10:16 | 13 | Q.   Please look at what's been marked as Government's |
|       | 14 | Exhibits 1016 and 1016-A.                              |
| 10:16 | 15 |      *(Exhibits provided to the witness.)*             |
| 10:16 | 16 | BY MS. HEINZ:                                          |
| 10:16 | 17 | Q.   What is Government's Exhibit 1016?                |
| 10:16 | 18 | A.   Government's Exhibit 1016 is a selection *(verbatim)* of |
|       | 19 | the interview that was conducted by myself and Special Agent |
|       | 20 | Scott Wales on May 21st, 2016 *(sic)*.                 |
| 10:16 | 21 | Q.   Is it a recording?                                |
| 10:16 | 22 | A.   It is.  It's an audio and video recording of that |
|       | 23 | section.                                               |
| 10:16 | 24 | Q.   And what is Government's Exhibit 1016-A?          |
| 10:16 | 25 | A.   It is the transcript from that section of the    |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | audio-video recording.                                           |
| 10:16 | 2  | Q.   And have you reviewed both of these?                        |
| 10:16 | 3  | A.   I have.                                                     |
| 10:16 | 4  | Q.   How do you know that?                                       |
| 10:17 | 5  | A.   Because I initialed the disc with -- dated "June 12,        |
|       | 6  | 2016" and my initials after I reviewed it.                       |
| 10:17 | 7  | Q.   Do Government's Exhibits 1016 and 1016-A accurately         |
|       | 8  | depict part of the interview of Defendant Elhuzayel on          |
|       | 9  | May 21st, 2015?                                                  |
| 10:17 | 10 | A.   They do.                                                    |
| 10:17 | 11 |          MS. HEINZ:  Your Honor, move into evidence             |
|       | 12 | Government's Exhibits 1016 and 1016-A.                            |
| 10:17 | 13 |             THE COURT:  Any objection?                          |
| 10:17 | 14 |       Mr. Lengyel-Leahu?                                         |
| 10:17 | 15 |          MR. LENGYEL-LEAHU:  No objection, Your Honor.          |
| 10:17 | 16 |          MS. CORRIGAN:   *(No response.)*                       |
| 10:17 | 17 |          THE COURT:  1016, 1016-A are received.                |
| 10:17 | 18 |       *(Exhibit No. 1016 received in evidence.)*                |
| 10:17 | 19 |       *(Exhibit No. 1016-A received in evidence.)*             |
| 10:17 | 20 |          MS. HEINZ:  Please play Government's Exhibit 1016.     |
| 10:17 | 21 |       *(Video recording played, not reported.)*                |
| 10:17 | 22 |       *(Transcript displayed.)*                                 |
| 10:18 | 23 | BY MS. HEINZ:                                                    |
| 10:18 | 24 | Q.   Special Agent Ghetian, the clip that we just watched,      |
|       | 25 | which is Government's Exhibit 1016, approximately how far       |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | into the interview was -- were those statements made?    |
| 10:19 | 2  | A.   It was toward the beginning of the interview.       |
| 10:19 | 3  | Q.   Okay.  Could you please look at what's been marked as |
|       | 4  | Government's Exhibit 1020 and 1020-A.                     |
| 10:19 | 5  | *(Exhibits provided to the witness.)*                    |
| 10:19 | 6  | BY MS. HEINZ:                                             |
| 10:19 | 7  | Q.   What is Government's Exhibit 1020?                   |
| 10:19 | 8  | A.   Government's Exhibit 1020 is a CD containing a       |
|       | 9  | selection from -- containing the audio-video of the      |
|       | 10 | May 21st, 2015, interview of Nader Elhuzayel.            |
| 10:19 | 11 | Q.   Have you reviewed Government's Exhibit 1020?         |
| 10:19 | 12 | A.   I have.                                              |
| 10:19 | 13 | Q.   How do you know that?                                |
| 10:19 | 14 | A.   I initialed it and dated it "June 12th, 2016."      |
| 10:19 | 15 | Q.   Okay.  And what is Government's Exhibit 1020-A?      |
| 10:20 | 16 | A.   It is the transcript from that selection.           |
| 10:20 | 17 | Q.   And have you also reviewed that?                     |
| 10:20 | 18 | A.   I have.                                              |
| 10:20 | 19 | Q.   Do Government's Exhibits 1020 and 1020-A accurately  |
|       | 20 | depict part of the interview of Defendant Elhuzayel on   |
|       | 21 | May 21st, 2015?                                           |
| 10:20 | 22 | A.   They do.                                             |
| 10:20 | 23 |       MS. HEINZ:  Your Honor, move into evidence          |
|       | 24 | Government's Exhibits 1020 and 1020-A.                    |
| 10:20 | 25 |       THE COURT:  All right.  Thank you.                  |

10:20    1              And, Counsel, any objection?

10:20    2              Mr. Lengyel-Leahu.

10:20    3              MR. LENGYEL-LEAHU:  No, Your Honor.

10:20    4              THE COURT:  None from Mr. Lengyel-Leahu.

10:20    5              Ms. Corrigan?

10:20    6              MS. CORRIGAN:  No, Your Honor.

10:20    7              THE COURT:  1020 and 1020-A are received.

10:20    8          *(Exhibit Nos. 1020 and 1020-A received in*

         9      *evidence.)*

10:20   10              THE COURT:  You may play those, Counsel.

10:20   11          *(Video recording played, not reported.)*

10:20   12          *(Transcript displayed.)*

10:22   13   BY MS. HEINZ:

10:22   14   Q.   Special Agent Ghetian, did Defendant Elhuzayel talk to

        15   you about his plan to marry Enas during the interview?

10:22   16   A.   He did.

10:22   17   Q.   What did he say about that?

10:22   18   A.   He -- at first, in the beginning of the interview, he

        19   said that was his plan; but then, after he apologized for

        20   lying, he then told us the real story, which was he felt it

        21   was too complicated of a plan to go to Palestine, marry

        22   Enas, and then go to the Islamic State.

10:22   23        She -- according to him, she had had her passport taken

        24   away, she was under surveillance, he would have to meet her

        25   family, and he just thought it'd be too complicated.  So he

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | decided just to go to the Islamic State during his layover   |
|          | 2  | from Istanbul.                                               |
| 10:23    | 3  | Q.   And did he say anything about his expectations of       |
|          | 4  | getting married when he reached the Islamic State?           |
| 10:23    | 5  | A.   He did.                                                 |
| 10:23    | 6  | Q.   What did he say?                                        |
| 10:23    | 7  | A.   His expectation is that he would get four wifes once    |
|          | 8  | arriving in the Islamic State.                               |
| 10:23    | 9  | MS. HEINZ:  Nothing further.                                 |
| 10:23    | 10 | THE COURT:  Cross-examination.                               |
| 10:23    | 11 | Mr. Lengyel-Leahu?                                           |
| 10:23    | 12 | MR. LENGYEL-LEAHU:  Thank you, Your Honor.                   |
| 10:23    | 13 | **CROSS-EXAMINATION**                                        |
| 10:23    | 14 | BY MR. LENGYEL-LEAHU:                                        |
| 10:23    | 15 | Q.   Good morning.                                           |
| 10:23    | 16 | A.   Good morning, sir.                                      |
| 10:24    | 17 | Q.   He didn't change the story about getting married until  |
|          | 18 | after you and your partner brought up the notion that his    |
|          | 19 | family would be involved; is that correct?                   |
| 10:24    | 20 | A.   That is accurate.                                       |
| 10:24    | 21 | Q.   In fact, I don't remember if it was you or Agent Wales  |
|          | 22 | that mentioned that his mother and his brother, Husam, could |
|          | 23 | be investigated and arrested for kiting checks.              |
| 10:24    | 24 | A.   We made no mention of them being arrested.  What we     |
|          | 25 | talked about is, if he didn't want to tell the truth, that   |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

51

```
            1    puts the FBI in a position where we have to investigate
            2    further.  So if he can't tell us what happened, we have to
            3    interview more people.
10:25       4        So, in a sense, I gave 'em our investigative strategy,
            5    which is, "We will have to talk to more people, like your
            6    family, like your fiancée."
10:25       7    Q.    And at that time he was personally under arrest?
10:25       8    A.    Yes, sir.
10:25       9    Q.    So when you mentioned to him that you were gonna have
           10    to talk to his family, you didn't say that you weren't going
           11    to arrest him, did you?
10:25      12    A.    No.  I did not tell him I was not going to arrest him.
10:25      13    Q.    Okay.  And you specifically used the expression "kiting
           14    checks" and "stolen checks" to him.
10:25      15    A.    I did, sir.
10:25      16    Q.    Okay.  And you didn't leave it at that.  You also
           17    brought in his sisters and his father; correct?
10:25      18    A.    Yes, I did, but in the context of interviewing them.
           19    So I explained to him, when people engage of violations of
           20    federal law, oftentimes, they don't think about how that's
           21    gonna affect their family; that family is gonna have to be
           22    interviewed --
10:26      23            MR. LENGYEL-LEAHU:  Your Honor, move to strike.
           24    There's no question pending on this.
10:26      25            THE COURT:  Overruled.
```

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

52

10:26   1           *(To the witness:)* Finish your question, sir.

10:26   2           THE WITNESS:  That when they engage in these

3   criminal activities, oftentimes the investigation does drag

4   in their family.  The family have *(sic)* to be questioned.

5   It puts them in a bad position where they don't wanna say

6   anything to hurt their family or friends, but it's against

7   the law to lie to us, and --

10:26   8           THE COURT:  Thank you.

10:26   9           Counsel, your next question.

10:26  10           MR. LENGYEL-LEAHU:  Thank you, Your Honor.

10:26  11  BY MR. LENGYEL-LEAHU:

10:26  12  Q.   And you were the one, I believe, that told him that, if

13  he didn't cooperate, you're next phone call was to Israeli

14  intelligence?

10:26  15  A.   Sir, maybe not my next phone call, but I would say I'd

16  be forced to have to contact them to interview Enas Khattab

17  about her relationship with Nader Elhuzayel.

10:27  18  Q.   Because you said you weren't gonna go over there

19  yourself.  You were gonna call them.

10:27  20  A.   Oftentimes in the FBI --

10:27  21  Q.   Is that true, sir?

10:27  22  A.   Say it again?

10:27  23  Q.   Yes or no?  Yes or no?

10:27  24           THE COURT:  Now, just a moment.

10:27  25           Repeat the question.

| | | |
|---|---|---|
| 10:27 | 1 | BY MR. LENGYEL-LEAHU: |
| 10:27 | 2 | Q.   You told him that if he didn't cooperate, your next |
| | 3 | call was to Israeli intelligence.  Yes or no? |
| 10:27 | 4 | A.   I don't believe it was my next call, sir. |
| 10:27 | 5 | Q.   No.  I said the words you told him -- the words you |
| | 6 | told my client is that if he didn't cooperate, your next |
| | 7 | call was to Israeli intelligence. |
| 10:27 | 8 | A.   Sir, if I had that part of the transcript maybe -- what |
| | 9 | I'm saying is I'm not sure if I said "My next call," or I |
| | 10 | would contact Israeli intelligence.  But, yes, I did say I |
| | 11 | would contact -- |
| 10:27 | 12 | Q.   Your intent was that they would pick her up to question |
| | 13 | her; is that right? |
| 10:27 | 14 | A.   Sir, I wouldn't say "to pick her up," but to interview |
| | 15 | her. |
| 10:27 | 16 | Q.   Okay.  And you knew she was previously arrested? |
| 10:27 | 17 | A.   I did, sir. |
| 10:27 | 18 | Q.   Okay.  So she's a real person; right? |
| 10:28 | 19 | A.   Yes, sir, she is. |
| 10:28 | 20 | Q.   She really does live over there? |
| 10:28 | 21 | A.   At that time my information was that she did. |
| 10:28 | 22 | Q.   Okay.  Were you part of the team that was investigating |
| | 23 | my client during the spring and early summer of 2015? |
| 10:28 | 24 | A.   Yes, sir, I was. |
| 10:28 | 25 | Q.   So you're aware of the evidence in this case? |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

54

| | | |
|---|---|---|
| 10:28 | 1 | A.    Some of it, sir. |
| 10:28 | 2 | Q.    You're aware of the communications between my client |
| | 3 | and this Enas person over there in Palestine? |
| 10:28 | 4 | A.    Yes, sir.  Most of them. |
| 10:28 | 5 | Q.    So you're aware of the fact that they did have a plan |
| | 6 | to get married? |
| 10:28 | 7 | A.    Yes, sir.  They did. |
| 10:28 | 8 | Q.    Okay.  You were the one that questioned him regarding |
| | 9 | his contacts in the Middle East; correct? |
| 10:28 | 10 | A.    Yes, sir, I was. |
| 10:28 | 11 | Q.    And you were the one that told him that, *"It's a war* |
| | 12 | *zone, and you can't just walk into the middle of a war* |
| | 13 | *zone"*; correct? |
| 10:29 | 14 | A.    That sounds right, sir. |
| 10:29 | 15 | Q.    In fact, you said, *"I can't, you can't, nobody can* |
| | 16 | *without a contact."* |
| 10:29 | 17 |     Who is his contact?  Those -- your words; right? |
| 10:29 | 18 | A.    Yes, sir. |
| 10:29 | 19 | Q.    And he didn't have an actual contact, did he?  In fact, |
| | 20 | we just heard the part of the transcript where he says, *"I* |
| | 21 | *was going to get there and get a Surespot and find* |
| | 22 | *somebody."* |
| 10:29 | 23 | A.    Sir, I believe he said, *"Lots of people."*  He had lots |
| | 24 | of people, lots of contacts. |
| 10:29 | 25 | Q.    Because anybody that would respond to him is a |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | potential contact.                                                 |
| 10:29 | 2  | THE COURT:  A question.  Is that a question?                       |
| 10:29 | 3  | MR. LENGYEL-LEAHU:  Yes.  That should have a                       |
|       | 4  | question mark at the end of it.                                    |
| 10:29 | 5  | THE COURT:  Ask it again.                                          |
| 10:29 | 6  | BY MR. LENGYEL-LEAHU:                                               |
| 10:29 | 7  | Q.   Because he was expecting someone to respond to him;           |
|       | 8  | correct?                                                           |
| 10:29 | 9  | A.   Was -- sir, are you asking was he expecting somebody'd        |
|       | 10 | respond to him if he reached out to some of these contacts         |
|       | 11 | on social media?                                                   |
| 10:29 | 12 | Q.   Correct.                                                      |
| 10:29 | 13 | A.   Yes.                                                          |
| 10:30 | 14 | Q.   Okay.  But he didn't have a name of anybody specific,         |
|       | 15 | did he?                                                            |
| 10:30 | 16 | A.   No, sir.  He did not provide a specific contact.             |
| 10:30 | 17 | Q.   And in all the communications that you reviewed, prior        |
|       | 18 | to his going to the airport, there is no nobody -- there is        |
|       | 19 | not one single communication from any person that said,           |
|       | 20 | *"Once you get here, hit me up.  Contact me and I can help*        |
|       | 21 | *you."*                                                            |
| 10:30 | 22 | A.   That is true, sir.                                            |
| 10:31 | 23 | THE COURT:  You want to just bring that up to the                 |
|       | 24 | side of the witness box.                                           |
| 10:31 | 25 | UNIDENTIFIED SPEAKER:  Yes, sir.                                   |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

56

| | | |
|---|---|---|
| 10:31 | 1 | THE COURT:  Thank you very much. |
| 10:32 | 2 | If you wouldn't mind, just remain at that location. |
| 10:32 | 3 | All right. |
| 10:32 | 4 | Counsel, your question, please. |
| 10:32 | 5 | MR. LENGYEL-LEAHU:  More of a demonstration, |
| | 6 | Your Honor. |
| 10:32 | 7 | THE COURT:  A demonstration? |
| 10:32 | 8 | We're not going to have a demonstration, Counsel. |
| 10:32 | 9 | Thank you. |
| 10:32 | 10 | BY MR. LENGYEL-LEAHU: |
| 10:32 | 11 | Q.   Were you present when the contents of his luggage was |
| | 12 | inventoried? |
| 10:32 | 13 | A.   Yes, sir, I was. |
| 10:32 | 14 | Q.   And all of this evidence was taken into the custody of |
| | 15 | the FBI? |
| 10:32 | 16 | A.   Yes, sir, it was. |
| 10:32 | 17 | Q.   And it's remained in the FBI custody all that -- all |
| | 18 | that period of time; right? |
| 10:32 | 19 | A.   Sir, I'd have to look at the chain of custody.  My |
| | 20 | belief, sir, is, yes, it has been in the custody of the FBI |
| | 21 | this entire time. |
| 10:32 | 22 | Q.   Tagged, sealed, put in an evidence locker somewhere? |
| 10:32 | 23 | A.   I think we had a room where we kept all of our |
| | 24 | evidence.  But there's a point before trial where, I think, |
| | 25 | it came over to United States Attorney's Office.  But |

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | without the chain'a custody, I would not be able to testify        |
|       | 2  | to that 'cause I've not reviewed that.                             |
| 10:33 | 3  | Q.   Okay.  So nothing's been added to it or taken out of         |
|       | 4  | it?                                                                |
| 10:33 | 5  | A.   Oh.  No, sir.  Well, wait.                                   |
| 10:33 | 6  |     Are you saying nothing's been taken out of -- well, when      |
|       | 7  | we do the inventory of the evidence, some of the digital          |
|       | 8  | devices get segregated 'cause they have to go over to our         |
|       | 9  | Orange County Regional Forensic Laboratory to be analyzed.        |
|       | 10 | So that's the case.  But that's also annotated in the chain       |
|       | 11 | of custody log where that's split off into its own evidence       |
|       | 12 | item.                                                             |
| 10:33 | 13 | Q.   Could you look in the luggage and see if it's in the        |
|       | 14 | same condition it was in last time you saw it?                    |
| 10:33 | 15 |          THE WITNESS:  Yes, sir.  I looked at it last             |
|       | 16 | night.  Do you want "me look" at it right now?  *(Verbatim.)*    |
| 10:33 | 17 |          MR. LENGYEL-LEAHU:  Yes, please.                         |
| 10:33 | 18 |          THE COURT:  You can step off the stand or you can        |
|       | 19 | have it handed to you, either one.                               |
| 10:33 | 20 |          THE WITNESS:  Um, as a point, which may help the        |
|       | 21 | Court, I -- I reviewed it right before I came in here, so --     |
| 10:34 | 22 |          THE COURT:  Okay.                                        |
| 10:34 | 23 |          THE WITNESS:  -- do you want me to look at it            |
|       | 24 | again?                                                            |
| 10:34 | 25 |          MR. LENGYEL-LEAHU:  Yes, please.                         |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:34 | 1 | THE WITNESS:  Okay. |
| 10:34 | 2 | *(Witness steps down next to witness stand.)* |
| 10:34 | 3 | THE COURT:  So -- well, the first piece, so we |
| | 4 | know what you're looking at, is what? |
| 10:34 | 5 | THE WITNESS:  This is the carry-on piece of |
| | 6 | luggage that he had on his person on May 21st. |
| 10:34 | 7 | THE COURT:  And, Counsel, what exhibit number |
| | 8 | would that be? |
| 10:34 | 9 | MR. LENGYEL-LEAHU:  *(No response.)* |
| 10:34 | 10 | THE COURT:  Counsel? |
| 10:34 | 11 | MR. LENGYEL-LEAHU:  I guess we haven't had an |
| | 12 | exhibit number for it yet, Your Honor.  I guess the defense |
| | 13 | would like to mark it. |
| 10:34 | 14 | THE COURT:  Marked as? |
| 10:34 | 15 | MS. HEINZ:  It was admitted, Your Honor. |
| 10:34 | 16 | THE COURT:  It was received early on, Counsel. |
| | 17 | It's one of the first items received. |
| 10:34 | 18 | MR. LENGYEL-LEAHU:  I apologize. |
| 10:34 | 19 | THE COURT:  So what exhibit number is it, Counsel? |
| 10:34 | 20 | MR. LENGYEL-LEAHU:  I do not know. |
| 10:34 | 21 | UNIDENTIFIED SPEAKER:  606. |
| 10:34 | 22 | THE COURT:  606.  Thank you. |
| 10:34 | 23 | Counsel, 606. |
| 10:34 | 24 | MR. LENGYEL-LEAHU:  Thank you. |
| 10:34 | 25 | THE COURT:  Just so we have a record, he's looking |

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | at 606.                                                  |
| 10:34 | 2  | And your question is?                                    |
| 10:34 | 3  | BY MR. LENGYEL-LEAHU:                                     |
| 10:34 | 4  | Q.  Uh, could we see the contents of the luggage?        |
| 10:34 | 5  | A.  *(Displaying items:)* So, headphones.                |
| 10:35 | 6  | So, this is the case from an iPhone 6.                   |
| 10:35 | 7  | Q.  Now, the iPhone 6 was in the box, in the case; right?|
|       | 8  | Is that accurate?                                        |
| 10:35 | 9  | A.  No, sir.  The iPhone 6 was on his person.            |
| 10:35 | 10 | Q.  Gotcha.                                              |
| 10:35 | 11 | A.  *(Displaying items:)* This is a case for an iPhone 6.|
|       | 12 | This was on the phone.  So this is just the casing for it|
|       | 13 | with the holder.                                         |
| 10:35 | 14 | This is a myCharge.  Looks like a thumb charger.         |
| 10:35 | 15 | Pencil -- pencil sharpener.                              |
| 10:36 | 16 | Sir, would you like me to leave it out or put it         |
|       | 17 | back in once I show the jury?                            |
| 10:36 | 18 | Q.  Let's pull it all out.  Then we'll put it back in after|
|       | 19 | we're finished.                                          |
| 10:36 | 20 | A.  *(Witness displays item.)*                           |
| 10:36 | 21 | THE COURT:  What was that?                               |
| 10:36 | 22 | THE WITNESS:  Sir, it appears to be like a --            |
|       | 23 | looks like a travel document, but it's in a foreign      |
|       | 24 | language.  I can't read it.                              |
| 10:36 | 25 | THE COURT:  Okay.                                        |

**DEBBIE GALE, U.S. COURT REPORTER**

10:36    1              THE WITNESS:  *(Displaying item:)* This appears to

         2    be an Israeli passport for Nader Elhuzayel.

10:36    3              MR. LENGYEL-LEAHU:  Could I retrieve those items,

         4    Your Honor?

10:36    5              THE COURT:  Well, certainly.

10:36    6              MR. LENGYEL-LEAHU:  Thank you.

10:36    7         I'd like to publish 'em to the jury, if I could.

10:36    8              THE COURT:  Well, you can put them on the ELMO, if

         9    you'd like to.  They're not going to be passed to the jury,

        10    Counsel.

10:36   11              MR. LENGYEL-LEAHU:  That -- that was my point,

        12    Your Honor.  That's why I needed 'em -- for the ELMO.

10:36   13              THE COURT:  Thank you.

10:37   14         And would you like him to continue going through

        15    the exhibit?

10:37   16              MR. LENGYEL-LEAHU:  Yes, please, Your Honor.

10:37   17         *(Mr. Lengyel-Leahu displays various exhibits on*

        18         *ELMO, without speaking.)*

10:37   19              THE COURT:  Would you like him to continue going

        20    through the exhibit?

10:37   21              MR. LENGYEL-LEAHU:  Yes, please, Your Honor.

10:37   22              THE WITNESS:  *(Displaying each item:)*

10:37   23         This is Size 14 shoes.

10:37   24         Size 15 shoes.

10:37   25         Size 14 shoes.

| | | |
|---|---|---|
| 10:37 | 1 | Size 15 sandals. |
| 10:38 | 2 | Okay.  In my right hand appears to be some type of |
| | 3 | harness.  In my left hand is a razor. |
| 10:38 | 4 | It's an extra large T-shirt. |
| 10:38 | 5 | It's a Calvin Klein handbag. |
| 10:38 | 6 | Three brushes. |
| 10:38 | 7 | A jar of honey. |
| 10:38 | 8 | LG G Pad instructions. |
| 10:38 | 9 | Attachment for the razor. |
| 10:38 | 10 | And a notebook which has what appears to be Arabic |
| | 11 | writing.  Looks like someone's practicing Arabic writing. |
| 10:39 | 12 | MR. LENGYEL-LEAHU:  Could I retrieve that |
| | 13 | document, Your Honor? |
| 10:39 | 14 | THE COURT:  Sure. |
| 10:39 | 15 | MR. LENGYEL-LEAHU:  And publish it to the jury on |
| | 16 | the ELMO? |
| 10:39 | 17 | THE COURT:  You may. |
| 10:39 | 18 | *(Document displayed.)* |
| 10:39 | 19 | THE WITNESS:  Sir, that completes this bag. |
| 10:39 | 20 | So your question? |
| 10:39 | 21 | BY MR. LENGYEL-LEAHU: |
| 10:39 | 22 | Q.   And that -- all the contents of that bag; is that |
| | 23 | correct? |
| 10:39 | 24 | A.   No, sir.  There's some -- that's what's in the bag |
| | 25 | right now.  But there was some digital devices in there. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

62

| | | |
|---|---|---|
| 10:39 | 1 | Q.    Understood.  If you could, I guess, put those back in |
| | 2 | the box for us now, please. |
| 10:39 | 3 | THE WITNESS:  Okay, sir. |
| 10:39 | 4 | *(Complies.)* |
| 10:39 | 5 | MR. LENGYEL-LEAHU:  *(Displays exhibits on the* |
| | 6 | *ELMO, without comment.)* |
| 10:40 | 7 | THE COURT:  Counsel? |
| 10:40 | 8 | BY MR. LENGYEL-LEAHU: |
| 10:40 | 9 | Q.    Could we look at the checked luggage, the large roller |
| | 10 | bag, please. |
| 10:40 | 11 | A.    Sure, sir. |
| 10:40 | 12 | THE COURT:  It might be easier to look at it down |
| | 13 | on the floor, Counsel. |
| 10:40 | 14 | MR. LENGYEL-LEAHU:  If that's appropriate.  Sure. |
| 10:40 | 15 | THE COURT:  Do you want the contents taken out? |
| 10:41 | 16 | MR. LENGYEL-LEAHU:  Yes, please, sir. |
| 10:41 | 17 | THE COURT:  You know, the easiest thing to do |
| | 18 | might be just to use the center of the courtroom. |
| 10:41 | 19 | Would you gentlemen mind?  Just lay it out. |
| 10:41 | 20 | And, Counsel, I'm going to remove that black |
| | 21 | curtain for a moment. |
| 10:41 | 22 | MS. CORRIGAN:  That's fine. |
| 10:41 | 23 | THE COURT:  And why don't we toss that off to the |
| | 24 | side. |
| 10:41 | 25 | In fact, I'm going to ask some of you gentlemen if |

| | |
|---|---|
| 1 | you'd just take that black curtain away completely, clear |
| 2 | over to the side by the U.S. Attorney.  Ah, even further. |
| 3 | Let's take that way out outta the way so the entire jury can |
| 4 | see. |

10:41   5      *(To the jury:)* Now, folks, if you'd like to, you

6      can stand up at any time.  I think it would be quicker and

7      easier if you saw whatever these contents are, instead of

8      one by one.  We'll put them on the floor.

10:41   9      *(To Mr. Lengyel-Leahu:)* And, if you'd like to help,

10      you're more than welcome to.

10:41   11      *(Witness takes exhibits into well to display.)*

10:41   12      THE COURT:  And big voice.

10:41   13      THE WITNESS:  Okay, sir.

10:41   14      *(Displaying items:)* These are manuals, um, in

15      Arabic writing.  Based on the back, I -- it was my

16      understanding at the time, this belonged -- or was written

17      by his father.

10:42   18      THE COURT:  Okay.  Why don't you just leave those

19      on the floor.  Don't worry about the cleanliness.  We'll

20      take care of it.

10:42   21      THE WITNESS:  Thank you, Your Honor.

10:42   22      *(Displaying items:)* This is another pair of shoes.

23      They're in a bag.  They seem to be covered with mold.  This

24      is a Size 15.  This is reflective of how I saw it when I

25      first inventoried it on June 3rd, but they're just covered

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | in mildew.                                                         |
| 10:42 | 2  | THE COURT:  Covered in mildew?                                     |
| 10:42 | 3  | THE WITNESS:  Yes, Your Honor.                                     |
| 10:42 | 4  | *(Displaying item:)* A towel.                                      |
| 10:42 | 5  | MR. LENGYEL-LEAHU:  Do you want gloves?                            |
| 10:42 | 6  | THE COURT:  No, he doesn't need gloves.  He's                     |
|       | 7  | fine.                                                              |
| 10:43 | 8  | THE WITNESS:  I'll wash my hands later.                            |
| 10:43 | 9  | *(Displaying items:)* Large jacket.                               |
| 10:43 | 10 | Another large jacket with a Goodwill sticker on                    |
|       | 11 | it -- or still pinned or stapled to it.  Uh, scratch that.         |
|       | 12 | It's just a tag.  I shouldn't say Goodwill.  It's just a           |
|       | 13 | tag.                                                              |
| 10:43 | 14 | Another jacket, 3X.                                                |
| 10:43 | 15 | Another large jacket.                                              |
| 10:43 | 16 | Another XL jacket -- so five jackets.                             |
| 10:44 | 17 | This is probably the best way to go so it's a suit                |
|       | 18 | W a matching jacket.                                              |
| 10:44 | 19 | Another suit -- it's obviously a different size                   |
|       | 20 | than that one -- with a matching bigger jacket.                   |
| 10:44 | 21 | So, two suits:  Two pants, two jackets.                           |
| 10:44 | 22 | Pair of jean shorts, Size 38.                                     |
| 10:44 | 23 | A very large pair'a shorts, which I have no idea                  |
|       | 24 | what size this is, but they're -- this is a 3XL pair of           |
|       | 25 | shorts.                                                           |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:44 | 1 | A size large pair of shorts. |
| 10:45 | 2 | MR. LENGYEL-LEAHU:  Is that "UCLA"? |
| 10:45 | 3 | THE WITNESS:  Yes, it is "UCLA." |
| 10:45 | 4 | *(Displaying items:)* Another pair of white shorts. |
| | 5 | So that's four pairs of shorts. |
| 10:45 | 6 | So, I'm not an expert at this, but I believe this |
| | 7 | to be Islamic garb. |
| 10:45 | 8 | MR. LENGYEL-LEAHU:  You saw "Islamic" as if it's |
| | 9 | just Islam.  Arab's use those too; right? |
| 10:45 | 10 | THE WITNESS:  Like I said, I'm not sure. |
| 10:45 | 11 | MR. LENGYEL-LEAHU:  If you could just show us, |
| | 12 | that might help.  I meant as opposed to commentary. |
| 10:46 | 13 | THE COURT:  Well, the record needs to reflect it's |
| | 14 | something.  It's a -- what, Counsel?  What?  Do you two want |
| | 15 | to stipulate to a term? |
| 10:46 | 16 | MR. LENGYEL-LEAHU:  It's a robe. |
| 10:46 | 17 | MS. HEINZ:  Like a kaftan. |
| 10:46 | 18 | THE COURT:  No.  Counsel, you two have a private |
| | 19 | conversation.  Let's get some neutral word that's not |
| | 20 | affronting to each of you.  Then the jury can see what that |
| | 21 | garb is.  You can say "non-western" garb. |
| 10:46 | 22 | *(Counsel confer.)* |
| 10:46 | 23 | MR. LENGYEL-LEAHU:  A kaftan. |
| 10:46 | 24 | THE COURT:  A what? |
| 10:46 | 25 | MR. LENGYEL-LEAHU:  A kaftan. |

| | | |
|---|---|---|
| 10:46 | 1 | THE COURT:  A what? |
| 10:46 | 2 | MR. LENGYEL-LEAHU:  Kaftan. |
| | 3 | THE COURT:  I have no idea what that is. |
| | 4 | MR. LENGYEL-LEAHU:  That's what the government |
| | 5 | wants to call it so -- |
| 10:46 | 6 | THE COURT:  Is that acceptable, Counsel? |
| 10:46 | 7 | MS. HEINZ:  Yes, it is, Your Honor. |
| 10:46 | 8 | THE COURT:  All right.  The two prior were |
| | 9 | kaftans.  Okay. |
| 10:46 | 10 | THE WITNESS:  *(Displaying item:)* I really have no |
| | 11 | idea what this is.  It's sewn on both sides. |
| 10:46 | 12 | MR. LENGYEL-LEAHU:  Blue, square piece of cloth, |
| | 13 | plaid pattern. |
| 10:47 | 14 | THE COURT:  Okay. |
| 10:47 | 15 | THE WITNESS:  (Displaying items:) |
| 10:47 | 16 | Collared-shirt, Size Large. |
| 10:47 | 17 | Another shirt, size extra large. |
| 10:47 | 18 | Another collared shirt, size large. |
| 10:47 | 19 | I don't see a size, but a button-up, long-sleeved |
| | 20 | shirt. |
| 10:47 | 21 | MR. LENGYEL-LEAHU:  Dress shirt. |
| 10:47 | 22 | THE WITNESS:  Yes, sir. |
| 10:47 | 23 | So there was four collared shirts. |
| 10:47 | 24 | *(Displaying items:)*  Sweatpants. |
| 10:47 | 25 | Second pair of sweatpants. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:47 | 1 | And a third pair of sweatpants. |
| 10:48 | 2 | Three pairs of underwear. |
| 10:48 | 3 | Sorry, I can't make out the size, but a T-shirt. |
| 10:48 | 4 | Looks a little dressier -- size large -- |
| 10:48 | 5 | MR. LENGYEL-LEAHU:  T-shirt. |
| 10:48 | 6 | THE WITNESS:  Okay.  *(Displaying items:)* |
| 10:48 | 7 | Size medium T-shirt. |
| 10:48 | 8 | Size large T-shirt. |
| 10:48 | 9 | Size large T-shirts. |
| 10:49 | 10 | I can't see the size, but -- T-shirt. |
| 10:49 | 11 | XL T-shirt. |
| 10:49 | 12 | Large T-shirt. |
| 10:49 | 13 | XL long-sleeved shirt. |
| 10:49 | 14 | And XL T-shirt. |
| 10:49 | 15 | This -- two pairs of new dress socks. |
| 10:49 | 16 | And this pair seems to be mismatched. |
| 10:49 | 17 | So that'd be two pairs and then two mismatched. |
| 10:49 | 18 | And then a white XL undershirt. |
| 10:49 | 19 | MR. LENGYEL-LEAHU:  Thank you. |
| 10:49 | 20 | THE COURT:  Leave those all on the floor.  You |
| | 21 | don't have to clean them up. |
| 10:49 | 22 | Counsel, your questions. |
| 10:49 | 23 | We'll get that during the recess.  Okay? |
| 10:50 | 24 | MR. LENGYEL-LEAHU:  Nothing further, Your Honor. |
| 10:50 | 25 | THE COURT:  Ms. Corrigan, do you have questions on |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

68

| | | |
|---|---|---|
| | 1 | cross-examination? |
| 10:50 | 2 | MS. CORRIGAN:  No, Your Honor. |
| 10:50 | 3 | THE COURT:  Counsel, do you have questions on |
| | 4 | redirect examination? |
| 10:50 | 5 | MS. HEINZ:  I do, Your Honor. |
| 10:50 | 6 | *(Witness resumes the stand.)* |
| 10:50 | 7 | **REDIRECT EXAMINATION** |
| 10:50 | 8 | BY MS. HEINZ: |
| 10:51 | 9 | Q.   Special Agent Ghetian, I'm going to refer you back to |
| | 10 | the post-arrest interview on May 21st, 2015. |
| 10:51 | 11 | During that interview did Defendant Elhuzayel talk about |
| | 12 | a person by the name of *Abu Hussein*? |
| 10:51 | 13 | MR. LENGYEL-LEAHU:  Objection.  Beyond the scope, |
| | 14 | Your Honor. |
| 10:51 | 15 | MS. HEINZ:  No.  This goes to his questions about |
| | 16 | whether or not Defendant Elhuzayel had contacts over -- |
| 10:51 | 17 | THE COURT:  I was just about to overrule the |
| | 18 | objection, Counsel. |
| 10:51 | 19 | MS. HEINZ:  I'm sorry, Your Honor.  I'm sorry. |
| 10:51 | 20 | THE COURT:  Overruled. |
| 10:51 | 21 | MS. HEINZ:  Thank you. |
| 10:51 | 22 | THE WITNESS:  Would you mind rephrasing your |
| | 23 | question? |
| 10:51 | 24 | MS. HEINZ:  I -- I would. |
| | 25 | |

| | | |
|---|---|---|
| 10:51 | 1 | BY MS. HEINZ: |
| 10:51 | 2 | Q.   Did you -- did Defendant Elhuzayel make statements |
| | 3 | about a person named Abu Hussein? |
| 10:52 | 4 | A.   He did. |
| 10:52 | 5 | Q.   And did he talk about how he had contact with Abu |
| | 6 | Hussein? |
| 10:52 | 7 | A.   He did. |
| 10:52 | 8 | Q.   What did he say about that? |
| 10:52 | 9 | A.   He was in contact with *abuhussein3*, which is a Surespot |
| | 10 | account. |
| 10:52 | 11 | Q.   And did he also make a statement about what he knew as |
| | 12 | far as an what organization Abu Hussein was affiliated with? |
| 10:52 | 13 | A.   Yes, he did. |
| 10:52 | 14 | Q.   What did he say about that? |
| 10:52 | 15 | A.   He said he was a member of the Islamic State and |
| | 16 | currently residing in the Islamic State. |
| 10:52 | 17 | Q.   And did he say anything about whether or not Abu |
| | 18 | Hussein knew that Defendant Elhuzayel was planning to |
| | 19 | travel? |
| 10:52 | 20 | A.   Yes. |
| 10:52 | 21 | Q.   What did he say about that? |
| 10:52 | 22 | A.   Said he knew he wanted to go to the Islamic State. |
| 10:52 | 23 | Q.   Did he say that Abu Hussein knew he was coming to the |
| | 24 | Islamic State? |
| 10:53 | 25 | A.   He knew he wanted to travel. |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

70

| | | |
|---|---|---|
| 10:53 | 1 | Q.   And did he also say that he had already been in contact |
| | 2 | with Abu Hussein? |
| 10:53 | 3 | MR. LENGYEL-LEAHU:  Objection.  Asked and |
| | 4 | answered. |
| 10:53 | 5 | THE COURT:  Overruled. |
| 10:53 | 6 | *(To the witness:)*  You can answer the question. |
| 10:53 | 7 | THE WITNESS:  Yes, he had been in contact with Abu |
| | 8 | Hussein previously. |
| 10:53 | 9 | BY MS. HEINZ: |
| 10:53 | 10 | Q.   Did he say what the subject matter of the contact was? |
| 10:53 | 11 | A.   Yes. |
| 10:53 | 12 | Q.   What was that? |
| 10:53 | 13 | A.   He said *abuhussein3* was the same person who inspired |
| | 14 | Elton Simpson to conduct attacks at Garland, Texas, and that |
| | 15 | he was very extreme, and that he wanted Nader Elhuzayel to |
| | 16 | conduct attacks here in the United States, specifically on |
| | 17 | someone who made a film about the Prophet Muhammad and lived |
| | 18 | in the City of Riverside. |
| 10:54 | 19 | Q.   And what did Defendant Hussain -- I'm sorry -- |
| | 20 | Defendant Elhuzayel say about how he reacted to that request |
| | 21 | by Abu Hussein? |
| 10:54 | 22 | A.   Yeah.  He didn't want to do an attack here.  He wants |
| | 23 | to travel to the Islamic State. |
| 10:54 | 24 | MS. HEINZ:  Thank you. |
| 10:54 | 25 | No further questions. |

| | | |
|---|---|---|
| 10:54 | 1 | THE COURT:  Recross, Mr. Lengyel-Leahu, on behalf |
| | 2 | of Mr. Elhuzayel? |
| 10:54 | 3 | MR. LENGYEL-LEAHU:  Thank you, Your Honor. |
| 10:54 | 4 | **RECROSS-EXAMINATION** |
| 10:54 | 5 | BY MR. LENGYEL-LEAHU: |
| 10:54 | 6 | Q.   How many times did the name "Abu Hussein" come up in |
| | 7 | the conversation in the interview? |
| 10:54 | 8 | A.   Sir, are you asking me an exact count of how many times |
| | 9 | we used the term "Abu Hussein"? |
| 10:54 | 10 | Q.   You did review the interview, didn't you? |
| 10:54 | 11 | A.   I did, sir. |
| 10:54 | 12 | Q.   And you did review the transcript of the interview, |
| | 13 | didn't you? |
| 10:54 | 14 | A.   I did, sir. |
| 10:54 | 15 | Q.   You only talked about "Abu Hussein" one time during |
| | 16 | that entire three-and-a-half-hour interrogation; isn't that |
| | 17 | true? |
| 10:55 | 18 | A.   Sir, I didn't count every time I used every term in the |
| | 19 | interview. |
| 10:55 | 20 | Q.   Do you need time to refresh your recollection -- |
| 10:55 | 21 | *(Court reporter requests clarification for the* |
| | 22 | *record.)* |
| 10:55 | 23 | BY MR. LENGYEL-LEAHU: |
| 10:55 | 24 | Q.   Do you need time to review the transcription to |
| | 25 | determine how many times during that interrogation that you |

**DEBBIE GALE, U.S. COURT REPORTER**

|          | 1  | brought up the name "Abu Hussein," and in context? |
|          | 2  | *(Verbatim.)* |
| 10:55    | 3  | A.   Sir, if you're asking me to answer "question" how many |
|          | 4  | times I used the term "Abu Hussein," I would need the |
|          | 5  | transcripts to actually answer your question. |
| 10:55    | 6  | THE COURT:  Counsel, do you mean how many times he |
|          | 7  | says the word, or how many different portions of the |
|          | 8  | interview?  That's what's potentially confusing. |
| 10:55    | 9  | MR. LENGYEL-LEAHU:  How many times they referred |
|          | 10 | to the individual known as *abuhussein3*. |
| 10:55    | 11 | THE COURT:  Okay. |
| 10:55    | 12 | *(To the witness:)* Can you answer that question? |
| 10:55    | 13 | THE WITNESS:  Your Honor, I can't without the |
|          | 14 | transcripts.  I didn't -- when I reviewed the transcripts, I |
|          | 15 | didn't count every time I used a term.  So I fear that I |
|          | 16 | would answer the question inaccurately. |
| 10:56    | 17 | BY MR. LENGYEL-LEAHU: |
| 10:56    | 18 | Q.   Where in that transcript does he connect *abuhussein3* to |
|          | 19 | Elton Simpson? |
| 10:56    | 20 | A.   That would be, I mean -- answer like what page of the |
|          | 21 | transcripts? |
| 10:56    | 22 | Q.   Sure. |
| 10:56    | 23 | A.   I don't know if that's an exhibit I could -- if that |
|          | 24 | was provided to me, I could show you. |
| 10:56    | 25 | MR. LENGYEL-LEAHU:  Volume II. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:56 | 1 | MS. CORRIGAN:  What page? |
| 10:56 | 2 | MR. LENGYEL-LEAHU:  Volume II, page 12. |
| 10:56 | 3 | *(Document provided to the witness.)* |
| 10:56 | 4 | MS. HEINZ:  Your Honor, would it be permissible |
| | 5 | for the government to provide a page number? |
| 10:56 | 6 | THE COURT:  Certainly. |
| 10:56 | 7 | MR. LENGYEL-LEAHU:  12. |
| 10:56 | 8 | THE COURT:  Counsel, what page -- I'm sorry.  I |
| | 9 | was looking down, taking notes.  My apologies. |
| 10:57 | 10 | Did you have a page put in front of you? |
| 10:57 | 11 | THE WITNESS:  Your Honor, I did. |
| 10:57 | 12 | THE COURT:  We need a page number, Counsel. |
| 10:57 | 13 | MR. LENGYEL-LEAHU:  I gave him the whole |
| | 14 | transcript of Volume II.  It's page 12. |
| 10:57 | 15 | THE COURT:  Page 12.  Okay. |
| 10:57 | 16 | And what lines? |
| 10:57 | 17 | THE WITNESS:  Actually, Your Honor, it starts on |
| | 18 | page 11, line 23. |
| 10:57 | 19 | THE COURT:  Okay.  Thank you. |
| 10:57 | 20 | Page 11, line 23. |
| 10:57 | 21 | And, Counsel, your question. |
| 10:57 | 22 | MR. LENGYEL-LEAHU:  I think he's reviewing the |
| | 23 | transcript now, Your Honor. |
| 10:58 | 24 | BY MR. LENGYEL-LEAHU: |
| 10:58 | 25 | Q.   If you can look up when you're done. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 10:58 | 1 | A.   *(Complies.)* |
| 10:58 | 2 | Q.   Just in relation to page 12 and -- and the subsequent |
| | 3 | pages there, there was a conversation about Abu Hussein |
| | 4 | during that part -- portion'a the conversation; is that |
| | 5 | correct? |
| 10:58 | 6 | A.   Yes, sir. |
| 10:58 | 7 | Q.   And that was in relation to people that Nader had |
| | 8 | contacted in the Islamic State; is that correct? |
| 10:58 | 9 | A.   It was in relation to his Surespot account.  People he |
| | 10 | was in communication with -- |
| 10:58 | 11 | Q.   Exactly. |
| 10:58 | 12 | A.   -- on Surespot.  *Abuhussein3*, which later we refer to |
| | 13 | "Abu Hussein," I think eight times, who was the individual |
| | 14 | who was in the Islamic State that he was talking to. |
| 10:59 | 15 | Q.   And the nature of that conversation was that Abu |
| | 16 | Hussein had asked him to do something, something like a |
| | 17 | killing, but Nader said he wasn't gonna do that; is that |
| | 18 | correct? |
| 10:59 | 19 | A.   That is correct. |
| 10:59 | 20 | Q.   Okay.  In the pages that you just reviewed, there is no |
| | 21 | mention of Elton Simpson, is there? |
| 10:59 | 22 | A.   Yeah.  Sir, there is.  Page 14, line 11. |
| 10:59 | 23 | Q.   And what does it say? |
| 10:59 | 24 | A.   Well, so he references -- |
| 10:59 | 25 | Q.   What does it say? |

8:15-CR-0060-DOC - 6/15/2016 - Day 7, Volume I

75

| | | |
|---|---|---|
| 10:59 | 1 | A.   Yeah.  Sir, I'm trying to answer your question. |
| 10:59 | 2 | Q.   Read it. |
| 10:59 | 3 | A.   Starting what point, sir? |
| 10:59 | 4 | Q.   The -- the point that you say is reference to Elton |
| | 5 | Simpson. |
| 10:59 | 6 | A.   Okay.  I was trying to. |
| 10:59 | 7 | Okay.  *(Reading:)* |
| 10:59 | 8 | *"What did -- what did he want you to* |
| | 9 | *do?"* |
| 10:59 | 10 | That's me speaking. |
| 10:59 | 11 | *"I mean he wanted me to like -- he's the* |
| | 12 | *one that -- that actually, I think,* |
| | 13 | *inspired what's his name, Atawaakul, to* |
| | 14 | *actually --"* |
| 11:00 | 15 | *(Court reporter requests clarification for the* |
| | 16 | *record.)* |
| 11:00 | 17 | THE WITNESS:  A-T-A, W-A-K-K-U-L *(sic)*. |
| 11:00 | 18 | The relevance of that is earlier in the interview |
| | 19 | we referred to Elton Simpson's Twitter account as |
| | 20 | @atawaakul.  So when he's talking to @atawaakul, he's |
| | 21 | referring to Elton Simpson. |
| 11:00 | 22 | *"The what -- what guy?  Atawaakul that* |
| | 23 | *one guy, yeah, Elton."* |
| 11:00 | 24 | Ask of him:  *"Elton Simpson?"* |
| 11:00 | 25 | Me saying, *"Oh, Elton Simpson?"* |

| | | |
|---|---|---|
| 11:00 | 1 | Elhuzayel responds:  *"Yeah."* |
| 11:00 | 2 | Um, I ask him:  *"That guy?"* |
| 11:00 | 3 | And he goes:  *"I think so; right."* |
| 11:00 | 4 | I said -- and then I said, *"Oh, yeah.  Okay.  Oh, I* |
| | 5 | *don't know.  You tell me."* |
| 11:00 | 6 | And then Elhuzayel says, *"Yeah.  He's the first one* |
| | 7 | *that actually posted on Twitter."* |
| 11:00 | 8 | MR. LENGYEL-LEAHU:  Thank you. |
| 11:00 | 9 | Nothing further, Your Honor. |
| 11:00 | 10 | THE COURT:  And recross? |
| 11:00 | 11 | Ms. Corrigan, do you have any questions? |
| 11:01 | 12 | MS. CORRIGAN:  Your Honor, may I just walk into |
| | 13 | the well and take one quick look at the suitcase? |
| 11:01 | 14 | THE COURT:  You may. |
| 11:01 | 15 | In fact, any counsel may walk into the well, as |
| | 16 | long as these exhibits are on the floor, without asking. |
| | 17 | Thank you. |
| 11:01 | 18 | MS. CORRIGAN:  And, just for the record, I'm not |
| | 19 | gonna move anything. |
| 11:01 | 20 | THE COURT:  *(To the jury:)* Ladies and gentlemen, |
| | 21 | you're welcome to stand up, if you want, and see what |
| | 22 | counsel's doing and showing. *(Verbatim.)* |
| 11:01 | 23 | And the record should reflect that these items have |
| | 24 | been laid out on the floor of the courtroom in the well. |
| | 25 | It's just easier for counsel to refer to them and for the |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | jury to see the contents of the bag that was being referred  |
|       | 2  | to.                                                          |
| 11:01 | 3  | **CROSS-EXAMINATION**                                        |
| 11:01 | 4  | BY MS. CORRIGAN:                                             |
| 11:01 | 5  | Q.   Agent Ghetian, have you looked at the tag that's on the |
|       | 6  | suitcase that is Government's Exhibit --                     |
| 11:01 | 7  | Is it...?                                                    |
| 11:01 | 8  | THE COURT:  It's 606, from memory.                          |
| 11:02 | 9  | MS. CORRIGAN:  Thank you, Your Honor.                       |
| 11:02 | 10 | BY MS. CORRIGAN:                                             |
| 11:02 | 11 | Q.   -- 606?                                                 |
| 11:02 | 12 | A.   Yes, ma'am, I did.                                      |
| 11:02 | 13 | Q.   And that tag indicates that the bag is booked all the   |
|       | 14 | way through to Tel Aviv; correct?                           |
| 11:02 | 15 | A.   Oh, I'm sorry.  I thought you meant the tag on one of   |
|       | 16 | the items of clothing.                                       |
| 11:02 | 17 | So you're talking the tag --                                |
| 11:02 | 18 | Q.   Yeah.  The suitcase that's actually unpacked here,      |
|       | 19 | that's sitting in the well.                                  |
| 11:02 | 20 | THE COURT:  And, Counsel, it's actually 607.               |
| 11:02 | 21 | MS. CORRIGAN:  607.                                         |
| 11:02 | 22 | THE COURT:  I apologize.                                    |
| 11:02 | 23 | The first Exhibit was 606.                                  |
| 11:02 | 24 | And can 606 be received, Counsel?                          |
| 11:02 | 25 | MS. HEINZ:  It's already in evidence.                      |

| | | |
|---|---|---|
| 11:02 | 1 | THE COURT:  How about 607? |
| 11:02 | 2 | MS. CORRIGAN:  It is, Your Honor. |
| 11:02 | 3 | THE COURT:  My memory is it was. |
| 11:02 | 4 | MS. HEINZ:  Yes. |
| 11:02 | 5 | MS. CORRIGAN:  My record reflects that both items |
| | 6 | were already in evidence. |
| 11:02 | 7 | THE COURT:  Okay.  This is 607.  That was my |
| | 8 | mistake.  Thank you. |
| 11:02 | 9 | MS. CORRIGAN:  Thank you. |
| 11:02 | 10 | THE WITNESS:  Ma'am, I did not analyze that tag. |
| 11:02 | 11 | But I'm aware it was checked all the way through to |
| | 12 | Tel Aviv. |
| 11:02 | 13 | BY MS. CORRIGAN: |
| 11:02 | 14 | Q.   And so when you -- but, in looking at it, the tag does |
| | 15 | indicate that there's gonna be transit -- um, there's a |
| | 16 | transit tag from Istanbul to Tel Aviv on the -- I'll call it |
| | 17 | the luggage sticker that's on -- that's adhered to the |
| | 18 | suitcase; correct? |
| 11:03 | 19 | A.   That -- would it be okay if I just went and looked at |
| | 20 | it -- |
| 11:03 | 21 | Q.   Absolutely. |
| 11:03 | 22 | A.   -- real quick? |
| 11:03 | 23 | Q.   Absolutely. |
| 11:03 | 24 | A.   And, my apologies.  Would you mind restating your |
| | 25 | question? |

| | | |
|---|---|---|
| 11:03 | 1 | Q.    Sure.  And you just looked at the tag that's adhered to |
| | 2 | Exhibit 607, the large -- I'll call it the "roller |
| | 3 | suitcase" -- that you just unpacked; correct? |
| 11:03 | 4 | A.    Yes, ma'am. |
| 11:03 | 5 | Q.    Okay.  And on that tag, it doesn't say Tel Aviv, but it |
| | 6 | does have some letters that would indicate that -- look like |
| | 7 | something that would refer to Tel Aviv; correct? |
| 11:04 | 8 | A.    Yes. |
| 11:04 | 9 | Q.    And what are those?  What -- would you agree that that |
| | 10 | tag appears to indicate that the luggage would go from |
| | 11 | Istanbul to Tel Aviv?  It's checked all the way through? |
| 11:04 | 12 | A.    Yes.  It says, May 21st, Istanbul; May 22nd what |
| | 13 | looks -- appears to be Tel Aviv. |
| 11:04 | 14 | MS. CORRIGAN:  Thank you. |
| 11:04 | 15 | Nothing further. |
| 11:04 | 16 | THE COURT:  Counsel, questions on redirect on |
| | 17 | behalf of the government? |
| 11:04 | 18 | MS. HEINZ:  No, Your Honor.  Nothing further. |
| 11:04 | 19 | THE COURT:  *(To the witness:)* I seriously doubt |
| | 20 | that you'll be called back to court, but we're going to have |
| | 21 | you remain on call, as we are all the other agents, so there |
| | 22 | doesn't need to be any additional subpoenas. |
| 11:04 | 23 | THE WITNESS:  Yes, Your Honor. |
| 11:04 | 24 | THE COURT:  Thank you very much, sir.  You may |
| | 25 | step down. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 11:04 | 1 | THE WITNESS:  Thank you, Your Honor. |
| 11:04 | 2 | *(Witness steps down.)* |
| 11:04 | 3 | THE COURT:  And, Counsel, your next witness, |
| | 4 | please. |
| 11:04 | 5 | MS. ELIOT:  Your Honor, the government calls |
| | 6 | William Braniff. |
| 11:04 | 7 | THE COURT:  Thank you. |
| 11:05 | 8 | *(Live reporter switch at 11:05 a.m.)* |
| 11:05 | 9 | *(Further proceedings reported by Deborah Parker* |
| | 10 | *in Volume II.)* |
| 11:05 | 11 | -oOo- |
| 11:05 | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

```
11:05   1                           -oOo-

11:05   2

11:05   3                        CERTIFICATE

11:05   4

11:05   5        I hereby certify that pursuant to Section 753,

        6   Title 28, United States Code, the foregoing is a true and

        7   correct transcript of the stenographically reported

        8   proceedings held in the above-entitled matter and that the

        9   transcript page format is in conformance with the

       10   regulations of the Judicial Conference of the United States.

11:05  11

11:05  12   Date:  March 28, 2017

11:05  13

11:05  14
11:05                           /s/ Debbie Gale
11:05  15
11:05                       _____
11:05  16                   DEBBIE GALE, U.S. COURT REPORTER
                            CSR NO. 9472, RPR, CCRR
11:05  17

       18

       19

       20

       21

       22

       23

       24

       25
```