1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3          **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                       )        <u>**CERTIFIED**</u>
6              Plaintiff,              )
                                       )
7          vs.                         )  No. 8:15-CR-0060-DOC
                                       )      Day 9, Volume III
8    1) NADER SALEM ELHUZAYEL;         )
     2) MUHANAD ELFATIH M.A. BADAWI,   )
9                                      )
               Defendants.             )
10   _____)

11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Jury Trial

17              Santa Ana, California

18            Monday, June 20, 2016

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1    **APPEARANCES OF COUNSEL:**

2

     FOR THE UNITED STATES OF AMERICA:
3
          DEPARTMENT OF JUSTICE
4         OFFICE OF THE UNITED STATES ATTORNEY
          Criminal Division
5         BY:  Judith A. Heinz
               Assistant United States Attorney
6         312 North Spring Street
          15th Floor
7         Los Angeles, California 90012
          213-894-7280
8         USACAC.Criminal@usdoj.gov

9         DEPARTMENT OF JUSTICE
          OFFICE OF THE UNITED STATES ATTORNEY
10        Criminal Division
          BY:  Deirdre Z. Eliot
11             Assistant United States Attorney
          411 West 4th Street
12        Suite 8000
          Santa Ana, California 92701
13        714-338-3500
          USACAC.SACriminal@usdoj.gov
14
          DEPARTMENT OF JUSTICE
15        OFFICE OF THE UNITED STATES ATTORNEY
          General Crimes Section
16        BY:  Julius J. Nam
               Assistant United States Attorney
17        312 North Spring Street
          Suite 1200
18        Los Angeles, California 90012
          213-894-4491
19        julius.nam@usdoj.gov

20

     FOR DEFENDANT NADER SALEM ELHUZAYEL:
21
          Pal A. Lengyel-Leahu *(retained)*
22        LAW OFFICES OF PAL A. LENGYEL-LEAHU
          360 East First Street
23        Suite 609
          Tustin, California 92780
24        714-497-6813
          plitigate@aol.com
25

1    **APPEARANCES (Continued):**

2    FOR DEFENDANT MUHANAD ELFATIH M.A. BADAWI:

3
        Katherine T. Corrigan *(CJA appointment)*
4       CORRIGAN WELBOURN AND STOKKE APLC
        4100 Newport Place
5       Suite 550
        Newport Beach, California 92660
6       949-251-0330
        kate@cwsdefense.com

7

8    ALSO PRESENT:

9       Cambria Lisonbee (assisting Ms. Corrigan)
        Joshua Hopps (assisting Mr. Lengyel-Leahu)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            **I N D E X**

2         Jury Trial - Day 9, Volume III

3   **PROCEEDINGS**                              **PAGE**

4   Government's Closing Argument                  5

5   Jury Instructions                             19

6   Court Security Officer sworn                  46

7   Discussion with alternate jurors             49

8   Discussion re Verdict Forms                  52

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

5

|  | 1 | **SANTA ANA, CALIFORNIA, MONDAY, JUNE 20, 2016** |
|---|---|---|
|  | 2 | **Day 9, Volume III** |
|  | 3 | (12:06 p.m.) |
| 12:04 | 4 | *(Previous proceedings reported by Deborah Parker* |
|  | 5 | *in Volume II.)* |
| 12:05 | 6 | *(In the presence of the jury.)* |
| 12:06 | 7 | THE COURT:  We're back in session.  The jury's |
|  | 8 | present.  The alternates are present.  All counsel.  The |
|  | 9 | defendants, the parties. |
| 12:06 | 10 | Counsel, your rebuttal argument, please. |
| 12:06 | 11 | MS. ELIOT:  Thank you, Your Honor. |
| 12:06 | 12 | **GOVERNMENT'S CLOSING ARGUMENT** |
| 12:06 | 13 | MS. ELIOT:  Good afternoon, ladies and gentlemen. |
|  | 14 | Defendant Elhuzayel wants you to believe that this is all a |
|  | 15 | big mistake because, what do you know, the Islamic State is |
|  | 16 | not a terrorist organization after all.  It's supposedly not |
|  | 17 | on the list.  He claims the Islamic State is not the same as |
|  | 18 | ISIS, ISIL; that somehow after the caliphate was announced, |
|  | 19 | "poof," ISIS disappeared. |
| 12:06 | 20 | That's just ridiculous.  First of all, Dawlah |
|  | 21 | al-Islamiya is listed along with ISIS, along with ISIL, |
|  | 22 | along with a host of other names long before the defendants |
|  | 23 | in this case are arrested. |
| 12:06 | 24 | You've heard that *"Dawlah al-Islamiya"* is "Islamic |
|  | 25 | State" in Arabic.  Yes, it's on Exhibit E.  No, there's no |

**DEBBIE GALE, U.S. COURT REPORTER**

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | gap.                                                                |
| 12:07 | 2  | Secondly, everyone but Defendant Elhuzayel agrees                   |
|       | 3  | that the Islamic State of Iraq and Syria, the Islamic State         |
|       | 4  | of Iraq and al-Sham, the Islamic State of Iraq and the              |
|       | 5  | Levant, and the Islamic State are all names for the same            |
|       | 6  | organization.  The State Department knows it.  The terrorism        |
|       | 7  | expert knows it.  Even Defendant Badawi knows it.  He agrees        |
|       | 8  | that Islamic State is a designated foreign terrorist                |
|       | 9  | organization.  That base is covered, as defense counsel             |
|       | 10 | would say, and it's just nonsense to claim otherwise.               |
| 12:07 | 11 | More importantly, the Islamic State itself says                     |
|       | 12 | it's the same organization.  And they ought to know.                |
| 12:08 | 13 | There's simply no evidence to the contrary.  Where                  |
|       | 14 | is the evidence that Islamic State is a separate group?             |
|       | 15 | There's none before you.  And what defense counsel says is          |
|       | 16 | not evidence.  Nothing the lawyers say in this portion is           |
|       | 17 | evidence.  It wouldn't make any sense anyway, as if every           |
|       | 18 | time al-Baghdadi decided to make a name change, the                 |
|       | 19 | United States couldn't prosecute anyone for material               |
|       | 20 | support.  Terrorists could go free.                                 |
| 12:08 | 21 | Besides, you heard Khalid Bahta.  He testified that                 |
|       | 22 | Elhuzayel was going to join ISIS and that he and Badawi             |
|       | 23 | talked about ISIS.  Elhuzayel is just playing word games now        |
|       | 24 | that he's been caught.  And he's hoping you'll be confused          |
|       | 25 | or distracted by all of this.  But it's no time for word            |

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 7 of 55   Page ID #:5109
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

7

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | games.  It's time for the truth and for justice.                   |
| 12:09 | 2  | Then counsel for Elhuzayel says*, "Well, if you*                   |
|       | 3  | *don't buy that one, let's try this one.  He was really just*      |
|       | 4  | *going to get married after all."*  If that's the case, then       |
|       | 5  | why does Badawi ask his contact in Mas'oul, Iraq, about            |
|       | 6  | smuggling routes to the Islamic State?  And why does               |
|       | 7  | Elhuzayel have to delete his phone history before bouncing         |
|       | 8  | out of this filthy country he can't stand?                         |
| 12:09 | 9  | Why do Elhuzayel and Badawi make a pact to fight on                |
|       | 10 | the front line and not look back?  And remember that decoy         |
|       | 11 | bag with the mismatched clothing and moldy athletic shoes?         |
|       | 12 | That's going on to Tel Aviv.  Elhuzayel is getting off in          |
|       | 13 | Istanbul.  Elhuzayel discarded that bag and those clothes          |
|       | 14 | just like counsel left them on the floor before you.               |
| 12:10 | 15 | And if Elhuzayel is really getting married, then                   |
|       | 16 | why does Badawi urge him just before he leaves to tell             |
|       | 17 | people he's going to the Islamic State so they can follow in       |
|       | 18 | his footsteps?  Why does Khalid Bahta say, *"Dude, that guy's*     |
|       | 19 | *gonna end up on the news."*  There's no wedding, no future        |
|       | 20 | with Enas.  There's only ISIS and Syria and jihad and              |
|       | 21 | martyrdom.                                                         |
| 12:10 | 22 | One thing you've seen in this case, when the                       |
|       | 23 | evidence is against you, people start talking about things         |
|       | 24 | that don't matter.  You've heard about World War II and            |
|       | 25 | Japan.  In opening statement, you heard about the Pope and         |

|    |    |
|----|----|
| | 1 |
| | 2 |
| | 3 |
| 12:11 | 4 |
| | 5 |
| 12:11 | 6 |

1    early Christian martyrs.  Today you heard about Vietnam, a

2    Nazi parade in Illinois, about John Adams and Sam Adams,

3    about fear, *Harry Potter* and *The Wizard of Oz*.

12:11    4    That's because Defendant Elhuzayel doesn't want you

5    to focus on the evidence.

12:11    6    Now, let's talk about the standard of proof in this

7    case:  Beyond a reasonable doubt.  It is the government's

8    burden, of course.  And we welcome that.  You have sat

9    through hours and hours of testimony, listened to Twitter

10    communications, Facebook posts, and recordings.  But it's

11    not proof beyond all doubt or proof beyond a shadow of a

12    doubt, but proof beyond a doubt based on reason and common

13    sense.  That's the same standard applied in every criminal

14    case in every courtroom across the country.

12:11    15    During jury selection, we learned that many of you

16    come from different backgrounds and different walks of life.

17    But one thing you all have in common is your reason and your

18    common sense.  And we have asked that you use that common

19    sense in the jury room as you deliberate.

12:12    20    Defense counsel also claims that defendants are

21    being charged for just something they thought or something

22    they have said or something other people did or for just

23    being un-American.  But as the evidence has shown, that's

24    simply not true.

12:12    25    When Elhuzayel tweeted, *"I will be the one who*

1     *slaughters you O kufar,"* he wasn't arrested.  When he urged

2     ISIS members unite, destroy all of America, law enforcement

3     didn't move in.  When Elhuzayel threatened, *"We will burn*

4     *USA again,"* and sent around a picture with some poor man

5     with his throat sliced open, he wasn't arrested.

12:12   6        When Elhuzayel warned, *"Every U.S. citizen is our*

7     *target, and we will kill them one after another and the*

8     *knives have been sharpened.  Soon we will come to your*

9     *streets with death and slaughter,"* still law enforcement

10    waited.  This isn't about free speech or unpopular beliefs

11    or the actions of others.  We're not here today because

12    statements didn't sit well.

12:13   13       When Badawi said, *"May Allah grant me martyrdom,"*

14    he wasn't arrested.  When Badawi said, *"I'm going to Syria,"*

15    not *"I might go,"* when he said, *"I'm going to Syria.  I want*

16    *to help, to fight,"* and when Badawi said, *"It's jihad, bro.*

17    *Christians gonna pay and live under sharia,"* he wasn't

18    arrested.

12:13   19       When Badawi said, *"The kufar are boiling.  Die with*

20    *your rage,"* and when Badawi said, *"May Allah cause us to go*

21    *over there and show the Jews and Crusaders what Islam is all*

22    *about and who Allah is,"* law enforcement still stood down.

12:14   23       Even when Badawi and Elhuzayel bought the plane

24    ticket, they weren't arrested.  The FBI didn't move in until

25    Elhuzayel had checked in at Turkish Airlines, received his

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | boarding pass, and cleared security at LAX on his path to   |
|       | 2  | jihad.                                                      |
| 12:14 | 3  | The facilitator and the fighter, they're not on            |
|       | 4  | trial for what they said, what they thought, what they     |
|       | 5  | believed.  They're on trial for what they did.             |
| 12:14 | 6  | And this case is not about fear, and it's not about        |
|       | 7  | politics.  It's about a fighter and his facilitator and    |
|       | 8  | their path for jihad.  And in America, that's a crime.     |
| 12:14 | 9  | Defendants are hoping you get sidetracked by               |
|       | 10 | considering when Badawi actually planned to travel and     |
|       | 11 | whether he weighs enough to be useful for ISIS.  And they're |
|       | 12 | hoping you debate whether Elhuzayel knew how to shoot a gun. |
|       | 13 | Well, you've seen pictures of children shooting ISIS       |
|       | 14 | victims, and it doesn't take much strength to point and    |
|       | 15 | fire.  But defendants aren't charged with those things     |
|       | 16 | anyway.  Badawi is on trial, not for traveling to join ISIS |
|       | 17 | in the future, but for helping Elhuzayel go.               |
| 12:15 | 18 | And Elhuzayel's no lone wolf; he had a pact with           |
|       | 19 | Badawi, as you've seen.  And he swore allegiance to ISIS, to |
|       | 20 | al-Baghdadi, and he was in contact with Abu al-Bertani,    |
|       | 21 | who's in Syria.  And besides, Elhuzayel is on trial for    |
|       | 22 | attempting to provide material support to ISIS, material   |
|       | 23 | support in the form of personnel, himself.                 |
| 12:15 | 24 | You don't need to decide whether he would be               |
|       | 25 | shooting or bombing or kidnapping or translating or        |

1    recruiting once he got there.  The government doesn't need

2    to prove which ISIS operative would be his supervisor.  And,

3    by the way, there's no passport requirement or language

4    requirement for ISIS.

12:16    5    These other arguments are just designed to keep you

6    from considering the facts before you.  Now, back to the

7    evidence.

12:16    8    Yes, facts are stubborn things, as counsel says.

9    Both defendants have *kunyas*.  Elhuzayel's is Abu Mohammed.

10   Badawi is Ibn Adam, new names for the holy warriors.  Same

11   men, just different names.

12:16    12   Elhuzayel claims he couldn't possibly be going to

13   join ISIS because he supposedly didn't have a plan to cross

14   over into Syria.  Well, it's only right next door to Turkey

15   after all, and you heard that Istanbul is a common starting

16   point for a route into Syria.

12:17    17   Badawi admitted that Elhuzayel talks to the

18   Mujahideen, and you know that Elhuzayel had contact with all

19   sorts of ISIS supporters on Twitter, and even Abu Hussain,

20   the notorious ISIS operative in Syria.

12:17    21   You heard testimony that ISIS has facilitators

22   online and a whole network of supporters on social media who

23   help foreign fighters like Elhuzayel get to the front line,

24   the place Badawi and Elhuzayel are going and never looking

25   back *inshallah*.

12:17  1          About the bank fraud, Elhuzayel claims he can't be

2    held responsible for some of the counts because his brother

3    did those deposits.  But why would his brother deposit the

4    stolen checks into Elhuzayel's account if he wasn't part of

5    it?  And you know who gets the money.  It's in the

6    defendant's account.

12:18  7          And regarding the financial aid fraud, there's no

8    stipulation that Badawi, in fact, gave his mother $700.  The

9    stipulation is just that that's what his mother would

10    testify had she been called to the stand.  In any event, it

11    doesn't matter if Badawi gave cash to his mother.  You can't

12    buy a ticket to go join ISIS with your free Pell Grant

13    money.  Period.  It doesn't matter if you give someone cash

14    later; it's a crime, and it's completed when Badawi uses the

15    Higher One card to buy the ticket to Istanbul.

12:18 16          Now, Defendant Badawi wants you to believe that

17    he's only guilty of choosing friends poorly; that somehow he

18    was duped and taken advantage of and had no idea that

19    Elhuzayel was going to join ISIS.  Of course, those

20    recordings and Facebook posts show otherwise.  Remember,

21    Badawi has started his Islamic State campaign in

22    Orange County and recruited three others.  They are five

23    now, and he's going to convert more.  Remember, the focus is

24    on defendant's own words and their own actions.

12:19 25          And those photographs that you've seen, the

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

13

|  |  |  |
|---|---|---|
| | 1 | defendants chose the evidence, as graphic as it is. |
| 12:19 | 2 | By the way, what's on your iPhone?  Pictures of |
| | 3 | family and friends, children, grandchildren, fun times |
| | 4 | together, memorable moments. |
| 12:19 | 5 | What's on Badawi's iPhone?  Who are his heroes? |
| | 6 | Abu Bakr al-Baghdadi, Jihadi John, Osama Bin Laden, and |
| | 7 | Mohammed Atta.  Murderers, each of them.  Plus shocking |
| | 8 | photos of death at the hands of ISIS. |
| 12:20 | 9 | Counsel for Defendant Elhuzayel tried to tell you |
| | 10 | in opening that this is just like the Yankees and the Red |
| | 11 | Sox; it's all just a game, with Elhuzayel choosing a side, |
| | 12 | picking a team. |
| 12:20 | 13 | Tell that to victims James Foley, Steven Sotloff, |
| | 14 | Peter Kassig and their grieving families.  Nothing could be |
| | 15 | further from the truth. |
| 12:20 | 16 | You've heard that ISIS is the most lethal, the most |
| | 17 | deadly terrorist group in the world today.  They kill |
| | 18 | innocent people.  They kidnap aid workers.  They cut their |
| | 19 | heads off on video.  They line Christians up on the shore |
| | 20 | and they slaughter them.  They burn people alive. |
| 12:21 | 21 | Defendants know that and they like it. |
| 12:21 | 22 | Elhuzayel wants to exterminate the Shia, an entire |
| | 23 | population.  Exterminate:  That's what you do to get rid of |
| | 24 | pests, not human beings. |
| 12:21 | 25 | He wants to kill Jewish people and see their heads |

**DEBBIE GALE, U.S. COURT REPORTER**

|          |    |                                                               |
|----------|----|---------------------------------------------------------------|
|          | 1  | roll.  He wants to behead Assad, the leader of Syria.         |
| 12:21    | 2  | Elhuzayel and his friend talk about beheading; you            |
|          | 3  | heard them.  *Oh, hey, beheading isn't really that bad after* |
|          | 4  | *all.  It's quick.  It's really more frightening than*        |
|          | 5  | *painful.*  Ask yourself, who talks like that?                |
| 12:21    | 6  | This isn't cheerleading.  It's not a game.  It's              |
|          | 7  | terrorism, and they want to take over the world.  Remember,   |
|          | 8  | from Paris to Texas, you're not safe.                         |
| 12:22    | 9  | Ladies and gentlemen, there's no message to be sent           |
|          | 10 | to the administration.  There is evidence to be evaluated.    |
|          | 11 | And that evidence will show that there's an evil that         |
|          | 12 | threatens the world today.  A call has gone out to soldiers   |
|          | 13 | of the Islamic State to rise up, terrify the enemies of       |
|          | 14 | Allah, dismember America, and unleash volcanos of jihad.      |
| 12:22    | 15 | Defendants heard that call.  They have answered               |
|          | 16 | that call.  And we urge you to find them guilty on all        |
|          | 17 | counts.                                                        |
| 12:22    | 18 | Thank you very much.                                          |
| 12:22    | 19 | THE COURT:  I'm going to ask you to go back into              |
|          | 20 | the jury room collectively for just a moment.  Let me         |
|          | 21 | discuss with counsel the rest of the day for just a moment    |
|          | 22 | before we send you to lunch or possibly send you home.        |
| 12:23    | 23 | You're admonished not to discuss this matter                  |
|          | 24 | amongst yourselves.  Don't form or express any opinion.  I    |
|          | 25 | still have to instruct you on the law.  And I want to talk    |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | about how best to use your time with counsel for just a                |
|       | 2  | moment.                                                                 |
| 12:23 | 3  | Debbie, if you would take the jury and alternates                      |
|       | 4  | back.                                                                   |
| 12:23 | 5  | *(Outside the presence of the jury.)*                                  |
| 12:24 | 6  | *(Court and clerk confer.)*                                            |
| 12:24 | 7  | THE COURT:  All right.  Counsel, let me inform you                     |
|       | 8  | that we already ordered lunch for the jury today.  I can               |
|       | 9  | instruct them, if you'd like, today; but my guess is that              |
|       | 10 | they will, after they go to lunch, probably go home pretty             |
|       | 11 | quickly.  That means that the instructions aren't -- well,             |
|       | 12 | the instructions are today, but they don't begin their                 |
|       | 13 | deliberations until tomorrow morning.  So I'm happy to do              |
|       | 14 | that.                                                                   |
| 12:25 | 15 | I can swear them, feed them lunch, and then send                       |
|       | 16 | them home.  And instruct tomorrow morning at 10:00 o'clock.            |
|       | 17 | So it's your preference.  Why don't all of you discuss the             |
|       | 18 | way you'd like the Court to conduct business today.                    |
| 12:25 | 19 | In other words, either instructions tomorrow at                       |
|       | 20 | 10:00 o'clock close in time to their deliberations, or I can           |
|       | 21 | certainly instruct them now.  It will be about 45 minutes of           |
|       | 22 | instruction.  But then my guess is after they eat lunch,               |
|       | 23 | they might as well go home.  We're gonna have to put a lot             |
|       | 24 | of evidence back in the jury room this afternoon.                      |
| 12:26 | 25 | *(Counsel confer.)*                                                    |

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

16

| | | |
|---|---|---|
| 12:26 | 1 | MS. CORRIGAN:  We have a split, but I think the |
| | 2 | majority may perhaps prevail. |
| 12:26 | 3 | THE COURT:  Who wants to do what? |
| 12:26 | 4 | MS. CORRIGAN:  I'd like 10:00 o'clock tomorrow |
| | 5 | morning. |
| 12:26 | 6 | MS. HEINZ:  The government would prefer that the |
| | 7 | instruction happen tomorrow, Your Honor. |
| 12:26 | 8 | THE COURT:  Okay.  And, Counsel, you'd prefer it |
| | 9 | today? |
| 12:26 | 10 | MR. LENGYEL-LEAHU:  If possible, sure. |
| 12:26 | 11 | MS. CORRIGAN:  I think it's just too long of a |
| | 12 | stretch.  These folks have been here since 8:00, and it's |
| | 13 | now 12:25.  They haven't eaten.  And I prefer not to have |
| | 14 | them have the instructions when they haven't had a chance to |
| | 15 | eat. |
| 12:26 | 16 | THE COURT:  If I was going to instruct them, I |
| | 17 | would instruct them right now and I would then probably send |
| | 18 | them home for the day. |
| 12:27 | 19 | MR. LENGYEL-LEAHU:  My point is simply that |
| | 20 | they've heard the arguments.  They've got all the evidence. |
| | 21 | If they go home and start thinking about the case -- and it |
| | 22 | will be hard not to -- they won't have the judge's |
| | 23 | instructions in their mind tonight when they're at home |
| | 24 | alone pondering these issues. |
| 12:27 | 25 | THE COURT:  All right.  Then is it acceptable to |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

17

|  |  |  |
|---|---|---|
|  | 1 | you -- unless there's a complete agreement, then the safest |
|  | 2 | course of action for the Court is -- regardless of the |
|  | 3 | majority vote -- is to follow the dissent.  It is acceptable |
|  | 4 | to you after I instruct that I then give them lunch and send |
|  | 5 | them home? |
| 12:27 | 6 | MR. LENGYEL-LEAHU:  Completely acceptable. |
| 12:27 | 7 | THE COURT:  What shall I do with the alternates? |
| 12:27 | 8 | MS. CORRIGAN:  I think we should keep them here |
|  | 9 | and they should listen to the instructions. |
| 12:27 | 10 | THE COURT:  They'll be here today for the |
|  | 11 | instructions today, obviously, or tomorrow; but after the |
|  | 12 | jury is instructed, sometimes we've sent the alternates home |
|  | 13 | and placed them on call.  The danger here is that once they |
|  | 14 | return to the workplace and their home, they're going to be |
|  | 15 | subject to input.  The inevitable question is, "Where have |
|  | 16 | you been for the last three weeks?"  And that's gonna open |
|  | 17 | up a conversation.  So I think it would be wise if I brought |
|  | 18 | the jurors back along with the alternates, but obviously, we |
|  | 19 | separate them and keep them in the courthouse in a separate |
|  | 20 | location, just like the cafeteria. |
| 12:28 | 21 | MR. LENGYEL-LEAHU:  That's prudent, Your Honor. |
| 12:28 | 22 | MS. CORRIGAN:  That's fine. |
| 12:28 | 23 | MS. HEINZ:  The government agrees, Your Honor. |
| 12:28 | 24 | THE COURT:  Then, Deb, we are gonna bring out the |
|  | 25 | jury. |

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

18

12:28  1        And, Counsel, after the instructions, I'm simply

2   going to allow them to eat because lunch has been brought up

3   for them.  If you would like re-instruction tomorrow

4   morning, as long as it's the entire packet, I'll read the

5   packet again.  So there's no harm in reading the packet

6   twice, if needed, if one of you requests.

12:29  7        *(In the presence of the jury.)*

12:29  8        THE COURT:  All right.  Well, the jury's present.

9   The alternates are present.

12:29  10       I want to apologize.  Normally, we'd send you out

11  to lunch, but lunch was ordered at 1:00 o'clock.  We took a

12  wild guess about when the arguments would conclude.

12:30  13       In reading these instructions to you, by the time

14  you get lunch at 1:00 o'clock and eat, et cetera, we're

15  going to send you home after that.  We need some time just

16  in the jury room to bring exhibits back, and there's no

17  reason for you to sit here or sit in a separate location for

18  the hour or so that's going to consume our time.  It's not

19  worthwhile to you.  Then you'll resume or start your

20  deliberations tomorrow when you come back in.

12:30  21       Also, I'm happy, as I informed counsel, to read the

22  instructions today, and I'm happy to re-read this

23  instruction packet tomorrow if any juror requests.  So let's

24  begin.

12:30  25       I'm going to give you the packet of my instructions

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | that I read to you back in the jury room.  You'll have them  |
|       | 2  | with you.  Please return them to me when you're done, along  |
|       | 3  | with the verdict forms.                                      |
| 12:30 | 4  | **JURY INSTRUCTIONS**                                        |
| 12:30 | 5  | THE COURT:  *(Reading:)*                                     |
| 12:30 | 6  | Members of the jury, now that you've heard all of            |
|       | 7  | the evidence, it is my duty to instruct you on the law that  |
|       | 8  | applies to this case.  A copy of these instructions will be  |
|       | 9  | available in the jury room for you to consult.               |
| 12:31 | 10 | It is your duty to weigh and to evaluate all the             |
|       | 11 | evidence received in the case and, in that process, to       |
|       | 12 | decide the facts.                                            |
| 12:31 | 13 | And, Counsel, with that added instruction, is that           |
|       | 14 | an appropriate instruction and all parties are stipulating   |
|       | 15 | to it?                                                       |
| 12:31 | 16 | MS. CORRIGAN:  Yes, Your Honor.                              |
| 12:31 | 17 | MS. HEINZ:  Yes, Your Honor.                                 |
| 12:31 | 18 | MR. LENGYEL-LEAHU:  Yes, Your Honor.                         |
| 12:31 | 19 | THE COURT:  All right.                                       |
| 12:31 | 20 | Then, it is your duty to weigh and to evaluate all           |
|       | 21 | the evidence received in the case and, in that process, to   |
|       | 22 | decide the facts.                                            |
| 12:31 | 23 | It is also your duty to apply the law as I give it           |
|       | 24 | to you to the facts as you find them, whether you agree with |
|       | 25 | the law or not.  You must decide the case solely on the      |

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
|       | 1  | evidence and the law.  And you must not be influenced by any      |
|       | 2  | personal likes or dislikes, opinions, prejudices, or              |
|       | 3  | sympathy.  You will recall that you took an oath promising        |
|       | 4  | to do that at the beginning of the case.                          |
| 12:32 | 5  | You must follow all of these instructions and not                 |
|       | 6  | single out some and ignore others; they are all important.        |
| 12:32 | 7  | Please do not read into these instructions or into                |
|       | 8  | anything I may have said or done any suggestion as to what        |
|       | 9  | verdict you should return.  That is a matter entirely up to       |
|       | 10 | you.                                                              |
| 12:32 | 11 | The Indictment is not evidence.  The defendants                   |
|       | 12 | have pleaded not guilty to the charges.  The defendants are       |
|       | 13 | presumed to be innocent unless and until the government           |
|       | 14 | proves the defendants guilty beyond a reasonable doubt.  In       |
|       | 15 | addition, the defendants do not have to testify or present        |
|       | 16 | any evidence to prove their innocence.                            |
| 12:32 | 17 | The government has the burden of proving every                    |
|       | 18 | element of the charges beyond a reasonable doubt.                 |
| 12:33 | 19 | A defendant in a criminal case has a constitutional               |
|       | 20 | right not to testify.  You may not draw any inference of any      |
|       | 21 | kind from the fact that the defendants did not testify.           |
| 12:33 | 22 | Proof beyond a reasonable doubt is proof that                     |
|       | 23 | leaves you firmly convinced the defendant is guilty.  It is       |
|       | 24 | not required that the government prove guilt beyond all           |
|       | 25 | possible doubt.  A reasonable doubt is doubt based upon           |

1    reason and common sense and is not based purely on

2    speculation.  It may arise from a careful and impartial

3    consideration of all the evidence or from lack of evidence.

12:33    4         If after a careful and partial consideration of all

5    the evidence, you are not convinced beyond a reasonable

6    doubt that the defendant is guilty, it is your duty to find

7    the defendant not guilty.

12:33    8         On the other hand, if after a careful and impartial

9    consideration of all the evidence, you are convinced beyond

10   a reasonable doubt that the defendant is guilty, it is your

11   duty to find the defendant guilty.

12:33    12        The evidence you are to consider in deciding what

13   the facts are consists of:

12:34    14        First, the sworn testimony of any witness;

12:34    15        Second, the exhibits received into evidence; and,

12:34    16        Third, any facts to which the parties have agreed.

12:34    17        In reaching your verdict, you may consider only the

18   evidence and exhibits received in evidence.  The following

19   things are not evidence and you may not consider them in

20   deciding what the facts are:

12:34    21        First, questions, statements, objections and

22   arguments by lawyers are not evidence.  The lawyers are not

23   witnesses.  Although you must consider a lawyer's questions

24   to understand the answers of a witness, the lawyer's

25   questions are not evidence.

12:34  1          Similarly, what the lawyers have said in their

2      opening statements, closing arguments, and at other times is

3      intended to help you interpret the evidence, but it is not

4      evidence.  If the facts as you remember them differ from the

5      way the lawyers state them, your memory of them controls.

12:34  6          Second, any testimony that you *(sic)* have excluded,

7      stricken or instructed you -- or I've instructed you to

8      disregard is not evidence.  In addition, some evidence

9      received only for a limited purpose.  *(Verbatim.)*  When I've

10     instructed you to consider certain evidence in a limited

11     way, you must do so.

12:35  12         And third, anything you may have seen or heard when

13     the court was not in session is not evidence.  You are to

14     decide the case solely on the evidence received at this

15     trial.

12:35  16         Evidence may be direct or circumstantial.  Direct

17     evidence is direct proof of a fact such as testimony by a

18     witness about what that witness personally saw or heard or

19     did.  Circumstantial evidence is indirect evidence; that is,

20     it is proof of one or more facts from which you can find

21     another fact.

12:35  22         You are to consider both direct and circumstantial

23     evidence.  Either can be used to prove any fact.  The law

24     makes no distinction between the weight to be given to

25     either direct or circumstantial evidence.  It is for you to

Case 8:15-cr-00060-DOC  Document 300  Filed 03/31/17  Page 23 of 55  Page ID #:5125
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

23

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | decide how much weight to give to any evidence.              |
| 12:35 | 2  | The parties have agreed to certain facts that have           |
|       | 3  | been stated to you.  You should therefore treat these facts  |
|       | 4  | as having been proved.                                       |
| 12:36 | 5  | The parties have agreed that *(sic)* Samia Saad              |
|       | 6  | Suliman's testimony would be if called as a witness.  You    |
|       | 7  | should consider that testimony in the same way as if it had  |
|       | 8  | been given here in court.                                    |
| 12:36 | 9  | Sometimes I ordered that evidence be stricken from           |
|       | 10 | the record and that you disregard or ignore the evidence.    |
|       | 11 | That means that when you are deciding the case, you must not |
|       | 12 | consider the evidence that I told you to disregard.          |
| 12:36 | 13 | You've heard evidence that was received for a                |
|       | 14 | limited purpose.  I instruct you that this evidence is       |
|       | 15 | admitted only for the limited purpose described during the   |
|       | 16 | trial, and therefore, you must consider it only for that     |
|       | 17 | limited purpose and not for any other purpose.               |
| 12:36 | 18 | In deciding the facts in this case, you may have to          |
|       | 19 | decide which testimony to believe and which testimony not to |
|       | 20 | believe.  You may believe everything a witness says or part  |
|       | 21 | of it or none of it.                                         |
| 12:37 | 22 | In considering the testimony of any witness, you             |
|       | 23 | may take into account:                                       |
| 12:37 | 24 | First, the witness's opportunity and ability to see          |
|       | 25 | or hear or know the things testified to;                     |

12:37    1          Second, the witness's memory;

12:37    2          Third, the witness's manner while testifying;

12:37    3          Fourth the witness's interest in the outcome of the
         4   case, if any;

12:37    5          Fifth, the witness's bias or prejudice, if any;
         6   and,

12:37    7          Sixth, whether other evidence contradicted the
         8   witness's testimony; and,

12:37    9          Seventh, the reasonableness of the witness's
        10   testimony in light of all the evidence; and,

12:37   11          Eighth, any other factors that bear on
        12   believability.

12:37   13          The weight of the evidence as to a fact does not
        14   necessarily depend on the number of witnesses who testify.
        15   What is important is how believable the witnesses were and
        16   how much weight you think their testimony deserves.

12:37   17          You are here only to determine whether the
        18   defendants are guilty or not guilty of the charges in the
        19   Indictment.  The defendants are not on trial for any conduct
        20   or offense not charged in the Indictment.

12:37   21          A separate crime is charged against one or more of
        22   the defendants in each count.  The charges have been joined
        23   for trial.  You must decide the case of each defendant on
        24   each crime charged against that defendant separately.  Your
        25   verdict on any count as to one defendant should not control

1    your verdict on any other count or as to the other

2    defendant.

12:38    3         All the instructions apply to each defendant and to

4    each count unless a specific instruction states that it

5    applies only to a specific defendant or count.

12:38    6         The Arabic, Korean, and Vietnamese languages have

7    been used during this trial.  The evidence you are to

8    consider is only that provided through the English-language

9    translations admitted into evidence and through the official

10   court interpreters.  Although some of you may know the

11   Arabic, Korean, and/or the Vietnamese languages, it is

12   important that all jurors consider the same evidence.

13   Therefore, you must accept the evidence presented in the

14   English translation and interpretation and disregard any

15   different meaning.

12:39    16        You've heard and watched recordings that have been

17   received into evidence.  The recordings contained subtitles

18   that were being provided to help you identify speakers and

19   to help you decide what the speakers say.  Remember that the

20   recording is the evidence, not the subtitles.  If you heard

21   something different from what appeared in the subtitles,

22   what you heard is controlling.

12:39    23        However, some words, phrases, or sentences in the

24   recordings are in the Arabic language.  The subtitles

25   contain English-language translations of the Arabic-language

Case 8:15-cr-00060-DOC  Document 300  Filed 03/31/17  Page 26 of 55  Page ID #:5128
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

26

1   words, phrases, or sentences.  These English translations

2   are indicated in the subtitles by italics or brackets, and

3   they've been admitted into evidence.  Although some of you

4   may know the Arabic language, it is important that all

5   jurors consider the same evidence.  Therefore, you must

6   accept the English translations contained in the subtitles

7   even if you would translate it differently.

12:40   8       The Indictment charges that the offenses alleged in

9   the Indictment were committed on or about a certain date.

10  Although it is necessary for the government to prove beyond

11  a reasonable doubt that the offense was committed on a date

12  reasonably near the dates alleged in the Indictment, it is

13  not necessary for the government to prove that the offenses

14  were committed precisely on the dates charges.

12:40   15      You've heard testimony that the defendants made a

16  statement.  It is for you to decide, first, whether the

17  defendants made the statement and, second, if so, how much

18  weight to give to it.  In making those decisions, you should

19  consider all the evidence about the statement, including the

20  circumstances under which the defendants may have made it.

12:40   21      You've heard testimony from witnesses who testified

22  to opinions and the reasons for their opinions.  This

23  opinion testimony is allowed because of the education or

24  experience of these witnesses.

12:40   25      Such opinion testimony should be judged like any

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 27 of 55   Page ID #:5129
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

27

1    other testimony.  You may accept it or reject it and give it

2    as much weight as you think it deserves, considering the

3    witness's education and experience, the reasons given for

4    the opinion, and all the other evidence in the case.

12:41    5         You've heard testimony from witnesses who testified

6    to both facts and opinions and the reasons for their

7    opinions.  Fact testimony is based on what the witness saw,

8    heard, or did.  Opinion testimony is based on the education

9    or experience of the witness.

12:41   10         As to the testimony about facts, it is your job to

11   decide which testimony to believe and which testimony not to

12   believe.  You may believe everything a witness says or part

13   of it or none of it.  As to the testimony about the

14   witness's opinions, this testimony -- or, this opinion

15   testimony is allowed because of the education or experience

16   of this witness.

12:41   17         Opinion testimony should be judged like any other

18   testimony.  You may accept all of it, part of it, or none of

19   it.  You should give it as much weight as you think it

20   deserves, considering the witness's education and

21   experience, the reasons given for the opinion, and all the

22   other evidence in the case.

12:42   23         During the trial, certain charts and summaries were

24   shown to you in order to help explain the evidence in the

25   case.  These charts and summaries were not identified -- or,

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

28

strike that.  These charts and summaries were not admitted

into evidence and will not go into the jury room with you.

They are not themselves evidence or proof of any facts.  If

they do not correctly reflect the facts or figures shown by

the evidence in the case, you should disregard these charts

and summaries and determine the facts from the underlying

offense -- or from the underlying evidence.  I'm sorry.

Strike the word "offense."

12:42      Certain charts and summaries have been admitted

into evidence.  Charts and summaries are only as good as the

underlying supporting material.  You should therefore give

them only such weight as you think the underlying material

deserves.

12:42      An act is done knowingly if the defendant is aware

of the act and does not act through ignorance, mistake, or

accident.  The government is not required to prove that the

defendant knew that his acts or omissions were unlawful.

You may consider evidence of the defendant's words, acts, or

omissions along with all the other evidence in deciding

whether the defendant acted knowingly.

12:43      Each defendant is charged in Count One of the

Indictment with conspiracy to provide material support and

resources to the Islamic State of Iraq and the Levant, ISIL,

also known as the Islamic State of Iraq and Syria, ISIS,

al-Qa'ida in Iraq and the Islamic State, a designated

1   foreign terrorist organization in violation of Section 2339B

2   of Title 18 of the United States Code.

12:43   3        In order for a defendant to be found guilty of that

4   charge, the government must prove each of the following

5   elements beyond a reasonable doubt:

12:44   6        First, beginning on or about a date unknown and

7   ending on or about May 21st, 2015, there was an agreement

8   between two or more persons to provide material support or

9   resources to a designated foreign terrorist organization;

12:44   10        Second, the defendant became a member of the

11   conspiracy knowing of its object and intending to help

12   accomplish it;

12:44   13        Third, the defendant knew that ISIL, also known as

14   ISIS, was a designated foreign terrorist organization or had

15   engaged or was engaging in terrorist activity or terrorism;

16   and,

12:44   17        Fourth, the offense occurred in whole or in part in

18   the U.S.

12:44   19        A conspiracy is a kind of criminal partnership, an

20   agreement of two or more persons to commit one or more

21   crimes.  The crime of conspiracy is the agreement to do

22   something unlawful; it does not matter whether the crime

23   agreed upon was committed.

12:45   24        For a conspiracy to have existed, it is not

25   necessary that the co-conspirator -- strike that -- that the

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

30

1    conspirators made a formal agreement or that they agreed on

2    every detail of the conspiracy.  It is not enough, however,

3    that they simply met, discussed matters of common interest,

4    acted in similar ways, or perhaps helped one another.  You

5    must find that there was a plan to provide material support

6    or resources to a designated foreign terrorist organization

7    as the object of the conspiracy with all of you agreeing as

8    to the particular crime which the conspirators agreed to

9    commit.

12:45  10       One becomes a member of a conspiracy by willfully

11   participating in the unlawful plan with the intent to

12   advance or further some object or purpose of the conspiracy,

13   even though the person does not have full knowledge of all

14   the details of the conspiracy.  Furthermore, one who

15   willfully joins an existing conspiracy is as responsible for

16   it as the originators.

12:46  17       On the other hand, one who has no knowledge of a

18   conspiracy, but happens to act in a way which furthers some

19   object or purpose of the conspiracy, does not thereby become

20   a conspirator.  Similarly, a person does not become a

21   conspirator merely by associating with one or more persons

22   who are conspirators, nor merely by knowing that a

23   conspiracy exists.

12:46  24       The terms "material support or resources" include

25   any property, tangible or intangible, or service, including

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 31 of 55   Page ID #:5133
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

31

1    currency or monetary instruments or financial securities,

2    financial services, lodging, training, expert advice or

3    assistance, safe houses, false documentation or

4    identification, communications equipment, facilities,

5    weapons, lethal substances, explosives, personnel and

6    transportation.  It does not include medicine or religious

7    materials.

12:47  8          Here, the government has alleged that the "material

9    support or resources" was personnel, specifically, Defendant

10   Nader Salem Elhuzayel.  The term "personnel" means one or

11   more persons, which can include the defendant's own person.

12   However, no person can be convicted of a violation of this

13   statute in connection with providing personnel unless that

14   person has knowingly conspired to provide a foreign

15   terrorist organization with one or more individuals, who may

16   include the defendant, to work under that terrorist

17   organization's direction or control.

12:47  18         Individuals who act entirely independently of the

19   foreign terrorist organization to advance its goals or

20   objectives are not considered to be working under the

21   foreign terrorist organization's directions and control.

12:47  22         The term "foreign terrorist organization" has a

23   particular meaning under the statute.  In order for an

24   organization to qualify as a foreign terrorist organization,

25   the organization must have been designated as such by the

1   Secretary of State through a process established by law.  I

2   instruct you that ISIL, also known as ISIS, has been so

3   designated by the Secretary of State and was so designated

4   by the Secretary of State throughout the period covered by

5   the Indictment.

12:48    6        The term "terrorist activity" includes any activity

7   that if it had been committed in the United States would be

8   unlawful under the laws of the United States or any state

9   and that involves a threat, attempt, or conspiracy to use

10   explosives, firearm, or other weapon or dangerous device

11   other than for mere personal monetary gain, with intent to

12   endanger, directly or indirectly, the safety of one or more

13   individuals or to cause substantial damage to property.

12:48   14        The term "terrorism" means premeditated,

15   politically-motivated violence perpetrated against

16   noncombatant targets by subnational groups or clandestine

17   agents.

12:49   18        A conspiracy may continue for a long period of

19   time.  It may include the performance of many transactions.

20   It is not necessary that all members of the conspiracy

21   joined it at the same time, and one may become a member of a

22   conspiracy without full knowledge of all the details of the

23   unlawful scheme or the names, identities, or locations of

24   all the other members.

12:49   25        Even though a defendant did not directly conspire

1    with other conspirators in the overall scheme, the defendant

2    has, in effect, agreed to participate in the conspiracy if

3    the government proves each of the following elements beyond

4    a reasonable doubt:

12:49    5         First, the defendant directly conspired with one or

6    more conspirators to carry out at least one of the objects

7    of the conspiracy;

12:49    8         Second, the defendant knew or had reason to know

9    that other conspirators were involved with those with whom

10   the defendant directly conspired; and,

12:49   11         Third, the defendant had reason to believe that

12   whatever benefits the defendant might get from the

13   conspiracy were probably dependent upon the success of the

14   entire venture.

12:50   15         It is not a defense that a person's participation

16   in a conspiracy was minor or for a short period of time.

12:50   17         Defendant Nader Salem Elhuzayel is charged in Count

18   Two of the Indictment with attempting to provide material

19   support and resources, as that term is defined in Title 18,

20   United States Code, Section 2339A(b)(1), that is, personnel,

21   namely, himself, to a foreign terrorist organization,

22   namely, the Islamic State of Iraq and the Levant, ISIL, also

23   known as the Islamic State of Iraq and Syria, ISIS, and the

24   al-Qa'ida in Iraq and the Islamic State, in violation of

25   Section 2339B of Title 18 of the United States Code.

12:50    1          In order for a defendant to be found guilty of that

2   charge, the government must prove each of the following

3   elements beyond a reasonable doubt:

12:51    4          First, the defendant intended to provide material

5   support or resources to a foreign terrorist organization;

6   and,

12:51    7          Second, the defendant did something that was a

8   substantial step toward committing the crime of providing

9   material support or resources to a foreign terrorist

10   organization.

12:51   11         Mere preparation is not a substantial step towards

12   committing the crime.  To constitute a substantial step, a

13   defendant's act or actions must demonstrate that the crime

14   will take place unless interrupted by independent

15   circumstances.

12:51   16         Defendant Muhanad Elfatih M.A. Badawi is charged in

17   Count Three of the Indictment with aiding and abetting an

18   attempt to provide material support or resources as that

19   term is defined in Title 18, United States Code,

20   Section 2339(a)(b)(1), that is, personnel, namely defendant

21   Nader Salem Elhuzayel, to a foreign terrorist organization,

22   namely, the Islamic State of Iraq and the Levant, ISIL, also

23   known as the Islamic State of Iraq and Syria, ISIS,

24   al-Qa'ida in Iraq, and the Islamic State, in violation of

25   Section 2339B of Title 18 of the United States Code.

12:52    1            A defendant may be found guilty of attempting to

         2    provide material support or resources to a designated

         3    foreign terrorist organization, even if the defendant

         4    personally did not commit the act or acts constituting the

         5    crime but aided and abetted in its commission.

12:52    6            To prove a defendant guilty of attempting to

         7    provide material support or resources to a designated

         8    foreign terrorist organization by aiding and abetting, the

         9    government must prove each of the following elements

         10   *(verbatim)* beyond a reasonable doubt:

12:52    11           First, the crime of attempting to provide material

         12   support or resources to a designated foreign terrorist

         13   organization was committed by someone;

12:52    14           Second, the defendant aided, counseled, commanded,

         15   induced or procured that person with respect to at least one

         16   element of the attempt to provide material support or

         17   resources to a designated foreign terrorist organization;

12:53    18           Third, the defendant acted with the intent to

         19   facilitate the attempt to provide material support or

         20   resources to a designated foreign terrorist organization;

         21   and,

12:53    22           Fourth, the defendant acted before the crime was

         23   completed.

12:53    24           It is not enough that the defendant merely

         25   associated with the person committing the crime or

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 36 of 55   Page ID #:5138
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

36

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | unknowingly or unintentionally did things that were helpful    |
|       | 2  | to that person or was present at the scene of the crime.       |
|       | 3  | The evidence must show beyond a reasonable doubt that the      |
|       | 4  | defendant acted with the knowledge and intention of helping    |
|       | 5  | that person commit attempting to provide material support or   |
|       | 6  | resources to a designated foreign terrorist organization.      |
| 12:53 | 7  | A defendant acts with the intent to facilitate the            |
|       | 8  | crime when a defendant actively participates in a criminal     |
|       | 9  | venture with advanced knowledge of the crime.                  |
| 12:54 | 10 | The government's not required to prove precisely              |
|       | 11 | which defendant actually committed the crime and which         |
|       | 12 | defendant aided and abetted.                                   |
| 12:54 | 13 | As I've instructed you --                                     |
| 12:54 | 14 | Now, Counsel, just a moment.  Was that instruction            |
|       | 15 | read correctly?                                                |
| 12:54 | 16 | MS. CORRIGAN:  Yes, Your Honor.                               |
| 12:54 | 17 | MR. LENGYEL-LEAHU:  Yes.                                       |
| 12:54 | 18 | MS. HEINZ:  Yes, Your Honor.                                   |
| 12:54 | 19 | THE COURT:  I wanted to make sure.                            |
| 12:54 | 20 | As I've instructed you, Defendant Nader Salem                 |
|       | 21 | Elhuzayel is charged with attempting to provide material       |
|       | 22 | support and resources to a foreign terrorist organization      |
|       | 23 | and Defendant Muhanad Elfatih M.A. Badawi is charged with      |
|       | 24 | aiding and abetting an attempt to provide material support     |
|       | 25 | and resources to a foreign terrorist organization.            |

12:54  1          So that you understand the crime that

2     Defendant Elhuzayel is charged with attempting and

3     Defendant Badawi is charged with aiding and betting an

4     attempt, I will now instruct you about the crime of

5     providing material support or resources to a foreign

6     terrorist organization.

12:55  7          In order for a defendant to be found guilty of that

8     crime, the government must prove each of the following

9     elements beyond a reasonable doubt:

12:55  10          First, the defendant provided material support or

11    resources;

12:55  12          Second, the defendant provided the support or

13    resources to a foreign terrorist organization;

12:55  14          Third, the defendant acted knowingly;

12:55  15          Fourth, the defendant knew that the Islamic State

16    of Iraq and the Levant, ISIL, also known as the Islamic

17    State of Iraq and Syria, ISIS, was a designated foreign

18    terrorist organization or had engaged or was engaging in

19    terrorist activity or terrorism; and,

12:55  20          Fifth, the offense occurred in whole or in part in

21    the United States.

12:55  22          Defendant Nader Salem Elhuzayel is charged in

23    Counts Four through Twenty-nine of the Indictment with bank

24    fraud, in violation of Title 18, United States Code,

25    Section 1344, and Title 18, United States Code,

Section 2(b).  In order for a defendant to be found guilty of these charges, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly executed a scheme to defraud a financial institution as a material matter;

Second, the defendant did so with the intent to defraud the financial institution; and,

Third, the financial institution was insured by the Federal Deposit Insurance Corporation.

The phrase "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive, cheat, or deprive a financial institution of something of value.

It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud.

It is also not necessary for the government to prove that the defendant was actually successful in defrauding any financial institution.

Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

An intent to defraud is an intent to deceive or cheat.  It is not necessary for the government to prove that the defendant personally did every act constituting the

offenses that are charged.

12:57   As a general rule, whatever any person -- whatever any person is legally capable of doing as an agent, the person can do through another as an agent.  So if the acts or conduct of another are deliberately ordered or directed by the defendant or deliberately authorized or consented to by the defendant, then the law holds the defendant responsible for such acts or conduct just the same as if personally committed by the defendant.

12:57   Defendant Muhanad Elfatih M. A. Badawi is charged in Count Thirty of the Indictment with financial aid fraud, in violation of Title 20, United States Code, Section 1097(a).  In order for a defendant to be found guilty of that crime, the government must prove each of the following elements beyond a reasonable doubt:

12:58   First, the defendant misapplied federal Pell Grant funds;

12:58   Second, the amount of federal Pell Grant funds exceeded $200;

12:58   Third, the defendant did so knowingly and willfully; and,

12:58   Fourth, the Federal Pell Grant funds were provided and insured under Subchapter IV of Chapter 28 of the United States Code, Title 20, or Part C of Subchapter I of Chapter 34 of the United States Code, Title 42.

12:58  1           I instruct you that Federal Pell Grant funds are

2     provided and insured under Chapter -- strike that --

3     subchapter IV of Chapter 28 of the United States Code,

4     Title 20.

12:58  5           The word "willfully" means that the defendant

6     committed the act voluntarily and purposefully *(sic)* and

7     with knowledge that his conduct was unlawful.

12:58  8           A specific intent to injure or defraud someone,

9     whether the United States or another, is not required for a

10    conviction based on the misapplication of Federal Pell Grant

11    funds.

12:59  12          When you begin your deliberations -- which will, in

13    all likelihood, be tomorrow morning -- elect one member of

14    the jury as your presiding juror or foreperson who will

15    preside over your deliberations and speak for you here in

16    court.  You'll then discuss the case with your fellow jurors

17    to reach agreement if you can do so.

12:59  18          Your verdict, whether guilty or not guilty, must be

19    unanimous.

12:59  20          Each of you must decide the case for yourself, but

21    you should do so only after you've considered all the

22    evidence, discussed it fully with the other jurors, and

23    listened to the views of your fellow jurors.

12:59  24          Do not be afraid to change your opinion if the

25    discussion persuades you that you should.  But do not come

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 41 of 55   Page ID #:5143
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

41

to a decision simply because other jurors think it is right.

12:59 It is important that you attempt to reach a
unanimous verdict, but of course, only if each of you can do
so after having made your own conscientious decision.

12:59 Do not change an honest belief about the weight or
effect of evidence simply to reach a verdict.

01:00 Because you must base your verdict only on the
evidence received in the case and on these instructions,
I'll remind you that you must not be exposed to any other
information about the case or the issues it involves.
Except for discussing the case with your fellow jurors
during your deliberations:  Do not communicate with anyone
in any way and do not let anyone else communicate with you
in any way about the merits of the case or anything to do
with it.  This includes discussing the case in person, in
writing, by phone, or electronic means, via e-mail, text
messaging, or any Internet chat room, blog, website, or
other feature.  This applies to communicating with your
family members, your employer, the media or press, and
people involved in the trial.

01:00 And if you're asked or approached in any way about
your jury service or anything about this case, you must
respond that you've been ordered not to discuss the matter
and to report the contact to the court.

01:00 Do not read, watch, or listen to any news or media

accounts or commentary about the case or anything to do with
it.  Do not do any research such as consulting dictionaries,
searching the Internet, or using other reference materials;
and do not make any investigation or in any other way try to
learn about the case on your own.

01:01          The law requires these restrictions to ensure the
parties have a fair trial based on the same evidence that
each party has had an opportunity to address.  A juror who
violates these restrictions jeopardizes the fairness of
these proceedings, and a mistrial could result that would
require the entire trial process to start over.

01:01          If any juror is exposed to any outside information,
please notify the court immediately.

01:01          Some of you have taken notes during the trial.
Whether or not you took notes, you should rely on your own
memory of what was said.  Notes are only to assist your
memory.  You should not be overly influenced by your notes
or those of your fellow jurors.

01:01          The punishment provided by law for the crimes
alleged in the Indictment is for the court to decide.  You
may not consider punishment in deciding whether the
government has proved its case against the defendants beyond
a reasonable doubt.

01:02          A verdict form's been prepared for you.  After
you've reached a unanimous agreement on a verdict, your

1    presiding juror or foreperson should complete the verdict

2    form according to your deliberations, sign it and date it

3    and advise the clerk or bailiff that you are ready to return

4    to the courtroom.

01:02    5        If it becomes necessary during your deliberations

6    to communicate with me, you may send a note through the

7    clerk or bailiff signed by any one or more of you.  No

8    member of the jury should ever attempt to communicate with

9    me except by signed writing, and I will respond to the jury

10   concerning the case only in writing or here in open court.

11   If you send out a question, I will consult with the lawyers

12   before answering it, which may take some time.  You may

13   continue your deliberations while waiting for the answer to

14   any question.  Remember that you're not to tell anyone,

15   including me, how the jury stands, numerically or otherwise,

16   on any question submitted to you, including the question of

17   the guilt of the defendant, until after you have reached a

18   unanimous verdict or have been discharged.

01:03    19       *(Court and clerk confer.)*

01:03    20       THE COURT:  Now, let me talk to you for just a

21   moment.

01:03    22       Debbie's going to swear you in just a moment, and

23   by law, once you are sworn, we can take you to lunch.

01:03    24       Before that time, we can't give you that benefit.

25   So I took a wild guess today about lunch, and it's back

01:03

01:04

01:04

01:04

```
 1    there waiting for you.

 2            But from this point forward, I'm going to cause the

 3    twelve of you as jurors to be sworn.

 4            I will not be swearing the alternates at this time.

 5    And the law requires me to separate the twelve of you from

 6    the other four of you.  And I need to have a discussion with

 7    what we're going to do about you (verbatim).  But I ordered

 8    lunch from the cafeteria for all sixteen of you.  So somehow

 9    the twelve of you are eating back there.  Debbie's gonna

10    find another convenient place for the four of you to eat,

11    and then we're gonna send you home after that.

12            We need some time just to put evidence into the

13    room, get our forms in order.  You'll being surprised.  It

14    will take an hour just to get set up for you.  I have

15    proposed and have talked to counsel about having that ready

16    for you tomorrow morning when you come in, instead of you

17    just sitting here.  Otherwise, I think you'd start your

18    deliberations about 2:30 or 3:00 o'clock and probably be

19    pretty tired at the end of the day.

20            Now, Counsel, let me inform you, once Debbie swears

21    the jurors, they can't have lunch together.  The alternates

22    are to be kept separate and apart from the -- from the

23    alternates (sic).  So we need to discuss in a moment what

24    we're going to do with the alternate jurors.  So unless

25    there's any objection, I'm going to have Debbie swear the
```

**DEBBIE GALE, U.S. COURT REPORTER**

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

45

|  |  |  |
|---|---|---|
|  | 1 | twelve jurors at this time.  On behalf of the government? |
| 01:05 | 2 | MS. HEINZ:  No objection. |
| 01:05 | 3 | THE COURT:  Ms. Corrigan? |
| 01:05 | 4 | MS. CORRIGAN:  No objection. |
| 01:05 | 5 | THE COURT:  Mr. Lengyel-Leahu? |
| 01:05 | 6 | MR. LENGYEL-LEAHU:  No objection. |
| 01:05 | 7 | MS. ELIOT:  No. |
| 01:05 | 8 | THE COURT:  Now, I'm also going to show counsel |
|  | 9 | the numbered instructions once again to be sure they're |
|  | 10 | sequential in order, but, Counsel, did I read those |
|  | 11 | correctly?  And if not, I'd like to correct the record |
|  | 12 | immediately so I'm quite certain that there's a correct |
|  | 13 | reading.  I stumbled over a couple words, said "strike |
|  | 14 | that," and had to back up on occasion. |
| 01:05 | 15 | MS. HEINZ:  They were correctly read, Your Honor. |
| 01:05 | 16 | MS. CORRIGAN:  They appear to be correct to me as |
|  | 17 | well, Your Honor. |
| 01:05 | 18 | THE COURT:  Mr. Lengyel-Leahu? |
| 01:05 | 19 | MR. LENGYEL-LEAHU:  I agree, Your Honor.  Thank |
|  | 20 | you. |
| 01:05 | 21 | THE COURT:  Then I want each of you to look at |
|  | 22 | these outside the jury's presence this evening after we |
|  | 23 | excuse them. |
| 01:06 | 24 | Debbie, I'm going to give you my instructions. |
|  | 25 | That's my only copy, so return them to me when you're done. |

01:06    1              Would the twelve of you stand.

01:06    2              I'm going to ask the other alternates to remain

         3    seated.

01:06    4              And, Debbie, would you give the oath to the jurors,

         5    please.

01:06    6         (Jury sworn.)

01:06    7              THE COURT:  All right.  Please be seated.  A lot

         8    of courts give those at the beginning, that one oath, and

         9    that is the only time you'll hear it.  I just wanted you to

        10    be sworn again to realize that you're now a deliberating

        11    jury.  But we're going to have the court security officer

        12    come forward, and I certainly know you well, but I need you

        13    to stop at the lectern and state your full name.

01:07   14              COURT SECURITY OFFICER:  Scott Breslin.

01:07   15              THE COURT:  Would you raise your right hand, sir.

01:07   16              **COURT SECURITY OFFICER SWORN**

01:07   17              COURT SECURITY OFFICER:  I do.

01:07   18              THE COURT:  All right.  Now, Counsel, is it

        19    acceptable that I have the twelve jurors go back and get

        20    their lunch?

01:07   21              I need to keep the other four jurors here in court

        22    and discuss what we're going to do with them for just a

        23    moment.  But, also, Debbie needs to separate out whatever

        24    they've ordered.

01:07   25         (Court and clerk confer.)

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 47 of 55   Page ID #:5149
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

47

01:07    1              THE COURT:  Linda's doing that right now, so

         2       that's already been resolved.  Then we need to find a

         3       separate place in the courthouse for you to have lunch.

         4       Maybe down in the cafeteria.

01:07    5              Now, counsel, is it acceptable that after lunch,

         6       that the jury goes about their business and they reconvene

         7       not at 8:00 o'clock tomorrow but at 9:00 o'clock?  Would

         8       that be acceptable?

01:07    9              MS. HEINZ:  Acceptable to the government, Your

        10       Honor.

01:07   11              MS. CORRIGAN:  Yes, Your Honor.

01:07   12              MR. LENGYEL-LEAHU:  Yes, Your Honor, that's

        13       acceptable.

01:08   14              THE COURT:  All right.  With this admonishment.

01:08   15              (To the jury:)  We've read these instructions, and

        16       you realize how important it is for you to have no input.

01:08   17              So I'm going to admonish you once again that you're

        18       not even to form or express an opinion about this case until

        19       you start your deliberations as a twelve-jury body tomorrow

        20       morning.

01:08   21              What does that mean?  Don't go home and think about

        22       this case or start making up your mind individually.  You're

        23       twelve people.  You're dutybound to discuss this matter and,

        24       if you can, to reach a resolution.

01:08   25              So, Counsel, with that, after the twelve jurors

                          DEBBIE GALE, U.S. COURT REPORTER

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

48

|  |  |  |
|---|---|---|
|  | 1 | eat, can they go on their way without further admonition of |
|  | 2 | the Court? |
| 01:08 | 3 | MS. HEINZ: Yes, Your Honor. |
| 01:08 | 4 | MS. CORRIGAN:  Yes, Your Honor. |
| 01:08 | 5 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 01:08 | 6 | THE COURT:  Can they also begin their |
|  | 7 | deliberations at 9:00 o'clock without the Court calling |
|  | 8 | itself into formal session as long we have all of the items |
|  | 9 | of evidence back in the jury room, the instructions as well |
|  | 10 | as the verdicts? |
| 01:08 | 11 | MS. HEINZ: Yes, Your Honor. |
| 01:08 | 12 | MS. CORRIGAN:  Yes, Your Honor. |
| 01:08 | 13 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 01:08 | 14 | THE COURT:  All right.  So, Debbie, when the |
|  | 15 | twelve jurors are present, you'll note the time.  But |
|  | 16 | 9:00 o'clock, not 8:00.  And you'll begin your |
|  | 17 | deliberations. |
| 01:09 | 18 | Now, is there any further instruction I need for |
|  | 19 | the jurors, Counsel?  And, remember, I'm happy to reread the |
|  | 20 | instructions again tomorrow morning.  At 12:30, I imagine |
|  | 21 | the jury's a little bit tired.  But I'm happy to reread them |
|  | 22 | if either of you request, but we can do so outside the |
|  | 23 | presence of the jury.  *(Verbatim.)* Okay? |
| 01:09 | 24 | MR. LENGYEL-LEAHU:  No, thank you, Your Honor. |
| 01:09 | 25 | THE COURT:  Okay.  All right.  I'll have Debbie |

| | | |
|---|---|---|
| | 1 | take the jurors back.  And if the four alternates would |
| | 2 | remain with me, Linda, my judicial assistant, is sorting out |
| | 3 | your food.  Okay? |
| 01:09 | 4 | *(Jury exits the courtroom.)* |
| 01:09 | 5 | *(Alternate jurors remain present.)* |
| 01:09 | 6 | **DISCUSSION WITH ALTERNATE JURORS** |
| 01:09 | 7 | THE COURT:  Now, let me speak to the four of you |
| | 8 | for a moment, because if there was good legal cause, |
| | 9 | somebody got the flu, an illness, or tragedy in one of the |
| | 10 | juror's families, in all likelihood, counsel would stipulate |
| | 11 | and the Court would find good cause so the jury could keep |
| | 12 | deliberating.  In other words, we wouldn't send eleven |
| | 13 | jurors home and bring them back in a week or two.  We'd have |
| | 14 | to see what that emergency was. |
| 01:10 | 15 | And, therefore, once again, any of you four |
| | 16 | gentlemen may be called.  You saw us randomly do that on at |
| | 17 | least two occasions now -- well, at least one occasion. |
| 01:10 | 18 | And we've discussed the fact that we're concerned |
| | 19 | about you returning to your employment during this period of |
| | 20 | time.  So we're going to ask you to come in a half hour |
| | 21 | later than the sitting jury.  And the reason for that is we |
| | 22 | don't want you mixing with the jury unless you become a |
| | 23 | member of the jury. |
| 01:10 | 24 | And what you should know, that the jury doesn't |
| | 25 | know, is, if in fact one of these sitting jurors was unable |

8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

50

| | | |
|---|---|---|
| | 1 | to continue, the deliberations start all over again.  In |
| | 2 | other words, they haven't resolved one of the counts and one |
| | 3 | of you gentlemen joins the sitting jury, and they say, |
| | 4 | *"Well, we've already decided the following."* |
| 01:11 | 5 | All the deliberations start over again because, in |
| | 6 | a sense, it's a brand-new jury; you've been added to it. |
| | 7 | Now, the jury doesn't know that, but I want you to know |
| | 8 | that. |
| 01:11 | 9 | Therefore, it's critical that you don't get any |
| | 10 | input, and we're really concerned about you going back to |
| | 11 | your employment or just your family, other than the evening |
| | 12 | hours you've been keeping, because nobody can resist saying, |
| | 13 | *"Hello, it's nice to have you back at work.  What have you* |
| | 14 | *been doing?"*  And so you get a constant barrage of *"What* |
| | 15 | *have you been doing?"*  That's pretty difficult to withstand. |
| | 16 | It starts with, *"Well, I've been in federal court."* |
| 01:11 | 17 | *"Oh, really?"*  And the conversation goes from |
| | 18 | there, even with you not participating. |
| 01:11 | 19 | So, Counsel, if it's acceptable, can I ask the four |
| | 20 | alternates to return to this courtroom at -- why don't we |
| | 21 | say 10:00 o'clock, a nice easy hour. |
| 01:11 | 22 | Would that be acceptable, Ms. Corrigan? |
| 01:11 | 23 | MS. CORRIGAN:  Yes, Your Honor. |
| 01:12 | 24 | THE COURT:  Mr. Lengyel-Leahu? |
| 01:12 | 25 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |

01:12   1              THE COURT:  Counsel?

01:12   2              MS. HEINZ:  Yes, Your Honor.

01:12   3              THE COURT:  That way we're not mixing walking in.

        4    I want to make certain of that.  Meanwhile, have we

        5    separated out their lunches?

01:12   6              THE CLERK:  Yes.  We have them on the cart.  We'll

        7    take them downstairs to the cafeteria.

01:12   8              THE COURT:  Have a nice lunch.

01:12   9              Now, you're admonished not to discuss this case

        10   with anyone or to form or express any opinion concerning the

        11   case and don't even think about it tonight.

01:12   12             Tomorrow, when you come in, I want you to come into

        13   court.  Debbie will see you.  And we'll find another

        14   convenient place for you in the courthouse.  It may be as

        15   simple as the cafeteria, by the way, so bring some reading

        16   material.  Okay?  It may be as formal as the jury room

        17   downstairs.  But I think I'd prefer to have you comfortable.

01:12   18             Now, Counsel, is there anything further before I

        19   excuse the alternates this evening to have their lunch and

        20   then go home?

01:12   21             MS. HEINZ:  Nothing from the government.

01:12   22             MS. CORRIGAN:  No.

01:12   23             MR. LENGYEL-LEAHU:  No, Your Honor.

01:12   24             THE COURT:  Okay.  Then 10:00 o'clock tomorrow.

01:13   25             Do you have anything back in the jury room?  One of

Case 8:15-cr-00060-DOC   Document 300   Filed 03/31/17   Page 52 of 55   Page ID #:5154
8:15-CR-0060-DOC - 6/20/2016 - Day 9, Volume III

52

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | the jurors does.                                           |
| 01:13    | 2  | Take the four this way, Deb, have them pick up             |
|          | 3  | their things in the jury room, and then take them down the |
|          | 4  | hallway, down to the cafeteria, or Linda can do it.        |
| 01:13    | 5  | THE CLERK:  I've got it.                                    |
| 01:13    | 6  | *(Alternate jurors exit the courtroom.)*                   |
| 01:13    | 7  | **DISCUSSION RE VERDICT FORMS**                            |
| 01:13    | 8  | THE COURT:  The jurors and alternates are now not          |
|          | 9  | present.                                                   |
| 01:13    | 10 | And I'd made a suggestion:  In Count One and               |
|          | 11 | Count Three concerning the first verdict forms concerning  |
|          | 12 | each of the gentlemen -- and those pertained to Badawi, as |
|          | 13 | well as Count Thirty -- and also following with            |
|          | 14 | Ms. *(sic)* Elhuzayel in Count One, Two and then Four through |
|          | 15 | Twenty-nine, I just might suggest -- and I think counsel may |
|          | 16 | be willing to agree -- that when we look at Count One at   |
|          | 17 | Question 1, and we look at Count Three, and it says        |
|          | 18 | "Question 2," and then we flip over to Count Thirty,       |
|          | 19 | Question 3 -- the questions are confusing.                 |
| 01:14    | 20 | In other words, what we might consider doing is            |
|          | 21 | striking Question No. 1, Question No. 2, Question No. 3.    |
| 01:14    | 22 | So by way of example, it would read,                       |
| 01:14    | 23 | *"Count One.  Conspiracy to provide*                       |
|          | 24 | *material support and resources to a*                      |
|          | 25 | *designated foreign terrorist*                             |

|   |    |                                                              |
|---|----|--------------------------------------------------------------|
|        | 1  | *organization, 18 U.S.C., Section 2339B."* |
| 01:14  | 2  | We would strike "Question No. 1," and it would just |
|        | 3  | read, |
| 01:14  | 4  | *"With respect to the offense charged in* |
|        | 5  | *Count One of the Indictment, we, the* |
|        | 6  | *jury in the above-entitled action,* |
|        | 7  | *hereby unanimously find* |
|        | 8  | *Defendant Muhanad Elfatih M.A. Badawi:"* |
| 01:15  | 9  | Check mark:  *"Guilty"* or *"Not guilty."* |
| 01:15  | 10 | Is that acceptable, Mr. Elhuzayel? |
| 01:15  | 11 | MR. LENGYEL-LEAHU:  Yes, Your Honor. |
| 01:15  | 12 | THE COURT:  I mean, Mr. Lengyel-Leahu.  I'm sorry. |
| 01:15  | 13 | MR. LENGYEL-LEAHU:  Yes. |
| 01:15  | 14 | THE COURT:  Is that acceptable, Ms. Corrigan? |
| 01:15  | 15 | MS. CORRIGAN:  Yes, it is, Your Honor. |
| 01:15  | 16 | THE COURT:  Is that acceptable to the government? |
| 01:15  | 17 | MS. HEINZ:  Yes, Your Honor. |
| 01:15  | 18 | THE COURT:  Then, after they eat, would you remain |
|        | 19 | with Debbie just to make certain that all of the evidence |
|        | 20 | goes back in?  You're not going into the jury room, but just |
|        | 21 | check what she's doing.  And also, would you take a look at |
|        | 22 | the jury instructions that I've now marked or had Debbie |
|        | 23 | mark sequentially just to make certain we're not missing |
|        | 24 | one?  And those will go back in and will be waiting for the |
|        | 25 | jury.  So she'll do that at 3:00 or 4:00 o'clock tonight. |

**DEBBIE GALE, U.S. COURT REPORTER**

| | | |
|---|---|---|
| 01:15 | 1 | And finally, the glass is always half full with my |
| | 2 | counsel.  I can wait until tomorrow at 9:00 o'clock, or if |
| | 3 | you're satisfied with the Court's instructions and you |
| | 4 | agree, then you can put the verdict forms back in, because |
| | 5 | there's no substantive change with the instructions. |
| 01:15 | 6 | MS. HEINZ:  Yes, Your Honor. |
| 01:15 | 7 | THE COURT:  So you'll word-process those this |
| | 8 | evening? |
| 01:16 | 9 | MS. HEINZ:  Yes, Your Honor. |
| 01:16 | 10 | THE COURT:  Counsel? |
| 01:16 | 11 | MS. CORRIGAN:  Yes, that's acceptable. |
| 01:16 | 12 | THE COURT:  Counsel? |
| 01:16 | 13 | MR. LENGYEL-LEAHU:  Yes, that's acceptable, |
| | 14 | Your Honor. |
| 01:16 | 15 | THE COURT:  Then, is there anything further? |
| 01:16 | 16 | Otherwise, we'll see you at 9:00 o'clock tomorrow |
| | 17 | morning. |
| 01:16 | 18 | MS. HEINZ:  Thank you, Your Honor. |
| 01:16 | 19 | MS. CORRIGAN:  Thank you. |
| 01:16 | 20 | MR. LENGYEL-LEAHU:  Thank you. |
| 01:16 | 21 | THE COURT:  Okay.  All right. |
| 01:16 | 22 | We're not in session any longer. |
| 01:16 | 23 | *(Proceedings adjourned at 11:16 p.m.)* |
| 01:16 | 24 | -oOo- |
| 01:16 | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

01:16    1                          -oOo-

01:16    2

01:16    3                       CERTIFICATE

01:16    4

01:16    5        I hereby certify that pursuant to Section 753,

         6   Title 28, United States Code, the foregoing is a true and

         7   correct transcript of the stenographically reported

         8   proceedings held in the above-entitled matter and that the

         9   transcript page format is in conformance with the

        10   regulations of the Judicial Conference of the United States.

01:16   11

01:16   12   Date:  March 22, 2017

01:16   13

01:16   14
01:16                          /s/ Debbie Gale
01:16   15                     _____
01:16                          DEBBIE GALE, U.S. COURT REPORTER
01:16   16                     CSR NO. 9472, RPR, CCRR

01:16   17

        18

        19

        20

        21

        22

        23

        24

        25